**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS, DALLAS DIVISION**

| | | |
|---|---|---|
| **MICHAEL CLOUD** | § | |
| | § | |
| **Plaintiff** | § | |
| | § | |
| **v.** | § | **CIVIL ACTION NO. 3:20-CV-01277-E** |
| | § | |
| **THE BERT BELL/PETE ROZELLE** | § | **JURY DEMAND** |
| **NFL PLAYER RETIREMENT PLAN** | § | |
| | § | |
| **Defendant** | § | |

---

**PLAINTFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S RULE 12 MOTION TO**
**(1) STRIKE PLAINTIFF'S JURY DEMAND AND (2) DISMISS COUNT II OF**
**PLAINTIFF'S COMPLAINT FOR FAILURE TO STATE A CLAIM AND BRIEF IN**
**SUPPORT**

---

## TABLE OF CONTENTS

**TABLE OF AUTHORITIES** .................................................................................................. iii

**I.**   **INTRODUCTION AND NATURE OF THE ACTION** .................................................. 1

**II.**   **FACTUAL ALLEGATIONS** ....................................................................................... 2

**III.**   **RESPONSE TO MOTION TO STRIKE JURY DEMAND** ....................................... 11

**IV.**   **RESPONSE TO MOTION TO DISMISS** .................................................................. 12

**V.**   **TO THE EXTENT THAT THIS HONORABLE COURT FINDS ANY MERIT IN DEFENDANT'S MOTION TO DISMISS, PLAINTIFF HEREBY REQUESTS THE OPPORTUNITY TO AMEND HIS PLEADINGS** ...................................................... 19

**VI.**   **PRAYER** .................................................................................................................... 20

# TABLE OF AUTHORITIES

**C**ASES

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ........................................................... 12, 13

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ..................................................... 12

*Brown v. Texas A & M Univ.*, 804 F.2d 327 (5th Cir. 1986) ..................................... 19

*Campbell v. Wells Fargo* Bank, 781 F.2d 440 (5th Cir. 1982)................................... 13

*Chauffers, Teamsters & Helpers, Local No. 391 v. Terry*, 494 U.S. 558 (1990) ........................ 11

*Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496 (5th Cir. 2000).................................. 14, 15

*Conley v. Gibson*, 335 U.S. 41 (1957) .............................................................. 13

*Cunningham v. Cornell Univ.*, 2018 U.S. Dist. LEXIS 152972, Cause No. 16-CV06525
(S.D.N.Y. Sept. 6, 2018) .......................................................................... 11

*Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333 (5th Cir. 2008) ............................... 13

*Gonzalez v. Kay*, 577 F.3d 600 (5th Cir. 2009) .................................................... 13

*Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33 (1989) ........................................... 11

*Jacquez v. Procunier*, 801 F.2d 789 (5th Cir. 1986)............................................... 19

*Kaiser Aluminum & Chem. Sales v. Avondale* Shipyards, 677 F.2d 1045 (5th Cir. 1982). ......... 13

*Lafleur v. La. Health Serv. & Indem. Co.*, 563 F.3d 148 (5th Cir. 2009)................................ 18

*Lowrey v. Texas A&M Univ. Sys.*, 117 F.3d 242 (5th Cir. 1997) ................................... 13

*Morgan v. Swanson*, 659 F.3d 359 (5th Cir. 2011)............................................... 13, 14

*Murphy v. Verizon Communs., Inc.*, 2010 U.S. Dist. LEXIS 111122, Civil Action No. 3:09-CV-
2262-G (N.D. Tex. Oct. 18, 2020) ................................................................ 18

*Robinson v. Aetna Life Ins. Co.*, 443 F.3d 389 (5th Cir. 2006) .................................... 18

*Sage v. Automation, Inc. Pension Plan & Trust,* 845 F.2d 885 (10th Cir.1988) .................... 17

*Stamps v. Michigan Teamsters Jt. Council No. 43*, 431 F. Supp. 745 (E.D. Mich. 1977) ........... 11

*Sweatman v. Commercial Union Ins. Co.*, 39 F.3d 594 (5th Cir. 1994)............................... 17

*Tull v. United States*, 481 U.S. 412 (1987) ....................................................... 11

*White v. Life Ins. Co. of N. Am.,* 892 F.3d 762 (5th Cir. 2018) ................................... 18

**S**TATUTES

29 C.F.R. § 2560.503-1........................................................................... 18

29 U.S.C. §§ 1001 *et seq.* ....................................................................... 2

29 U.S.C. § 1002(2) .............................................................................. 2

29 U.S.C. § 1133................................................................... 14, 15, 17, 18

U.S. Const. amend. VII............................................................................ 11

**R**ULES

Fed. R. Civ. P. 8(a)(2) ........................................................................... 12

Fed. R. Civ. P. 12(b)(6)...................................................................... 12, 13, 14

Fed. R. Civ. P. 12(d) ............................................................................ 14

Fed. R. Civ. P. 15 ............................................................................... 20

NOW COMES Plaintiff, Michael Cloud (hereinafter "**Plaintiff**" or "**Cloud**"), and files his *Response in Opposition to Defendant's Rule 12 Motion to (1) Strike Plaintiff's Jury Demand and (2) Dismiss Count II of Plaintiff's Complaint for Failure to State a Claim and Brief in Support* and respectfully shows this Honorable Court as follows:

## I.   INTRODUCTION AND NATURE OF THE ACTION

1.      The National Football League ("**NFL**") is a highly profitable league governing professional football in the United States that garners the attention of millions of fans and viewers each week during the NFL season.  For many years, the ill effects of playing professional football were not known by the athletes who gave their bodies, minds, and mental health to professional football.  In 2002, during the study of former Pittsburgh Steeler Mike Webster's brain, Dr. Bennet Omalu discovered a condition of the brain he termed chronic traumatic encephalopathy ("**CTE**"). CTE has been determined to occur as a result of repeated blows to the head and has been commonly linked to athletes competing in professional football.  Dr. Omalu's research on CTE was published for the first time in 2005.  A 2019 study led by Boston University researchers that was published in the *Annals of Neurology* studied the brains of 266 deceased football players and found that 223 had CTE.

2.      In 2012, more than eighty (80) former NFL players filed various lawsuits against the NFL seeking damages for injuries as a result of concussion-related symptoms.  The litigation ultimately merged into multi-district litigation involving claims of thousands of former NFL players.  In 2015, a settlement was approved that covered six "Qualifying Diagnos[es]". The conditions that constitute a "Qualifying Diagnosis" under the terms of the settlement agreement

are: (1) Level 1.5 Neurocognitive Impairment (as defined by the settlement terms), (2) Level 3 Neurocognitive Impairment (as defined by the settlement terms), (3) Alzheimer's Disease, (4) Death with documented CTE prior to April 22, 2015, (5) Parkinson's Disease, and (6) Amyotrophic Lateral Sclerosis ("**ALS**").

3.     Due to the limitations of the NFL concussion settlement, many former NFL players turned to The Bert Bell/Pete Rozelle NFL Player Retirement Plan (hereinafter "**Defendant**" or "**Retirement Plan**") to determine whether players qualified for benefits under the terms of the Retirement Plan. The Retirement Plan is a retirement, disability, and related benefits plan accessible by eligible former professional football players and is an employee pension benefit plan within the mean of 29 U.S.C. § 1002(2) covered under the Employee Retirement Income Security Act of 1974 ("**ERISA**").

4.     Plaintiff is a former NFL football player who brings this action under ERISA, 29 U.S.C. §§ 1001 *et seq.*, against the Retirement Plan to recover benefits due to him under the terms of the Retirement Plan, to enforce his rights under the terms of the Retirement Plan, to clarify his rights under the terms of the Retirement Plan, and to enjoin and obtain appropriate equitable relief pertaining to acts that violate ERISA and/or the terms of the Retirement Plan.  The Retirement Plan violated the terms of the plan by failing to reclassify and award Plaintiff "Active Football" benefits under the terms of the Retirement Plan.

## II.     FACTUAL ALLEGATIONS

5.     Plaintiff grew up in Portsmouth, Rhode Island and quickly exceled as an athlete. He attended Portsmouth High School in Portsmouth, Rhode Island where he earned All-American honors as a running back and was recruited by virtually every major college and university to

participate as a member of its football team.  Plaintiff selected Boston College as his college of choice and went on to have a stellar career.  At Boston College, as a senior, Plaintiff was named first team All-American and finalist for the Doak Walker Award, an award given to the nation's top running back.  Plaintiff left Boston College with a bachelor's degree in Socioeconomics.

6.    In 1999, Plaintiff was selected by the Kansas City Chiefs in the second (2nd) round of the 1999 NFL Draft with the fifty-fourth (54th) overall selection.  Plaintiff had a seven (7) year career as a running back, kick returner, and special teams player in the NFL playing for three (3) teams, Kansas City Chiefs (1999-2002), New England Patriots (2003, 2005), and the New York Giants (2004-2005).  While playing for the New England Patriots, in 2004, Plaintiff helped the New England Patriots win Super Bowl XXXVIII.  On November 29, 2005, Plaintiff was released by the New England Patriots.

7.    Shortly after retirement, in 2006, Plaintiff requested necessary documents and information from the advisors of the Retirement Plan necessary to seek disability benefits, but did not receive copies of all requested policies and received only partial documentation showing a ten (10) page "Medical Summary" of most of Plaintiff's orthopedic injuries.  However, the documents provided did not include any documentation of concussions or corresponding medical documentation of orthopedic and neurological injuries.  During Plaintiff's NFL career, he sustained multiple injuries including several concussions, injuries to his back and neck, and had three surgeries including bone grafting and cyst debridement of his left foot first metatarsal, right great toe cyst removal, and right leg fasciotomy with debridement of a necrotic peroneus longus. The muscle necrosis of his peroneus longus required an emergency surgical procedure to save Plaintiff's life, which is evidenced by the following:



8.    Plaintiff has a long history attempting to navigate the complex web of the Retirement Plan in seeking disability benefits.  On October 31, 2004, while playing for the New York Giants, Plaintiff sustained a concussion that caused him great pain and concern.  Despite a concussion, Plaintiff was cleared to practice and compete only forty-eight (48) hours after the concussion.  Shortly thereafter, Plaintiff could not remember basic plays, football schemes, or his duties in such plays and schemes. Many of the plays Plaintiff was asked to perform, he learned in high school, but had no ability to recall his responsibilities or the requirements of plays. Ultimately, as a result of his failure to perform the basic duties of an NFL running back, Plaintiff was released by the New York Giants prior to the first game of the season.  In 2005, Plaintiff was signed by the New England Patriots for a short period of time.  Plaintiff was, again, unable to recall

plays and perform the functions and duties of his job as an NFL running back. During Plaintiff's approximately three (3) weeks with the New England Patriots, the New England Patriots administered a neurological exam on Plaintiff known ImPACT designed by Grant Iverson and the NFL MTBI committee.  Shortly after taking the exam, Plaintiff was released by the New England Patriots.  To this day, Plaintiff still does not have a copy of these neurological exam results despite multiple requests.  Plaintiff has had extreme difficulty obtaining requested medical information.

9.     Shortly thereafter, in addition to memory loss and the inability to perform the functions and duties of his job, Plaintiff started experiencing headaches, vertigo, getting lost, forgetting names and places, and other cognitive issues.  Accordingly, on June 11, 2009, Plaintiff filed his *Application for Disability Benefits* asserting disabling injuries including injuries to his left shoulder, right hip, right mid-foot, right leg compartment numbness and loss of sensation, left rib, and "concussions – vertigo regularly".  On or about July 6, 2009, Plaintiff met with Dr. Michael J. Einbund, an NFL approved doctor, who evaluated Plaintiff only as to the orthopedic aspects of his application. On July 9, 2009, Retirement Plan tabled Plaintiff's request for line-of-duty benefits until Plaintiff submitted for evaluation by "neutral physicians" who are approved by the NFL.  On September 25, 2009, Retirement Plan denied Plaintiff's request for line-of-duty benefits by stating he "does not have a 'substantial disablement' within the meaning of the Retirement Plan," but only analyzed Plaintiff's upper extremities (15% impairment) and lower extremities (35% impairment) for total body impairment of twenty-four percent (24%).  There was no analysis of Plaintiff's "concussions – vertigo regularly" as addressed on his *Application for Disability Benefits*.  On February 2, 2010, Plaintiff appealed the denial of his request for line-of-duty disability benefits.

On May 18, 2010, Retirement Plan granted Plaintiff's appeal and granted his line-of-duty disability benefits in the amount of $3,290.00 per month effective May 1, 2010.

10.      On or about April 13, 2010, Plaintiff met with Dr. George H. Canizares of All Florida Orthopedic Associates, another NFL doctor, and reported that he experienced "depression, migraine headaches, insomnia, … [and] some concussions."  On the same day, April 13, 2010, Plaintiff also met with Dr. Adam S. DiDio where he described a "history of concussions" and vertigo that makes it feel like his "bed spins".  Plaintiff further explained that "[i]n the last 6 or 7 years[,] [headaches] have become more frequent and more intense." In addition to intense headaches, Plaintiff described "some cognitive difficulties", including forgetting names of people he has known for years, often getting lost, having difficulty paying bills, and depression.  Similarly, on October 19, 2010, Plaintiff filed *Employee's Claim Petition* in Minnesota against New York Giants as a result of a "Grade 1 concussion leading to vertigo, dizziness, headaches, and altered attention span."  The Grade 1 concussion mentioned in the Employee's *Claim Petition* is the concussion referenced above that occurred on October 31, 2004 in a game between the New York Giants and the Minnesota Vikings.

11.      On or about June 12, 2011, Plaintiff submitted to medical treatment performed by Primary Behavioral Health Clinics where Plaintiff reported that he experienced neck, lower back, foot, and lower leg pain.  Additionally, such records indicated Plaintiff has "extreme trouble remembering things, is worried and easily annoyed or irritated, has difficulty making decisions, goes blank often and has trouble concentrating."  Harry Cates, a licensed professional counselor working for Lifework's Group, PA, performed a mental residual capacity assessment on Plaintiff evaluating him from October 10, 2011 to December 21, 2011 and stated Plaintiff was struggling

with depressive symptoms, poor concentration and bouts of unpredictable irritability that were "no doubt" related to his physical injuries and concussions sustained while competing in the NFL. Further, Mr. Cates reported that Plaintiff had increased difficulty in coping due to social anxiety and self-consciousness from ongoing changes in his cognitive function.

12.     On January 22, 2013, Dr. Anne Smith of Smith Behavioral Health concluded Plaintiff experienced "major depressive disorder, recurrent, severe without psychotic features." On April 8, 2013, Dr. Don Marler performed a mental residual functional capacity assessment and concluded that Plaintiff's understanding and memory limitations as markedly limited in the ability to understand and remember detailed instructions and the ability to carry out detailed instructions. On May 13, 2014, Mr. Cates again met with and analyzed Plaintiff's cognitive function.  Mr. Cates concluded that Plaintiff was limited in his ability to maintain attention and concentration for extended periods and was further concluded that Plaintiff was limited in his ability, amongst others, to remember location and work procedures, understand, remember, and carry out instructions and perform activities on schedule.  Accordingly, on June 18, 2014, Daniel Curran, Administrative Law Judge for the Social Security Administration, found Plaintiff to be totally and permanently disabled.

13.     The total and permanent disability benefits ("**T&P Benefits**") program administered under the Retirement Plan is complex and has multiple categories.  The categories under the Retirement Plan at issue are:

> Active Football: Subject to the special rules of Section 5.4, Players will qualify for benefits in this category if the disability(ies) results from League football activities, arises while the Player is an Active Player, and causes the Player to be totally and permanently disabled "shortly after" the disability(ies) first arises.

Inactive A: Subject to the special rules of Section 5.4, a Player will qualify for benefits in this category if a written application for T&P benefits or similar letter than began the administrative process that resulted in the award of T&P benefits was received within fifteen (15) years after the end of the Player's last Credited Season. This category does not require that the disability arise out of League football activities.

The Retirement Plan also defines "shortly after" and states, in pertinent part, as follows:

"Shortly After" Defined.  A Player who becomes totally and permanently disable no later than six months after a disability(ies) first arises will be conclusively deemed to have become totally and permanently disability "shortly after" the disability(ies) first arises, as that phrase is used in subsections (a) and (b) above, and a Player who becomes totally and permanently disabled more than twelve months after a disability(ies) first arises will be conclusively deemed not to have become totally and permanently disabled "shortly after" the disability(ies) first arises, as that phrase is used in subsections (a) and (b) above.  In cases failing within this six- to twelve-month period, the Retirement Board or the Disability Initial Claims Committee will have the right and duty to determine whether "shortly after" standard is satisfied.

14.     On July 23, 2014, the Retirement Plan granted Plaintiff T&P Benefits under the Inactive A designation with an effective benefits date of May 1, 2014.  The Retirement Board chose to grant Inactive A T&P Benefits instead of the proper benefits under Active Football T&P Benefits.  As a result, on February 17, 2016, Plaintiff filed his request for reclassification of his Inactive A T&P Benefits to Active Football T&P Benefits to which his request was summarily denied on March 2, 2016.  Subsequently, Plaintiff filed his appeal of denial of his request for reclassification of Inactive A T&P Benefits to Active Football T&P Benefits.  Again, on November 23, 2016, Retirement Plan denied Plaintiff's request.

15.     The appeal of the reclassification decision is the final step in the administrative process and, thus, Plaintiff's ERISA claim is ripe for consideration.  Specifically, Retirement Plan's correspondence dated November 23, 2016 states "[y]ou have the right to bring an action under Section 501(a) of the Employment Retirement Income Security Act of 1974, as amended, within 42 months from the date of this letter, which is May 16, 2020."

16.     Plaintiff satisfies each element necessary to obtain Active Football T&P Benefits. Specifically, Plaintiff was disabled as a result of playing in the NFL, arose while he was an active player competing in the NFL, and Plaintiff was totally and permanently disabled "shortly after" the disability occurred.  In addition to the numerous other medical professionals referenced above, Dr. John Cronin conducted a head trauma evaluation resulting from a helmet to helmet concussion that occurred on October 31, 2004.  Dr. Cronin reported that Plaintiff "sustained at least one, if not several, closed head injuries" that caused him to be "unable to complete basic plays and assignments" while participating as an NFL player in late 2004 and 2005.  Dr. Cronin concluded that Plaintiff has experienced the following cognitive problems "since his injury in 2004": 1) "[m]emory impairment as identified by  a reduced ability to learn or recall information"; 2) "[d]isturbance in executive functioning (i.e., planning, organizing, sequencing, abstracting)"; 3) "[d]isturbance in attention or speed of information processing"; 4) "[i]mpairment in perceptual-motor abilities"; and 5) "[i]mpairment in language (e.g., comprehension, word finding)".

17.     Plaintiff has had to scratch and claw to obtain his medical records from the Retirement Plan, NFL, doctors approved by the NFL, and NFL member teams.  When he first sought to file for disability benefits in 2006, Plaintiff did not have a copy of the plan and was not provided copies of his medical records.  Plaintiff made requests for his full medical file in 2006, 2007, 2008, 2009, 2010, 2012, 2013, 2014, 2015, 2016, 2017, 2018, and 2019.  On or about January 18, 2019, some thirteen (13) years after the initial request, Plaintiff was provided with an 860 page medical file by the Retirement Plan, but the documentation provided still lacked the neurological reports including reports from the NFL MTBI committee and the results of the ImPACT neurological exam administered by the New England Patriots.  As is clear, all of the

evidence indicates that Plaintiff has cognitive impairments as a result of a concussion (and a series of previous concussions) that materially affected Plaintiff's life and have caused, amongst other things, memory loss, headaches, vertigo, irritability, depression, and loss of focus. Additionally, Plaintiff suffers from a series of orthopedic injuries as described above. Plaintiff suffers from debilitating orthopedic and neurological injuries stemming from repetitive high velocity impacts to the body and brain sustained while serving as an active player in the NFL. Other than a few private training sessions on an infrequent basis, Plaintiff has not been employed since he retired from participating in the NFL.

18. Retirement Plan's denial of Plaintiff's relief was arbitrary and capricious. Retirement Plan does not have unfettered discretion to deny requests for benefits that are supported by evidence. Retirement Plan's decisions must be supported by substantial evidence that is relevant and reasonable to support its conclusion. Clearly, the Retirement Plan has ignored relevant evidence supporting the award of the Active Football T&P Benefits.

19. The decisions of the Retirement Plan are erroneous under any standard, and was an abuse of discretion to the extent the plan documents granted such discretion as confirmed by the mountain of evidence described above. In addition to the information set forth above, the Retirement Plan's decisions are erroneous for the following reasons, among others, 1) Plaintiff meets the requirements for Active Football T&P Benefits; 2) Retirement Plan's decision relating to Plaintiff's request for Active Football T&P Benefits are not consistent with the plan documents; 3) Retirement Plan's decision is contrary to the purposes and goals of the Retirement Plan , which were designed to provide appropriate disability benefits to retired players who were disabled as a result of competing for NFL member teams in NFL competition; and 4) Retirement Plan refused

to consider unanimous medical evidence showing Plaintiff was totally and permanently disabled "shortly after" a concussion that occurred on October 31, 2004.

### III.    RESPONSE TO MOTION TO STRIKE JURY DEMAND

20.     Plaintiff is entitled to a trial by jury.  The Seventh Amendment provides, "[i]n Suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved."  U.S. Const. amend. VII.  Where "legal rights," as distinguished from "equitable rights," are asserted, a party has the right to a jury trial.  *Chauffers, Teamsters & Helpers, Local No. 391 v. Terry*, 494 U.S. 558, 564 (1990).  "To determine whether a statutory action is similar to cases that were tried in courts of law than to suits tried in courts of equity or admiralty, the Court must examine both the nature of the action and of the remedy sought."  *Tull v. United States*, 481 U.S. 412, 417 (1987).  "First, we compare the statutory action to 18th-century actions brought in the courts of England prior to the merger of the courts of law and equity.  Second, we examine the remedy sought and determine whether it is legal or equitable in nature.  *Id.* at 417-18.  The second of the two inquiries is more important than the first.  *Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 42 (1989).  Courts "must examine both the nature of the issues involved and the remedy sought."  *Id.*

21.     Claims set forth under ERISA are contractual and the remedy sought is a legal remedy (*i.e.,* monetary damages) sought to compensate for losses suffered by the plaintiff.  *See Stamps v. Michigan Teamsters Jt. Council No. 43*, 431 F. Supp. 745 (E.D. Mich. 1977); *see also Cunningham v. Cornell Univ.*, 2018 U.S. Dist. LEXIS 152972, Cause No. 16-CV06525 (S.D.N.Y. Sept. 6, 2018).  Here, Plaintiff asserts the "Retirement Plan has failed to act in compliance with the language of the plan documents…." *Dkt. 1 at ¶ 28.*  As a result of the Retirement Plan's breach

of the plan documents, Plaintiff seeks "retroactive credits and payments". *Dkt. 1 at ¶¶ 29 & 33.* Clearly, the remedy sought is monetary damages, which is legal relief. In accordance with the Seventh Amendment to the United States Constitution, Plaintiff is entitled to have his case heard by a jury. Therefore, Plaintiff requests that this Honorable Court deny Defendant's motion to strike his demand for trial by jury.

## IV.   RESPONSE TO MOTION TO DISMISS[1]

### A.   *Standard*

22.   Rule 8(a) of the Federal Rules of Civil Procedure requires a claim for relief to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Rule 8 does not require detailed factual allegations, but "it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). If the plaintiff fails to satisfy the requirements of Rule 8(a), the defendant may file a motion to dismiss the plaintiff's claims under Rule 12(b)(6) of the Federal Rules of Civil Procedure for "failure to state a claim upon which relief may be granted." Fed. R. Civ. P. 12(b)(6).

23.   To defeat a motion to dismiss pursuant to Rule 12(b)(6), a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 663. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."

---

[1] It is important to note that Defendant did not seek to dismiss Count I as set forth in Plaintiff's *Original Complaint* [Dkt. 1] and moved only on Count II.

*Id.* "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.*

24.     A motion to dismiss under Rule 12(b)(6) "is viewed with disfavor and is rarely granted." *Kaiser Aluminum & Chem. Sales v. Avondale* Shipyards, 677 F.2d 1045, 1050 (5th Cir. 1982).  The complaint must be liberally construed in favor of the plaintiff and all well pleaded facts taken as true. *Gonzalez v. Kay*, 577 F.3d 600, 603 (5th Cir. 2009); *Campbell v. Wells Fargo* Bank, 781 F.2d 440, 442 (5th Cir. 1982).  The district court may not dismiss a complaint "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 335 U.S. 41, 45-46 (1957).  "The question therefore is whether in the light most favorable to the plaintiff and with every doubt resolved in his behalf, the complaint states any valid claim for relief." *Lowrey v. Texas A&M Univ. Sys.*, 117 F.3d 242, 247 (5th Cir. 1997).

25.     In considering a motion to dismiss for failure to state a claim, a district court must limit itself to the contents of the pleadings. Fed. R. Civ. P. 12(b)(6).  A court ruling on a 12(b)(6) motion may rely on the complaint, its proper attachments, "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Dorsey v. Portfolio Equities, Inc*., 540 F.3d 333, 338 (5th Cir. 2008).

### B.     *Objections*

26.     Plaintiff objects to the inclusion of *Exhibit A* as a part of and as attached to Defendant's *Motion to Dismiss for Failure to State a Claim* set forth under Rule 12(b)(6) of the Federal Rules of Civil Procedure.  A court may only consider factual allegations made within the "four corners" of the complaint. *Morgan v. Swanson*, 659 F.3d 359, 401 (5th Cir. 2011).  To the

extent this Honorable Court considers evidence outside of the "four corners" of Plaintiff's *Original Complaint* [Dkt. 1], the motion to dismiss must be treated as a motion for summary judgment and, thus, Plaintiff must be given a reasonable opportunity to present all necessary evidence in response to the converted motion. Fed. R. Civ. P. 12(d). Under the *Collins* exception, a court may consider extrinsic documentary evidence in the context of a Rule 12(b)(6) motion if: (1) the document is attached to a defendant's motion to dismiss; (2) the document is referred to in the plaintiff's complaint; and (3) the document is "central" to the plaintiff's claims. *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000). Here, the document attached to Defendant's *Motion to Dismiss for Failure to State a Claim* as *Exhibit A* is not "central" to Plaintiff's claim set forth under 29 U.S.C. § 1133. Nowhere in *Exhibit A* does it discuss medical documents that were withheld or not provided and, certainly, does not discuss the requirements of providing "relevant" documentation and a "full and fair review". Accordingly, Plaintiff requests that this Honorable Court strike *Exhibit A* to Defendant's *Motion to Dismiss for Failure to State a Claim.*

27.     Plaintiff objects to the inclusion of *Exhibit B* as a part of and as attached to Defendant's *Motion to Dismiss for Failure to State a Claim* set forth under Rule 12(b)(6) of the Federal Rules of Civil Procedure. A court may only consider factual allegations made within the "four corners" of the complaint. *Morgan v. Swanson*, 659 F.3d 359, 401 (5th Cir. 2011). To the extent this Honorable Court considers evidence outside of the "four corners" of Plaintiff's *Original Complaint* [Dkt. 1], the motion to dismiss must be treated as a motion for summary judgment and, thus, Plaintiff must be given a reasonable opportunity to present all necessary evidence in response to the converted motion. Fed. R. Civ. P. 12(d). Under the *Collins* exception, a court may consider extrinsic documentary evidence in the context of a Rule 12(b)(6) motion if: (1) the document is

attached to a defendant's motion to dismiss; (2) the document is referred to in the plaintiff's complaint; and (3) the document is "central" to the plaintiff's claims. *Collins,* 224 F.3d at 498-99. Here, the document attached to Defendant's *Motion to Dismiss for Failure to State a Claim* as *Exhibit B* is not "central" to Plaintiff's claim set forth under 29 U.S.C. § 1133. Nowhere in *Exhibit B* does it discuss medical documents that were withhold or not provided and, certainly, does not discuss the requirements of providing "relevant" documentation and a "full and fair review". Accordingly, Plaintiff requests that this Honorable Court strike *Exhibit B* to Defendant's *Motion to Dismiss for Failure to State a Claim.*

### C.    Argument

28.    Plaintiff has pleaded "enough facts to state a claim to relief that is plausible" and, thus, this Honorable Court must deny the relief sought by Defendant. Plaintiff's allegations are to be "liberally construed" and "every doubt" must be construed in favor of Plaintiff. Defendant has ignored the assertions clearly set forth in the *Original Complaint and Demand for Trial by Jury* [Dkt. 1] that address Defendant's withholding of records that led to Defendant's denial of a "full and fair review". Specifically, Plaintiff asserted as follows:

> Shortly after retirement, in 2006, Plaintiff requested necessary documents and information from the advisors of the Retirement Plan necessary to seek disability benefits, but did not receive copies of all requested policies and received only partial documentation showing a ten (10) page "Medical Summary" of most of Plaintiff's orthopedic injuries. However, the documents provided did not include any documentation of concussions or corresponding medical documentation of orthopedic and neurological injuries.

Dtk. 1 at ¶ 12.

> ***

> Plaintiff has had extreme difficulty receiving requested medical information.

Dtk. 1 at ¶ 13.

\*\*\*

On July 9, 2009, Retirement Plan tabled Plaintiff's request for line-of-duty benefits until Plaintiff submitted for evaluation by "neutral physicians" who are approved by the NFL.

Dtk. 1 at ¶ 14.

\*\*\*

When he first sought to file for disability benefits in 2006, Plaintiff did not have a copy of the [plan] and was not provided copies of his medical records.  Plaintiff made requests for his full medical file in 2006, 2007, 2008, 2009, 2010, 2012, 2013, 2014, 2015, 2016, 2017, 2018, and 2019.   On or about January 18, 2019, some thirteen (13) years after the initial request, Plaintiff was provided with an 860 page medical file, but the documentation provided still lacked the neurological reports including reports from the NFL MTBI committee and the results of the ImPACT neurological exam administered by the New England Patriots.

Dtk. 1 at ¶ 22.

\*\*\*

Despite numerous requests beginning in 2006, Plaintiff was not provided with his full history of medical documentation.  In January 2019, for the first time, Plaintiff was presented with 860 pages of medical records, but still is missing pertinent neurological tests and examinations. Accordingly, Plaintiff was never granted the opportunity to present his full and complete case for Active Football T&P Benefits due to Retirement Plan withholding relevant records.  As such, Plaintiff was denied a full and fair review by the Retirement Plan and its associated board and committees.

Dtk. 1 at ¶ 32.  Oddly, Defendant disingenuously asserted that "the [Retirement] Plan does not possess or have access to these documents," but it was counsel for Defendant who produced an 860 page medical file as referenced above. *Dkt. 9 at p. 3.* Specifically, in an email from Hannah Coffman of the Groom Law Group (*i.e.,* Defendant's counsel in this case) to Plaintiff dated January 18, 2019, Ms. Coffman stated, in pertinent part, as follows:

Groom Law Group is counsel to the Bert Bell/Pete Rozelle NFL Player Retirement Plan ("the Retirement Plan"). In response to your recent request, we are providing

a complete copy of your file. We have redacted the names of other Players, and
information pertinent to other Players, on twelve pages pursuant to Plan Section 9.1
of the Retirement Plan. The redactions are clearly marked with black boxes.

*See Exhibit 1.*  In the above-referenced production of records, records were missing and some medical reports provided were never previously provided to Plaintiff. The above-referenced records included pages of medical reports that were never previously provided to or seen by Plaintiff including, but not limited to, the report and records of Bert M. Mandelbaum, M.D. and missing pages of the report and records of Adam S. Didio, M.D.  Plaintiff was ordered to meet with and be evaluated physicians, including Dr. Mandelbaum and Dr. Didio, that reported directly to Defendant in the evaluation of Plaintiff.  Without all of Plaintiff's medical records, Defendant did not and could not have performed a "full and fair review" of Plaintiff's entitlement to Active Football T&P Benefits.

29. An ERISA plan, including the Retirement Plan, shall:

(1) provide adequate notice in writing to any participant or beneficiary whose claim for benefits under the plan has been denied, setting forth the specific reasons for such denial, written in a manner calculated to be understood by the participant, and

(2) afford a reasonable opportunity to any participant whose claim for benefits has been denied for a full and fair review by the appropriate named fiduciary of the decision denying the claim.

29 U.S.C. § 1133.  "Full and fair review" has been defined as "knowing what evidence the decision-maker relied upon, having an opportunity to address the accuracy and reliability of the evidence, and having the decision-maker consider the evidence presented by both parties prior to reaching and rendering his decision." *Sweatman v. Commercial Union Ins. Co.*, 39 F.3d 594, 598 (5th Cir. 1994) (quoting *Sage v. Automation, Inc. Pension Plan & Trust,* 845 F.2d 885, 893-94 (10th Cir.1988)).  The relevant regulations provide that a "full and fair review" requires providing

the claimant, upon request, documents "relevant" to his claim for benefits. *See* 29 C.F.R. § 2560.503-1(h). The regulations also define "relevant" in this context: any document "submitted, considered, or generated in the course of making the benefit determination, without regard to whether such document, record, or other information was relied upon in making the benefit determination." *Id.* § 2560.503-1(m)(8).

30.     In *White v. Life Ins. Co. of N. Am.,* the Fifth Circuit found that a plan violated Section 1133(2) of ERISA by failing to provide the plaintiff with a "relevant" report issued by a doctor that was pertinent to the decision and, thus, denied the plaintiff a "full and fair review". *White v. Life Ins. Co. of N. Am.,* 892 F.3d 762, 769-70 (5th Cir. 2018) (concluding the plan denied the plaintiff a "full and fair review" by failing to provide a doctor's report despite request); *see also Lafleur v. La. Health Serv. & Indem. Co.*, 563 F.3d 148, 156-57 (5th Cir. 2009) (concluding the plan failed to comply with 29 U.S.C. § 1133); *Robinson v. Aetna Life Ins. Co.*, 443 F.3d 389, 394 (5th Cir. 2006) (concluding the plan failed to comply with the terms of Section 1133 of ERISA and denied the plaintiff a "full and fair review"); *Murphy v. Verizon Communs., Inc.*, 2010 U.S. Dist. LEXIS 111122, Civil Action No. 3:09-CV-2262-G at *29-30 (N.D. Tex. Oct. 18, 2020) (denying a motion to dismiss where the plaintiff set forth well-pleaded allegations giving the plan notice of a claim for failure to provide a "full and fair review" of an administrative claim).

31.     As expressly stated above, Plaintiff, in accordance with Rule 8, set forth in his *Original Complaint and Demand for Trial by Jury* [Dkt. 1] "a short and plain statement of the claim showing that the pleader is entitled to relief" and "enough facts to state a claim to relief that is plausible on its fact." Similar to *White*, Plaintiff articulated that he was not provided numerous medical documents until January 2019 while some documents still have not been provided. To

this day, Defendant has not provided all of the "relevant" documents including each page of various medical reports that were ordered by the Defendant. None of the cases cited by Defendant in its brief address requests for medical documentation that are germane to the requested relief. Without all of the applicable medical records, Plaintiff was denied and unable to present his case for Active Football T&P Benefits and, thus, was denied a "full and fair review" of his claim. At the pleading stage, Plaintiff has more than adequately pleaded "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Simply, Defendant had in its possession medical records "relevant" to Plaintiff's claim that were requested on multiple occasions to which Defendant provided only some of Plaintiff's medical records in 2019 (*i.e.,* well after the denial of Plaintiff's request for Active Football T&P Benefits). Without access to the very records needed to establish Plaintiff's claim for Active Football T&P Benefits, Plaintiff was denied a "full and fair review". Accordingly, Plaintiff requests that this Honorable Court deny the relief sought by Defendant.

## V.   TO THE EXTENT THAT THIS HONORABLE COURT FINDS ANY MERIT IN DEFENDANT'S MOTION TO DISMISS, PLAINTIFF HEREBY REQUESTS THE OPPORTUNITY TO AMEND HIS PLEADINGS

32.     Alternatively, to the extent that that this Honorable Court grants any part of the Defendant's motion, Plaintiff requests the opportunity to amend his pleadings. Dismissing an action after giving the plaintiff only one opportunity to state his case is ordinarily unjustified. *Jacquez v. Procunier*, 801 F.2d 789, 792 (5th Cir. 1986); *see also Brown v. Texas A & M Univ.*, 804 F.2d 327, 334 (5th Cir. 1986) (stating "[u]nless we have searched every nook and cranny of the record, like a hungry beggar searching a pantry for the last morsel of food, and have determined that 'even the most sympathetic reading of plaintiff's pleadings uncovers no theory and no facts

that would subject the present defendants to liability,' we must remand to permit plaintiff to amend his claim if he can do so."). This Honorable Court should freely provide the opportunity to amend when justice so requires. Fed. R. Civ. P. 15(a). Here, the *Original Petition and Demand for Trial by Jury* [Dkt. 1] is the only pleading filed by Plaintiff in this matter. The Fifth Circuit provides a liberal application of the pleading rule and, generally, allows for amendment especially in situations where only a single pleading has been filed. If this Honorable Court believes any of Defendant's arguments are justified, then Plaintiff requests the opportunity to amend his pleadings to file additional facts and arguments.

## VI.   **PRAYER**

WHEREFORE, Plaintiff prays that the relief requested by Defendant be denied or, in the alternative, provide Plaintiff the opportunity to amend his pleadings. Plaintiff further prays and requests such other relief, general or special, to which Plaintiff may show himself justly entitled.

Respectfully submitted on this the 1st day of July, 2020.

BARLOW GARSEK & SIMON, LLP
920 Foch Street
Fort Worth, Texas 76107
817.731.4500 (telephone)
817.731.6200 (facsimile)

By:   */s/   Christian Dennie*
**CHRISTIAN DENNIE**
State Bar No. 24045775
cdennie@bgsfirm.com

***ATTORNEY FOR PLAINTIFF***

<u>**CERTIFICATE OF SERVICE**</u>

On July 1, 2020, the *Response in Opposition to Defendant's Rule 12 Motion to (1) Strike Plaintiff's Jury Demand and (2) Dismiss Count II of Plaintiff's Complaint for Failure to State a Claim* was filed with the Clerk of the Court via CM/ECF, which automatically delivers notice of the filing of the same to all counsel of record.


 */s/ Christian Dennie*
Christian Dennie, *Counsel for Plaintiff*