understood by the claimant and will set forth the following:

(1)    the specific reason(s) for the adverse determination;

(2)    reference to the specific Plan provisions on which the adverse determination is based;

(3)    a description of additional material or information, if any, needed to perfect the claim and the reasons such material or information is necessary;

(4)    a description of the Plan's claims review procedures and the time limits applicable to such procedures, including a statement of the claimant's right to bring a civil action under ERISA section 502(a) following an adverse determination on review;

(5)    any internal rule, guideline, protocol, or other similar criterion relied on in making the determination (or state that such information is available free of charge upon request); and

(6)    if the determination was based on a scientific or clinical exclusion or limit, an explanation of the scientific or clinical judgment for the determination, applying the terms of the Plan to the claimant's circumstances (or state that such explanation is available free of charge upon request).

The claimant will have 180 days from the receipt of an adverse determination to file a written request for review of the initial decision to the Retirement Board.

The claimant will have the opportunity to submit written comments, documents, and other information in support of the request for review and will have access to relevant documents, records, and other information in his administrative record. The Retirement Board's review of the adverse determination will take into account all available information, regardless of whether that information was presented or available to the Disability Initial Claims Committee. The Retirement Board will accord no deference to the determination of the Disability Initial Claims Committee.

If a claim involves a medical judgment question, the health care professional who is consulted on review will not be the individual who was consulted during the initial determination or his subordinate, if applicable. Upon request, the Retirement Board will provide for the identification of the medical experts whose advice was obtained on behalf of the Plan in connection with the adverse determination, without regard to whether the advice was relied upon in making the benefit determination.

Decisions by the Retirement Board on review will be made no later than the date of the Retirement Board meeting that immediately follows the Plan's receipt of the claimant's request for review, unless the request for review is received by the Plan within 30 days preceding the date of such meeting. In such case, the Retirement Board's decision may be made by no later than the second meeting of the Retirement Board following the Plan's receipt of the request for review. If special circumstances require a further extension of time for processing, a determination will be rendered not later than the third meeting of the Retirement Board following

CLOUD-AR-061

the Plan's receipt of the request for review.  If such an extension of time is required, the Retirement Board will notify the claimant in writing of the extension, describing the special circumstances and the date as of which the determination will be made, prior to the commencement of the extension.

The claimant will be notified of the results of the review not later than five days after the determination.

Any notification of an adverse determination on review will:

(1)     state the specific reason(s) for the adverse determination;

(2)     reference the specific Plan provision(s) on which the adverse determination is based;

(3)     state that the claimant is entitled to receive, upon request and free of charge, reasonable access to, and copies of, all documents, records, and other information relevant to the claim for benefits;

(4)     state that the claimant has the right to bring an action under ERISA section 502(a);

(5)     disclose any internal rule, guidelines, or protocol relied on in making the determination (or state that such information will be provided free of charge upon request); and

(6)     if the determination was based on a scientific or clinical exclusion or limit, contain an explanation of the scientific or clinical judgment for the determination, applying the terms of the Plan to the claimant's circumstances (or state that such explanation is available free of charge upon request).

(b)     All Other Claims.  Each claimant or his beneficiary must claim any benefit to which he believes he is entitled under this Plan by filing a written claim with the Retirement Board in accordance with claim filing procedures established by the Retirement Board.

A claimant's representative may act on behalf of a claimant in pursuing a claim for benefits or appeal of an adverse determination only after the claimant submits to the Plan a signed written authorization identifying the representative by name.  The Retirement Board will not recognize a claimant's representative who is a convicted felon.

The Retirement Board will decide a claim within 90 days of the date on which the claim is filed in accordance with the Plan's claim filing procedures, unless special circumstances (such as the need to obtain further clarifying information) require a longer period for adjudication and the claimant is notified in writing, prior to the expiration of the 90-day period, of the reasons for an extension of time and the expected decision date; provided, however, that no extensions will be permitted beyond 90 days after the expiration of the initial 90-day period.  If the Retirement Board fails to notify the claimant of its decision to grant or deny such claim within the time specified by this paragraph, the claimant may deem such claim to have been denied by the

CLOUD-AR-062

Retirement Board and the review procedure described below will become available to the claimant.

If a claim is denied, in whole or in part, the claimant must receive a written notice. The notice of an adverse determination will be written in a manner calculated to be understood by the claimant and will set forth the following:

(1)     the specific reason(s) for the denial;

(2)     a reference to the specific Plan provision on which the denial is based;

(3)     a description of additional information necessary for the claimant to perfect his claim, and the reasons such material or information is necessary; and

(4)     an explanation of the Plan's procedure for review of the denied or partially denied claim set forth below, including the claimant's right to bring a civil action under ERISA section 502(a) following an adverse determination on review.

The claimant will have 60 days from the receipt of an adverse determination to request in writing a review of the denial of his claim by the Retirement Board, which will provide a full and fair review.

The claimant or his duly authorized representative will have, upon request and free of charge, reasonable access to, and copies of all, documents, records, and other information relevant to the claimant's claim for benefits, and may submit issues and comments in writing. The review will take into account all available information submitted to the Retirement Board, regardless of whether such information was submitted or considered in the initial benefit determination. The decision by the Retirement Board with respect to the review will be made no later than the date of the Retirement Board meeting following the Plan's receipt of the claimant's request for review; unless the request for review is received within 30 days preceding the date of such meeting, in which case, a decision will be made no later than the date of the second Retirement Board meeting following the Plan's receipt of the claimant's request for review. Notwithstanding the preceding sentence, if special circumstances (such as the need to obtain further clarifying information) require further extension of time in order for the Retirement Board to make a decision with respect to the review, a decision will be made no later than the third Retirement Board meeting following the Plan's receipt of the claimant's request for review, and the claimant will be notified in writing, prior to the end of the initial review period, of the reasons for the extension and the expected decision date.

The claimant will be notified of the results of the review in writing after the determination.

Any notification of an adverse determination on review will:

(1)     state the specific reason(s) for the adverse determination;

(2)     reference the specific Plan provisions on which the adverse determination is based;

CLOUD-AR-063

(3)     state that the claimant is entitled to receive, upon request and free of charge, reasonable access to, and copies of, all documents, records, and other information relevant to the claimant's claim for benefits; and

(4)     state that the claimant has the right to bring a civil action under ERISA section 502(a).

**12.7     Limitation on Actions.**

(a)     <u>Adverse Determinations</u>.  No suit or legal action with respect to an adverse determination may be commenced more than forty-two months from the date of the final decision on the claim for benefits (including the decision on review).

(b)     <u>Other Actions</u>.  Except as provided in Section 12.7(a), no action alleging an omission, violation, or breach of any responsibility, duty, or obligation imposed by this Plan (or any internal rule, guideline, or protocol) or any applicable law may be commenced after the earlier of –

(1)     six years after the date of the omission, violation, or breach, or

(2)     three years after the earliest date on which the plaintiff had actual or constructive knowledge of the omission, violation, or breach,

except as provided in ERISA section 413 (but only where the fraud or concealment is separate from the offense and intended to conceal the existence of the offense).

**12.8     Receipt of Documents.**  Correspondence, applications, forms, elections, designations, and other documents of any type are deemed received by the Retirement Board only if and when actually received by the Retirement Board, and not when mailed or otherwise sent or transmitted to the Retirement Board.  The common law "mailbox rule" is expressly rejected.

**12.9     No Employment Contract.**  This Plan creates no contract of employment between the Employer or the League and any Player.

**12.10     Governing Law.**  To the extent permitted by applicable law, this Plan will be administered, construed, and enforced according to the laws of the State of New York.

**12.11     Severability.**  If any provision of this Plan is held illegal or void, such illegality or invalidity will not affect the remaining provisions of this Plan, but any such provision will be fully severable and the Plan will be construed and enforced as if the illegal or invalid provision had never been included.

**12.12     Recovery of Certain Overpayments.**  If false information submitted by or on behalf of a Player causes the Player to receive amounts under the Disability Plan to which such Player is not entitled, any future disability benefits payable to the Player or his beneficiary (including a Dependent or alternate payee) under Articles 5 or 6 of the Plan will be reduced by the amount of the overpayment from the Disability Plan, plus an interest rate of 6% per year.

59

CLOUD-AR-064

### 12.13   Qualified Military Service.

(a)      Notwithstanding any other provision of the Plan to the contrary, contributions, benefits and service credit with respect to qualified military service will be provided in accordance with Code section 414(u).

(b)      Effective January 1, 2007, the surviving Spouse or minor children of a Player who dies while performing qualified military service (as defined under section 414(u) of the Code) shall be entitled to any additional benefits (other than benefit accruals relating to the period of qualified military service) that would be provided under the Plan had the Participant died as an Active Player, in accordance with Code section 401(a)(37).

### 12.14   Location of Payee Unknown.
If the Plan Director, after following the procedures adopted by the Retirement Board, cannot locate a Player or beneficiary to whom a benefit is payable, the entire benefit of and amount payable to such Player or beneficiary are forfeited at the end of that Plan Year.  The amounts so forfeited will be separately accounted for as determined by the Retirement Board.  The forfeiture shall be applied to reduce future Employer contributions.  If the Player or beneficiary subsequently applies for the benefit (or, in cases where the right to receive payment of the benefit was previously established, the Plan is provided a proper address for the Player or beneficiary), the amount so forfeited (adjusted for interest or investment experience, if applicable) will be reinstated and all amounts then due will be paid to such Player or beneficiary.

### 12.15   Counterparts.
This Plan may be executed in counterparts.

CLOUD-AR-065

# APPENDIX A

## ACTUARIAL ASSUMPTIONS AND ACTUARIAL COST METHOD

| | |
|---|---|
| Mortality rates: | RP-2000 Table projected to 2020 |
| Disability mortality before age 65: | RP-2000 Table, disabled mortality |

Nonfootball related disability rates before retirement:

Sample Rates

| Age | Rate * |
|---|---|
| 22 | .19% |
| 27 | .19% |
| 32 | .19% |
| 37 | .26% |
| 42 | .45% |
| 47 | .90% |
| 52 | 2.06% |
| 57 | 4.28% |
| 62 | 12.19% |

* Rounded

Football related disability rates:

.35% per year for active Players and .28% per year for inactive Players up to 15 years after the Player's last Credited Season.

Line-of-duty rates:

| Age | Rate |
|---|---|
| 25–29 | 1.25% |
| 30–39 | 5.00% |
| 40–44 | 2.50% |
| 45+ | 0.00% |

Election of early payment benefit:

35% of all Players elect the benefit at termination. No assumption for Players with no Credited Seasons before 1993.

Retirement age:

| Age | Player with Pre-93 Season Rate | Player without Pre-93 Season Rate |
|---|---|---|
| 45 | 15% | 0% |
| 46–49 | 3% | 0% |
| 50–54 | 2% | 0% |
| 55 | 25% | 50% |
| 56–59 | 5% | 5% |
| 60 | 10% | 10% |
| 61 | 5% | 5% |
| 62–63 | 10% | 10% |
| 64 | 25% | 25% |
| 65 | 100% | 100% |

61

CLOUD-AR-066

| Withdrawal rates: | For Players With Service of – | Rate |
|---|---|---|
| | 1 year | 19.5% |
| | 2 years | 11.0% |
| | 3 years | 16.5% |
| | 4 years | 15.8% |
| | 5 years | 17.4% |
| | 6 years | 18.4% |
| | 7 years | 19.9% |
| | 8 years | 21.4% |
| | 9 years | 24.6% |
| | 10 years | 26.2% |
| | 11 years | 28.2% |
| | 12 years | 30.5% |
| | 13 years | 35.6% |
| | 14 years | 37.2% |
| | 15 years | 42.5% |
| | 16 years | 55.8% |
| | 17 years | 68.7% |
| | 18 years | 78.6% |
| | 19 years | 90.6% |
| | 20 years | 100.0% |

Percent married: Social Security awards in 1972.

Age of Player's Spouse: Three years younger than Player.

Remarriage and mortality rates for surviving Spouse's benefit: 1980 Railroad Retirement Board rates.

Net investment return: 7.25%.
Administration expenses: Actual for prior year.
Valuation date: First day of Plan Year.

Actuarial value of assets: Five-year asset smoothing method.

Funding method: Unit credit cost method.

CLOUD-AR-067

| | |
|---|---|
| Contribution Amount: | The contribution for each year will be in the amount as determined by the 2011 CBA, as amended by letter agreements between the Management Council and NFLPA from time to time, in accordance with the assumptions in this Appendix A; provided that in no event shall the contribution be less than the minimum required under ERISA. |
| Amortization Periods: | The Plan's unfunded actuarial accrued liability, not including the Legacy Benefit, as of April 1, 2011 will be amortized in level amounts over 7 years.  Each actuarial gain or loss base thereafter will be amortized over 7 years. |

63

CLOUD-AR-068

# APPENDIX B

## CONVERSION FACTORS

The following conversion factors will be used in determining actuarial equivalencies of the benefits under the Bert Bell/Pete Rozelle NFL Player Retirement Plan:

1.   Life and Ten-Year Certain Pension Option (Section 4.4(b)(6)) – 99% minus 0.4% for each complete year of age greater than age forty-five on the effective date.

2.   Life Only Pension with Social Security Adjustment Option (Section 4.4(b)(4)) –

    (a)   For Players with Annuity Starting Dates on or after April 1, 2007, the greater of the benefit calculated using (a) Tables I and II attached, or (b) the assumptions in Sections 5(a) and (b) of this Appendix B.

    (b)   For all other payments, see Tables I and II attached.

3.   Early Retirement Reduction and Deferred Retirement Increases (Section 4.3) – see Table III attached.

4.   Qualified Joint and Survivor Annuity Option (Section 4.4(b)(2)) and Life and Contingent Annuitant Pension Option (Section 4.4(b)(5)) –

    (a)   For Players with an Annuity Starting Date on or after September 1, 2007 who had not attained age fifty-five as of September 1, 2007 and who elect (i) the Qualified Joint and Survivor Annuity Option (Section 4.4(b)(2)), or (ii) the Contingent Annuitant Pension Option (Section 4.4(b)(5)) where the Player's Spouse is the contingent annuitant, see Table IV attached.

    (b)   For all other payments, see Table V attached.

5.   Early Payment Benefit (Section 4.5) – Effective April 1, 2008

    (a)   The mortality rates per the "applicable mortality table" under Code section 417(e)(3)(B), as specified in published guidance from the Internal Revenue Service as in effect at the relevant time, which includes (A) for distributions with an Annuity Starting Date on or after January 1, 2008, Revenue Ruling 2007-67, and (B) for distributions with an Annuity Starting Date on or after January 1, 2009, until subsequent guidance is issued, Notice 2008-85.

    (b)   The interest rate assumption used is the applicable interest rate described in section 417(e)(3)(C) for the second month preceding the first day of the Plan Year for which the calculation is made, as determined in accordance with published guidance from the Internal Revenue Service.

CLOUD-AR-069

Notwithstanding the foregoing, if they produce a larger benefit than the assumptions set forth in (a) and (b) above, the following actuarial assumptions will be used:

(i)     a mortality assumption from the 1951 Group Annuity Mortality Table for males with ages set back one year, and

(ii)    an interest rate assumption of 6%.

Further, for Annuity Starting Dates that occur on or after April 1, 2000 and prior to August 1, 2000, in lieu of the interest rate set forth in (ii), the following interest assumptions will be used if they would result in a greater benefit:

(iii)   the "applicable interest rate" (as defined below), if the present value of the benefit (using such rate or rates) is not in excess of $25,000; or

(iv)    120% of the "applicable interest rate" (as defined below), if the present value of the benefit exceeds $25,000 (as determined under paragraph (iii) above) and if the present value determined under this paragraph (iv) is at least $25,000.

As used herein, "applicable interest rate" will be the interest rate or rates which would be used (as of the first day of the Plan Year in which the distribution is made) by the Pension Benefit Guaranty Corporation for a trusteed single employer plan to value a benefit upon termination of an insufficient trusteed single employer plan.

6.     All other calculations – The 1951 Group Annuity Table, with ages set back one year for males and five years for females with a 6% per annum interest rate, will be used for all calculations where 1 through 5 of this Appendix B is not applicable.  All Players are assumed to be males and all beneficiaries are assumed to be females.

CLOUD-AR-070

**Table I**
**Social Security Adjustment**

_____

Increase in pension until age 62 for each $100 by which the increased pension is reduced thereafter.

| Player's Age on Effective Date | Increase |
|:---:|:---:|
| 45 | $23.93 |
| 46 | 25.76 |
| 47 | 27.75 |
| 48 | 29.93 |
| 49 | 32.31 |
| 50 | 34.92 |
| 51 | 37.79 |
| 52 | 40.95 |
| 53 | 44.43 |
| 54 | 48.28 |
| 55 | 52.54 |
| 56 | 57.27 |
| 57 | 62.53 |
| 58 | 68.40 |
| 59 | 74.96 |
| 60 | 82.33 |
| 61 | 90.63 |

For example, assume a Player is entitled to an Early Retirement Pension of $1,900 per month at age 49 and that his estimated Social Security benefit at age 62 is $1,500.  His benefit would be computed as follows:

| Before age 62 | = | $1,900 + [($1,500/100 x 32.31] |
|---|---|---|
| | = | $1,900 + $484.65 |
| | = | $2,384.65 |
| | | |
| After age 62 | = | $2,384.65 - $1,500 |
| | = | $884.65 |

Table I - Page 66

CLOUD-AR-071

**Table II**
**Social Security Adjustment**

---

If a monthly benefit at age 62 from Table I is less than $50, the increase in the benefit until age 62 is the product of the Early Retirement Pension minus $50 and the appropriate factor from the table shown below.

| Player's Age on Effective Date | Percentage Factor |
|:---:|:---:|
| 45 | 31.47 |
| 46 | 34.70 |
| 47 | 38.41 |
| 48 | 42.71 |
| 49 | 47.73 |
| 50 | 53.66 |
| 51 | 60.75 |
| 52 | 69.34 |
| 53 | 79.95 |
| 54 | 93.34 |
| 55 | 110.69 |
| 56 | 134.00 |
| 57 | 166.86 |
| 58 | 216.41 |
| 59 | 299.39 |
| 60 | 465.95 |
| 61 | 966.84 |

For example, assume a Player is entitled to an Early Retirement Pension of $700 per month at age 50 and that his estimated Social Security benefit is $1,500 per month. His benefit, as computed using the first table produces a benefit at age 62 of less than $50 (actually negative $276.20). His benefit would therefore be calculated as follows:

| Before age 62 | = | ($700 - $50) x .5366 |
|---|---|---|
| | = | $650 x .5366 |
| | = | $348.79 |

Therefore, the benefit payable to age 62 is $1,048.79 ($700 + $348.79), and the benefit payable at and after age 62 is $50.

Table II - Page 67

CLOUD-AR-072

## Table III

### Early Retirement Reduction Factors

Percentage of Normal Retirement Pension payable at specified age.

| Age | Percentage |
|-----|-----------|
| 45  | 45.2%     |
| 46  | 48.7      |
| 47  | 52.5      |
| 48  | 56.7      |
| 49  | 61.2      |
| 50  | 66.2      |
| 51  | 71.7      |
| 52  | 77.8      |
| 53  | 84.4      |
| 54  | 91.8      |

### Deferred Retirement Increase Factors

Percentage of Normal Retirement Pension Payable at specified age.

| Age | Percentage |
|-----|-----------|
| 56  | 109.1%    |
| 57  | 119.2     |
| 58  | 130.5     |
| 59  | 143.1     |
| 60  | 157.3     |
| 61  | 173.3     |
| 62  | 191.3     |
| 63  | 211.8     |
| 64  | 235.2     |
| 65  | 261.9     |

Table III - Page 68

CLOUD-AR-073

**Table IV**
**Table to Convert Benefit Credits to Joint and Survivor Options When the Player's Spouse is the Beneficiary and the Player Had Not Attained Age 55 As Of September 1, 2007**

If 100% of the benefit payable during the lifetime of the Player and his Spouse is paid to the Spouse if the Player dies first, then the applicable factor from this chart is applied to the benefit.

If the Player's Spouse receives less than 100% of the benefit, the appropriate factor is obtained from line 5 of the following worksheet:

(1)     Enter the percent (in decimal form) of the Player's benefit
        to go to the Player's Spouse on his death:                    _____

(2)     Enter the factor from this Table IV if 100% of the benefit
        was to go to the Player's Spouse:                             _____

(3)     Multiply the entries on lines (1) and (2) and enter here:
                                                                      _____

(4)     Add the entries on lines (1) and (2) and subtract the entry
        on line (3):                                                  _____

(5)     Divide the entry on line (2) by the entry on line (4) (the
        answer should be carried to three decimal places):           _____

Table IV - Page 69

CLOUD-AR-074

**Table IV, continued**

**Table to Convert Credits to Joint and Survivor Options**
**When the Player's Spouse is the Beneficiary and the Player Had Not Attained Age 55 As Of September 1, 2007**

**Age of Player When**
**Benefits Begin To Be Paid**    **Age of Spouse  When Benefits Begin To Be Paid To Player**

|    | 25 | 26 | 27 | 28 | 29 | 30 | 31 |
|----|----|----|----|----|----|----|----|
| 45 | 0.832 | 0.834 | 0.836 | 0.838 | 0.840 | 0.843 | 0.845 |
| 46 | 0.822 | 0.824 | 0.826 | 0.828 | 0.830 | 0.833 | 0.835 |
| 47 | 0.811 | 0.813 | 0.816 | 0.818 | 0.820 | 0.822 | 0.825 |
| 48 | 0.801 | 0.803 | 0.805 | 0.807 | 0.809 | 0.812 | 0.814 |
| 49 | 0.789 | 0.792 | 0.794 | 0.796 | 0.798 | 0.801 | 0.803 |
| 50 | 0.778 | 0.780 | 0.782 | 0.784 | 0.787 | 0.789 | 0.792 |
| 51 | 0.766 | 0.768 | 0.771 | 0.773 | 0.775 | 0.778 | 0.780 |
| 52 | 0.754 | 0.756 | 0.759 | 0.761 | 0.763 | 0.766 | 0.768 |
| 53 | 0.742 | 0.744 | 0.746 | 0.748 | 0.751 | 0.753 | 0.756 |
| 54 | 0.729 | 0.731 | 0.734 | 0.736 | 0.738 | 0.741 | 0.743 |
| 55 | 0.716 | 0.719 | 0.721 | 0.723 | 0.725 | 0.728 | 0.730 |
| 56 | 0.703 | 0.705 | 0.707 | 0.710 | 0.712 | 0.714 | 0.717 |
| 57 | 0.690 | 0.692 | 0.694 | 0.696 | 0.698 | 0.701 | 0.703 |
| 58 | 0.676 | 0.678 | 0.680 | 0.682 | 0.684 | 0.687 | 0.689 |
| 59 | 0.661 | 0.663 | 0.665 | 0.668 | 0.670 | 0.672 | 0.675 |
| 60 | 0.647 | 0.649 | 0.651 | 0.653 | 0.655 | 0.657 | 0.660 |
| 61 | 0.632 | 0.633 | 0.635 | 0.638 | 0.640 | 0.642 | 0.645 |
| 62 | 0.616 | 0.618 | 0.620 | 0.622 | 0.624 | 0.626 | 0.629 |
| 63 | 0.600 | 0.602 | 0.604 | 0.606 | 0.608 | 0.610 | 0.613 |
| 64 | 0.584 | 0.586 | 0.587 | 0.589 | 0.592 | 0.594 | 0.596 |
| 65 | 0.567 | 0.569 | 0.571 | 0.573 | 0.575 | 0.577 | 0.579 |

Table IV - Page 70

CLOUD-AR-075

**Table IV, continued**

**Table to Convert Credits to Joint and Survivor Options**
**When the Player's Spouse is the Beneficiary and the Player Had Not Attained Age 55 As Of September 1, 2007**

**Age of Player When**
**Benefits Begin To Be Paid**        Age of Spouse  When Benefits Begin To Be Paid To Player

|  | 32 | 33 | 34 | 35 | 36 | 37 | 38 |
|---|---|---|---|---|---|---|---|
| 45 | 0.848 | 0.850 | 0.853 | 0.855 | 0.858 | 0.861 | 0.864 |
| 46 | 0.838 | 0.840 | 0.843 | 0.846 | 0.848 | 0.851 | 0.854 |
| 47 | 0.827 | 0.830 | 0.833 | 0.835 | 0.838 | 0.841 | 0.844 |
| 48 | 0.817 | 0.819 | 0.822 | 0.825 | 0.828 | 0.831 | 0.834 |
| 49 | 0.806 | 0.808 | 0.811 | 0.814 | 0.817 | 0.820 | 0.823 |
| 50 | 0.794 | 0.797 | 0.800 | 0.803 | 0.806 | 0.809 | 0.812 |
| 51 | 0.783 | 0.785 | 0.788 | 0.791 | 0.794 | 0.797 | 0.801 |
| 52 | 0.771 | 0.773 | 0.776 | 0.779 | 0.782 | 0.786 | 0.789 |
| 53 | 0.758 | 0.761 | 0.764 | 0.767 | 0.770 | 0.773 | 0.777 |
| 54 | 0.746 | 0.749 | 0.751 | 0.754 | 0.758 | 0.761 | 0.764 |
| 55 | 0.733 | 0.736 | 0.739 | 0.742 | 0.745 | 0.748 | 0.751 |
| 56 | 0.720 | 0.722 | 0.725 | 0.728 | 0.731 | 0.735 | 0.738 |
| 57 | 0.706 | 0.709 | 0.712 | 0.715 | 0.718 | 0.721 | 0.724 |
| 58 | 0.692 | 0.695 | 0.697 | 0.700 | 0.704 | 0.707 | 0.710 |
| 59 | 0.677 | 0.680 | 0.683 | 0.686 | 0.689 | 0.692 | 0.696 |
| 60 | 0.662 | 0.665 | 0.668 | 0.671 | 0.674 | 0.677 | 0.681 |
| 61 | 0.647 | 0.650 | 0.653 | 0.656 | 0.659 | 0.662 | 0.665 |
| 62 | 0.631 | 0.634 | 0.637 | 0.640 | 0.643 | 0.646 | 0.649 |
| 63 | 0.615 | 0.618 | 0.621 | 0.624 | 0.627 | 0.630 | 0.633 |
| 64 | 0.599 | 0.601 | 0.604 | 0.607 | 0.610 | 0.613 | 0.616 |
| 65 | 0.582 | 0.584 | 0.587 | 0.590 | 0.593 | 0.596 | 0.599 |

Table IV - Page 71

CLOUD-AR-076

**Table IV, continued**

**Table to Convert Credits to Joint and Survivor Options**
**When the Player's Spouse is the Beneficiary and the Player Had Not Attained Age 55 As Of September 1, 2007**

**Age of Player When**
**Benefits Begin To Be Paid**      Age of Spouse  When Benefits Begin To Be Paid To Player

| | 39 | 40 | 41 | 42 | 43 | 44 | 45 |
|---|---|---|---|---|---|---|---|
| 45 | 0.867 | 0.870 | 0.873 | 0.876 | 0.879 | 0.882 | 0.885 |
| 46 | 0.857 | 0.860 | 0.863 | 0.866 | 0.870 | 0.873 | 0.876 |
| 47 | 0.847 | 0.850 | 0.854 | 0.857 | 0.860 | 0.863 | 0.867 |
| 48 | 0.837 | 0.840 | 0.843 | 0.847 | 0.850 | 0.854 | 0.857 |
| 49 | 0.826 | 0.830 | 0.833 | 0.836 | 0.840 | 0.843 | 0.847 |
| 50 | 0.815 | 0.819 | 0.822 | 0.826 | 0.829 | 0.833 | 0.837 |
| 51 | 0.804 | 0.807 | 0.811 | 0.814 | 0.818 | 0.822 | 0.826 |
| 52 | 0.792 | 0.796 | 0.799 | 0.803 | 0.807 | 0.810 | 0.814 |
| 53 | 0.780 | 0.784 | 0.787 | 0.791 | 0.795 | 0.799 | 0.803 |
| 54 | 0.768 | 0.771 | 0.775 | 0.779 | 0.782 | 0.786 | 0.791 |
| 55 | 0.755 | 0.758 | 0.762 | 0.766 | 0.770 | 0.774 | 0.778 |
| 56 | 0.742 | 0.745 | 0.749 | 0.753 | 0.757 | 0.761 | 0.765 |
| 57 | 0.728 | 0.732 | 0.735 | 0.739 | 0.743 | 0.747 | 0.752 |
| 58 | 0.714 | 0.717 | 0.721 | 0.725 | 0.729 | 0.733 | 0.738 |
| 59 | 0.699 | 0.703 | 0.707 | 0.711 | 0.715 | 0.719 | 0.723 |
| 60 | 0.684 | 0.688 | 0.692 | 0.696 | 0.700 | 0.704 | 0.708 |
| 61 | 0.669 | 0.673 | 0.676 | 0.680 | 0.684 | 0.689 | 0.693 |
| 62 | 0.653 | 0.657 | 0.660 | 0.664 | 0.668 | 0.673 | 0.677 |
| 63 | 0.637 | 0.640 | 0.644 | 0.648 | 0.652 | 0.656 | 0.661 |
| 64 | 0.620 | 0.623 | 0.627 | 0.631 | 0.635 | 0.639 | 0.644 |
| 65 | 0.603 | 0.606 | 0.610 | 0.614 | 0.618 | 0.622 | 0.626 |

Table IV - Page 72

CLOUD-AR-077

**Table IV, continued**

**Table to Convert Credits to Joint and Survivor Options**
**When the Player's Spouse is the Beneficiary and the Player Had Not Attained Age 55 As Of September 1, 2007**

**Age of Player When**
**Benefits Begin To Be Paid**          Age of Spouse  When Benefits Begin To Be Paid To Player

|     | 46 | 47 | 48 | 49 | 50 | 51 | 52 |
|-----|-----|-----|-----|-----|-----|-----|-----|
| 45 | 0.888 | 0.891 | 0.894 | 0.898 | 0.901 | 0.904 | 0.907 |
| 46 | 0.879 | 0.883 | 0.886 | 0.889 | 0.893 | 0.896 | 0.899 |
| 47 | 0.870 | 0.874 | 0.877 | 0.881 | 0.884 | 0.888 | 0.891 |
| 48 | 0.861 | 0.864 | 0.868 | 0.871 | 0.875 | 0.879 | 0.882 |
| 49 | 0.851 | 0.854 | 0.858 | 0.862 | 0.866 | 0.870 | 0.873 |
| 50 | 0.840 | 0.844 | 0.848 | 0.852 | 0.856 | 0.860 | 0.864 |
| 51 | 0.830 | 0.833 | 0.837 | 0.842 | 0.846 | 0.850 | 0.854 |
| 52 | 0.818 | 0.822 | 0.827 | 0.831 | 0.835 | 0.839 | 0.844 |
| 53 | 0.807 | 0.811 | 0.815 | 0.819 | 0.824 | 0.828 | 0.833 |
| 54 | 0.795 | 0.799 | 0.803 | 0.808 | 0.812 | 0.817 | 0.821 |
| 55 | 0.782 | 0.787 | 0.791 | 0.796 | 0.800 | 0.805 | 0.810 |
| 56 | 0.769 | 0.774 | 0.778 | 0.783 | 0.788 | 0.793 | 0.797 |
| 57 | 0.756 | 0.761 | 0.765 | 0.770 | 0.775 | 0.780 | 0.785 |
| 58 | 0.742 | 0.747 | 0.751 | 0.756 | 0.761 | 0.766 | 0.771 |
| 59 | 0.728 | 0.732 | 0.737 | 0.742 | 0.747 | 0.752 | 0.757 |
| 60 | 0.713 | 0.718 | 0.722 | 0.727 | 0.732 | 0.738 | 0.743 |
| 61 | 0.698 | 0.702 | 0.707 | 0.712 | 0.717 | 0.722 | 0.728 |
| 62 | 0.682 | 0.686 | 0.691 | 0.696 | 0.701 | 0.707 | 0.712 |
| 63 | 0.665 | 0.670 | 0.675 | 0.680 | 0.685 | 0.690 | 0.696 |
| 64 | 0.648 | 0.653 | 0.658 | 0.663 | 0.668 | 0.673 | 0.679 |
| 65 | 0.631 | 0.635 | 0.640 | 0.645 | 0.650 | 0.656 | 0.661 |

Table IV - Page 73

CLOUD-AR-078

**Table IV, continued**

**Table to Convert Credits to Joint and Survivor Options**
**When the Player's Spouse is the Beneficiary and the Player Had Not Attained Age 55 As Of September 1, 2007**

**Age of Player When**
**Benefits Begin To Be Paid**      Age of Spouse  When Benefits Begin To Be Paid To Player

|     | 53 | 54 | 55 | 56 | 57 | 58 | 59 |
|-----|-----|-----|-----|-----|-----|-----|-----|
| 45 | 0.910 | 0.913 | 0.916 | 0.920 | 0.922 | 0.925 | 0.928 |
| 46 | 0.903 | 0.906 | 0.909 | 0.912 | 0.916 | 0.919 | 0.922 |
| 47 | 0.895 | 0.898 | 0.901 | 0.905 | 0.908 | 0.912 | 0.915 |
| 48 | 0.886 | 0.890 | 0.893 | 0.897 | 0.901 | 0.904 | 0.908 |
| 49 | 0.877 | 0.881 | 0.885 | 0.889 | 0.892 | 0.896 | 0.900 |
| 50 | 0.868 | 0.872 | 0.876 | 0.880 | 0.884 | 0.888 | 0.892 |
| 51 | 0.858 | 0.862 | 0.866 | 0.871 | 0.875 | 0.879 | 0.883 |
| 52 | 0.848 | 0.852 | 0.857 | 0.861 | 0.865 | 0.870 | 0.874 |
| 53 | 0.837 | 0.842 | 0.846 | 0.851 | 0.856 | 0.860 | 0.865 |
| 54 | 0.826 | 0.831 | 0.836 | 0.840 | 0.845 | 0.850 | 0.855 |
| 55 | 0.815 | 0.819 | 0.824 | 0.829 | 0.834 | 0.839 | 0.844 |
| 56 | 0.802 | 0.807 | 0.813 | 0.818 | 0.823 | 0.828 | 0.833 |
| 57 | 0.790 | 0.795 | 0.800 | 0.805 | 0.811 | 0.816 | 0.822 |
| 58 | 0.777 | 0.782 | 0.787 | 0.793 | 0.798 | 0.804 | 0.810 |
| 59 | 0.763 | 0.768 | 0.774 | 0.779 | 0.785 | 0.791 | 0.797 |
| 60 | 0.748 | 0.754 | 0.760 | 0.765 | 0.771 | 0.777 | 0.783 |
| 61 | 0.733 | 0.739 | 0.745 | 0.751 | 0.757 | 0.763 | 0.769 |
| 62 | 0.718 | 0.723 | 0.729 | 0.735 | 0.741 | 0.748 | 0.754 |
| 63 | 0.701 | 0.707 | 0.713 | 0.719 | 0.725 | 0.732 | 0.738 |
| 64 | 0.684 | 0.690 | 0.696 | 0.702 | 0.709 | 0.715 | 0.722 |
| 65 | 0.667 | 0.673 | 0.679 | 0.685 | 0.691 | 0.698 | 0.705 |

Table IV - Page 74

CLOUD-AR-079

**Table IV, continued**

**Table to Convert Credits to Joint and Survivor Options**
**When the Player's Spouse is the Beneficiary and the Player Had Not Attained Age 55 As Of September 1, 2007**

Age of Player When
Benefits Begin To Be Paid      Age of Spouse  When Benefits Begin To Be Paid To Player

|     | 60 | 61 | 62 | 63 | 64 | 65 | 66 |
|-----|-----|-----|-----|-----|-----|-----|-----|
| 45 | 0.931 | 0.934 | 0.937 | 0.939 | 0.942 | 0.945 | 0.947 |
| 46 | 0.925 | 0.928 | 0.931 | 0.934 | 0.937 | 0.939 | 0.942 |
| 47 | 0.918 | 0.921 | 0.925 | 0.928 | 0.931 | 0.934 | 0.936 |
| 48 | 0.911 | 0.914 | 0.918 | 0.921 | 0.924 | 0.928 | 0.931 |
| 49 | 0.904 | 0.907 | 0.911 | 0.914 | 0.918 | 0.921 | 0.924 |
| 50 | 0.896 | 0.899 | 0.903 | 0.907 | 0.911 | 0.914 | 0.918 |
| 51 | 0.887 | 0.891 | 0.895 | 0.899 | 0.903 | 0.907 | 0.911 |
| 52 | 0.879 | 0.883 | 0.887 | 0.891 | 0.895 | 0.900 | 0.904 |
| 53 | 0.869 | 0.874 | 0.878 | 0.883 | 0.887 | 0.892 | 0.896 |
| 54 | 0.860 | 0.864 | 0.869 | 0.874 | 0.879 | 0.883 | 0.888 |
| 55 | 0.849 | 0.854 | 0.859 | 0.864 | 0.869 | 0.874 | 0.879 |
| 56 | 0.839 | 0.844 | 0.849 | 0.854 | 0.860 | 0.865 | 0.870 |
| 57 | 0.827 | 0.833 | 0.838 | 0.844 | 0.849 | 0.855 | 0.860 |
| 58 | 0.815 | 0.821 | 0.827 | 0.832 | 0.838 | 0.844 | 0.850 |
| 59 | 0.803 | 0.809 | 0.815 | 0.821 | 0.827 | 0.833 | 0.839 |
| 60 | 0.789 | 0.795 | 0.802 | 0.808 | 0.814 | 0.820 | 0.827 |
| 61 | 0.775 | 0.782 | 0.788 | 0.794 | 0.801 | 0.808 | 0.814 |
| 62 | 0.760 | 0.767 | 0.774 | 0.780 | 0.787 | 0.794 | 0.801 |
| 63 | 0.745 | 0.752 | 0.758 | 0.765 | 0.772 | 0.779 | 0.786 |
| 64 | 0.728 | 0.735 | 0.742 | 0.749 | 0.757 | 0.764 | 0.771 |
| 65 | 0.712 | 0.719 | 0.726 | 0.733 | 0.740 | 0.748 | 0.755 |

Table IV - Page 75

CLOUD-AR-080

**Table IV, continued**

**Table to Convert Credits to Joint and Survivor Options**
**When the Player's Spouse is the Beneficiary and the Player Had Not Attained Age 55 As Of September 1, 2007**

**Age of Player When**
**Benefits Begin To Be Paid**      **Age of Spouse  When Benefits Begin To Be Paid To Player**

| | 67 | 68 | 69 | 70 |
|---|---|---|---|---|
| 45 | 0.950 | 0.952 | 0.954 | 0.956 |
| 46 | 0.945 | 0.947 | 0.950 | 0.952 |
| 47 | 0.939 | 0.942 | 0.945 | 0.947 |
| 48 | 0.934 | 0.937 | 0.939 | 0.942 |
| 49 | 0.928 | 0.931 | 0.934 | 0.937 |
| 50 | 0.921 | 0.925 | 0.928 | 0.931 |
| 51 | 0.915 | 0.918 | 0.922 | 0.925 |
| 52 | 0.908 | 0.911 | 0.915 | 0.919 |
| 53 | 0.900 | 0.904 | 0.908 | 0.912 |
| 54 | 0.892 | 0.897 | 0.901 | 0.905 |
| 55 | 0.884 | 0.888 | 0.893 | 0.898 |
| 56 | 0.875 | 0.880 | 0.885 | 0.890 |
| 57 | 0.865 | 0.871 | 0.876 | 0.881 |
| 58 | 0.855 | 0.861 | 0.866 | 0.872 |
| 59 | 0.845 | 0.850 | 0.856 | 0.862 |
| 60 | 0.833 | 0.839 | 0.845 | 0.851 |
| 61 | 0.821 | 0.827 | 0.834 | 0.840 |
| 62 | 0.807 | 0.814 | 0.821 | 0.828 |
| 63 | 0.793 | 0.801 | 0.808 | 0.815 |
| 64 | 0.779 | 0.786 | 0.793 | 0.801 |
| 65 | 0.763 | 0.771 | 0.778 | 0.786 |

Table IV - Page 76

CLOUD-AR-081

**Table V**

**Table to Convert Benefit Credits to Joint and Survivor Options When Player's Beneficiary is Not His Spouse or When Player Had Attained Age 55 As Of September 1, 2007**

If 100% of the benefit payable during the lifetime of the Player and his beneficiary is paid to the beneficiary if the Player dies first, then the applicable factor from this chart is applied to the benefit.

If the beneficiary receives less than 100% of the benefit, the appropriate factor is obtained from line 5 of the following worksheet:

(1)   Enter the percent (in decimal form) of the Player's benefit to go to the beneficiary on his death:   _____

(2)   Enter the factor from this Table V if 100% of the benefit was to go to the beneficiary:   _____

(3)   Multiply the entries on lines (1) and (2) and enter here:   _____

(4)   Add the entries on lines (1) and (2) and subtract the entry on line (3):   _____

(5)   Divide the entry on line (2) by the entry on line (4) (the answer should be carried to three decimal places):   _____

Table V - Page 77

CLOUD-AR-082

**Table V**

**Table to Convert Credits to Joint and Survivor Options When Player's Beneficiary is Not His Spouse or When Player Had Attained Age 55 As Of September 1, 2007**

**Age of Player When Benefits Begin To Be Paid**        Age of Beneficiary When Benefits Begin To Be Paid To Player

|       | 25    | 26    | 27    | 28    | 29    | 30    | 31    |
|-------|-------|-------|-------|-------|-------|-------|-------|
| 45    | 0.834 | 0.836 | 0.838 | 0.841 | 0.843 | 0.845 | 0.848 |
| 46    | 0.824 | 0.826 | 0.828 | 0.831 | 0.833 | 0.835 | 0.838 |
| 47    | 0.813 | 0.816 | 0.818 | 0.820 | 0.823 | 0.825 | 0.828 |
| 48    | 0.803 | 0.805 | 0.807 | 0.809 | 0.812 | 0.814 | 0.817 |
| 49    | 0.791 | 0.794 | 0.796 | 0.798 | 0.801 | 0.803 | 0.806 |
| 50    | 0.780 | 0.782 | 0.784 | 0.787 | 0.789 | 0.792 | 0.795 |
| 51    | 0.768 | 0.770 | 0.773 | 0.775 | 0.778 | 0.780 | 0.783 |
| 52    | 0.756 | 0.758 | 0.761 | 0.763 | 0.766 | 0.768 | 0.771 |
| 53    | 0.744 | 0.746 | 0.748 | 0.751 | 0.753 | 0.756 | 0.759 |
| 54    | 0.731 | 0.733 | 0.736 | 0.738 | 0.741 | 0.743 | 0.746 |
| 55    | 0.718 | 0.721 | 0.723 | 0.725 | 0.728 | 0.730 | 0.733 |
| 56    | 0.705 | 0.707 | 0.709 | 0.712 | 0.714 | 0.717 | 0.720 |
| 57    | 0.691 | 0.694 | 0.696 | 0.698 | 0.701 | 0.703 | 0.706 |
| 58    | 0.677 | 0.680 | 0.682 | 0.684 | 0.687 | 0.689 | 0.692 |
| 59    | 0.663 | 0.665 | 0.667 | 0.670 | 0.672 | 0.675 | 0.677 |
| 60    | 0.648 | 0.650 | 0.653 | 0.655 | 0.657 | 0.660 | 0.662 |
| 61    | 0.633 | 0.635 | 0.637 | 0.640 | 0.642 | 0.644 | 0.647 |
| 62    | 0.618 | 0.620 | 0.622 | 0.624 | 0.626 | 0.629 | 0.631 |
| 63    | 0.602 | 0.604 | 0.606 | 0.608 | 0.610 | 0.612 | 0.615 |
| 64    | 0.585 | 0.587 | 0.589 | 0.591 | 0.594 | 0.596 | 0.598 |
| 65    | 0.569 | 0.571 | 0.573 | 0.575 | 0.577 | 0.579 | 0.582 |

Table V - Page 78

CLOUD-AR-083

**Table V, continued**

**Table to Convert Credits to Joint and Survivor Options When Player's Beneficiary is Not His Spouse or When Player Had Attained Age 55 As Of September 1, 2007**

Age of Player When
Benefits Begin To Be Paid          Age of Beneficiary When Benefits Begin To Be Paid To Player

|     | 32 | 33 | 34 | 35 | 36 | 37 | 38 |
|-----|-----|-----|-----|-----|-----|-----|-----|
| 45 | 0.851 | 0.853 | 0.856 | 0.859 | 0.862 | 0.865 | 0.868 |
| 46 | 0.841 | 0.844 | 0.846 | 0.849 | 0.853 | 0.856 | 0.859 |
| 47 | 0.830 | 0.833 | 0.836 | 0.839 | 0.842 | 0.846 | 0.849 |
| 48 | 0.820 | 0.823 | 0.826 | 0.829 | 0.832 | 0.835 | 0.839 |
| 49 | 0.809 | 0.812 | 0.815 | 0.818 | 0.821 | 0.825 | 0.828 |
| 50 | 0.798 | 0.800 | 0.804 | 0.807 | 0.810 | 0.813 | 0.817 |
| 51 | 0.786 | 0.789 | 0.792 | 0.795 | 0.799 | 0.802 | 0.806 |
| 52 | 0.774 | 0.777 | 0.780 | 0.783 | 0.787 | 0.790 | 0.794 |
| 53 | 0.762 | 0.765 | 0.768 | 0.771 | 0.774 | 0.778 | 0.782 |
| 54 | 0.749 | 0.752 | 0.755 | 0.758 | 0.762 | 0.765 | 0.769 |
| 55 | 0.736 | 0.739 | 0.742 | 0.745 | 0.749 | 0.752 | 0.756 |
| 56 | 0.723 | 0.726 | 0.729 | 0.732 | 0.735 | 0.739 | 0.743 |
| 57 | 0.709 | 0.712 | 0.715 | 0.718 | 0.722 | 0.725 | 0.729 |
| 58 | 0.695 | 0.698 | 0.701 | 0.704 | 0.708 | 0.711 | 0.715 |
| 59 | 0.680 | 0.683 | 0.686 | 0.690 | 0.693 | 0.697 | 0.700 |
| 60 | 0.665 | 0.668 | 0.671 | 0.675 | 0.678 | 0.681 | 0.685 |
| 61 | 0.650 | 0.653 | 0.656 | 0.659 | 0.662 | 0.666 | 0.670 |
| 62 | 0.634 | 0.637 | 0.640 | 0.643 | 0.646 | 0.650 | 0.654 |
| 63 | 0.618 | 0.621 | 0.624 | 0.627 | 0.630 | 0.633 | 0.637 |
| 64 | 0.601 | 0.604 | 0.607 | 0.610 | 0.613 | 0.617 | 0.620 |
| 65 | 0.584 | 0.587 | 0.590 | 0.593 | 0.596 | 0.599 | 0.603 |

Table V - Page 79

CLOUD-AR-084

**Table V, continued**

**Table to Convert Credits to Joint and Survivor Options When Player's Beneficiary is Not His Spouse or When Player Had Attained Age 55 As Of September 1, 2007**

**Age of Player When Benefits Begin To Be Paid**    Age of Beneficiary When Benefits Begin To Be Paid To Player

| | 39 | 40 | 41 | 42 | 43 | 44 | 45 |
|---|---|---|---|---|---|---|---|
| 45 | 0.872 | 0.875 | 0.878 | 0.882 | 0.886 | 0.889 | 0.893 |
| 46 | 0.862 | 0.865 | 0.869 | 0.873 | 0.877 | 0.881 | 0.884 |
| 47 | 0.852 | 0.856 | 0.859 | 0.863 | 0.867 | 0.871 | 0.875 |
| 48 | 0.842 | 0.846 | 0.849 | 0.853 | 0.857 | 0.861 | 0.866 |
| 49 | 0.832 | 0.835 | 0.839 | 0.843 | 0.847 | 0.851 | 0.856 |
| 50 | 0.821 | 0.824 | 0.828 | 0.832 | 0.836 | 0.841 | 0.845 |
| 51 | 0.809 | 0.813 | 0.817 | 0.821 | 0.825 | 0.830 | 0.834 |
| 52 | 0.798 | 0.801 | 0.805 | 0.809 | 0.814 | 0.818 | 0.823 |
| 53 | 0.785 | 0.789 | 0.793 | 0.797 | 0.802 | 0.807 | 0.811 |
| 54 | 0.773 | 0.777 | 0.781 | 0.785 | 0.790 | 0.794 | 0.799 |
| 55 | 0.760 | 0.764 | 0.768 | 0.772 | 0.777 | 0.782 | 0.787 |
| 56 | 0.747 | 0.751 | 0.755 | 0.759 | 0.764 | 0.769 | 0.774 |
| 57 | 0.733 | 0.737 | 0.741 | 0.746 | 0.750 | 0.755 | 0.760 |
| 58 | 0.719 | 0.723 | 0.727 | 0.732 | 0.736 | 0.741 | 0.746 |
| 59 | 0.704 | 0.709 | 0.713 | 0.717 | 0.722 | 0.727 | 0.732 |
| 60 | 0.689 | 0.693 | 0.698 | 0.702 | 0.707 | 0.711 | 0.716 |
| 61 | 0.674 | 0.678 | 0.682 | 0.686 | 0.691 | 0.696 | 0.701 |
| 62 | 0.657 | 0.662 | 0.666 | 0.670 | 0.675 | 0.680 | 0.685 |
| 63 | 0.641 | 0.645 | 0.650 | 0.654 | 0.658 | 0.663 | 0.668 |
| 64 | 0.624 | 0.628 | 0.633 | 0.637 | 0.641 | 0.646 | 0.651 |
| 65 | 0.607 | 0.611 | 0.615 | 0.620 | 0.624 | 0.629 | 0.633 |

Table V - Page 80

CLOUD-AR-085

**Table V, continued**

**Table to Convert Credits to Joint and Survivor Options When Player's Beneficiary is Not His Spouse or When Player Had Attained Age 55 As Of September 1, 2007**

Age of Player When
Benefits Begin To Be Paid          Age of Beneficiary When Benefits Begin To Be Paid To Player

|     | 46 | 47 | 48 | 49 | 50 | 51 | 52 |
|-----|-----|-----|-----|-----|-----|-----|-----|
| 45 | 0.897 | 0.901 | 0.905 | 0.909 | 0.913 | 0.917 | 0.921 |
| 46 | 0.888 | 0.893 | 0.897 | 0.901 | 0.905 | 0.909 | 0.914 |
| 47 | 0.879 | 0.884 | 0.888 | 0.892 | 0.897 | 0.901 | 0.906 |
| 48 | 0.870 | 0.874 | 0.879 | 0.883 | 0.888 | 0.893 | 0.897 |
| 49 | 0.860 | 0.865 | 0.869 | 0.874 | 0.879 | 0.884 | 0.889 |
| 50 | 0.850 | 0.855 | 0.859 | 0.864 | 0.869 | 0.874 | 0.879 |
| 51 | 0.839 | 0.844 | 0.849 | 0.854 | 0.859 | 0.864 | 0.870 |
| 52 | 0.828 | 0.833 | 0.838 | 0.843 | 0.849 | 0.854 | 0.859 |
| 53 | 0.816 | 0.821 | 0.827 | 0.832 | 0.837 | 0.843 | 0.849 |
| 54 | 0.804 | 0.809 | 0.815 | 0.820 | 0.826 | 0.832 | 0.838 |
| 55 | 0.792 | 0.797 | 0.802 | 0.808 | 0.814 | 0.820 | 0.826 |
| 56 | 0.779 | 0.784 | 0.790 | 0.795 | 0.801 | 0.807 | 0.814 |
| 57 | 0.765 | 0.771 | 0.776 | 0.782 | 0.788 | 0.794 | 0.801 |
| 58 | 0.751 | 0.757 | 0.762 | 0.768 | 0.774 | 0.781 | 0.787 |
| 59 | 0.737 | 0.742 | 0.748 | 0.754 | 0.760 | 0.767 | 0.773 |
| 60 | 0.722 | 0.727 | 0.733 | 0.739 | 0.745 | 0.752 | 0.759 |
| 61 | 0.706 | 0.712 | 0.718 | 0.724 | 0.730 | 0.736 | 0.743 |
| 62 | 0.690 | 0.696 | 0.701 | 0.707 | 0.714 | 0.720 | 0.727 |
| 63 | 0.673 | 0.679 | 0.685 | 0.691 | 0.697 | 0.704 | 0.710 |
| 64 | 0.656 | 0.662 | 0.667 | 0.673 | 0.680 | 0.686 | 0.693 |
| 65 | 0.639 | 0.644 | 0.650 | 0.656 | 0.662 | 0.669 | 0.675 |

Table V - Page 81

CLOUD-AR-086

**Table V, continued**

**Table to Convert Credits to Joint and Survivor Options When Player's Beneficiary is Not His Spouse or When Player Had Attained Age 55 As Of September 1, 2007**

Age of Player When
Benefits Begin To Be Paid          Age of Beneficiary When Benefits Begin To Be Paid To Player

|    | 53 | 54 | 55 | 56 | 57 | 58 | 59 |
|----|-----|-----|-----|-----|-----|-----|-----|
| 45 | 0.925 | 0.929 | 0.933 | 0.937 | 0.941 | 0.945 | 0.949 |
| 46 | 0.918 | 0.922 | 0.927 | 0.931 | 0.935 | 0.939 | 0.944 |
| 47 | 0.910 | 0.915 | 0.919 | 0.924 | 0.928 | 0.933 | 0.937 |
| 48 | 0.902 | 0.907 | 0.912 | 0.917 | 0.921 | 0.926 | 0.931 |
| 49 | 0.894 | 0.899 | 0.904 | 0.909 | 0.914 | 0.919 | 0.924 |
| 50 | 0.885 | 0.890 | 0.895 | 0.901 | 0.906 | 0.911 | 0.916 |
| 51 | 0.875 | 0.881 | 0.886 | 0.892 | 0.897 | 0.903 | 0.909 |
| 52 | 0.865 | 0.871 | 0.877 | 0.883 | 0.888 | 0.894 | 0.900 |
| 53 | 0.855 | 0.861 | 0.867 | 0.873 | 0.879 | 0.885 | 0.891 |
| 54 | 0.844 | 0.850 | 0.856 | 0.862 | 0.869 | 0.875 | 0.882 |
| 55 | 0.832 | 0.839 | 0.845 | 0.852 | 0.858 | 0.865 | 0.872 |
| 56 | 0.820 | 0.827 | 0.833 | 0.840 | 0.847 | 0.854 | 0.861 |
| 57 | 0.807 | 0.814 | 0.821 | 0.828 | 0.835 | 0.843 | 0.850 |
| 58 | 0.794 | 0.801 | 0.808 | 0.815 | 0.823 | 0.831 | 0.838 |
| 59 | 0.780 | 0.787 | 0.795 | 0.802 | 0.810 | 0.818 | 0.826 |
| 60 | 0.766 | 0.773 | 0.780 | 0.788 | 0.796 | 0.804 | 0.812 |
| 61 | 0.750 | 0.758 | 0.765 | 0.773 | 0.781 | 0.789 | 0.798 |
| 62 | 0.734 | 0.742 | 0.749 | 0.757 | 0.766 | 0.774 | 0.783 |
| 63 | 0.718 | 0.725 | 0.733 | 0.741 | 0.750 | 0.758 | 0.767 |
| 64 | 0.700 | 0.708 | 0.715 | 0.724 | 0.733 | 0.741 | 0.750 |
| 65 | 0.683 | 0.690 | 0.698 | 0.706 | 0.715 | 0.724 | 0.733 |

Table V - Page 82

CLOUD-AR-087

**Table V, continued**

**Table to Convert Credits to Joint and Survivor Options When Player's Beneficiary is Not His Spouse or When Player Had Attained Age 55 As Of September 1, 2007**

Age of Player When
Benefits Begin To Be Paid          Age of Beneficiary When Benefits Begin To Be Paid To Player

|     | 60 | 61 | 62 | 63 | 64 | 65 | 66 |
|-----|-----|-----|-----|-----|-----|-----|-----|
| 45 | 0.953 | 0.957 | 0.961 | 0.964 | 0.968 | 0.971 | 0.975 |
| 46 | 0.948 | 0.952 | 0.956 | 0.960 | 0.963 | 0.967 | 0.971 |
| 47 | 0.942 | 0.946 | 0.950 | 0.955 | 0.959 | 0.963 | 0.967 |
| 48 | 0.936 | 0.940 | 0.945 | 0.949 | 0.954 | 0.958 | 0.962 |
| 49 | 0.929 | 0.934 | 0.939 | 0.944 | 0.948 | 0.953 | 0.957 |
| 50 | 0.922 | 0.927 | 0.932 | 0.937 | 0.942 | 0.947 | 0.952 |
| 51 | 0.914 | 0.920 | 0.925 | 0.931 | 0.936 | 0.941 | 0.946 |
| 52 | 0.906 | 0.912 | 0.918 | 0.924 | 0.929 | 0.935 | 0.940 |
| 53 | 0.898 | 0.904 | 0.910 | 0.916 | 0.922 | 0.928 | 0.934 |
| 54 | 0.889 | 0.895 | 0.902 | 0.908 | 0.915 | 0.921 | 0.927 |
| 55 | 0.879 | 0.886 | 0.893 | 0.900 | 0.906 | 0.913 | 0.920 |
| 56 | 0.869 | 0.876 | 0.883 | 0.890 | 0.898 | 0.905 | 0.912 |
| 57 | 0.858 | 0.865 | 0.873 | 0.881 | 0.888 | 0.896 | 0.903 |
| 58 | 0.846 | 0.854 | 0.862 | 0.870 | 0.878 | 0.886 | 0.894 |
| 59 | 0.834 | 0.842 | 0.850 | 0.859 | 0.867 | 0.875 | 0.884 |
| 60 | 0.821 | 0.828 | 0.838 | 0.847 | 0.855 | 0.864 | 0.873 |
| 61 | 0.807 | 0.816 | 0.825 | 0.834 | 0.843 | 0.852 | 0.861 |
| 62 | 0.792 | 0.801 | 0.810 | 0.820 | 0.829 | 0.839 | 0.848 |
| 63 | 0.776 | 0.786 | 0.795 | 0.805 | 0.815 | 0.825 | 0.835 |
| 64 | 0.760 | 0.769 | 0.779 | 0.789 | 0.800 | 0.810 | 0.820 |
| 65 | 0.743 | 0.752 | 0.763 | 0.773 | 0.783 | 0.794 | 0.805 |

Table V - Page 83

CLOUD-AR-088

Table V, continued

**Table to Convert Credits to Joint and Survivor Options When Player's Beneficiary is Not His Spouse or When Player Had Attained Age 55 As Of September 1, 2007**

**Age of Player When Benefits Begin To Be Paid** — Age of Beneficiary When Benefits Begin To Be Paid To Player

| Age of Player When Benefits Begin To Be Paid | 67 | 68 | 69 | 70 |
|---|---|---|---|---|
| 45 | 0.978 | 0.981 | 0.984 | 0.987 |
| 46 | 0.974 | 0.978 | 0.981 | 0.984 |
| 47 | 0.970 | 0.974 | 0.978 | 0.981 |
| 48 | 0.966 | 0.970 | 0.974 | 0.978 |
| 49 | 0.962 | 0.966 | 0.970 | 0.974 |
| 50 | 0.957 | 0.961 | 0.966 | 0.970 |
| 51 | 0.951 | 0.956 | 0.961 | 0.966 |
| 52 | 0.946 | 0.951 | 0.956 | 0.961 |
| 53 | 0.945 | 0.945 | 0.951 | 0.956 |
| 54 | 0.933 | 0.939 | 0.945 | 0.951 |
| 55 | 0.926 | 0.933 | 0.939 | 0.945 |
| 56 | 0.919 | 0.925 | 0.932 | 0.939 |
| 57 | 0.910 | 0.918 | 0.925 | 0.932 |
| 58 | 0.902 | 0.909 | 0.917 | 0.925 |
| 59 | 0.892 | 0.900 | 0.908 | 0.916 |
| 60 | 0.882 | 0.890 | 0.899 | 0.907 |
| 61 | 0.870 | 0.880 | 0.889 | 0.898 |
| 62 | 0.858 | 0.868 | 0.877 | 0.887 |
| 63 | 0.845 | 0.855 | 0.865 | 0.875 |
| 64 | 0.831 | 0.842 | 0.852 | 0.863 |
| 65 | 0.816 | 0.827 | 0.838 | 0.849 |

Table V - Page 84

CLOUD-AR-089

## EXECUTION

**IN WITNESS WHEREOF,** the NFLPA and the Management Council have caused this Bert Bell/Pete Rozelle NFL Player Retirement Plan restatement, effective as of April 1, 2014, to be executed.

**NATIONAL FOOTBALL LEAGUE PLAYERS ASSOCIATION**

By: _____

Date: _____

**NATIONAL FOOTBALL LEAGUE MANAGEMENT COUNCIL**

By: _Dennis L. Curran_____

Date: _December 2, 2014_____

## EXECUTION

**IN WITNESS WHEREOF,** the NFLPA and the Management Council have caused this Bert Bell/Pete Rozelle NFL Player Retirement Plan restatement, effective as of April 1, 2014, to be executed.

**NATIONAL FOOTBALL LEAGUE PLAYERS ASSOCIATION**

By: _M. Yeas. Dms_

Date: _12-4-14_

**NATIONAL FOOTBALL LEAGUE MANAGEMENT COUNCIL**

By: _____

Date: _____

CLOUD-AR-091

| PLAYER: | Michael A. Cloud | | SSN4: | FRCP 5.2 |
|---------|------------------|--|-------|----------|
| | | | DOB: | FRCP 5.2 |

ISSUE:    Application for **Total and Permanent** Disability Benefits

FACTS:    **Seven (7)** Credited Seasons: **1999-2005**

Approved at the **05/13/2010 Meeting - rating:38% of the lower extremity, and 25% combined whole body impairment (Canizares)**

Effective Date: **05/01/2010**

Presently Receiving: **$3,290.00** per month **LOD benefits**

ATTACHMENTS:    1) Board Action Schedule

2) Checklists for the Disability Initial Claims Committee

3) Players Completed Application received 07/01/2014 with attachements

4) Social Security Disability Award Letter dated 06/18/2014

5) Medical Records submitted by the Player

6) NFL Records

DECISION:_____

EFFECTIVE DATE:_____

**E-Ballot 07/17/2014**

DISABILITY CASE **# 2**

Board Actions for Michael A. Cloud

| Meeting Date | Type | Case Type | Issue | Decision | Effective Date/Action |
|---|---|---|---|---|---|
| 05-13-10.R | LOD | | APA | Approved | 05-01-10 Dr. George Canizares - Neutral Orthopaedist |
| 09-24-09.R | LOD | | APL | Denied | percentage Dr. Bert Mandelbaum - Neutral Orthopaedist |
| 07-09-09.R | LOD | | APL | Tabled | 30 day extension granted - pending medical reports |

SUMMARY

Total Cases: 3

Case Types- LOD: 2

Issues-     APA: 1 APL: 1

Decisions- Approved: 1 Denied: 1

Issues:   APL- Application  CON- Continuation  EDT- Eff. Date   RCL- Reclassification  EED- Earlier Eff. Date  MSC- Miscellaneous
         APA- APL Appeal   COA- CON Appeal    EDA- EDT Appeal  RCA- RCL Appeal         EEA- EED Appeal         MSA- MSC Appeal
                                                                                        07/17/14

E-Ballot 07/17/2014

CHECKLIST FOR DISABILITY INITIAL CLAIMS COMMITTEE

Benefit Coordinator: _Elton Banks_____

1. Name of Player _Michael Cloud___ 2. Date of Birth **FRCP 5.2**

3. Credited Seasons according to Plan records _7( 1999 - 2005)___

4. Application Type:
   LOD ☐                    T&P ☑              NCD ☐

5. Date Completed Disability Application received _7/1/2014_____

6. Is there a Designation of Authorized Representative Form?    ☐ Yes ☑ No
   If "Yes", please indicate representative_____

   Date Representative Confirmed with Player _____

7. Does Application Include Medical and Hospital Records? ☑ Yes ☐ No

8. Is Player Referred for Medical Evaluation?  ☐ Yes ☑ No
   (If "No", skip to 11 below)

9. Neutral Evaluations:        #1              #2              #3
   (Specialty) _____    _____    _____
   (Neutral Physician) _____    _____    _____
   (Appointment Date) _____    _____    _____

10. Did Player Attend Scheduled Evaluation ☐ Yes      ☐ No
    If "No", when was 45-day letter sent to the Player_____

11. Is the Player:
    Currently employed?                    ☐ Yes ☑ No
    A Vested Participant?                  ☑ Yes ☐ No
    Receiving his pension?                 ☐ Yes ☑ No
    Receiving SSA Disability benefits?     ☑ Yes ☐ No
    Timely?                                ☑ Yes ☐ No

12. Additional Comments
    _____
    _____
    _____

E-Ballot 07/17/2014

CHECKLIST FOR DISABILITY INITIAL CLAIMS COMMITTEE

1. Name of Player _Michael Cloud_   2. Date of Birth ████ **FRCP 5.2** ████

3. Credited Seasons according to Plan records _7 (1999-2005)_

4. Date Completed Disability Application received _2/1/2014_

5. Does Player Seek LOD Benefits? ☐Yes ☒No
   (If "No," skip to 6)
   A. Was application received timely after Player ceased to be an Active
      Player? ☐ Yes  ☐ No  ☐ Not clear    (If "Yes," skip to 6)
   B. Does Player request exception to 48 month rule? ☐ Yes  ☐ No

6. Does Player Seek T&P Benefits? ☒Yes ☐ No
   (If "No," skip to 8)
   A. Does Player Seek Retroactive T&P Benefits? ☐ Yes ☐ No
      (If "No," skip to item 6E below)
   B. Claimed Effective Date for T&P _____
   C. Does Player claim exception to 42-month rule? ☐ Yes ☐ No
   D. Does Player claim exception to substance abuse and psychiatric rules?
      ☐ Yes ☐ No ☐ N/A
   E. Does Player Claim Disability is a result of NFL Football? ☐ Yes  ☐ No  ☐ N/A

7. Does Application Include:
   Tax Returns?                        ☐ Yes ☐ No ☒ N/A
   SSA Income Statement?               ☐ Yes ☒ No ☐ N/A
   Information on Prior Employers?     ☐ Yes ☒ No ☐ N/A
   Medical and Hospital Records?       ☒ Yes ☐ No ☐ N/A

8. Claim Processing
   A. Reviewed at DICC meeting on _____ Action Taken _____
      Reviewed at DICC meeting on _____ Action Taken _____
      Reviewed at DICC meeting on _____ Action Taken _____
      Reviewed at DICC meeting on _____ Action Taken _____
   B. Letter describing DICC Decision sent to Player on _____
   C. If claim denied, date appeal letter received _____

9. Additional Comments
   _____
   _____
   _____
   _____

E-Ballot 07/17/2014

 

**Bert Bell/Pete Rozelle NFL Player Retirement Plan**

**Total and Permanent Disability Benefits Application**

RECEIVED

JUL 0 1 2014

T&P BENEFITS

## Signature and Authorization

I certify that all information and documents provided on or with this Total and Permanent Disability Benefits Application are, to the best of my knowledge, true, correct, and complete. I also authorize the Bert Bell/Pete Rozelle NFL Player Retirement Plan to use or disclose all individually identifiable health information submitted to the Plan on my behalf, or created in connection with my Application for disability benefits, to all individuals as needed for Plan purposes.

Signature of Player _Michael A. Cloud_      Date Completed _June, 1 2014_

## Player Information

Player's Name *(please print)* _Cloud_      _Michael_      _A._
                                       Last               First            Middle Initial

Date of Birth FRCP 5.2      Social Security Number FRCP 5.2

Address *(number and street)* _1001 Starlight Place_

City _Rockwall_      State _TX_      Zip Code _75087_

Home Phone _NA_      Work Phone _Jennifer L. Cloud, Esq: (469) 698-4205_

Mobile Phone _Michael A. Cloud: (214) 364-0098_      E-mail _m.cloud21@yahoo.com_

## Medical, Hospital and Other Records

Have you included additional information in support of your Application for disability benefits?

○ Yes    ○ No    If yes, what is enclosed? _YES. SEE ATTACHMENTS_

Are there other documents that you intend to include that you have not submitted with this Application?

○ Yes    ○ No    If yes, what will you be sending? _____

Note: Applications cannot be processed until all information is received. Please send all supporting information to the Plan Office as soon as possible, or notify the Plan Office if you decide not to send additional information.

## Disabilities and Cause

**(PART 1)** Describe all of the conditions that you believe make you unable to work. Please state if any of these conditions resulted from service in the military of any country. You may attach additional sheets if necessary to identify the conditions which you would like the Plan to consider.

Condition 1: _1. Post-Concussion Syndrome   2. Clinical Depression     3. Dementia Pugilistica_

Condition 2: _4. Migraine     5. Benign Paroxysmal Positional Vertigo     6. Impaired Verbal Fluency_

Condition 3: _7. Acute Compartment Syndrome     8. Plantar Fasciitis     9. Cluneal Nerve Injury_

Condition 4: _10. Bilateral Shoulders  11. Bilateral Elbows  12. Bilateral Wrists  13. Hands  14. Fingers,_
_15. Bilateral Feet/Toes  16. Bilateral Ankles  17. Bilateral Knees  18. Bilateral Hips  19. Lumbar_

Condition 5: _20. Cervical  21. Thoracic._

— CONTINUED ON NEXT PAGE —

E-Ballot 07/17/2014

Player's Name *(please print)*   Michael A. Cloud          Initials  MAC

## Disabilities and Cause (Continued)

**(PART 2)** Higher benefits are payable if the disability(ies) that renders you totally and permanently disabled arose while you were an Active Player, and caused you to be totally and permanently disabled "shortly after" the disability(ies) first arose.  In such cases the amount of your benefit will depend on whether your disability(ies) results from NFL football.  If you believe you may qualify for such higher benefits, please indicate below (a) when the disability(ies) arose, (b) when they caused you to be totally and permanently disabled, and (c) whether the disability(ies) resulted from NFL football or another cause (for example, auto accident).  On (c), please list all injuries, accidents or illnesses that may have caused or contributed in any way to any of the conditions listed in section 4, Part 1.  You may attach additional sheets or supporting documentation.

(a)  1999-2002 - Kansas City Chiefs, 2003-2004 - New England Patriots - 2004-2005 New York Giants

(b)  2006 - Released by New York Giants - Difficulties Understanding Offensive & Special Teams Basics Playbooks

(c)  All injuries listed in (Part 1) are a direct result from NFL Football Activities.

**(PART 3)**  Describe the problems you are currently experiencing.  Migraine Headaches, Depression, Memory Loss, Vertigo, Insomnia, Unpredictable Irritability.

Sever Pain in: Right Foot, Left Great Toe, Left Hip, Base of Neck and Lower Back.

Numbness in: Right Leg, Arms and Fingers.

Difficulties with: Verbal Fluency, Decision Making and Concentration.

**(PART 4)**  Please note that special rules apply when a condition relates to alcohol or substance abuse, or to psychiatric problems.  In general, if such conditions are the cause of your inability to work, they will automatically be considered to not result from NFL football activities.  Certain exceptions apply, as described in the Summary Plan Description.  If you believe you qualify for one of these exceptions, please describe and enclose all supporting documentation.

N/A

## Social Security

Are you currently receiving Social Security disability benefits?   ◉ Yes   ○ No

If you checked **"Yes"** above, you must submit the following:

- a letter or other evidence from the Social Security Administration which states that the Social Security Administration determined you were unable to work; and

- a recent check stub or a letter from your local Social Security Administration office which states that you are still receiving Social Security benefits.

If you checked **"No"** above, have you applied?   ○ Yes   ○ No

**If you are currently receiving Social Security disability insurance benefits, please disregard the Employment Information section.**

— CONTINUED ON NEXT PAGE —

E-Ballot 07/17/2014

CLOUD-AR-097

BERT BELL/PETE ROZELLE NFL PLAYER RETIREMENT PLAN

DISABILITY BENEFIT PLAYER CONSENT FORM

You are applying for disability benefits under the Bert Bell/Pete Rozelle NFL Player Retirement Plan ("Plan"). This form contains important information. Please read the form, sign it, and return it with your application for disability benefits. This form is a required part of the application, and must be completed before your application will be processed.

*      *      *

I, _Michael A. Cloud_____ (print name), have read and understood the information in this Disability Benefit Player Consent Form.

Signature: _*Michael A. Cloud*_____

Date: _June, 27 2014_____

In submitting my application for disability benefits, I understand that:

1. I may be required to attend a physical examination with one or more physicians or other health professionals, and that failure to attend may cause my application to be denied.

2. There will be no doctor-patient relationship between me and the physicians or other health professionals who examine me.

3. The physicians or other health professionals who examine me will provide reports on my condition to the Plan, which I may obtain by written request to the Plan Office.

4. The physicians or other health professionals who examine me will not provide a copy of the medical reports to me directly.

5. Neither I nor my representatives (attorneys, treating physicians, etc.) are allowed to contact the physicians or other health professionals arranged by the Plan, such as to discuss their examination of me or to request copies of reports.

6. The physicians or other health professionals who examine me are required to comply with ethical or legal obligations, for example if they determine that I am a danger to myself or to others.

7. By signing this form, I consent to the above points and will comply with the Plan's procedures in connection with my claim for disability benefits.

E-Ballot 07/17/2014

**Michael Cloud**
**1001 Starlight Place**
**Rockwall, TX 75087**
**SS#** FRCP 5.2
**(p) 214-364-0098**
m.cloud21@yahoo.com

**NFL Players Benefits**
**200 Saint Paul Street**
**Suite 2420**
**Baltimore, MD 21202-2008**



RE:  **Total and Permanent Disability Benefits**
TO:  NFL Retirement and Benefits Board
CC:  Sarah E. Gaunt, Plan Director
     Paul Scott, Benefits Coordinator
     Jennifer L. Cloud, Esq.

**Dear NFL Players Benefits**,

Enclosed please find Michael Cloud's complete Application for football Total and Permanent Disability Benefits.

Mr. Cloud has been awarded a **Fully Favorable Decision** of **SSDI Benefits** and **SSDI** with an onset date of **Decemebr 31, 2008**, as a result of severe impairments of migraine headaches and affective mental disorder stemming from multiple NFL football concussions.  His SSDI award letter and a copy of his entire Social Security and medical file are also enclosed.  This information will be used to further assist in his medical care.

Should you have any questions, please feel free to contact me. Thank you.

**Be well,**


**Michael A. Cloud**
**Jennifer L. Cloud, Esq.**


6/28/14
E-Ballot 07/17/2014

CLOUD-AR-099

## MEDICAL RECORDS INDEX

1. **Michael Cloud's Total and Permanent Disability Benefits Application**
2. **Daniel Curran, Administrative Law Judge** – SSDA, Notice of FULL FAVORABLE SSDI and SSI Decision
3. **Dr. Harry Cates, LPC.,** - The Life Works Group M.Cloud's Medical Review & Mental Residual Functional Capacity Assessment
4. **Dr. Anne Smith, Ph.D.** - Behavioral Health
5. **Dr. John Patrick Cronin, Ph. D., M.P.H.** – Primary Behavioral Health Clinics, Inc.
6. **Dr. Jeffery Berman, M.D.** – Orthopaedic
7. **Dr. Michael J. Einbund, M.D.** – Orthopaedic Surgery
8. **Dr. George H. Canizares, M.D.** - All Florida Orthopaedic Associates w/NFL Line of Disability Report
9. **Dr. Adam S. DiDIo, M.D.** – Suncoast Medical Center Neurology w/NFL Line of Disability Report
10. **NFL Medical Summary**
11. **Dr. Russell Warren, M.D. w/Dr. Michael Pollack, M.D.** & **Dr. Ann M. Moore, M.D.** - New York Football Giants Cumulative Medical Journal, Montclair Radiology & Radiology Center Harding
12. **Dr. Bertram Zarins, M.D.** - New England Patriots Medical Summary

6/28/14
E-Ballot 07/17/2014



**SOCIAL SECURITY ADMINISTRATION**

Refer To: `RCP 5.2`

Office of Disability Adjudication and Review
SSA ODAR Hearing Ofc
Suite 500
12790 Merit Dr.
Dallas, TX 75251

Date: June 18, 2014

Michael Alexander Cloud
1001 Starlight Place
Dallas, TX 75087

## Notice of Decision – Fully Favorable

I carefully reviewed the facts of your case and made the enclosed fully favorable decision. Please read this notice and my decision.

Another office will process my decision. That office may ask you for more information. If you do not hear anything within 60 days of the date of this notice, please contact your local office. The contact information for your local office is at the end of this notice.

### If You Disagree With My Decision

If you disagree with my decision, you may file an appeal with the Appeals Council.

### How To File An Appeal

To file an appeal you must ask in writing that the Appeals Council review my decision. You may use our Request for Review form (HA-520) or write a letter. The form is available at www.socialsecurity.gov. Please put the Social Security number shown above on any appeal you file. If you need help, you may file in person at any Social Security or hearing office.

Please send your request to:

**Appeals Council**
**Office of Disability Adjudication and Review**
**5107 Leesburg Pike**
**Falls Church, VA 22041-3255**

### Time Limit To File An Appeal

You must file your written appeal **within 60 days** of the date you get this notice. The Appeals Council assumes you got this notice 5 days after the date of the notice unless you show you did not get it within the 5-day period.

The Appeals Council will dismiss a late request unless you show you had a good reason for not filing it on time.

Form HA-L76 (03-2010)

E-Ballot 07/17/2014

See Next Page



**CLOUD-AR-101**

Michael Alexander Cloud FRCP 5.2                                      Page 2 of 3

**What Else You May Send Us**

You may send us a written statement about your case. You may also send us new evidence. You should send your written statement and any new evidence **with your appeal**. Sending your written statement and any new evidence with your appeal may help us review your case sooner.

**How An Appeal Works**

The Appeals Council will consider your entire case. It will consider all of my decision, even the parts with which you agree. Review can make any part of my decision more or less favorable or unfavorable to you. The rules the Appeals Council uses are in the Code of Federal Regulations, Title 20, Chapter III, Part 404 (Subpart J).

The Appeals Council may:

- Deny your appeal,
- Return your case to me or another administrative law judge for a new decision,
- Issue its own decision, or
- Dismiss your case.

The Appeals Council will send you a notice telling you what it decides to do. If the Appeals Council denies your appeal, my decision will become the final decision.

**The Appeals Council May Review My Decision On Its Own**

The Appeals Council may review my decision even if you do not appeal. They may decide to review my decision within 60 days after the date of the decision. The Appeals Council will mail you a notice of review if they decide to review my decision.

**When There Is No Appeals Council Review**

If you do not appeal and the Appeals Council does not review my decision on its own, my decision will become final. A final decision can be changed only under special circumstances. You will not have the right to Federal court review.

**Your Right To Representation In An Appeal**

If you appeal, you may choose to have an attorney or other person help you. Many representatives do not charge a fee unless you win your appeal. Groups are available to help you find a representative or, if you qualify, to give you free legal services. Your local Social Security office has a list of groups that can help you in this process.

If you get someone to help you with your appeal, you or that person must let the Appeals Council know. If you hire someone, we must approve the fee before he or she is allowed to collect it.

E-Ballot 07/17/2014                                      Form HA-L76 (03-2010)

CLOUD-AR-102

Michael Alexander Cloud ( FRCP 5.2 )                                    Page 3 of 3

**If You Have Any Questions**

We invite you to visit our website located at www.socialsecurity.gov to find answers to general
questions about social security.  You may also call (800) 772-1213 with questions.  If you are
deaf or hard of hearing, please use our TTY number (800) 325-0778.

If you have any other questions, please call, write, or visit any Social Security office.  Please
have this notice and decision with you.  The telephone number of the local office that serves your
area is (888)306-3534.  Its address is:

                              Social Security
                              2717 Terrell Road
                              Greenville, TX 75402-7302


                                          Daniel Curran
                                          Administrative Law Judge


Enclosures:
Decision Rationale



E-Ballot 07/17/2014

                                                              Form HA-L76 (03-2010)

CLOUD-AR-103

SOCIAL SECURITY ADMINISTRATION
Office of Disability Adjudication and Review

DECISION

IN THE CASE OF

Michael Alexander Cloud
(Claimant)

CLAIM FOR

Period of Disability and Disability Insurance
Benefits

FRCP 5.2

(Wage Earner)                                    (Social Security Number)

## JURISDICTION AND PROCEDURAL HISTORY

This case is before the undersigned on a request for hearing dated May 30, 2013 (20 CFR
404.929 *et seq.*). The claimant appeared and testified at a hearing held on May 15, 2014, in
Dallas, TX. Lakedra L Parker, an impartial vocational expert, also appeared at the hearing.
Although informed of the right to representation, the claimant chose to appear and testify without
the assistance of an attorney or other representative.

The claimant has amended the alleged onset date of disability to December 31, 2008.

## ISSUES

The issue is whether the claimant is disabled under sections 216(i) and 223(d) of the Social
Security Act. Disability is defined as the inability to engage in any substantial gainful activity by
reason of any medically determinable physical or mental impairment or combination of
impairments that can be expected to result in death or that has lasted or can be expected to last
for a continuous period of not less than 12 months.

There is an additional issue whether the insured status requirements of sections 216(i) and 223 of
the Social Security Act are met. The claimant's earnings record shows that the claimant has
acquired sufficient quarters of coverage to remain insured through March 31, 2015. Thus, the
claimant must establish disability on or before that date in order to be entitled to a period of
disability and disability insurance benefits.

After careful review of the entire record, the undersigned finds that the claimant has been
disabled from December 31, 2008, through the date of this decision. The undersigned also finds
that the insured status requirements of the Social Security Act were met as of the date disability
is established.

## APPLICABLE LAW

Under the authority of the Social Security Act, the Social Security Administration has
established a five-step sequential evaluation process for determining whether an individual is

E-Ballot 07/17/2014                         See Next Page

CLOUD-AR-104

disabled (20 CFR 404.1520(a)). The steps are followed in order. If it is determined that the claimant is or is not disabled at a step of the evaluation process, the evaluation will not go on to the next step.

At step one, the undersigned must determine whether the claimant is engaging in substantial gainful activity (20 CFR 404.1520(b)). Substantial gainful activity (SGA) is defined as work activity that is both substantial and gainful. If an individual engages in SGA, he is not disabled regardless of how severe his physical or mental impairments are and regardless of his age, education, or work experience. If the individual is not engaging in SGA, the analysis proceeds to the second step.

Under the standard established in Stone v. Heckler, "an impairment can be considered as not severe only if it is a slight abnormality having such minimal effect on an individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience." Stone v. Heckler, 752 F.2d 1099, 1101 (5th Cir. 1985).

At step three, the undersigned must determine whether the claimant's impairment or combination of impairments is of a severity to meet or medically equal the criteria of an impairment listed in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, and 404.1526). If the claimant's impairment or combination of impairments is of a severity to meet or medically equal the criteria of a listing and meets the duration requirement (20 CFR 404.1509), the claimant is disabled. If it does not, the analysis proceeds to the next step.

Before considering step four of the sequential evaluation process, the undersigned must first determine the claimant's residual functional capacity (20 CFR 404.1520(e)). An individual's residual functional capacity is his ability to do physical and mental work activities on a sustained basis despite limitations from his impairments. In making this finding, the undersigned must consider all of the claimant's impairments, including impairments that are not severe (20 CFR 404.1520(e) and 404.1545; SSR 96-8p).

Next, the undersigned must determine at step four whether the claimant has the residual functional capacity to perform the requirements of his past relevant work (20 CFR 404.1520(f)). The term past relevant work means work performed (either as the claimant actually performed it or as it is generally performed in the national economy) within the last 15 years or 15 years prior to the date that disability must be established. In addition, the work must have lasted long enough for the claimant to learn to do the job and have been SGA (20 CFR 404.1560(b) and 404.1565). If the claimant has the residual functional capacity to do his past relevant work, the claimant is not disabled. If the claimant is unable to do any past relevant work or does not have any past relevant work, the analysis proceeds to the fifth and last step.

At the last step of the sequential evaluation process (20 CFR 404.1520(g)), the undersigned must determine whether the claimant is able to do any other work considering his residual functional capacity, age, education, and work experience. If the claimant is able to do other work, he is not disabled. If the claimant is not able to do other work and meets the duration requirement, he is disabled. Although the claimant generally continues to have the burden of proving disability at this step, a limited burden of going forward with the evidence shifts to the Social Security

E-Ballot 07/17/2014

**CLOUD-AR-105**

Michael Alexander Cloud (FRCP 5.2)                                    Page 3 of 7

Administration.  In order to support a finding that an individual is not disabled at this step, the Social Security Administration is responsible for providing evidence that demonstrates that other work exists in significant numbers in the national economy that the claimant can do, given the residual functional capacity, age, education, and work experience (20 CFR 404.1512(g) and 404.1560(c)).

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

After careful consideration of the entire record, the undersigned makes the following findings:

1.   **The claimant's date last insured is March 31, 2015.**

2.   **The claimant has not engaged in substantial gainful activity since December 31, 2008, the amended alleged onset date (20 CFR 404.1520(b) and 404.1571 *et seq.*).**

The claimant worked after his alleged onset date as a personal trainer.  However, this work attempt is considered an unsuccessful work attempt because the work was ultimately discontinued because of the medical impairments (20 CRF 404.1574 (a)(1) and 416.974(a)(1)).  The regulations define an unsuccessful work attempt as one where the work lasted less than six months and ended due to frequent absences or unsatisfactory work as a result of the impairment.  The claimant's gross earnings in 2009 totaled $1,407.75.  The substantial gainful activity (SGA) level for year 2009 was $980.00 per month.   Accordingly, the analysis will continue to address the entire relevant period through the date of this decision.

3.   **The claimant has the following severe impairments: migraine headaches, affective disorder.  (20 CFR 404.1520(c)).**

All impairments have been considered under the standard set forth in Stone v. Heckler, 752 F.2d 1099 (5th Cir.1985).

4.   **The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).**

A comparison of the objective evidence to the Listing of Impairments shows that the claimant's impairments are not sufficiently severe to meet the criteria of any impairment described in Appendix 1.  Furthermore, the claimant does not suffer from an impairment or a combination of impairments, including those deemed nonsevere, which is medically equivalent in severity to any listed impairment.  Certainly, no examining or non-examining physician has opined that the claimant's medical findings meet or equal the criteria of any of the listed impairments.  In accordance with Audler v. Astrue, 501 F.3d 446 (5th Cir. 2007), the undersigned has considered the impairments listed in Appendix 1 to Subpart P of Part 404 of the Regulations and finds that claimant's impairments do not singularly or in combination meet or medically equal the required criteria for any of the listed impairments.  The signs, symptoms and history of treatment presented in the evidence of record are inconsistent with the degree of pain and/or

E-Ballot 07/17/2014                       See Next Page

CLOUD-AR-106




functional limitation that is required to meet or equal the criteria set forth in Medical Listing 11.00, neurological systems, or any other Medical Listing.

The claimant has the following degree of limitation in the broad areas of functioning set out in the disability regulations for evaluating mental disorders and in the mental disorders listings in 20 CFR, Part 404, Subpart P, Appendix 1: moderate restriction in activities of daily living, moderate difficulties in maintaining social functioning, marked difficulties in maintaining concentration, persistence or pace, and no episodes of decompensation, each of extended duration.

During the application process, the claimant completed a function report dated November 7, 2012. He stated he is pain, burning and numbness from the base of his neck to his fingertips that make it difficult to sleep or do any weight bearing lifting above the shoulders. He lives with his wife and son who take care of the household chores. He occasionally prepares simple meals. His daily activities consist of taking his son to the park or daycare then watching television.

Turning to social functioning, the claimant stated he no longer goes out with friends or even to restaurants. He is in pain most of the time and does not socialize. He stated he feels anxiety with changes in routine and is fearful something bad will happen to his family. He also has problems getting along with family and friends at times. He occasionally gets emotional or teary eyed and cries for no reason.

Turning toward concentration, persistence or pace, the claimant's mental residual functional capacity assessment concludes he is markedly limited in the ability to maintain attention and concentration for extended periods. (Exhibit 6F)

As for episodes of decompensation, the claimant has experienced no episodes of decompensation, which have been of extended duration.

The undersigned has also considered whether the "paragraph C" criteria are satisfied. In this case, the evidence fails to establish the presence of the "paragraph C" criteria. There is no evidence of repeated episodes of decompensation of extended duration, there is no evidence of a residual disease process that results in such marginal adjustment that even a minimal increase in mental demands would be predicted to cause the claimant to decompensate, and there is no evidence of a one or more years' inability to function outside a highly supportive living arrangement. Additionally, there is no evidence in the record that the claimant has a complete inability to function independently outside of home.

**5. The claimant has the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) except he is limited in ability to understand, remember, and carry out simple or detailed instructions; the ability to interact the general public; and is unable to maintain attention and concentration for extended periods of time.**

In making this finding, the undersigned considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 404.1529 and SSRs 96-4p and 96-7p. The

E-Ballot 07/17/2014

**CLOUD-AR-107**

Michael Alexander Cloud ( **FRCP 5.2** )                                      Page 5 of 7

undersigned has also considered opinion evidence in accordance with the requirements of 20 CFR 404.1527 and SSRs 96-2p, 96-6p and 06-3p.

A consultative examination report was performed by Michael Einbund, M.D. on July 6, 2009. Dr. Einbund's diagnosis was status post-operative compartment syndrome, right leg and lumbosacral spine sprain with radicular complaints. He further noted the claimant has residual symptoms in his right knee, and noted him to ambulate with a slight limp. (Exhibit 1F)

The claimant was evaluated for 'Line of Duty Disability Benefits' by Adarin Didio, M.D. on April 13, 2010. Dr. Didio listed the claimant's impairments as vertigo, headaches, memory loss, depression, and impaired verbal fluency, all resulting from a history of concussions during his NFL football career. Medical records reviewed by Dr. Didio stated the claimant was formally evaluated as part of a traumatic brain injury study and declared to have suffered a Grade 1 concussion. Dr. Didio further stated the claimant suffered from Benign Paroxysmal Positional Vertigo (BPPV). (Exhibit 2F)

Medical reports from Primary Behavioral Health Clinics dated June 12, 2011 state the claimant experiences pain in his neck, lower back, foot and lower leg. In addition, he experiences depression and has difficulty remembering. In a self-assessment checklist, the claimant stated he has extreme trouble remembering things, is worried and easily annoyed or irritated, has difficulty making decisions, goes blank often and has trouble concentrating. (Exhibit 3F) A psychological consultative examination was performed by Smith Behavioral Health, Anne Smith, Ph. D. on January 22, 2013. Dr. Smith's diagnostic impression was the claimant experienced major depressive disorder, recurrent, severe without psychotic features, and his GAF was currently 48. Her prognosis was fair to good with treatment of the depression, however only stated his immediate memory may improve after treatment. Dr. Smith further stated the claimant ability to make occupational, social and personal adjustments is significantly impacted by his depression. (Exhibit 4F)

A consultative examination, performed by Lige rushing, Jr., M.D. on January 20, 2013 reports the claimant is unable to tandem walk or squat, although his gait and station are normal and straight leg raising test bilaterally was normal. X-ray testing of the lumbar spine showed mineral contract of the bone normal; vertebrae properly aligned; interspaces well maintained; no soft tissue abnormalities notes; and overall impression was normal. Medications were Tylenol and Advil on an as needed basis. (Exhibit 5F)

State agency physician Don Marler, Ph. D. assessed the evidence of record on April 8, 2013. His impairment diagnosis was stated as migraine headaches and affective disorders. Dr. Marler concluded that, at the time, the preponderance of evidence indicated that the claimant may be somewhat restricted by the symptoms, but not wholly compromised in the ability to function in a work setting. Dr. Marler stated the claimant's limitations as moderate in his actives of daily living, difficulties in maintain social function and difficulties in maintain concentration, persistence or pace.

On the mental residual functional capacity assessment completed on that date, Dr. Marler rated the claimant's understanding and memory limitations as markedly limited in the ability to

E-Ballot 07/17/2014                         See Next Page

CLOUD-AR-108



Michael Alexander Cloud (FRCP 5.2)                                    Page 6 of 7

understand an remember detailed instructions, and the ability to carry out detail instructions. (Exhibit 4A)

A mental residual functional capacity assessment was completed by medical consultant, Harry Cates, a licensed professional counselor (LPC), of Lifework's Group PA. Mr. Cates had observed the claimant between October 10, 2011 and December 21, 2011 and stated at that time he was struggling with depressive symptoms, poor concentration and bouts of unpredictable irritability; no doubt related to his physical injuries and concussions. Mr. Cates performed a subsequent clinical interview and mini-mental exam on May 7, 2014, and made a comparison to the claimant's presentation in 2011. His summary characterized the claimant's cognitive presentation as a progressive decline in the speed and sharpness with which he interacts, as well as increased anxiety in social situations. In addition, the claimant appeared to have increased difficulty in coping due to social anxiety and self-consciousness from ongoing changes in his cognitive functioning. (Exhibit 6F)

On May 13, 2014, Mr. Cates completed an assessment form presenting the claimant as markedly limited in his ability to maintain attention and concentration for extended periods. Additionally, he was moderately limited in several areas including ability to remember location and work-like procedures; understand, remember and carry out detained instructions; perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; interact appropriately with the general public; travel in unfamiliar places or use public transportation; and to set realistic goals or make plans independently. (Exhibit 6F)

After considering the evidence of record, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to produce the alleged symptoms, and that the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are generally credible. The intensity of the claimant's symptoms, including pain, and the extent of the alleged functional limitations, are supported by objective findings or the record of psychological testing. The claimant has made an attempt to work which suggests good work motivation, but he is unable to sustain that work due to the non-exertional impairment-related symptoms.

The State agency medical consultants' physical assessments and psychological consultants' mental assessments are given little weight because another medical opinion is more consistent with the record as a whole.

6.   **The claimant is unable to perform any past relevant work (20 CFR 404.1565).**

The demands of the claimant's past relevant work exceed the residual functional capacity.

7.   **The claimant was a younger individual age 18-49 on the established disability onset date (20 CFR 404.1563).**

8.   **The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564).**

E-Ballot 07/17/2014

CLOUD-AR-109

Michael Alexander Cloud (FRCP 5.2)                                    Page 7 of 7

9.  **The claimant's acquired job skills do not transfer to other occupations within the residual functional capacity defined above (20 CFR 404.1568).**

10.  **Considering the claimant's age, education, work experience, and residual functional capacity, there are no jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1560(c) and 404.1566).**

In determining whether a successful adjustment to other work can be made, the undersigned must consider the claimant's residual functional capacity, age, education, and work experience in conjunction with the Medical-Vocational Guidelines, 20 CFR Part 404, Subpart P, Appendix 2. If the claimant can perform all or substantially all of the exertional demands at a given level of exertion, the medical-vocational rules direct a conclusion of either "disabled" or "not disabled" depending upon the claimant's specific vocational profile (SSR 83-11). When the claimant cannot perform substantially all of the exertional demands of work at a given level of exertion and/or has nonexertional limitations, the medical-vocational rules are used as a framework for decisionmaking unless there is a rule that directs a conclusion of "disabled" without considering the additional exertional and/or nonexertional limitations (SSRs 83-12 and 83-14). If the claimant has solely nonexertional limitations, section 204.00 in the Medical-Vocational Guidelines provides a framework for decisionmaking (SSR 85-15).

If the claimant had the residual functional capacity to perform the full range of medium work, considering the claimant's age, education, and work experience, a finding of "not disabled" would be directed by Medical-Vocational Rule 203.29. However, the additional limitations so narrow the range of work the claimant might otherwise perform that a finding of "disabled" is appropriate under the framework of this rule. This conclusion is supported by Social Security Ruling(s) 96-9p.

11.  **The claimant has been under a disability as defined in the Social Security Act since December 31, 2008, the amended alleged onset date of disability (20 CFR 404.1520(g)).**

## DECISION

Based on the application for a period of disability and disability insurance benefits filed on March 7, 2012, the claimant has been disabled under sections 216(i) and 223(d) of the Social Security Act since December 31, 2008.


/s/ *Daniel Curran*
_____
Daniel Curran
Administrative Law Judge

June 18, 2014
_____
Date

E-Ballot 07/17/2014

The LifeWorks Group, PA

May 13, 2014

To whom it may concern,

Michael Cloud attended marital therapy for 6 sessions between the dates of October 10, 2011 and December 21, 2011.  Mr. Cloud was cooperative and active in the therapy process.  He was observed to be struggling with depressive symptoms poor concentration and bouts of unpredictable irritability.  These adjustments were likely related to his physical injuries and concussions, which hastened the early end to his career as a professional football player and with the role in the marriage as it related to recent birth of their child.   During the process of marital therapy it was observed that forgetfulness, unreliability and perceived lack of motivation were major concerns for his spouse.

On May 7, 2014 a subsequent assessment of Michael Cloud was performed. The assessment was completed with use of clinical interview and mini-mental status exam.  Mr. Cloud appeared well groomed and appropriately dressed for the assessment, his affect was limited in range and he was lucid and able to answer questions with content consistent answers.  However, there was at times slowed process due to difficulty tracking multiple topics or references to previous subject matter.  This was reported to be something, which Mr. Cloud reported to be something, which had become a problem after he began noticing the effects of the concussions.   Mr. Cloud scored 28 out of 30 on MMSE but was slow in memory section.  He reported that this memory difficulty had created reduced interest in social interaction due to his difficulty in remembering people and where he had met them which had not been a problem for him prior to onset of symptoms related to concussions.  Mr. Cloud also reports periods of poor attention causing him to forget important tasks.  Finally, Mr. Cloud was a poor historian when discussing memories of the recent past and the years since his football career, indicating reduced ability to transfer memory into long term storage.

In summary, when comparing Mr. Cloud's cognitive presentation in the present with his presentation in 2011 there appears to be progressive decline in the speed and sharpness with which he interacts as well as increased anxiety in social situations.  Mr. Cloud does appear to have increased difficulty in coping due to the social anxiety and self-consciousness from the ongoing changes in his cognitive function.

If you have any further questions regarding Mr. Cloud please feel free to contact me at my office.


Harry Cates, LPC

214-357-4001

**The LifeWorks Group, P.A.**
2515 Cedar Springs Rd. Dallas TX 75201
www.wefixbrains.com

E-Ballot 07/17/2014

CLOUD-AR-111

0MB No 0960-0431

## MENTAL RESIDUAL FUNCTIONAL CAPACITY ASSESSMENT

Name: Michael Cloud          SSN: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

| Categories(From 1B of the PRFT) | Assessment Is For: |
|---|---|
| | ☑ Current Evaluation |
| | ☐ Date Last Insured:   /   / |
| | ☐ Date 12 Months After Onset:   /   / |
| | ☐ Other(Specify): |

## I.  SUMMARY CONCLUSIONS

This section is for recording summary conclusions derived from the evidence in file. Each mental activity is to be evaluated within the context of the individual's capacity to sustain that activity over a normal workday and workweek, on an ongoing basis. Detailed explanation of the degree of limitation for each category (A through D), as well as any other assessment information you deem appropriate, is to be recorded in Section III (Functional Capacity Assessment).

If rating category 5 is checked for any of the following items, you MUST specify in Section II the evidence that is needed to make the assessment. If you conclude that the record is so inadequately documented that no accurate functional capacity assessment can be made, indicate in Section II what development is necessary, but DO NOT COMPLETE SECTION III.

| | | Not Significantly Limited | Moderately Limited | Markedly Limited | No Evidence of Limitation in this Category | Not Ratable on Available Evidence |
|---|---|:---:|:---:|:---:|:---:|:---:|
| A. | **UNDERSTANDING AND MEMORY** | | | | | |
| 1. | The ability to remember locations and work-like procedures | ☐ | ☑ | ☐ | ☐ | ☐ |
| 2. | The ability to understand and remember very short and simple instructions | ☑ | ☐ | ☐ | ☐ | ☐ |
| 3. | The ability to understand and remember detailed instructions. | ☐ | ☑ | ☐ | ☐ | ☐ |
| B. | **SUSTAINED CONCENTRATION AND PERSISTENCE** | | | | | |
| 4. | The ability to carry out very short and simple instructions | ☑ | ☐ | ☐ | ☐ | ☐ |
| 5. | The ability to carry out detailed instructions. | ☐ | ☑ | ☐ | ☐ | ☐ |
| 6. | The ability to maintain attention and concentration for extended periods. | ☐ | ☐ | ☑ | ☐ | ☐ |
| 7. | The ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances | ☐ | ☑ | ☐ | ☐ | ☐ |
| 8. | The ability to sustain an ordinary routine without special supervision | ☑ | ☐ | ☐ | ☐ | ☐ |
| 9. | The ability to work in coordination with or proximity to others without being distracted by them | ☑ | ☐ | ☐ | ☐ | ☑ |
| 10. | The ability to make simple work-related decisions. | ☑ | ☐ | ☐ | ☐ | ☐ |

Form SSA-4734-BK-SUP(8/85)
Formerly SSA-4734-F4-SUP 1

1

E-Ballot 07/17/2014

CLOUD-AR-112

| | | Not Significantly Limited | Moderately Limited | Markedly Limited | No Evidence of Limitation in this Category | Not Ratable on Available Evidence |
|---|---|---|---|---|---|---|
| 11. | The ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. | ☐ | ☐ | ☐ | ☐ | ☐ |
| **C.** | **SOCIAL INTERACTION** | | | | | |
| 12. | The ability to interact appropriately with the general public | ☐ | ☑ | ☐ | ☐ | ☐ |
| 13. | The ability to ask simple questions or request assistance | ☑ | ☐ | ☐ | ☐ | ☐ |
| 14. | The ability to accept instructions and respond appropriately to criticism from supervisors | ☐ | ☐ | ☐ | ☐ | ☑ |
| 15. | The ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes. | ☐ | ☐ | ☐ | ☐ | ☑ |
| 16. | The ability to maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness. | ☑ | ☐ | ☐ | ☐ | ☐ |
| **D.** | **ADAPTATION** | | | | | |
| 17. | The ability to respond appropriately to changes in the work setting. | ☐ | ☐ | ☐ | ☐ | ☑ |
| 18. | The ability to be aware of normal hazards and take appropriate precautions | ☑ | ☐ | ☐ | ☐ | ☐ |
| 19. | The ability to travel in unfamiliar places or use public transportation. | ☐ | ☑ | ☐ | ☐ | ☐ |
| 20. | The ability to set realistic goals or make plans independently of others | ☐ | ☑ | ☐ | ☐ | ☐ |

**II.** **REMARKS:** If you checked box 5 for any of the preceding items or if any other documentation deficiencies were identified, you MUST specify what additional documentation is needed. Cite the item number(s), as well as any other specific deficiency, and indicate the development to be undertaken. *#5, 9, 14, 15, 17 related to work setting - (Not applicable to clinical interest*

**III.** **FUNCTIONAL CAPACITY ASSESSMENT**

Record in this section the elaborations on the preceding capacities. Complete this section ONLY after the SUMMARY CONCLUSIONS section has been completed. Explain your summary conclusions in narrative form. Include any information which clarifies limitation or function. Be especially careful to explain conclusions that differ from those of treating medical sources or from the individual's allegations.

☐ These findings complete the medical portion of the disability determination.

MEDICAL CONSULTANT'S SIGNATURE          DATE  *5 - 13 - 14*

*[signature] LPC #12024 (Tx LPC)*

**Paperwork/Privacy Act Notice:** The information requested on this form is authorized by Section 223 and Section 1633 of the Social Security Act. The information provided will be used in making a decision on this claim. Failure to complete this form

2

Michael A. Cloud                    SSN FRCP 5.2



# Smith Behavioral Health
*Maximizing Quality of Life*

Anne Smith, Ph.D.
4925 Greenville Ave Suite 200, Dallas, Texas 75206
Tel. 214/789-4768  Fax 214/485-1695

PSYCHOLOGICAL REPORT – FULL BATTERY

NAME: Michael A. Cloud
SSN: FRCP 5.2
DOB: FRCP 5.2 P5.2
AGE: 37 Years
EXAMINATION DATE: 01/08/13
REFERRED BY: DARS

I. GENERAL OBSERVATIONS: Mr. Cloud drove himself unaccompanied to the exam. He presented photo identification. Mr. Cloud is a 37-year-old male who appeared his stated age. Grooming and hygiene was good. He was nicely dressed. Eye contact was somewhat decreased. Speech and gait normal.

II. INFORMANT: Mr. Cloud appeared to be a reliable informant.

III. CHIEF COMPLAINT: "Post concussion symptoms."

IV. HISTORY OF PRESENT ILLNESS: According to Mr. Cloud, he has experienced very bad headaches since his third year playing in the NFL. He said, "Since retiring, they have gotten worse over the last five or six years. It keeps me in bed. I can't do anything." He was a running back from 1999 to 2006. He played for the Kansas City Chiefs, the New England Patriots, and the New York Giants. He has had three documented concussions and countless other "dings" and physical injuries during his seven-year career. On the PHQ-9, Mr. Cloud reported that nearly every day or for more than half the days over the last two weeks he has had the following problems: little interest or pleasure in doing things; feeling down, depressed, and hopeless; trouble sleeping; feeling tired and having little energy; variable appetite; feeling bad about himself and that he has let himself and his family down; trouble concentrating; and moving or speaking so slowly that other people could have noticed. Mr. Cloud has been feeling this way for the past five or six years. He has never received treatment for depression. Mr. Cloud has withdrawn from and avoids social situations. He believes that others will think badly of him. He will not accept speaking engagements anymore. He has had trouble making friends in Dallas. After Mr. Cloud retired in 2006, he has had two jobs. One job was in Massachusetts. He was putting training camps together for high schools and colleges but he was not getting the clients he thought he would get. Then he moved to California and was a trainer at a fitness club but he was "released." When asked why he was released he said, "I had trouble communicating with clients. I became withdrawn. I hung out in the men's locker all day. I didn't want to meet the clients." Mr. Cloud moved to Dallas 3 ½ years ago.

Activities of Daily Living: Mr. Cloud lives with his wife and 2-year-old son. When asked if he helps with cleaning and upkeep around the residence he said, "I'm not as tidy as I used to be." When asked about traveling in unfamiliar places he said, "I don't like it. If I have to meet a group of people it bothers me." He does not use public transportation. He and his wife prepare meals and go shopping for groceries together. His wife handles the finances.

Social Functioning: When asked how he gets along with friends Mr. Cloud said, "I get along." He has been married for 1½ years. He gets along well with his wife. He speaks with his parents twice a week. He gets along well with his 43-year-old and 40-year-old brothers. When asked how he gets along with people in authority he said, "They don't bother me."

2

E-Ballot 07/17/2014

CLOUD-AR-114

Michael A. Cloud                              SSN:  RCP 5.2

Ability to Complete Tasks Timely and Appropriately: When asked if he is able to complete tasks in a timely and appropriate manner Mr. Cloud said, "I don't put clothes away. I start putting them away but never finish it. I start reading articles but I don't finish them. I have headaches and they get worse when I am focusing."

Deterioration and Decompensation: Nothing new this year.

V. PAST HISTORY
Education: Graduated from Boston College
Birthplace: Rhode Island
Siblings: Two brothers
Parents: Good relationship with parents
Children: 2-year-old son
Legal: Denied
Military History: No
Marital Status: Newlywed
Medical: Concussions plus various physical injuries from football
Substance Use: Denied

VI. MENTAL ASSESSMENT
Appearance, Behavior, and Speech: Described earlier.

Thought Process: Logical, goal-directed, but slow.

Thought Content: Mr. Cloud does have some paranoid thoughts. For example, when he is jogging by himself he feels like a car is going to slow down to "evaluate" him. He only has these thoughts when he is by himself. He denied suicidal and homicidal ideation.

Perceptual Abnormalities: Mr. Cloud denied hallucinations.

Mood and Affect: When asked about his mood Mr. Cloud said, "Lethargic, days go by slow. I have no energy." His family has noticed this and he said he "tries to mask it." His affect was depressed and blah.

Sensorium and Cognition:
Orientation: Mr. Cloud was oriented to person, place, and date. He accurately stated the name of the current president.

Immediate memory: He was able to repeat three objects. He was able to repeat five digits forward.

Recent Memory: He remembered the clinician's name. He was able to recall two out of three objects after a five-minute interval. He remembered what floor he was on.

Remote Memory: He accurately stated his birth date, birth place, and the name of his high school. He recalled one of his teacher's names. He accurately stated the last three presidents.

Working Memory: He was able to repeat five digits backward. He was able to spell the word WORLD forward and backward, on the second attempt. He was able to slowly do simple and complex mental math. He repeated every problem out loud before he gave his answer. He was able to do serial 7s.

Proverb Interpretation: When asked what does don't cry over spilled milk mean he said, "Don't complain." When asked what does Rome wasn't built in a day mean he said, "Things take time."

3

E-Ballot 07/17/2014

CLOUD-AR-115

Michael A. Cloud                    SSN: FRCP 5.2

Similarities: When asked in what way are an apple and a banana alike he said, "Fruit." When asked in what way are an airplane and a car alike he said, "Transportation." When asked in what way are a desk and a bookcase alike he said, "Accessorize each other."

Fund of Information: Mr. Cloud does not know how many weeks are in a year. He accurately stated the capital of Texas. People have lungs "to breathe."

Judgment and Insight: When asked how he understands his mental illness he said, "Makes me not want to do things throughout the day. Makes me not want to be involved with people, body is always in pain." He does not know what is causing his depression. If he smelled smoke in a crowded theater he would "run." If he found a stamped, addressed envelope on the street he would "put it in the mailbox."

## VII. INTELLECTUAL, EXECUTIVE, MEMORY, AND ACADEMIC FUNCTIONING
Wechsler Adult Intelligence Scale– Fourth Edition (WAIS-IV)

| Verbal Comprehension Subtests | Scaled Scores |
|---|---|
| Similarities | 8 |
| Vocabulary | 9 |
| Information | 8 |

| Perceptual Reasoning Subtests | Scaled Scores |
|---|---|
| Block Design | 9 |
| Matrix Reasoning | 11 |
| Visual Puzzles | 8 |

| Working Memory Subtests | Scaled Scores |
|---|---|
| Digit Span | 7 |
| Arithmetic | 9 |

| Processing Speed Subtests | Scaled Scores |
|---|---|
| Symbol Search | 9 |
| Coding | 9 |

| Indexes | Standard Score | Percentile Rank |
|---|---|---|
| Verbal Comprehension | 91 | 27 |
| Perceptual Reasoning | 96 | 39 |
| Working Memory | 89 | 23 |
| Processing Speed | 93 | 34 |
| Full Scale IQ | 91 | 27 |

On the intellectual measure, Mr. Cloud scored overall in the average range with a percentile rank equivalent of 27.

The Verbal Comprehension Index (VCI) measures verbal conceptualization, knowledge, and expression. The examinee is required to answer oral questions that measure factual knowledge and word meanings and to reason verbally and express ideas in words. On this Index, Mr. Cloud scored overall in the average range with a percentile rank equivalent of 27.

4

CLOUD-AR-116

Michael A. Cloud                    SSN: FRCP 5.2

The Perceptual Reasoning Index (PRI) measures nonverbal thinking and visual motor coordination. The examinee is required to integrate visual stimuli, reason nonverbally, and apply visual-spatial and visual-motor skills to solve the kinds of problems that are not school taught. On this Index, Mr. Cloud scored overall in the average range with a percentile rank equivalent of 99.

The Working Memory Index (WMI) measures auditory attention and number ability. The examinee is required to respond to oral stimuli involving remembering a series of numbers and performing math word problems. A good attention span is necessary for success on this Index. On this Index, Mr. Cloud scored overall in the low average range with a percentile rank equivalent of 23.

The Processing Speed Index (PSI) measures the ability to solve a variety of nonverbal problems as quickly as possible. This index measures speed of thinking as well as fine motor speed. On this Index, Mr. Cloud scored overall in the average range with a percentile rank equivalent of 34.

Wechsler Memory Scale – Fourth Edition (WMS-IV)

| Auditory Memory Subtests | Scaled Scores |
|---|---|
| Logical Memory I | 6 |
| Logical Memory II | 8 |
| Verbal Paired Associates I | 7 |
| Verbal Paired Associates II | 9 |

| Visual Memory Subtests | Scaled Scores |
|---|---|
| Designs I | 7 |
| Designs II | 7 |
| Visual Reproduction I | 7 |
| Visual Reproduction II | 7 |

| Immediate Memory Subtests | Scaled Scores |
|---|---|
| Logical Memory I | 6 |
| Verbal Paired Associates I | 7 |
| Designs I | 7 |
| Visual Reproduction I | 7 |

| Delayed Memory Subtests | Scaled Scores |
|---|---|
| Logical Memory II | 8 |
| Verbal Paired Associates II | 9 |
| Designs II | 7 |
| Visual Reproduction II | 7 |

| Indexes | Standard Score | Percentile Rank |
|---|---|---|
| Auditory Memory | 85 | 16 |
| Visual Memory | 82 | 12 |
| Immediate Memory | 78 | 7 |
| Delayed Memory | 84 | 14 |

On the memory measure, Mr. Cloud's scores ranged from borderline to low average. His scores on the memory measure are commensurate with his Full Scale IQ of 91.

5

CLOUD-AR-117

Michael A. Cloud                               SSN: FRCP 5.2

Wide Range Achievement Test – Third Edition

|                  | Standard Score | Percentile Rank | Grade Equivalent |
|------------------|----------------|-----------------|------------------|
| Word Reading     | 91             | 27              | 11.2             |
| Spelling         | 86             | 18              | 8.8              |
| Math Computation | 88             | 21              | 7.4              |

Mr. Cloud's standard scores on the achievement measure are in the low average to average range and commensurate with his Full Scale IQ of 91.

Trail Making Tests

Having Mr. Cloud connect numbers in ascending order assessed simple and divided attention. Speed of performance (18 seconds) was high average and no sequencing errors were made. On a more complex sequencing task that required him to alternate between numbers and letters in ascending order, speed of performance (86 seconds) was average with two sequencing errors.

VIII. EMPHASIS QUESTIONS: Based on observations, history, medical records, and Mr. Cloud's performance during this exam, his reasoning abilities are good. His ability to make occupational, social, and personal adjustments is significantly impacted by his depression. Mr. Cloud scored overall in the borderline range on the Immediate Memory Index but there is no evidence of significant memory loss or dementia.

IX. DIAGNOSTIC IMPRESSION

Axis I:       296.33 Major Depressive Disorder, Recurrent, Severe Without Psychotic Features.

Axis II:      V71.09 No Diagnosis on Axis II.

Axis III:     Physical Disorders and Conditions – Deferred to Physician.

Axis IV:      Severity of Psychosocial Stressors – Unemployed.

Axis V:       Global Assessment of Functioning = 68 (current).

X. PROGNOSIS: Fair to Good. Good with medical and psychological treatment of his depression. Mr. Cloud's immediate memory may improve after his depression is treated. Based on his neuropsychological functioning, once Mr. Cloud's mental health improves and his headaches and physical pain are properly managed, he should be able to work again.

XI. CAPABILITY: Mr. Cloud understands the meaning of filing for benefits, but he does not appear to be capable of managing funds due to his depression. His wife has been handling the finances.

Anne Smith, Ph.D.                              Date: 01-22-2013

6

CLOUD-AR-118

Telephone Answered 24 Hours
(612) 378-2363
FAX (612) 378-2215

Mailing Address:
Broadway East Bldg.
Suite 160
3433 Broadway St. NE
Minneapolis, MN 55413



Primary
Behavioral
Health
Clinics, Inc.

August 1, 2011

VIA FAX AND U.S. MAIL

James Waldhauser, Esq.
Cousineau McGuire Chartered
1550 Utica Ave. S., Ste. 600
Minneapolis, MN 55416-5318

RE: Michael Cloud

Dear Mr. Waldhauser:

At your request, I have met with your client, Michael Cloud, on June 14, 2011 in Dallas, Texas. You asked for a preliminary report regarding Mr. Cloud's status, as well as recommendations that I may have for treatment and for his future. I have also conducted a phone interview with his fiancée (now wife), as well as had her complete a history of how Michael has changed since sustaining numerous work related football concussions.

Mr. Cloud's history suggests that he sustained significant concussions over the course of his college and professional football career and his history suggests these go back to 1998 when he played for Boston College initially. He reports he had more serious concussions while playing for Kansas City in 1999, as well as the New England Patriots in 2003 and lastly with the New York Giants in 2004 and 2005. He indicated that as a result of these traumatic brain injuries, he began to lose his memory, concentration and suffered from vertigo, as well as tunnel vision and ultimately, due to his inability to recall basic football plays was released from the New York Giants.

Mr. Cloud's current life finds him living in Dallas, Texas where he functions as a part-time personal fitness trainer, mainly for young high school athletes. He indicates he does this work sporadically and also functions as a stay-at-home dad for their 8-month-old child. Mr. Cloud's wife is a practicing attorney with a Dallas law firm.

Michael continues to suffer from fatigue, as well as low back pains, neck, foot and ankle and numbness in his right arms. He also reported he feels depressed much of the time and his sleep is extremely problematic and he rarely sleeps more than two hours at a time. On a personal level, Michael indicated while he has always done well in school (high school diploma, as well as completing a Bachelors Degree in Sociology and four years from Boston College), he now finds school extremely hard and finds it difficult to concentrate on current learning activities involving business planning, finance and real estate. He indicated his current goal is to open a sports training complex in the Dallas area adjacent to a major hospital and while he is attempting

E-Ballot 07/17/2014

CLOUD-AR-119

Michael Cloud
August 1, 2011
Page 2

to put the financing together, he finds it extremely difficult to focus on this project.  He also
reports to me he has some vestiges of obsessive compulsive disorder that still plague him.

I administered a standard battery of psychological test to Michael and essentially, these were the
results:

Hopkins Symptom Checklist:  The Hopkins Symptom Checklist revealed significant
problems related to memory, worrying about sloppiness, feeling easily annoyed, feeling
apprehensive, doing things slowly to be sure it is right, soreness in muscles, checking and
double checking things he does, difficulty making decisions, mind going blank often,
numbness or tingling in parts of his body, having trouble concentrating and feeling tense or
keyed up.

Pain Report Recovery Index:  The Pain Report Recovery Index reveals significant issues
related to depression, continuous pain, obsessive/compulsive behavior, social and marital
problems and lack of initiative.

Individual Problem Rating Form:  The Individual Problem Rating Form notes significant
issues related to sadness and depression, anxiety and fear, sleep problems and resolving old
resentments.

MMPI-2:  His profile revealed a marked elevation of the F scale which statistically
invalidates the profile.  While the profile may not be of use in a forensic setting, it still may
have utility as a treatment planning tool and should be used in this regard.  The clinical
scales suggest a Chronic Pain Syndrome with clinical depression.  Intermittent confusion in
his thought process is noted, as is preoccupation with bodily dysfunction, paranoia,
suspiciousness, social isolation and impulsivity.  Subscales were consistent with these
findings.  On the Critical Items section he did endorse numerous critical items suggestive of
an acute anxiety state, depressed suicidal ideation, threatened assault, situational stress due
to alcohol, mental confusion, persecutory ideas, antisocial attitudes, family conflict, somatic
concerns, sexual concerns, anxiety and tension, sleep disturbance, deviant thinking, deviant
beliefs and problematic anger.  Again, the profile should be use primarily as a treatment
planning tool.

Beck Depression Inventory:  On the Beck Depression Inventory his score placed him above
the cut-off for clinical depression and would suggest the need for a trial of psychotropic
medication to help deal with this condition.

Cornell Index:  A score of -44 is four times the above the cut-off for individuals who may be
harboring self-destructive thoughts.  Again, psychological/psychiatric care should be
instituted.

Career Assessment Inventory:  On the Career Assessment Inventory, his highest areas of
work interest would be considered investigative with the other areas being average to

E-Ballot 07/17/2014

CLOUD-AR-120

Michael Cloud
August 1, 2011
Page 3

slightly below average in terms of his basic interest. By specific occupations he would find the most satisfaction in chiropractic, restaurant manager, caterer, accountant, math science teacher and a food service manager.

Collateral Interview: On June 27, 2011, I had a phone interview with Jennifer Lindsey. Ms. Lindsey indicated that she was Michael's fiancée and they were planning to marry in early July of this year. When I asked her about her history of Michael, she said she has known him for over ten years, but only in the last few years have they had a romantic relationship that has culminated in the birth of an 8-month-old child and now with their subsequent marriage. She described Michael in the past as a very warm and loving supportive individual, however, in the last few years, she feels he has changed dramatically and things have gotten much worse in his life, as well as in their relationship. She gave me some examples of some of the things she indicated "astounded me" at what he has done. One example was taking their infant child on an airplane to Rhode Island and not mentioning it to her. He has also had issues relating to forgetting where their child was in the home and going out for a jog. She also notes issues related to social withdrawal, as well as emotional labiality and is concerned this is getting worse over time.

Based on the evaluation, observation and collateral communication thus far, it would seem reasonable to assume Michael has sustained at least one, if not several, closed head injuries and is definitely in need of a more thorough work up, as well as professional assistance in dealing with a number of critical issues in his life. I will make the necessary arrangements to coordinate for a more in depth neuropsychological evaluation and will update you when the analysis is complete. If you have any questions in the interim, feel free to contact me directly as we have properly executed releases to discuss Mr. Cloud's case.

Sincerely,

John Patrick Cronin, Ph.D., M.P.H.
Licensed Psychologist
Clinical Director
Diplomate, American College of Forensic Examiners

JPC:sp

No single measure should be considered absolute. Conclusions reached in this report are subject to the limitations of scientific procedures, validity and reliability standards established by test authors, and the impossibility of making absolute predictions.

E-Ballot 07/17/2014

CLOUD-AR-121

Jeffrey A. Dorman, M.D.

A Professional Corporation
Diplomate, American Board of Orthopaedic Surgery
Fellow, American Academy of Orthopaedic Surgeons
Orthopaedic Surgery • Sports Medicine

Century City Medical Plaza, Suite 305, 2080 Century Park East, Los Angeles, CA 90067 • (310) 553-5633 • Fax (310) 553-3214

August 2, 2011

The Honorable Presiding Judge
Workers' Compensation
Appeals Board
6150 Van Nuys Boulevard
Room 110
Van Nuys, CA  91401-3370

RE:  MICHAEL CLOUD

     EMP:      Kansas City Chiefs
     WCAB#:    Unassigned
     EAMS#:    ADJ 7419384
     CLAIM#:   01WC0488634
     D/I:      October 13, 2002

                AGREED MEDICAL EVALUATION

To Whom It May Concern:

I declare under penalty of perjury that this evaluation
clearly warrants billing at the ML103 complex level.  This
is a complex case in light of the issues discussed.
Criteria are satisfied for billing at the complex level.

There is discussion of causation and apportionment, along
with review of records.  This evaluation is billed
accordingly as a complex ML103 level evaluation with AME
modifier.

E-Ballot 07/17/2014

MICHAEL CLOUD
August 2, 2011
Page 2


This 36-year-old male professional football player for the
Kansas City Chiefs is seen for an orthopaedic agreed medical
evaluation on August 2, 2011.  The history is obtained from
the patient, as well as from review of submitted medical
records.


CHIEF COMPLAINT:

Right ankle and foot.


HISTORY:

He states that he was in his usual state of health until
October 13, 2002, when he describes an incident which
occurred while playing football.  He was playing in
California.  He describes an injury to the right ankle and
foot.  While playing, he experienced a "pop" in his right
foot.

He attempted to continue playing; however, the pain in the
right foot was very significant.  He was seen by the team
doctor.  He underwent x-rays and had an ultrasound study.
Ice was applied.  He was given injections for pain and he
would tape the foot and ankle.

He attempted to practice and continue playing and training.
He missed two games as a result of this injury.  He then
played two more games.  He would receive injections to the
foot.

He states that he developed some lower back complaints
related to changes in the way he would run and walk.

In December 2002, his contract expired with the Kansas City
Chiefs, where he had been playing.

In the summer of 2003, he was training with a different
team.  He was with the New England Patriots.  He recalls
that his right foot and ankle "snapped."  He developed a

E-Ballot 07/17/2014

CLOUD-AR-123

MICHAEL CLOUD
August 2, 2011
Page 3

compartment syndrome.  He was told that he developed
peroneus longus necrosis.  He underwent surgical
intervention.  He received treatment postoperatively.

He played for the New England Patriots for one year.  He
then played for the New York Giants.  He retired in 2006.
After the above-noted injuries, he denies any further
injuries.

He is not receiving any formal treatment at this time.  He
is no longer playing football.  He last played professional
football in January 2006.

PRESENT COMPLAINTS:

There is pain in the right foot and ankle.  He describes
soreness, tenderness, and pain in the Achilles region.
There are complaints in the arch and posterior ankle near
the attachment of the Achilles tendon.

He has slight numbness in the right fifth toe.  There is no
pain along the anterolateral aspect of the lower leg as it
relates to the compartment syndrome.

Complaints are referred proximally toward the lower back,
and are described as stiffness and a shooting type of pain.

He denies any other areas of orthopaedic involvement.  He
has filled out a pain drawing, reflecting only these areas
of involvement, as noted.

He does not take any prescription medications.  He will
utilize over-the-counter pain medication and anti-
inflammatory medications.

ACTIVITIES OF DAILY LIVING:

He has filled out a pain questionnaire and an activities of
daily living questionnaire.  He has indicated daily

E-Ballot 07/17/2014

E-Ballot 07/17/2014

CLOUD-AR-125

MICHAEL CLOUD
August 2, 2011
Page 4


complaints of pain with activities.  This essentially
concerns the right foot and ankle areas.  Certain weight-
bearing and loading activities cause pain.  He will limit
activities to prevent his pain from worsening.

While he may have complaints with certain activities, as it
relates to the right lower extremity, he clearly indicates
that this does not affect daily activities, such as bathing,
dressing, showering, and self-hygiene activities.


PAST MEDICAL HISTORY:

He has had other injuries.  As noted, in the summer of 2003,
while playing for the New England Patriots, he developed
compartment syndrome and underwent surgery.  This related to
the lower leg, and he felt that he never fully recovered.

He sustained a head injury while playing for the New York
Giants.  This was near the end of his employment.

He developed a left great toe problem while in college at
Boston College.  He was told that he developed a "cyst."
This was in approximately 1995.  He underwent surgery and
this healed uneventfully.  He did well.

He cannot recall any other pertinent orthopaedic history,
other than what has been described above.

Surgeries include the right lower leg surgery for
compartment syndrome, and the left great toe surgery in
college.

He denies any medical problems.


JOB DESCRIPTION:

He played professional football as a running back.  He
played for approximately seven years.  He initially played
with the Kansas City Chiefs.  This was his first team as a

E-Ballot 07/17/2014

MICHAEL CLOUD
August 2, 2011
Page 5


professional football player.  He was playing for the Kansas
City Chiefs from approximately 1999 until 2002.  He then
played for the New England Patriots in 2003.  In 2004, he
played for the New York Giants.

In 2005, he apparently played for the New England Patriots
and the New York Giants.

He last played football in January 2006.

He did lifting, which would be significant, as it relates to
weight-training.  There was bending, stooping, pushing,
pulling, squatting, kneeling, standing, walking, climbing,
and overhead activities.

He did a lot of running in training, in practice and in
games.  There was physical contact with tackling and being
tackled.


PHYSICAL EXAMINATION:

The patient is a well-developed, well-nourished male.

The patient walks with a slightly abnormal gait pattern.  He
tends to favor the right side with a slight antalgic
component.  He does not completely normally roll over on his
right as in a normal heel-to-toe progression.

The pelvis is level.  Trendelenburg sign is negative.

Lumbar Spine Examination

On examination of the lumbar spine, he moves through
excellent range of motion of the lumbar spine.  He does not
have significant complaints with mobility.  He describes a
"pinch" along the right side of the lower back.


E-Ballot 07/17/2014

CLOUD-AR-127

MICHAEL CLOUD
August 2, 2011
Page 6


| Range of Motion - Lumbar Spine | Right | Left | Normal |
|---|---|---|---|
| Flexion | | 60 | 60 |
| Extension | | 25 | 25 |
| Deviation | 25 | 25 | 25 |

In a sitting position, straight leg raise is negative.

In a supine position, straight leg raise is completely negative for any elicited lower back pain or nerve root irritability.  There is no radiculopathy.  Fabere and Lasègue's are negative.

In a prone position, there is no lumbar paraspinal spasm or tenderness.  There is no midline spinous process tenderness, posterior iliac spine tenderness, sciatic notch tenderness, or posterior thigh tenderness.

Hip Examination

Examination of the hips reveals no obvious abnormality to inspection.  There are no areas of tenderness to palpation about the hips.

Range of motion is noted to be normal and symmetrical with the contralateral side.  There is no elicited pain or crepitus with mobility of the hips.


| Range of Motion - Hips | Right | Left | Normal |
|---|---|---|---|
| Flexion | 110 | 110 | 110 |
| Extension | 30 | 30 | 30 |
| Internal rotation | 35 | 35 | 35 |
| External rotation | 50 | 50 | 50 |
| Abduction | 50 | 50 | 50 |
| Adduction | 30 | 30 | 30 |

Knee Examination

On examination of the knees, there is no obvious swelling or effusion noted.  There is a 10" lateral right lower leg

E-Ballot 07/17/2014

CLOUD-AR-128

MICHAEL CLOUD
August 2, 2011
Page 7

scar.  There is some deep anterolateral and lateral tenderness, right lower leg.

Range of motion of the knees is normal and symmetrical. There is no pain or crepitus with mobility of the knees.

| Range of Motion - Knees | Right | Left | Normal |
|---|---|---|---|
| Extension | 180 | 180 | 180 |
| Flexion | 135 | 135 | 135 |

There is negative Lachman, negative anterior drawer and no collateral instability to varus or valgus stress in full extension or 20 degrees of flexion.  There is negative McMurray and negative pivot shift.

Patellofemoral mobility is normal.  There are negative patellofemoral inhibition and apprehension signs bilaterally.

Ankle Examination

Examination of the ankles reveals no swelling, effusion or deformity.

There is tenderness in the right Achilles and calcaneal tuberosity, posterior ankle.

There is negative Tinel's at the tarsal tunnel.

Range of motion of the ankles is noted to be normal and symmetrical.  There is no elicited pain or crepitus with mobility of the ankles.

| Range of Motion - Ankles | Right | Left | Normal |
|---|---|---|---|
| Dorsiflexion | 15 | 15 | 15 |
| Plantar flexion | 50 | 50 | 50 |
| Eversion | 20 | 20 | 20 |
| Inversion | 35 | 35 | 35 |

E-Ballot 07/17/2014

CLOUD-AR-129

MICHAEL CLOUD
August 2, 2011
Page 8

Subtalar mobility is noted to be 100% of normal and symmetrical bilaterally, without elicited pain.

Foot Examination

On examination of the feet and toes, there is no obvious swelling noted.  There is a 3" left medial forefoot scar from prior surgery in college.

There is tenderness in the right mid arch.

Mobility is noted to be normal and symmetrical involving the toes.

| Range of Motion - Great Toe | Right | Left | Normal |
|---|---|---|---|
| Metatarsophalangeal joint | | | |
| Extension | 40 | 40 | 40 |
| Flexion | 25 | 25 | 25 |
| | | | |
| Interphalangeal joint | | | |
| Extension | 0 | 0 | 0 |
| Flexion | 30 | 30 | 30 |

Neurovascular Examination

Sensation and motor examination are normal.

Reflexes are intact and symmetrical.

Pulses are normal and symmetrical.

Circumferential Measurements, Lower Extremities

| | Right | Left |
|---|---|---|
| 10 cm above the patella | 54 | 55 |
| Maximal calf | 44 | 44 |

E-Ballot 07/17/2014

CLOUD-AR-130

MICHAEL CLOUD
August 2, 2011
Page 9


X-RAYS:

Lumbar spine:  Alignment is normal.  There is no obvious
spondylolysis or spondylolisthesis.  Disc spacing is
maintained for the most part.  There is some narrowing at
L5-S1, but this is clearly not advanced.  Also, there are no
obvious hypertrophic changes, such as osteophytes.

Right ankle:  The mortise is preserved.  No significant
degenerative changes are noted.

Right foot:  Unremarkable.


RECORD REVIEW:

A claim form dated August 3, 2010 is reviewed noting CT
injury of January 1, 1999 through December 31, 2005 to the
head and brain due to repetitive high velocity impacts to
the head and body.

A claim form dated August 3, 2010 is reviewed noting of
October 13, 2002 to his foot when a player stepped on his
foot.

Personnel records are noted.

Handwritten Kansas City Chiefs football club orthopaedic
examination dated April 24, 2002:  Notes history.  1984 low
back spasm.  1995 left hip strain.  December of 2001 right
posterior hip pointer.  1997 right knee sprain.  1995 right
ankle sprain.  1995 left ankle sprain.  December of 1995
left foot first metatarsal.

Evaluation, Dr. Browne, October 14, 2002:  He is seen for
evaluation for injuries sustained to the dorsum of his right
foot yesterday during a game.  He planted hard with his
right foot to cut back to the right and in the process,
another player stepped on his foot.


E-Ballot 07/17/2014

CLOUD-AR-131

MICHAEL CLOUD
August 2, 2011
Page 10

His contact was made actually on a double team.  He
developed tenderness primarily through the anterior aspect
of the foot.  This occurred in the latter part of the fourth
quarter.

Today, he has discomfort of the dorsum of the right foot
overlying the first metatarsal junctional area, perhaps
right between the first and second metatarsal areas.  It is
a bit difficult getting him up on his tiptoes, but there is
no appreciable swelling or soft tissue crepitus felt there.

Impression:  Lisfranc joint contusion with possible Lisfranc
ligamentous sprain, doubt intraarticular fracture.  It would
be appropriate to get an MR x-ray, which will be scheduled
for early tomorrow morning, to make sure that there is no
underlying major ligamentous disruption and/or fracture of
the area.

He has been encouraged to modify his exercise workout
activity.  He is to continue with anti-inflammatory
medication.  He will be followed again at the Arrowhead
facility in two days.

MRI study, right foot, October 16, 2003:  Impression:
Minimal edema in the dorsal superficial fascia of the
midfoot.  No bone contusion, fracture, or malalignment.
Intact Lisfranc ligament and joint.

MRI, right midfoot, October 15, 2002:  Impression:  Evidence
of some soft tissue edema with increased T2 signal
surrounding the proximal aspect of the second metatarsal and
along the adjacent dorsum of the midfoot.

No MRI evidence of a focal midfoot fracture nor evidence of
stress fracture at this time.  Normal uniform width of the
intertarsal joint spaces and tarsometatarsal joints.

Follow-up report, Dr. Browne, October 20, 2002:  He returns
for follow-up of his right anterior midfoot sprain, right
above the meta tarsotarsal junctional area of the second
ray.  Plan:  Continue to monitor his progress with the

E-Ballot 07/17/2014

CLOUD-AR-132

MICHAEL CLOUD
August 2, 2011
Page 11


athletic training staff and the medical staff.  He will
continue the anti-inflammatory medication.  He will follow-
up on a regular basis.

Progress report, Dr. Browne, October 23, 2002:  He has had
quite a bit less discomfort.  He is now able to run hard,
make pivots, and twist.  He still has a little bit of
discomfort toward the latter part of practice and with
longer periods of running.

Plan:  Intensify his workout program.  He will be allowed to
increase his activity using a small arch support and strap
taping, which does provide some relief of his discomfort as
well.  He will continue to be monitored and followed by the
training and medical staff.

Note, Dr. Barnthouse, November 13, 2002:  He participated in
practice today and during and following had some mild
soreness with attempts to (blank) and push off.  Following
practice, he was primarily sore in the distal aspect of the
arch in the area between the first and second metatarsals.

He was less sore to palpation over the dorsum of the foot.
He still has some mild pain with adduction of the forefoot.
Impression:  Resolving midfoot sprain.  Have suggested
attempts to continue supporting of the foot.  Should be
continued to play as symptoms allow.  Should symptoms
persist or increase, suggest repeat evaluation with x-rays
of the foot.

Progress note, Dr. Barnthouse, November 20, 2002:  He is
doing much better.  The inserts are helping a great deal.
He is also using a magnet device, which he thinks is
helping.

Following practice today, he had no swelling.  Could not
find an area of soreness in the right foot.  He seems to be
returning well.  He is working out normally with minimal
symptoms.


E-Ballot 07/17/2014

CLOUD-AR-133

MICHAEL CLOUD
August 2, 2011
Page 12

Note, Dr. Barnthouse, May 18, 2001:  He apparently sustained an injury to his right ring finger on May 15, 2001 when he jammed his finger.  He was evaluated by training staff.  He apparently had full extension and flexion, but was slightly sore over the radial aspect near the middle phalanx.

At this point, suggest that if he is tolerating the symptoms reasonably well, that he still protect the finger for football activities.  Will be rex-rayed in the next four to five days.  If he has any ongoing significant symptoms or signs of swelling or other dysfunction, suggest that he be seen in the office.

Note, Dr. Barnthouse, August 7 (year not provided):  He is seen for evaluation of his left foot.  There is an area of skin maceration between the fourth and fifth toes of the left foot.  Has evidence to suggest a soft corn in the area. There is no evidence (blank), redness, swelling, or infection.

Mainly evidence of skin maceration.  He is receiving treatment with betadine and saline soaks.  Will have him continue to wear spacers.  Suggest x-rays when he returns to the Kansas City area to evaluate the condyles of the phalanges.

Note, Dr. Barnthouse, December 23, 2001:  Sustained a blow to the posterior hip during a game.  He was unable to return at the time.  It appeared that he had primarily a posterior hip pointer.

He was seen following the game, at which time, the pain remained isolated to the posterior aspect of the iliac crest.  He had full hip motion.  He was locally tender just in the area of the muscle attachment in that area.  X-rays of the hip showed no evidence of any bony abnormality.

X-rays of the back showed no evidence of any bony abnormality, specifically no evidence of any spinous process fracture.  Impression:  Right posterior hip pointer.  Ice

E-Ballot 07/17/2014

CLOUD-AR-134

MICHAEL CLOUD
August 2, 2011
Page 13

application is recommended.  He was given Vioxx.  He will
return for follow-up tomorrow.

Follow-up report, Dr. Barnthouse, December 26, 2001:  He
worked out well today and had minimal soreness.  He seems to
be recovering well from the injury.  Will have him continue
to return to practice progressively and will monitor any
return of symptoms.

Note, Dr. Noblin, August 9, 1999:  His right heel was looked
at.  Basically, there is a small 1 x 2 cm area.  There is a
very good granulation base at the base of the Achilles from
a previous blister.  Certainly no area of cellulitis around
rhombus spot.

Excellent granulation bed at this point.  Recommendation is
basically to continue to place some Bacitracin ointment on
it with a protective covering.  Will start some wet to dry
dressings at nighttime.  The next day, will probably end up
wrapping the heel.

He has a lot of friction or forces around the ankle at this
time and the dressing is coming off during practice because
it is getting moist with sweat.  Will wrap it tomorrow.

Notes, Dr. Barnthouse, August 18 and August 19, 1999:
Sustained an injury to the left shoulder on August 17, 1999
when he apparently put his left arm down to brace himself as
he fell at the same time.  Another player hit him on the
anterior shoulder.

He states that he felt pain at the time.  Could not really
describe the sensation of the injury.  Following the
episode, he was able to return to practice.  He has never
had any significant prior shoulder injury.  Impression:
Left shoulder, rule out possible labral tear.

Recommend x-rays of the shoulder, which will be reviewed.
Will continue to follow his progress.  At this point,
certainly he seems to have relatively mild to minimal
findings and is able to participate in practices.  Have

E-Ballot 07/17/2014

MICHAEL CLOUD
August 2, 2011
Page 14


indicated to him that it is safe for him to continue
practice.  Will continue to monitor his progress.

Follow-up note, Dr. Barnthouse, (date not provided):  He is
being seen with regard to his left shoulder.  He states that
he is able to perform all of his football activities.
Occasionally, he notices a nonpainful clicking in his
shoulder.

Will continue to monitor his progress.  He will continue
protective strapping of the shoulder.  If the click persists
or becomes particularly painful, will discuss with him the
possibility of further imaging studies.

Note, Dr. Barnthouse, August 27, 1999:  Have reviewed the x-
rays of his left shoulder.  The humeral head is reduced.  No
evidence to suggest acute evidence of bony injury or
evidence of chronic problems in the shoulder.

MRI study, left shoulder, January 5, 2000:  Impression:
Tear, glenoid labrum, probably extending from the anterior/
superior to the anterior/inferior segment of the labrum.
Mild irregularity of the anterior rim of the glenoid.  No
rotator cuff tear.

Follow-up report, Dr. Browne, January 18, 2000:  Seen for
follow-up of his left shoulder.  He did sustain an injury
during this past summer camp.  He was seen by Dr. Barnthouse
at the time of the initial injury.  It was at least
suggested at that exam that he probably had a subluxation.

He continued his workouts.  He states that he had no
limitation with his lifting, running, or workout activities.
He absolutely had no symptoms whatsoever while carrying the
ball this year or performing his typical blocking duties as
a running back.  It is believed that he probably had a
subluxation event with an asymptomatic residual glenoid
labral tear.

He has no anterior instability and/or mechanical catching or
popping associated with the finding.  He is totally


E-Ballot 07/17/2014

CLOUD-AR-136

MICHAEL CLOUD
August 2, 2011
Page 15


asymptomatic.  At this point, it would be hard to encourage
or recommend an arthroscopic evaluation for surgical
management with these findings.  The player feels
comfortable with his particular treatment program.

Have asked him to continue to work diligently on his
strengthening exercises and be in touch with the training
staff periodically to follow-up on his progress prior to
returning back to Kansas City for the regular off season
workout program.  He, of course, will be seen again sooner
should there the need arise.

X-rays, cervical spine, February 19, 1999:  Impression:
Normal.

X-rays, right knee, February 19, 1999:  Impression:  Okay.

X-rays, left foot, February 19, 1999:  Impression:  Minimal
degenerative changes of the left first metatarsophalangeal
joint.  Previous cyst excision from metatarsal head.
Decreased range of motion of right subtalar joint.  No x-
rays yet of right ankle and foot.  Decreased range of motion
of the left MPJ.

List of significant injury history is reviewed.  September
7, 1994:  Neck burner.  April 1, 1995:  Right ankle sprain.
April 23, 1995:  Head, moderate concussion.  August 14,
1995:  Left hip flexor quad strain.  December 12, 1995:
Left foot first metatarsal cyst.  Bone grafting and cyst
debridement.  April 15, 1997:  Right knee medial collateral
ligament sprain.  September 27, 1997:  Left rib contusion.

Michael Einbund, M.D., dated July 6, 2009, qualified medical
evaluation:  This lists employment with the Kansas City
Chief, New England Patriots, and New York Giants.  History
noted that he played professional football as a running back
from 1999 to 2002 for the Kansas City Chiefs.

In 2003, he played for the New England Patriots, and in
2004, for the New York Giants.  In 2005, he played for the
New England Patriots and New York Giants.  In 2002, he

E-Ballot 07/17/2014

CLOUD-AR-137

MICHAEL CLOUD
August 2, 2011
Page 16

sprained his right mid foot and missed two games.  In 2003,
during offseason training, he sustained a contusion and
hematoma to his right leg and underwent right leg fasciotomy
with removal of necrotic tissue and muscle.

Complaints of mild neck pain on the right side, lower back
pain on the right side.  Pain in the right hip.  Constant
pain in the right knee and right lower leg with numbness to
the two lateral toes.

Locking of the right ankle.  Dropping of the right foot.
Loss of the arch, right foot.  Difficulty sleeping, anxiety,
and stress.

Diffuse tenderness over the plantar arch of the right foot.
Tenderness over the right lateral leg.  An operative report
was reviewed from July 2003, noting a right leg fasciotomy
with anterior and lateral compartment syndrome.  There was
necrotic muscle and tendon.  Peroneus longus.

In September 2003, he continued to do well and regain full
function.  No pain or weakness was noted.  No functional
impairment.  He was running and changing directions.  The
right leg healed with no detectable impairment.

Diagnoses include status post compartment syndrome, right
leg, and lumbar sprain with radicular complaints.  Maximum
medical improvement.  For the lumbar spine, he gives a DRE
category II and an 8% whole person impairment.

For the right leg, he has residuals and ambulates with a
slight limp.  He provides a 10% whole person impairment.
Three percent (3%) would be added for pain-related factors.

There is documentation from the Commonwealth of
Massachusetts regarding injury while playing for the New
England Patriots.  He sustained an injury, July 2003 and was
partially disabled, commencing March 1, 2006 and continuing.

End review of submitted medical records of Michael Cloud.

E-Ballot 07/17/2014

MICHAEL CLOUD
August 2, 2011
Page 17


IMPRESSION:

1.   Sprain/strain, right foot and ankle.

2.   Clinical evidence suggesting chronic Achilles
     tendinitis and retrocalcaneal bursitis.

3.   Clinical evidence suggesting right plantar fascitis.

4.   Status post compartment syndrome, right lower leg, with
     surgical release of anterior and lateral compartments –
     from records.


DISCUSSION:

This history essentially involves injury to the right lower
extremity.  I am evaluating the applicant in the capacity of
an agreed medical evaluation.

As per the joint cover letter from the parties, I have been
asked to limit my evaluation to the specific injury to the
right foot, which occurred on October 13, 2002.  This
occurred while he was playing for the Kansas City Chiefs as
a running back.

At that time, the injury occurred while playing football.
He experienced a pop in his right foot.  He had significant
complaints of pain and went on to receive medical care.  He
was treated by the team doctor.  He was taped.  He received
treatment measures and injections.

He missed some games.  He required injections to continue
playing subsequently.  It was soon after that incident,
however, that his contract expired and he was no longer
playing for the Kansas City Chiefs.

I did review records.  There was acute documentation
reflecting evaluation and treatment.  An MRI of his right
mid foot showed some edema in the area of the proximal

CLOUD-AR-139

MICHAEL CLOUD
August 2, 2011
Page 18

second metatarsal.  There were no fractures, to include the
absence of stress fractures.

An MRI of the right foot subsequently also showed some
edematous changes.

Dr. Browne evaluated the applicant and felt that there was
probably a lisfranc contusion and sprain.  I believe that
was a reasonable impression, given the MRI evidence that
there had been edema in the area of the second metatarsal.
The lisfranc joint is in that area at the second metatarsal
cuneiform region.

There was no evidence of any lisfranc subluxation or
dislocation, and no definitive evidence of fracture.  This
is an area, however, that did remain symptomatic, to include
problems with the arch, Achilles, and calcaneal tuberosity
areas.

He does have residuals to these areas.

Unfortunately, his injuries to the right lower extremity are
not localized to the right foot and ankle.

Subsequently, while playing for the New England Patriots, he
sustained an injury and developed a compartment syndrome.
Unfortunately, I do not have full records; however, I do
note that there was documentation reflecting this injury.

Ultimately, the documentation that I reviewed noted that he
was unable to continue playing because of that July 23, 2003
injury.  That concerned the compartment syndrome.  That also
involved the right lower leg.  There is a long scar along
the lateral aspect.

Apparently, the lateral and anterolateral compartments were
involved.  There was still some deep tenderness.
Clinically, he describes some numbness.

E-Ballot 07/17/2014

CLOUD-AR-140

MICHAEL CLOUD
August 2, 2011
Page 19

Quite frankly, the residuals would seem to be partly related
to his right lower leg compartment injury and surgery and
part related to the foot and ankle injury.

He has not had medical care for some time.

He has long been permanent and stationary/MMI.

He has not had any further treatment nor any further
injuries to these areas.  I believe that his condition did
stabilize when he completed treatment following each of the
injuries.

Subjectively, as it relates to the right lower extremity,
complaints would be constant and slight, reaching slight to
moderate intermittently.

Objectively, he has an abnormal gait pattern.  He does not
completely roll over normally his right foot because of the
problems related to the arch and calcaneal tuberosities.

There is tenderness in the area of the arch, Achilles, and
calcaneal tuberosity, consistent with retrocalcaneal
involvement.  He has a long lateral scar with some deep
anterolateral and lateral compartmental tenderness.

There is no current numbness.

With regards to limitations, I would suggest that he avoid
running, jumping, prolonged weight-bearing, and activities
that would require repetitive or prolonged climbing and work
on uneven terrain.

These are very similar to the limitations that were
described by Dr. Einbund in his report.

While he describes lower back issues, there are really no
findings concerning the lower back.  This has definitely
improved and I do not see any significant residuals.

E-Ballot 07/17/2014

MICHAEL CLOUD
August 2, 2011
Page 20

As it relates to AMA Guides criteria, he has impairment.  He is definitely better.  He does not have any definitive weakness.  He does not have any neurological impairment. There are areas of tenderness.  His gait pattern is abnormal.

As it relates to a strict rating, one could, perhaps, rate by analogy and utilize Table 17-33, which is the diagnosis-based estimates table.

The type of gait pattern that he has would be similar if there was a metatarsal fracture with loss of weight transfer.  This would carry a 4% whole person impairment.

This would not, however, completely take into account the functional aspects of the residuals.  Clearly, this would not take into account, as well, the functional residuals concerning the compartment syndrome residuals.

I believe that the station and gait disorder table, 15-6 C, would be most appropriate.

I note that Dr. Einbund, in his report in 2009, felt that the gait derangement table should be used and he had provided a 10% whole person impairment.

I would tend to agree.  This would place him at the upper end of a class 1 or the lower end of a class 2 category.

If using a direct ADL approach, this would essentially translate to a 25% capacity loss.  This assumes that 40% would be the maximum impairment for the lower extremity, if all function were lost, such as an amputation.

I believe that a 10% impairment would be appropriate.  This takes into account functionality and "work" impairment, as well as acknowledging that there has been improvement.

He no longer is capable of playing professional football.

E-Ballot 07/17/2014

CLOUD-AR-142

MICHAEL CLOUD
August 2, 2011
Page 21


Future care is indicated.  I doubt that he needs anything
surgical.  He will probably require treatment if there is a
flare-up, such as physical therapy, medications, injections,
and other such nonoperative measures.

As it concerns causation and apportionment, this is strictly
industrial as it relates to the football injuries.  There
are no underlying causal factors, per Labor Code Section
4663 or Escobedo.

Quite frankly, there are two injuries while playing for two
different teams that would contribute to the functional
residuals as he presents with this at this time.

Furthermore, and with reasonable medical probability, both
of these injuries would seem to equally contribute to his
current condition.

Part of his functional residuals and impairment at this time
relates to the 2002 injury while with the Kansas City
Chiefs, concerning the foot and ankle.  Part of this relates
to the residuals from the compartment syndrome.

As such, 50% of his present overall right lower extremity
impairment would relate to the compartment syndrome injury
and 50% would relate to the foot and ankle injury which
occurred in 2002.

It should be made clear that the compartment syndrome was
from his employment with the New England Patriots.

This is complicated, and I certainly hope that this
discussion is clear.  If the parties have anything else that
they would like me to address or clarify, then please advise
and I will certainly continue to keep all parties well-
informed.


E-Ballot 07/17/2014

CLOUD-AR-143

MICHAEL CLOUD
August 2, 2011
Page 22

DISCLOSURE:

During this evaluation, the patient was interviewed by a
historian, Manuel Rojas, for an initial history.  The entire
medical history was reviewed in detail by myself with the
patient.  Medical records were initially reviewed and
summarized by Karla Montes.  The records were also reviewed
by the undersigned in their entirety, with further additions
to the medical record review.  The entire physical
examination was performed by myself, including various
measurements.  X-rays were obtained by Margo Miller, CRT,
AART, license# RHT 7050.  Assessment was strictly done by
the undersigned.  The above evaluation was carried out at
2080 Century Park East, Suite 305, Los Angeles, California.
All the dictation was prepared by myself, including any and
all impressions and conclusions described in the discussion.
Transcription was provided by Professional Transcribing
Services.

In compliance with recent Workers' Compensation legislation
(Labor Code Section 4628 (b):  "I declare that the above
evaluation was performed by myself and was in compliance
with the guidelines established by the Industrial Medical
Council or the Administrative Director pursuant to paragraph
5 of the subdivision (j) of Section 139.2."

In compliance with recent Workers' Compensation legislation
(Labor Code Section 4628 (j):  "I declare under penalty of
perjury that the information contained in this report and
its attachments, if any, is true and correct to the best of
my knowledge and belief, except as to information I have
indicated I have received from others.  As to that
information, I declare under penalty of perjury that the
information accurately describes the information provided to
me and, except as noted herein, that I believe it to be
true."

E-Ballot 07/17/2014

MICHAEL CLOUD
August 2, 2011
Page 23


In compliance with Labor Code 4906(g), "I declare under
penalty of perjury that I have not violated Labor Code
Section 139.3 and I have not offered, delivered, received or
accepted any rebate, refund, commission, preference,
patronage, dividend, discount or other considerations,
whether in the form of money or otherwise, as compensation
or inducement for any referral examination or evaluation."

In compliance with recent Workers' Compensation legislation
(Labor Code Section 5703 under AB 1300):  "I have not
violated Labor Code Section 139.3 and the contents of the
report and bill are true and correct to the best of my
knowledge.  This statement is made under penalty of
perjury."

If there are any further questions regarding this, please do
not hesitate to contact my office.  Thank you very much for
allowing me to participate in the evaluation of this
patient.

This report and declaration were signed in the County of Los
Angeles on February 27, 2012.

                    Yours truly,


                    JEFFREY A. BERMAN, M.D.
                    Diplomate, American Board
                    of Orthopaedic Surgery

JAB:mb/mc

CLOUD-AR-145

MICHAEL CLOUD
August 2, 2011
Page 24


cc:  Matthew A. Graffigna
     Attorney at Law
     Law Offices of Seyfarth & Shaw
     2029 Century Park East
     Suite 3500
     Los Angeles, CA  90067

     G. Ronald Feenberg
     Attorney at Law
     Law Offices of Rose,
     Klein & Marias
     801 South Grand Avenue
     11th Floor
     Los Angeles, CA  90017

     Ron de la Torre
     Claims Examiner
     Travelers Indemnity
     P.O. Box 660281
     Dallas, TX  75266

     Michael Cloud
     5126 Miller Avenue
     Dallas, TX  75206


E-Ballot 07/17/2014

CLOUD-AR-146

*Orthopaedic Surgery*

1125 East Seventeenth Street
Suite E-218
Santa Ana, California 92701-2231
(714) 835-3031
Fax (714) 835-6546

Michael J. Einbund, M.D., Inc.

Jacob Rabinovich, M.D.
A Professional Corporation

Diplomates
American Board of Orthopaedic Surgery

Inland Empire Office
4156 10th Street
Riverside, CA 92501-3181
(951) 684-8844 Office
(951) 684-8866 Fax

July 6, 2009

Walter Korzeniowski
Attorney at Law
448 Turnpike St.
South Easton, MA  02375

RE:       CLOUD, MICHAEL
DOI:      C.T. 1999 - 2006
DOE:      07/06/09
EMP:      Kansas City Chiefs; New England Patriots; New York Giants
WCAB #:   Unassigned
CLAIM #:  Unknown

### QUALIFIED MEDICAL EVALUATION

Mr. Michael Cloud, a 33-year-old male, was seen by me in my Santa Ana office on July 6, 2009, for a Qualified Medical Evaluation of injuries sustained on a continuing trauma basis while employed as a professional football player by the Kansas City Chiefs, New England Patriots, and New York Giants.  The following is a report based on the patient's history and the physical examination.

Please note that this case was very complex in nature.  It should be noted that the review of the patient's entire medical chart incorporating my findings, as well as other treating and/or consulting physician reports, evaluation involving multiple body parts and multiple dates of injury, and research of the AMA Guides to the Evaluation of Permanent Impairment, 5th Edition, in order to arrive at my final conclusions regarding the pending workers' compensation issues, the total time spent was seven hours and we are billing at the ML104 level.

E-Ballot 07/17/2014

CLOUD-AR-147

· Orthopaedic Surgery

RE: CLOUD, MICHAEL
July 6, 2009
Page 2

## HISTORY OF INJURY:  (As reported by the patient)

The patient reports that he played professional football as a running back from 1999 to 2002, for the Kansas City Chiefs, in 2003, for the New England Patriots, in 2004, for the New York Giants, in 2005, for the New England Patriots and New York Giants.

The following injuries occurred while with the Kansas City Chiefs:

> During a game, the patient fractured some ribs.  He was taken out of that game.
>
> In 1999, he sustained a dislocated left shoulder, which caused him to miss one game.
>
> The patient suffered a contusion involving his right quadriceps.  He missed practice for one week as a result.
>
> In 2001, during a game, he suffered a direct hit to his right hip.  He does not recall if he missed any practice or game time as a result of that injury.
>
> In 2002, he sprained his mid right foot.  He missed two games as a result.

The following injuries occurred while with the New England Patriots:

> In 2003, during off-season training, the patient sustained a contusion and hematoma involving his right leg.  He subsequently underwent right leg fasciotomy, with removal of necrotic tissue and muscle.  He subsequently missed all of summer training camp, which was for about four or five weeks.  He also missed the first four game of that season.
>
> He sustained a broken right ring finger.  Treatment included taping and surgery.

The following injuries occurred while with the New York Giants:

> During a game, he suffered a concussion.  He was taken out of that game.
>
> During a game, he sustained a broken left rib.  He was taken out of that game.

In 2005, the patient does not recall sustaining any injuries, while with the New England Patriots or New York Giants.

E-Ballot 07/17/2014

CLOUD-AR-148

Orthopaedic Surgery

RE: CLOUD, MICHAEL
July 6, 2009
Page 3

In addition to the above-noted incidents, the patient also states that he suffered numerous lesser injuries to his entire body on a repetitive basis while playing professional football. Professional football is an extremely violent occupation, the demands of which require extreme physical activity and violent physical contact. These physical demands put a great deal of stress and strain on the musculoskeletal system. Throughout his career as a professional football player, the patient continuously sought treatment from the team trainers which provided him with temporary relief so that he could continue to play in games and participate in practices. He would frequently experience exacerbations and aggravations to his joints and musculature due to the requirements of his occupation. Team doctors would also prescribe medication to help mask the pain and aid in his recovery.

**PRIOR/SUBSEQUENT INJURIES:**

From 1994 to 1998, the patient attended Boston College. While attending college, and participating in college football, he sustained various injuries including two concussions, a hip flexor muscle injury in 1995, a broken left rib in 1997, a right ankle sprain, a right knee sprain, and neck "burners." During this time, he underwent left great toe surgery, with bone grafting.

The patient denies any other prior injury to, or problem with, the above mentioned areas of complaint. He denies subsequent injuries since leaving professional football.

**PRESENT STATUS:** (As reported by the patient)

The patient currently complains of the following:

1.    Mild neck pain, mostly present on the right side.

2.    Low back pain, mostly present on the right side.

3.    Pain in his right hip.

4.    Constant pain in his right knee, and down into his right leg and foot/toes; constant numbness in the right knee and down into his two most lateral toes.

5.    Locking of his right ankle.

6.    Dropping of his right foot; constant pain in his mid right foot; loss of the arch of his right foot.

E-Ballot 07/17/2014

CLOUD-AR-149

*Orthopaedic Surgery*

RE: CLOUD, MICHAEL
July 6, 2009
Page 4

7.    Difficulty sleeping, secondary to his pain.

8.    Anxiety and stress, secondary to his right leg complaints.

**WORK STATUS:**

The patient was employed as a running back from 1999 to 2006, by the Kansas City Chiefs, New England Patriots, and New York Giants.

In 2006, the patient owned and operated his own training business in Rhode Island.

In 2009, the patient began working for Equinox, as a trainer.

**SOCIAL STATUS:**

The patient is single and he does not have any children.  He does not smoke tobacco.  He socially drinks alcoholic beverages.

**PAST MEDICAL HISTORY:**  **(Not mentioned in the above history)**

| | |
|---|---|
| Allergies To Medication: | Penicillin. |
| Current Medication: | Zithromax and over-the-counter Advil or Aleve. |
| Medical: | Denies. |
| Surgical: | Denies. |
| Trauma: | The patient denies any other trauma including motor vehicle accidents, work-related injuries, sports-related injuries, fractures, lacerations, falls, knife/gunshot wounds, or burns. |

**PHYSICAL EXAMINATION:**

HEIGHT: 5 feet 11 inches.        WEIGHT:    205 lbs., per the patient.

The patient is right-hand dominant.

E-Ballot 07/17/2014

CLOUD-AR-150

*Orthopaedic Surgery*

RE: CLOUD, MICHAEL
July 6, 2009
Page 5

On today's examination, the patient has tenderness in the right side of the lumbar spine.

## NECK AND UPPER EXTREMITIES:

Range of motion of the neck: The patient can touch his chin to his chest on forward flexion. Extension is 60 degrees. He right and left lateral turns 80 degrees. Lateral tilts are 65 degrees.

Cervical compression test is negative. Spurling test is negative.

The patient has full range of motion of both shoulders, elbows, wrists, and hands. Shoulder abduction is 180 degrees. Shoulder forward flexion is 180 degrees. Shoulder extension is 50 degrees. Shoulder external rotation is 90 degrees. Shoulder internal rotation is 80 degrees. Shoulder adduction is 40 degrees. Elbow flexion is 150 degrees. Elbow extension is 0 degrees. Elbow supination and pronation is 90 degrees. Wrist dorsiflexion is 60 degrees. Wrist palmar flexion is 60 degrees. Wrist ulnar deviation is 30 degrees. Wrist radial deviation is 20 degrees.

Reflexes: Biceps, triceps, and brachioradialis are 2/4, bilaterally.

Sensation of the upper extremities is normal.

The patient shows no evidence of motor weakness of the deltoids, biceps, triceps, wrist dorsi or volar flexors. Radial pulses are palpable and equal, bilaterally. Adson's test is negative.

## CIRCUMFERENTIAL MEASUREMENTS OF THE UPPER EXTREMITIES:

|            | RIGHT    |             | LEFT     |
|------------|----------|-------------|----------|
| Upper arm: | 34.8 cm  |             | 34.9 cm  |
| Elbow:     | 29.6 cm  |             | 29.6 cm  |
| Forearm:   | 29.1 cm  |             | 30.4 cm  |
| Wrist:     | 18.0 cm  |             | 17.9 cm  |
| Hand:      | 23.6 cm  |             | 23.6 cm  |
| **JAMAR:** | Right:   | 40/38/38 kg |          |
|            | Left:    | 42/32/42 kg |          |

E-Ballot 07/17/2014

CLOUD-AR-151

*Orthopaedic Surgery*

RE: CLOUD, MICHAEL
July 6, 2009
Page 6

## BACK AND LOWER EXTREMITIES:

Range of motion of the back: The patient can touch his fingertips to toes on forward flexion. He extends himself 20 degrees. Right and left lateral bending is 25 degrees. Rotation of the back is to 50 degrees, right and left.

The patient ambulates with a slight limp.

has a normal gait and can walk on his heels and toes.

There is full range of motion of both hips, knees, and ankles. Hip flexion is 110 degrees. Hip internal rotation is 20 degrees. Hip external rotation is 45 degrees. Hip abduction is 50 degrees. Hip adduction is 20 degrees. Knee extension is 0 degrees. Knee flexion is 135 degrees. Ankle extension is 15 degrees. Ankle flexion is 40 degrees. Ankle inversion is 25 degrees. Ankle eversion is 15 degrees.

Straight leg-raising is positive at approximately 75 degrees on the right.

Reflexes: Patellar and Achilles are 2/4, bilaterally.

The patient has normal sensation in the left lower extremity. There is decreased sensation in the 4th and 5th toes on the right.

The patient has good femoral, popliteal, dorsalis pedis and posterior tibialis pulses, bilaterally. The patient has normal strength in both quadriceps, hamstrings, plantar flexors/extensors, and extensor hallucis longus muscles. Patrick's sign is negative, bilaterally.

## EXAMINATION OF THE RIGHT HIP:

Examination of the right hip reveals full range of motion. There is diffuse tenderness.

## EXAMINATION OF THE RIGHT KNEE:

Examination of the right knee reveals full range of motion. There is no pain today. There is no instability.

E-Ballot 07/17/2014

CLOUD-AR-152

*Orthopaedic Surgery*

RE: CLOUD, MICHAEL
July 6, 2009
Page 7

## EXAMINATION OF THE RIGHT FOOT/TOES:

Examination reveals diffuse tenderness over the plantar arch of the right foot. There is tenderness over the right lateral leg. There is a healed surgical scar, laterally.

## CIRCUMFERENTIAL MEASUREMENTS OF THE LOWER EXTREMITIES:

|         | RIGHT    | LEFT     |
|---------|----------|----------|
| Thigh:  | 58.1 cm  | 57.0 cm  |
| Knee:   | 43.0 cm  | 42.0 cm  |
| Calf:   | 41.5 cm  | 42.3 cm  |
| Ankle:  | 28.0 cm  | 27.0 cm  |
| Foot:   | 25.3 cm  | 25.2 cm  |

## X-RAY FINDINGS:

X-rays of the right knee reveal no evidence of fracture, dislocation, or degenerative changes.

X-rays of the right ankle and foot reveal no evidence of fracture, dislocation, or degenerative changes.

## REVIEW OF MEDICAL RECORDS:

Medical records from the following facilities have been reviewed and are acknowledged:

1.    **New England Patriots**
2.    **Shields MRI & CT**

## PERTINENT MEDICAL RECORDS:

**07/30/03** - Operative Report from Bertram Zarins, M.D., reveals the patient underwent right leg fasciotomy, anterior compartment and lateral compartment; excision, necrotic peroneus longus muscle, and tenodesis, peroneus longus tendon to peroneus brevis muscle. The pre-operative diagnosis was right leg contusion with closed compartment syndrome, anterior and lateral compartments. The post-operative diagnosis was the same with proximal avulsion and necrosis, peroneus longus muscle.

E-Ballot 07/17/2014

CLOUD-AR-153

*Orthopaedic Surgery*

RE:  CLOUD, MICHAEL
July 6, 2009
Page 8

**08/02/03** - Discharge Summary from Bertram Zarins, M.D., reveals the patient was injured on 07/23/03, when he was kicked or hit by a helmet in his right leg.  He continued practicing for several days with worsening symptoms.  On 07/28/03, he developed numbness of the dorsum of his right foot and toes and he had limited range of motion.  He was brought to the operating room for right leg fasciotomies and peroneus longus excision and tenodesis and he recovered well postoperatively.  He was discharged to be non-weight bearing.

**08/07/03** - Notes from Bertram Zarins, M.D., reveal the patient was doing well and had much less pain.  There was a small area of numbness in the left toe.  There was no sign of infection.  He was given a walking boot.

**08/11/03** - Notes from Bertram Zarins, M.D., reveal the patient was much improved and had good motion of the foot and ankle.

**08/12/03** - Radiology report from Shields MRI & CT reveals the patient underwent an MRI scan of the right lower extremity.  **Conclusion:**  Myositis with partial normalization of signal at the ankle, no evidence for necrosis or hematoma.  There was extensive myositis involving the peroneus longus muscle

**08/14/03** - Notes from Bertram Zarins, M.D., reveal the patient was two weeks following anterior and lateral compartment fasciotomies and was in a short leg walking boot and doing well.  There were several areas of superficial necrosis of the edges of the skin but this appeared not to extend too deeply.  There was no sign of infection.  The sutures were removed and he was to continue with wound care.

**08/23/03** - Notes from Bertram Zarins, M.D., reveal the patient's right leg was improving and he had no pain.  The anterior and lateral compartments were soft and non-tender.  He was to discontinue the boot but go with an ankle brace that allows plantar flexion/dorsiflexion but eliminates inversion/eversion.

**09/26/03** - Notes from Bertram Zarins, M.D., reveal the patient had continued to do well and regain his full function.  There was no pain or weakness and there was no functional impairment.  He was able to run an change direction without any problem.  **Assessment:** Right leg healed with no detectable residual impairment following closed compartment syndrome/fasciotomy.

**10/05/03** - Notes from Bertram Zarins, M.D., reveal the patient's right leg was asymptomatic and back to normal function.  He was okay for full activity without restrictions.

E-Ballot 07/17/2014

CLOUD-AR-154

*Orthopaedic Surgery*

RE: CLOUD, MICHAEL
July 6, 2009
Page 9

**01/20/04** - Notes from Tomas Gill, M.D., reveal that on 07/31/03, the patient underwent release of the anterior and lateral compartments with debridement of necrotic peroneus longus muscle and tenodesis.

## DIAGNOSIS:

1.     STATUS POST OP COMPARTMENT SYNDROME, RIGHT LEG.

2.     LUMBOSACRAL SPINE SPRAIN WITH RADICULAR COMPLAINTS.

## DISABILITY STATUS:

The patient's condition has reached maximum medical improvement.

## WHOLE PERSON IMPAIRMENT

The AMA Guides to the Evaluation of Permanent Impairment, 5th Edition, is used in determining the appropriate impairment rating for this patient.

With regard to his lumbar spine, the patient has a history and examination consistent with his injury. He does have residual tenderness, radicular symptoms, and positive straight leg raising. He, therefore, fits the criteria for a DRE Category II with an 8% whole person impairment rating, per Chapter 15, pages 384-388, Table 15:3.

With regard to his right knee, the patient does have residual symptoms and is noted to have ambulate with a slight limp. It is my opinion that he would fit the criteria for disability equivalent to a mild gait derangement with a 10% whole person impairment rating as outlined in Chapter 17, page 529, Table 17:5.

As outlined in Chapter 18 of the Guides, it is my opinion that it would also be appropriate to assign a 3% whole person impairment rating due to the residual, significant right leg pain the patient continues to experience, which increases the burden of his impairment.

Using the combined values chart, the patient has a calculated whole person impairment rating of 20%.

With regard to his low back, give him impairment DRE II, high end. Add some points for activities of daily living with regard to his right leg. He does have a slight limp. He, in my opinion, cannot return to professional football.

E-Ballot 07/17/2014

CLOUD-AR-155

*Orthopaedic Surgery*

RE: CLOUD, MICHAEL
July 6, 2009
Page 10

## ACTIVITIES OF DAILY LIVING:

Secondary to his injuries and residual symptoms, the patient has difficulty performing certain activities of daily living. He reports extreme difficulty making sharp turns while running fast. He reports quite a bit of difficulty with usual work activities, hobbies and recreational activities, and hopping. He reports moderate difficulty squatting, lifting a bag of groceries from the floor, walking two blocks, standing or sitting for one hour, and running on even or uneven ground. He reports a little bit of difficulty walking between rooms and performing heavy activities around his home.

## WORK RESTRICTIONS:

With regard to his low back, the patient requires work restrictions precluding him from heavy lifting and repetitive bending and stooping.

With regard to his right lower extremity, he should be precluded from prolonged standing or walking, running, jumping, and repetitive climbing.

## CAUSATION/APPORTIONMENT:

It is my opinion this patient's symptoms are attributable to the July 23, 2003, injury, when he had a compartment syndrome. He essentially never returned to professional football. He was resigned by the Patriots in the 2004 season, but was cut two days prior to the start of the regular season. He was signed in 2005, by the Giants, and released at the end of training camp. He was never able to regain his ability to play professional football. It is my opinion he is unable to return to professional football. It is my opinion the injury of July 2003, was the cause of his permanent disability. He is ambulating with a limping gait and, in all probability, the limping gait caused the pain in his right hip. He also has pain in his right plantar arch.

## VOCATIONAL REHABILITATION:

The patient would be unable to return to his usual and customary occupation as a professional football player and is, therefore, a medically Qualified Injured Worker.

E-Ballot 07/17/2014

*Orthopaedic Surgery*

RE: CLOUD, MICHAEL
July 6, 2009
Page 11

**FUTURE MEDICAL CARE:**

The patient should have provision to be seen for doctors appointments to receive pain and/or anti-inflammatory medication, as well as short courses of physical therapy. There is the remote possibility of further surgery being necessary; however, this is unlikely.

**DISCLOSURE STATEMENT:**

In accordance with the WCAB Rule 10978 and 4628, please be informed that the initial history of injury obtained in this report was taken by Cynthia Resendez. Measurements were taken by Rebecca Vega. X-rays were taken by Isaac Silva, C.R.T. The review of history with the patient, physical examination, interpretation of x-rays, additional historical notes, and dictation were performed by the undersigned. The transcription was done by Jamie Hill. This report was edited for grammar and completeness by S. Wood.

I, Michael J. Einbund, M.D., the physician for Michael Cloud, do hereby declare under penalty of perjury that I have not violated Labor Code Section 139.3 and that I have not offered, delivered, received or accepted any rebate, refund, commission, preference, patronage, dividend, discount or other consideration, whether in the form of money or otherwise, as compensation or inducement for any referred examination or evaluation.

If there are any further questions, please feel free to contact this office.

Sincerely,

**MICHAEL J. EINBUND, M.D.**
**Board Certified Orthopaedic Surgeon, License #C303840**

Pursuant to AB 3660, I declare under penalty of perjury that the information contained in this report and its attachments, if any, is true and correct to the best of my knowledge and belief, except as to the information that I have indicated I have received from others. As to that information, I declare under penalty of perjury that

E-Ballot 07/17/2014

*Orthopaedic Surgery*

RE: CLOUD, MICHAEL
July 6, 2009
Page 12

the information accurately describes the information provided to me and, except as
noted herein, I believe it to be true.

Signed this date of ___8 - 19___, 2009 in the County of Orange, California.

**MICHAEL J. EINBUND, M.D.**
**Board Certified Orthopaedic Surgeon, License #C303840**

MJE:jh
DOT:07/07/09

E-Ballot 07/17/2014

ORTHOPAEDIC SURGERY
1125 EAST SEVENTEENTH STREET
SUITE E-218
SANTA ANA, CA  92701-2231
(714) 835-3031  FAX (714) 835-6546

PROOF OF SERVICE BY MAIL
(1013A, 2015.5, C.C.P.)
STATE OF CALIFORNIA, COUNTY OF ORANGE

I am employed in the County of Orange, State of California.
I am over the age of 18 and not a party to the within action; my
business address is 1125 EAST 17TH ST, STE. E218, SANTA ANA, CA 92701.

On 08/19/2009, I served the foregoing document described as

QME REPORT, DEU FORM 101, SUMMARY FINDINGS SHEET, AND BILL
DATED 7-6-09

on the parties listed below in this action by placing a true copy
thereof enclosed in a sealed envelope with postage thereon fully
prepaid in the United States mail at: Santa Ana, California, 92701
addressed as follows:

Korzeniowski, Walter
448 Turnpike St

South Easton Ma 02375

*Great Divide Ins*
*7233 E Butherus Dr*
*Scottsdale, AZ 85260*

I declare under penalty of perjury under the laws of the State of
California that the above is true and correct.

Executed on _8/19/09_ at Santa Ana, CA.

File:  510810
Michael Cloud

x_Kristie Calzaretta_
by: Kristie Calzaretta

E-Ballot 07/17/2014

CLOUD-AR-159

(1500)

**HEALTH INSURANCE CLAIM FORM**
APPROVED BY NATIONAL UNIFORM CLAIM COMMITTEE 08/05

Great Divide Ins
7232 E Butheric Dr
Scottsdale, AZ        85260

| | | | | CARRIER |
|---|---|---|---|---|

□ PICA                                                                                          PICA □

| 1. MEDICARE | MEDICAID | TRICARE CHAMPUS | CHAMPVA | GROUP HEALTH PLAN | FECA BLK LUNG | OTHER | 1a. INSURED'S I.D. NUMBER | (For Program in Item 1) |
|---|---|---|---|---|---|---|---|---|
| (Medicare #) | (Medicaid #) | (Sponsor's SSN) | (Member ID#) | (SSN or ID) | (SSN) | ☒ (ID) | | |

2. PATIENT'S NAME (Last Name, First Name, Middle Initial)
CLOUD, MICHAEL

3. PATIENT'S BIRTH DATE   FRCP 5.2   SEX   M □   F ☒

4. INSURED'S NAME (Last Name, First Name, Middle Initial)

5. PATIENT'S ADDRESS (No., Street)
62 8TH ST

6. PATIENT RELATIONSHIP TO INSURED
Self ☒  Spouse □  Child □  Other □

7. INSURED'S ADDRESS (No., Street)
62 8TH ST

CITY
HERMOSA BEACH          STATE CA

8. PATIENT STATUS
Single □   Married □   Other ☒

CITY
HERMOSA BEACH          STATE CA

ZIP CODE          TELEPHONE (Include Area Code)
90254             (401)662-5500

Employed □  Full-Time Student □  Part-Time Student □

ZIP CODE          TELEPHONE (Include Area Code)
90254             (401)662-5500

9. OTHER INSURED'S NAME (Last Name, First Name, Middle Initial)
N.A.

10. IS PATIENT'S CONDITION RELATED TO:

11. INSURED'S POLICY GROUP OR FECA NUMBER

a. OTHER INSURED'S POLICY OR GROUP NUMBER

a. EMPLOYMENT? (Current or Previous)
□ YES   ☒ NO

a. INSURED'S DATE OF BIRTH   MM DD YY   SEX   M □   F □

b. OTHER INSURED'S DATE OF BIRTH   MM DD YY   SEX   M □   F □

b. AUTO ACCIDENT?   PLACE (State)
□ YES   ☒ NO

b. EMPLOYER'S NAME OR SCHOOL NAME

c. EMPLOYER'S NAME OR SCHOOL NAME

c. OTHER ACCIDENT?
□ YES   ☒ NO

c. INSURANCE PLAN NAME OR PROGRAM NAME

d. INSURANCE PLAN NAME OR PROGRAM NAME

10d. RESERVED FOR LOCAL USE

d. IS THERE ANOTHER HEALTH BENEFIT PLAN?
□ YES   □ NO   If yes, return to and complete item 9 a-d.

**READ BACK OF FORM BEFORE COMPLETING & SIGNING THIS FORM.**

12. PATIENT'S OR AUTHORIZED PERSON'S SIGNATURE I authorize the release of any medical or other information necessary to process this claim. I also request payment of government benefits either to myself or to the party who accepts assignment below.

SIGNED   Signature On File

13. INSURED'S OR AUTHORIZED PERSON'S SIGNATURE I authorize payment of medical benefits to the undersigned physician or supplier for services described below.

SIGNED   Signature On File

14. DATE OF CURRENT:  ILLNESS (First symptom) OR INJURY (Accident) OR PREGNANCY (LMP)

15. IF PATIENT HAS HAD SAME OR SIMILAR ILLNESS.   GIVE FIRST DATE MM DD YY

16. DATES PATIENT UNABLE TO WORK IN CURRENT OCCUPATION
FROM          TO

17. NAME OF REFERRING PROVIDER OR OTHER SOURCE
No Referred Services

17a.
17b. NPI

18. HOSPITALIZATION DATES RELATED TO CURRENT SERVICES
FROM          TO

19. RESERVED FOR LOCAL USE
ORDER PHYS: MICHAEL EINBUND,MD UPIN: A34236

20. OUTSIDE LAB?   $ CHARGES
□ YES   ☒ NO

21. DIAGNOSIS OR NATURE OF ILLNESS OR INJURY. (Relate Items 1,2,3 or 4 to Item 24E by Line)
1. └───    3. └───

22. MEDICAID RESUBMISSION CODE          ORIGINAL REF. NO.

2. └───    4. └───

23. PRIOR AUTHORIZATION NUMBER

| 24. A. DATE(S) OF SERVICE From — To | | B. PLACE OF SERVICE | C. EMG | D. PROCEDURES, SERVICES, OR SUPPLIES (Explain Unusual Circumstances) CPT/HCPCS   MODIFIER | E. DIAGNOSIS POINTER | F. $ CHARGES | G. DAYS OR UNITS | H. EPSDT Family Plan | I. ID. QUAL. | J. RENDERING PROVIDER ID. # |
|---|---|---|---|---|---|---|---|---|---|---|
| 1 | 07062009 | 07062009 | 11 | 1 | ML104 | 1 | 1750 00 | 2B | | NPI | C30384 |
| 2 | 07062009 | 07062009 | 11 | 1 | 73564   RT | 1 | 82 00 | | | NPI | C30384 |
| 3 | 07062009 | 07062009 | 11 | 1 | 73610 | 1 | 76 00 | | | NPI | C30384 |
| 4 | 07062009 | 07062009 | 11 | 1 | 73630 | 1 | 72 00 | | | NPI | C30384 |
| 5 | 07062009 | 07062009 | 11 | 1 | 95851   22 | 1 | 49 00 | | | NPI | C30384 |
| 6 | 07062009 | 07062009 | 11 | 1 | 95851   22 | 1 | 49 00 | | | NPI | C30384 |

25. FEDERAL TAX I.D. NUMBER   FRCP 5.2   SSN   EIN ☒

26. PATIENT'S ACCOUNT NO.
510810-    1

27. ACCEPT ASSIGNMENT? (For govt. claims, see back)
☒ YES   □ NO

28. TOTAL CHARGE
$ 2078 00

29. AMOUNT PAID
$ 0 00

30. BALANCE DUE
$ 2078 00

31. SIGNATURE OF PHYSICIAN OR SUPPLIER INCLUDING DEGREES OR CREDENTIALS (I certify that the statements on the reverse apply to this bill and are made a part thereof.)
MICHAEL EINBUND,MD
08/18/09

SIGNED          DATE

32. SERVICE FACILITY LOCATION INFORMATION
ORTHOPEDIC SURGERY
1125 E. 17TH STREET SUITE E-218
SANTA ANA, CA 92701
a. A34236   b. C30384

33. BILLING PROVIDER INFO & PH #
ORTHOPEDIC SURGERY
1125 E. 17TH STREET SUITE E-218
SANTA ANA, CA 92701
a. A34236   b. C30384

NUCC Instruction Manual available at: www.nucc.org

WCMS-1500-2

APPROVED OMB 0938-0999 FORM CMS-1500 (08/05)

E-Ballot 07/17/2014

CLOUD-AR-160

**1500**

## HEALTH INSURANCE CLAIM FORM

APPROVED BY NATIONAL UNIFORM CLAIM COMMITTEE 08/05

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| ▢ PICA | | | | | | | PICA ▢ | |

| 1. MEDICARE | MEDICAID | TRICARE CHAMPUS | CHAMPVA | GROUP HEALTH PLAN | FECA BLK LUNG | OTHER | 1a. INSURED'S I.D. NUMBER | (For Program in Item 1) |
|---|---|---|---|---|---|---|---|---|
| ▢ (Medicare #) | ▢ (Medicaid #) | ▢ (Sponsor's SSN) | ▢ (Member ID#) | ☒ (SSN or ID) | ▢ (SSN) | ▢ (ID) | | |

**2. PATIENT'S NAME** (Last Name, First Name, Middle Initial)
CLOUD, MICHAEL

**3. PATIENT'S BIRTH DATE** FRCP 5.2 **SEX** M▢ F☒

**4. INSURED'S NAME** (Last Name, First Name, Middle Initial)

**5. PATIENT'S ADDRESS** (No., Street)
62 8TH ST

**6. PATIENT RELATIONSHIP TO INSURED**
Self ▢ Spouse ▢ Child ▢ Other ▢

**7. INSURED'S ADDRESS** (No., Street)
62 8TH ST

CITY HERMOSA BEACH  STATE CA

**8. PATIENT STATUS**
Single ▢ Married ▢ Other ☒

CITY HERMOSA BEACH  STATE CA

ZIP CODE 90254  TELEPHONE (Include Area Code) (401)662-5500

Employed ☒ Full-Time Student ▢ Part-Time Student ▢

ZIP CODE 90254  TELEPHONE (Include Area Code) (401)662-5500

**9. OTHER INSURED'S NAME** (Last Name, First Name, Middle Initial)
N.A.

**10. IS PATIENT'S CONDITION RELATED TO:**

**11. INSURED'S POLICY GROUP OR FECA NUMBER**

a. OTHER INSURED'S POLICY OR GROUP NUMBER

a. EMPLOYMENT? (Current or Previous)
▢ YES ☒ NO

a. INSURED'S DATE OF BIRTH MM DD YY  SEX M▢ F▢

b. OTHER INSURED'S DATE OF BIRTH MM DD YY  SEX M▢ F▢

b. AUTO ACCIDENT?
▢ YES ☒ NO  PLACE (State)

b. EMPLOYER'S NAME OR SCHOOL NAME

c. EMPLOYER'S NAME OR SCHOOL NAME

c. OTHER ACCIDENT?
▢ YES ☒ NO

c. INSURANCE PLAN NAME OR PROGRAM NAME

d. INSURANCE PLAN NAME OR PROGRAM NAME

10d. RESERVED FOR LOCAL USE

d. IS THERE ANOTHER HEALTH BENEFIT PLAN?
▢ YES ☒ NO  If yes, return to and complete item 9 a-d.

**READ BACK OF FORM BEFORE COMPLETING & SIGNING THIS FORM.**
**12. PATIENT'S OR AUTHORIZED PERSON'S SIGNATURE** I authorize the release of any medical or other information necessary to process this claim. I also request payment of government benefits either to myself or to the party who accepts assignment below.

SIGNED Signature On File  DATE

**13. INSURED'S OR AUTHORIZED PERSON'S SIGNATURE** I authorize payment of medical benefits to the undersigned physician or supplier for services described below.

SIGNED Signature On File

**14. DATE OF CURRENT:** MM DD YY ILLNESS (First symptom) OR INJURY (Accident) OR PREGNANCY (LMP)

**15. IF PATIENT HAS HAD SAME OR SIMILAR ILLNESS,** GIVE FIRST DATE MM DD YY

**16. DATES PATIENT UNABLE TO WORK IN CURRENT OCCUPATION** FROM MM DD YY TO MM DD YY

**17. NAME OF REFERRING PROVIDER OR OTHER SOURCE**
No Referred Services

17a.
17b. NPI

**18. HOSPITALIZATION DATES RELATED TO CURRENT SERVICES** FROM MM DD YY TO MM DD YY

**19. RESERVED FOR LOCAL USE**
ORDER PHYS: MICHAEL EINBUND,MDUPIN: A34236

**20. OUTSIDE LAB?** ▢ YES ☒ NO  $ CHARGES

**21. DIAGNOSIS OR NATURE OF ILLNESS OR INJURY.** (Relate Items 1,2,3 or 4 to Item 24E by Line)
1. L_____
2. L_____
3. L_____
4. L_____

**22. MEDICAID RESUBMISSION** CODE  ORIGINAL REF. NO.

**23. PRIOR AUTHORIZATION NUMBER**

| 24. A. DATE(S) OF SERVICE From MM DD YY | To MM DD YY | B. PLACE OF SERVICE | C. EMG | D. PROCEDURES, SERVICES, OR SUPPLIES (Explain Unusual Circumstances) CPT/HCPCS | MODIFIER | E. DIAGNOSIS POINTER | F. $ CHARGES | G. DAYS OR UNITS | H. EPSDT Family Plan | I. ID. QUAL. | J. RENDERING PROVIDER ID. # |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 | 07062009 07062009 | 11 | 1 | 95832 | 22 RT | 1 | 49 20 | 1 | | NPI | C30384 |
| 2 | 07062009 07062009 | 11 | 1 | 95832 | 22 LT | 1 | 49 20 | 1 | | NPI | C30384 |
| 3 | | | | | | | | | | NPI | |
| 4 | | | | | | | | | | NPI | |
| 5 | | | | | | | | | | NPI | |
| 6 | | | | | | | | | | NPI | |

**25. FEDERAL TAX I.D. NUMBER** FRCP 5.2 SSN EIN ▢ ☒

**26. PATIENT'S ACCOUNT NO.**
510810- 1

**27. ACCEPT ASSIGNMENT?** (For govt. claims, see back)
▢ YES ☒ NO

**28. TOTAL CHARGE** $ 98 40

**29. AMOUNT PAID** $ 0 00

**30. BALANCE DUE** $ 98 40

**31. SIGNATURE OF PHYSICIAN OR SUPPLIER INCLUDING DEGREES OR CREDENTIALS** (I certify that the statements on the reverse apply to this bill and are made a part thereof.)
MICHAEL EINBUND,MD
08/18/09

SIGNED  DATE

**32. SERVICE FACILITY LOCATION INFORMATION**

**33. BILLING PROVIDER INFO & PH # (800) 883-3031**
ORTHOPEDIC SURGERY
1125 E. 17TH STREET SUITE E-218
SANTA ANA, CA 92701
a. A34236  b. C30384

NUCC Instruction Manual available at: www.nucc.org

APPROVED OMB 0938-0999 FORM CMS-1500 (08/05)

WCMS-1500-2

E-Ballot 07/17/2014

CLOUD-AR-161



**State of California**
**Division of Workers' Compensation**
**Disability Evaluation Unit**

DEU Use Only

**REQUEST FOR SUMMARY RATING DETERMINATION**
**of Qualified Medical Evaluator's Report**

**INSTRUCTIONS TO THE CLAIMS ADMINISTRATOR:**

1. Use this form if employee is unrepresented and has not filed an application for adjudication.
2. Complete this form and forward it along with a complete copy of all medical reports and medical records concerning this case to the physician scheduled to evaluate the existence and extent of permanent impairment or disability.
3. Send the EMPLOYEE'S DISABILITY QUESTIONNAIRE, DEU FORM 100 to the employee in time for the medical evaluation.
4. **This form must be served on the employee prior to the evaluation. Be sure to complete the proof of service.**

**INSTRUCTIONS TO THE PHYSICIAN:**

1. If the employee is unrepresented, review and comment upon the Employee's Disability Questionnaire, (DEU Form 100), in your report. (If the employee does not have a completed Form 100 at the time of the appointment, please provide the form to the employee.)
2. Submit your completed medical evaluation and, if the employee is unrepresented, the DEU Form 100, to the Disability Evaluation Unit district office listed below. **PLEASE USE THIS FORM AS A COVER SHEET FOR SUBMISSION TO THE DISABILITY EVALUATION UNIT.**
3. Serve a copy of your report and the Form 100 upon the claims administrator and the employee.

Date of first medical report indicating the existence of permanent impairment or disability: _____
MM/DD/YYYY

Last date for which temporary disability indemnity was paid: _____
MM/DD/YYYY

**Submit To: Disability Evaluation Unit**

Address/PO Box (Please leave blank spaces between numbers, names or words)

_____  CA  _____
City                              State    Zip Code

DR. MICHAEL EINBUND, MD
Physician

Exam Date  07/06/2009
MM/DD/YYYY

DWC-AD form101 (DEU) Page 1 (REV. 11/2008)

DEU101



E-Ballot 07/17/2014

CLOUD-AR-162

**Claims Administrator**

GREAT DIVIDE INSURANCE
Company Name

7233 EAST BUTHERUS DR
Street Address1/PO Box (Please leave blank spaces between numbers, names or words)

Street Address2/PO Box (Please leave blank spaces between numbers, names or words)

SCOTTSDALE                                                    AZ        85260
City                                                         State    Zip Code

Claim Number 1

Claim Number 2

Claim Number 3

Claim Number 4

Claim Number 5

Phone No.

Adjustor

Employer   KANSAS CITY CHIEFS; NEW ENGLAND PATRIOTS; NEW YORK GIANT

**Employee**

MICHAEL
First Name                                                   MI

CLOUD
Last Name

62 8TH ST
Street Address 1/PO Box (Please leave blank spaces between numbers, names or words)

Street Address 2/PO Box (Please leave blank spaces between numbers, names or words)

International Address (Please leave blank spaces between numbers, names or words)

DWC-AD form101 (DEU) Page 2 (REV. 11/2008)                            DEU101

E-Ballot 07/17/2014

CLOUD-AR-163

| | | | |
|---|---|---|---|
| HERMOSA BEACH | | CA | 90254 |
| City | | State | Zip Code |

Date of Injury _____
　　　　　　　　　MM/DD/YYYY

Date of Birth FRCP 5.2

SSN (Numbers Only) FRCP 5.2 _____

Case No (if any) _____

OCCUPATION PROFESSIONAL FOOTBALL PLAYER _____
(Please attach job description or job analysis, if available)

**WEEKLY GROSS EARNINGS** _____

(Attach a wage statement/DLSR 5020 if earnings are less than maximum. Include the value of additional advantages provided such as meals, lodging, etc. If earnings are irregular or for less than 30 hours per week, include a detailed description of all earnings of the employee from all sources, including other employers, for one year prior to the date of injury. Benefits will be calculated at MAXIMUM RATE unless a complete and detailed statement of earnings is attached.)

E-Ballot 07/17/2014

CLOUD-AR-164

### PROOF OF SERVICE BY MAIL

On _____, I served a copy of this Request for Summary Rating Determination on

Name of Employee_____

Address _____

City_____ State _____ Zip _____

by placing a true copy enclosed in a sealed envelope with postage fully prepaid, and deposited in the U.S. Mail. I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

_____
Signature

DWC-AD form101 (DEU) Page 4 (REV. 11/2008)                                              DEU101

E-Ballot 07/17/2014

CLOUD-AR-165

| Department of Industrial Relations, Industrial Medical Council, PO Box 8888, San Francisco, CA 94128• (650) 737-2767 |
|---|

**State of California**

## Qualified or Agreed Medical Evaluator's Findings Summary Form

**Employee**
Employee Name (First, Middle, Last) *Michael Cloud*   Social Sec No.(Optional)   Date of Injury (Mo/ Dy /Yr)
Street Address *122 8th St*   City *Hermosa Beach*   Zip *90254*   Telephone

**Claims Administrator/ Employer**
Name : *Great Divide Insurance*
Street Address *7233 East Butherus dr.*   City *Scottsdale*   Zip *85260*   Telephone

**Exam Referral Schedule**
Date of Appointment Call   Date of Initial Examination *7-6-09*   Date of Referral for MedicalTesting/Consultation
Date AME/QME's Report Served on all Parties

**Disputed Medical Issues And Conclusion**
The following medical issues will be used to determine the patient's eligibility for workers' compensation. Check the appropriate box and reference the corresponding page(s) or section of the med-legal report for details.

| | Report page(s) or section | Yes | No | Pending or Info. Not Sent |
|---|---|---|---|---|
| a. Is there permanent disability? | *9* | ☒ | ☐ | ☐ |
| b. Is the medical condition stable and not likely to improve with active medical or surgical treatment (i.e., is the condition permanent and stationary)? | *9* | ☒ | ☐ | ☐ |
| c. Did work cause or contribute to the injury or illness? | *10* | ☒ | ☐ | ☐ |
| d. If permanent disability exists, is apportionment warranted? | *10* | ☐ | ☒ | ☐ |
| e. Is there a need for current or future medical care? | *11* | ☒ | ☐ | ☐ |

f. Can this employee now return to his/her usual job?   ☐ Yes   ☒ No
If yes:
   i. Without restrictions   ☐ Yes   ☐ No,   If YES, Date: _____
   ii. With restrictions   ☐ Yes   ☐ No,   If YES, Date: _____

If restricted work is recommended, reference page(s)/section in report for details: _____

**Basis for Conclusions**
Check box and refer to page(s) or section in report.

| | Report page(s) or section | Yes | No | Pending or Info. Not Sent |
|---|---|---|---|---|
| Are there subjective complaints? | *3-4* | ☒ | ☐ | ☐ |
| Are there any abnormal physical or psychological examination findings? | *5-6* | ☒ | ☐ | ☐ |
| Are there any relevant diagnostic test results (x-ray/laboratory)? | *7* | ☒ | ☐ | ☐ |
| What are the diagnoses? (List) | *pg. 9* | | | |
| Were treating physician's reports reviewed? | *7-9* | ☒ | ☐ | ☐ |
| Were other physicians consulted? | _____ | ☐ Yes | ☒ No | |

QME   Signature _____   Date: _____
Name *DR. MICHAEL EINBUND, MD*   Specialty *ORTHOPEDIC SURGEON*
Street Address *1125 EAST 17TH ST #E218*   City *SANTA ANA*   Zip *92701*
Telephone *(714) 835-3031*   Cal. # *C30384*

IMC FORM 1002 (Rev. 12/95)   (OVER)

E-Ballot 07/17/2014

CLOUD-AR-166

  

Bert Bell/Pete Rozelle NFL Player Retirement Plan

200 Saint Paul Street • Suite 2420 • Baltimore, Maryland 21202-2008
410-685-5069 • 800-638-3186 • Fax 410-783-0041

NFL PLAYERS
ASSOCIATION

## Line Of Duty Disability Benefits

### PHYSICIAN'S REPORT FORM

Notice to Physician: To preserve your independence and the integrity of the decision-making process, you must avoid contacts with attorneys or other representatives of the player seeking disability benefits from the Bert Bell/Pete Rozelle NFL Player Retirement Plan. Please notify Rose Mary Dyes or Paul Scott at the Plan Office (Tel. 216-[800]638-3186) if you are contacted by any of these individuals.

To Be Completed By Plan Office:

1. Player's Name    _Mike A. Cloud_                          Date of Birth    **FRCP 5.2**

2. Address    _5726 Miller Ave, Dallas, TX  75206_

3. Credited Seasons    _1999-2005 (7 seasons)_                  Telephone    _(401)662-5500 M_

4. When did you first examine the player? ___office___

5. Have you or any of your partners ever treated the player?    Yes _____    No __✓__

6. What is the nature of the impairment? _shoulder, neck, Back, Hip, leg (Ru#)_
_Feet_

7. Impairment Information (attach additional sheets if necessary)

| Impairment to: | Impairment results from: | Does illness or injury result from football? | Has the impairment persisted or is it expected to persist for at least 12 months from the date of its occurrence? |
|---|---|---|---|
| Shoulders | ☐ Illness ☑ Injury ☐ Unknown | ☑ Yes ☐ No ☐ Cannot be determined | ☑ Yes ☐ No ☐ Cannot be determined |
| Rt Hip, leg  Rt foot | ☐ Illness ☑ Injury ☐ Unknown | ☑ Yes ☐ No ☐ Cannot be determined | ☑ Yes ☐ No ☐ Cannot be determined |
| | ☐ Illness ☐ Injury ☐ Unknown | ☐ Yes ☐ No ☐ Cannot be determined | ☐ Yes ☐ No ☐ Cannot be determined |
| | ☐ Illness ☐ Injury ☐ Unknown | ☐ Yes ☐ No ☐ Cannot be determined | ☐ Yes ☐ No ☐ Cannot be determined |

Dr Gregg Camizones
(medical orthopaedist)

MAY 28 2010

E-Ballot 07/17/2014

CLOUD-AR-167

Physician's Report for *Mike A. Cloud*
Page 2

8. For Orthopedic Impairments:

Please rate the impairment percentage using the AMA's Guides to the Evaluation of Permanent Impairment (5th Edition)("AMA Guides") by completing the detailed orthopedic evaluation impairment form for the impaired body parts. Copy the final impairment percentage ratings from those forms here. Record percentages as the BODY PART IMPAIRMENT ("BPI") for upper and lower extremity impairments only, and WHOLE PERSON IMPAIRMENT ("WPI") for spine impairments only. You may award up to three (3) percentage points for excess pain, in accordance with the AMA Guides. Do not use the range of motion test to evaluate spinal impairments. Calculate the whole person impairment rating of the upper and lower extremity without regard to pain by multiplying the % BPI by 0.6 for the upper extremity and by 0.4 for the lower extremity.

|  | % BPI | + Pain | = Total | % WPI |
|---|---|---|---|---|
| Upper Extremity | ___ | ___ | ___ | ___ (BPI x .6) |
| Lower Extremity | 30 | — | 35 | 15 (BPI x .4) |

|  | % WPI | + Pain | = Total |
|---|---|---|---|
| Cervical Spine | 5 | — | 5 |
| Thoracic Spine | ___ | ___ | ___ |
| Lumbar Spine | 5 | — | 5 |

If player has impairments to multiple body parts, please combine the impairment ratings using the Combined Values Chart beginning on page 604 of the AMA Guides. If you are combining more than two WPI ratings, you will need to use the table more than once. DO NOT include additional percentage points for pain in the combination process.

Combined WPI% Impairment  23 %

You may award up to three (3) percentage points for excess pain.

Pain Rating  2  %

9. For Non-Orthopedic Impairments:

Please rate the loss of use of hearing, speech, and sight:

| | | | |
|---|---|---|---|
| Hearing: ___0-29% | ___30-54% | ___55-79% | ___80% or greater |
| Speech: ___0-29% | ___30-49% | ___50-69% | ___70% or greater |
| Sight: ___0-29% | ___30-49% | ___50-69% | ___70% or greater |

E-Ballot 07/17/2014

CLOUD-AR-168

Physician's Report for *Mike A. Cloud*
Page 3

10. Is the patient's condition the primary or contributory cause of the surgical removal or major functional impairment of a vital bodily organ or part of the central nervous system?

_____ Yes        ⊗ No

If your answer is "Yes," please identify the affected body part and describe the nature of the surgical removal or the major functional impairment.

_____

11. Has the player's impairment improved since the last examination? DO NOT answer if "N/A" appears in the blanks below. If you have not previously examined this player, the Plan Office will forward a copy of the Plan's last examination of this Player for your review.

Yes _____        No _____        N/A _____

12. Additional remarks by physician _____ *See Medical* _____

_____

_____

Please attach the required Medical Report and body part impairment rating forms with this form.

Physician's Name (typed or printed): ___ *George H. Canizares, M.D.* ___

Address ___ *All Florida Orthopaedics* ___

___ *Attn: Kathleen Spetz* ___

___ *4600 4th Street North* ___

___ *St. Petersburg, FL  33703* ___

Telephone ___ *(727)527-5272* ___

*I certify that I have personally examined this Player and have personally reviewed any and all records of this Player given to me, and have personally prepared and reviewed the attached narrative reports. I also certify that my ratings and comments reflect my best professional judgment, and that I am not biased toward or against this Player.*

Signature _____        Examination Date _4_/_13_/_2010_

Mail completed form with your narrative report to Rose Mary Eves at the Bert Bell/Pete Rozelle NFL Player Retirement Plan, 200 St. Paul Place, Suite 2420, Baltimore, MD  21202-2040.

E-Ballot 07/17/2014

CLOUD-AR-169

 **ALL FLORIDA ORTHOPAEDIC ASSOCIATES**

An Orthopaedic Center of Excellence

Robert G. Hamilton, M.D.
Joint Replacement Surgery
General Orthopaedics

Lawrence M. Gnage, M.D.
Sports Medicine
Arthritis Treatment/Surgery

Brett R. Bolhofner, M.D.
Orthopaedic Trauma
Reconstructive Surgery

Dale G. Bramlet, M.D.
Arthritis Treatment/Surgery
Hand/Upper Extremity

Clinton B. Davis, M.D.
Spinal Surgery
General Orthopaedics

Jorge A. Rodriguez, Jr., M.D.
Hand/Upper Extremity
Sports Medicine

William E. Lowry, M.D.
Joint Replacement
General Orthopaedics

George H. Canizares, M.D.
Sports Medicine
General Orthopaedics

Robert L. Swiggett, Jr., M.D.
Orthopaedic Trauma/Joint Replacement
General Orthopaedics

Kanta C. Shah, M.D.
Physical Medicine & Rehab
Pain Management

Matthew J. Swick, M.D., MBA
Foot & Ankle/Sports Medicine
General Orthopaedics

Adrian L. Butler, M.D.
Hand/Upper Extremity
General Orthopaedics

Jeff D. Kopelman, D.P.M.
Podiatry

Matthew D. Cusumano, D.O.
Physical Medicine & Rehab

Arnold M. Ramirez, M.D.
Sports Medicine

Stephen C. Anderson, M.D.
Radiology

April 13, 2010

NFL Disability Neutral Physical
Location of the Physical: All Florida Orthopaedics
Examiner: George H. Canizares, M.D.

RE:    CLOUD, MICHAEL
MR#: 422043

### HISTORY
This is a 34-year-old retired NFL football player who comes in for a NFL disability physical today, April 13, 2010. He said that he started his career at Boston College and played there from 1994 to 1999. He played his whole career as a running back. He said that while he was at Boston College, he did have surgery to his left big toe for what he describes as a turf toe injury and had a bone graft in 1995. He also had a MCL sprain, but he does not remember the knee. It did not cause much problems. He was drafted into the league in 1999 and played with Kansas City from 1999 to 2002. He sprained his neck. He went on to play for New England in 2003 and 2004. He did have what he describes as a compartment syndrome of his right leg that ended up in a debridement of necrotic peroneal longus tendon. He ended up with residual numbness and tingling in his feet. He said that he never really recovered from that surgery. He went on to play with the New York Giants in 2004 and 2005. He had some concussions and a rib injury on the left side and finally retired with New England and played there from 2005 and 2006.

### CHIEF COMPLAINTS
His chief complaints are as follows. In regards to his neck, he gets soreness and stiffness from time to time. He has some low back problems. He says he gets pain going down his right leg. He has to stretch out. It locks up about once per month he says. He also complains of numbness and tingling in his hands and down through his shoulder. Regarding the upper extremities, he complains of shoulders, but specifically it seems more that it is coming from the neck. Again, his main complaint is the numbness stemming from his neck going into his shoulders and to his hands. He says that his symptoms are worse on the right than his left. He does not recall whether he has had MRIs of either his neck or back. He complains of some right hip pain, but he describes it more in the posterior buttocks and almost describing more as back problems.

P.O. Box 76359 • St. Petersburg, Florida 33734
4600 4th Street North • St. Petersburg, Florida 33703 • (727) 527-5272 • Fax (727) 522-7412
www.sfopa.com

E-Ballot 07/17/2014

CLOUD-AR-170

April 13, 2010
RE: CLOUD, MICHAEL
Page 2

He says that it feels like it wants to lock up and he has numbness and tingling in his right leg at times. He complains of some mild subtle problems with his right knee. He said that it pops from time to time, but it is really not a major factor. His major issue is probably his right leg where he had the peroneal brevis debridement and the compartment syndrome. He has residual numbness going sideways and up with his foot. He has difficulty jogging and pushing off. He has numbness and tingling in his fourth or fifth toe. He also had a right midfoot sprain. He said that he has to wear orthotics from that. He did complain of his left chest. He said that he has difficulty laying on his belly because of it.

PAST MEDICAL HISTORY
Includes depression, migraine headaches, insomnia and back pain.

PAST SURGICAL HISTORY
Negative.

ALLERGIES
He is allergic to Penicillin.

MEDICATIONS
He takes no medications.

SOCIAL HISTORY
He denies tobacco use or alcohol use.

WORK STATUS
He is an owner of Mac Development and self-employed.

PHYSICAL EXAMINATION
On physical examination, he is 34, stands 5'11", and weighs 210 pounds.

On movement of the neck with range of motion he some perispinal tenderness and midline tenderness C6-C7. His flexion is 40 degrees, extension 40 degrees. Right and left rotation 40 degrees and right lateral flexion 30 degrees and left lateral flexion 40 degrees.

Regarding his lumbar spine, his flexion is 110, extension 30 degrees. He does have some pain along the SI joint more on the right than left. His right and left lateral bending 35 degrees and right and left rotation 60 degrees.

E-Ballot 07/17/2014

April 13, 2010
RE: CLOUD, MICHAEL
Page 3

Examination of the upper extremities, specifically his shoulders, he has full range of motion of both shoulders with regards to flexion, extension, internal and external rotation, abduction and adduction with good strength, 5/5. Reflexes are symmetrical between the upper and lower extremities. Sensation is 2/2. The only exception in sensation is in the right foot along the fourth and fifth toes and along the lateral aspect of the foot going into the leg.

Regarding his lower extremities, his hip range of motion is full throughout including extension, flexion, internal and external rotation, abduction and adduction and painless. His straight leg test is negative.

Examination of the knees reveals again full range of motion with no obvious incisions. He has no varus or valgus instability, negative anterior and posterior drawer. He does have a large scar along the lateral aspect of his right leg. His calf circumference is decreased. On the right, it is approximately 43 cm and on the left approximately 44 cm when measured at the same location.

Regarding the ankles, his dorsiflexion is 15 degrees on the left, 10 degrees on the right, plantar flexion is 60 degrees on the left, 55 on the right. He does have slight increased stiffness on the right ankle. He does have weakness, at least a 3-/5 with lateral movement of his ankle and 4+/5 with dorsiflexion. His plantar flexion is 5/5. He has numbness along the fourth and fifth digits as described.

Finally regarding the feet, he has an incision along his left big toe over the MTP joint consistent with the surgery he described. His extension is 45 degrees, flexion 20 degrees and equal to the right MTP joint. He does have some mild tenderness at the midfoot of the right foot.

X-RAY REPORT
X-rays were evaluated, multiple starting with the cervical spine. AP and lateral were obtained which show just mild narrowing at C5-C6 with mild spurring. X-rays of the lumbar spine AP and lateral show some mild narrowing at L5-S1 with no spondylolisthesis. X-rays of the shoulders, scapular Y, Grashey and axillary bilaterally were negative. X-rays of the hip, AP pelvis and lateral of the right hip are negative, good joint space, no fractures noted. X-rays of the knees AP, lateral, 45 degree flexion weight bearing view and sunrise are negative, no fractures, narrowing of the joint space, etc. X-rays of the right foot were obtained which show some mild narrowing of the midfoot. The MTP joint appears to be well preserved. There are no obvious fractures noted. X-rays of the left chest wall AP and lateral were obtained which are negative. I do not see any definitive evidence of any fractures.

CLOUD-AR-172

April 13, 2010
RE: CLOUD, MICHAEL
Page 4

ASSESSMENT
1.  Cervical strain with mild DJD C5-C6 with questionable radiculopathy.
2.  Lumbar strain L5-S1 mild DJD question of radiculopathy.
3.  Bilateral shoulder sprains.
4.  Bilateral hip strains.
5.  Bilateral knee sprain.
6.  Right leg atrophy status post compartment syndrome with loss of lateral compartment and possibly some injury to the anterior compartment, weakness with dorsiflexion (Grade 4) and eversion (Grade 3) movement of the ankle.
7.  Right foot history of midfoot sprain and left foot status post MTP turf toe injury.
8.  Left chest contusion.

PLAN
Regarding the cervical sprain with mild DJD, I gave him a 5% whole impairment rating with a DRE rating of two.  For the lumbar strain L5-S1, I gave him a 5% impairment rating and DRE rating of two.

For bilateral shoulder sprains, nothing.  For bilateral hip sprains, nothing, negative.  For bilateral knee sprains, negative.  Regarding the right leg atrophy status post compartment loss with debridement of the lateral compartment, he has a weakness with 3/5 strength with eversion, he did receive a 12% lower extremity impairment rating for this.  Regarding the 4/5 strength in dorsiflexion of the foot, he received a 12% impairment rating.  12% plus 12% is 23% total lower extremity impairment rating for the right leg based on Table 17-8.  Regarding the right foot history of mid-foot sprain, I did give him a 5% impairment rating based on Table 17-33 for mid-foot injury.  Regarding the left foot status post MTP turf toe injury with loss of weightbearing on that toe, I did give him an impairment rating of 10% based on Table 17-33.  Regarding the chest contusion, there is no impairable rating for this.  In total for the lower extremities, on the right, he received 23% for the leg, 5% for the foot which is 27% lower extremity which converts to 11% whole.  On the left he received 10% for the foot converts to 4% whole.  11% plus 4% is 15% whole.

In total, he received 5% for the neck, 5% for the lumbar spine, 15% for the lower extremity is 23% whole overall and I gave him 2 additional points for pain taking into consideration his different injuries and including his chest contusion.

Sincerely,

George H. Canizares, M.D.
GHC/jw                              T:041310        JB#1391
All Florida Orthopaedic Associates

CLOUD-AR-173

(727)824-7152  Fax: (727)824-7155



04/13/2010 - Office Visit: Consult
Provider: Adam S DiDio  M.D.
Location of Care: Suncoast Medical Central Neurology

### NEUTRAL PHYSICIAN'S EVALUATION

REASON FOR EVALUATION: CONCUSSIONS, VERTIGO

PROFESSIONAL CAREER:
1. New York Giants, 2004-2005
2. New England Patriots, 2003, 2005
3. Kansas City Chiefs, 1999-2002

COLLEGE CAREER:
Boston College

HISTORY OF PRESENT ILLNESS:
Michael Cloud is a very pleasant 34-year-old right-handed male who played Running Back for the National Football League (NFL) from 1999 through 2004. He is being evaluated because of a history of concussions.

Mr Cloud's primary complaint is vertigo. He reports episodes of spontaneous onset, occuring approximately 4 times per year, with each episode lasting up to 3 days. It began 3 years ago. He refers to it as the "bed spins". He describes a sensation of vertigo with a counterclockwise spinning rotation if he lays down. It seems to go away when he stops moving, sits, or stands. It is most intense the first day and then slowly subsides. He never develops any significant nausea or vomiting. He does not experience diplopia, focal numbness, tingling, or weakness. He does not have headaches concurrent with these episodes. He has never sought treatment. In between spells he does not have any sensation of vertigo.

He also complains of headaches which started approximately 10 years ago. In the last 6 or 7 years they have become more frequent and more intense. These headaches occur once per month, and consist of a stabbing pain in the occipital region, reaching 8/10 on the pain scale. With this headache he gets photophobia and phonophobia but no nausea or vomiting. He reports feeling "loose", as if something is rattling around, if he moves around too much. He likes to go into a dark, quiet room and lay down. He takes Tylenol 500 mg up to 3 times per day. These headaches can last 1-1/2 days. He never had these headaches prior to 10 years ago. There is no family history of headaches. He does suffer from a great deal of neck pain which is being addressed by the orthopedic surgeon.

Michael did not volunteer any complaints of memory loss, but when asked specifically, he does report some cognitive difficulties. He says that he forgets peoples names frequently, even clients with whom he has worked for a long time. He finds it to be embarrassing. He does not have any problem with

E-Ballot 07/17/2014

CLOUD-AR-174

(727)824-7132  Fax: (727)824-7133

phone numbers.  He has not gotten lost.  He pays his own bills without difficulties.  He has a CPA do his taxes.  There is no family history of memory problems.  Family members report that he repeats himself and he finds himself occasionally stuttering.  He was a B student in high school and a C student in college.  He denies any history of learning disability or special classes.  He does not suffer from anxiety.  He does feel depressed from time to time.  He has a lack of energy and motivation, but not all the time.  He does not have any suicidal ideation.  He simply wants to be by himself.  Often going for a run or exercising will make him feel better.  He enjoys lifting weights and running.  There is no family history of depression.  He does not, nor has he ever taking any medications for depression.  He also describes some sleep disturbances.  He reports severe nightmares which disturbed him.  The content involves family members or loved ones getting hurt or even killed.  These nightmares keep him up at night.  He cannot think of any life experiences that could have triggered these nightmares.

HISTORY OF CONCUSSIONS:
The only medical record(s) available for my review is a medical summary, which appears to be a typed review of all of his injury reports, examinations, and radiology reports.  It is not clear who generated this summary.  This information is supplemented by the patient's history today.

There is clear documentation of a single concussion sustained on October 31, 2004 while playing with the New York Giants.  Fortunately, it appears that he was formally evaluated as part of a traumatic brain injury study report.  The summary of documentation available for me indicates that he had a grade 1 concussion on that day.  He was complaining of headaches, dizziness, vertigo, and altered attention span.  A followup traumatic brain injury examination on November 1, 2004 indicated normacy.  However, these notes indicate that his practice status was limited from October 31 through November 3, 2004.  Again, I have only bullet summary statements of those reports.  The patient recalls this event with some detail.  He remembers being in a game against the Vikings.  He was hit blind sided and struggled to get up.  When he went into the huddle he was quite confused.  He dropped down to one knee and pretended to tie his shoe.  He did not have any idea as to what he was supposed to be doing for the play.  His teammate, Jim Finn, told him to leave the game.  He sat out for the remainder of the game.  He thinks that this episode occurred during the second half.  He believes that the symptoms lasted for greater than 15 minutes.  He is not sure if he ever had any neuropsychological testing or MRIs.

In addition to the documented concussion, Mr. Cloud believes he's had several other concussions during his NFL career.  He remembers one episode in his first or second year with the Kansas City Chiefs where he sustained a concussion during practice.  This occurred during a full scrimmage where he was blocking a linebacker named Donnie Edwards.  The coach had him blocking for many plays.  The patient developed some nose bleeding as his helmet hit into his nose.  He started feeling dazed and confused.  He felt as if the practice lasted all day long.  He reports being confused for the rest of the day.  In addition to this specific event, he reports having many milder concussions during his years as a running back.  He did not report these concussions for the fear that he would be taken out of the game.  He describes the sensation of confusion and dizziness after head impact, lasting seconds to minutes.  He believes it happened approximately 4 times per year during his career with the Kansas City Chiefs, 2

CLOUD-AR-175



times per year with a New York Giants, and 2 times per year with a New England Patriots.

On a NFL combined report from Dr. Paul Black and Dr. Greg Owens (? Scouting report) dated February 19, 1999, it was indicated that Mr. Cloud's past medical history was negative other than a concussion sustained in 1994 with no residuals. In other notes, there is vague mention of a "moderate concussion" suffered on April 23, 1995. Both of these concussions would have occurred in college, and there is no supporting detail for me to review. He recalls that the episode in 1994 was during practice, and one of his doctors said to him "welcome to big-time football!". The patient remembers that for the 1995 concussion he was in the game, and the next thing he knew he was at the sidelines, without knowing how he got from point A to point B. He is not sure if he actually lost consciousness. However, he recalls being asked questions and being asked to repeat things; he was unable. He was taken to the hospital. Details of any testing are unavailable. He remembers being kept in the infirmary overnight for at least one of these events. The next day he still felt foggy. He did not have his "wits" about him.

PAST MEDICAL HISTORY:
As above

PAST SURGICAL HISTORY:
1. Left foot first metatarsal cyst (bone grafting and cyst debridement), 12/12/1995
2. Right great toe cyst surgery, February 9, 1996
3. Right leg fasciotomy with debridement of a necrotic peroneus longus, July 30, 2003.

PHYSICAL EXAMINATION:
VITAL SIGNS: Blood pressure is 125/80, pulse is 75, respiratory rate is 18
GENERAL: Reveals a well-developed, well-nourished male in no acute distress.
HEAD: Normocephalic and atraumatic.
NECK: Supple with full range of motion in the cervical and thoracic spine, and there are no bruits present.
EXTREMITIES: Without clubbing, cyanosis, or edema. Peripheral pulses are intact and symmetric. There is a well-healed scar on the right lateral calf.
CARDIAC: S1 and S2 are appreciated, without any murmurs, rubs, or gallops.

NEUROLOGICAL EXAMINATION:
MENTAL STATUS EXAMINATION: Reveals the patient to be alert and attentive with orientation to person, place, time, and situation. Speech is clear and fluent. Naming, repetition, and comprehension are intact. The patient can follow three-step complex commands across the midline without difficulty. There are no elements of aphasia. Abstract thought is intact. The "7 Minute Memory Screen" was performed at bedside today. His attention, concentration short-term recall, praxis, and executive functioning are normal. With analysis and calculation of the variables, his probability of having Alzheimer's dementia is 0.000.
CRANIAL NERVE EXAMINATION: Reveals pupils that are equal, round, and reactive to light.

E-Ballot 07/17/2014

CLOUD-AR-176

Funduscopic examination reveals normal optic discs and retina. Extraocular movements are intact with normal smooth pursuit and without nystagmus. Visual fields are full to confrontation testing. Trigeminal sensation is intact and symmetric to light touch and pinprick in all three distributions bilaterally. Face is symmetric with normal upper and lower facial strength. Hearing is intact to finger rub bilaterally. The tongue protrudes midline and demonstrates normal strength. The palate elevates symmetrically. Sternocleidomastoid strength is 5/5 bilaterally.
MOTOR EXAMINATION: Reveals normal tone, bulk, and power in all four extremities other than mild weakness of right ankle eversion 4+/5. There is no pronator drift, and fine motor movements are performed symmetrically. No abnormal movements are noted.
DEEP TENDON REFLEXES: Deep tendon reflexes are 2+ and symmetric throughout with downgoing plantar responses bilaterally.
COORDINATION TESTING: Reveals finger-to-nose, heel-to-shin, and rapid-alternating movements to be performed well bilaterally.
SENSORY EXAMINATION: Intact and symmetric to light touch, pinprick, temperature, vibration, and proprioception throughout.
GAIT: Evaluation of gait reveals a normal station without Romberg sign. The patient walks with a normal stance, stride length, and cantor. He can do so on his toes, heels, and in tandem without difficulty. There are normal associated movements.


IMPRESSION AND PLAN:
Mr. Cloud reports at least several concussions during his NFL football career, with only one being clearly documented in the record. At the time of the documented concussion, he was formally evaluated as part of a traumatic brain injury study report, and was declared to have suffered a Grade 1 concussion. However, it is not clear to me which concussion grading scale was used. His recollection of events slightly differs, reporting confusion lasting greater than 15 minutes, which have made this concussion a Grade 2 according to the Kelley and Rosenberg concussion grading (1997). In addition, he reports several very mild concussions per year, none of which are documented. If his recollection of events is accurate, these would have all been very mild, Grade 1 concussions (confusion, lasting less than 15 minutes).

Mr. Cloud reports having two concussions during his college football career, both of which would make the criteria for Grade 2 concussions (transient amnesia or confusion, lasting more than 15 minutes) if his recollection of events is accurate.

Mr. Cloud suffers from Benign Paroxysmal Positional Vertigo (BPPV), with spells occurring approximately four times per year. Additionally, he complains occasional (1x/month) migrainous headaches, mild memory loss and stuttering, and depressive symptoms. On neurologic examination he is nonfocal, and brief bedside cognitive examination reveals normal attention, concentration short-term recall, praxis, and executive functioning. His verbal fluency, however, is mildly impaired.

E-Ballot 07/17/2014

CLOUD-AR-177

(727)824-7132  Fax (727)824-7133

BPPV is a common, spontaneous occurrence in the elderly population, but in young patients it is most often experienced as a result of head trauma. I believe Mr. Cloud's episodic vertigo is a sequela of his prior traumatic head injuries. His subjective cognitive complaints and objective impairment in verbal fluency are very possibly a result of his past concussions. These signs and symptoms can be seen as a result of traumatic brain injuries. However, being the first time I have evaluated this patient I cannot be certain whether or not this mild cognitive impairment is acquired. Migrainous headaches and depression are common phenomena in the normal population, and even though they can also be features of the postconcussive syndrome, both conditions are mild in his case and I cannot determine if they are a consequence of his concussions.

Recommendations going further would include a search for any evidence of prior learning disabilities, especially given his low normal verbal fluency. Neuropsychological testing is essential for evaluation of any learning disabilities, establishment a cognitive baseline, and determination as to what cognitive impairments are related to traumatic brain injury. If he has had a prior neuropsychological evaluation as part of the traumatic brain injury study reports, a comparison can be made. I recommend an MRI of the brain with gradient echo imaging to evaluate for any evidence of traumatic brain injury (e.g. gliosis, hemosiderin products). The vertigo is benign in origin, and can be treated symptomatically with otolith repositioning maneuvers (i.e. Eply Maneuver) and/or meclizine hydrocholoride as needed.

Thank you for allowing me to participate in the care of this very pleasant patient.

Sincerely,

Adam S. Di Dio, M.D.
Diplomate, American Board of Psychiatry & Neurology
Diplomate, American Board of Electrodiagnostic Medicine

Signed by Adam S DiDio  M.D. on 04/14/2010 at 1:01 PM

E-Ballot 07/17/2014

CLOUD-AR-178

(727)824-7132  Fax: (727)824-7133

Michael Cloud                                    Date of Birth: 01/01/1975

E-Ballot 07/17/2014

CLOUD-AR-179

 200 Saint Paul Street • Suite 2420 • Baltimore, Maryland 21202-2008
410-685-5069 • 800-638-3186 • Fax 410-783-0041

NFL PLAYERS
ASSOCIATION

## Line Of Duty Disability Benefits

*PHYSICIAN'S REPORT FORM*

Notice to Physician: To preserve your independence and the integrity of the decision-making process, you must avoid contact with attorneys or other representatives of the player seeking disability benefits from the Bert Bell/Pete Rozelle NFL Player Retirement Plan. Please notify Rose Mary Eyes or Paul Scott at the Plan Office (Tel. No. (800) 638-3186) if you are contacted by any of these individuals.

*To Be Completed By Plan Office:*

1. Player's Name   *Mike A. Cloud*                             Date of Birth   **FRCP 5.2**

2. Address   *5126 Miller Ave, Dallas, TX 75206*

3. Credited Seasons   *1999-2005 (7 seasons)*                  Telephone   *(401)662-5500 M*

4. When did you first examine the player? ____ 4/13/10 ____

5. Have you or have any of your partners ever treated the player?   Yes _____   No ✓

6. What is the nature of the impairment? Vertigo, Headaches, Memory loss + stutter, depression, Impaired verbal Fluency

7. Impairment Information (attach additional sheets if necessary)

| Impairment to: | Impairment results from: | Does illness or injury result from Football? | Has the impairment persisted or is it expected to persist for at least 12 months from the date if its occurrence? |
|---|---|---|---|
| Vertigo | ☐ Illness ☑ Injury ☐ Unknown | ☑ Yes ☐ No ☐ Cannot be determined | ☑ Yes ☐ No ☐ Cannot be determined |
| Headaches | ☐ Illness ☐ Injury ☑ Unknown | ☐ Yes ☐ No ☑ Cannot be determined | ☑ Yes ☐ No ☐ Cannot be determined |
| "Memory loss + stutter" | ☐ Illness ☐ Injury ☑ Unknown | ☐ Yes ☐ No ☑ Cannot be determined | ☐ Yes ☐ No ☑ Cannot be determined |
| Depression | ☐ Illness ☐ Injury ☑ Unknown | ☐ Yes ☐ No ☑ Cannot be determined | ☐ Yes ☐ No ☑ Cannot be determined |
| Impaired verbal Fluency | ☑ Unknown | ☑ Cannot be determined | ☑ Yes ☐ No ☐ Cannot be determined |

Dr. Adam D. Dio
(Medical Neurologist)

CLOUD-AR-180

8. For Orthopedic Impairments:

Please rate the impairment percentage using the AMA's Guides to the Evaluation of Permanent Impairment (5th Edition)("AMA Guides") by completing the detailed orthopedic evaluation impairment form for the impaired body parts. Copy the final impairment percentage ratings from those forms here. Record percentages as the BODY PART IMPAIRMENT ("BPI") for upper and lower extremity impairments only, and WHOLE PERSON IMPAIRMENT ("WPI") for spine impairments only. You may award up to three (3) percentage points for excess pain, in accordance with the AMA Guides. Do not use the range of motion test to evaluate spinal impairments. Calculate the whole person impairment rating of the upper and lower extremity without regard to pain by multiplying the % BPI by 0.6 for the upper extremity and by 0.4 for the lower extremity.

|  | % BPI | + | Pain | = | Total | % WPI |
|---|---|---|---|---|---|---|
| Upper Extremity | _____ | | _____ | | _____ | _____ (BPI x .6) |
| Lower Extremity | _____ | | _____ | | _____ | _____ (BPI x .4) |
|  | % WPI | + | Pain | = | Total | |
| Cervical Spine | _____ | | _____ | | _____ | |
| Thoracic Spine | _____ | | _____ | | _____ | |
| Lumbar Spine | _____ | | _____ | | _____ | |

If player has impairments to multiple body parts, please combine the impairment ratings using the Combined Values Chart beginning on page 604 of the AMA Guides. If you are combining more than two WPI ratings, you will need to use the table more than once. DO NOT include additional percentage points for pain in the combination process.

Combined WPI% Impairment _____

You may award up to three (3) percentage points for excess pain.

Pain Rating _____%

9. For Non-Orthopedic Impairments:

Please rate the loss of use of hearing, speech, and sight:

| | | | | |
|---|---|---|---|---|
| Hearing: | _____0-29% | _____30-54% | _____55-79% | _____80% or greater |
| Speech: | _____0-29% | _____30-49% | _____50-69% | _____70% or greater |
| Sight: | _____0-29% | _____30-49% | _____50-69% | _____70% or greater |

E-Ballot 07/17/2014

CLOUD-AR-181

Page 3

10. Is the patient's condition the primary or contributory cause of the surgical removal or major functional impairment of a vital bodily organ or part of the central nervous system?

_____Yes          ___✓___No

If your answer is "Yes," please identify the affected body part and describe the nature of the surgical removal or the major functional impairment.

_____

11. Has the player's impairment improved since the last examination?  DO NOT answer if "N/A" appears in the blanks below.  If you have not previously examined this player, the Plan Office will forward a copy of the Plan's last examination of this Player for your review.

          Yes _____          No _____          N/A _____

12. Additional remarks by physician_____

_____See narrative please_____

_____

Please attach the required Medical Report and body part impairment rating forms with this form.

Physician's Name (typed or printed):   ___Adam DiDio, M.D._____

                    Address   ___Neuro-Science Center_____

                         ___2201 Central Avenue, Suite 200_____

                         ___Attn: Amy Savage_____

                         ___St. Petersburg, FL  33713_____

          Telephone   ___(727)824-7132_____

*I certify that I have personally examined this Player and have personally reviewed any and all records of this Player given to me, and have personally prepared and reviewed the attached narrative reports.  I also certify that my ratings and comments reflect my best professional judgment, and that I am not biased toward or against this Player.*

Signature _____          Examination Date ___4/13/10___

Mail completed form with your narrative report to Rose Mary Eves at the Bert Bell/Pete Rozelle NFL Player Retirement Plan, 200 St. Paul Place, Suite 2420, Baltimore, MD  21202-2040.

E-Ballot 07/17/2014

CLOUD-AR-182

## MEDICAL SUMMARY

RE:      Michael Cloud   
            Date of Birth:

Boston College significant injury history – 9/7/94 neck burner; 4/1/95 R ankle sprain; 4/23/95 head mod. Concussion; 8/14/95 L hip flexor/Quad strain; 12/12/95 L foot 1 metatarsal Cyst (bone grafting and cyst debridement); 4/15/97 R knee MCL sprain; and 9/27/97 L ribs contusion

1999 – NY Giants College Personnel Medical Evaluation – 9/7/97 left neck burner, MRI normal; 2/9/96 right great toe cyst surgery; 4/11/97 right neck burner; 4/15/97 right knee MCL sprain 1st degree, MRI normal; 9/27/97 left rib contusion; 2/21/99 previous strain MCL normal exam, no problems, grade 2; Radiology Summary – knees within normal limits, bone graft on left great toe looks good

2/18/99 - National Invitation Camp medical Examination, sinus rhythms, Methodist Hospital labs

2/18/99 – Clarian Health – radiology reports – PA and lateral chest negative; left ankle - minor spur off the anterior talus on lateral ankle view, ankle mortise is preserved and no recent trauma is seen. Left foot – post surgical changes and irregularity on medial aspect of head of first metatarsal. C Spine – normal. Knees – normal, incidental note is made of bilateral febella. R foot - unremarkable. R ankle – unremarkable.

2/18/99 – CYBEX Evaluation – knee extentsion/flexion

2/19/99 – Draft Physical

2/19/99 Boston College - J.E. Browns, M.D. – x-rays of shin, knees are ok. Mild degenerative changes of left fist metatarsal phalangeal joint, previous cyst excision from metatarsal head. Decreased ROM in R subtalar joint. No x-rays of right ankle/foot. Decreased ROM of left MPJ

2/19/99 – NFL Combine Report Dr. Paul Black and Dr. Greg Owens – past medical history negative except for concussion in 1994 with no residuals; physical exam entirely normal, labs studies, CXR and EKG normal – gives history from college 1994-97.

4/30/99 – 1/3/00 – Kansas City Chiefs – Medical history  - 4/30/99 – R hamstring therapy some tightness following practice; 5/1/99 – R hamstring receives therapy; 5/2/99 R hamstring multiple therapies slight swelling in mid medial distal ecchymotic, wrapped, practice limited; 5/3-5/7/99 – hamstring getting treatment at Boston College doing pool routine and increasing activity daily; 8/3/99 – L great toe stepped on during practice very mild sub-ungual hematoma which did not need to be drained received ice; 8/4/99 – L great toe soreness not particularly swollen; 8/9/99 – Both hamstrings therapy for warm up, exam is normal; ; 8/10/99 – R heel blister wet/dry dressing wound is open; 8/11/99 – L great toe soreness of MP joint, r heel blister looks much

E-Ballot 07/17/2014

better continue wet/dry dressing; 8/12/99 – L hamstring soreness wanted to cool it down had therapy, blister on r heel much improved; 8/13/99 – L hamstring soreness exam normal; 8/17/99 L shoulder fell on outstretched shoulder another player struck anterior and felt shoulder slip and jam posterior continued practicing full ROM full elevation and flexion full external rotation and internal rotation both arms no swelling or pain wrapped for pm practice – iced; 8/18/99 L shoulder see by Barnthouse precautionary x-rays practice limited; 8/19/99 L shoulder L shoulder re-eval by Barnthouse feels better practice limited; 8/20/99 L shoulder therapy good ROM and strength wraps shoulder for practice, practice limited; 8/21/99 L shoulder wrapped for participate in game; 1/3/00 received final physical.

4/27/99 – Kansas City Chiefs – Midwest Radiology, Inc – Chest x-ray – no significant abnormality detected.

4/29/99 – Kansas City Chiefs – Medical History, Players Statement, Medical Examination and Authorizations, Physical Examination, Orthopedic Examination Sinus Rhythm, dental record, Eye examination

7/21/99 – Kansas City Chiefs – Extension/Flexion test knee

7/30/99 – Kansas City Chiefs – Pre-Season Player Exam –

8/9/99 – Kansas City Chiefs – Dr. Noblin – R heel – small 1 X 2 centimeter at base of Achilles from previous blister.  Continue with Basatracine (SP?) and protective covering.

8/18-8/19/99 – Kansas City Chiefs – Dr. Barnthouse – Left shoulder injury 8/17/99 hit by another player.  Recommended radiograph of shoulder.  Clinically to have relatively mild to minimal findings and able to participate in practice.  Continue protective strapping.  Reviewed x-rays humeral head is reduced, no evidence of acute bony injury of chronic problems in shoulder.

1/3/00 – Kansas City Chiefs – Final Player Physical Exam

1/5/00 – University of Pennsylvania – MRI left shoulder – Tear of glenoid labrum probably extending form the anterosuperior to the anteroinferior segment of the labrum, mild irregularity of the anterior rime of the glenoid.  No rotator cuff tear.

1/18/00 – John Browne, M.D. – L shoulder – at this point totally asymptomatic

5/3/00 – Kansas City Chiefs – Medical History, Players Statement, Medical Examination and Authorizations, Physical Examination, Orthopedic Examination Sinus Rhythm, dental record, Eye examination

5/6/00 – Kansas City Chiefs – mini camp – soreness in pre patella bursal region.  Bothered him making cuts for 1 week.  Exam normal – received therapy following each practice, participated fully.

7/20/00 – Kansas City Chiefs – Pre-Season Player Physical Exam -

E-Ballot 07/17/2014

CLOUD-AR-184

8/7/00 – Kansas City Chiefs – chipped right lower molar Saturday at Tennessee.  Will see Dr. Cummings Sunday night and follow up Monday morning.  Doesn't know if wore mouthpiece.

8/17/00 – Kansas City Chiefs – L great toe – reports stepped on dorsal aspect of toe in practice.  No welling, mild soreness, able to stand and walk.  Received cold whirlpool.  Participated fully in practice.

12/26/00 – Kansas City Chiefs – Final Player Physical Exam

1/25/01 – Kansas City Chiefs – Medical History

4/25/01 - Kansas City Chiefs – Medical History, Players Statement, Medical Examination and Authorizations, Physical Examination, Orthopedic Examination Sinus Rhythm, dental record, Eye examination

4/27/01 – Kansas City Chiefs – Midwest Radiology – chest – no abnormality detected.

5/14/01 – 5/18/01 – Kansas City Chiefs – R ring finger – On Tuesday reported injury of DIP joint with slight amount of localized swelling.  Wednesday, reported increased soreness.  Had x-rays.  Placed in stack splenic and continued with practice.  Dr. Barnthouse called Friday and felt he had mid phalanx fracture and could continue to participate with splinting.

5/18/01 – Cris D. Barnthouse, M.D. – jammed R ring finger – protect finger for football and be re-s-rayed in 4 – 5 days.

5/21/01 – 5/25/01 – Kansas City Chiefs – R ring finger – participating with stack splint.  Follow-up x-rays taken Wednesday and review by physicians.

6/12/01 – 6/13/01 – Kansas City Chiefs – mini camp – R ring finger – participates with stack splint.  Follow-up x-rays Thursday.

7/26/01 – Kansas City Chiefs – Pre-Season Player Physical Exam –

7/28/01 – Kansas City Chiefs – R quad – struck in distal 1/3 anterior lateral 5. continued practice.  After practice mild swelling with full motion.  Participated in afternoon practice with protective padding.  Multiple ice treatments.

7/29/01 – Kansas City Chiefs – R Quad – ice – excellent quad set, mild soreness, full ROM, practiced with protective padding.

8/7/01 – Kansas City Chiefs - Barnthouse – L foot – soft corn – wear spaces and x-ray when returns to Kansas City

12/23/01 – Kansas City Chiefs – Barnthouse – blow to hip during San Diego game – right posterior hip pointer – ice – given Vioxx

E-Ballot 07/17/2014

CLOUD-AR-185

12/24/01 – Kansas City Chiefs – R hip – ice – no swelling, sore over posterior pelvis region no discoloration changes. No loss of motion of lumbar spin, hip. Good strength.

12/25/01 – Kansas City Chiefs – R hip – multiple therapies – goo motion able to squat, good strength but mild palpation pain over posterior pelvis.

12/26/01 – Kansas City Chiefs – Branthouse – R hip – multiple therapies - recovering well from injury – practice with protective padding, practice limited.

12/27/01 – Kansas City Chiefs – R hip – multiple therapies – no change – full practice

12/28/01 – Kansas City Chiefs – R hip – therapy prior to practice only – no change except slight hint of aching over bruised area. Good motion – full practice.

12/29/01 – Kansas City Chiefs – R hip – no treatment, no complaints.

1/7/02 – Kansan City Chiefs – Final Player Physical Exam

4/24/02 – Kansas City Chiefs – Medical History, Players Statement, Medical Examination and Authorizations, Physical Examination, Orthopedic Examination Sinus Rhythm, dental record, Eye examination.

5/2/02 – Kansas City Chiefs – mini-camp – struck in belly of his VMO by another player's knee. Unable to continue running received ice on field.

5/4/02 – Kansas City Chiefs – mini-camp – Right VMO - 95 degrees of active flexion with moderate soreness over VMO musculature. Received mobilizing treatment with knee flexed with compression wrapping and evaluation by Dr. Barnthouse. Missed both practices.

5/5/02 - Kansas City Chiefs – mini-camp – Right VMO – received multiple ice treatment. Loss of approx. 15° flexion with swelling over VMO mild sympathetic effusion into joint. Exercises performed. Missed practice.

5/6/02 – 5/10/02 - Kansas City Chiefs – Right VMO continues with treatment. Monday nearly full ROM, 2 centimeters of localized swelling, extensive treatment and cardio workout. Tuesday, mild soreness with decreased welling with full ROM. By end of week had full ROM, excellent quadriceps setting and minimal if any swelling. Did not receive treatment Friday.

7/26/02 – Kansas City Chiefs – Pre-Season Player Physical Exam

7/28/02 – Kansas City Chiefs – Throat examined-infected – isolation from other players – missed practice

7/29/08 – Kansas City Chiefs – Throat examined – feeling much better – temp down – very light exercise today.

E-Ballot 07/17/2014

CLOUD-AR-186

NO DATE – Kansas City Chiefs - Training Camp – swelling of dorsum of foot with core to it. Lanced and hair follicle removed.

1/1/02 – 12/31/02 – Kansas City Chiefs – Dispensing prescribing drug log.

9/2/02 – Kansas City Chiefs – Cleveland Game – mild hamstring cramping, oral hydration.

10/14/02 – Kansas City Chiefs – Another player stepped on foot day earlier in game. Lisfranc joint contusion with possible Lisfranc ligamentous sprain, doubt intraarticular fracture.

10/15/02 – Kansas City Chiefs – Alliance Radiology – MRI right mid foot – some soft tissue edema with increased T2 signal surrounding the proximal aspect of second metatarsal and along the adjacent dorsum of the mid foot. No evidence of focal mid foot fracture or stress fracture. Normal uniform width of intertarsal joint spaces and tarsal-metatarsal joints.

10/16/02 – Kansas City Chiefs – The Hospital for Surgery – MRI right mid and fore foot – minimal edema in dorsal superficial fascia in mid foot; no bone contusion, fracture of malaignment. Intact Lisfranc's ligament and joint.

10/16/02 – Kansas City Chiefs – R foot - multiple therapies – minimal improvement – unable to run.

10/17/02 - Kansas City Chiefs – R foot – multiple therapies – taping increased soreness – missed practice.

10/18/02 – Kansas City Chiefs – R foot – multiple therapies – able to stand and bear weight – unable to run as develops soreness in mid foot and inability to explode and push off. Missed practice.

10/19/02 - Kansas City Chiefs – R foot – multiple therapies – performed some running during practice.

10/20/02 – Kansas City Chiefs – R foot – Denver game – unable to push off while running and toninue to run on the outside of his foot - placed on inactive list.

10/20/02 – Kansas City Chiefs – follow up – right foot sprain – mild swelling – continue to monitor progress with athletic training staff and medical staff.

10/21/02 – Kansas City Chiefs – R foot – therapy – re-evaluate tomorrow

10/22/02 – Kansas City Chiefs – R Foot – therapy – less sore – ran better – status will be determined tomorrow.

10/23/02 – Kansas City Chiefs – follow up right foot sprain – no swelling. Still tenderness between firs and second metatarsal. Intensify workout program.

E-Ballot 07/17/2014

CLOUD-AR-187

10/25/02 – Kansas City Chiefs – R foot - therapy – feels good looked better – practiced limited

10/27/02 – Kansas City Chiefs – R Foot – Oakland Game – therapy – foot felt fine – participated in game.

10/28/02 – Kansas City Chiefs – R Foot – no treatment today, no complaints worked out with no problems.

11/11/02 – Kansas City Chiefs – R foot – ice bag requested on plane night before – toradol injection given, minimal residual soreness to foot. Feels normal at exam.

11/13/02 – Kansas City Chiefs – resolving mid foot sprain. Continue play as symptoms allow.

11/13/02 – Kansas City Chiefs – R foot – sore following practice. Iced. Re-evaluate tomorrow.

11/14/02 – Kansas City Chiefs – R foot – therapy – mild soreness – full practice participation.

11/15/02 – Kansas City Chiefs – R foot – therapy – palpation soreness over dorsum of Lis-franc joint – full practice.

11/16/02 – Kansas City Chiefs – R foot – therapy no training room soreness.

11/17/02 – Kansas City Chiefs – Buffalo Game – R foot – early exam and therapy – did participate in game.

11/18/02 – Kansas City Chiefs – R foot – therapy – no soreness.

11/19/02 – Kansas City Chiefs – R foot – therapy – continue tape and wear orthotics.

11/20/02 – Kansas City Chiefs – R foot – therapy no soreness – taping of toe and orthotic. No limitation of practice.

11/20/02 – Kansas City Chiefs – right foot – doing much better – no swelling after practice.

11/21/02 – Kansas City Chiefs – R foot – therapy – full practice participation.

11/22/02 – Kansas City Chiefs – R foot – treatment following morning meeting – feels good – full practice.

11/23/02 – Kansas City Chiefs – R foot – received ultrasound – no new complaints.

11/28/02 – Kansas City Chiefs – stomach – diarrhea 3:00 a.m. – unable to practice – rehydration by IV and other medications.

11/29/02 – Kansas City Chiefs – stomach – no complaints feeling much better – full practice.

E-Ballot 07/17/2014

CLOUD-AR-188

12/14/02 – Kansas City Chiefs – R foot – therapy – mild soreness.  No reservation about game status tomorrow.

12/28/02 – Kansan City Chiefs – Oakland game – nose – tacked and driven to ground – eval on bench – continued in game.

12/31/02 – Analytical Laboratories – positive anabolic steroid

12/7/02 – John Lombardo, M.D. – correspondence states urine specimen tested positive for the metabolities of nandrolone

12/29/02 – Kansas City Chiefs – Final Player Physical Exam (season end)

12/30/02 – National Football League – correspondence tested positive for metabolities of Nandrolon and suspended.

6/4/03 – NE Pats -  Medical history, previous injury history, health questionnaire, general physical exam, orthopedic exam, release of medical records,  Medical history summary, sinus rhythms

6/04/03 – Zarins – NE Pats Medical History Summary – 1995 concussion, 1999 – R shoulder sprain – 1995 Left foot, great toe sprain – 2002 – Right foot, mid foot sprain.

6/4/03 MGH – blood test

7/16/03 – Betro Pharmacy – Ery-Tab (erythromycin)

7/23/03 NE Pats – statement no illness since preseason physical

7/28/03 – Zarins/Gill – kicked in leg during scrimmage – Right leg contusion

7/29/03 – Zarins/Gill – Telephone call from Jim Whalen.  Mike able to practice but complained of increasing right leg pain.  Dr. spoke directly to Mike who elected to wait until morning.  Dr. stated if pain persisted go directly to emergency room.

7/30/03 – Zarins- ON 7/23/03 hit by helmet or kicked in mid leg.  2 days ago developed numbness on top of great toe.  Today has numbness in four toes with pain with ankle motion.  R leg compartment syndrome anterior and lateral compartments with muscle contusion and hematoma.  Recommended right leg fasciotomy anterior and lateral compartments.

7/30/03 – Zarins – Surgery – right leg fasciotomy anterior compartment – muscles were tight and bulged under pressure.

7/30/03 – MGH – Operative Report – Right leg fasciotomy, anterior compartment and lateral compartment, excision, necrotic, peroneus longus muscle and tenodesis, peroneus longus tendon

E-Ballot 07/17/2014

CLOUD-AR-189

to peroneus brevis muscle.

7/31/03 – MGH – Discharge Summary – Non-weight bearing, right lower extremity, keep in posterior splint, elevated when in bed, crutches for walking, complete on week of antibiotics, follow up with Zarins.

8/3/03 – Betro Pharmacy - Rixicet (oxycodone)

8/7/03 – Zarins – Doing well. Leg in posterior splint, less pain. Small area of numbness on little toe. Walking boot applied.

8/11/03 – Zarins – R leg much improved.

8/12/03 – Shields MRI – ankle – Myositis with partial normalization of signal at the ankle. NO evidence of necrosis or hematoma.

8/12/03 – Shields MRI – leg - There is extensive myositis involving the peroneus longus muscle. There are no areas of myonecrosis or evidence of intramuscular hematoma.

8/14/03 – Zarins – R leg in shot leg walking boot and doing well. Sutures removed.

8/23/03 – Zarins – R leg improving. Using short leg brace, no pain. Will go with ankle brace that allows plantar flexion/dorsiflexion but eliminates inversaion/eversion.

8/27/03 – Zarins – NE Pats Medical Summary update – R left contusion 7/25/03, surgery 7/31/03 release anterior and lateral compartments with debridement.

9/3/03 – 9/26/03 – Patriots Physical Therapy - Tim Brewster – Physical Therapy

9/26/03 – Zarins – R leg 8 ½ weeks postoperative. No detectable residual impairment following closed compartment syndrome/fasciotomy. Cleared for full activity.

10/5/03 – Zarins – R leg – essentially complexly normal. Okay for full activity without restrictions.

12/30/03 – NE Pats – Medical Summary – R Leg - R Leg 7/25/03, surgery 7/31/03 release anterior and lateral compartments with debridement of necrotic peroneus longus muscle and tenodesis

1/20/04 – NE Pats Medical Summary – R Leg 7/25/03, surgery 7/31/03 release anterior and lateral compartments with debridement of necrotic peroneus longus muscle and tenodesis

2/1/04 – NE Pats Medical Summary – R Leg 7/25/03, surgery 7/31/03 release anterior and lateral compartments with debridement of necrotic peroneus longus muscle and tenodesis

3/1/04 – 3/1/05 – NY Giants – Cumulative medical journal, administered 3 liters of IV solution

E-Ballot 07/17/2014

11/7/04 – NY Giants – Injury Report – Left ribs fracture

11/7/04 - NY Giants – Left rib fracture (out from 11/7/04 – 11/17/04)

11/8/04 - NY Giants – Left ribs – swelling and tenderness over L lower posteriorly.  Radiographs demonstrate evidence e of old injury at tip of 12th rib.

11/8/04 – Montclair Radiology – Ribs left unilateral – Normal PA of the chest and left sided unilateral rib series.

11/9/04 - NY Giants – Left ribs – practice status – questionable

11/10/04 - NY Giants – L ribs – bruise on back, enter over ribs, flexion bothers him, able to flex forward.  X-ray shows small crack on 10th rib, non-displaced.

11/11/04 - NY Giants – L ribs – practice status out

11/12/04 - NY Giants – L ribs – slow improvement.  Impression – rib contusion continue to treat symptomatically – practice status – out

11/13/04 - NY Giants –L ribs – practice status – out

11/15/04 - NY Giants – L ribs - Continue with treatment – practice status – out

11/16/04 - NY Giants – L ribs – practice status – out

11/17/04 - NY Giants – L ribs – seems better, running – practice status – limited

11/18/04 - NY Giants – L ribs – practice status – limited

11/19/04 - NY Giants – L ribs – practice status – limited

11/20/04 - NY Giants – practice status – limited

11/25/04 - NY Giants – just ice today

11/26/04 - NY Giants – just heat today

12/31/04 – NY Giants – Post-Season Exam summary

5/16/05 – Quest Diagnostics – blood tests

5/16/05 – NY Giants - Returning Veteran Health and History and Physical exam, warranty of full disclosure of physical and mental condition, orthopedic exam, medical exam, dental exam, Medical History Summary, sinus rhythms, blood tests, chest x-ray

E-Ballot 07/17/2014

CLOUD-AR-191

7/29/05 – NY Giants – Training Camp Medical Update

7/30/05 – NY Giants – 3 liters of IV solution following practice

11/2/05 – NE Pats – Med history, physical exam, heatlh questionnaire, orhtopaedic exam, release, authorization.

1-9-06 – NY Giants – Waiver of Post Season Physical Exam

E-Ballot 07/17/2014

CLOUD-AR-192

## 2004 NFL MTBI Study Physician's Follow-Up Evaluation

**Club**
| 5 | 0 | 2 |

**Injury Date:**
| / | 0 | / | 3 | / | 0 | 4 |

**Follow-Up Exam Date:**
| / | / | / | 0 | / | / | 0 4 |

**Player ID #**
FRCP 5.2

**Time of Injury**
| / | 5 | : | 5 | 0 |

**Follow-Up Exam Time:**
| / | 0 | : | 0 | 0 |

The Injury Date and Time of Injury must be the same as in the athletic trainers record of the injury. Please use the last 6 digits of the player's SSN for the Player ID# and report the time in a 24 clock format.

### Signs & Symptoms

**General**
- ⊙ NORMAL
- ○ Headaches
- ○ Nausea
- ○ Vomiting
- ○ Neck Pain
- ○ Back Pain
- ○ Syncopal Episodes
- ○ Seizure

**Somatic Complaints**
- ⊙ NONE
- ○ Irritability
- ○ Anxiety
- ○ Depression
- ○ Personality Change
- ○ Fatigue
- ○ Sleep Disturbance
- ○ Decrease Libido
- ○ Decreased Appetite

**Cranial Nerves**
- ⊙ NORMAL
- ○ Dizziness
- ○ Vertigo
- ○ Tinnitus
- ○ Nystagmus
- ○ Hearing Loss
- ○ Diplopia
- ○ Photophobia
- ○ Blurred Vision
- ○ Altered Pupil Response
- ○ Altered Pupil Size
- ○ Sensitivity to Noise

**Cognitive Function**
- ⊙ NORMAL
- ○ NOT Oriented to Person
- ○ NOT Oriented to Place
- ○ NOT Oriented to Time
- ○ Loss of Immediate Recall

**Memory Processing**
- ⊙ NO PROBLEMS
- ○ Altered Attention Span
- ○ Altered Info Processing
- ○ Antegrade Delayed
- ○ Retrograde Delayed

**Physical Exam Findings:**
⊙ Normal   ○ Abnormal

**Description of Abnormal Findings:**

**Neurologic Exam Findings:**
⊙ Normal   ○ Abnormal

**Description of Abnormal Findings:**
none new.

### Management
- ○ Rest
- ○ Rx Drug Therapy
- ○ Hospitalization

**Time in Hospital**
| | | | |
Days   Hours

**Date Return to Full Participation**
| / | / | / | 0 | 3 | / | 0 | 4 |

**Lost Time From Participation**
| | 2 | |
Days   Hours   Minutes

### Diagnostic Procedures
- ○ Clinical Exam
- ○ X-Ray
- ○ MRI
- ○ CT Scan
- ⊙ Neuropsych Exam   ~48 hrs. post-injury
- ○ SPECT
- ○ Other

**Date of Neuropsych Test**
| / | / | / | 0 | 2 | / | 0 | 4 |

**COMMENTS:** Describe other findings. No focal findings

**Physicians Name**   Scott Poland

31410

CLOUD-AR-193

NFL RETIRED PLAYERS MILD TRAUMATIC BRAIN INJURY

**Reportable Event:** A reportable mild brain injury is characterized by a traumatically induced alteration in brain function. This may be manifested by an alteration of awareness or consciousness (including but not limited to loss of consciousness), "ding", sensation of being dazed or stunned, sensation of "wooziness" or "fogginess" or amnestic period. The MTBI includes but is not limited to one or more of the following signs and symptoms: persistent headaches, vertigo, light-headedness, loss of balance, unsteadiness, syncope, near syncope, cognitive dysfunction, memory disturbance, hearing loss, tinnitus, blurred vision, diplopia, visual loss, personality change, drowsiness, lethargy, fatigue, and inability to perform usual daily activities.

| Club | Injury Date | Initial Exam Date |
|---|---|---|
| 5 0 2 | 0 | 0 / 3 1 / 0 4 | 1 0 / 3 1 / 0 4 |

| Player ID # | Time of Injury | Initial Exam Time |
|---|---|---|
| 5 2 - 3 2 7 5 | 1 5 : 5 0 | 1 5 : 5 0 |

The Injury Date and Time of Injury **must** be the same as in the athletic trainers record of the injury. Please use the last 6 digits of the player's SSN for the Player ID# and report the time in a 24 clock format.

## Signs & Symptoms

**General**
- ○ NORMAL
- ⊘ Headaches
- ○ Nausea
- ○ Vomiting
- ○ Neck Pain
- ○ Back Pain
- ○ Syncopal Episodes
- ○ Seizure

**Somatic Complaints**
- ⊘ NONE
- ○ Irritability
- ○ Anxiety
- ○ Depression
- ○ Personality Change
- ○ Fatigue
- ○ Sleep Disturbance
- ○ Decrease Libido
- ○ Decreased Appetite

**Cranial Nerves**
- ○ NORMAL
- ⊘ Dizziness
- ⊘ Vertigo
- ○ Tinnitus
- ○ Nystagmus
- ○ Hearing Loss
- ○ Diplopia
- ○ Photophobia
- ○ Blurred Vision
- ○ Altered Pupil Response
- ○ Altered Pupil Size
- ○ Sensitivity to Noise

**Cognitive Function**
- ⊘ NORMAL
- ○ NOT Oriented to Person
- ○ NOT Oriented to Place
- ○ NOT Oriented to Time
- ○ Loss of Immediate Recall

**Memory Processing**
- ○ NO PROBLEMS
- ⊘ Altered Attention Span
- ○ Altered Info Processing
- ○ Antegrade at Onset
- ○ Retrograde at Onset

---

**Was there a period of unconsciousness?**

Yes ○   No ⊘

**If Yes, record the time.**

[   :   ]

**Initial Management Steps**
- ○ Airway Management
- ○ Cervical Spine Management

**Action Taken following Exam**
- ○ Returned Immediately
- ○ Rest & Return (Same Session)
- ⊘ Removed From Session
- ○ Hospitalized

---

**Physical Exam Findings:**

⊘ Normal   ○ Abnormal

**Description of Abnormal Findings:**

**Neurologic Exam Findings:**

⊘ Normal   ○ Abnormal

**Description of Abnormal Findings:**

---

**Physician's Name**   Russell Warren, MD

57874

CLOUD-AR-194

## DOCUMENT REQUESTS

1.      All documents related to or concerning Michael Cloud ("Cloud") including, but not limited to, all agreements, drafts, notes, correspondence, communications, medical records, personnel records, recordings, Cloud's compensation, tests or analyses of Cloud's blood and/or urine, physical examinations of Cloud, endorsement contracts, and Cloud's suspension, including, but not limited to, any hearing or appeal.

2.      All documents related to or concerning the New York Football Giants and/or National Football League policies and procedures related to or concerning steroids including, but not limited to, testing of players for use of steroids.

3.      All documents related to or concerning tests or analyses of NitroTech or any other MuscleTech product including, but not limited to, all correspondence, agreements, invoices, reports, notes, assays, underlying data, retained samples, protocols and procedures used for testing and analysis, standard operating procedures for methodology used for testing and analysis (including, but not limited to, descriptions and characteristics for standard operating procedures), raw data associated with each test and analysis (including, but not limited to, chromatography, log books, and calculations), quality assurance and quality control procedures, and documents related to or concerning the chain of custody of the substance tested and/or analyzed.

4.      All documents related to or concerning the New York Giants and/or National Football League policies and procedures related to or concerning the use of nutritional supplements by National Football League players.

RONNIE —
PleAse cAll
Re: AttAched.

JKM

#623259 v1

E-Ballot 07/17/2014

CLOUD-AR-195

# New York Giants Player History

4-Sep-2004  6:15 PM

| Pos | Jers | | Team | | |
|---|---|---|---|---|---|
| HB | | **CLOUD, Mike** | | Free Agent | |

| Status | Birthdate | Short List | Position | Flags | | Experience | | Current | College |
|---|---|---|---|---|---|---|---|---|---|
| Free Agent | FRCP 5.2 | | HB | | Credits | 5 | Height | 5105 | 5105 |
| College | Draft Year / Round / Team | | | | Accrued | 5 | Weight | 204 | 204 |
| Boston College | 1999 / 2 / KC | | | G | NFL | 6 | Speed | 4.50 | 4.5 |
| Agent | | Agent Business Phone | | | Pension | 5 | Test | | |
| Neil S. Schwartz | | 914/369-7906 | | | | | Medical | B | |

## Transaction History

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| 04/17/1999 | Reserve, Selection List | | KC | | 09/29/2003 | Suspension Lifted by Commissioner | NE | NE |
| 07/31/1999 | Selection List Signing | KC | KC | | 10/04/2003 | Counts on Active List | NE | NE |
| 09/10/1999 | De-Activated | KC | KC | | 10/26/2003 | De-Activated | NE | NE |
| 09/15/1999 | Activated, from Inactive | KC | KC | | 10/29/2003 | Activated, from Inactive | NE | NE |
| 09/17/1999 | De-Activated | KC | KC | | 11/03/2003 | De-Activated | NE | NE |
| 09/22/1999 | Activated, from Inactive | KC | KC | | 11/05/2003 | Activated, from Inactive | NE | NE |
| 09/26/1999 | De-Activated | KC | KC | | 11/16/2003 | De-Activated | NE | NE |
| 09/29/1999 | Activated, from Inactive | KC | KC | | 11/19/2003 | Activated, from Inactive | NE | NE |
| 10/10/1999 | De-Activated | KC | KC | | 12/07/2003 | De-Activated | NE | NE |
| 10/13/1999 | Activated, from Inactive | KC | KC | | 12/10/2003 | Activated, from Inactive | NE | NE |
| 10/20/1999 | De-Activated | KC | KC | | 12/14/2003 | De-Activated | NE | NE |
| 10/27/1999 | Activated, from Inactive | KC | KC | | 12/17/2003 | Activated, from Inactive | NE | NE |
| 04/11/2001 | Signed, Renegotiated Contract (pd-->pd) | KC | KC | | 12/20/2003 | De-Activated | NE | NE |
| 09/30/2001 | De-Activated | KC | KC | | 12/24/2003 | Activated, from Inactive | NE | NE |
| 10/03/2001 | Activated, from Inactive | KC | KC | | 12/27/2003 | De-Activated | NE | NE |
| 09/20/2002 | De-Activated | KC | KC | | 12/30/2003 | Activated, from Inactive | NE | NE |
| 10/23/2002 | Activated, from Inactive | KC | KC | | 01/10/2004 | De-Activated | NE | NE |
| 10/27/2002 | De-Activated | KC | KC | | 01/14/2004 | Activated, from Inactive | NE | NE |
| 10/30/2002 | Activated, from Inactive | KC | KC | | 01/16/2004 | De-Activated | NE | NE |
| 02/27/2003 | Contract Expired | KC | KC | | 01/21/2004 | Activated, from Inactive | NE | NE |
| 02/27/2003 | Reserve, Unrestricted Free Agent | KC | KC | | 02/01/2004 | De-Activated | NE | NE |
| 06/02/2003 | Not Asked to Re-Sign | KC | | | 02/04/2004 | Activated, from Inactive | NE | NE |
| 06/23/2003 | Free Agent Signing | | NE | | 03/02/2004 | Contract Expired | NE | NE |
| 07/23/2003 | Declared Non-Football Injury | NE | NE | | 03/02/2004 | Unrestricted Free Agent; ROFR | NE | NE |
| 07/25/2003 | Passed Physical | NE | NE | | 04/05/2004 | Unrestricted Free Agent Signing | NE | NE |
| 08/31/2003 | Reserve/Suspended By Commissioner | NE | NE | | 08/03/2004 | Terminated; Vested Veteran, all contracts | NE | |
| 09/29/2003 | Exempted, Commissioner Permission | NE | NE | | | | | |

## Injury History

**9/07/1994: BLESTO**
LEFT NECK BURNER- MRI NORMAL.

**9/07/1994: BLESTO**
LEFT NECK BURNER- MRI NORMAL.

**2/09/1996: BLESTO**
RIGHT GREAT TOE CYST SURGURY.

**2/09/1996: BLESTO**
RIGHT GREAT TOE CYST SURGURY.

**11/1997: BLESTO**
RIGHT NECK BURNER.

**4/11/1997: BLESTO**
RIGHT NECK BURNER.

E-Ballot 07/17/2014



## New York Giants Player History

4-Sep-2004  6:15 PM

| Pos | Jers | PLAYER HISTORY | Team | | Grade |
|-----|------|----------------|------|--|-------|
| HB | | CLOUD, Mike | | Free Agent | 6.4 |

**15/1997: BLESTO**
RIGHT KNEE MCL SPRAIN- 1ST. DEGREE-MRI NORMAL.

**4/15/1997: BLESTO**
RIGHT KNEE MCL SPRAIN- 1ST. DEGREE-MRI NORMAL.

**9/27/1997: BLESTO**
LEFT RIB CONTUSION.

**9/27/1997: BLESTO**
LEFT RIB CONTUSION.

**10/27/1998: BLESTO**
NO INJURY INFO GIVEN AT TIME OF VISIT.

**12/24/2001: SPORT SCAN**
RIGHT HIP BRUISE

**12/30/2001: NFL**
WEEK 16 - HIP - PROBABLE

**5/06/2002: SPORT-SCAN**
KNEE

**10/19/2002: SPORT-SCAN**
SORE FOOT

**10/20/2002: NFL**
WEEK 7 - FOOT - P

**10/27/2002: NFL**
WEEK 8 - FOOT - Q

**07/31/2003: SPORT-SCAN**
UNDERWENT SURGERY ON RT CALF- WILL MISS MOST OF THE SEASON

**06/14/2004: SPORT-SCAN**
SUFFERED A JAMMED RIGHT RING FINGER

E-Ballot 07/17/2014

CLOUD-AR-197

Report Status: **Signed**

**Caritas Norwood Foxboro Site**
Caritas Christi Health Care System
70 Walnut St
Foxboro, MA 02035

| | |
|---|---|
| Name: CLOUD,MICHAEL | Medical Record #: NW00594524 |
| Address: 1 PATRIOTS PLACE | Account #: NW0009769563 |
| City/State/Zip: FOXBORO,MA 02035 | Requisition#: 04-0051226 |
| Home Phone #: (508)384-9113 | Location:  DI.FXNWRoom/Bed: |
| Date of Birth: FRCP 5.2 ge: 28 Sex: M | |
| Ordering Dr: DR ZARINS | Insurance:  New England Patriots |

Reason for Exam: PAINFUL SWELLING ? FX

Date of Exam: 06/22/04
Orders:  FINGER RING -        CPT4 Code: 73140
RIGHT RING FINGER:

Four views of the right ring finger are submitted.  There are no prior studies for comparison.  A non-displaced fracture of the distal phalanx is seen.  No additional fractures are identified.  There is no dislocation.  The joint spaces are preserved.

IMPRESSION:

NON-DISPLACED FRACTURE OF THE DISTAL PHALANX OF THE RIGHT RING FINGER.

_____<<Signature on File>>_____
Dictated by: Robert Faberman MD
Signed by:  Robert Faberman, MD

Report Number: 0622-0152
Tech: CNHJMS08
D: 06/22/04   T: 06/22/04 1447  P/S: 06/22/04 1503  MCR  LSU: Y

RADIOLOGY  Report

E-Ballot 07/17/2014

CLOUD-AR-198



| PATIENT | | SPECIMEN DATE | | DATE OF BIRTH | | | REFER | | 158 (11) |
|---|---|---|---|---|---|---|---|---|---|
| CLOUD,MIKE FRCP 5.2 | | 05/12/04 | | FRCP 5.2 | FRCP 5.2 | | NEW ENGLAND PATRIOTS FOOTBALL 60 WASHINGTON STREET FOXBORO, MA 02035 JAMES WHALEN | | |
| | | SPECIMEN TIME | | SEX | AGE | | | | |
| | | 06:20AM | | M | 28 | | | | |

FINAL          Director: Salim E. Kabawat, M.D.

| WBC | RBC | HGB | HCT | MCV | MCH | MCHC | RDW | MPV | PLAT | BAND | NEUT | LYMP | MONO | EOS | BASO | ATYP L | MORPH |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 6.4 | 5.15 | 15.5 | 45 | 88 | 30 | 34 | 13.0 | 9.3 | 242 | 0 | 49 | 37 | 9 | 5 | 0 | 0 | |
| 3.8-10.8 1000/uL | 4.20-5.80 mil/uL | 13.2-17.1 g/dL | 38-50 % | 80-100 fL | 27-33 pg | 32-36 g/dL | 11.0-15.0 % | 7.5-11.5 fL | 140-400 thous/uL | 0-5 % | 48-75 % | 17-40 % | 0-14 % | 0-5 % | 0-3 % | 0-5 % | |

| Ca | PO4 | GLU | BUN | CREAT | BUN/CR | URIC | CHOL | TRIG | HDL | TP | ALB | GLOB | A/G | ALKP | LDH | SGOT | SGPT |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 9.6 | 3.5 | 50 LO | 26 HI | 1.4 | 19 | 6.1 | | | | 7.9 | 4.5 | 3.4 | 1.3 | 88 | 150 | 24 | 20 |
| 8.5-10.4 mg/dL | 2.5-4.5 mg/dL | 65-99 mg/dL | 7-25 mg/dL | 0.5-1.4 mg/dL | 6-25 | 2.7-8.2 mg/dL | | | | 6.0-8.3 g/dL | 3.7-5.1 g/dL | 2.2-4.2 g/dL | 0.8-2.0 | 20-125 U/L | 100-250 U/L | 2-50 U/L | 2-60 U/L |

| BILI | BILI D | BILI I | Na | K | Cl | CO2 | ANION | Fe | TIBC | GGT | T3U | T4 | FTI | TSH | T4 F | B12 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 0.6 | 0.1 | 0.5 | 140 | 4.2 | 103 | 31 | 6 | 71 | | | | | | | | |
| 0.2-1.5 mg/dL | 0-0.3 mg/dL | 0.0-1.3 mg/dL | 135-146 mmol/L | 3.5-5.3 mmol/L | 98-110 mmol/L | 21-33 mmol/L | 5-20 | 40-190 ug/dL | | | | | | | | |

## Urinalysis

| COLOR | APP | SPGR | PH | ALB | GLU | KET | BILI | BLOOD | LEU | NIT |
|---|---|---|---|---|---|---|---|---|---|---|
| Yellow | Clear | 1.030 | 6.0 | NEG | NEG | NEG | NEG | NEG | NEG | NEG |
| Yellow | Clear | | 5.0-8.0 | NEG | NEG | NEG | NEG | NEG | NEG | NEG |

| Test Name | Result | Reference |
|---|---|---|
| **Differential (absolute count)** | | |
| Absolute Band Count | 0 | 0-500 /uL |
| Absolute Neutrophil Count | 3136 | 1500-7800 /uL |
| Absolute Lymphocyte Count | 2368 | 850-3900 /uL |
| Absolute Monocyte Count | 576 | 200-950 /uL |
| Absolute Eosinophil Count | 320 | 50-550 /uL |
| Absolute Basophil Count | 0 | 0-200 /uL |
| Absolute Atypical Lymphocytes | 0 | 0-200 /uL |
| | | |
| **Lipid Panel** | | |
| Cholesterol | 188 | 100-199 mg/dL |
| Triglycerides | 135 | 30-149 mg/dL |
| HDL-Cholesterol | 54 | 40-77 mg/dL |
| LDL-Cholesterol | 107 | 62-130 mg/dL |
| Cholesterol/HDL Risk Factor | 3.48 | |
| Relative Risk | 0.5 times average | 1.0 is average risk for CHD |

## Comments

Risk Category: LDL-Cholesterol Goal
CHD and CHD Risk equivalents: <100
Multiple (2+) factors: <130
Zero to one risk factor: <160

E-Ballot 07/17/2014



NEW YORK  *1.* ✓   364⁻   Date: 5/16/2005
FOOTBALL GIANTS                    0 0 98

*Founded in 1925*

### RETURNING VETERAN
### HEALTH HISTORY AND PHYSICAL EXAMINATION

Name: _Michael Cloud_    Date of Birth: **FRCP 5.2**

Social Security Number: **FRCP 5.2**    Age: _29_

Address 1: _875 Frenchtown Rd._    Home Phone: _401·662·5500_

_E. Greenwich, RI 02818_    Cell Phone: _____

Address 2: _____    Other Phone: _____

_____    E-Mail: _____

Marital Status: _Single_    Wife's Name: _____

Whom Shall We Contact In Case of Emergency?: _Charles + Ethel Cloud_

Relation: _Parents_    Address: _508 Turnpike Ave._

Phone 1: _401·683·5443_    _Portsmouth, RI 02871_

Phone 2: _____

---

** THIS SECTION TO BE COMPLETED BY NEW YORK GIANTS MEDICAL STAFF **

| | |
|---|---|
| Medical and Orthopedic History | Urine |
| E.K.G. | Blood (CBC/SMA) |
| Medical Exam | Neuro Test |
| Orthopedic Exam | Dental Exam |
| Eye Exam | Chest X-ray |
| ENT/Hearing | Nutrition |

GIANTS STADIUM · EAST RUTHERFORD, NJ 07073 · EXECUTIVE OFFICES: 201-935-8111 · TICKET OFFICE: 201-935-8222 · FAX: 201-939-4134

WORLD CHAMPIONS 1927 1934 1938 1956 1986 1990  NFC CHAMPIONS 1986 1990 2000  NFC EAST CHAMPIONS 1986 1989 1990 1997 2000
EASTERN CHAMPIONS 1933 1934 1935 1938 1939 1941 1944 1946 1956 1958 1959 1961 1962 1963

E-Ballot 07/17/2014

CLOUD-AR-200

## *NEW YORK FOOTBALL GIANTS MEDICAL HISTORY - RETURNING VETERANS ONLY*

Please complete the following form in regard to your physical health since your last medical evaluation for the New York Football Giants, Inc.

| NOTE: Since your last physical evaluation: | YES | NO |
|---|---|---|
| 1. Have you had any illness? If yes, please list them: | | ✓ |
| 2. Have you been taking any medications? | | ✓ |
| 3. Have you been hospitalized since your last physical? | | ✓ |
| 4. Have you had any dental work done? | | ✓ |
| 5. Have you had an injury to any of the following areas? | | ✓ |

| | YES | NO |
|---|---|---|
| Head | | ✓ |
| Shoulder | | |
| Neck | | |
| Ribs | | |
| Back | | |
| Hip | | |
| Thigh | | |
| Knee | | |
| Leg | | |
| Ankle | | |
| Foot | | |

6. Have you had any physical problems since your last physical examination which have not been mentioned? If yes, please list them.

To the best of my knowledge, the above statements are true.

PLAYER SIGNATURE: _____    DATE: 05-16-05

2

E-Ballot 07/17/2014

CLOUD-AR-201

## *WARRANTY OF FULL DISCLOSURE OF THE PHYSICAL AND MENTAL CONDITION OF PLAYER*

TO:    New York Football Giants, Inc.
            Giants Stadium
            East Rutherford, New Jersey 07073

Player warrants and represents that he has made a full and complete disclosure to the Club's physician of all present or prior physical or mental defects, illnesses, injuries, or conditions known to him or of which he has knowledge, which might prevent, hinder, or impair the performance of his services under his standard player contract. Player further warrants that at the time of his physical examination by the Club's physician on the _16th_ day of _16_ 20_05_ he has not withheld or failed to disclose any present or previous physical or mental defect, illness, injury, or condition known to him. Player understands and agrees that if any answers given during said physical examination are false or if any information has been withheld, such physical examination will become void and will necessitate the taking of another physical examination to determine the true physical status of the player. Player further agrees to indemnify and hold the Club harmless from the consequence of any injury, illness or deteriorated condition occurring to player during the life of his standard player contract which is attributable to or the result of any defect, illness, injury or condition which player failed to disclose to the Club at the time of his physical examination.

PLAYER NAME: _Michael Cloud_      DATE: _05-16-05_

PLAYER SIGNATURE: _____

WITNESS: _____

3

E-Ballot 07/17/2014

CLOUD-AR-202

## NEW YORK FOOTBALL GIANTS - ORTHOPEDIC EXAMINATION I

| Body Part | Normal | Abnormal | Comments |
|-----------|--------|----------|----------|
| Neck | ✓ | | |
| Spine | ✓ | | |
| Shoulder | ✓ | | |
| Elbow | ✓ | | |
| Wrist | ✓ | | |
| Hand | ✓ | | |
| Hip | ✓ | | |
| Ankle | ✓ | | |

| Feet | (a) Pes Cavus (high arches) | | (b) Normal | (c) Splay |
|------|------|------|------|------|
| | (d) Pes Planus (flat) | | (e) Pronated | |

FUNCTIONAL TESTS          (a) Up & Down Stairs   (b) Hop On One Leg   (c) Running in Place

(d) Half Squat          (e) Full Squat

| | Yes | No | Comments |
|---|-----|----|----------|
| Patella a. Pain | | ✓ | |
| b. Apprehension | | ✓ | |
| c. Crepitation | | ✓ | |

Thigh

a. Tone _____ nl

b. Atrophy _____ ∅

PLAYER SIGNATURE _____   DATE: 05-16-05

PLAYER INITIALS _____

4

E-Ballot 07/17/2014

Claud, M

_NEW YORK FOOTBALL GIANTS ORTHOPEDIC EXAMINATION II_

1. KNEE EXAMINATION                    RIGHT              LEFT

   A. LCL
      1. Extension              Neg   1+   2+   3+      Neg   1+   2+   3+
      2. 30 Degree Flexion      Neg   1+   2+   3+      Neg   1+   2+   3+

   B. MCL
      1. Extension              Neg   1+   2+   3+      Neg   1+   2+   3+
      2. 30 Degree Flexion      Neg   1+   2+   3+      Neg   1+   2+   3+

   C. ACL/PCL
      1. Lachmann              Neg   1+   2+   3+      Neg   1+   2+   3+
         Endpoint              A     B                A     B
      2. Anterior Drawer        Neg   1+   2+   3+      Neg   1+   2+   3+
      3. Posterior Drawer       Neg   1+   2+   3+      Neg   1+   2+   3+
      4. Pivot Shift            Neg   1+   2+   3+      Neg   1+   2+   3+
      5. Reverse Pivot Shift    Neg   1+   2+   3+      Neg   1+   2+   3+
      6. Palpation
         Scar                   Yes   No         (R) leg scar — conf release
         Pain                   Yes   No         _____
         Effusion               Yes   No         _____
         Soft Tissue Swelling   Yes   No         _____

2. EXAMINER'S IMPRESSION (DIAGNOSIS):
   _____
   _____
   _____
   _____

3. RECOMMENDATIONS:
   _____
   _____
   _____

PHYSICIAN SIGNATURE: ___Dr. Warren___          DATE: __5/16/14__

PLAYER INITIALS: _____

5

E-Ballot 07/17/2014

CLOUD-AR-204

## NEW YORK FOOTBALL GIANTS MEDICAL EXAMINATION

| N = NORMAL | AB = ABNORMAL | N | AB | COMMENTS |
|---|---|---|---|---|
| Head | Hair, Scalp, Masses | ✓ | | |
| Eyes | Lids, Conjunctivitis, Sclera, EOM Proptosis, Pupils, Peripheral Vision, Fundi, Gross Tension to palpation | ✓ | | |
| Ears | Gross Hearing to Speech Discharge Drums | ✓ | | |
| Nose | Septum, Mucosa, Polyps, Sinuses | ✓ | | |
| Mouth Throat | Lesions, Teeth, Tongue Tonsils, Lesions, Injection | ✓ | | |
| Neck | Adenopathy Thyroid, Vessels, Masses, Voice abnormalities | ✓ | | |
| Thorax Lungs | Shape, Expansion Deformities Bronchi, Wheezes | ✓ | | |
| Heart | Sounds, Murmurs, PMI | ✓ | | |
| Abdomen | Organ Enlargement, Masses, Tenderness, Hernia, Scars | ✓ | | |
| Genitalia Hernias | Lesions, Discharge, Scrotum, Testicles, | ✓ | | |
| Rectal | Hemorrhoids, Fissures, Prostate Masses | N/A | | |
| Extremities | Pulses, Veins, Edema, Clubbing, Atrophy | ✓ | | |
| Neurological | Cranial Nerves, Reflexes, Motor, Balance, Sensory | ✓ | | |
| Skin | Rash, Ecchymosis, Texture | ✓ | | |
| Mental Status | Affect, Hostility , Agitation | ✓ | | |

HEIGHT:_____     WEIGHT:_____

BLOOD PRESSURE: _126/84_     RETAKE:_____

PHYSICIAN'S SUMMARY:    _Normal wound d  PE_

PHYSICIAN'S SIGNATURE:_____     DATE: _5/16/4_

PLAYER INITIALS: _WL_

6

E-Ballot 07/17/2014

CLOUD-AR-205

## NEW YORK FOOTBALL GIANTS DENTAL EXAMINATION

RIGHT

LEFT

UPPER

| 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | 14 | 15 | 16 |
|---|---|---|---|---|---|---|---|---|----|----|----|----|----|----|----|
| 8 | 7 | 6 | 5 | 4 | 3 | 2 | 1 | 1 | 2  | 3  | 4  | 5  | 6  | 7  | 8  |

LINGUAL

| 8 | 7 | 6 | 5 | 4 | 3 | 2 | 1 | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 32 | 31 | 30 | 29 | 28 | 27 | 26 | 25 | 24 | 23 | 22 | 21 | 20 | 19 | 18 | 17 |

LOWER

DENTAL SUMMARY:

_____

_____

DENTIST SIGNATURE: _____  DATE: 5/16/05

### NEW YORK FOOTBALL GIANTS EYE EXAMINATION

VISION      O.D. 20/20  O.S. 20/20   s/p Lasik

MOTILITY    NORMAL
            ABNORMAL

EXTERNAL    NORMAL
            ABNORMAL

INTERNAL    NORMAL
            ABNORMAL

PHYSICIAN'S SIGNATURE: _____  DATE: 5/16/05

PLAYER INITIALS: _____

7

E-Ballot 07/17/2014

CLOUD-AR-206



05/16/2005 09:36:20 AM Michael Cloud
29 years    Male

Heartcare Center, P.A.
Dept:
Room:
Oper: DD

BP:

Requested by:
Dr Salerno

PRELIMINARY-MD MUST REVIEW

. Normal sinus rhythm, rate 61....................Normal P axis, PR, rate & rhythm
. QT interval short for rate............................QTc < 360 mS

— BORDERLINE ECG —

Rate    61
PR     148
QRSD    88
QT     354
QTc    356

--AXIS--
P      42
QRS    -2
T      25

E-Ballot 07/17/2014

CLOUD-AR-207

# New York Football Giants Cumulative Medical Journal for Mike Cloud

## From 3/1/2004 To 3/1/2005

**Body Part/Injury; Modality/Medication/Quantity/Sets-Reps**

---

### Wednesday, October 06, 2004
N/A Tooth
Practice Status:   Limited

### Thursday, October 07, 2004
N/A Tooth
Practice Status:   Limited

### Friday, October 08, 2004
N/A Tooth
Practice Status:   Limited

### Sunday, October 31, 2004
N/A Head Cerebral Concussion
Return Date:   11/3/2004
ATC: Barnes

### Monday, November 01, 2004
N/A Head
Practice Status:   Limited

### Tuesday, November 02, 2004
N/A Head
Practice Status:   Limited

### Wednesday, November 03, 2004
N/A Head
Practice Status:   Limited

### Sunday, November 07, 2004
Left Ribs  Fracture
Return Date:   11/17/2004
ATC: Barnes

### Monday, November 08, 2004
Left Ribs
Scott Rodeo, MD

Mike is evaluated for a contusion of the left lower ribs. There is swelling and tenderness over the left lower ribs posteriorly. Radiographs demonstrate evidence of old injury at the tip of the 12th rib. I do not appreciate any new acute fractures. We will obtain a urine test to evaluate for microscopic hematuria.

Practice Status:   Questionable
# of Treatments: 2   Times: 08:00; 15:00;
ATC: Hansen

| | |
|---|---|
| Electric Stimulation | 1 |
| Ice | 2 |
| X-Ray | 1 |

### Tuesday, November 09, 2004
Left Ribs
Practice Status:   Questionable
# of Treatments: 1   Times: 10:00;
ATC: Hansen

---

**Body Part/Injury; Modality-Medication/Quantity/Sets-Reps**

---

| | |
|---|---|
| AROM | 1 |
| Electric Stimulation | 1 |
| Ice | 1 |
| UBE | 1 |

### Wednesday, November 10, 2004
Left Ribs
Russell Warren, MD

Regarding his back. He has a bruise. He is quite tender over his rib left side. Flexion to the right bothers him. He is able to forward flex okay. On his x-rays there appears to be a one line on about the 10th rib. It does not bend off to the side. I think that he has a small crack at that site, nondisplaced. We will treat him as such.

Practice Status:   Out
# of Treatments: 2   Times: 06:30; 14:45;
ATC: Hansen

| | |
|---|---|
| AROM | 1 |
| Electric Stimulation | 1 |
| Hot Pack | 1 |
| Ice | 1 |
| PROM | 1 |
| UBE | 1 |

### Thursday, November 11, 2004
Left Ribs
Practice Status:   Out
# of Treatments: 2   Times: 06:30; 14:45;
ATC: Hansen

| | |
|---|---|
| AROM | 1 |
| Electric Stimulation | 1 |
| Hot Pack | 1 |
| Ice | 1 |
| PROM | 1 |
| UBE | 1 |

### Friday, November 12, 2004
Left Ribs
Bryan Kelly, MD

Regarding his left rib contusion/fracture, showing slow improvement. He still has pain. Palpation is predominantly posteriorly around the level of T7-8. His lungs are clear with deep inspiration. He does have pain on palpation over the posterior aspect of the ribs there. X-rays were reviewed and there is suggestion of maybe a little crack in the rib posteriorly but no frank displacement.
Impression: rib contusion. At this point we will continue to treat him symptomatically.

Practice Status:   Out
# of Treatments: 2   Times: 06:30; 14:45;
ATC: Hansen

| | |
|---|---|
| AROM | 1 |
| Electric Stimulation | 1 |
| Hot Pack | 1 |
| Ice | 1 |
| PROM | 1 |
| UBE | 1 |

### Saturday, November 13, 2004

---

E-Ballot 07/17/2014

CLOUD-AR-208

## New York Football Giants Cumulative Medical Journal for Mike Cloud

### From 3/1/2004 To 3/1/2005

| Body Part/Injury; Modality/Medication/Quantity/Sets-Reps | |
|---|---|
| **Left Ribs** | |
| Practice Status:   Out | |
| # of Treatments: 1   Times: 07:00; | |
| ATC: Hansen | |
| AROM | 1 |
| Electric Stimulation | 1 |
| Hot Pack | 1 |
| Ice | 1 |
| PROM | 1 |
| UBE | 1 |

**Monday, November 15, 2004**

**Left Ribs**

Scott Rodeo, MD

Mike is evaluated for the left lower ribs. He is still tender over the left lower ribs posteriorly but this is clearly improving. Rotation to the right and left now causes only minimal pain. He does note that when he takes a deep breath he does feel a sense of something grinding, which is likely the rib fracture. Review of the x-rays from last week do demonstrate apparent crack in the posterior aspect of the left 10th rib. He will continue with treatments for this area with protection.

| | |
|---|---|
| Practice Status:   Out | |
| # of Treatments: 2   Times: 10:30; 15:00; | |
| ATC: Hansen | |
| AROM | 1 |
| Electric Stimulation | 1 |
| Hot Pack | 1 |
| Ice | 1 |
| PROM | 1 |
| UBE | 1 |

**Tuesday, November 16, 2004**

**Left Ribs**

| | |
|---|---|
| Practice Status:   Out | |
| # of Treatments: 1   Times: 10:00; | |
| ATC: Hansen | |
| Electric Stimulation | 1 |
| Ice | 1 |
| PROM | 1 |

**Wednesday, November 17, 2004**

**Left Ribs**

Russell Warren, MD

Regarding his left posterior ribs. He seems better. He is running. He is going to wear a pad. I think he can play this week. Progress.

| | |
|---|---|
| Practice Status:   Limited | |
| # of Treatments: 2   Times: 07:00; 14:45; | |
| ATC: Hansen | |
| Electric Stimulation | 2 |
| Ice | 2 |
| Massage | 1 |
| PROM | 1 |

**Thursday, November 18, 2004**

**Left Ribs**

Practice Status:   Limited

| Body Part/Injury; Modality/Medication/Quantity/Sets-Reps | |
|---|---|
| ATC: Kennelly | |
| Electric Stimulation | 2 |
| Ice | 2 |
| Massage | 1 |
| PROM | 1 |

**Friday, November 19, 2004**

**Left Ribs**

| | |
|---|---|
| Practice Status:   Limited | |
| # of Treatments: 1   Times: 14:00; | |
| ATC: Kennelly | |
| Electric Stimulation | 1 |
| Ice | 1 |
| Massage | 1 |
| PROM | 1 |

**Saturday, November 20, 2004**

**Left Ribs**

Practice Status:   Limited

**Thursday, November 25, 2004**

**Left Ribs**

| | |
|---|---|
| # of Treatments: 1   Times: 13:15; | |
| ATC: Kennelly | |
| Ice | 1 |

**Friday, November 26, 2004**

**Left Ribs**

| | |
|---|---|
| # of Treatments: 2   Times: 06:30; 13:15; | |
| ATC: Kennelly | |
| Hot Pack | 1 |
| Ice | 1 |

CLOUD-AR-209

*New York Football Giants Cumulative Injury Report for Mike Cloud*

*From 3/1/2004 To 3/1/2005*

| | | | | |
|---|---|---|---|---|
| *Injury:* Left Ribs  Fracture<br>Left Ribs | *Onset Date:* | 11/7/2004 | *Days Lost:* | 10 |
| | *Return Date:* | 11/17/2004 | *Practices Lost:* | 4 |
| | | | *Games Lost:* | 1 |
| *Injury:* N/A Head Cerebral Concussion<br>N/A Head | *Onset Date:* | 10/31/2004 | *Days Lost:* | 3 |
| | *Return Date:* | 11/3/2004 | *Practices Lost:* | 0 |
| | | | *Games Lost:* | 0 |

*Days Lost for Mike Cloud Injuries:*  13

*Practices Lost for Mike Cloud Injuries:*  4

*Games Lost for Mike Cloud Injuries:*  1

E-Ballot 07/17/2014

Cloud



## *NEW YORK FOOTBALL GIANTS*
### *POST-SEASON PHYSICAL EXAMINATION SUMMARY* –

TO BE COMPLETED BY PLAYERS:

**Please check Item 1 or 2, whichever is appropriate:**

1. ____ I am, on this date, suffering from NO past or present physical injuries or medical problems.

2. ____ I am currently suffering from the following listed physical injuries (past or present) or medical conditions.

_____

_____

_____

**Please answer the following questions:**
Are you at present free of Injury, Illness, or Discomfort? Yes ____ No _____
If "No", please give full details.

_____

_____

_____

Are you currently physically able to perform all of the duties required in professional football?
Yes ___ No _____ If "No", please give full details.

_____

_____

_____

Have you missed any playing time during the season as a result of Injury, Illness, Discomfort or any other reason? Yes ___ No _____ If "Yes", please give full details.

Rib fracture _____

_____

_____

During this season, have you suffered any Injury, Illness, or Discomfort for which you HAVE NOT sought: If "Yes", please give full details.

1. Medical Advice? Yes _____ No _x_ _____
2. Diagnosis? Yes _____ No _x_ _____
3. Treatment? Yes _____ No _x_ _____

I have been offered information regarding workers' compensation.

PLAYERS NAME: (Please print) __Michael Cloud__

PLAYERS SIGNATURE: _____ DATE: __12·31·04__

E-Ballot 07/17/2014

CLOUD-AR-211

## *NEW YORK FOOTBALL GIANTS POST-SEASON ORTHOPEDIC EXAM*

PLAYERS NAME: (Please Print) Michael Cloud

**TO BE COMPLETED BY TEAM PHYSICIAN:** Please check item 1 or 2, whichever is appropriate:

1. ___✓___ I have examined the above-listed player and found him to have NO physical injuries or orthopedic problems or conditions that would restrict him from unlimited participation in professional football.

2. _____ I have examined the above-listed athlete and found him to have the following orthopedic conditions or problems, which need treatment, rehabilitation, or off-season surgery.

Estimated time of recovery from date of examination: _____

PASSES EXAMINATION: _____ FAILS EXAMINATION: _____

EXAMINATION PENDING: _____

TEAM PHYSICIANS SIGNATURE: _____ DATE _____

| HEAD INJURY | EXAM |
|---|---|
| Suffered during the season? [✓] Yes  [ ] No<br>Details:<br><br>Concuss.n | ⌀ post concussive Sx<br><br><br><br>NORMAL EXAM (Y) N |
| **CERVICAL, THORACIC, LUMBAR SPINE INJURY**<br>Suffered during the season? [ ] Yes  [✓] No<br>Details:<br><br>(L) 12th rib fx —<br>healed | **EXAM**<br><br><br><br>NORMAL EXAM (Y) N |
| **SHOULDER INJURY**<br>Suffered during the season? [ ] Yes  [✓] No<br>Details: | **EXAM**<br><br><br><br>NORMAL EXAM (Y)/ N |

E-Ballot 07/17/2014

CLOUD-AR-212

PLAYER'S NAME: (Please Print) _Michael Cloud_

| | |
|---|---|
| **UPPER / LOWER ARM, ELBOW, WRIST, HAND AND FINGER INJURY**<br>Suffered during the season? [ ] Yes  [ X ] No<br>Details: | **EXAM**<br><br><br><br><br>NORMAL EXAM (Y) / N |
| **PELVIS, HIP, ABDOMEN, AND THIGH INJURY**<br>Suffered during the season? [ ] Yes  [ ] No<br>Details: | **EXAM**<br><br><br><br><br>NORMAL EXAM (Y) / N |
| **KNEE INJURY**<br>Suffered during the season? [ ] Yes  [ ] No<br>Details: | **EXAM**<br><br><br><br><br>NORMAL EXAM (Y) / N |
| **LOWER LEG, ANKLE, FOOT AND TOE INJURY**<br>Suffered during the season? [ ] Yes  [ ] No<br>Details: | **EXAM**<br><br><br><br><br>NORMAL EXAM (Y) / N |

E-Ballot 07/17/2014

CLOUD-AR-213



*New York Football Giants Injury Report for Mike Cloud*

| | | | |
|---|---|---|---|
| Player ID: | **FRCP 5.2** | Onset Date: | 11/7/2004 | Return Date: | 11/17/2004 |
| Evaluator: | Barnes | Onset Time: | 18:00 | Return Time: | 13:00 |
| Status: | Closed | Injured Reserve Date: | | | |
| Body Part: | Left Ribs | | | | |

Primary Injury: Fracture
Secondary Injury:
Tertiary Injury:

| | | | |
|---|---|---|---|
| Diagnostic Procedures: | Regional Orthopedic Exam | Principal Management: | Therapeutic Modality |
| | Palpation Exam | | Rest |
| | X-Ray | | Rx Drug Therapy |
| Primary Mechanism: | Direct Impact | Nature of Injury: | Acute Injury |
| Team Session: | Game - Home | Action Taken: | Removed from Session |
| Player Activity: | Tackled As Carrier | Surgery Date: | |
| Period: | 3rd Quarter/Period | Player Position: | Halfback |
| Protection Injured Area: | None | Team Activity: | Run/Outside Tackle |
| Brace: | | Surface: | FieldTurf |
| | | Surface Condition: | Normal |
| Equipment Type: | | Temperature: | Medium |
| Equipment Brand: | | Humidity: | Medium |
| Equipment Vintage: | New | Follow Up Care: | Refer to M.D. |

| | | | |
|---|---|---|---|
| Game Injury: | Behind | Stadium: | Giants Stadium |
| Final: | Lost | Foul: | Not Applicable |

Comments:

Surgical Procedure: Surgery Notes:
Date of Surgery:
Surgeon:

Subjective:

Objective:

Assessment:

Plan:

E-Ballot 07/17/2014

CLOUD-AR-214



## New York Football Giants Injury Report for Mike Cloud

| | | | | |
|---|---|---|---|---|
| Player ID: | FRCP 5.2 | Onset Date: | 10/31/2004 | Return Date: 11/3/2004 |
| Evaluator: | Barnes | Onset Time: | 15:50 | Return Time: 13:00 |
| Status: | Closed | Injured Reserve Date: | | |
| Body Part: | N/A Head | | | |

Primary Injury:  Cerebral Concussion Grade I
Secondary Injury:
Tertiary Injury:

| | | | |
|---|---|---|---|
| Diagnostic Procedures: | Neuromuscular Exam | Principal Management: | Rest |
| | Medical Evaluation | | |
| | Observation | | |
| Primary Mechanism: | Direct Impact | Nature of Injury: | Acute Injury |
| Team Session: | Game – Away | Action Taken: | Removed from Session |
| Player Activity: | Tackled As Carrier | Surgery Date: | |
| Period: | 4th Quarter/Period | Player Position: | Halfback |
| Protection Injured Area: | Customary Unifor | Team Activity: | Run/Outside Tackle |
| Brace: | | Surface: | FieldTurf |
| | | Surface Condition: | Normal |
| Equipment Type: | Helmet | Temperature: | Medium |
| Equipment Brand: | Riddell, Inc. | Humidity: | Medium |
| Equipment Vintage: | New | Follow Up Care: | Refer to M.D. |

| | | | |
|---|---|---|---|
| Game Injury: | Ahead | Stadium: | Metrodome |
| Final: | Won | Foul: | Not Applicable |

Comments:

Surgical Procedure:          Surgery Notes:
Date of Surgery:
Surgeon:

Subjective:
Objective:
Assessment:
Plan:

E-Ballot 07/17/2014

CLOUD-AR-215

## *1999 New York Giants – College Personnel Medical Evaluation*

Name:  *CLOUD, MIKE*          School:  *BOSTON COLLEGE*   Jersey #:  *RB06*    Position:  *HB*

Past History:
   9/7/1994  LEFT NECK BURNER- MRI NORMAL.
   2/9/1996  RIGHT GREAT TOE CYST SURGURY.
   4/11/1997  RIGHT NECK BURNER.
   4/15/1997  RIGHT KNEE MCL SPRAIN- 1ST. DEGREE-MRI NORMAL.
   9/27/1997  LEFT RIB CONTUSION.
   10/27/1998  NO INJURY INFO GIVEN AT TIME OF VISIT.

Combine Comments:

   OK

Orthopedic Summary:

   2/21/99: Previous strain MCL. Normal examination. No problems.

   Grade 2.

General Medical Summary:

   Normal.

Radiology Summary:

   Knees within normal limits. Bone graft of left great toe looks pretty good.

Giants Medical Staff Contacts:

OVERALL MEDICAL EVALUATION AND RISK FACTOR:

   Grade:  *2*          Re-Evalution Grade:
   Physician:  *O'Brien*                                              *1*

E-Ballot 07/17/2014

CLOUD-AR-216

*New York Football Giants Cumulative Medical Journal for Mike Cloud*

*From 3/1/2005 To 3/27/2006*

Body Part/Injury: Modality/Medication/Quantity/Sets-Reps        Body Part/Injury: Modality/Medication/Quantity/Sets-Reps

---

Saturday, July 30, 2005

N/A Systemic

Administered three liters of I.V. solution following the p.m. practice.

# of Treatments: 1    Times: 17:30;

ATC: Kennelly

I.V. Solution                          1

E-Ballot 07/17/2014

CLOUD-AR-217

 

*New York Football Giants Cumulative Medical Journal for Mike Cloud*

*From 3/1/2005 To 9/8/2005*

Body Part/Injury; Modality/Medication/Quantity/Sets-Reps | Body Part/Injury; Modality-Medication/Quantity/Sets-Reps

| Saturday, July 30, 2005 |

Body Part: N/A Systemic
Administered three liters of I.V. solution following the p.m. practice.
# of Treatments: 1   Times: 17:30;
ATC: Kennelly
I.V. Solution                                1

E-Ballot 07/17/2014



**NEW YORK ●
FOOTBALL GIANTS**

*Founded in 1925*

Date: 9/6/2004

*ROOKIE / FREE AGENT
HEALTH HISTORY AND PHYSICAL EXAMINATION*

Name: Michael Cloud

Social Security Number: FRCP 5.2

Address 1: 875 Frenchtown Rd.

East Greenwich, RI 02818

Address 2: _____

_____

Date of Birth: FRCP 5.2

Age: 29

Home Phone: 401·662·5500

Cell Phone: _____

Other Phone: _____

E-Mail: _____

Marital Status: Single          Wife's Name: _____

Whom Shall We Contact In Case of Emergency?: Ethel + Charles Cloud

Relation: Parents          Address: 508 Turnpike Ave.

Phone 1: _____          Portsmouth RI 02871

Phone 2: _____

** THIS SECTION TO BE COMPLETED BY NEW YORK GIANTS MEDICAL STAFF **

| | | | |
|---|---|---|---|
| _____ | Medical and Orthopedic History | _____ | Urine |
| _____ | E.K.G. | _____ | Blood (CBC/SMA) |
| _____ | Medical Exam | _____ | Neuro Test |
| ✓ | Orthopedic Exam | _____ | Dental Exam |
| _____ | Eye Exam | _____ | Chest X-ray |
| _____ | Orthotics | | |

GIANTS STADIUM · EAST RUTHERFORD, NJ 07073 · EXECUTIVE OFFICES: 201-935-8111 · TICKET OFFICE: 201-935-8222 · FAX: 201-939-4134

WORLD CHAMPIONS 1927 1934 1938 1956 1986 1990   NFC CHAMPIONS 1986 1990 2000   NFC EAST CHAMPIONS 1986 1989 1990 1997 2000
EASTERN CHAMPIONS 1933 1934 1935 1938 1939 1941 1944 1946 1956 1958 1959 1961 1962 1963

E-Ballot 07/17/2014

CLOUD-AR-219

## NEW YORK FOOTBALL GIANTS – MEDICAL HISTORY

PLEASE CHECK ALL THAT APPLY. IF YES, PLEASE LIST EITHER LEFT OR RIGHT EXTREMITY AND THE MONTH/YEAR WHERE APPLICABLE.

| INJURY / CONDITION | NO | YES | L/R | M/Y | INJURY | NO | YES | L/R | M/Y |
|---|---|---|---|---|---|---|---|---|---|
| **HEAD / FACE** | | | | | **HAND / WRIST / FINGERS** | | | | |
| Concussions | | | | | Sprains | | | | |
| If Yes, Loss Consciousness? | | | | | Hand Fracture | | | | |
| Other Head Injury | | | | | Navicular/Scaphoid Fracture | | | | |
| Nose Fracture | | | | | Finger Fracture | | | | |
| Facial Fracture (Mandible, etc.) | | | | | Other Fractures | | | | |
| Surgeries | | | | | Wrist Dislocation | | | | |
| Dental Injury | | | | | Finger Dislocation | | | | |
| Other Facial Injury | | | | | TFCC Tear | | | | |
| | | | | | Surgeries | | | | |
| **NECK** | | | | | Other | | | | |
| Burners | | | | | | | | | |
| Fractures | | | | | **PELVIS / HIPS** | | | | |
| Sprains | | | | | Sprains | | | | |
| Strains | | | | | Groin Strain | | | | |
| Dislocations | | | | | Hip Strain | | | | |
| Herniated Discs | | | | | Other Strains | | | | |
| Surgeries | | | | | Dislocation | | | | |
| Other | | | | | Contusions / Hip Pointer | | | | |
| | | | | | Fractures | | | | |
| **SPINE / BACK** | | | | | Surgeries | | | | |
| Fractures | | | | | Other | | | | |
| Sprains | | | | | | | | | |
| Muscle Strain / Spasm | | | | | **THIGH** | | | | |
| Herniated Disc | | | | | Quadriceps Strain | | | | |
| Spondylolysis | | | | | Hamstring Strain | | | | |
| Spondylolysthesis | | | | | Myositis Ossificans | | | | |
| Surgeries | | | | | Femoral Fracture | | | | |
| Other | | | | | Surgeries | | | | |
| | | | | | Other | | | | |
| **SHOULDER / CLAVICLE** | | | | | | | | | |
| Clavicle Fracture | | | | | **KNEE** | | | | |
| Scapula Fracture | | | | | ACL Sprain | | | | |
| Other Fractures | | | | | PCL Sprain | | | | |
| Separations: AC / SC (Circle ) | | | | | MCL Sprain | | | | |
| Dislocations | | | | | LCL Sprain | | | | |
| Rotator Cuff Strain | | | | | Meniscus Tear (Circle –M/L) | | | | |
| Rotator Cuff Tendinitis | | | | | Osteochondral Defect | | | | |
| GH Instability | | | | | Patella Fracture | | | | |
| Labrum Tear | | | | | Other Fractures | | | | |
| Stabilization Surgery | | | | | Patella Dislocation | | | | |
| Arthroscopic Surgery | | | | | Other Dislocations | | | | |
| Other Surgeries | | | | | Reconstructive Surgery (Circle - ACL / PCL) | | | | |
| Other | | | | | Arthroscopic Surgery | | | | |
| | | | | | Other Surgeries | | | | |
| **ELBOW / ARM** | | | | | Other | | | | |
| Humerus Fracture | | | | | | | | | |
| Radius Fracture | | | | | **LOWER LEG** | | | | |
| Ulna Fracture | | | | | Shin Splints | | | | |
| Other Fractures | | | | | Compartment Syndrome | | | | |
| Elbow Dislocation | | | | | Stress Fracture | | | | |
| Elbow Sprain | | | | | Other Fracture | | | | |
| Tendinitis | | | | | Strains | | | | |
| Arthroscopic Surgery | | | | | Tendinitis | | | | |
| Other Surgery | | | | | Surgeries | | | | |
| Other | | | | | Other | | | | |

PLAYER INITIALS: _____

2

CLOUD-AR-220

## NEW YORK FOOTBALL GIANTS – MEDICAL HISTORY

| INJURY / CONDITION | NO | YES | L/R | M/Y | INJURY / CONDITION | NO | YES | L/R | M/Y |
|---|---|---|---|---|---|---|---|---|---|
| ANKLE | | | | | FOOT / TOES | | | | |
| Lateral Sprains | | | | | Midfoot Sprain (Lis Francs) | | | | |
| Medial Sprains | | | | | Other Foot Sprain | | | | |
| High Sprains | | | | | Great Toe Sprain (Turf Toe) | | | | |
| Fractures | | | | | Foot Fracture | | | | |
| Dislocations | | | | | Toe Fracture | | | | |
| Achilles Strain | | | | | Midfoot Dislocation | | | | |
| Achilles Tendinitis | | | | | Toe Dislocation | | | | |
| Arthroscopic Surgery | | | | | Plantar Fascitis | | | | |
| Other Surgery | | | | | Arch Strain | | | | |
| Other | | | | | Other | | | | |

| DISEASE / ILLNESS | NO | YES | L/R | M/Y | DISEASE / ILLNESS | NO | YES | L/R | M/Y |
|---|---|---|---|---|---|---|---|---|---|
| Heat Illness | | | | | Dental / Gum Disease | | | | |
| Asthma | | | | | Bladder Infection / Stones | | | | |
| Allergies | | | | | Gout | | | | |
| High/Low Blood Press. (Circle) | | | | | Diabetes | | | | |
| Cardiac Murmur | | | | | Epilepsy | | | | |
| Other Cardiac Condition | | | | | Pneumonia | | | | |
| Migraine Headaches | | | | | Hepatitis | | | | |
| Hearing Loss / Disease | | | | | Infectious Mononucleosis | | | | |
| Ulcer | | | | | Cancer | | | | |
| Hernia | | | | | Congenital Abnormalities | | | | |
| Kidney Infection / Stones | | | | | Mental Illness | | | | |
| Eye Disease | | | | | Substance Abuse | | | | |
| Eye Glasses / Contact Lenses | | | | | Other Conditions | | | | |

| | R/L | INJURY DATE | LIST CURRENT MEDICAL ISSUES / SURGERIES |
|---|---|---|---|
| Medications | | | |
| Med. Conditions | | | |
| Head / Face | | | |
| Neck | | | |
| Spine / Back | | | |
| Shoulder | | | |
| Elbow / Arm | | | |
| Hand / Wrist | | | |
| Pelvis / Thigh | | | |
| Knee | | | |
| Lower Leg | | | |
| Ankle | | | |
| Foot / Toes | | | |

I do hereby state that, to the best of my knowledge and belief, my answers to the foregoing questions are correct.

I hereby authorize any physician, practitioner, hospital or clinic by whom or where I have been observed or treated on or prior to the date hereof for any reason to give full particulars thereof, including prior medical history, to the New York Football Giants, Inc. I further authorize the New York Football Giants, Inc. to send my complete medical file to the club physician of any NFL club to which my contract may be assigned. A Photostatted copy of this authorization shall be as valid as the original.

PLAYER SIGNATURE: _____ DATE:_____

3



NEW YORK
FOOTBALL GIANTS
*Founded in 1925*

## *WARRANTY OF FULL DISCLOSURE OF THE PHYSICAL AND MENTAL CONDITION OF PLAYER*

TO:     New York Football Giants, Inc.
        Giants Stadium
        East Rutherford, New Jersey 07073

Player warrants and represents that he has made a full and complete disclosure to the Club's physician of all present or prior physical or mental defects, illnesses, injuries, or conditions known to him or of which he has knowledge, which might prevent, hinder, or impair the performance of his services under his standard player contract. Player further warrants that at the time of his physical examination by the Club's physician on the _6TH_ day of _August_ 20 _04_, he has not withheld or failed to disclose any present or previous physical or mental defect, illness, injury, or condition known to him. Player understands and agrees that if any answers given during said physical examination are false or if any information has been withheld, such physical examination will become void and will necessitate the taking of another physical examination to determine the true physical status of the player. Player further agrees to indemnify and hold the Club harmless from the consequence of any injury, illness or deteriorated condition occurring to player during the life of his standard player contract which is attributable to or the result of any defect, illness, injury or condition which player failed to disclose to the Club at the time of his physical examination.

PLAYER NAME: _Willie / Chad_     DATE: _09·06·04_

PLAYER SIGNATURE: _____

WITNESS: _____

GIANTS STADIUM • EAST RUTHERFORD, NJ 07073 • EXECUTIVE OFFICES: 201-935-8111 • TICKET OFFICE: 201-935-8222 • FAX: 201-939-4134
WORLD CHAMPIONS 1927 1934 1938 1956 1986 1990   NFC CHAMPIONS 1986 1990 2000   NFC EAST CHAMPIONS 1986 1989 1990 1997 2000
EASTERN CHAMPIONS 1933 1934 1935 1938 1939 1941 1944 1946 1956 1958 1959 1961 1962 1963

E-Ballot 07/17/2014

CLOUD-AR-222



## NEW YORK
## FOOTBALL GIANTS

*Founded in 1925*

### MEDICAL RECORD RELEASE FORM

*Michael Cloud*
NAME (Please Print)

*Boston College - N.E. Patriots*
SCHOOL or LAST PROFESSIONAL TEAM

**FRCP 5.2**
SOCIAL SECURITY NUMBER

TO: ALL UNIVERSITIES, COLLEGES, STUDENT HEALTH SERVICES, PROFESSIONAL FOOTBALL TEAMS, ATHLETIC TRAINERS, PHYSICIANS, HOSPITALS, CLINICS, DISPENSARIES, SANATORIUMS AND ALL OTHER AGENCIES:

You are hereby authorized and requested to send to the National Football League Club as listed below a complete copy of all your records pertaining to my medical condition, including all physicals, physicians' records, trainers' records, diagnosis, treatment, history and prognosis, of any and all injuries and to receive from you any and all other information pertaining to my past or present medical condition, diagnosis, treatment, history and prognosis from your personal knowledge and/or records. A copy of this authorization shall be considered as effective and valid as the original.

PLAYER SIGNATURE: _____

DATE: *09·06·04*     WITNESS: _____

Please send the above requested records and information, plus your charges for photo-copying these materials to:

Mr. Ronnie Barnes, ATC
Vice President for Medical Services
New York Football Giants, Inc.
Giants Stadium
East Rutherford, NJ 07073

GIANTS STADIUM • EAST RUTHERFORD, NJ 07073 • EXECUTIVE OFFICES: 201-935-8111 • TICKET OFFICE: 201-935-8222 • FAX: 201-939-4134

WORLD CHAMPIONS 1927 1934 1938 1956 1986 1990   NFC CHAMPIONS 1986 1990 2000   NFC EAST CHAMPIONS 1986 1989 1990 1997 2000
EASTERN CHAMPIONS 1933 1934 1935 1938 1939 1941 1944 1946 1956 1958 1959 1961 1962 1963

E-Ballot 07/17/2014

CLOUD-AR-223

### NEW YORK FOOTBALL GIANTS – ORTHOPEDIC EXAMINATION I

| Body Part | Normal | Abnormal | Comments |
|-----------|--------|----------|----------|
| Neck | ✓ | | |
| Spine | ✓ | | |
| Shoulder | ✓ | | |
| Elbow | ✓ | | |
| Wrist | ✓ | | |
| Hand | ✓ | | |
| Hip | ✓ | | |
| Ankle | ✓ | | |

Feet      (a) Pes Cavus (high arches)      (b) Normal      (c) Splay

(d) Pes Planus (flat)          (e) Pronated

FUNCTIONAL TESTS          (a) Up & Down Stairs   (b) Hop On One Leg      (c) Running in Place

(d) Half Squat          (e) Full Squat

| | Yes | No | Comments |
|---|-----|-----|----------|
| Patella a. Pain | | ✓ | |
| b. Apprehension | | ✓ | |
| c. Crepitation | | ✓ | |

Thigh

a. Tone _____ normal _____

b. Atrophy _____ Ø _____

PLAYER SIGNATURE: _____   DATE: _____

PLAYER INITIALS: _____

6

CLOUD-AR-224

## *NEW YORK FOOTBALL GIANTS ORTHOPEDIC EXAMINATION II*

1. KNEE EXAMINATION

| | | RIGHT | | | | LEFT | | | |
|---|---|---|---|---|---|---|---|---|---|
| A. LCL | | | | | | | | | |
| 1. Extension | Neg | 1+ | 2+ | 3+ | Neg | 1+ | 2+ | 3+ |
| 2. 30 Degree Flexion | Neg | 1+ | 2+ | 3+ | Neg | 1+ | 2+ | 3+ |
| B. MCL | | | | | | | | | |
| 1. Extension | Neg | 1+ | 2+ | 3+ | Neg | 1+ | 2+ | 3+ |
| 2. 30 Degree Flexion | Neg | 1+ | 2+ | 3+ | Neg | 1+ | 2+ | 3+ |
| C. ACL/PCL | | | | | | | | | |
| 1. Lachmann | Neg | 1+ | 2+ | 3+ | Neg | 1+ | 2+ | 3+ |
| Endpoint | A | B | | | A | B | | |
| 2. Anterior Drawer | Neg | 1+ | 2+ | 3+ | Neg | 1+ | 2+ | 3+ |
| 3. Posterior Drawer | Neg | 1+ | 2+ | 3+ | Neg | 1+ | 2+ | 3+ |
| 4. Pivot Shift | Neg | 1+ | 2+ | 3+ | Neg | 1+ | 2+ | 3+ |
| 5. Reverse Pivot Shift | Neg | 1+ | 2+ | 3+ | Neg | 1+ | 2+ | 3+ |

6. Palpation

| | | |
|---|---|---|
| Scar | Yes | No |
| Pain | Yes | No |
| Effusion | Yes | No |
| Soft Tissue Swelling | Yes | No |

2. EXAMINER'S IMPRESSION (DIAGNOSIS): (R) *personal gunshot wound*
*s/p release (R) anterior & lateral compartment*

3. RECOMMENDATIONS:

PHYSICIAN SIGNATURE: _____ DATE: 9/6/04

PLAYER INITIALS: _____

7

E-Ballot 07/17/2014

CLOUD-AR-225

## NEW YORK FOOTBALL GIANTS MEDICAL EXAMINATION

| N = NORMAL | AB = ABNORMAL | N | AB | COMMENTS |
|---|---|---|---|---|
| Head | Hair, Scalp, Masses | ✓ | | |
| Eyes | Lids, Conjunctivitis, Sclers, EOM Proptosis, Pupils, Peripheral Vision, Fundi, Gross Tension to palpation | | | |
| Ears | Gross Hearing to Speech Discharge Drums | | | |
| Nose | Septum, Mucosa, Polyps, Sinuses | | | |
| Mouth Throat | Lesions, Teeth, Tongue Tonsils, Lesions, Injection | | | |
| Neck | Adenopathy Thyroid, Vessels, Masses, Voice abnormalities | | | |
| Thorax Lungs | Shape, Expansion Deformities Bronchi, Wheezes | | | |
| Heart | Sounds, Murmurs, PMI | | | |
| Abdomen | Organ Enlargement, Masses, Tenderness, Hernia, Scars | | | |
| Genitalia Hernias | Lesions, Discharge, Scrotum, Testicles, | | | |
| Rectal | Hemorrhoids, Fissures, Prostate Masses | | | |
| Extremities | Pulses, Veins, Edema, Clubbing, Atrophy | | | |
| Neurological | Cranial Nerves, Reflexes, Motor, Balance, Sensory | | | |
| Skin | Rash, Ecchymosis, Texture | ✓ | | |
| Mental Status | Affect, Hostility, Agitation | ✓ | | |

HEIGHT: _____     WEIGHT: _____

BLOOD PRESSURE: 116/73 RETAKE: _____

PHYSICIAN'S SUMMARY: _Good Health_

PHYSICIAN'S SIGNATURE: _Allan M Levy, MD_     DATE: 9/7/04

PLAYER INITIALS: _____

8

E-Ballot 07/17/2014

CLOUD-AR-226

## NEW YORK GIANTS POST SEASON PHYSICAL EXAM WAIVER

DATE: _Jan 9 06_

X____ I have been offered a post-season physical examination. I waive my right to such examination and hereby declare that to the best of my knowledge, I am not injured and I am capable of playing football today.

_____ I waive my right to a post-season physical examination. I experienced the injuries listed below during the 2005 season and have fully recovered from such injuries. I am not injured today and I am capable of playing football today.

_____

_____

_____

_____

_____

_____

_____

_____          _____
PLAYER SIGNATURE                                  ATHLETIC TRAINER

_Michael Cloud_                                   _____
PRINT NAME CLEARLY                                PHYSICIAN

E-Ballot 07/17/2014



**MONTCLAIR RADIOLOGY**
OPEN-AIR MRI • MULTI-DETECTOR & SUBSECOND SPIRAL CT • CORONARY ARTERY CALCIUM SCORING •LUNG CANCER CT SCREENING
COLOR DOPPLER ULTRASOUND • BONE DENSITOMETRY • LOW DOSE MAMMOGRAPHY • DIAGNOSTIC RADIOLOGY

116 Park Street ☒ Montclair, NJ 07042
(973) 746-2525    Fax: (973) 746-5802

445 Bloomfield  Ave. ☒  Caldwell, NJ 07006
(973) 228-5330    Fax: (973) 228-1625

20 High Street ☒ Nutley, NJ 07110
(973) 284-1881   Fax: (973) 284-0269

| | | |
|---|---|---|
| PATIENT NAME | ACCOUNT NO | MEDICAL RECORD NUMBER |
| CLOUD, MICHAEL | 455113 | 455113 |

AT THE REQUEST OF
RUSSELL WARREN MD
535 EAST 70TH ST
NEW YORK, NY 10021

DATE OF BIRTH 

SEX
M

PROCEDURE DATE
11/08/2004

Dear Dr. Warren:

XR-RIBS LEFT UNILATERAL W-PA CH

HISTORY:   Injury and left posterior rib pain.

A single PA view of the chest, as well as five dedicated views of the left ribs are submitted for interpretation.

There is no acute fracture.  There is no evidence for hemothorax or pneumothorax.  There is no consolidation or effusion.  The heart size is normal without evidence for CHF.

IMPRESSION:   Normal PA of the chest and left-sided unilateral rib series.

Thank you for referring your patient,

Sincerely yours,

Michael A Pollack

Michael Pollack, M.D.
Radiologist

MP/tg/MONTCLAIR RADIOLOGY NUTLEY

Kenneth L. Javel, M.D.* / Richard K. Mellzer, M.D. / Ronald C. Rotra, M.D.* / Steven S. Herman, M.D.* / Richard J. Rabin, M.D.* / Charles A. Whaley, M.D.
Denise G. McFadden, M.D. / Eric D. Fittsberg, M.D. / P. Matz Rozen, M.D. / Sandra E. Ramos Canedan, M.D. / Linda A. Englotary, M.D.
Diplomates, American Board of Radiology / *Diplomates, American Board of Nuclear Medicine / †Diplomate, American Board of Radiation Oncology

E-Ballot 07/17/2014

CLOUD-AR-228



**Ann M. Moore, MD**
Director, Radiologist, DABR

*Mailing Address*
P.O. Box 380
Basking Ridge
New Jersey 07920

*Location*
1201 Mt. Kemble Ave.
Route 202
Harding Township
New Jersey

Voice 908.221.0603
Fax 908.221.0631
www.radcenter.net

Services Include:

*MRI*
*Spiral CT*
*Total Body Scanning*
*Cardiac Scoring*
*Virtual Colonoscopy*
*CT Bone Density*
*Ultrasound—all types*
*Mammography*
*Dental Scanning*
*Xrays*
*Fluoroscopy,*
*including GI tract*

PATIENT: Cloud, Mike
REFERRING PHYSICIAN: RUSSELL WARREN, MD
DATE OF EXAM: 5/16/05

X-RAY OF THE CHEST

A single frontal view of the chest shows a normal cardiac silhouette. The lung fields are clear as visualized.

OPINION:      Normal frontal view of the chest.

Ann M. Moore, MD

AMM:lab

Received: 5/20/05

E-Ballot 07/17/2014

CLOUD-AR-229



## VETERAN PRESEASON PHYSICAL EXAMINATION FORM
## NEW ENGLAND PATRIOTS FOOTBALL CLUB

Name: _Michael Cloud_     Date: _____

Social Security #: FRCP 5.2     Date of Birth: FRCP 5.2

Present Local Address: _875 Frenchtown Rd._
_East Greenwich_
_Rhode Island  02818_

Local Telephone #: _401·662·5500_ Second #: _____

Cell Phone #: _____ Pager #: _____

Email Address: _____

Wife's Name (if married): _____

Permanent Address: _SAME_____

_____

_____

Home Telephone #: _____ Second #: _____

Nearest Relative's Name: _Charles & Ethel Cloud_ Relation: _Parents_
Nearest Relative's Address: _508 Turnpike Ave._
_Portsmouth Rhode Island_
Nearest Relative's Phone: _401·683·5443_

Emergency Contact: _____ Telephone #: _____

Page 1


New England Patriots L.P. ▪ Gillette Stadium ▪ One Patriot Place ▪ Foxborough, Massachusetts 02035-1388
Administration: 508-543-8200 ▪ Tickets: 508-543-1776 ▪ www.patriots.com


E-Ballot 07/17/2014

CLOUD-AR-230

# NEW ENGLAND PATRIOTS
## GENERAL PHYSICAL EXAMINATION

| Name: | | Age | |
|---|---|---|---|
| Height | | Weight | Position |
| Pulse | 64 | BP | 110/76 |

| N = Normal | AB= Abnormal | N | AB | Comments |
|---|---|---|---|---|
| Head: | Hair, Scalp, Masses | ✓ | | |
| Ears: | Gross Hearing to speech, Discharge, Drums | ✓ | | |
| Eyes: | Lids, Conjunctivae, Sclera EOM, Proptosis, Pupils, Peripheral Vision, Fundi Gross tension to palpation | | | |
| Nose: | Septa, Mucosa, Polyps, Sinuses | ✓ | | |
| Mouth: | Lesions, Teeth, Tongue, | ✓ | | |
| Throat: | Tonsils, Lesions, Injection | ✓ | | |
| Neck: | Adenopathy, Thyroid, Masses, Voice abnormality | ✓ | | |
| Thorax: | Shape, Expansion, Deformaties, | ✓ | | |
| Lungs: | Bronchi, Wheezes, Rales | ✓ | | |
| Heart: | PMI, Thrills, Sounds, Gallops | ✓ | | |
| Abdomen | Organ enlargement, Masses, Tenderness, Hernias, Scars | ✓ | | |
| Genitalia | Lesions, Discharge, Scrotum, Testicles, Hernias | ✓ | | |
| Rectal | Hemmorhoids, Fissures, Masses, Prostate | | | |
| Extremities | Pulses, Veins, Edema | | | |
| Neurology | Cranial nerves, Reflexes, gait | | | |
| Skin | Rash, Ecchymosis, Texture | | | |
| Mental status | Affect, Hostility, Agitation | | | |

Physician's Signature _Scott Paul/PASSERI_  Date 5/12/04

Page 3

E-Ballot 07/17/2014

CLOUD-AR-231

NEW ENGLAND PATRIO
ORTHOPAEDIC EXAMINATION

Name __Mike Cloud__     Date __5/12/04__

N= Normal     AB=Abnormal

| Defects or Significant History | N | AB | COMMENTS |
|---|---|---|---|
| Neck | ✓ | | |
| Spine:  Cervical | ✓ | | |
|          Thoracic | ✓ | | |
|          Lumbar | ✓ | | |
| Shoulder: apprehension impingement, instability | ✓ | | |
| Elbow: | ✓ | | |
| Wrist, Hand, Fingers: | ✓ | | |
| Pelvis: | ✓ | | |
| Lower Extremity: Neuro: Gait, DTR | | | ® leg – well healed no tenderness. |
| Quadriceps, Hamstrings | ✓ | | |
| Ankle, Foot, & Toes | ✓ | | |

| | | Right | | Left | Comments |
|---|---|---|---|---|---|
| Knee | Effusion | Ø | | Ø | |
| | Atrophy | | | | |
| | Extension | | | | |
| | Flexion | | | | |
| | Patella Femoral Crepitus | | | | |
| | Lachman | | | | |
| | Pivot Shift | | | | |
| | Valgus/30 | | | | |
| | Varus/30 | | | | |
| | Posterior Drawer | | | | |
| | Popliteal Cyst | | | | |
| | Tenderness | ✓ | | ✓ | |

Physicians Signature _____     Date __5/12/04__

Page 4

E-Ballot 07/17/2014

CLOUD-AR-232



TM

### Certification of Corrections of Information

I certify that I have answered this questionnaire and all questions of the team physician completely and correctly to the best of my knowledge. I certify that I have not had any prior illnesses or injuries other than those I have listed on this questionnaire.

I further certify that the team physician has explained to me that playing professional football may result in serious physical injury and in the aggravation, deterioration, or reinjury of any preexisting medical condition(s) during and after my employment by the New England Patriots Football Team. I fully understand and assume the possible consequences of playing professional football with the medical condition(s) set forth in this questionnaire or discussed with the team physician.

### Permission for Release of Medical Information

I, hereby authorize and empower the New England Patriots Football Club and its representatives to examine, copy and/or obtain copies of any and all medical records relating to my health history, injury, complaints, tests, findings and treatments, and I also hereby authorize all physicians, hospitals, clinics, schools, colleges/universities, NFL Clubs and all other amateur and professional teams or organizations and/or facilities that may possess such records, to make them freely available to the New England Patriots Football Club representatives. I do hereby release and discharge all such institutions and persons from any and all claims by reason thereof.

I understand that the team physician is a representative of the New England Patriots Football Team and that he or she may therefore disclose any or all of the medical information contained in this questionnaire or my medical files to the team. I further authorize the release to the team and its coaching staff, all medical and surgical information gained by the team physician during the course of my employment.

I hereby authorize the team to release this questionnaire and any and all other information in my medical file to any other team to which I am released, or traded, or to which my contract is assigned. I have received a copy of regulations regarding disclosure of protected health information.

(If applicable) I have reviewed my medical summary that was updated on _____
(date, month, year) and:

_____ I certify that it is complete, accurate, and up-to-date. I have had no additional injury, illness, or surgery performed

_____ Please make the following additions or corrections to update my medical summary:

Date: _05·12·0_̶_     Player's Name (Printed): _Michael Clual_

Player's Signature _____

Physician's Signature _____

Page 5

E-Ballot 07/17/2014

CLOUD-AR-233



## NEW ENGLAND PATRIOTS

### AUTHORIZATION FOR RELEASE OF RECORDS OR INFORMATION

SECTION A: I authorize the use or disclosure of my protected health information (PHI) as described below. I hereby give my permission to Bertram Zarins, M. D, P.C., Thomas Gill, M.D., or other New England Patriots team physicians to use or disclose my PHI in the manner described herein.

Player Name: _Michael Clorell_

Address: _____

SECTION B:
Personal Health Information to Be Disclosed: Describe the personal health information you are authorizing to be used and/or disclosed:

All medical records, reports, test results, notes, and other information pertaining to football-related health conditions

Persons/Entities Authorized to Receive and Use: Name or specifically describe the persons, class of persons and/or entities to whom you are authorizing the individual named above to disclose the PHI described above:

The New England Patriots, their employees, agents          The National Football League

and subcontractors

Purpose of the Disclosure: The disclosure is being made for the following reason:

For purposes relating to my employment as a professional football player in the National Football League

Expiration Event: Thirty (30) days after termination or expiration of employment with the New England Patriots

SIGNATURE:

My signature below acknowledges that I have read this Authorization, understand my rights as described herein, and authorize release of my PHI.

Signature: _____          Date: _05·12·04_

Witness Signature: _____          Date: _____

You are entitled to a copy of this authorization after you sign it. You have the right to revoke this authorization in writing, except to the extent that Bertram Zarins, M.D. P.C., Thomas Gill, M.D., or other New England Patriots team physicians have relied thereon. We may not condition treatment, payment, enrollment or eligibility for benefits on your execution of this authorization. Information disclosed pursuant to this authorization may be re-disclosed by the recipient(s) and no longer protected by the federal privacy law.



NEW ENGLAND PATRIOTS L.P. ● GILLETTE STADIUM ● ONE PATRIOT PLACE ● FOXBOROUGH, MASSACHUSETTS 02035-1388
ADMINISTRATION: 508-543-8200 ● TICKETS: 508-543-1776 ● WWW.PATRIOTS.COM



E-Ballot 07/17/2014



E-Ballot 07/17/2014

CLOUD-AR-235

NEW ENGLAND PATRIOTS
MEDICAL SUMMARY – CONFIDENTIAL
UPDATED 7/20/04  4:/07

CLOUD, MIKE
#21 RB
BOSTON COLLEGE

INACTIVE PROBLEMS

ALLERGIES - none
MEDICATION - none
MEDICAL CONDITIONS - none
ACTIVE PROBLEMS
R LEG – Contusion lateral leg 7/25/03. Surgery 7/31/03 – release anterior and lateral
compartments with debridement of necrotic peroneus longus muscle and tenodesis.

I have reviewed my medical summary with the doctor and certify that this complete, accurate and up to date.  The doctor has
explained to me the nature of these injuries and their possible results.  I understand all questions have been satisfactorily answered.

DATE

PLAYER'S SIGNATURE

PHYSICIAN'S SIGNATURE
BERTRAM ZARINS MD
TOMAS GILL MD

E-Ballot 07/17/2014

CLOUD-AR-236

NEW ENGLAND PATRIOTS
MEDICAL SUMMARY – CONFIDENTIAL
UPDATED 1/20/04

CLOUD, MIKE
#21 RB
BOSTON COLLEGE

INACTIVE PROBLEMS

ALLERGIES - none
MEDICATION - none
MEDICAL CONDITIONS - none
ACTIVE PROBLEMS
R LEG – Contusion lateral leg 7/25/03. Surgery 7/31/03 – release anterior and lateral compartments with debridement of necrotic peroneus longus muscle and tenodesis.

I have reviewed my medical summary with the doctor and certify that it is complete, accurate and up to date. The doctor has explained to me the nature of these injuries and their possible results. I understand all questions have been satisfactorily answered.

_____    _____    _____
DATE                       PLAYER'S SIGNATURE          PHYSICIAN'S SIGNATURE
                                                       BERTRAM ZARINS MD
                                                       TOMAS GILL MD

E-Ballot 07/17/2014

CLOUD-AR-237



# NEW ENGLAND PATRIOTS
## MEDICAL REPORT 10/05/2003
### GAME VS TENNESSE

**SEEN BEFORE GAME**

**CLOUD, MIKE**
October 5, 2003: Right leg asymptomatic and back to normal function.

Examination is essentially completely normal.

Plan: Okay for full activity without restriction.

BZ

E-Ballot 07/17/2014

CLOUD-AR-238

**Whalen, Jim**

From:     McGillvray, Joyce D. [JMCGILLVRAY@PARTNERS.ORG]
Sent:      Tuesday, September 30, 2003 12:28 PM
To:        'billb@patriots.com'; 'scottp@patriots.com'; 'jimwh@patriots.com'
Subject:  Zarins- report

Michael Cloud
Page

September 26, 2003: Right leg – 8 ½ weeks postoperative right leg fasciotomy anterior and lateral compartments with debridement necrotic peroneus longus and tenodesis peroneus longus tendon and peroneus brevis tendon. He has continued to do well and regain his full function.

Current status – no pain or weakness. There is no functional impairment. He is running and changing direction without any problem. No sensory loss. No discernible weakness.

Right leg examination - knee, ankle and foot full range of motion. No detectable muscle weakness including eversion of the foot. The peroneus tendon can be seen to contract strongly when the foot everts. No sensory loss. Incision is well healed.

Assessment: Right leg – healed with no detectable residual impairment following closed compartment syndrome/fasciotomy.

Recommendation: Cleared for full activity.

                                        BZ

CC:  Patriots

9/30/2003

E-Ballot 07/17/2014

CLOUD-AR-239

## NEW ENGLAND PATRIOTS
## MEDICAL REPORT 8/23/03

**CLOUD, MICHAEL**

August 23, 2003:  Right leg improving. He has been using a short leg brace.  He has had no pain.

Examination – the anterior and lateral compartments are soft and non-tender. The incision is healed primarily in most of the extent but there are several areas of slight superficial skin edge necrosis, which is basically granulating well with slight encrustation over it.

Plan:  He will discontinue the boot but go with an ankle brace that allows plantar flexion/dorsiflexion but eliminates inversion/eversion.  Overall doing very well.

BZ

E-Ballot 07/17/2014

CLOUD-AR-240

CLOUD, MICHAEL
August 11, 2003:  Right leg – anterior and lateral leg compartment fasciotomy and
debride peroneus longus muscle 7/30/03 – much improved.  Good motion of foot and
ankle (eversion not stressed).   Incision healing well but not yet healed in mid portion.
Sutures still in.

BZ

E-Ballot 07/17/2014

CLOUD-AR-241

NEW ENGLAND PATRIOTS
MEDICAL REOPRT 8/7/03 AT FOXBORO
PRESEASON GAME VS NY GIANTS

**SEEN BEFORE GAME**

**CLOUD, MIKE**
August 7, 2003:  Right leg anterior and lateral compartment syndrome release eight days ago/debride necrotic peroneus longus muscle. Doing well.  The leg is in a posterior splint. He is having much less pain.  There is a small area of numbness on the little toe.  Motor intact. The lateral and anterior compartments appear to be soft and non-tender. There is no clinical sign of infection.

Plan:  Walking boot applied.  Continue elevation/observation.

BZ

E-Ballot 07/17/2014

CLOUD-AR-242

**Massachusetts General Hospital**

55 Fruit Street Boston, MA 02114
(617)726-2000

| | |
|---|---|
| Patient MGH ID #: | 4092750 |
| Patient Name: | CLOUD, MICHAEL |
| Admit Date: | 07/30/2003 |
| Discharge Date: | 08/02/2003 |
| Gender: | M |
| Patient DOB: | FRCP sFRCP |
| Location: | WH0816A |

*Patient Care Referral Form*

Patient Name:            CLOUD, MICHAEL
Patient Address:      GILLETTE STADIUM  FOXBORO, MA  02035
Patient Phone:         0000000000
Relative/Guardian:
Relative/Guardian Address:
Relative/Guardian Phone:      (   )
Relative/Guardian Relation:

Referral From:      Massachusetts General Hospital
Unit or Clinic:        WH0816A
  No Post Acute Provider Information Entered

---

*Patient Information*

Gender:  M                    Marital Status: UNKNOWN          Religion:                    Birthday:  7/1/1975
Primary Insurance Plan:   PATIENT PAY                          SSN:     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

Primary Diagnosis:
  right leg compartment syndrome

Operations & Procedures:
  right leg fasciotomies

---

*Discharge Orders*

*Allergies*
o Penicillins - Unknown

*Medications*
o OXYCODONE 5 MG/ACETAMINOPHEN 325 MG 1-2 TAB PO Q3-4H  PRN:  pain

o CLINDAMYCIN HCL 300 MG PO QID x7 DAYS

*Diet*
o Diet as tolerated

*Activities*
o NWB RLE, crutches

---

Massachusetts General Hospital      Printed 8/2/2003 12:41:41 PM                                      Page 1

CLOUD-AR-243

## Train Boston Progress Report

Patient Name:   Mike Cloud          Therapist:   Tim Brewster, MSPT          Date:   9.16.03

Dates of Service: 9.03, 9.04, 9.08, 9.09, 9.10, 9.11, 9.12, 9.15, 9.16

**INJURIES:**

s/p R peroneal tendon repair and debridement

**CURRENT ACTIVITIES/EXERCISE ROUTINE:**

Out of practice due to recovery from anterior compartment surgery

**PATIENT'S SHORT/LONG-TERM GOALS:**

1.   Full wound healing

2.   Return to full lower extremity function

3.   Return to the team

**OBJECTIVE ISSUES:**

ROM:

Ankle DF is now consistent with L

Function:

Pt. is full function without restriction

Pain:

0-minimal pain

Inspection:

All scars are currently closed and scabbing over nicely

Strengths/Weaknesses:

Good functional strength in all planes

Agility/Balance:

Good 1-leg balance on even and un-even surfaces

**ASSESSMENT PLAN:**

Pt. presents with an open wound following anterior compartment surgery. Scars are closed and healing well. Will progress pt. with progressive conditioning program for lower leg focusing on strengthening, Joint Mob to mid and rear foot, and proprioceptive work. We are returning to high end conditioning on 9.18 to prepay patient for full return to the team on 9.29.03.

E-Ballot 07/17/2014

CLOUD-AR-244

Mike Cloud  09.15.03

## Manual Work

Manual Resistance 4-way ankle (eversion, inversion, PF, DF at table)
DF glides
Mid Foot and rear foot glides to increase DF
Traction to mid and rear foot

## Ther-ex (2 loops)

5' spin bike (sit 30 / stand 30)
Heel Walks
Toe Walks
Heel/Toe Rocks
Xiser 90 seconds (tall 15 / squat 15 x 3)
Airex multiplane R leg balance work
Dyna Disc Plantar Flexion Dorsi Flexion
Wall Heel Cord Stretch
Bent Knee Heel Glides

## Conditioning/Mechanics

Resistive Tubing Cord Runs: starts→ acceleration→ hold & drive x 4
Resistive Tubing Cords: side lung back to balance point and hold, x15
        (stabilizing on effected leg, both tube resisting into lunge and out of lunge)
Slideboard. 1:00 on long board, :30 on short board with explosive stride/drives
-REPEAT-
end with 3rd pass on Resistive Tubing Cord Runs: starts→ acceleration→ hold & drive x4
    - before any strength work, gastroc/soleus toe raises on leg press
    - emphasizing full ROM

E-Ballot 07/17/2014

CLOUD-AR-245

Mike Cloud  09.04.03

Manual Work

Manual Resistance 4-way ankle (eversion, inversion, PF, DF at table)
DF glides
Mid Foot and rear foot glides to increase DF
Traction to mid and rear foot

Ther-ex (3 loops)

5' spin bike (sit 30 / stand 30)
Heel Walks
Toe Walks
Heel/Toe Rocks
Xiser 90 seconds (tall 15 / squat 15 x 3)
Airex multiplane R leg balance work
Dyna Disc Plantar Flexion Dorsi Flexion
Wall Heel Cord Stretch
Bent Knee Heel Glides

Wound Care
Anode (white to the incision) x 60"

E-Ballot 07/17/2014

CLOUD-AR-246



MASSACHUSETTS GENERAL HOSPITAL

OPERATIVE REPORT

NAME: CLOUD, MICHAEL                    UNIT NUMBER: 409-27-50

DATE: 07/30/2003                        FLOOR: W06 W6616A


SURGEON:  BERTRAM ZARINS, M.D.

ASSISTANT:  MAXIMILLIAN SOONG, M.D.; JOSEPH CHASE, M.D.


PREOPERATIVE DIAGNOSIS:        RIGHT LEG CONTUSION WITH CLOSED
                               COMPARTMENT SYNDROME, ANTERIOR AND
                               LATERAL COMPARTMENTS.

POSTOPERATIVE DIAGNOSIS:       SAME, WITH PROXIMAL AVULSION AND
                               NECROSIS, PERONEUS LONGUS MUSCLE.

NAME OF OPERATION:             RIGHT LEG FASCIOTOMY, ANTERIOR
                               COMPARTMENT AND LATERAL COMPARTMENT.
                               EXCISION, NECROTIC PERONEUS LONGUS
                               MUSCLE, AND TENODESIS, PERONEUS LONGUS
                               TENDON TO PERONEUS BREVIS MUSCLE.


ANESTHESIA:  General.


INDICATIONS:  The patient is a 28-year-old football player (New England
Patriots) who sustained a direct blow to the lateral aspect of the
right leg on July 25, 2003.  He continued to practice but had
increasing swelling and eventually developed numbness in his toes and
more swelling.  Compartment pressure measurements done the morning of
surgery revealed anterior compartment pressure of 114 mmHg., lateral
compartment pressure of 120 mmHg., compared to posterior compartment
measurements of a normal 24 mmHg.

RIGHT LEG OPERATIVE FINDINGS:  Lateral compartment bulging muscles
within the compartment but no sign of necrosis.

Lateral compartment showed bulging of the muscles and areas of black,
old hematoma, which was evacuated.  The peroneus longus muscle was
entirely avulsed from its proximal origin and had no vascular or nerve
supply at all.  It appeared to be completely avascular and appeared to
be undergoing early necrosis.  It was attached to the tendon distally.
The surrounding muscles of the peroneus brevis appeared to have signs
of injury and had questionable viability.

DESCRIPTION OF PROCEDURE:  With the patient under satisfactory general
anesthesia, the right leg was sterilely prepared and draped free in the
usual manner.  A incision 15 cm. long was made in the lateral aspect of
the right leg approximately 2 to 3 cm. anterior to the level of the
fibula.  This was carried down to the deep fascial layer.  The interval
between the superficial fascia and the deep fascia was exposed in the
lateral aspect of the right leg.

                                                    Page 1 of 3

                Send Copy To:  BERTRAM ZARINS, M.D.

E-Ballot 07/17/2014

OPERATIVE REPORT

NAME:  CLOUD, MICHAEL                              UNIT NUMBER:  409-27-50
ADMISSION DATE:  07/31/2003                              DISCHARGE DATE:

Transverse incision was made in the deep fascia and the intramuscular
septum was identified and carefully avoided.

Working in the anterior aspect of the anterior compartment, long
Metzenbaum scissors were used to divide the deep fascia overlying the
anterior compartment from just below the knee down to the ankle.

Working now in the lateral compartment of the knee, working posteriorly
to avoid injury to the nerve, the deep fascia was incised lengthwise
for the entire compartment, aiming toward the fibular head proximally
and the lateral malleolus distally.  Old hematoma was evacuated.  The
muscle had questionable viability except for the peroneus longus, which
had definite necrosis and was completely avascular and easily flipped
out into the wound, being completely detached proximally.

The necrotic muscle was sharply dissected away from the tendon.  The
foot was held in eversion and neutral dorsiflexion.  The tendon of the
peroneus longus was sutured to the edges of the muscle of the peroneus
brevis.  The wound was irrigated.  The deep fascia was left open.
Subcutaneous and skin sutures were placed.  The skin could be closed
fairly easily without undue tension.  Steri-Strips and sterile
dressings were applied.  A posterior splint with the foot well padded
held in a neutral position of dorsiflexion and slight eversion was
applied.  The patient tolerated the procedure well.  He was returned to
the recovery room in satisfactory condition.  There was no
complication.  I certify I was present for the entire operative
procedure and performed the critical portions of the operation.


                                    BERTRAM ZARINS, M.D.
                                    DICTATING FOR:

                                    Electronically Signed
                                    BERTRAM ZARINS, M.D.
                                    08/04/2003 11:09
                                    _____
                                    BERTRAM ZARINS, M.D.


TR: ws  DD: 07/30/2003  TD: 07/31/2003  4:45 P  614839
cc:  BERTRAM ZARINS, M.D.

     BILL BELICHICK
     New England Patriots
     Foxboro, MA 02035

     JIM WHALEN
     New England Patriots
     Foxboro, MA 02035


                                                    Page 2 of 3
          Send Copy To:  BERTRAM ZARINS, M.D.


E-Ballot 07/17/2014

CLOUD-AR-248



Toll Free: 1-800-258-4674
Fax: 1-800-253-7569
www.shields.com

SHIELDS MRI CT OF RHODE ISLAND

VISIT NUMBER            : 30-2305790-002

PATIENT NAME            : CLOUD; MIKE

MEDICAL RECORD NUMBER : 30-007569

DATE OF BIRTH           : FRCP 5.2

DATE OF EXAM            : 08/12/03

REFERRING PHYSICIAN    : ZARINS; BERTRAM
                         MGH - ACC # 514
                         15 PARKMAN STREET
                         BOSTON, MA 02114

FILM PREFERENCE         : C-ALL

MRI EXAM                : NEW ENGLAND PATRIOT

CLINICAL HISTORY        : STATUS POST TRAUMA, ASSESS MUSCLE INTEGRITY.

MRI TECHNIQUE           : THE    FOLLOWING    SEQUENCES    WERE    PERFORMED
CORONAL T1-WEIGHTED, CORONAL FMPIR OR STIR FAT SUPPRESSION, AXIAL
T1-WEIGHTED, AXIAL T2-WEIGHTED FAT SUPPRESSION, CORONAL +C T1-WEIGHTED
FAT SUPPRESSION POST CONTRAST, AXIAL +C T1-WEIGHTED FAT SUPPRESSION
POST CONTRAST.

FINDINGS                : The  distal  aspect  of  the  peroneus  longus
muscle demonstrates normalization of signal at the ankle. The longus
and brevis tendons are identified at the lateral malleolus. There is
no evidence for necrosis or hematoma.

CONCLUSION              : MYOSITIS  WITH PARTIAL NORMALIZATION OF SIGNAL
AT THE ANKLE. THERE IS NO EVIDENCE FOR NECROSIS OR HEMATOMA.

PHYSICIAN               : JEFFREY M. ROGG, M.D.
                         {Signature on file}
08/12/03

E-Ballot 07/17/2014

CLOUD-AR-249



## NEW ENGLAND PATRIOTS FOOTBALL CLUB

Name: _Michael Cloud_          Date: _06·04·03_

Social Security #: **FRCP 5.2**     Date of Birth: **FRCP 5.2**

Present Local Address: _875 Frenchtown Rd._
_East Greenwich, RI 02818_

Local Telephone #: _401·662·5500_     Second #: _____

Cell Phone #: _____          Pager #: _____

Email Address: _mcloud34@aol.com_

Wife's Name (if married): _____

Permanent Address: _____

Home Telephone #: _____     Second #: _____

Nearest Relative's Name: _____     Relation: _____
Nearest Relative's Address: _____

Nearest Relative's Phone: _____

Emergency Contact: _Charles & Ethel Cloud_ Telephone #: _401· 683·5443_

Page 1

NEW ENGLAND PATRIOTS L.P. • GILLETTE STADIUM • ONE PATRIOT PLACE • FOXBOROUGH, MASSACHUSETTS 02035-1388
ADMINISTRATION: 508-543-8200 • TICKETS: 508-543-1776 • WWW.PATRIOTS.COM

 

E-Ballot 07/17/2014

## NEW ENGLAND PATRIOTS
## PREVIOUS MEDICAL HISTORY

Name: _Michael Cloud_     Date: _06·04·03_

Major Medical Problems (1)_____
(Include Hospitalizations)
(2)_____

(3)_____

Surgeries (1) _left Big Toe - Bone Graph  1995_

(2)_____

(3)_____

(4)_____

(5)_____

Allergies: _None_

Medications (Taken Regularly):_____

## FAMILY HISTORY

Father: (AGE): _60_     (HEALTH STATUS): _Good_
(If deceased, Cause of Death):_____

Mother: (AGE): _60_     (HEALTH STATUS): _Good_
(If deceased, Cause of Death):_____

**Have Blood relatives had the following conditions:**
(Please Circle)

| Cancer | Yes No | Convulsions | Yes No |
|---|---|---|---|
| Tuberculosis | Yes No | Seizures | Yes N |
| Diabetes | (Yes) No | Mental Illness | Yes No |
| Heart Trouble | Yes No | Excessive Bleeding | Yes No |
| High Blood Pressure | Yes No | Hereditary Defects | Yes No |
| Stroke | Yes No | | |

Page 2

E-Ballot 07/17/2014

CLOUD-AR-251

## NEW ENGLAND PATRIOT
## PREVIOUS INJURY HISTOR

For all prior injuries please list to the best of your recollection what was injured, and how much time you missed.

HEAD (Concussions) Memory loss, Lacerations, etc): 1995 - 7 days

EYES / EARS/ NOSE (Fractures, Altered Vision, Loss of Hearing, etc):

NECK (Fracture, Stinger, Sprain, Strain, Pinched Nerve, Ruptured Disc, etc):

BACK (Strain, Sprain, Fracture, Ruptured Disc, Pinched Nerve, Abnormal Curve, etc.):

SHOULDER (A-C Joint Sprain, Rotator Cuff Strain, Dislocation, Subluxation, etc.): 1999 - Ødays

ARM/ ELBOW (Fracture, Sprain, Strain, Tendonitis, Dislocation, etc):

HAND/ FINGERS (Sprain, Dislocation, Fracture, Bruise, etc):

E-Ballot 07/17/2014

CLOUD-AR-252

### PREVIOUS MEDICAL HISTORY (CONT.)

PELVIS/ GROIN (Strain, Hernias, Contusions, Hip Pointer, Dislocations, etc):

THIGH (Quadriceps/ Hamstring Strains, Contusions, Fractures, etc):

KNEE (Sprain, Cartilage Injuries, Ligament Injuries, Tendonitis, Patella injuries, etc.):

LOWER LEG (Shin Splints, Fractures, Achilles Injuries, Tendonitis, etc.):

ANKLE (Fractures, Sprains, Dislocations, etc.): _____

FOOT/ TOES (Fractures, Turf Toe, Sprain, Arch Problems, Foot Conditions, etc.):
1995 - Bone Graph - 6 weeks
2002 - Foot Sprain - 2 weeks

Page 4

E-Ballot 07/17/2014

CLOUD-AR-253

## NEW ENGLAND PATRI...
## HEALTH HISTORY QUESTIONNAIRE

Name: Michael Cloud                    Date: 06·04·03

### CHILDHOOD DISEASES – HAVE YOU EVER HAD

| | | | | | |
|---|---|---|---|---|---|
| Measles | yes | (no) | Rheumatic Fever | yes | (no) |
| German Measles | yes | (no) | Whooping Cough | yes | (no) |
| Mumps | yes | (no) | Scarlet Fever | yes | (no) |
| Chicken Pox | (yes) | no | Other | | yes | (no) |

### PRIOR IMMUNIZATIONS – ARE YOU VACCINATED AGAINST:

| | | | | | |
|---|---|---|---|---|---|
| Tetanus | (yes) | no | Polio | (yes) | no |
| Small Pox | (yes) | no | Other | (yes) | no |

### ALLERGIES- ARE YOU ALLERGIC TO:

| | | | | | |
|---|---|---|---|---|---|
| Aspirin | yes | (no) | Foods | yes | (no) |
| Codeine | yes | (no) | Medication | yes | (no) |
| Sulfa | yes | (no) | Tetanus | yes | (no) |
| Penicillin | (yes) | no | Cosmetics | yes | (no) |
| Hay Fever | yes | (no) | Morphine | yes | (no) |
| Asthma | yes | (no) | Dust | yes | (no) |
| Grass | yes | (no) | Other | | yes | (no) |

### DO YOU CURRENTLY HAVE, OF HAVE YOU EVER HAD:

| | | | | | |
|---|---|---|---|---|---|
| Skin disease | yes | (no) | Ear disease | yes | (no) |
| Jaundice | yes | (no) | Impaired hearing | yes | (no) |
| Hives | yes | (no) | Dizziness | yes | (no) |
| Eczyma | yes | (no) | Sore throats | (yes) | no |
| Frequent boils | yes | (no) | Chronic cough | yes | (no) |
| Abnormal pigment | yes | (no) | Spitting up blood | yes | (no) |
| Frequent rashes | yes | (no) | Asthma | yes | (no) |
| Frequent skin infections | yes | (no) | Wheezing | yes | (no) |
| Eye disease | yes | (no) | Pneumonia | yes | (no) |
| Glasses/Contacts | (yes) | no | Mononucleosis | yes | (no) |
| Persistent double vision | yes | (no) | Malaria | yes | (no) |
| Frequent headaches | yes | (no) | Hepatitis | yes | (no) |
| Migraine headacehs | yes | (no) | Cancer | yes | (no) |
| Glaucoma | yes | (no) | Chest pain | yes | (no) |

E-Ballot 07/17/2014

CLOUD-AR-254

## Health History (con...)

| | | | | | | |
|---|---|---|---|---|---|---|
| Frequent nosebleeds | yes | (no) | Heart trouble | | yes | (no) |
| Chronic sinus infections | yes | (no) | Heart murmur | | (yes) | no |
| Epileptic attacks | yes | (no) | Cold hands/feet | | yes | (no) |
| Diabetes | yes | (no) | Thyroid disease | | yes | (no) |
| Gout | yes | (no) | Slow healing | | yes | (no) |
| Kidney stones | yes | (no) | Anemia | | yes | (no) |
| Bladder infections | yes | (no) | Blood disease | | yes | (no) |
| Frequent urination | yes | (no) | Phlebitis | | yes | (no) |
| Painful urination | yes | (no) | Bleeding disorder | | yes | (no) |
| Blood in urine | yes | (no) | Psychiatric care | | yes | (no) |
| Appendicitis | yes | (no) | Fainting spells | | yes | (no) |
| Frequent diarrhea | yes | (no) | Convulsions | | yes | (no) |
| Peptic ulcer | yes | (no) | Paralysis | | yes | (no) |
| Vomiting blood | yes | (no) | Heat illness | | yes | (no) |
| Liver trouble | yes | (no) | Heat cramps | | yes | (no) |
| Gall bladder trouble | yes | (no) | Artificial eye | | yes | (no) |
| Black stools | yes | (no) | Hearing aid | | yes | (no) |
| Hemmorhoids | yes | (no) | Shortness of breath | | yes | (no) |
| Frequent heartburn | yes | (no) | Dental bridges | | yes | (no) |
| Frequent indigestion | yes | (no) | False teeth | | yes | (no) |
| Frequent cramping | yes | (no) | Black outs | | yes | (no) |
| Dry skin | yes | (no) | | | | |

## Do you use any of the following more than occasionally

| | | |
|---|---|---|
| Sedatives | yes | (no) |
| Tranquilizers | yes | (no) |
| Appetite suppressants | yes | (no) |
| Hormones | yes | (no) |
| Insulin | yes | (no) |
| Laxatives | yes | (no) |
| Diet pills | yes | (no) |
| Muscle relaxants | yes | (no) |
| Other | yes | (no) |

I do hereby certify that I have completed this questionnaire completely and correctly to the best of my ability and knowledge. I certify that there are no previous illnesses or injuries that I have incurred, other than those that I have listed on the preceeding pages.

Signature: _____

Date: 06.04.03

Page 6

E-Ballot 07/17/2014

CLOUD-AR-255

## NEW ENGLAND PATRIOT
### GENERAL PHYSICAL-EXAMINATION

Name: Michael Cloud        Age: 27
Height: 5'11"        Weight: 210    Position: T-B
Pulse: 60        BP: 120/60

| N = Normal | AB= Abnormal | N | AB | Comments |
|---|---|---|---|---|
| Head: | Hair, Scalp, Masses | ✓ | | |
| Ears: | Gross Hearing to speech, Discharge, Drums | ✓ | | |
| Eyes: | Lids, Conjunctivae, Sclera EOM, Proptosis, Pupils, Peripheral Vision, Fundi Gross tension to palpation | ✓ | | |
| Nose: | Septa, Mucosa, Polyps, Sinuses | ✓ | | |
| Mouth: | Lesions, Teeth, Tongue, | ✓ | | |
| Throat: | Tonsils, Lesions, Injection | ✓ | | |
| Neck: | Adenopathy, Thyroid, Masses, Voice abnormality | ✓ | | |
| Thorax: | Shape, Expansion, Deformaties, | ✓ | | |
| Lungs: | Bronchi, Wheezes, Rales | ✓ | | |
| Heart: | PMI, Thrills, Sounds, Gallops | ✓ | | |
| Abdomen | Organ enlargement, Masses, Tenderness, Hernias, Scars | ✓ | | |
| Genitalia | Lesions, Discharge, Scrotum, Testicles, Hernias | ✓ | | |
| Rectal | Hemmorhoids, Fissures, Masses, Prostate | ✓ | | |
| Extremities | Pulses, Veins, Edema | ✓ | | |
| Neurology | Cranial nerves, Reflexes, gait | ✓ | | |
| Skin | Rash, Ecchymosis, Texture | ✓ | | |
| Mental status | Affect, Hostility, Agitation | ✓ | | |

Physician's Signature _____        Date _____

Page 7

E-Ballot 07/17/2014

CLOUD-AR-256

## NEW ENGLAND PATRIOT
### ORTHOPAEDIC EXAMINATION

Name _____     Date _____

N= Normal     AB=Abnormal

| Defects or Significant History | N | AB | COMMENTS |
|---|---|---|---|
| Neck | ✓ | | |
| Spine: Cervical | ✓ | | |
| Thoracic | | | |
| Lumbar | | | |
| Shoulder: apprehension impingement, instability | ✓ | | |
| Elbow: | ✓ | | |
| Wrist, Hand, Fingers: | ✓ | | |
| Pelvis: | ✓ | | |
| Lower Extremity: Neuro: Gait, DTR | ✓ | | |
| Quadriceps, Hamstrings | ✓ | | |
| Ankle, Foot, & Toes | ✓ | | |

| | | Right | Left | Comments |
|---|---|---|---|---|
| Knee | Extension | ✓ | | |
| | 30 deg. Flexion | | | |
| LCL | Extension | | | |
| | 30 deg. Flexion | | | |
| ACL/ PCL | Lachman | ✓ | | |
| | Anterior Drawer | | | |
| | Posterior Drawer | | | |
| | Pivot Shift | | | |
| | Joint Line Tenderness | | | |
| | Effusion | | | |
| | ROM | | | |
| Patella | Crepitus | (+ | | |
| | Apprehension | | | |

Physician's Signature _____     Date _____

Page 8

E-Ballot 07/17/2014

CLOUD-AR-257



# RELEASE OF MEDICAL RECORDS

I, hereby authorize and empower the New England Patriots Football Club and its representatives to examine, copy and/or obtain copies of any and all medical records relating to my health history, injury, complaints, tests, findings and treatments, and I also hereby authorize all physicians, hospitals, clinics, schools, colleges/universities, NFL Clubs and all other amateur and professional teams or organizations and/or facilities that may possess such records, to make them freely available to the New England Patriots Football Club representatives. I do hereby release and discharge all such institutions and persons from any and all claims by reason thereof.

_____
Player

_____
Witness

06·04·03
_____
Date

_____
Date

Page 9

E-Ballot 07/17/2014

CLOUD-AR-258



## NEW ENGLAND PATRIOTS

## AUTHORIZATION FOR RELEASE OF RECORDS OR INFORMATION

**SECTION A:** I authorize the use or disclosure of my protected health information (PHI) as described below. I hereby give my permission to Bertram Zarins, M. D. P.C., Thomas Gill, M.D., James Dineen, M.D., and Dolph Hutter, M.D. to use or disclose my PHI in the manner described herein.

Player Name: _Michael Cloud_

Address: _875 Frenchtown Rd., East Greenwich, RI 02818_

**SECTION B:**
**Personal Health Information to Be Disclosed:** Describe the personal health information you are authorizing to be used and/or disclosed:

All medical records, reports, test results, notes, and other information pertaining to football-related health conditions

**Persons/Entities Authorized to Receive and Use:** Name or specifically describe the persons, class of persons and/or entities to whom you are authorizing the individual named above to disclose the PHI described above:

The New England Patriots, their employees, agents                The National Football League

and subcontractors

**Purpose of the Disclosure:** The disclosure is being made for the following reason:

For purposes relating to my employment as a professional football player in the National Football League

**Expiration Event:** Thirty (30) days after termination or expiration of employment with the New England Patriots

**SIGNATURE:**

My signature below acknowledges that I have read this Authorization, understand my rights as described herein, and authorize release of my PHI.

Signature: _____     Date: _06.04.03_

Witness Signature: _____     Date: _6/4/03_

You are entitled to a copy of this authorization after you sign it. You have the right to revoke this authorization in writing, except to the extent that Bertram Zarins, M.D. P.C., Thomas Gill, M.D., James Dineen, M.D., and Dolph Hutter, M.D., has relied thereon. We may not condition treatment, payment, enrollment or eligibility for benefits on your execution of this authorization. Information disclosed pursuant to this authorization may be re-disclosed by the recipient(s) and no longer protected by the federal privacy law.

NEW ENGLAND PATRIOTS L.P. ▪ GILLETTE STADIUM ▪ ONE PATRIOT PLACE ▪ FOXBOROUGH, MASSACHUSETTS 02035-1388
ADMINISTRATION: 508-543-8200 ▪ TICKETS: 508-543-1776 ▪ WWW.PATRIOTS.COM



E-Ballot 07/17/2014

CLOUD-AR-259

NEW ENGLAND PATRIOTS
MEDICAL HISTORY SUMMARY

PLAYER'S NAME _Michael Cloud_

DATE: _6/17/09_                                        TEAM: _Boston College '99_

POSITION _RB_                                          YEARS IN NFL _Kansas City_

INACTIVE PROBLEMS:

Head — Concussion 1985
R Shoulder (2) — AC sprain 1999 (no time)
L foot — great toe (big toe) sprain 1995 ( 6 wks)
R Foot — midfoot sprain 10/02 ( 2 wks)

ALLERGIES: _PCN_

MEDICAL CONDITIONS: _none_

ACTIVE PROBLEMS:
Ø

SUMMARY/RECOMMENDATION:
Healthy

I have reviewed my medical summary

I certify it is complete, accurate, and up-to-date.  I have had no additional injury, illness, or surgery performed.

I have received a full explanation from the team physician (or his designate) that to continue to play professional football may result in the aggravation or deterioration of any of the above medical condition(s) during and after my employment by the club.

I fully understand the possible consequences of playing professional football with the medical condition(s) set forth above.  Nevertheless, I desire to continue to play professional football and hereby assume the risk of the matters set forth in the paragraphs above.

Date: _6/17/09_

_____
Player Signature

_____
Physician Signature
Bertram Zarins, M.D., Massachusetts General Hospital

E-Ballot 07/17/2014

CLOUD-AR-260



E-Ballot 07/17/2014



E-Ballot 07/17/2014

 **BETRO PHARMACY**

 **965 MAIN STREET**
**WALPOLE, MA 02081**
*Family owned and operated since 195.*



**508-668-0018**

PATIENT INFORMATION

FOR: CLOUD,MICHAEL
DATE: 07/16/2003
DOCTOR: DINEEN,JAMES J.
MEDICATION: ERY-TAB 333MG TAB (ABBOTT)

RX# 700854    DISPENSE# 1
PHARMACIST: ELAINE BRUNELLE
DR. PHONE: 617-724-6640
NDC# 00074-6320-13

GENERIC NAME: ERYTHROMYCIN (eh-rith-roe-MYE-sin)

COMMON USES: This medicine is a macrolide antibiotic used to treat bacterial infections. It
may also be used to prevent bacterial infections in patients with rheumatic heart disease.

HOW TO USE THIS MEDICINE: Follow the directions for using this medicine provided by your doctor.
SWALLOW WHOLE. Do not break, crush, or chew before swallowing. IF THIS MEDICINE UPSETS YOUR STOMACH,
take it with food. STORE THIS MEDICINE at room temperature, away from heat and light. TO CLEAR UP
YOUR INFECTION COMPLETELY, continue taking this medicine for the full course of treatment even if
you feel better in a few days. Do not miss any doses. IF YOU MISS A DOSE OF THIS MEDICINE, take
it as soon as possible. If it is almost time for your next dose, skip the missed dose and go back
to your regular dosing schedule. Do not take 2 doses at once.

CAUTIONS: If your symptoms do not improve within a few days or if they become worse, check with
your doctor. DO NOT TAKE SELDANE (terfenadine) OR HISMANAL (astemizole) while taking this medicine.
BEFORE YOU BEGIN TAKING ANY NEW MEDICINE, either prescription or over-the-counter, check with your
doctor or pharmacist. Caution should be used in infants since they may be more sensitive to the
effects of this drug. Though very unlikely to happen, a stomach problem called IHPS (infantile
hypertrophic pyloric stenosis) has been noted. Contact your child's doctor immediately if the
child has persistent vomiting or increased irritability. THIS MEDICINE IS EXCRETED IN BREAST
MILK. IF YOU ARE OR WILL BE BREAST-FEEDING while you are using this medicine, check with your
doctor or pharmacist to discuss the risks to your baby.

POSSIBLE SIDE EFFECTS: SIDE EFFECTS, that may go away during treatment, include abdominal cramping
or discomfort, nausea, or diarrhea. If they continue or are bothersome, check with your
doctor. CHECK WITH YOUR DOCTOR if you experience vomiting, severe stomach cramping, fever,
yellowing of skin or eyes, or darkening of urine. If you notice other effects not listed above,
contact your doctor, nurse, or pharmacist.

BEFORE USING THIS MEDICINE: Some medicines or medical conditions may interact with this
medicine. INFORM YOUR DOCTOR OR PHARMACIST of all prescription and over-the-counter medicine that
you are taking. DO NOT TAKE THIS MEDICINE if you are also taking cisapride. ADDITIONAL MONITORING
OF YOUR DOSE OR CONDITION may be needed if you are taking anticoagulants, buspirone, cyclosporine,
carbamazepine, methylprednisolone, digoxin, disopyramide, ergotamine-containing medicines,
sildenafil, tacrolimus, midazolam, rifampin, theophyllines, vincristine, or vinblastine. Inform
your doctor about any other drugs you take besides erythromycin which may affect the heart rhythm
(QTc prolongation in the EKG) including dofetilide, pimozide, quinidine, sotalol,
procainamide, and sparfloxacin among others. QTc prolongation can infrequently result in serious,
rarely fatal, irregular heartbeats. Consult your doctor or pharmacist for details. Ask for
instructions about whether you need to stop any other QTc-prolonging drugs you may be using in
order to minimize the risk of this effect. Inform your doctor of any other medical conditions,
allergies, pregnancy, or breast-feeding. Contact your doctor or pharmacist if you have any
questions or concerns about taking this medicine.

OVERDOSE: If overdose is suspected, contact your local poison control center or emergency room
immediately. Symptoms of overdose may include stomach cramping, nausea, vomiting, and diarrhea.

ADDITIONAL INFORMATION: DO NOT SHARE THIS MEDICINE with others for whom it was not
prescribed. DO NOT USE THIS MEDICINE for other health conditions. KEEP THIS MEDICINE out of the
reach of children.

Copyright 2003 Facts and Comparisons All rights reserved. Version Date Jul 2003. The information in this monograph is not intended to cover all possible uses,
directions, precautions, drug interactions, or adverse effects. This information is generalized and is not intended as specific medical advice. If you have questions about
the medicines you are taking or would like more information, check with your doctor, pharmacist, or nurse.

**BETRO PHARMACY**   **965 MAIN STREET**   **WALPOLE, MA 02081**   **508-668-0018**
Rx# 700854   07/16/2003   DINEEN,JAMES J.
CLOUD,MICHAEL
FOXBORO STADIUM
FOXBORO,MA
Amount Due: $16.39        02035 Ph# 543-7911 (X107 CASE
THIS IS YOUR RECEIPT. PLEASE RETAIN FOR TAX OR INSURANCE USE.

ERY-TAB 333MG TAB (ABBOTT)

Qty. 30    Days: 10    NDC# 00074-6320-13
Mfg: 1
Rph: EB

E-Ballot 07/17/2014



**RETRO PHARMACY**

965 MAIN STREET
WALPOLE, MA 02081
*Family owned and operated since 195.*

508-668-0018

PATIENT INFORMATION

FOR: CLOUD,MICHAEL
DATE: 08/03/2003
DOCTOR: ZARINS,BERTRAM
MEDICATION: ROXICET-5 TAB (ROXANE)

RX# 702692   DISPENSE# 1
PHARMACIST: EB
DR. PHONE# 726-3421
NDC# 00054-4650-25

(CONTINUED FROM PREVIOUS PAGE)

itching, swelling, severe dizziness, or trouble breathing. If you notice other effects not listed above, contact your doctor, nurse, or pharmacist.

BEFORE USING THIS MEDICINE: Some medicines or medical conditions may interact with this medicine. INFORM YOUR DOCTOR OR PHARMACIST of all prescription and over-the-counter medicine that you are taking. DO NOT TAKE THIS MEDICINE if you are also taking naltrexone. ADDITIONAL MONITORING OF YOUR DOSE OR CONDITION may be needed if you are taking other medicines for pain, cimetidine, isoniazid, MAO inhibitors (e.g., furazolidone, linezolid, moclobemide, phenelzine, procarbazine, selegiline, isocarboxazid, tranylcypromine), anti-seizure medicines (carbamazepine, phenobarbital, phenytoin), anticholinergic medicines or antihistamines (e.g., hydroxyzine, oxybutynin, scopolamine). ADDITIONAL MONITORING OF YOUR DOSE OR CONDITION may be needed if you are taking other medicines which cause drowsiness including medicine for sleep (e.g., sedatives), tranquilizers, anti-anxiety medicines (e.g., diazepam), psychiatric medicines (e.g., phenothiazines such as chlorpromazine, or tricyclics such as amitriptyline), muscle relaxants, or antihistamines that cause drowsiness (e.g., diphenhydramine). DO NOT START OR STOP any medicine without doctor or pharmacist approval. Inform your doctor of any other medical conditions including liver or kidney disease, difficulty urinating, alcohol use, drug dependency, heart problems (e.g., slow/irregular heartbeat, very low blood pressure), abdominal/stomach problems (e.g., gallbladder problems), lung disease (e.g., asthma, chronic obstructive pulmonary disease), seizure disorders, serious head injury or brain disease, spinal problems, low thyroid disease, adrenal gland problems, psychiatric problems, any allergies (especially to sulfites), pregnancy, or breast-feeding. USE OF THIS MEDICINE IS NOT RECOMMENDED if you have a history of severe breathing problems, or severe diarrhea. Contact your doctor or pharmacist if you have any questions or concerns about taking this medicine.

OVERDOSE: If overdose is suspected, contact your local poison control center or emergency room immediately. Symptoms of overdose may include persistent nausea/vomiting, stomach pain, slow breathing, slow heartbeat, cold/clammy skin, unusual sweating, yellowing eyes or skin, dark urine, extreme fatigue, or loss of consciousness.

ADDITIONAL INFORMATION: DO NOT SHARE THIS MEDICINE with others for whom it was not prescribed. DO NOT USE THIS MEDICINE for other health conditions. KEEP THIS MEDICINE out of the reach of children and pets.

Copyright 2001 Wolters Kluwer Health, Inc. All rights reserved. Version Date Aug 2003. The information in this monograph is not intended to cover all possible uses, directions, precautions, drug interactions, or adverse effects. This information is generalized and is not intended as specific medical advice. If you have questions about the medicines you are taking or would like more information, check with your doctor, pharmacist, or nurse.



**RETRO PHARMACY**

965 MAIN STREET
RX# 702692   08/03/2003

WALPOLE, MA 02081
ZARINS, BERTRAM

508-668-0018

CLOUD, MICHAEL
...BORG STADIUM
...BORO,MA

ROXICET-5 TAB (ROXANE)
02035 Ph# 543-7911 (X107 CASH

Qty. 50   Days: 5   NDC# 00054-4650-25
Mfg: 1

Amount Due: $22.99                          Rfh: EB

THIS IS YOUR RECEIPT. PLEASE RETAIN FOR TAX OR INSURANCE USE.

E-Ballot 07/17/2014

 

**RETRO PHARMACY**

500 MAIN STREET
WALPOLE, MA 02081
*Family owned and operated since 195.*

508-668-0018

PATIENT INFORMATION

FOR: CLOUD,MICHAEL
DATE: 08/03/2003
DOCTOR: ZARINS,BERTRAM
MEDICATION: ROXICET-5 TAB (ROXANE)

RX# 702692   DISPENSE# 1
PHARMACIST: ELAINE BRUNELLE
DR. PHONE# 726-3421
NDC# 00054-4650-25

GENERIC NAME: OXYCODONE (ox-i-KOE-done) and ACETAMINOPHEN (a-seat-a-MIN-oh-fen)

COMMON USES: This medicine is a combination of a narcotic and acetaminophen used to relieve moderate to severe pain. Narcotic pain-relievers work by binding to opioid receptors in the brain and spinal cord, and acetaminophen decreases the formation of prostaglandins, therefore reducing pain. This medicine may also be used to treat other conditions as determined by your doctor.

HOW TO USE THIS MEDICINE: Follow the directions for using this medicine provided by your doctor. Take this medicine by mouth. THIS MEDICINE MAY BE TAKEN WITH FOOD if it upsets your stomach, although doing so may decrease its effectiveness. Consult your doctor or pharmacist about alternatives for decreasing nausea (e.g., antihistamines, lying down for 1-2 hours with minimal head movement). Pain medicines work best in preventing pain before it occurs. Once the pain becomes intense, the medicine is not as effective in relieving it. STORE THIS MEDICINE at room temperature between 59 and 86 degrees F (15-30 degrees C) in a tightly-closed container, away from heat, moisture, and light. IF YOU MISS A DOSE OF THIS MEDICINE and you are taking it regularly, take it as soon as possible. If it is almost time for your next dose, skip the missed dose and go back to your regular dosing schedule. Do not take 2 doses at once.

CAUTIONS: DO NOT TAKE THIS MEDICINE IF YOU HAVE HAD A SEVERE ALLERGIC REACTION to codeine, hydrocodone, dihydrocodeine, or oxycodone (such as Tylox, Tylenol with Codeine, Vicodin). A severe allergic reaction includes a severe rash, hives, breathing difficulties, or dizziness. If you have a question about whether you are allergic to this medicine or if a certain medicine contains codeine, hydrocodone, dihydrocodeine, or oxycodone, contact your doctor or pharmacist. DO NOT EXCEED THE RECOMMENDED DOSE or take this medicine for longer than prescribed without checking with your doctor. Exceeding the recommended dose or taking this medicine for longer than prescribed may be habit-forming. If using this medicine for an extended period of time, DO NOT SUDDENLY STOP taking this medicine without your doctor's approval. When using for an extended period, this medicine may not work as well and may require different dosing. Talk with your doctor if this medicine stops working well. THIS MEDICINE MAY CAUSE drowsiness or dizziness. Using this medicine alone, with other medicines, or with alcohol may lessen your ability to drive or to perform other potentially dangerous tasks. AVOID ALCOHOLIC BEVERAGES while taking this medicine. To minimize dizziness or lightheadedness, get up slowly when rising from a seated or lying position. To prevent constipation, maintain a diet adequate in fiber, drink plenty of water, and exercise. If you become constipated while using this medicine talk with your doctor or pharmacist. This medicine contains acetaminophen. Adults should not take more than a total of 4 grams of acetaminophen per day (3 grams per day if you have liver disease). Consult your doctor or pharmacist for more information. Acetaminophen may cause liver damage. If you drink alcohol on a daily basis, do not take this medicine without first discussing it with your doctor. Alcohol use combined with acetaminophen may increase your risk for liver damage (symptoms include yellowing eyes or skin, stomach pain, dark urine). BEFORE YOU BEGIN TAKING ANY NEW MEDICINE, either prescription or over-the-counter, check with your doctor or pharmacist This includes other pain relievers, cough-and-cold medicines, or allergy medicines. These medicines may contain additional acetaminophen. Taking too much acetaminophen can be harmful. Ask your pharmacist about the safe use of these products. CAUTION IS ADVISED WHEN USING THIS MEDICINE IN THE ELDERLY because they may be more sensitive to the effects of the medicine, especially the possible decreased breathing and drowsiness effects. FOR WOMEN: IF YOU PLAN ON BECOMING PREGNANT, discuss with your doctor the benefits and risks of using this medicine during pregnancy. THIS MEDICINE IS EXCRETED IN BREAST MILK. IF YOU ARE OR WILL BE BREAST-FEEDING while you are using this medicine, check with your doctor to discuss the risks to your baby.

POSSIBLE SIDE EFFECTS: SIDE EFFECTS, that may go away during treatment, include nausea, vomiting, constipation, lightheadedness, dizziness, drowsiness, flushing, vision changes, or mental/mood changes. If they continue or are bothersome, check with your doctor. CONTACT YOUR DOCTOR IMMEDIATELY if you experience slow/irregular breathing, slow/irregular heartbeat, or a change in the amount of urine. AN ALLERGIC REACTION to this medicine is unlikely, but seek immediate medical attention if it occurs. Symptoms of an allergic reaction include rash,

(CONTINUED ON NEXT PAGE)

Copyright 2003 Wolters Kluwer Health, Inc. All rights reserved. Version Date Aug 2003. The information in this monograph is not intended to cover all possible uses, directions, precautions, drug interactions, or adverse effects. This information is generalized and is not intended as specific medical advice. If you have questions about the medicines you are taking or would like more information, check with your doctor, pharmacist, or nurse.

E-Ballot 07/17/2014

CLOUD-AR-265

| Dates | Patriots: Physical Therapy Appointments | | | | TRAINBOSTON |
|---|---|---|---|---|---|
| 9/3/2003 | Mike Cloud | Tim | | | |
| 9/4/2003 | Mike Cloud | Tim | | | |
| 9/8/2003 | Mike Cloud | BJ | | | |
| 9/9/2003 | Mike Cloud | BJ | | | |
| 9/10/2003 | Mike Cloud | BJ | | | |
| 9/10/2003 | Mike Cloud | Tim | | | |
| 9/11/2003 | Mike Cloud | BJ | | | |
| 9/11/2003 | Mike Cloud | Tim | | | |
| 9/12/2003 | Mike Cloud | Tim | | | |
| 9/15/2003 | Mike Cloud | BJ | | | |
| 9/16/2003 | Mike Cloud | Tim | | | |
| 9/18/2003 | Mike Cloud | BJ | | | |
| 9/18/2003 | Mike Cloud | Tim | | | |
| 9/22/2003 | Mike Cloud | Tim | | | |
| 9/24/2003 | Mike Cloud | BJ | | | |
| 9/25/2003 | Mike Cloud | BJ | | | |
| 9/26/2003 | Mike Cloud | BJ | | | |

E-Ballot 07/17/2014

CLOUD-AR-266

# TRAIN Boston

Tax ID 04-3252820

34 Washington St
Wellesley Hills, MA  02481  ID# 04-3252820
781-263-9993 fax 781-263-9996



## INVOICE

| Customer | | |
|---|---|---|
| Name | Mike Cloud | |
| Address | c/o N.E. Patriots | |
| City | Foxboro | State MA   ZIP 02035 |
| Diagnosis | | |

| Date | 9/10/2003 |
|---|---|
| | Tim Brewster |
| | MS PT CSCS |
| | Lic. # MA10218 |

| Qty | Description | Unit Price | TOTAL |
|---|---|---|---|
| | 9/2/03 | | |
| 2 | 97110 THER-EX x2 | $35.00 | $70.00 |
| 1 | 97530 PROM | $35.00 | $35.00 |
| 1 | 97140 JT. MOB | $35.00 | $35.00 |
| | 9/4/03 | | |
| 2 | 97110 THER-EX x2 | $35.00 | $70.00 |
| 1 | 97530 PROM | $35.00 | $35.00 |
| 1 | 97140 JT. MOB | $35.00 | $35.00 |
| | 9/8/03 | | |
| 2 | 97110 THER-EX x2 | $35.00 | $70.00 |
| 1 | 97530 PROM | $35.00 | $35.00 |
| 1 | 97140 JT. MOB | $35.00 | $35.00 |
| | 9/9/03 | | |
| 2 | 97110 THER-EX x2 | $35.00 | $70.00 |
| 1 | 97530 PROM | $35.00 | $35.00 |
| 1 | 97140 JT. MOB | $35.00 | $35.00 |
| | | SubTotal | $560.00 |

| Payment Details | |
|---|---|
| Cash | |
| Check | |
| Credit Card | |
| Name | |
| CC # | |
| Expires | |

| | | |
|---|---|---|
| Taxes | State | $0.00 |
| | TOTAL | $560.00 |

Office Use Only

*Thank You for Your Prompt Payment!*

*Experience the TRAIN Boston Advantage!*

CLOUD-AR-267

# TRAIN Boston

34 Washington St
Wellesley Hills, MA 02481 ID# 04-3252820
781-263-9993 fax 781-263-9996

Tax ID 04-3252820

## INVOICE

TRAIN BOSTON

**Customer**

| Name | Mike Cloud | | | | Date | 9/15/2003 |
| Address | c/o N.E. Patriots | | | | | Tim Brewster |
| City | Foxboro | State MA | ZIP 02035 | | | MS PT CSCS |
| Diagnosis | | | | | | Lic. # MA10218 |

| Qty | Description | Unit Price | TOTAL |
|---|---|---|---|
| | 9/10/03 | | |
| 2 | 97110 THER-EX x2 | $35.00 | $70.00 |
| 1 | 97530 PROM | $35.00 | $35.00 |
| 1 | 97140 JT. MOB | $35.00 | $35.00 |
| | 9/11/03 | | |
| 2 | 97110 THER-EX x2 | $35.00 | $70.00 |
| 1 | 97530 PROM | $35.00 | $35.00 |
| 1 | 97140 JT. MOB | $35.00 | $35.00 |
| | 9/12/03 | | |
| 2 | 97110 THER-EX x2 | $35.00 | $70.00 |
| 1 | 97530 PROM | $35.00 | $35.00 |
| 1 | 97140 JT. MOB | $35.00 | $35.00 |
| | 9/15/03 | | |
| 2 | 97110 THER-EX x2 | $35.00 | $70.00 |
| 1 | 97530 PROM | $35.00 | $35.00 |
| 1 | 97140 JT. MOB | $35.00 | $35.00 |

| | | | SubTotal | $560.00 |
|---|---|---|---|---|
| **Payment Details** | | Taxes | State | $0.00 |
| Cash | | | | |
| Check | | | TOTAL | $560.00 |
| Credit Card | | | | |

Name
CC #
Expires

Office Use Only

*Thank You for Your Prompt Payment!*

*Experience the TRAIN Boston Advantage!*

34 Washington Street Wellesley MA 02481 781-263-9993 781-263-9996 trainboston.com

E-Ballot 07/17/2014

CLOUD-AR-268

# TRAIN Boston

34 Washington St
Wellesley Hills, MA  02481  ID# 04-3252820
781-263-9993 fax 781-263-9996

Tax ID 04-3252820

TRAIN BOSTON

*INVOICE*

### Customer

| | | | | | |
|---|---|---|---|---|---|
| Name | Mike Cloud | | | Date | 9/15/2003 |
| Address | c/o N.E. Patriots | | | | Tim Brewster |
| City | Foxboro | State MA | ZIP 02035 | | MS PT CSCS |
| Diagnosis | | | | | Lic. # MA10218 |

| Qty | Description | Unit Price | TOTAL |
|---|---|---|---|
| | 9/16/03 | | |
| 2 | 97110 THER-EX  x2 | $35.00 | $70.00 |
| 1 | 97530 PROM | $35.00 | $35.00 |
| 1 | 97140 JT. MOB | $35.00 | $35.00 |
| | 9/18/03 | | |
| 2 | 97110 THER-EX  x2 | $35.00 | $70.00 |
| 1 | 97530 PROM | $35.00 | $35.00 |
| 1 | 97140 JT. MOB | $35.00 | $35.00 |
| | 9/22/03 | | |
| 2 | 97110 THER-EX  x2 | $35.00 | $70.00 |
| 1 | 97530 PROM | $35.00 | $35.00 |
| 1 | 97140 JT. MOB | $35.00 | $35.00 |
| | 9/24/03 | | |
| 2 | 97110 THER-EX  x2 | $35.00 | $70.00 |
| 1 | 97530 PROM | $35.00 | $35.00 |
| 1 | 97140 JT. MOB | $35.00 | $35.00 |
| | | SubTotal | $560.00 |

| Payment Details | | | |
|---|---|---|---|
| Cash | | | |
| Check | Taxes | State | $0.00 |
| Credit Card | | | |
| Name | | TOTAL | $560.00 |
| CC # | | | |
| Expires | | Office Use Only | |

*Thank You for Your Prompt Payment!*

*Experience the TRAIN Boston Advantage!*

CLOUD-AR-269

# TRAIN Boston

34 Washington St
Wellesley Hills, MA  02481  ID# 04-3252820
781-263-9993 fax 781-263-9996

Tax ID 04-3252820

**INVOICE**

TRAIN BOSTON

| Customer | | Date | 10/5/2003 |
|---|---|---|---|
| Name | Mike Cloud | | Tim Brewster |
| Address | c/o N.E. Patriots | | MS PT CSCS |
| City | Foxboro      State MA      ZIP 02035 | | Lic. # MA10218 |
| Diagnosis | | | |

| Qty | Description | Unit Price | TOTAL |
|---|---|---|---|
| | 9/25/03 | | |
| 2 | 97110 THER-EX x2 | $35.00 | $70.00 |
| 1 | 97530 PROM | $35.00 | $35.00 |
| 1 | 97140 JT. MOB | $35.00 | $35.00 |
| | 9/26/03 | | |
| 2 | 97110 THER-EX x2 | $35.00 | $70.00 |
| 1 | 97530 PROM | $35.00 | $35.00 |
| 1 | 97140 JT. MOB | $35.00 | $35.00 |

| | | SubTotal | $280.00 |
|---|---|---|---|
| **Payment Details** | | | |
| Cash | Texas | State | $0.00 |
| Check | | | |
| Credit Card | | TOTAL | $280.00 |
| Name | | | |
| CC # | | Office Use Only | |
| Expires | | | |

*Thank You for Your Prompt Payment!*

*Experience the TRAIN Boston Advantage!*

34 Washington St · Wellesley MA 02481 · 781-263-9993 · 781-263-9996 · trainboston.com

E-Ballot 07/17/2014

CLOUD-AR-270

# TRAIN Boston

Tax ID 04-3252820

34 Washington St
Wellesley Hills, MA  02481  ID# 04-3252820
781-263-9993 fax 781-263-9996

*TRAIN BOSTON*

*INVOICE*

**Customer**

| | | | | | |
|---|---|---|---|---|---|
| Name | Mike Cloud | | | Date | 10/5/2003 |
| Address | c/o N.E. Patriots | | | | Tim Brewster |
| City | Foxboro | State MA | ZIP 02035 | | MS PT CSCS |
| Diagnosis | | | | | Lic. # MA10218 |

| Qty | Description | Unit Price | TOTAL |
|---|---|---|---|
| | 9/25/03 | | |
| 2 | 97110 THER-EX x2 | $35.00 | $70.00 |
| 1 | 97530 PROM | $35.00 | $35.00 |
| 1 | 97140 JT. MOB | $35.00 | $35.00 |
| | 9/26/03 | | |
| 2 | 97110 THER-EX x2 | $35.00 | $70.00 |
| 1 | 97530 PROM | $35.00 | $35.00 |
| 1 | 97140 JT. MOB | $35.00 | $35.00 |

| | | | |
|---|---|---|---|
| | | SubTotal | $280.00 |

**Payment Details**

Cash
Check
Credit Card

Name
CC #
Expires

| Taxes | State | $0.00 |
|---|---|---|
| | TOTAL | $280.00 |

Office Use Only

*Thank You for Your Prompt Payment!*

*Experience the TRAIN Boston Advantage!*

34 Washington Street  Wellesley MA 02481 / 781-263-9993 / 781-263-9996  trainboston.com

E-Ballot 07/17/2014

CLOUD-AR-271

# TRAIN Boston

34 Washington St
Wellesley Hills, MA  02481  ID# 04-3252820
781-263-9993 fax 781-263-9996

Tax ID 04-3252820

TRAIN BOSTON

## INVOICE

**Customer**

| Name | Mike Cloud |
| Address | c/o N.E. Patriots |
| City | Foxboro |
| Diagnosis | |

| | |
| State MA | ZIP 02035 |

| Date | 9/15/2003 |
| | Tim Brewster |
| | MS PT CSCS |
| | Lic. # MA10218 |

| Qty | Description | Unit Price | TOTAL |
|---|---|---|---|
| | 9/16/03 | | |
| 2 | 97110 THER-EX x2 | $35.00 | $70.00 |
| 1 | 97530 PROM | $35.00 | $35.00 |
| 1 | 97140 JT. MOB | $35.00 | $35.00 |
| | 9/18/03 | | |
| 2 | 97110 THER-EX x2 | $35.00 | $70.00 |
| 1 | 97530 PROM | $35.00 | $35.00 |
| 1 | 97140 JT. MOB | $35.00 | $35.00 |
| | 9/22/03 | | |
| 2 | 97110 THER-EX x2 | $35.00 | $70.00 |
| 1 | 97530 PROM | $35.00 | $35.00 |
| 1 | 97140 JT. MOB | $35.00 | $35.00 |
| | 9/24/03 | | |
| 2 | 97110 THER-EX x2 | $35.00 | $70.00 |
| 1 | 97530 PROM | $35.00 | $35.00 |
| 1 | 97140 JT. MOB | $35.00 | $35.00 |

| | | | |
|---|---|---|---|
| | | SubTotal | $560.00 |
| Taxes | State | | $0.00 |
| | | TOTAL | $560.00 |

**Payment Details**

Cash
Check
Credit Card

Name
CC #
Expires

Office Use Only

*Thank You for Your Prompt Payment!*

*Experience the TRAIN Boston Advantage!*

34 Washington Street Wellesley MA 02481 P 781.263.9993 F 781.263.9996 traintoboston.com

E-Ballot 07/17/2014

CLOUD-AR-272

# TRAIN Boston

34 Washington St
Wellesley Hills, MA  02481  ID# 04-3252820
781-263-9993 fax 781-263-9996

Tax ID 04-3252820

**TRAIN BOSTON**

## INVOICE

| Customer | | | | | Date | 9/10/2003 |
|----------|--|--|--|--|------|-----------|
| Name | Mike Cloud | | | | | Tim Brewster |
| Address | c/o N.E. Patriots | | | | | MS PT CSCS |
| City | Foxboro | State MA | ZIP 02035 | | | Lic. # MA10218 |
| Diagnosis | | | | | | |

| Qty | Description | Unit Price | TOTAL |
|-----|-------------|-----------|-------|
| | 9/2/03 | | |
| 2 | 97110 THER-EX x2 | $35.00 | $70.00 |
| 1 | 97530 PROM | $35.00 | $35.00 |
| 1 | 97140 JT. MOB | $35.00 | $35.00 |
| | 9/4/03 | | |
| 2 | 97110 THER-EX x2 | $35.00 | $70.00 |
| 1 | 97530 PROM | $35.00 | $35.00 |
| 1 | 97140 JT. MOB | $35.00 | $35.00 |
| | 9/8/03 | | |
| 2 | 97110 THER-EX x2 | $35.00 | $70.00 |
| 1 | 97530 PROM | $35.00 | $35.00 |
| 1 | 97140 JT. MOB | $35.00 | $35.00 |
| | 9/9/03 | | |
| 2 | 97110 THER-EX x2 | $35.00 | $70.00 |
| 1 | 97530 PROM | $35.00 | $35.00 |
| 1 | 97140 JT. MOB | $35.00 | $35.00 |
| | | SubTotal | $560.00 |

| Payment Details | | | | |
|-----------------|--|--|--|--|
| Cash | | Taxes | State | $0.00 |
| Check | | | | |
| Credit Card | | | TOTAL | $560.00 |

Name
CC #
Expires

Office Use Only

*Thank You for Your Prompt Payment!*

*Experience the TRAIN Boston Advantage!*

E-Ballot 07/17/2014

CLOUD-AR-273

NEW ENGLAND PATRIOTS
MEDICAL SUMMARY – CONFIDENTIAL
UPDATED  7/19/04

CLOUD, MIKE
#21 RB
BOSTON COLLEGE

INACTIVE PROBLEMS
R LEG – Contusion lateral leg 7/25/03. Surgery 7/31/03 – release anterior and lateral compartments with debridement of necrotic peroneus longus muscle and tenodesis.

ALLERGIES - none
MEDICATION - none
MEDICAL CONDITIONS - none
ACTIVE PROBLEMS

R hand — index finger tip 3/25/04

E-Ballot 07/17/2014

CLOUD-AR-274

## 🌐 Transactions

---

┌─ **Cloud, Michael** ─────────────────────────────
| **Position:** | RB |
| **College:** | Boston College |
| **Current Club:** | |
| **Current Status:** | Free Agent |

| Date | Start Club | Result Club | Potential Club | Initial Status | Result Status | Description | Commen |
|------|-----------|-------------|----------------|----------------|---------------|-------------|--------|
| 6/2/2006 | NYG | | | R/UFA | Free Agent | Not Asked to Re-Sign | |
| 3/10/2006 | NYG | NYG | | R/Cont. Expired | R/UFA | Reserve, Unrestricted Free Agent | |
| 3/10/2006 | NYG | NYG | | Active | R/Cont. Expired | Contract Expired | |
| 12/27/2005 | | NYG | | Free Agent | Active | Free Agent Signing | |
| 12/14/2005 | NE | | | Waivers/No Rec. | Free Agent | Terminated Via Waivers, all contracts | |
| 12/13/2005 | NE | NE | | Active | Waivers/No Rec. | Waived, No Recall | |
| 12/2/2005 | | NE | | Free Agent | Active | Free Agent Signing | |
| 11/30/2005 | NE | | | Waivers/No Rec. | Free Agent | Terminated Via Waivers, all contracts | |
| 11/29/2005 | NE | NE | | Active | Waivers/No Rec. | Waived, No Recall | |
| 11/4/2005 | | NE | | Free Agent | Active | Free Agent Signing | |
| 11/2/2005 | | | NE | Free Agent | Free Agent | Tryout | |
| 9/3/2005 | NYG | | | Active | Free Agent | Terminated, Vested Veteran, all contracts | |
| 3/15/2005 | NYG | NYG | | R/UFA | Active | Unrestricted Free Agent Signing | |
| 3/1/2005 | NYG | NYG | | R/Cont. Expired | R/UFA | Reserve, Unrestricted Free Agent | |
| 3/1/2005 | NYG | NYG | | Active | R/Cont. Expired | Contract Expired | |
| 12/15/2004 | NYG | NYG | | Inactive | Active | Activated, from Inactive | |
| 12/12/2004 | NYG | NYG | | Active | Inactive | De-Activated | |
| 12/8/2004 | NYG | NYG | | Inactive | Active | Activated, from Inactive | |
| 12/5/2004 | NYG | NYG | | Active | Inactive | De-Activated | |
| 11/24/2004 | NYG | NYG | | Inactive | Active | Activated, from Inactive | |
| 11/21/2004 | NYG | NYG | | Active | Inactive | De-Activated | |
| 11/17/2004 | NYG | NYG | | Inactive | Active | Activated, from Inactive | |
| 11/14/2004 | NYG | NYG | | Active | Inactive | De-Activated | |
| 9/22/2004 | NYG | NYG | | Inactive | Active | Activated, from Inactive | |
| 9/19/2004 | NYG | NYG | | Active | Inactive | De-Activated | |
| 9/15/2004 | NYG | NYG | | Inactive | Active | Activated, from Inactive | |
| 9/12/2004 | NYG | NYG | | Active | Inactive | De-Activated | |
| 9/9/2004 | | NYG | | Free Agent | Active | Free Agent Signing | |
| 9/8/2004 | NYG | | | Active | Free Agent | Terminated, Vested Veteran, all contracts | |
| 9/7/2004 | | NYG | | Free Agent | Active | Free Agent Signing | |
| 9/7/2004 | | | NYG | Free Agent | Free Agent | Visit | |
| 9/3/2004 | NE | | | Active | Free Agent | Terminated, Vested Veteran, all contracts | |
| 4/5/2004 | NE | NE | | R/UFA; ROFR | Active | Unrestricted Free Agent Signing | |
| 3/2/2004 | NE | NE | | R/Cont. Expired | R/UFA; ROFR | Unrestricted Free Agent; ROFR | |
| 3/2/2004 | NE | NE | | Active | R/Cont. Expired | Contract Expired | |
| 2/4/2004 | NE | NE | | Inactive | Active | Activated, from Inactive | |
| 2/1/2004 | NE | NE | | Active | Inactive | De-Activated | |
| 1/21/2004 | NE | NE | | Inactive | Active | Activated, from Inactive | |
| 1/18/2004 | NE | NE | | Active | Inactive | De-Activated | |
| 1/14/2004 | NE | NE | | Inactive | Active | Activated, from Inactive | |
| 1/10/2004 | NE | NE | | Active | Inactive | De-Activated | |
| 12/30/2003 | NE | NE | | Inactive | Active | Activated, from Inactive | |
| 12/27/2003 | NE | NE | | Active | Inactive | De-Activated | |
| 12/24/2003 | NE | NE | | Inactive | Active | Activated, from Inactive | |
| 12/20/2003 | NE | NE | | Active | Inactive | De-Activated | |

E-Ballot 07/17/2014

CLOUD-AR-275

| | | | | | |
|---|---|---|---|---|---|
| 12/17/2003 | NE | NE | Inactive | Active | Activated, from Inactive |
| 12/14/2003 | NE | NE | Active | Inactive | De-Activated |
| 12/10/2003 | NE | NE | Inactive | Active | Activated, from Inactive |
| 12/7/2003 | NE | NE | Active | Inactive | De-Activated |
| 11/19/2003 | NE | NE | Inactive | Active | Activated, from Inactive |
| 11/16/2003 | NE | NE | Active | Inactive | De-Activated |
| 11/5/2003 | NE | NE | Inactive | Active | Activated, from Inactive |
| 11/3/2003 | NE | NE | Active | Inactive | De-Activated |
| 10/29/2003 | NE | NE | Inactive | Active | Activated, from Inactive |
| 10/26/2003 | NE | NE | Active | Inactive | De-Activated |
| 10/4/2003 | NE | NE | Ex/Comm. Perm. | Active | Counts on Active List |
| 9/29/2003 | NE | NE | Ex/Comm. Perm. | Ex/Comm. Perm. | Exempt/Commissioner Permission |
| 9/29/2003 | NE | NE | R/Susp. By Comm | Ex/Comm. Perm. | Suspension Lifted by Commissioner |
| 8/31/2003 | NE | NE | Active | R/Susp. By Comm | Reserve/Suspended By Commissioner |
| 7/25/2003 | NE | NE | Active/NFIN | Active | Passed Physical |
| 7/23/2003 | NE | NE | Active | Active/NFIN | Declared Non-Football Injury |
| 6/23/2003 | | NE | Free Agent | Active | Free Agent Signing |
| 6/2/2003 | KC | | R/UFA | Free Agent | Not Asked to Re-Sign |
| 2/27/2003 | KC | KC | R/Cont. Expired | R/UFA | Reserve, Unrestricted Free Agent |
| 2/27/2003 | KC | KC | Active | R/Cont. Expired | Contract Expired |
| 10/30/2002 | KC | KC | Inactive | Active | Activated, from Inactive |
| 10/27/2002 | KC | KC | Active | Inactive | De-Activated |
| 10/23/2002 | KC | KC | Inactive | Active | Activated, from Inactive |
| 10/20/2002 | KC | KC | Active | Inactive | De-Activated |
| 10/3/2001 | KC | KC | Inactive | Active | Activated, from Inactive |
| 9/30/2001 | KC | KC | Active | Inactive | De-Activated |
| 4/11/2001 | KC | KC | Active | Active | Signed, Renegotiated Contract (pd-->pd) |
| 10/27/1999 | KC | KC | Inactive | Active | Activated, from Inactive |
| 10/20/1999 | KC | KC | Active | Inactive | De-Activated |
| 10/13/1999 | KC | KC | Inactive | Active | Activated, from Inactive |
| 10/10/1999 | KC | KC | Active | Inactive | De-Activated |
| 9/29/1999 | KC | KC | Inactive | Active | Activated, from Inactive |
| 9/26/1999 | KC | KC | Active | Inactive | De-Activated |
| 9/22/1999 | KC | KC | Inactive | Active | Activated, from Inactive |
| 9/17/1999 | KC | KC | Active | Inactive | De-Activated |
| 9/15/1999 | KC | KC | Inactive | Active | Activated, from Inactive |
| 9/10/1999 | KC | KC | Active | Inactive | De-Activated |
| 7/31/1999 | KC | KC | R/Drft; Unsign | Active | Selection List Signing |
| 4/17/1999 | | KC | Free Agent | R/Drft; Unsign | Reserve/Selection List |

E-Ballot 07/17/2014  DICC JUL 0 9 2009   DICC SEP 2 4 2009   RCM MAY 1 3 2010

CLOUD-AR-276

| From: | Reynolds, Patrick |
|---|---|
| To: | Paul Scott; Adora Williams; Anillo, Alvaro (AIA@groom.com); Chris Smith; Ell, Doug (dwe@groom.com); Dr. Allen Jackson; Maroz, Natallia (nmaroz@groom.com); Sam Vincent |
| Subject: | RE: Delayed Cases |
| Date: | Wednesday, July 23, 2014 2:03:45 PM |
| Attachments: | 071414DICCDecisionSheet.xlsx |
| | 071714DICCDecisionSheet.xlsx |

Paul, sorry for the delay.  My decisions are attached.

**From:** Paul Scott [mailto:pscott@nflpb.org]
**Sent:** Tuesday, July 22, 2014 11:35 AM
**To:** Adora Williams; Alvaro Anillo; Chris Smith; Doug Ell; Dr. Allen Jackson; Natallia Maroz; Reynolds, Patrick; Sam Vincent
**Subject:** Delayed Cases

Good morning all—

Just a reminder that we have not received the decisions for the 7/14 or 7/17 e-ballots.  The 7/21 eballots were posted yesterday.

**REDACTED** was presented on the 7/14 e-ballot and is at 43 days today and **REDACTED** was presented on the 7/21 e-ballot and is at 50 days as of today.

Please let me know if you have any problems or questions.

Paul

**Paul Scott**
**Director of Disability Benefits**

**800-638-3186 [Plan Office]**
**443-769-1411 [Direct]**
**410-783-0041 [Fax]**

**200 St. Paul Place**
**Suite 2420**
**Baltimore, MD  21202**

**www.mygoalline.com**





Notice: This message is intended only for use by the person or entity to which it is addressed. Because it may contain confidential information intended solely for the addressee, you are notified that any disclosing, copying, downloading, distr buting, or retaining of this message, and any attached files, is prohibited and may be a violation of state or federal law. If you received this message in error, please notify the sender by reply mail, and delete the message and all attached files.

CLOUD-AR-278

**7/17/2014 E-Ballot**

| | Disability Applications | Case Type | # of Days Pending (as of July 17, 2014) | # Pages of Medical Records | Notes | Decision |
|---|---|---|---|---|---|---|
| 1 | REDACTED | | | | | |
| 2 | Cloud, Michael | T&P (SSA) | 17 days | 164 pages | 15 years = 3/31/2021 | T&P (SSA) - Inactive A. eff. 5/1/2014 |
| 3 | REDACTED | | | | | |
| 4 | | | | | | |
| 5 | | | | | | |
| | Miscellaneous Benefits | Case Type | # of Days Pending (as of July 17, 2014) | # Pages of Medical Records | Notes | Decision |
| 1 | REDACTED | | | | | |

**From:**      Smith, Chris
**To:**        Reynolds, Patrick; Paul Scott; Williams, Adora; Anillo, Alvaro (AIA@groom.com); Ell, Doug (dwe@groom.com);
               Dr. Allen Jackson; Maroz, Natallia (nmaroz@groom.com); Sam Vincent
**Subject:**   RE: Delayed Cases
**Date:**      Wednesday, July 23, 2014 2:09:54 PM

Hello everyone.  I agree with Patrick on all except <span style="background:red;color:black">REDACTED</span>.  I vote to approve him Inactive A: 4/1/14.

---

Chris Smith
Assistant Director
Benefits



1133 20th Street, NW
Washington, DC 20036
(P) (202) 756-9152
(F) (202) 756-9312
(M) (202) 549-8488
**NFLPLAYERS.COM**

---

**From:** Reynolds, Patrick [mailto:Patrick.Reynolds@NFL.com]
**Sent:** Wednesday, July 23, 2014 2:04 PM
**To:** Paul Scott; Williams, Adora; Alvaro Anillo; Smith, Chris; Doug Ell; Dr. Allen Jackson; Natallia Maroz; Sam Vincent
**Subject:** RE: Delayed Cases

Paul, sorry for the delay.  My decisions are attached.

---

**From:** Paul Scott [mailto:pscott@nflpb.org]
**Sent:** Tuesday, July 22, 2014 11:35 AM
**To:** Adora Williams; Alvaro Anillo; Chris Smith; Doug Ell; Dr. Allen Jackson; Natallia Maroz; Reynolds, Patrick; Sam Vincent
**Subject:** Delayed Cases

Good morning all—

Just a reminder that we have not received the decisions for the 7/14 or 7/17 e-ballots.  The 7/21 eballots were posted yesterday.

<span style="background:red;color:red">REDACTED</span> was presented on the 7/14 e-ballot and is at 43 days today and <span style="background:black;color:red">REDACTED</span> <span style="background:black;color:red">REDACTED</span> was presented on the 7/21 e-ballot and is at 50 days as of today.

CLOUD-AR-280

Please let me know if you have any problems or questions.

Paul

**Paul Scott**
**Director of Disability Benefits**

**800-638-3186 [Plan Office]**
**443-769-1411 [Direct]**
**410-783-0041 [Fax]**

**200 St. Paul Place**
**Suite 2420**
**Baltimore, MD  21202**

**www.mygoalline.com**



Notice: This message is intended only for use by the person or entity to which it is addressed. Because it may contain confidential information intended solely for the addressee, you are notified that any disclosing, copying, downloading, distr buting, or retaining of this message, and any attached files, is prohibited and may be a violation of state or federal law. If you received this message in error, notify the sender by reply mail, and delete the message and all attached files.

This message (and any associated files) is intended only for the use of the individual or entity to which it is addressed and may contain information that is confidential, subject to copyright or constitutes a trade secret. If you are not the intended recipient you are hereby notified that any dissemination, copying or distribution of this message, or files associated with this message, is strictly prohibited. If you have received this message in error, please notify administrator@nflplayers.com immediately and delete it from your computer. Messages sent electronically to and from this organization may be monitored. Internet communications cannot be guaranteed to be secure or error-free as information could be intercepted, corrupted, lost, destroyed, arrive late or incomplete, or contain viruses. Therefore, we do not accept responsibility for any errors or omissions that are present in this message, or any attachment, that have arisen as a result of e-mail transmission. If verification is required, please request a hard-copy version. Any views or opinions presented are solely those of the author and do not necessarily represent those of the company.





**Bert Bell/Pete Rozelle NFL Player Retirement Plan**

**200 Saint Paul Street • Suite 2420 • Baltimore, Maryland 21202-2008**
**410-685-5069 • 800-638-3186 • Fax 410-783-0041**

VIA FEDERAL EXPRESS

July 23, 2014

Mr. Michael Cloud
1001 Starlight Place
Rockwall, TX 75087

**Re:   Application for Total and Permanent Disability Benefits**

Dear Mr. Cloud:

On July 23, 2014 the Disability Initial Claims Committee ("Committee") of the Bert Bell/Pete Rozelle NFL Player Retirement Plan ("Retirement Plan") considered your application for total and permanent disability ("T&P") benefits.   We are pleased to inform you that the Committee awarded you T&P benefits in the Inactive A category, with an effective date of May 1, 2014.   By virtue of this award, you are entitled to receive a combined monthly benefit of $10,000 from the Retirement Plan and the NFL Player Supplemental Disability Plan ("Disability Plan"). This letter describes the Committee's decision.

**Relevant Plan Provisions**

Plan section 5.1 states that "An Eligible Player whose application for total and permanent disability ("T&P") benefits is received by this Plan on or after September 1, 2011, who is determined by the Retirement Board or the Disability Initial Claims Committee to be totally and permanently disabled in accordance with Section 5.2, and who satisfies the other requirements of this Article 5, will receive a monthly T&P benefit in the amount described in Section 5.5 for the months described in Sections 5.8 and 5.9.   For purposes of this Article, an Eligible Player is a Vested Inactive Player or an Active Player."

Plan section 5.2 states that a Player "who is not receiving monthly retirement benefits under Article 4 or Article 4A will be deemed to be totally and permanently disabled if the Retirement Board or the Disability Initial Claims Committee finds (1) that he has become totally disabled to the extent that he is substantially prevented from or substantially unable to engage in any occupation or employment for remuneration or profit, but expressly excluding any disability suffered while in the military service of any country, and (2) that such condition is permanent."

Plan section 5.2(b) states, in relevant part, that an "An Eligible Player who is not receiving monthly pension benefits under Article 4 or 4A, who has been determined by the Social Security Administration to be eligible for disability benefits under either the Social Security

**CLOUD-AR-282**

disability insurance program or Supplemental Security Income program, and who is still receiving such benefits at the time he applies, will be deemed to be totally and permanently disabled, unless four voting members of the Retirement Board determine that such Player is receiving such benefits fraudulently and is not totally and permanently disabled."

Plan section 5.3 states that:

"Each Player who is determined to be totally and permanently disabled in accordance with Section 5.2 will be awarded benefits in one of the four categories below.

(a)  Active Football.   Subject to the special rules of Section 5.4, Players will qualify for benefits in this category if the disability(ies) results from League football activities, arises while the Player is an Active Player, and causes the Player to be totally and permanently disabled "shortly after" the disability(ies) first arises.

(b)  Active Nonfootball.   Subject to the special rules of Section 5.4, a Player will qualify for benefits in this category if the disability(ies) does not result from League football activities, but does arise while the Player is an Active Player and does cause the Player to be totally and permanently disabled "shortly after" the disability(ies) first arises.

(c)  Inactive A.   Subject to the special rules of Section 5.4, a Player will qualify for benefits in this category if a written application for T&P benefits or similar letter that began the administrative process that resulted in the award of T&P benefits was received within fifteen (15) years after the end of the Player's last Credited Season.   This category does not require that the disability arise out of League football activities.

(d)  Inactive B.   All Players who are determined to be totally and permanently disabled in accordance with Section 5.2 but who do not qualify for categories (a), (b) or (c) above will be awarded benefits in this category.   This category does not require that the disability arise out of League football activities.

(e)  "Shortly After" Defined.   A Player who becomes totally and permanently disabled no later than six months after a disability(ies) first arises will be conclusively deemed to have become totally and permanently disabled "shortly after" the disability(ies) first arises, as that phrase is used in subsections (a) and (b) above, and a Player who becomes totally and permanently disabled more than twelve months after a disability(ies) first arises will be conclusively deemed not to have become totally and permanently disabled "shortly after" the disability(ies) first arises, as that phrase is used in subsections (a) and (b) above.   In cases falling within this six- to twelve-month period, the Retirement Board or the Disability Initial Claims Committee will have the right and duty to determine whether the "shortly after" standard is satisfied."

Plan section 5.8 states that "T&P benefits will be paid retroactive to the first day of the month that is two months prior to the date a written application for T&P benefits or similar letter that began the administrative process that resulted in an award of T&P benefits was received.   However, if an application was delayed because of the Player's mental incapacity, the award may be retroactive to the first day of a month that precedes the date of receipt of the application by up to thirty-six months, but only if and to the extent it is established that the mental incapacity caused the delay.   In no event will T&P benefits be retroactive to any date that precedes the date of receipt of the application by more than thirty-six months."

## Discussion

Your last Credited Season is 2005.   Your completed application for T&P benefits was received on July 1, 2014.   On July 23, 2014, the Committee reviewed your application and the June 18, 2014 letter from the Social Security Administration that shows that you have been awarded disability benefits.   In accordance with the provisions of the Plan quoted above, the Committee concluded that you are totally and permanently disabled, that the appropriate category is Inactive A, and that the appropriate effective date is May 1, 2014. The Committee determined that the Inactive A category is appropriate because it found that your application for T&P benefits was received within 15 years from the end of your last Credited Season.   The Committee determined that May 1, 2014 is the appropriate effective date because it is the first day of the month that is two months before the date your application was received by the Plan Office.

The Committee determined that you did not become totally and permanently disabled within any possible "shortly after" period, such that the Active Football or Active Nonfootball categories could apply in your case.

Please complete the enclosed Disability Benefits Tax Withholding Form.   Payment of your benefits cannot commence until you complete and return this form to the Plan Office.

## Appeal Rights

Attached to this letter is section 12.6 of the Plan, which governs your right to appeal the Committee's decision.   You may appeal the Committee's decision to the Plan's Retirement Board by filing a written request for review with the Retirement Board at this office within 180 days of your receipt of this letter.   You should also submit written comments, documents and any other information that you believe shows you qualify for these benefits.     The Retirement Board will take into account all available information, regardless of whether that information was available or presented to the Committee.   Please note that if the Retirement Board reaches an adverse decision on review, you may then bring a civil action under section 502(a) of the Employee Retirement Income Security Act of 1974, as amended, 27 U.S.C. § 1132(a).

If you have any questions, please contact the Plan Office.

Very truly yours,

Elton Banks
Benefits Coordinator
on behalf of the Disability Initial Claims Committee

edb

Enclosures

PLAYER:        **Michael A. Cloud**                                    SSN4:  FRCP 5.2
                                                                       DOB:   **FRCP 5.2**

ISSUE:         **Request for Reclassification** of T&P Inactive A Disability Benefits to T&P
               Active Football Disability Benefits

FACTS:         **Seven (7)** Credited Seasons: **1999-2005**

               Approved via **07/17/2014 E-Ballot - SSA Disability Award**

               Effective Date: **05/01/2014**        Application Received: **07/01/2014**

               Presently Receiving:
               A) **$4,000.00** per month **T&P benefits**
               B) **$7,250.00** per month **Supplemental Disability**

ATTACHMENTS:   1) Board Actions List

               2) Player's Letter received 02/17/2016 with attachments

DECISION:_____

EFFECTIVE DATE:_____

**E-Ballot 02/22/2016**                    MISCELLANEOUS BENEFIT CASE **# 1**

CLOUD-AR-286

E-Ballot 02/22/2016

Board Actions for Michael A. Cloud

| Meeting Date Type | Case Type | Issue | Decision | Effective Date/Action |
|---|---|---|---|---|
| 07-17-14.E | TPC | APL | Approved | 05-01-14 SSA Disability Award |
| 05-13-10.E | LOD | APA | Approved | 05-01-10 Dr. George Canizares - Neutral Orthopaedist |
| 09-24-09.E | LOD | APL | Denied | percentage Dr. Bert Mandelbaum - Neutral Orthopaedist |
| 07-09-09.E | LOD | APL | Tabled | 30 day extension granted - pending medical reports |

SUMMARY

Total Cases: 4

Case Types-   LOD:  2  TPC:  1

Issues-        APA:  1  APL:  2

Decisions-  Approved: 2  Denied: 1

Issues:    APL- Application   CON- Continuation   EDT- Eff. Date   RCL- Reclassification   EED- Earlier Eff. Date   MSC- Miscellaneous
           APA- APL Appeal    COA- CON Appeal     EDA- EDT Appeal  RCA- RCL Appeal          EEA- EED Appeal          MSA- MSC Appeal
                                                            02/22/16

E-Ballot 02/22/2016                                                      DICC Page 1

**Michael A. Cloud's T&P Disability ACTIVE FOOTBALL Application 7-15-16**

Michael A. Cloud
**120 Mont Blanc Drive**
**Heath, TX 75032**
SS# FRCP 5.2
(p) 214-364-0098
macsportsandrehab@gmail.com

**NFL Player Disability & Neurocognitive**
**Benefit Plan**
**200 Saint Paul St.**
**Suite 2420**
**Baltimore, MD 21202**





**RE:**  Total & Permanent Disability ACTIVE
FOOTBALL Benefits

**TO:** NFL Retirement and Benefits Board
**CC:** Sarah E. Gaunt, Plan Director
Paul Scott, Benefits Coordinator

**Dear NFL Players Benefits Committee,**
Enclosed please find Michael Cloud's
complete application for Total & Permanent
Active Football Disability Benefits.

Mr. Cloud has been awarded a Fully
Favorable Decision of SSDI Benefits from
**Administrative Law Judge, Daniel
Curran,** as a result of severe impairments of
mental disorder stemming from multiple
NFL football concussions.  In Judge Curran's
report he notes, as a result of these
concussions, Mr. Cloud has been "unable to sustain gainful activities due to the following severe
mental disorders of migraine headaches and    affective disorders, limiting his ability to
understand, remember, and carry out simple or detailed instruction; the ability to interact with
the general public; and is unable to maintain attention and concentration for extended periods
of time."

In **Dr. John Patrick Cronin, Ph. D., M.P.H.** 2004 Specific Head Trauma Evaluation of Mr.
Cloud he notes that after he sustained a significant helmut to helmut concussion on October 31,
2004 while with the New York Giants; "significant physical and cognitive problems occurred
immediately after this collision and Mr. Cloud experienced confusion, disorientation and
dizziness as a result of the impact.  He was able to walk from the field with assistance (but does
not recall doing so) an remained sidelined for the remainder of the game.  Mr. Cloud does not
recall how he returned to his home in New York, nor does he recall his level of performance for
the remaining games for that season.  Mr Cloud's attempted to regain his playing status the
following spring, but was unable to complete basic plays and assignments and subsequently was
cut by two teams…"

During the Spring '05 Mr. Cloud signed a two year contract with the NY Giants worth over $2.6-
million, but was cut due to his inability to remember the most basic plays and football
assignments.  Months into the 2005 season Mr. Cloud was again acquired by the NE Patriots

CLOUD-AR-288

E-Ballot 02/22/2016                                       DICC Page 2

**Michael A. Cloud's T&P Disability ACTIVE FOOTBALL Application 7-15-16**

and then again by the NY Giants, but was consequently cut due to these cumulative mental disorders.

Mr Cloud's SSDI award letter and a copy of his SS and medical file are enclosed for the Committee's review. May this information help guide the NFL Players Benefits Committee in determining Mr Cloud's Active Football Disability Benefits status as well as further assisting in his medical care.

Should you have any questions, please feel free to contact me. Thank you.

Be well,

**Jennifer L. Cloud, *Esq.***
**Michael A. Cloud**

**MEDICAL RECORDS INDEX**

1. **Michael Cloud's** Total and Permanent Disability ACTIVE FOOTBALL Benefits Application
2. **Social Security Administration Benefit Verification Letter**
3. **Daniel Curran, Administrative Law Judge** – SSDA, Notice of FULL FAVORABLE SSDI and SSI Decision
4. **Dr. Harry Cates, LPC.,** - The Life Works Group; Medical Review & Mental Residual Functional Capacity Assessment
5. **Dr. Anne Smith, Ph.D.** - Behavioral Health; Medical Review
6. **Dr. John Patrick Cronin, Ph. D., M.P.H.** – Primary Behavioral Health Clinics, Inc.; Medical Review and 2004 Specific Head Trauma Evaluation
7. **Dr. Jeffery Berman, M.D.** – Orthopaedic; Medical Review
8. **Dr. Michael J. Einbund, M.D.** – Orthopaedic Surgery; Medical Review
9. **Dr. George H. Canizares, M.D.** - All Florida Orthopaedic Associates w/NFL LOD Medical Report
10. **Dr. Adam S. DiDIo, M.D.** – Suncoast Medical Center Neurology w/NFL LOD Medical Report
11. **NFL Medical Summary**
12. **Dr. Russell Warren, M.D. w/Dr. Michael Pollack, M.D. & Dr. Ann M. Moore, M.D.** - New York Football Giants Cumulative Medical Journal.
13. **Dr. Bertram Zarins, M.D.** - New England Patriots Medical Summary

CLOUD-AR-289

E-Ballot 02/22/2016                                          DICC Page 3



## NFL Player Disability & Neurocognitive Benefit Plan
## Total and Permanent Disability Benefits Application

RECEIVED

FEB 17 2016

NFL PLAYER BENEFITS

### Signature and Authorization

I certify that all information and documents provided on or with this Total and Permanent Disability Benefits Application are, to the best of my knowledge, true, correct, and complete. I also authorize the NFL Player Disability & Neurocognative Benefit Plan to use or disclose all individually identifiable health information submitted to the Plan on my behalf, or created in connection with my Application, to all individuals as needed for Plan purposes.

I understand that I may be required to undergo a comprehensive evaluation, and I certify that I will be able to attend such evaluation within 30 days from the date this Application is received by the Plan Office. I understand that failure to attend without 2 business days advance notice, and cooperate with such evaluation will result in my Application being denied.

Signature of Player  *Michael A. Cloud*          Date Completed  *02/14/16*

### Player Information

Player's Name *(please print)*  **Cloud, Michael A.**

Date of Birth  [FRCP 5.2]  *Last*          Social Security Number  [FRCP 5.2]  *First*  *Middle Initial*

Address *(number and street)*  **120 Mont Blanc Drive**

City  **Heath**          State  **TX**          Zip Code  **75032**

Home Phone  ___          Work Phone  ___

Mobile Phone  **214-364-0098**          E-mail  **macsportsandrehab@gmail.com**

### Medical, Hospital and Other Records

Have you included additional information in support of your Application for disability benefits?

☒ Yes  ○ No   If yes, what is enclosed?  **Mr. Cloud's Medical Records**

Are there other documents that you intend to include that you have not submitted with this Application?

○ Yes  ☒ No   If yes, what will you be sending?  ___

Note: Applications cannot be processed until all information is received. Please send all supporting information to the Plan Office as soon as possible, or notify the Plan Office if you decide not to send additional information.

### Disabilities and Cause

**(PART 1)**  Describe all of the conditions that you believe make you unable to work. Please state if any of these conditions resulted from service in the military of any country. You may attach additional sheets if necessary to identify the conditions which you would like the Plan to consider.

Condition 1:  Migraine

Condition 2:  Clinical Depression

Condition 3:  Significant Memory & Attention Problems

Condition 4:  Vertigo

Condition 5:  Impaired Verbal Fluency

— CONTINUED ON NEXT PAGE —

E-Ballot 02/22/2016                                                      DICC Page 4
Player's Name (*please print*) Michael Cloud                Initials _WMC_

## Disabilities and Cause (Continued)

**(PART 2)** Higher benefits are payable if the disability(ies) that renders you totally and permanently disabled arose while you were an Active Player, and caused you to be totally and permanently disabled "shortly after" the disability(ies) first arose. In such cases the amount of your benefit will depend on whether your disability(ies) results from NFL football. If you believe you may qualify for such higher benefits, please indicate below (a) when the disability(ies) arose, (b) when they caused you to be totally and permanently disabled, and (c) whether the disability(ies) resulted from NFL football or another cause (for example, auto accident). On (c), please list all injuries, accidents or illnesses that may have caused or contributed in any way to any of the conditions listed in section 4, Part 1. You may attach additional sheets or supporting documentation.

(a) _October 31, 2004_

(b) _Immediatly after October 31, 2004_

(c) _Helmet to helmet collision while with the NY Giants in a game against the Minn. Vikings._

**(PART 3)** Describe the problems you are currently experiencing. _Migraines, Clinical Depression, Memory loss, Attention and Decision Problems, Impaired Verbal Fluency, Post-Concussion Syndrome, Vertigo, Affective Disorder._

**(PART 4)** Please note that special rules apply when a condition relates to alcohol or substance abuse, or to psychiatric problems. In general, if such conditions are the cause of your inability to work, they will automatically be considered to not result from NFL football activities. Certain exceptions apply, as described in the Summary Plan Description. If you believe you qualify for one of these exceptions, please describe and enclose all supporting documentation.

_N/A_

## Social Security

Are you currently receiving Social Security disability benefits?  ☒ Yes   ○ No

If you checked **"Yes"** above, you must submit the following:

- a letter or other evidence from the Social Security Administration which states that the Social Security Administration determined you were unable to work; and

- a recent check stub or a letter from your local Social Security Administration office which states that you are still receiving Social Security benefits.

If you checked **"No"** above, have you applied?   ○ Yes   ○ No

**If you are currently receiving Social Security disability insurance benefits, please disregard the Employment Information section.**

— CONTINUED ON NEXT PAGE —

CLOUD-AR-291

E-Ballot 02/22/2016                                                    DICC Page 5
Player's Name *(please print)* Michael Cloud                    Initials WAC

## Employment Information

Are you currently employed?   ○ Yes   ☒ No   ○ Never worked after playing NFL football

If you checked **"Yes,"** please complete the following and submit the requested documents:

Employer _____ Job Title _____ Start Date _____
Employer's Address _____
Supervisor's Name _____ Supervisor's Phone_____
Job Description _____ Salary *(before tax)* _____

Documents you must submit:
- Federal and state income tax returns for the last 3 years
- A description of your day-to-day job duties and resposibilities
- Current year salary information, such as a pay stub or letter from your employer

If you checked **"No,"** please complete the following:

Your Last Employer _Equinox_____ Job Title _Personal Trainer___ Start & End Dates _May/09 - June/09_
Employer's Address _5400 W. Rosecrans Ave._____
Supervisor's Name _____ Supervisor's Phone _310-727-9543_____
Job Description _____
Reason for leaving _Released.  Was not meeting the club's standards.  Had difficulties learning the fitness_
_protocols due to Mr. Cloud's Metal Impairments._

CONTINUED ON NEXT PAGE

CLOUD-AR-292

E-Ballot 02/22/2016                                                          DICC Page 6



## NFL Player Disability & Neurocognitive Benefit Plan
## Disability Benefit Player Consent Form

RECEIVED

FEB 1 7 2016

NFL PLAYER BENEFITS

### Signature and Authorization

You are applying for disability benefits under the NFL Player Disability & Neurocognitive Benefit Plan ("Plan"). This form contains important information. Please read the form, sign it, and return it with your application for disability benefits. This form is a required part of the application, and must be completed before your application will be processed.

I, **Michael A. Cloud** _____ *(print name)*, have read and understood the information in this Disability Benefit Player Consent Form.

Signature of Player *Michael A. Cloud* _____   Date Completed *02/13/2016*

### In submitting my application for disability benefits, I understand that:

1. I may be required to attend a physical examination with one or more physicians or other health professionals, and that failure to attend may cause my application to be denied.

2. There will be no doctor-patient relationship between me and the physicians or other health professionals who examine me.

3. The physicians or other health professionals who examine me will provide reports on my condition to the Plan, which I may obtain by written request to the Plan Office.

4. The physicians or other health professionals who examine me will not provide a copy of the medical reports to me directly.

5. Neither I nor my representatives (attorneys, treating physicians, etc.) are allowed to contact the physicians or other health professionals arranged by the Plan, such as to discuss their examination of me or to request copies of reports.

6. The physicians or other health professionals who examine me are required to comply with ethical or legal obligations, for example if they determine that I am a danger to myself or to others.

7. By signing this form, I consent to the above points and will comply with the Plan's procedures in connection with my claim for disability benefits.

8. The examination will not be videotaped or otherwise recorded.

CLOUD-AR-293

E-Ballot 02/22/2016                                                      DICC Page 7



# Social Security Administration

Date: February 13, 2016
Claim Number: XXX-XX-[FRCP 5.2]

MICHAEL A CLOUD
120 MONT BLANC DRIVE
HEATH TX 75032-7650

You asked us for information from your record. The information that you requested is shown below. If you want anyone else to have this information, you may send them this letter.

## Information About Current Social Security Benefits

Beginning December 2015, the full monthly Social Security benefit before any deductions is $2,679.20.

We deduct $316.70 for medical insurance premiums each month.

The regular monthly Social Security payment is $2,362.00.
(We must round down to the whole dollar.)

Social Security benefits for a given month are paid the following month. (For example, Social Security benefits for March are paid in April.)

Your Social Security benefits are paid on or about the second Wednesday of each month.

## Information About Past Social Security Benefits

From December 2014 to November 2015, the full monthly Social Security benefit before any deductions was $2,679.20.

We deducted $146.90 for medical insurance premiums each month.

The regular monthly Social Security payment was $2,532.00.
(We must round down to the whole dollar.)

## Type of Social Security Benefit Information

You are entitled to monthly disability benefits.

There was no cost of living adjustment in Social Security benefits in December 2015. The benefit

E-Ballot 02/22/2016                                                    DICC Page 8

## Date of Birth Information

The date of birth shown on our records is July 01, 1975.

## Medicare Information

You are entitled to hospital insurance under Medicare beginning March 2013.

You are entitled to medical insurance under Medicare beginning July 2014.

## Suspect Social Security Fraud?

Please visit http://oig.ssa.gov/r or call the Inspector General's Fraud Hotline at 1-800-269-0271 (TTY 1-866-501-2101).

## If You Have Questions

We invite you to visit our web site at www.socialsecurity.gov on the Internet to find general information about Social Security. If you have any specific questions, you may call us toll-free at 1-800-772-1213, or call your local office at 888-306-4836. We can answer most questions over the phone. If you are deaf or hard of hearing, you may call our TTY number, 1-800-325-0778. You can also write or visit any Social Security office. The office that serves your area is located at:

SOCIAL SECURITY
2717 TERRELL ROAD
GREENVILLE, TX 75402

If you do call or visit an office, please have this letter with you. It will help us answer your questions. Also, if you plan to visit an office, you may call ahead to make an appointment. This will help us serve you more quickly when you arrive at the office.

*Social Security Administration*

CLOUD-AR-295



SOCIAL SECURITY ADMINISTRATION                                    DICC Page 9

Refer To: **FRCP 5.2**                     Office of Disability Adjudication and Review
                                           SSA ODAR Hearing Ofc
                                           Suite 500
                                           12790 Merit Dr.
                                           Dallas, TX 75251

                                           Date: June 18, 2014

Michael Alexander Cloud
1001 Starlight Place
Dallas, TX 75087

## Notice of Decision -- Fully Favorable

I carefully reviewed the facts of your case and made the enclosed fully favorable decision. Please read this notice and my decision.

Another office will process my decision. That office may ask you for more information. If you do not hear anything within 60 days of the date of this notice, please contact your local office. The contact information for your local office is at the end of this notice.

### If You Disagree With My Decision

If you disagree with my decision, you may file an appeal with the Appeals Council.

### How To File An Appeal

To file an appeal you must ask in writing that the Appeals Council review my decision. You may use our Request for Review form (HA-520) or write a letter. The form is available at www.socialsecurity.gov. Please put the Social Security number shown above on any appeal you file. If you need help, you may file in person at any Social Security or hearing office.

Please send your request to:

> **Appeals Council**
> **Office of Disability Adjudication and Review**
> **5107 Leesburg Pike**
> **Falls Church, VA 22041-3255**

### Time Limit To File An Appeal

You must file your written appeal **within 60 days** of the date you get this notice. The Appeals Council assumes you got this notice 5 days after the date of the notice unless you show you did not get it within the 5-day period.

The Appeals Council will dismiss a late request unless you show you had a good reason for not filing it on time.

Form HA-L76 (03-2010)

See Next Page



**What Else You May Send Us**

You may send us a written statement about your case. You may also send us new evidence. You should send your written statement and any new evidence **with your appeal**. Sending your written statement and any new evidence with your appeal may help us review your case sooner.

**How An Appeal Works**

The Appeals Council will consider your entire case. It will consider all of my decision, even the parts with which you agree. Review can make any part of my decision more or less favorable or unfavorable to you. The rules the Appeals Council uses are in the Code of Federal Regulations, Title 20, Chapter III, Part 404 (Subpart J).

The Appeals Council may:

- Deny your appeal,
- Return your case to me or another administrative law judge for a new decision,
- Issue its own decision, or
- Dismiss your case.

The Appeals Council will send you a notice telling you what it decides to do. If the Appeals Council denies your appeal, my decision will become the final decision.

**The Appeals Council May Review My Decision On Its Own**

The Appeals Council may review my decision even if you do not appeal. They may decide to review my decision within 60 days after the date of the decision. The Appeals Council will mail you a notice of review if they decide to review my decision.

**When There Is No Appeals Council Review**

If you do not appeal and the Appeals Council does not review my decision on its own, my decision will become final. A final decision can be changed only under special circumstances. You will not have the right to Federal court review.

**Your Right To Representation In An Appeal**

If you appeal, you may choose to have an attorney or other person help you. Many representatives do not charge a fee unless you win your appeal. Groups are available to help you find a representative or, if you qualify, to give you free legal services. Your local Social Security office has a list of groups that can help you in this process.

If you get someone to help you with your appeal, you or that person must let the Appeals Council know. If you hire someone, we must approve the fee before he or she is allowed to collect it.

Form HA-L76 (03-2010)

E-Ballot 02/22/2016                                         DICC Page 11
Michael Alexander Cloud (FRCP 5.2                              Page 3 of 3

### If You Have Any Questions

We invite you to visit our website located at www.socialsecurity.gov to find answers to general questions about social security.  You may also call (800) 772-1213 with questions.  If you are deaf or hard of hearing, please use our TTY number (800) 325-0778.

If you have any other questions, please call, write, or visit any Social Security office.  Please have this notice and decision with you.  The telephone number of the local office that serves your area is (888)306-3534.  Its address is:

> Social Security
> 2717 Terrell Road
> Greenville, TX 75402-7302

> Daniel Curran
> Administrative Law Judge

Enclosures:
Decision Rationale



Form HA-L76 (03-2010)

CLOUD-AR-298

E-Ballot 02/22/2016                                                DICC Page 12

**SOCIAL SECURITY ADMINISTRATION**
**Office of Disability Adjudication and Review**

**DECISION**

| | |
|---|---|
| **IN THE CASE OF** | **CLAIM FOR** |
| | Period of Disability and Disability Insurance Benefits |
| Michael Alexander Cloud | |
| (Claimant) | |
| | FRCP 5.2 |
| (Wage Earner) | (Social Security Number) |

## JURISDICTION AND PROCEDURAL HISTORY

This case is before the undersigned on a request for hearing dated May 30, 2013 (20 CFR 404.929 *et seq.*). The claimant appeared and testified at a hearing held on May 15, 2014, in Dallas, TX. Lakedra L Parker, an impartial vocational expert, also appeared at the hearing. Although informed of the right to representation, the claimant chose to appear and testify without the assistance of an attorney or other representative.

The claimant has amended the alleged onset date of disability to December 31, 2008.

## ISSUES

The issue is whether the claimant is disabled under sections 216(i) and 223(d) of the Social Security Act. Disability is defined as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment or combination of impairments that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months.

There is an additional issue whether the insured status requirements of sections 216(i) and 223 of the Social Security Act are met. The claimant's earnings record shows that the claimant has acquired sufficient quarters of coverage to remain insured through March 31, 2015. Thus, the claimant must establish disability on or before that date in order to be entitled to a period of disability and disability insurance benefits.

After careful review of the entire record, the undersigned finds that the claimant has been disabled from December 31, 2008, through the date of this decision. The undersigned also finds that the insured status requirements of the Social Security Act were met as of the date disability is established.

## APPLICABLE LAW

Under the authority of the Social Security Act, the Social Security Administration has established a five-step sequential evaluation process for determining whether an individual is

See Next Page

disabled (20 CFR 404.1520(a)). The steps are followed in order. If it is determined that the claimant is or is not disabled at a step of the evaluation process, the evaluation will not go on to the next step.

At step one, the undersigned must determine whether the claimant is engaging in substantial gainful activity (20 CFR 404.1520(b)). Substantial gainful activity (SGA) is defined as work activity that is both substantial and gainful. If an individual engages in SGA, he is not disabled regardless of how severe his physical or mental impairments are and regardless of his age, education, or work experience. If the individual is not engaging in SGA, the analysis proceeds to the second step.

Under the standard established in Stone v. Heckler, "an impairment can be considered as not severe only if it is a slight abnormality having such minimal effect on an individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience." Stone v. Heckler, 752 F.2d 1099, 1101 (5th Cir. 1985).

At step three, the undersigned must determine whether the claimant's impairment or combination of impairments is of a severity to meet or medically equal the criteria of an impairment listed in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, and 404.1526). If the claimant's impairment or combination of impairments is of a severity to meet or medically equal the criteria of a listing and meets the duration requirement (20 CFR 404.1509), the claimant is disabled. If it does not, the analysis proceeds to the next step.

Before considering step four of the sequential evaluation process, the undersigned must first determine the claimant's residual functional capacity (20 CFR 404.1520(e)). An individual's residual functional capacity is his ability to do physical and mental work activities on a sustained basis despite limitations from his impairments. In making this finding, the undersigned must consider all of the claimant's impairments, including impairments that are not severe (20 CFR 404.1520(e) and 404.1545; SSR 96-8p).

Next, the undersigned must determine at step four whether the claimant has the residual functional capacity to perform the requirements of his past relevant work (20 CFR 404.1520(f)). The term past relevant work means work performed (either as the claimant actually performed it or as it is generally performed in the national economy) within the last 15 years or 15 years prior to the date that disability must be established. In addition, the work must have lasted long enough for the claimant to learn to do the job and have been SGA (20 CFR 404.1560(b) and 404.1565). If the claimant has the residual functional capacity to do his past relevant work, the claimant is not disabled. If the claimant is unable to do any past relevant work or does not have any past relevant work, the analysis proceeds to the fifth and last step.

At the last step of the sequential evaluation process (20 CFR 404.1520(g)), the undersigned must determine whether the claimant is able to do any other work considering his residual functional capacity, age, education, and work experience. If the claimant is able to do other work, he is not disabled. If the claimant is not able to do other work and meets the duration requirement, he is disabled. Although the claimant generally continues to have the burden of proving disability at this step, a limited burden of going forward with the evidence shifts to the Social Security

Administration. In order to support a finding that an individual is not disabled at this step, the Social Security Administration is responsible for providing evidence that demonstrates that other work exists in significant numbers in the national economy that the claimant can do, given the residual functional capacity, age, education, and work experience (20 CFR 404.1512(g) and 404.1560(c)).

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

After careful consideration of the entire record, the undersigned makes the following findings:

1.  **The claimant's date last insured is March 31, 2015.**

2.  **The claimant has not engaged in substantial gainful activity since December 31, 2008, the amended alleged onset date (20 CFR 404.1520(b) and 404.1571 *et seq.*).**

The claimant worked after his alleged onset date as a personal trainer. However, this work attempt is considered an unsuccessful work attempt because the work was ultimately discontinued because of the medical impairments (20 CRF 404.1574 (a)(1) and 416.974(a)(1)). The regulations define an unsuccessful work attempt as one where the work lasted less than six months and ended due to frequent absences or unsatisfactory work as a result of the impairment. The claimant's gross earnings in 2009 totaled $1,407.75. The substantial gainful activity (SGA) level for year 2009 was $980.00 per month.  Accordingly, the analysis will continue to address the entire relevant period through the date of this decision.

3.  **The claimant has the following severe impairments: migraine headaches, affective disorder. (20 CFR 404.1520(c)).**

All impairments have been considered under the standard set forth in Stone v. Heckler, 752 F.2d 1099 (5th Cir.1985).

4.  **The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).**

A comparison of the objective evidence to the Listing of Impairments shows that the claimant's impairments are not sufficiently severe to meet the criteria of any impairment described in Appendix 1. Furthermore, the claimant does not suffer from an impairment or a combination of impairments, including those deemed nonsevere, which is medically equivalent in severity to any listed impairment. Certainly, no examining or non-examining physician has opined that the claimant's medical findings meet or equal the criteria of any of the listed impairments. In accordance with Audler v. Astrue, 501 F.3d 446 (5th Cir. 2007), the undersigned has considered the impairments listed in Appendix 1 to Subpart P of Part 404 of the Regulations and finds that claimant's impairments do not singularly or in combination meet or medically equal the required criteria for any of the listed impairments. The signs, symptoms and history of treatment presented in the evidence of record are inconsistent with the degree of pain and/or

See Next Page

functional limitation that is required to meet or equal the criteria set forth in Medical Listing 11.00, neurological systems, or any other Medical Listing.

The claimant has the following degree of limitation in the broad areas of functioning set out in the disability regulations for evaluating mental disorders and in the mental disorders listings in 20 CFR, Part 404, Subpart P, Appendix 1: moderate restriction in activities of daily living, moderate difficulties in maintaining social functioning, marked difficulties in maintaining concentration, persistence or pace, and no episodes of decompensation, each of extended duration.

During the application process, the claimant completed a function report dated November 7, 2012. He stated he is pain, burning and numbness from the base of his neck to his fingertips that make it difficult to sleep or do any weight bearing lifting above the shoulders. He lives with his wife and son who take care of the household chores. He occasionally prepares simple meals. His daily activities consist of taking his son to the park or daycare then watching television.

Turning to social functioning, the claimant stated he no longer goes out with friends or even to restaurants. He is in pain most of the time and does not socialize. He stated he feels anxiety with changes in routine and is fearful something bad will happen to his family. He also has problems getting along with family and friends at times. He occasionally gets emotional or teary eyed and cries for no reason.

Turning toward concentration, persistence or pace, the claimant's mental residual functional capacity assessment concludes he is markedly limited in the ability to maintain attention and concentration for extended periods. (Exhibit 6F)

As for episodes of decompensation, the claimant has experienced no episodes of decompensation, which have been of extended duration.

The undersigned has also considered whether the "paragraph C" criteria are satisfied. In this case, the evidence fails to establish the presence of the "paragraph C" criteria. There is no evidence of repeated episodes of decompensation of extended duration, there is no evidence of a residual disease process that results in such marginal adjustment that even a minimal increase in mental demands would be predicted to cause the claimant to decompensate, and there is no evidence of a one or more years' inability to function outside a highly supportive living arrangement. Additionally, there is no evidence in the record that the claimant has a complete inability to function independently outside of home.

5.   **The claimant has the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) except he is limited in ability to understand, remember, and carry out simple or detailed instructions; the ability to interact the general public; and is unable to maintain attention and concentration for extended periods of time.**

In making this finding, the undersigned considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 404.1529 and SSRs 96-4p and 96-7p. The

E-Ballot 02/22/2016                                                    DICC Page 16
Michael Alexander Cloud (FRCP 5.2)                                     Page 5 of 7

undersigned has also considered opinion evidence in accordance with the requirements of 20 CFR 404.1527 and SSRs 96-2p, 96-6p and 06-3p.

A consultative examination report was performed by Michael Einbund, M.D. on July 6, 2009. Dr. Einbund's diagnosis was status post-operative compartment syndrome, right leg and lumbosacral spine sprain with radicular complaints. He further noted the claimant has residual symptoms in his right knee, and noted him to ambulate with a slight limp. (Exhibit 1F)

The claimant was evaluated for 'Line of Duty Disability Benefits' by Adarin Didio, M.D. on April 13, 2010. Dr. Didio listed the claimant's impairments as vertigo, headaches, memory loss, depression, and impaired verbal fluency, all resulting from a history of concussions during his NFL football career. Medical records reviewed by Dr. Didio stated the claimant was formally evaluated as part of a traumatic brain injury study and declared to have suffered a Grade 1 concussion. Dr. Didio further stated the claimant suffered from Benign Paroxysmal Positional Vertigo (BPPV). (Exhibit 2F)

Medical reports from Primary Behavioral Health Clinics dated June 12, 2011 state the claimant experiences pain in his neck, lower back, foot and lower leg. In addition, he experiences depression and has difficulty remembering. In a self-assessment checklist, the claimant stated he has extreme trouble remembering things, is worried and easily annoyed or irritated, has difficulty making decisions, goes blank often and has trouble concentrating. (Exhibit 3F) A psychological consultative examination was performed by Smith Behavioral Health, Anne Smith, Ph. D. on January 22, 2013. Dr. Smith's diagnostic impression was the claimant experienced major depressive disorder, recurrent, severe without psychotic features, and his GAF was currently 48. Her prognosis was fair to good with treatment of the depression, however only stated his immediate memory may improve after treatment. Dr. Smith further stated the claimant ability to make occupational, social and personal adjustments is significantly impacted by his depression. (Exhibit 4F)

A consultative examination, performed by Lige rushing, Jr., M.D. on January 20, 2013 reports the claimant is unable to tandem walk or squat, although his gait and station are normal and straight leg raising test bilaterally was normal. X-ray testing of the lumbar spine showed mineral contract of the bone normal; vertebrae properly aligned; interspaces well maintained; no soft tissue abnormalities notes; and overall impression was normal. Medications were Tylenol and Advil on an as needed basis. (Exhibit 5F)

State agency physician Don Marler, Ph. D. assessed the evidence of record on April 8, 2013. His impairment diagnosis was stated as migraine headaches and affective disorders. Dr. Marler concluded that, at the time, the preponderance of evidence indicated that the claimant may be somewhat restricted by the symptoms, but not wholly compromised in the ability to function in a work setting. Dr. Marler stated the claimant's limitations as moderate in his actives of daily living, difficulties in maintain social function and difficulties in maintain concentration, persistence or pace.

On the mental residual functional capacity assessment completed on that date, Dr. Marler rated the claimant's understanding and memory limitations as markedly limited in the ability to

See Next Page



CLOUD-AR-303

understand an remember detailed instructions, and the ability to carry out detail instructions. (Exhibit 4A)

A mental residual functional capacity assessment was completed by medical consultant, Harry Cates, a licensed professional counselor (LPC), of Lifework's Group PA. Mr. Cates had observed the claimant between October 10, 2011 and December 21, 2011 and stated at that time he was struggling with depressive symptoms, poor concentration and bouts of unpredictable irritability; no doubt related to his physical injuries and concussions. Mr. Cates performed a subsequent clinical interview and mini-mental exam on May 7, 2014, and made a comparison to the claimant's presentation in 2011. His summary characterized the claimant's cognitive presentation as a progressive decline in the speed and sharpness with which he interacts, as well as increased anxiety in social situations. In addition, the claimant appeared to have increased difficulty in coping due to social anxiety and self-consciousness from ongoing changes in his cognitive functioning. (Exhibit 6F)

On May 13, 2014, Mr. Cates completed an assessment form presenting the claimant as markedly limited in his ability to maintain attention and concentration for extended periods. Additionally, he was moderately limited in several areas including ability to remember location and work-like procedures; understand, remember and carry out detained instructions; perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; interact appropriately with the general public; travel in unfamiliar places or use public transportation; and to set realistic goals or make plans independently. (Exhibit 6F)

After considering the evidence of record, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to produce the alleged symptoms, and that the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are generally credible. The intensity of the claimant's symptoms, including pain, and the extent of the alleged functional limitations, are supported by objective findings or the record of psychological testing. The claimant has made an attempt to work which suggests good work motivation, but he is unable to sustain that work due to the non-exertional impairment-related symptoms.

The State agency medical consultants' physical assessments and psychological consultants' mental assessments are given little weight because another medical opinion is more consistent with the record as a whole.

**6. The claimant is unable to perform any past relevant work (20 CFR 404.1565).**

The demands of the claimant's past relevant work exceed the residual functional capacity.

**7. The claimant was a younger individual age 18-49 on the established disability onset date (20 CFR 404.1563).**

**8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564).**

CLOUD-AR-304

9.   The claimant's acquired job skills do not transfer to other occupations within the residual functional capacity defined above (20 CFR 404.1568).

10.   Considering the claimant's age, education, work experience, and residual functional capacity, there are no jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1560(c) and 404.1566).

In determining whether a successful adjustment to other work can be made, the undersigned must consider the claimant's residual functional capacity, age, education, and work experience in conjunction with the Medical-Vocational Guidelines, 20 CFR Part 404, Subpart P, Appendix 2. If the claimant can perform all or substantially all of the exertional demands at a given level of exertion, the medical-vocational rules direct a conclusion of either "disabled" or "not disabled" depending upon the claimant's specific vocational profile (SSR 83-11).  When the claimant cannot perform substantially all of the exertional demands of work at a given level of exertion and/or has nonexertional limitations, the medical-vocational rules are used as a framework for decisionmaking unless there is a rule that directs a conclusion of "disabled" without considering the additional exertional and/or nonexertional limitations (SSRs 83-12 and 83-14).  If the claimant has solely nonexertional limitations, section 204.00 in the Medical-Vocational Guidelines provides a framework for decisionmaking (SSR 85-15).

If the claimant had the residual functional capacity to perform the full range of medium work, considering the claimant's age, education, and work experience, a finding of "not disabled" would be directed by Medical-Vocational Rule 203.29.  However, the additional limitations so narrow the range of work the claimant might otherwise perform that a finding of "disabled" is appropriate under the framework of this rule.  This conclusion is supported by Social Security Ruling(s) 96-9p.

11.   The claimant has been under a disability as defined in the Social Security Act since December 31, 2008, the amended alleged onset date of disability (20 CFR 404.1520(g)).

## DECISION

Based on the application for a period of disability and disability insurance benefits filed on March 7, 2012, the claimant has been disabled under sections 216(i) and 223(d) of the Social Security Act since December 31, 2008.

/s/ *Daniel Curran*

Daniel Curran
Administrative Law Judge

June 18, 2014
Date

## The LifeWorks Group, PA

May 13, 2014

To whom it may concern,

Michael Cloud attended marital therapy for 6 sessions between the dates of October 10, 2011 and December 21, 2011. Mr. Cloud was cooperative and active in the therapy process. He was observed to be struggling with depressive symptoms poor concentration and bouts of unpredictable irritability. These adjustments were likely related to his physical injuries and concussions, which hastened the early end to his career as a professional football player and with the role in the marriage as it related to recent birth of their child. During the process of marital therapy it was observed that forgetfulness, unreliability and perceived lack of motivation were major concerns for his spouse.

On May 7, 2014 a subsequent assessment of Michael Cloud was performed. The assessment was completed with use of clinical interview and mini-mental status exam. Mr. Cloud appeared well groomed and appropriately dressed for the assessment, his affect was limited in range and he was lucid and able to answer questions with content consistent answers. However, there was at times slowed process due to difficulty tracking multiple topics or references to previous subject matter. This was reported to be something, which Mr. Cloud reported to be something, which had become a problem after he began noticing the effects of the concussions. Mr. Cloud scored 28 out of 30 on MMSE but was slow in memory section. He reported that this memory difficulty had created reduced interest in social interaction due to his difficulty in remembering people and where he had met them which had not been a problem for him prior to onset of symptoms related to concussions. Mr. Cloud also reports periods of poor attention causing him to forget important tasks. Finally, Mr. Cloud was a poor historian when discussing memories of the recent past and the years since his football career, indicating reduced ability to transfer memory into long term storage.

In summary, when comparing Mr. Cloud's cognitive presentation in the present with his presentation in 2011 there appears to be progressive decline in the speed and sharpness with which he interacts as well as increased anxiety in social situations. Mr. Cloud does appear to have increased difficulty in coping due to the social anxiety and self-consciousness from the ongoing changes in his cognitive function.

If you have any further questions regarding Mr. Cloud please feel free to contact me at my office.


Harry Cates, LPC

214-357-4001

**The LifeWorks Group, P.A.**
2515 Cedar Springs Rd. Dallas TX 75201
www.wefixbrains.com

CLOUD-AR-306

E-Ballot 02/22/2016

DICC Page 20
0MB No 0960-0431

## MENTAL RESIDUAL FUNCTIONAL CAPACITY ASSESSMENT

Name: Michael Cloud                SSN: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

| Categories(From 1B of the PRFT) | Assessment Is For: |
|---|---|
| | ☑ Current Evaluation |
| | ☐ Date Last Insured:   /  / |
| | ☐ Date 12 Months After Onset:   /  / |
| | ☐ Other(Specify): |

### I. SUMMARY CONCLUSIONS

This section is for recording summary conclusions derived from the evidence in file. Each mental activity is to be evaluated within the context of the individual's capacity to sustain that activity over a normal workday and workweek, on an ongoing basis. Detailed explanation of the degree of limitation for each category (A through D), as well as any other assessment information you deem appropriate, is to be recorded in Section III (Functional Capacity Assessment).

If rating category 5 is checked for any of the following items, you MUST specify in Section II the evidence that is needed to make the assessment. If you conclude that the record is so inadequately documented that no accurate functional capacity assessment can be made, indicate in Section II what development is necessary, but DO NOT COMPLETE SECTION III.

| | | Not Significantly Limited | Moderately Limited | Markedly Limited | No Evidence of Limitation in this Category | Not Ratable on Available Evidence |
|---|---|---|---|---|---|---|
| A. | **UNDERSTANDING AND MEMORY** | | | | | |
| 1. | The ability to remember locations and work-like procedures | ☐ | ☑ | ☐ | ☐ | ☐ |
| 2. | The ability to understand and remember very short and simple instructions | ☑ | ☐ | ☐ | ☐ | ☐ |
| 3. | The ability to understand and remember detailed instructions. | ☐ | ☑ | ☐ | ☐ | ☐ |
| B. | **SUSTAINED CONCENTRATION AND PERSISTENCE** | | | | | |
| 4. | The ability to carry out very short and simple instructions | ☑ | ☐ | ☐ | ☐ | ☐ |
| 5. | The ability to carry out detailed instructions. | ☐ | ☑ | ☐ | ☐ | ☐ |
| 6. | The ability to maintain attention and concentration for extended periods. | ☐ | ☐ | ☑ | ☐ | ☐ |
| 7. | The ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances | ☐ | ☑ | ☐ | ☐ | ☐ |
| 8. | The ability to sustain an ordinary routine without special supervision | ☑ | ☐ | ☐ | ☐ | ☐ |
| 9. | The ability to work in coordination with or proximity to others without being distracted by them | ☐ | ☐ | ☐ | ☐ | ☑ |
| 10. | The ability to make simple work-related decisions. | ☑ | ☐ | ☐ | ☐ | ☐ |

1

Form SSA-4734-BK-SUP(8/85)
Formerly SSA-4734-F4-SUP1

CLOUD-AR-307

E-Ballot 02/22/2016                            DICC Page 21

11. The ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods.

| | Not Significantly Limited | Moderately Limited | Markedly Limited | No Evidence of Limitation in this Category | Not Ratable on Available Evidence |
|---|---|---|---|---|---|
| **C. SOCIAL INTERACTION** | | | | | |
| 12. The ability to interact appropriately with the general public | ☐ | ☑ | ☐ | ☐ | ☐ |
| 13. The ability to ask simple questions or request assistance | ☑ | ☐ | ☐ | ☐ | ☐ |
| 14. The ability to accept instructions and respond appropriately to criticism from supervisors | ☐ | ☐ | ☐ | ☐ | ☑ |
| 15. The ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes. | ☐ | ☐ | ☐ | ☐ | ☑ |
| 16. The ability to maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness. | ☑ | ☐ | ☐ | ☐ | ☐ |
| **D. ADAPTATION** | | | | | |
| 17. The ability to respond appropriately to changes in the work setting. | ☐ | ☐ | ☐ | ☐ | ☑ |
| 18. The ability to be aware of normal hazards and take appropriate precautions | ☑ | ☐ | ☐ | ☐ | ☐ |
| 19. The ability to travel in unfamiliar places or use public transportation. | ☐ | ☑ | ☐ | ☐ | ☐ |
| 20. The ability to set realistic goals or make plans independently of others | ☐ | ☑ | ☐ | ☐ | ☐ |

**II. REMARKS:** If you checked box 5 for any of the preceding items or if any other documentation deficiencies were identified, you MUST specify what additional documentation is needed. Cite the item number(s), as well as any other specific deficiency, and indicate the development to be undertaken. #5, 9, 14, 15, 17 related to work setting. (Not applicable to ___ interest)

**III. FUNCTIONAL CAPACITY ASSESSMENT**

Record in this section the elaborations on the preceding capacities. Complete this section ONLY after the SUMMARY CONCLUSIONS section has been completed. Explain your summary conclusions in narrative form. Include any information which clarifies limitation or function. Be especially careful to explain conclusions that differ from those of treating medical sources or from the individual's allegations.

☐ These findings complete the medical portion of the disability determination.

MEDICAL CONSULTANT'S SIGNATURE        DATE 5-13-14

_[signature]_ LPC #12024 (TX LPC)

**Paperwork/Privacy Act Notice:** The information requested on this form is authorized by Section 223 and Section 1633 of the Social Security Act. The information provided will be used in making a decision on this claim. Failure to complete this form

2

Form SSA-4734-BK-SUP(8/85)
Formerly SSA-4734-F4-SUP2

Michael A. Cloud                          SSN: 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



# Smith Behavioral Health
## Maximizing Quality of Life

Anne Smith, Ph.D.
4925 Greenville Ave Suite 200, Dallas, Texas 75206
Tel. 214/789-4768   Fax 214/485-1695

PSYCHOLOGICAL REPORT – FULL BATTERY

NAME: Michael A. Cloud
SSN: **FRCP 5.2**
DOB: **FRCP 5.2**
AGE: 37 Years
EXAMINATION DATE: 01/08/13
REFERRED BY: DARS

**I. GENERAL OBSERVATIONS:** Mr. Cloud drove himself unaccompanied to the exam. He presented photo identification. Mr. Cloud is a 37-year-old male who appeared his stated age. Grooming and hygiene was good. He was nicely dressed. Eye contact was somewhat decreased. Speech and gait normal.

**II. INFORMANT:** Mr. Cloud appeared to be a reliable informant.

**III. CHIEF COMPLAINT:** "Post concussion symptoms".

**IV. HISTORY OF PRESENT ILLNESS:** According to Mr. Cloud, he has experienced very bad headaches since his third year playing in the NFL. He said, "Since retiring, they have gotten worse over the last five or six years. It keeps me in bed. I can't do anything." He was a running back from 1999 to 2006. He played for the Kansas City Chiefs, the New England Patriots, and the New York Giants. He has had three documented concussions and countless other "dings" and physical injuries during his seven-year career. On the PHQ-9, Mr. Cloud reported that nearly every day or for more than half the days over the last two weeks he has had the following problems: little interest or pleasure in doing things; feeling down, depressed, and hopeless; trouble sleeping; feeling tired and having little energy; variable appetite; feeling bad about himself and that he has let himself and his family down; trouble concentrating; and moving or speaking so slowly that other people could have noticed. Mr. Cloud has been feeling this way for the past five or six years. He has never received treatment for depression. Mr. Cloud has withdrawn from and avoids social situations. He believes that others will think badly of him. He will not accept speaking engagements anymore. He has had trouble making friends in Dallas. After Mr. Cloud retired in 2006, he has had two jobs. One job was in Massachusetts. He was putting training camps together for high schools and colleges but he was not getting the clients he thought he would get. Then he moved to California and was a trainer at a fitness club but he was "released." When asked why he was released he said, "I had trouble communicating with clients. I became withdrawn. I hung out in the men's locker all day. I didn't want to meet the clients." Mr. Cloud moved to Dallas 3 ½ years ago.

**Activities of Daily Living:** Mr. Cloud lives with his wife and 2-year-old son. When asked if he helps with cleaning and upkeep around the residence he said, "I'm not as tidy as I used to be." When asked about traveling in unfamiliar places he said, "I don't like it. If I have to meet a group of people it bothers me." He does not use public transportation. He and his wife prepare meals and go shopping for groceries together. His wife handles the finances.

**Social Functioning:** When asked how he gets along with friends Mr. Cloud said, "I get along." He has been married for 1½ years. He gets along well with his wife. He speaks with his parents twice a week. He gets along well with his 43-year-old and 40-year-old brothers. When asked how he gets along with people in authority he said, "They don't bother me."

2.

CLOUD-AR-309

Michael A. Cloud                    SSN: 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

**Ability to Complete Tasks Timely and Appropriately:** When asked if he is able to complete tasks in a timely and appropriate manner Mr. Cloud said, "I don't put clothes away. I start putting them away but never finish it. I start reading articles but I don't finish them. I have headaches and they get worse when I am focusing."

**Deterioration and Decompensation:** Nothing new this year.

## V. PAST HISTORY
**Education:** Graduated from Boston College
**Birthplace:** Rhode Island
**Siblings:** Two brothers
**Parents:** Good relationship with parents
**Children:** 2-year-old son
**Legal:** Denied
**Military History:** No
**Marital Status:** Newlywed
**Medical:** Concussions plus various physical injuries from football
**Substance Use:** Denied

## VI. MENTAL ASSESSMENT
**Appearance, Behavior, and Speech:** Described earlier.

**Thought Process:** Logical, goal-directed, but slow.

**Thought Content:** Mr. Cloud does have some paranoid thoughts. For example, when he is jogging by himself he feels like a car is going to slow down to "evaluate" him. He only has these thoughts when he is by himself. He denied suicidal and homicidal ideation.

**Perceptual Abnormalities:** Mr. Cloud denied hallucinations.

**Mood and Affect:** When asked about his mood Mr. Cloud said, "Lethargic, days go by slow. I have no energy." His family has noticed this and he said he "tries to mask it." His affect was depressed and blah.

**Sensorium and Cognition:**
**Orientation:** Mr. Cloud was oriented to person, place, and date. He accurately stated the name of the current president.

**Immediate memory:** He was able to repeat three objects. He was able to repeat five digits forward.

**Recent Memory:** He remembered the clinician's name. He was able to recall two out of three objects after a five-minute interval. He remembered what floor he was on.

**Remote Memory:** He accurately stated his birth date, birth place, and the name of his high school. He recalled one of his teacher's names. He accurately stated the last three presidents.

**Working Memory:** He was able to repeat five digits backward. He was able to spell the word WORLD forward and backward, on the second attempt. He was able to slowly do simple and complex mental math. He repeated every problem out loud before he gave his answer. He was able to do serial 7s.

**Proverb Interpretation:** When asked what does don't cry over spilled milk mean he said, "Don't complain." When asked what does Rome wasn't built in a day mean he said, "Things take time."

3

CLOUD-AR-310

E-Ballot 02/22/2016                                                    DICC Page 24

Michael A. Cloud                        SSN: 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

Similarities: When asked in what way are an apple and a banana alike he said, "Fruit." When asked in what way are an airplane and a car alike he said, "Transportation." When asked in what way are a desk and a bookcase alike he said, "Accessorize each other."

Fund of Information: Mr. Cloud does not know how many weeks are in a year. He accurately stated the capital of Texas. People have lungs "to breathe."

Judgment and Insight: When asked how he understands his mental illness he said, "Makes me not want to do things throughout the day. Makes me not want to be involved with people, body is always in pain." He does not know what is causing his depression. If he smelled smoke in a crowded theater he would "run." If he found a stamped, addressed envelope on the street he would "put it in the mailbox."

VII. INTELLECTUAL, EXECUTIVE, MEMORY, AND ACADEMIC FUNCTIONING
Wechsler Adult Intelligence Scale– Fourth Edition (WAIS-IV)

| Verbal Comprehension Subtests | Scaled Scores |
|---|---|
| Similarities | 8 |
| Vocabulary | 9 |
| Information | 8 |

| Perceptual Reasoning Subtests | Scaled Scores |
|---|---|
| Block Design | 9 |
| Matrix Reasoning | 11 |
| Visual Puzzles | 8 |

| Working Memory Subtests | Scaled Scores |
|---|---|
| Digit Span | 7 |
| Arithmetic | 9 |

| Processing Speed Subtests | Scaled Scores |
|---|---|
| Symbol Search | 9 |
| Coding | 9 |

| Indexes | Standard Score | Percentile Rank |
|---|---|---|
| Verbal Comprehension | 91 | 27 |
| Perceptual Reasoning | 96 | 39 |
| Working Memory | 89 | 23 |
| Processing Speed | 93 | 34 |
| Full Scale IQ | 91 | 27 |

On the intellectual measure, Mr. Cloud scored overall in the average range with a percentile rank equivalent of 27.

The Verbal Comprehension Index (VCI) measures verbal conceptualization, knowledge, and expression. The examinee is required to answer oral questions that measure factual knowledge and word meanings and to reason verbally and express ideas in words. On this index, Mr. Cloud scored overall in the average range with a percentile rank equivalent of 27.

4

CLOUD-AR-311

E-Ballot 02/22/2016                                                    DICC Page 25

Michael A. Cloud                          SSN: 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

The Perceptual Reasoning Index (PRI) measures nonverbal thinking and visual motor coordination. The examinee is required to integrate visual stimuli, reason nonverbally, and apply visual-spatial and visual-motor skills to solve the kinds of problems that are not school taught. On this Index, Mr. Cloud scored overall in the average range with a percentile rank equivalent of 39.

The Working Memory Index (WMI) measures auditory attention and number ability. The examinee is required to respond to oral stimuli involving remembering a series of numbers and performing math word problems. A good attention span is necessary for success on this Index. On this Index, Mr. Cloud scored overall in the low average range with a percentile rank equivalent of 23.

The Processing Speed Index (PSI) measures the ability to solve a variety of nonverbal problems as quickly as possible. This index measures speed of thinking as well as fine motor speed. On this Index, Mr. Cloud scored overall in the average range with a percentile rank equivalent of 34.

Wechsler Memory Scale – Fourth Edition (WMS-IV)

| Auditory Memory Subtests | Scaled Scores |
|---|---|
| Logical Memory I | 6 |
| Logical Memory II | 8 |
| Verbal Paired Associates I | 7 |
| Verbal Paired Associates II | 9 |

| Visual Memory Subtests | Scaled Scores |
|---|---|
| Designs I | 7 |
| Designs II | 7 |
| Visual Reproduction I | 7 |
| Visual Reproduction II | 7 |

| Immediate Memory Subtests | Scaled Scores |
|---|---|
| Logical Memory I | 6 |
| Verbal Paired Associates I | 7 |
| Designs I | 7 |
| Visual Reproduction I | 7 |

| Delayed Memory Subtests | Scaled Scores |
|---|---|
| Logical Memory II | 8 |
| Verbal Paired Associates II | 9 |
| Designs II | 7 |
| Visual Reproduction II | 7 |

| Indexes | Standard Score | Percentile Rank |
|---|---|---|
| Auditory Memory | 85 | 16 |
| Visual Memory | 82 | 12 |
| Immediate Memory | 78 | 7 |
| Delayed Memory | 84 | 14 |

On the memory measure, Mr. Cloud's scores ranged from borderline to low average. His scores on the memory measure are commensurate with his Full Scale IQ of 91.

5

CLOUD-AR-312

E-Ballot 02/22/2016                                                                DICC Page 26

Michael A. Cloud                          SSN: 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

Wide Range Achievement Test – Third Edition

|                  | Standard Score | Percentile Rank | Grade Equivalent |
|------------------|----------------|-----------------|------------------|
| Word Reading     | 91             | 27              | 11.2             |
| Spelling         | 86             | 18              | 8.8              |
| Math Computation | 88             | 21              | 7.4              |

Mr. Cloud's standard scores on the achievement measure are in the low average to average range and commensurate with his Full Scale IQ of 91.

Trail Making Tests

Having Mr. Cloud connect numbers in ascending order assessed simple and divided attention. Speed of performance (18 seconds) was high average and no sequencing errors were made. On a more complex sequencing task that required him to alternate between numbers and letters in ascending order, speed of performance (56 seconds) was average with two sequencing errors.

VIII. EMPHASIS QUESTIONS: Based on observations, history, medical records, and Mr. Cloud's performance during this exam, his reasoning abilities are good. His ability to make occupational, social, and personal adjustments is significantly impacted by his depression. Mr. Cloud scored overall in the borderline range on the Immediate Memory Index but there is no evidence of significant memory loss or dementia.

IX. DIAGNOSTIC IMPRESSION

Axis I:       296.33 Major Depressive Disorder, Recurrent, Severe Without Psychotic Features.

Axis II:      V71.09 No Diagnosis on Axis II.

Axis III:     Physical Disorders and Conditions – Deferred to Physician.

Axis IV:      Severity of Psychosocial Stressors – Unemployed.

Axis V:       Global Assessment of Functioning – 48 (current).

X. PROGNOSIS: Fair to Good. Good with medical and psychological treatment of his depression. Mr. Cloud's immediate memory may improve after his depression is treated. Based on his neuropsychological functioning, once Mr. Cloud's mental health improves and his headaches and physical pain are properly managed, he should be able to work again.

XI. CAPABILITY: Mr. Cloud understands the meaning of filing for benefits, but he does not appear to be capable of managing funds due to his depression. His wife has been handling the finances.

Anne Smith, Ph.D.                                   Date: 01-22-2013

8

CLOUD-AR-313

Telephone Answered 24 Hours
(612) 378-2363
FAX (612) 378-2215

Mailing Address:
Broadway East Bldg.
Suite 160
3433 Broadway St. NE
Minneapolis, MN 55413



**Primary
Behavioral
Health
Clinics, Inc.**

February 2, 2012

VIA FAX AND U.S. MAIL

James R. Waldhauser, Esq.
Cousineau McGuire Chartered
1550 Utica Ave. S, Suite 600
Minneapolis, MN 55416-5318

FEB ⁻ 6 N.C

RE:    Michael Cloud

Dear Mr. Waldhauser:

In response to your request that I give my opinions regarding the neuropsychological evaluation conducted October 28, 2011 by Dr. Nathan W. Nelson, please be advised that I am in receipt of Dr. Nelson's 19 page evaluation, as well as the raw data that he graciously provided to me. My critique of Dr. Nelson's neuropsychological evaluation is based primarily on the findings that he made from the neuropsychometric assessment which ultimately resulted in his interpretation and opinions regarding Mr. Cloud's status. I am responding to the observations and interpretations of Dr. Nelson in the order presented in his 19 page report and will attempt to reference them in order.

Dr. Nelson referred to Mr. Cloud's recitation of his history and injury as a "relatively accurate summary of a concussion that he sustained in 2004" and then he described his mood as "frustrated, dysphoric, and somewhat anxious" (page 2). He also noted that Mr. Cloud "expressed occasional frustration" and had difficulties on "concept formation that entails the ability to benefit from external feedback". He also indicated that his approach to various tasks appeared to be "impulsive, haphazard", and over the testing period Mr. Cloud complained of a headache, as well as fatigue. He did believe that Mr. Cloud "put forth sufficient effort on presented tasks" and was "very cooperative".

Dr. Nelson further reported that Mr. Cloud's account of the 2004 injury appears to be a helmet-to-helmet collision in which he was struck in the right posterior region. Significant physical and cognitive problems occurred immediately after this collision and Mr. Cloud experienced "confusion, disorientation and dizziness as a result of the impact". He was able to walk from the field with assistance (but does not recall doing so) and remained sidelined for the remainder of the game. Mr. Cloud does not recall how he returned to his home in New York, nor does he recall his level of performance for the remaining games for that season. Dr. Nelson notes that when Mr. Cloud attempted to regain his playing status the following spring, he was unable to complete basic plays and assignments and subsequently was released by two teams and

**EXHIBIT**

**A**

Michael Cloud
February 2, 2012
Page 2

ultimately "retired" from the NFL. Mr. Cloud reports to Dr. Nelson that he currently experiences "primary limitations in attention and memory function" and often experiences difficulty in "focusing in conversation and needs others to clarify their comments". He also indicated difficulty initiating daily activities and task completion. He told Dr. Nelson that he is easily distracted and has significant difficulty multi-tasking. He also notes frequent arguments with his wife and becomes upset about her frequent reminders about things that he is suppose to be doing. He also reported frequent difficulty in word-finding and in connecting sentences. He also notes he frequently misplaces common daily items. An analysis of Dr. Nelson's test findings (page 11) indicates that his effort in motivation were "well within normal limits". On the test for attention and concentration his scores placed him in the "low average range", as was his auditory working memory.

Of particular significance would be his performance in executive functioning, an area of the frontal lobes. This region of the brain is extremely important for concept formation, the ability to process external feedback and emotions. Dr. Nelson's measurement of Mr. Cloud's performance on executive functioning "were consistently impaired relative to persons of similar age and education". It should also be noted that several other measures including simple repetitive words and colors were in the "low average range" as were phonemic fluency (the generation of words beginning with a given letter across time trials). In the area of visual/spatial functioning, his scores placed him in the "low average range", as were his scores on motor functioning.

Dr. Nelson's interpretation of Mr. Cloud's personality and emotional functioning certainly take an unusual position relative to his scores (and while he does not identify, I assume he is talking about the MMPI-2) indicating that Mr. Cloud exhibits "limited insight into overall psychological and emotional functioning". He also indicates that Mr. Cloud endorses excessive "somatic symptoms". I think a clinical investigation by Dr. Nelson of Mr. Cloud's history would certainly show that he has had numerous injuries over his career and obviously this would be the source of significant concerns about "somatic symptoms". I think it is also as obvious that given the high level of performance that Mr. Cloud enjoyed in both college, as well as professional football, that the mood at these levels is not one of someone who "complains" about any type of injury, be it physical or emotional.

In summary, it would be my opinion that I find it most unusual that a trained neuropsychologist like Dr. Nathan Nelson, spends some 17 hours (his estimate) in evaluating Mr. Cloud, utilizes standardized tests which show a whole host of neurocognitive problems (traumatic brain injury) and then gives an opinion on page 14 "…it is my opinion that Mr. Cloud's current claimed cognitive symptoms are not causally related to the head injury sustained on October 31, 2004". Dr. Nelson then goes on to assign any problems that Mr. Cloud has currently to "difficulty adjusting to life after football; depression; pain; sleep disturbance". For Dr. Nelson to give an opinion on page 15 that "no diagnosis from cognitive perspective is currently warranted". I would refer Dr. Nelson to the *DSM-IV-TR, page 764 in appendix B,* which states as follows:

CLOUD-AR-315

Michael Cloud
February 2, 2012
Page 3

**Research criteria for mild neurocognitive disorder**

    A. The presence of two (or more) of the following impairments in cognitive functioning,
    lasting most of the time for a period of at least 2 weeks (as reported by the individual
    or a reliable informant):

        1) Memory impairment as identified by a reduced ability to learn or recall
           information
        2) Disturbance in executive functioning (i.e., planning, organizing, sequencing,
           abstracting)
        3) Disturbance in attention or speed of information processing
        4) Impairment in perceptual-motor abilities
        5) Impairment in language (e.g., comprehension, word finding)

While our "gold standard" in diagnostics indicates that Mr. Cloud need only qualify with two of
the five symptoms, and he has all five of the symptoms, he has obviously been experiencing
these problems since his injury in 2004 which obviously is in excess of two weeks duration.

Likewise, I think it is ludicrous to suggest that all of these issues "resolve rapidly" and that
essentially Mr. Cloud sustained an "uncomplicated concussion" (page 15). I also think it is
interesting that Dr. Nelson does not seek out any type of corollary input from such people as his
wife who sees him on a daily basis and is in an excellent position to report many of the
dysfunctions that Mr. Cloud suffers. I would agree with Dr. Nelson that Mr. Cloud would
benefit from some individual counseling as well as marital counseling and may also benefit from
consulting with a vocational psychologist or rehabilitation specialist, but to suggest that he has
no "problems" seems to contradict many of Dr. Nelson's findings and what he was able to gather
in 17 hours of assessment. While Mr. Cloud is not in a nursing home with 24 hour care, he
certainly is hardly "cured" or unimpaired. He graduated from Boston College, he didn't just
attend, and he didn't "retire" from the NFL, they cut him.

With respect to Mr. Cloud's current condition and future needs, I think it is relatively apparent
that given the nature of his injury there are certain things he needs to avoid. These would
include, but not be limited to, making complex decisions involving a variety of everyday
activities including, financial, childcare, recreational, vocational and anything that may involve
complex reasoning. Fortunately he has a supportive wife who can assist him in many of these
decision making processes. He also needs to avoid stressful situations, as much as possible,
since these seem to trigger negative emotional responses on his part.

He also needs an extensive consultation with a neurologist with expertise in this type of post
concussive syndrome to adequately diagnosis his condition and recommend any possible
physical treatments. Such treatments may involve medication management or some of his
symptoms. Certainly, having some type of ongoing counseling would help Mr. Cloud in making

CLOUD-AR-316

Michael Cloud
February 2, 2012
Page 4

adjustments to his disability. For that reason, I certainly would not be of the opinion that he has reached maximum medical improvement per our statutory guide lines.

I will provide the requested permanent partial disability rating per Minnesota Statute 5223.0360 Subpart 7, Paragraph D, utilizing the Weber decision. I would rate Michael Cloud between Categories 2 and 3 with a permanent partial disability rating of 27%. I arrive at this rating by considering those two categories which most represent his degree of psychological/psychiatric disturbance and utilizing the Weber decision which allows the examiner to rate between categories when an individual does not fit specifically into one category, I chose these two categories because his condition exceeds category 2, "mild emotional disturbance", but he does not meet the full criteria under category 3, "requires some supervision on a daily basis." These two categories have a range from 20-40% and, thus, utilizing the Weber decision, I am placing him between the categories at 27% permanent partial disability.

It should also be noted that I have an extensive library of articles regarding traumatic brain injury and would certainly be willing to make these available to you and I have reviewed many of these articles as part of the preparation of this report.

If you have any questions or need clarification of any of these responses feel free to contact me directly.

Sincerely,

*SP Cronin*

John Patrick Cronin, Ph.D., M.P.H.
Licensed Psychologist
Clinical Director
Diplomate, American College of Forensic Examiners

JPC:sp

No single measure should be considered absolute. Conclusions reached in this report are subject to the limitations of scientific procedures, validity and reliability standards established by test authors, and the impossibility of making absolute predictions.

CLOUD-AR-317



Telephone Answered 24 Hours
(612) 378-2363
FAX (612) 378-2215

Mailing Address:
Broadway East Bldg.
Suite 160
3433 Broadway St. NE
Minneapolis, MN 55413

**Primary
Behavioral
Health
Clinics, Inc.**

August 1, 2011

VIA FAX AND U.S. MAIL

James Waldhauser, Esq.
Cousineau McGuire Chartered
1550 Utica Ave. S., Ste. 600
Minneapolis, MN 55416-5318

RE: Michael Cloud

Dear Mr. Waldhauser:

At your request, I have met with your client, Michael Cloud, on June 14, 2011 in Dallas, Texas.
You asked for a preliminary report regarding Mr. Cloud's status, as well as recommendations
that I may have for treatment and for his future.  I have also conducted a phone interview with
his fiancée (now wife), as well as had her complete a history of how Michael has changed since
sustaining numerous work related football concussions.

Mr. Cloud's history suggests that he sustained significant concussions over the course of his
college and professional football career and his history suggests these go back to 1998 when he
played for Boston College initially.  He reports he had more serious concussions while playing
for Kansas City in 1999, as well as the New England Patriots in 2003 and lastly with the New
York Giants in 2004 and 2005.  He indicated that as a result of these traumatic brain injuries, he
began to lose his memory, concentration and suffered from vertigo, as well as tunnel vision and
ultimately, due to his inability to recall basic football plays was released from the New York
Giants.

Mr. Cloud's current life finds him living in Dallas, Texas where he functions as a part-time
personal fitness trainer, mainly for young high school athletes.  He indicates he does this work
sporadically and also functions as a stay-at-home dad for their 8-month-old child.  Mr. Cloud's
wife is a practicing attorney with a Dallas law firm.

Michael continues to suffer from fatigue, as well as low back pains, neck, foot and ankle and
numbness in his right arms.  He also reported he feels depressed much of the time and his sleep
is extremely problematic and he rarely sleeps more than two hours at a time.  On a personal
level, Michael indicated while he has always done well in school (high school diploma, as well
as completing a Bachelors Degree in Sociology and four years from Boston College), he now
finds school extremely hard and finds it difficult to concentrate on current learning activities
involving business planning, finance and real estate.  He indicated his current goal is to open a
sports training complex in the Dallas area adjacent to a major hospital and while he is attempting

CLOUD-AR-318

Michael Cloud
August 1, 2011
Page 2

to put the financing together, he finds it extremely difficult to focus on this project. He also reports to me he has some vestiges of obsessive compulsive disorder that still plague him.

I administered a standard battery of psychological test to Michael and essentially, these were the results:

Hopkins Symptom Checklist: The Hopkins Symptom Checklist revealed significant problems related to memory, worrying about sloppiness, feeling easily annoyed, feeling apprehensive, doing things slowly to be sure it is right, soreness in muscles, checking and double checking things he does, difficulty making decisions, mind going blank often, numbness or tingling in parts of his body, having trouble concentrating and feeling tense or keyed up.

Pain Report Recovery Index: The Pain Report Recovery Index reveals significant issues related to depression, continuous pain, obsessive/compulsive behavior, social and marital problems and lack of initiative.

Individual Problem Rating Form: The Individual Problem Rating Form notes significant issues related to sadness and depression, anxiety and fear, sleep problems and resolving old resentments.

MMPI-2: His profile revealed a marked elevation of the F scale which statistically invalidates the profile. While the profile may not be of use in a forensic setting, it still may have utility as a treatment planning tool and should be used in this regard. The clinical scales suggest a Chronic Pain Syndrome with clinical depression. Intermittent confusion in his thought process is noted, as is preoccupation with bodily dysfunction, paranoia, suspiciousness, social isolation and impulsivity. Subscales were consistent with these findings. On the Critical Items section he did endorse numerous critical items suggestive of an acute anxiety state, depressed suicidal ideation, threatened assault, situational stress due to alcohol, mental confusion, persecutory ideas, antisocial attitudes, family conflict, somatic concerns, sexual concerns, anxiety and tension, sleep disturbance, deviant thinking, deviant beliefs and problematic anger. Again, the profile should be use primarily as a treatment planning tool.

Beck Depression Inventory: On the Beck Depression Inventory his score placed him above the cut-off for clinical depression and would suggest the need for a trial of psychotropic medication to help deal with this condition.

Cornell Index: A score of -44 is four times the above the cut-off for individuals who may be harboring self-destructive thoughts. Again, psychological/psychiatric care should be instituted.

Career Assessment Inventory: On the Career Assessment Inventory, his highest areas of work interest would be considered investigative with the other areas being average to

CLOUD-AR-319

Michael Cloud
August 1, 2011
Page 3

slightly below average in terms of his basic interest. By specific occupations he would find
the most satisfaction in chiropractic, restaurant manager, caterer, accountant, math science
teacher and a food service manager.

Collateral Interview: On June 27, 2011, I had a phone interview with Jennifer Lindsey.
Ms. Lindsey indicated that she was Michael's fiancée and they were planning to marry in
early July of this year. When I asked her about her history of Michael, she said she has
known him for over ten years, but only in the last few years have they had a romantic
relationship that has culminated in the birth of an 8-month-old child and now with their
subsequent marriage. She described Michael in the past as a very warm and loving
supportive individual, however, in the last few years, she feels he has changed
dramatically and things have gotten much worse in his life, as well as in their
relationship. She gave me some examples of some of the things she indicated "astounded
me" at what he has done. One example was taking their infant child on an airplane to
Rhode Island and not mentioning it to her. He has also had issues relating to forgetting
where their child was in the home and going out for a jog. She also notes issues related
to social withdrawal, as well as emotional labiality and is concerned this is getting worse
over time.

Based on the evaluation, observation and collateral communication thus far, it would seem
reasonable to assume Michael has sustained at least one, if not several, closed head injuries and
is definitely in need of a more thorough work up, as well as professional assistance in dealing
with a number of critical issues in his life. I will make the necessary arrangements to coordinate
for a more in depth neuropsychological evaluation and will update you when the analysis is
complete. If you have any questions in the interim, feel free to contact me directly as we have
properly executed releases to discuss Mr. Cloud's case.

Sincerely,

John Patrick Cronin, Ph.D., M.P.H.
Licensed Psychologist
Clinical Director
Diplomate, American College of Forensic Examiners

JPC:sp

No single measure should be considered absolute. Conclusions reached in
this report are subject to the limitations of scientific procedures, validity and
reliability standards established by test authors, and the impossibility of
making absolute predictions.

CLOUD-AR-320

# Jeffrey A. Berman, M.D.

A Professional Corporation
Diplomate, American Board of Orthopaedic Surgery
Fellow, American Academy of Orthopaedic Surgeons
Orthopaedic Surgery • Sports Medicine

Century City Medical Plaza, Suite 305, 2080 Century Park East, Los Angeles, CA 90067 • (310) 553-5633 • Fax (310) 553-3214

August 2, 2011

The Honorable Presiding Judge
Workers' Compensation
Appeals Board
6150 Van Nuys Boulevard
Room 110
Van Nuys, CA  91401-3370

RE:  MICHAEL CLOUD

     EMP:     Kansas City Chiefs
     WCAB#:  Unassigned
     EAMS#:  ADJ 7419384
     CLAIM#: 01WC0488634
     D/I:    October 13, 2002

## AGREED MEDICAL EVALUATION

To Whom It May Concern:

I declare under penalty of perjury that this evaluation
clearly warrants billing at the ML103 complex level.  This
is a complex case in light of the issues discussed.
Criteria are satisfied for billing at the complex level.

There is discussion of causation and apportionment, along
with review of records.  This evaluation is billed
accordingly as a complex ML103 level evaluation with AME
modifier.

MICHAEL CLOUD
August 2, 2011
Page 2


This 36-year-old male professional football player for the Kansas City Chiefs is seen for an orthopaedic agreed medical evaluation on August 2, 2011. The history is obtained from the patient, as well as from review of submitted medical records.


CHIEF COMPLAINT:

Right ankle and foot.


HISTORY:

He states that he was in his usual state of health until October 13, 2002, when he describes an incident which occurred while playing football. He was playing in California. He describes an injury to the right ankle and foot. While playing, he experienced a "pop" in his right foot.

He attempted to continue playing; however, the pain in the right foot was very significant. He was seen by the team doctor. He underwent x-rays and had an ultrasound study. Ice was applied. He was given injections for pain and he would tape the foot and ankle.

He attempted to practice and continue playing and training. He missed two games as a result of this injury. He then played two more games. He would receive injections to the foot.

He states that he developed some lower back complaints related to changes in the way he would run and walk.

In December 2002, his contract expired with the Kansas City Chiefs, where he had been playing.

In the summer of 2003, he was training with a different team. He was with the New England Patriots. He recalls that his right foot and ankle "snapped." He developed a

CLOUD-AR-322

MICHAEL CLOUD
August 2, 2011
Page 3


compartment syndrome.  He was told that he developed
peroneus longus necrosis.  He underwent surgical
intervention.  He received treatment postoperatively.

He played for the New England Patriots for one year.  He
then played for the New York Giants.  He retired in 2006.
After the above-noted injuries, he denies any further
injuries.

He is not receiving any formal treatment at this time.  He
is no longer playing football.  He last played professional
football in January 2006.


PRESENT COMPLAINTS:

There is pain in the right foot and ankle.  He describes
soreness, tenderness, and pain in the Achilles region.
There are complaints in the arch and posterior ankle near
the attachment of the Achilles tendon.

He has slight numbness in the right fifth toe.  There is no
pain along the anterolateral aspect of the lower leg as it
relates to the compartment syndrome.

Complaints are referred proximally toward the lower back,
and are described as stiffness and a shooting type of pain.

He denies any other areas of orthopaedic involvement.  He
has filled out a pain drawing, reflecting only these areas
of involvement, as noted.

He does not take any prescription medications.  He will
utilize over-the-counter pain medication and anti-
inflammatory medications.


ACTIVITIES OF DAILY LIVING:

He has filled out a pain questionnaire and an activities of
daily living questionnaire.  He has indicated daily

CLOUD-AR-323

E-Ballot 02/22/2016                                        DICC Page 37

MICHAEL CLOUD
August 2, 2011
Page 4


complaints of pain with activities.  This essentially
concerns the right foot and ankle areas.  Certain weight-
bearing and loading activities cause pain.  He will limit
activities to prevent his pain from worsening.

While he may have complaints with certain activities, as it
relates to the right lower extremity, he clearly indicates
that this does not affect daily activities, such as bathing,
dressing, showering, and self-hygiene activities.


PAST MEDICAL HISTORY:

He has had other injuries.  As noted, in the summer of 2003,
while playing for the New England Patriots, he developed
compartment syndrome and underwent surgery.  This related to
the lower leg, and he felt that he never fully recovered.

He sustained a head injury while playing for the New York
Giants.  This was near the end of his employment.

He developed a left great toe problem while in college at
Boston College.  He was told that he developed a "cyst."
This was in approximately 1995.  He underwent surgery and
this healed uneventfully.  He did well.

He cannot recall any other pertinent orthopaedic history,
other than what has been described above.

Surgeries include the right lower leg surgery for
compartment syndrome, and the left great toe surgery in
college.

He denies any medical problems.


JOB DESCRIPTION:

He played professional football as a running back.  He
played for approximately seven years.  He initially played
with the Kansas City Chiefs.  This was his first team as a

CLOUD-AR-324

MICHAEL CLOUD
August 2, 2011
Page 5


professional football player.  He was playing for the Kansas
City Chiefs from approximately 1999 until 2002.  He then
played for the New England Patriots in 2003.  In 2004, he
played for the New York Giants.

In 2005, he apparently played for the New England Patriots
and the New York Giants.

He last played football in January 2006.

He did lifting, which would be significant, as it relates to
weight-training.  There was bending, stooping, pushing,
pulling, squatting, kneeling, standing, walking, climbing,
and overhead activities.

He did a lot of running in training, in practice and in
games.  There was physical contact with tackling and being
tackled.


PHYSICAL EXAMINATION:

The patient is a well-developed, well-nourished male.

The patient walks with a slightly abnormal gait pattern.  He
tends to favor the right side with a slight antalgic
component.  He does not completely normally roll over on his
right as in a normal heel-to-toe progression.

The pelvis is level.  Trendelenburg sign is negative.

Lumbar Spine Examination

On examination of the lumbar spine, he moves through
excellent range of motion of the lumbar spine.  He does not
have significant complaints with mobility.  He describes a
"pinch" along the right side of the lower back.

MICHAEL CLOUD
August 2, 2011
Page 6

| Range of Motion - Lumbar Spine | Right | Left | Normal |
|---|---|---|---|
| Flexion | | 60 | 60 |
| Extension | | 25 | 25 |
| Deviation | 25 | 25 | 25 |

In a sitting position, straight leg raise is negative.

In a supine position, straight leg raise is completely negative for any elicited lower back pain or nerve root irritability. There is no radiculopathy. Fabere and Lasègue's are negative.

In a prone position, there is no lumbar paraspinal spasm or tenderness. There is no midline spinous process tenderness, posterior iliac spine tenderness, sciatic notch tenderness, or posterior thigh tenderness.

Hip Examination

Examination of the hips reveals no obvious abnormality to inspection. There are no areas of tenderness to palpation about the hips.

Range of motion is noted to be normal and symmetrical with the contralateral side. There is no elicited pain or crepitus with mobility of the hips.

| Range of Motion - Hips | Right | Left | Normal |
|---|---|---|---|
| Flexion | 110 | 110 | 110 |
| Extension | 30 | 30 | 30 |
| Internal rotation | 35 | 35 | 35 |
| External rotation | 50 | 50 | 50 |
| Abduction | 50 | 50 | 50 |
| Adduction | 30 | 30 | 30 |

Knee Examination

On examination of the knees, there is no obvious swelling or effusion noted. There is a 10" lateral right lower leg

MICHAEL CLOUD
August 2, 2011
Page 7


scar.  There is some deep anterolateral and lateral tenderness, right lower leg.

Range of motion of the knees is normal and symmetrical. There is no pain or crepitus with mobility of the knees.

| Range of Motion - Knees | Right | Left | Normal |
|---|---|---|---|
| Extension | 180 | 180 | 180 |
| Flexion | 135 | 135 | 135 |

There is negative Lachman, negative anterior drawer and no collateral instability to varus or valgus stress in full extension or 20 degrees of flexion.  There is negative McMurray and negative pivot shift.

Patellofemoral mobility is normal.  There are negative patellofemoral inhibition and apprehension signs bilaterally.

Ankle Examination

Examination of the ankles reveals no swelling, effusion or deformity.

There is tenderness in the right Achilles and calcaneal tuberosity, posterior ankle.

There is negative Tinel's at the tarsal tunnel.

Range of motion of the ankles is noted to be normal and symmetrical.  There is no elicited pain or crepitus with mobility of the ankles.

| Range of Motion - Ankles | Right | Left | Normal |
|---|---|---|---|
| Dorsiflexion | 15 | 15 | 15 |
| Plantar flexion | 50 | 50 | 50 |
| Eversion | 20 | 20 | 20 |
| Inversion | 35 | 35 | 35 |

CLOUD-AR-327

MICHAEL CLOUD
August 2, 2011
Page 8


Subtalar mobility is noted to be 100% of normal and symmetrical bilaterally, without elicited pain.

Foot Examination

On examination of the feet and toes, there is no obvious swelling noted.  There is a 3" left medial forefoot scar from prior surgery in college.

There is tenderness in the right mid arch.

Mobility is noted to be normal and symmetrical involving the toes.

| Range of Motion - Great Toe | Right | Left | Normal |
|---|---|---|---|
| Metatarsophalangeal joint | | | |
| Extension | 40 | 40 | 40 |
| Flexion | 25 | 25 | 25 |
| | | | |
| Interphalangeal joint | | | |
| Extension | 0 | 0 | 0 |
| Flexion | 30 | 30 | 30 |

Neurovascular Examination

Sensation and motor examination are normal.

Reflexes are intact and symmetrical.

Pulses are normal and symmetrical.

Circumferential Measurements, Lower Extremities

| | Right | Left |
|---|---|---|
| 10 cm above the patella | 54 | 55 |
| Maximal calf | 44 | 44 |

CLOUD-AR-328

Case 3:20-cv-01277-S   Document 16-3   Filed 01/05/21   Page 269 of 435   PageID 466

MICHAEL CLOUD
August 2, 2011
Page 9


X-RAYS:

Lumbar spine:  Alignment is normal.  There is no obvious
spondylolysis or spondylolisthesis.  Disc spacing is
maintained for the most part.  There is some narrowing at
L5-S1, but this is clearly not advanced.  Also, there are no
obvious hypertrophic changes, such as osteophytes.

Right ankle:  The mortise is preserved.  No significant
degenerative changes are noted.

Right foot:  Unremarkable.


RECORD REVIEW:

A claim form dated August 3, 2010 is reviewed noting CT
injury of January 1, 1999 through December 31, 2005 to the
head and brain due to repetitive high velocity impacts to
the head and body.

A claim form dated August 3, 2010 is reviewed noting of
October 13, 2002 to his foot when a player stepped on his
foot.

Personnel records are noted.

Handwritten Kansas City Chiefs football club orthopaedic
examination dated April 24, 2002:  Notes history.  1984 low
back spasm.  1995 left hip strain.  December of 2001 right
posterior hip pointer.  1997 right knee sprain.  1995 right
ankle sprain.  1995 left ankle sprain.  December of 1995
left foot first metatarsal.

Evaluation, Dr. Browne, October 14, 2002:  He is seen for
evaluation for injuries sustained to the dorsum of his right
foot yesterday during a game.  He planted hard with his
right foot to cut back to the right and in the process,
another player stepped on his foot.

CLOUD-AR-329

MICHAEL CLOUD
August 2, 2011
Page 10

His contact was made actually on a double team.  He
developed tenderness primarily through the anterior aspect
of the foot.  This occurred in the latter part of the fourth
quarter.

Today, he has discomfort of the dorsum of the right foot
overlying the first metatarsal junctional area, perhaps
right between the first and second metatarsal areas.  It is
a bit difficult getting him up on his tiptoes, but there is
no appreciable swelling or soft tissue crepitus felt there.

Impression:  Lisfranc joint contusion with possible Lisfranc
ligamentous sprain, doubt intraarticular fracture.  It would
be appropriate to get an MR x-ray, which will be scheduled
for early tomorrow morning, to make sure that there is no
underlying major ligamentous disruption and/or fracture of
the area.

He has been encouraged to modify his exercise workout
activity.  He is to continue with anti-inflammatory
medication.  He will be followed again at the Arrowhead
facility in two days.

MRI study, right foot, October 16, 2003:  Impression:
Minimal edema in the dorsal superficial fascia of the
midfoot.  No bone contusion, fracture, or malalignment.
Intact Lisfranc ligament and joint.

MRI, right midfoot, October 15, 2002:  Impression:  Evidence
of some soft tissue edema with increased T2 signal
surrounding the proximal aspect of the second metatarsal and
along the adjacent dorsum of the midfoot.

No MRI evidence of a focal midfoot fracture nor evidence of
stress fracture at this time.  Normal uniform width of the
intertarsal joint spaces and tarsometatarsal joints.

Follow-up report, Dr. Browne, October 20, 2002:  He returns
for follow-up of his right anterior midfoot sprain, right
above the meta tarsotarsal junctional area of the second
ray.  Plan:  Continue to monitor his progress with the

MICHAEL CLOUD
August 2, 2011
Page 11


athletic training staff and the medical staff.  He will
continue the anti-inflammatory medication.  He will follow-
up on a regular basis.

Progress report, Dr. Browne, October 23, 2002:  He has had
quite a bit less discomfort.  He is now able to run hard,
make pivots, and twist.  He still has a little bit of
discomfort toward the latter part of practice and with
longer periods of running.

Plan:  Intensify his workout program.  He will be allowed to
increase his activity using a small arch support and strap
taping, which does provide some relief of his discomfort as
well.  He will continue to be monitored and followed by the
training and medical staff.

Note, Dr. Barnthouse, November 13, 2002:  He participated in
practice today and during and following had some mild
soreness with attempts to (blank) and push off.  Following
practice, he was primarily sore in the distal aspect of the
arch in the area between the first and second metatarsals.

He was less sore to palpation over the dorsum of the foot.
He still has some mild pain with adduction of the forefoot.
Impression:  Resolving midfoot sprain.  Have suggested
attempts to continue supporting of the foot.  Should be
continued to play as symptoms allow.  Should symptoms
persist or increase, suggest repeat evaluation with x-rays
of the foot.

Progress note, Dr. Barnthouse, November 20, 2002:  He is
doing much better.  The inserts are helping a great deal.
He is also using a magnet device, which he thinks is
helping.

Following practice today, he had no swelling.  Could not
find an area of soreness in the right foot.  He seems to be
returning well.  He is working out normally with minimal
symptoms.

CLOUD-AR-331

MICHAEL CLOUD
August 2, 2011
Page 12


Note, Dr. Barnthouse, May 18, 2001:  He apparently sustained
an injury to his right ring finger on May 15, 2001 when he
jammed his finger.  He was evaluated by training staff.  He
apparently had full extension and flexion, but was slightly
sore over the radial aspect near the middle phalanx.

At this point, suggest that if he is tolerating the symptoms
reasonably well, that he still protect the finger for
football activities.  Will be rex-rayed in the next four to
five days.  If he has any ongoing significant symptoms or
signs of swelling or other dysfunction, suggest that he be
seen in the office.

Note, Dr. Barnthouse, August 7 (year not provided):  He is
seen for evaluation of his left foot.  There is an area of
skin maceration between the fourth and fifth toes of the
left foot.  Has evidence to suggest a soft corn in the area.
There is no evidence (blank), redness, swelling, or
infection.

Mainly evidence of skin maceration.  He is receiving
treatment with betadine and saline soaks.  Will have him
continue to wear spacers.  Suggest x-rays when he returns to
the Kansas City area to evaluate the condyles of the
phalanges.

Note, Dr. Barnthouse, December 23, 2001:  Sustained a blow
to the posterior hip during a game.  He was unable to return
at the time.  It appeared that he had primarily a posterior
hip pointer.

He was seen following the game, at which time, the pain
remained isolated to the posterior aspect of the iliac
crest.  He had full hip motion.  He was locally tender just
in the area of the muscle attachment in that area.  X-rays
of the hip showed no evidence of any bony abnormality.

X-rays of the back showed no evidence of any bony
abnormality, specifically no evidence of any spinous process
fracture.  Impression:  Right posterior hip pointer.  Ice

MICHAEL CLOUD
August 2, 2011
Page 13


application is recommended.  He was given Vioxx.  He will
return for follow-up tomorrow.

Follow-up report, Dr. Barnthouse, December 26, 2001:  He
worked out well today and had minimal soreness.  He seems to
be recovering well from the injury.  Will have him continue
to return to practice progressively and will monitor any
return of symptoms.

Note, Dr. Noblin, August 9, 1999:  His right heel was looked
at.  Basically, there is a small 1 x 2 cm area.  There is a
very good granulation base at the base of the Achilles from
a previous blister.  Certainly no area of cellulitis around
rhombus spot.

Excellent granulation bed at this point.  Recommendation is
basically to continue to place some Bacitracin ointment on
it with a protective covering.  Will start some wet to dry
dressings at nighttime.  The next day, will probably end up
wrapping the heel.

He has a lot of friction or forces around the ankle at this
time and the dressing is coming off during practice because
it is getting moist with sweat.  Will wrap it tomorrow.

Notes, Dr. Barnthouse, August 18 and August 19, 1999:
Sustained an injury to the left shoulder on August 17, 1999
when he apparently put his left arm down to brace himself as
he fell at the same time.  Another player hit him on the
anterior shoulder.

He states that he felt pain at the time.  Could not really
describe the sensation of the injury.  Following the
episode, he was able to return to practice.  He has never
had any significant prior shoulder injury.  Impression:
Left shoulder, rule out possible labral tear.

Recommend x-rays of the shoulder, which will be reviewed.
Will continue to follow his progress.  At this point,
certainly he seems to have relatively mild to minimal
findings and is able to participate in practices.  Have

E-Ballot 02/22/2016                                    DICC Page 47

MICHAEL CLOUD
August 2, 2011
Page 14

indicated to him that it is safe for him to continue practice. Will continue to monitor his progress.

Follow-up note, Dr. Barnthouse, (date not provided): He is being seen with regard to his left shoulder. He states that he is able to perform all of his football activities. Occasionally, he notices a nonpainful clicking in his shoulder.

Will continue to monitor his progress. He will continue protective strapping of the shoulder. If the click persists or becomes particularly painful, will discuss with him the possibility of further imaging studies.

Note, Dr. Barnthouse, August 27, 1999: Have reviewed the x-rays of his left shoulder. The humeral head is reduced. No evidence to suggest acute evidence of bony injury or evidence of chronic problems in the shoulder.

MRI study, left shoulder, January 5, 2000: Impression: Tear, glenoid labrum, probably extending from the anterior/superior to the anterior/inferior segment of the labrum. Mild irregularity of the anterior rim of the glenoid. No rotator cuff tear.

Follow-up report, Dr. Browne, January 18, 2000: Seen for follow-up of his left shoulder. He did sustain an injury during this past summer camp. He was seen by Dr. Barnthouse at the time of the initial injury. It was at least suggested at that exam that he probably had a subluxation.

He continued his workouts. He states that he had no limitation with his lifting, running, or workout activities. He absolutely had no symptoms whatsoever while carrying the ball this year or performing his typical blocking duties as a running back. It is believed that he probably had a subluxation event with an asymptomatic residual glenoid labral tear.

He has no anterior instability and/or mechanical catching or popping associated with the finding. He is totally

MICHAEL CLOUD
August 2, 2011
Page 15


asymptomatic.  At this point, it would be hard to encourage
or recommend an arthroscopic evaluation for surgical
management with these findings.  The player feels
comfortable with his particular treatment program.

Have asked him to continue to work diligently on his
strengthening exercises and be in touch with the training
staff periodically to follow-up on his progress prior to
returning back to Kansas City for the regular off season
workout program.  He, of course, will be seen again sooner
should there the need arise.

X-rays, cervical spine, February 19, 1999:  Impression:
Normal.

X-rays, right knee, February 19, 1999:  Impression:  Okay.

X-rays, left foot, February 19, 1999:  Impression:  Minimal
degenerative changes of the left first metatarsophalangeal
joint.  Previous cyst excision from metatarsal head.
Decreased range of motion of right subtalar joint.  No x-
rays yet of right ankle and foot.  Decreased range of motion
of the left MPJ.

List of significant injury history is reviewed.  September
7, 1994:  Neck burner.  April 1, 1995:  Right ankle sprain.
April 23, 1995:  Head, moderate concussion.  August 14,
1995:  Left hip flexor quad strain.  December 12, 1995:
Left foot first metatarsal cyst.  Bone grafting and cyst
debridement.  April 15, 1997:  Right knee medial collateral
ligament sprain.  September 27, 1997:  Left rib contusion.

Michael Einbund, M.D., dated July 6, 2009, qualified medical
evaluation:  This lists employment with the Kansas City
Chief, New England Patriots, and New York Giants.  History
noted that he played professional football as a running back
from 1999 to 2002 for the Kansas City Chiefs.

In 2003, he played for the New England Patriots, and in
2004, for the New York Giants.  In 2005, he played for the
New England Patriots and New York Giants.  In 2002, he

CLOUD-AR-335

MICHAEL CLOUD
August 2, 2011
Page 16


sprained his right mid foot and missed two games.  In 2003,
during offseason training, he sustained a contusion and
hematoma to his right leg and underwent right leg fasciotomy
with removal of necrotic tissue and muscle.

Complaints of mild neck pain on the right side, lower back
pain on the right side.  Pain in the right hip.  Constant
pain in the right knee and right lower leg with numbness to
the two lateral toes.

Locking of the right ankle.  Dropping of the right foot.
Loss of the arch, right foot.  Difficulty sleeping, anxiety,
and stress.

Diffuse tenderness over the plantar arch of the right foot.
Tenderness over the right lateral leg.  An operative report
was reviewed from July 2003, noting a right leg fasciotomy
with anterior and lateral compartment syndrome.  There was
necrotic muscle and tendon.  Peroneus longus.

In September 2003, he continued to do well and regain full
function.  No pain or weakness was noted.  No functional
impairment.  He was running and changing directions.  The
right leg healed with no detectable impairment.

Diagnoses include status post compartment syndrome, right
leg, and lumbar sprain with radicular complaints.  Maximum
medical improvement.  For the lumbar spine, he gives a DRE
category II and an 8% whole person impairment.

For the right leg, he has residuals and ambulates with a
slight limp.  He provides a 10% whole person impairment.
Three percent (3%) would be added for pain-related factors.

There is documentation from the Commonwealth of
Massachusetts regarding injury while playing for the New
England Patriots.  He sustained an injury, July 2003 and was
partially disabled, commencing March 1, 2006 and continuing.

End review of submitted medical records of Michael Cloud.

E-Ballot 02/22/2016                                          DICC Page 50

MICHAEL CLOUD
August 2, 2011
Page 17


IMPRESSION:

1.   Sprain/strain, right foot and ankle.

2.   Clinical evidence suggesting chronic Achilles
     tendinitis and retrocalcaneal bursitis.

3.   Clinical evidence suggesting right plantar fascitis.

4.   Status post compartment syndrome, right lower leg, with
     surgical release of anterior and lateral compartments –
     from records.


DISCUSSION:

This history essentially involves injury to the right lower
extremity.  I am evaluating the applicant in the capacity of
an agreed medical evaluation.

As per the joint cover letter from the parties, I have been
asked to limit my evaluation to the specific injury to the
right foot, which occurred on October 13, 2002.  This
occurred while he was playing for the Kansas City Chiefs as
a running back.

At that time, the injury occurred while playing football.
He experienced a pop in his right foot.  He had significant
complaints of pain and went on to receive medical care.  He
was treated by the team doctor.  He was taped.  He received
treatment measures and injections.

He missed some games.  He required injections to continue
playing subsequently.  It was soon after that incident,
however, that his contract expired and he was no longer
playing for the Kansas City Chiefs.

I did review records.  There was acute documentation
reflecting evaluation and treatment.  An MRI of his right
mid foot showed some edema in the area of the proximal

CLOUD-AR-337

MICHAEL CLOUD
August 2, 2011
Page 18


second metatarsal.  There were no fractures, to include the absence of stress fractures.

An MRI of the right foot subsequently also showed some edematous changes.

Dr. Browne evaluated the applicant and felt that there was probably a lisfranc contusion and sprain.  I believe that was a reasonable impression, given the MRI evidence that there had been edema in the area of the second metatarsal. The lisfranc joint is in that area at the second metatarsal cuneiform region.

There was no evidence of any lisfranc subluxation or dislocation, and no definitive evidence of fracture.  This is an area, however, that did remain symptomatic, to include problems with the arch, Achilles, and calcaneal tuberosity areas.

He does have residuals to these areas.

Unfortunately, his injuries to the right lower extremity are not localized to the right foot and ankle.

Subsequently, while playing for the New England Patriots, he sustained an injury and developed a compartment syndrome. Unfortunately, I do not have full records; however, I do note that there was documentation reflecting this injury.

Ultimately, the documentation that I reviewed noted that he was unable to continue playing because of that July 23, 2003 injury.  That concerned the compartment syndrome.  That also involved the right lower leg.  There is a long scar along the lateral aspect.

Apparently, the lateral and anterolateral compartments were involved.  There was still some deep tenderness. Clinically, he describes some numbness.

CLOUD-AR-338

MICHAEL CLOUD
August 2, 2011
Page 19


Quite frankly, the residuals would seem to be partly related
to his right lower leg compartment injury and surgery and
part related to the foot and ankle injury.

He has not had medical care for some time.

He has long been permanent and stationary/MMI.

He has not had any further treatment nor any further
injuries to these areas.  I believe that his condition did
stabilize when he completed treatment following each of the
injuries.

Subjectively, as it relates to the right lower extremity,
complaints would be constant and slight, reaching slight to
moderate intermittently.

Objectively, he has an abnormal gait pattern.  He does not
completely roll over normally his right foot because of the
problems related to the arch and calcaneal tuberosities.

There is tenderness in the area of the arch, Achilles, and
calcaneal tuberosity, consistent with retrocalcaneal
involvement.  He has a long lateral scar with some deep
anterolateral and lateral compartmental tenderness.

There is no current numbness.

With regards to limitations, I would suggest that he avoid
running, jumping, prolonged weight-bearing, and activities
that would require repetitive or prolonged climbing and work
on uneven terrain.

These are very similar to the limitations that were
described by Dr. Einbund in his report.

While he describes lower back issues, there are really no
findings concerning the lower back.  This has definitely
improved and I do not see any significant residuals.

CLOUD-AR-339

MICHAEL CLOUD
August 2, 2011
Page 20


As it relates to AMA Guides criteria, he has impairment.  He
is definitely better.  He does not have any definitive
weakness.  He does not have any neurological impairment.
There are areas of tenderness.  His gait pattern is
abnormal.

As it relates to a strict rating, one could, perhaps, rate
by analogy and utilize Table 17-33, which is the diagnosis-
based estimates table.

The type of gait pattern that he has would be similar if
there was a metatarsal fracture with loss of weight
transfer.  This would carry a 4% whole person impairment.

This would not, however, completely take into account the
functional aspects of the residuals.  Clearly, this would
not take into account, as well, the functional residuals
concerning the compartment syndrome residuals.

I believe that the station and gait disorder table, 15-6 C,
would be most appropriate.

I note that Dr. Einbund, in his report in 2009, felt that
the gait derangement table should be used and he had
provided a 10% whole person impairment.

I would tend to agree.  This would place him at the upper
end of a class 1 or the lower end of a class 2 category.

If using a direct ADL approach, this would essentially
translate to a 25% capacity loss.  This assumes that 40%
would be the maximum impairment for the lower extremity, if
all function were lost, such as an amputation.

I believe that a 10% impairment would be appropriate.  This
takes into account functionality and "work" impairment, as
well as acknowledging that there has been improvement.

He no longer is capable of playing professional football.

CLOUD-AR-340

MICHAEL CLOUD
August 2, 2011
Page 21


Future care is indicated.  I doubt that he needs anything
surgical.  He will probably require treatment if there is a
flare-up, such as physical therapy, medications, injections,
and other such nonoperative measures.

As it concerns causation and apportionment, this is strictly
industrial as it relates to the football injuries.  There
are no underlying causal factors, per Labor Code Section
4663 or Escobedo.

Quite frankly, there are two injuries while playing for two
different teams that would contribute to the functional
residuals as he presents with this at this time.

Furthermore, and with reasonable medical probability, both
of these injuries would seem to equally contribute to his
current condition.

Part of his functional residuals and impairment at this time
relates to the 2002 injury while with the Kansas City
Chiefs, concerning the foot and ankle.  Part of this relates
to the residuals from the compartment syndrome.

As such, 50% of his present overall right lower extremity
impairment would relate to the compartment syndrome injury
and 50% would relate to the foot and ankle injury which
occurred in 2002.

It should be made clear that the compartment syndrome was
from his employment with the New England Patriots.

This is complicated, and I certainly hope that this
discussion is clear.  If the parties have anything else that
they would like me to address or clarify, then please advise
and I will certainly continue to keep all parties well-
informed.

MICHAEL CLOUD
August 2, 2011
Page 22


DISCLOSURE:

During this evaluation, the patient was interviewed by a
historian, Manuel Rojas, for an initial history.  The entire
medical history was reviewed in detail by myself with the
patient.  Medical records were initially reviewed and
summarized by Karla Montes.  The records were also reviewed
by the undersigned in their entirety, with further additions
to the medical record review.  The entire physical
examination was performed by myself, including various
measurements.  X-rays were obtained by Margo Miller, CRT,
AART, license# RHT 7050.  Assessment was strictly done by
the undersigned.  The above evaluation was carried out at
2080 Century Park East, Suite 305, Los Angeles, California.
All the dictation was prepared by myself, including any and
all impressions and conclusions described in the discussion.
Transcription was provided by Professional Transcribing
Services.

In compliance with recent Workers' Compensation legislation
(Labor Code Section 4628 (b):  "I declare that the above
evaluation was performed by myself and was in compliance
with the guidelines established by the Industrial Medical
Council or the Administrative Director pursuant to paragraph
5 of the subdivision (j) of Section 139.2."

In compliance with recent Workers' Compensation legislation
(Labor Code Section 4628 (j):  "I declare under penalty of
perjury that the information contained in this report and
its attachments, if any, is true and correct to the best of
my knowledge and belief, except as to information I have
indicated I have received from others.  As to that
information, I declare under penalty of perjury that the
information accurately describes the information provided to
me and, except as noted herein, that I believe it to be
true."

MICHAEL CLOUD
August 2, 2011
Page 23


In compliance with Labor Code 4906(g), "I declare under
penalty of perjury that I have not violated Labor Code
Section 139.3 and I have not offered, delivered, received or
accepted any rebate, refund, commission, preference,
patronage, dividend, discount or other considerations,
whether in the form of money or otherwise, as compensation
or inducement for any referral examination or evaluation."

In compliance with recent Workers' Compensation legislation
(Labor Code Section 5703 under AB 1300):  "I have not
violated Labor Code Section 139.3 and the contents of the
report and bill are true and correct to the best of my
knowledge.  This statement is made under penalty of
perjury."

If there are any further questions regarding this, please do
not hesitate to contact my office.  Thank you very much for
allowing me to participate in the evaluation of this
patient.

This report and declaration were signed in the County of Los
Angeles on February 27, 2012.

                         Yours truly,


                         JEFFREY A. BERMAN, M.D.
                         Diplomate, American Board
                         of Orthopaedic Surgery


JAB:mb/mc

MICHAEL CLOUD
August 2, 2011
Page 24


cc:  Matthew A. Graffigna
     Attorney at Law
     Law Offices of Seyfarth & Shaw
     2029 Century Park East
     Suite 3500
     Los Angeles, CA  90067

     G. Ronald Feenberg
     Attorney at Law
     Law Offices of Rose,
     Klein & Marias
     801 South Grand Avenue
     11th Floor
     Los Angeles, CA  90017

     Ron de la Torre
     Claims Examiner
     Travelers Indemnity
     P.O. Box 660281
     Dallas, TX  75266

     Michael Cloud
     5126 Miller Avenue
     Dallas, TX  75206

E-Ballot 02/22/2016                                                   DICC Page 58

## *Orthopaedic Surgery*

1125 East Seventeenth Street
Suite E-218
Santa Ana, California 92701-2231
(714) 835-3031
Fax (714) 835-6546

Michael J. Einbund, M.D., Inc.

Jacob Rabinovich, M.D.
A Professional Corporation

Diplomates
American Board of Orthopaedic Surgery

Inland Empire Office
4156 10th Street
Riverside, CA 92501-3181
(951) 684-8844 Office
(951) 684-8866 Fax

July 6, 2009

Walter Korzeniowski
Attorney at Law
448 Turnpike St.
South Easton, MA  02375

| | |
|---|---|
| RE: | CLOUD, MICHAEL |
| DOI: | C.T. 1999 - 2006 |
| DOE: | 07/06/09 |
| EMP: | Kansas City Chiefs; New England Patriots; New York Giants |
| WCAB #: | Unassigned |
| CLAIM #: | Unknown |

### QUALIFIED MEDICAL EVALUATION

Mr. Michael Cloud, a 33-year-old male, was seen by me in my Santa Ana office on July 6, 2009, for a Qualified Medical Evaluation of injuries sustained on a continuing trauma basis while employed as a professional football player by the Kansas City Chiefs, New England Patriots, and New York Giants. The following is a report based on the patient's history and the physical examination.

Please note that this case was very complex in nature. It should be noted that the review of the patient's entire medical chart incorporating my findings, as well as other treating and/or consulting physician reports, evaluation involving multiple body parts and multiple dates of injury, and research of the AMA Guides to the Evaluation of Permanent Impairment, 5th Edition, in order to arrive at my final conclusions regarding the pending workers' compensation issues, the total time spent was seven hours and we are billing at the ML104 level.

CLOUD-AR-345

*Orthopaedic Surgery*

RE: CLOUD, MICHAEL
July 6, 2009
Page 2

### HISTORY OF INJURY:  (As reported by the patient)

The patient reports that he played professional football as a running back from 1999 to 2002, for the Kansas City Chiefs, in 2003, for the New England Patriots, in 2004, for the New York Giants, in 2005, for the New England Patriots and New York Giants.

The following injuries occurred while with the Kansas City Chiefs:

> During a game, the patient fractured some ribs.  He was taken out of that game.

> In 1999, he sustained a dislocated left shoulder, which caused him to miss one game.

> The patient suffered a contusion involving his right quadriceps.  He missed practice for one week as a result.

> In 2001, during a game, he suffered a direct hit to his right hip.  He does not recall if he missed any practice or game time as a result of that injury.

> In 2002, he sprained his mid right foot.  He missed two games as a result.

The following injuries occurred while with the New England Patriots:

> In 2003, during off-season training, the patient sustained a contusion and hematoma involving his right leg.  He subsequently underwent right leg fasciotomy, with removal of necrotic tissue and muscle.  He subsequently missed all of summer training camp, which was for about four or five weeks. He also missed the first four game of that season.

> He sustained a broken right ring finger.  Treatment included taping and surgery.

The following injuries occurred while with the New York Giants:

> During a game, he suffered a concussion.  He was taken out of that game.

> During a game, he sustained a broken left rib.  He was taken out of that game.

In 2005, the patient does not recall sustaining any injuries, while with the New England Patriots or New York Giants.

CLOUD-AR-346

*Orthopaedic Surgery*

RE:  CLOUD, MICHAEL
July 6, 2009
Page 3

In addition to the above-noted incidents, the patient also states that he suffered numerous lesser injuries to his entire body on a repetitive basis while playing professional football.  Professional football is an extremely violent occupation, the demands of which require extreme physical activity and violent physical contact. These physical demands put a great deal of stress and strain on the musculoskeletal system.   Throughout his career as a professional football player, the patient continuously sought treatment from the team trainers which provided him with temporary relief so that he could continue to play in games and participate in practices.  He would frequently experience exacerbations and aggravations to his joints and musculature due to the requirements of his occupation.  Team doctors would also prescribe medication to help mask the pain and aid in his recovery.

**PRIOR/SUBSEQUENT INJURIES:**

From 1994 to 1998, the patient attended Boston College.  While attending college, and participating in college football, he sustained various injuries including two concussions, a hip flexor muscle injury in 1995, a broken left rib in 1997, a right ankle sprain, a right knee sprain, and neck "burners."  During this time, he underwent left great toe surgery, with bone grafting.

The patient denies any other prior injury to, or problem with, the above mentioned areas of complaint.  He denies subsequent injuries since leaving professional football.

**PRESENT STATUS:  (As reported by the patient)**

The patient currently complains of the following:

1.    Mild neck pain, mostly present on the right side.

2.    Low back pain, mostly present on the right side.

3.    Pain in his right hip.

4.    Constant pain in his right knee, and down into his right leg and foot/toes; constant numbness in the right knee and down into his two most lateral toes.

5.    Locking of his right ankle.

6.    Dropping of his right foot; constant pain in his mid right foot; loss of the arch of his right foot.

CLOUD-AR-347

*Orthopaedic Surgery*

RE: CLOUD, MICHAEL
July 6, 2009
Page 4

7.   Difficulty sleeping, secondary to his pain.

8.   Anxiety and stress, secondary to his right leg complaints.

**WORK STATUS:**

The patient was employed as a running back from 1999 to 2006, by the Kansas City Chiefs, New England Patriots, and New York Giants.

In 2006, the patient owned and operated his own training business in Rhode Island.

In 2009, the patient began working for Equinox, as a trainer.

**SOCIAL STATUS:**

The patient is single and he does not have any children.  He does not smoke tobacco. He socially drinks alcoholic beverages.

**PAST MEDICAL HISTORY:  (Not mentioned in the above history)**

| | |
|---|---|
| Allergies To Medication: | Penicillin. |
| Current Medication: | Zithromax and over-the-counter Advil or Aleve. |
| Medical: | Denies. |
| Surgical: | Denies. |
| Trauma: | The patient denies any other trauma including motor vehicle accidents, work-related injuries, sports-related injuries, fractures, lacerations, falls, knife/gunshot wounds, or burns. |

**PHYSICAL EXAMINATION:**

HEIGHT:  5 feet 11 inches.          WEIGHT:     205 lbs., per the patient.

The patient is right-hand dominant.

*Orthopaedic Surgery*

RE:  CLOUD, MICHAEL
July 6, 2009
Page 5

On today's examination, the patient has tenderness in the right side of the lumbar spine.

## NECK AND UPPER EXTREMITIES:

Range of motion of the neck:  The patient can touch his chin to his chest on forward flexion.  Extension is 60 degrees.  He right and left lateral turns 80 degrees.  Lateral tilts are 65 degrees.

Cervical compression test is negative.  Spurling test is negative.

The patient has full range of motion of both shoulders, elbows, wrists, and hands. Shoulder abduction is 180 degrees.  Shoulder forward flexion is 180 degrees. Shoulder extension is 50 degrees. Shoulder external rotation is 90 degrees. Shoulder internal rotation is 80 degrees.  Shoulder adduction is 40 degrees.  Elbow flexion is 150 degrees.  Elbow extension is 0 degrees.  Elbow supination and pronation is 90 degrees. Wrist dorsiflexion is 60 degrees. Wrist palmar flexion is 60 degrees. Wrist ulnar deviation is 30 degrees.  Wrist radial deviation is 20 degrees.

Reflexes:  Biceps, triceps, and brachioradialis are 2/4, bilaterally.

Sensation of the upper extremities is normal.

The patient shows no evidence of motor weakness of the deltoids, biceps, triceps, wrist dorsi or volar flexors.  Radial pulses are palpable and equal, bilaterally.  Adson's test is negative.

## CIRCUMFERENTIAL MEASUREMENTS OF THE UPPER EXTREMITIES:

|            | RIGHT     | LEFT      |
|------------|-----------|-----------|
| Upper arm: | 34.8 cm   | 34.9 cm   |
| Elbow:     | 29.6 cm   | 29.6 cm   |
| Forearm:   | 29.1 cm   | 30.4 cm   |
| Wrist:     | 18.0 cm   | 17.9 cm   |
| Hand:      | 23.6 cm   | 23.6 cm   |

| **JAMAR:** | Right:   | 40/38/38 kg |
|            | Left:    | 42/32/42 kg |

CLOUD-AR-349

*Orthopaedic Surgery*

RE:  CLOUD, MICHAEL
July 6, 2009
Page 6

## BACK AND LOWER EXTREMITIES:

Range of motion of the back:  The patient can touch his fingertips to toes on forward flexion. He extends himself 20 degrees.  Right and left lateral bending is 25 degrees. Rotation of the back is to 50 degrees, right and left.

The patient ambulates with a slight limp.

has a normal gait and can walk on his heels and toes.

There is full range of motion of both hips, knees, and ankles.  Hip flexion is 110 degrees. Hip internal rotation is 20 degrees. Hip external rotation is 45 degrees. Hip abduction is 50 degrees. Hip adduction is 20 degrees.  Knee extension is 0 degrees. Knee flexion is 135 degrees.  Ankle extension is 15 degrees.  Ankle flexion is 40 degrees.  Ankle inversion is 25 degrees.  Ankle eversion is 15 degrees.

Straight leg-raising is positive at approximately 75 degrees on the right.

Reflexes:  Patellar and Achilles are 2/4, bilaterally.

The patient has normal sensation in the left lower extremity.  There is decreased sensation in the 4th and 5th toes on the right.

The patient has good femoral, popliteal, dorsalis pedis and posterior tibialis pulses, bilaterally.  The patient has normal strength in both quadriceps, hamstrings, plantar flexors/extensors, and extensor hallucis longus muscles.  Patrick's sign is negative, bilaterally.

## EXAMINATION OF THE RIGHT HIP:

Examination of the right hip reveals full range of motion.  There is diffuse tenderness.

## EXAMINATION OF THE RIGHT KNEE:

Examination of the right knee reveals full range of motion.  There is no pain today. There is no instability.

CLOUD-AR-350

*Orthopaedic Surgery*

RE:  CLOUD, MICHAEL
July 6, 2009
Page 7

## EXAMINATION OF THE RIGHT FOOT/TOES:

Examination reveals diffuse tenderness over the plantar arch of the right foot.  There is tenderness over the right lateral leg.  There is a healed surgical scar, laterally.

## CIRCUMFERENTIAL MEASUREMENTS OF THE LOWER EXTREMITIES:

|         | RIGHT    | LEFT     |
|---------|----------|----------|
| Thigh:  | 58.1 cm  | 57.0 cm  |
| Knee:   | 43.0 cm  | 42.0 cm  |
| Calf:   | 41.5 cm  | 42.3 cm  |
| Ankle:  | 28.0 cm  | 27.0 cm  |
| Foot:   | 25.3 cm  | 25.2 cm  |

## X-RAY FINDINGS:

X-rays of the right knee reveal no evidence of fracture, dislocation, or degenerative changes.

X-rays of the right ankle and foot reveal no evidence of fracture, dislocation, or degenerative changes.

## REVIEW OF MEDICAL RECORDS:

Medical records from the following facilities have been reviewed and are acknowledged:

1.     **New England Patriots**
2.     **Shields MRI & CT**

## PERTINENT MEDICAL RECORDS:

**07/30/03** - Operative Report from Bertram Zarins, M.D., reveals the patient underwent right leg fasciotomy, anterior compartment and lateral compartment; excision, necrotic peroneus longus muscle, and tenodesis, peroneus longus tendon to peroneus brevis muscle.  The pre-operative diagnosis was right leg contusion with closed compartment syndrome, anterior and lateral compartments.  The post-operative diagnosis was the same with proximal avulsion and necrosis, peroneus longus muscle.

*Orthopaedic Surgery*

RE:  CLOUD, MICHAEL
July 6, 2009
Page 8

**08/02/03** - Discharge Summary from Bertram Zarins, M.D., reveals the patient was injured on 07/23/03, when he was kicked or hit by a helmet in his right leg.  He continued practicing for several days with worsening symptoms.  On 07/28/03, he developed numbness of the dorsum of his right foot and toes and he had limited range of motion.  He was brought to the operating room for right leg fasciotomies and peroneus longus excision and tenodesis and he recovered well postoperatively.  He was discharged to be non-weight bearing.

**08/07/03** - Notes from Bertram Zarins, M.D., reveal the patient was doing well and had much less pain.  There was a small area of numbness in the left toe.  There was no sign of infection.  He was given a walking boot.

**08/11/03** - Notes from Bertram Zarins, M.D., reveal the patient was much improved and had good motion of the foot and ankle.

**08/12/03** - Radiology report from Shields MRI & CT reveals the patient underwent an MRI scan of the right lower extremity.  **Conclusion:**  Myositis with partial normalization of signal at the ankle, no evidence for necrosis or hematoma.  There was extensive myositis involving the peroneus longus muscle

**08/14/03** - Notes from Bertram Zarins, M.D., reveal the patient was two weeks following anterior and lateral compartment fasciotomies and was in a short leg walking boot and doing well.  There were several areas of superficial necrosis of the edges of the skin but this appeared not to extend too deeply.  There was no sign of infection.  The sutures were removed and he was to continue with wound care.

**08/23/03** - Notes from Bertram Zarins, M.D., reveal the patient's right leg was improving and he had no pain.  The anterior and lateral compartments were soft and non-tender.  He was to discontinue the boot but go with an ankle brace that allows plantar flexion/dorsiflexion but eliminates inversion/eversion.

**09/26/03** - Notes from Bertram Zarins, M.D., reveal the patient had continued to do well and regain his full function.  There was no pain or weakness and there was no functional impairment.  He was able to run an change direction without any problem.  **Assessment:** Right leg healed with no detectable residual impairment following closed compartment syndrome/fasciotomy.

**10/05/03** - Notes from Bertram Zarins, M.D., reveal the patient's right leg was asymptomatic and back to normal function.  He was okay for full activity without restrictions.

Case 3:20-cv-01277-S   Document 16-3   Filed 01/05/21   Page 293 of 435   PageID 490

*Orthopaedic Surgery*

RE: CLOUD, MICHAEL
July 6, 2009
Page 9

**01/20/04** - Notes from Tomas Gill, M.D., reveal that on 07/31/03, the patient underwent release of the anterior and lateral compartments with debridement of necrotic peroneus longus muscle and tenodesis.

**DIAGNOSIS:**

1.     STATUS POST OP COMPARTMENT SYNDROME, RIGHT LEG.

2.     LUMBOSACRAL SPINE SPRAIN WITH RADICULAR COMPLAINTS.

**DISABILITY STATUS:**

The patient's condition has reached maximum medical improvement.

**WHOLE PERSON IMPAIRMENT**

The AMA Guides to the Evaluation of Permanent Impairment, 5th Edition, is used in determining the appropriate impairment rating for this patient.

With regard to his lumbar spine, the patient has a history and examination consistent with his injury.  He does have residual tenderness, radicular symptoms, and positive straight leg raising.  He, therefore, fits the criteria for a DRE Category II with an 8% whole person impairment rating, per Chapter 15, pages 384-388, Table 15:3.

With regard to his right knee, the patient does have residual symptoms and is noted to have ambulate with a slight limp.  It is my opinion that he would fit the criteria for disability equivalent to a mild gait derangement with a 10% whole person impairment rating as outlined in Chapter 17, page 529, Table 17:5.

As outlined in Chapter 18 of the Guides, it is my opinion that it would also be appropriate to assign a 3% whole person impairment rating due to the residual, significant right leg pain the patient continues to experience, which increases the burden of his impairment.

Using the combined values chart, the patient has a calculated whole person impairment rating of 20%.

With regard to his low back, give him impairment DRE II, high end.  Add some points for activities of daily living with regard to his right leg.  He does have a slight limp. He, in my opinion, cannot return to professional football.

CLOUD-AR-353

*Orthopaedic Surgery*

RE:  CLOUD, MICHAEL
July 6, 2009
Page 10

## ACTIVITIES OF DAILY LIVING:

Secondary to his injuries and residual symptoms, the patient has difficulty performing certain activities of daily living. He reports extreme difficulty making sharp turns while running fast.  He reports quite a bit of difficulty with usual work activities, hobbies and recreational activities, and hopping.  He reports moderate difficulty squatting, lifting a bag of groceries from the floor, walking two blocks, standing or sitting for one hour, and running on even or uneven ground.  He reports a little bit of difficulty walking between rooms and performing heavy activities around his home.

## WORK RESTRICTIONS:

With regard to his low back, the patient requires work restrictions precluding him from heavy lifting and repetitive bending and stooping.

With regard to his right lower extremity, he should be precluded from prolonged standing or walking, running, jumping, and repetitive climbing.

## CAUSATION/APPORTIONMENT:

It is my opinion this patient's symptoms are attributable to the July 23, 2003, injury, when he had a compartment syndrome. He essentially never returned to professional football.  He was resigned by the Patriots in the 2004 season, but was cut two days prior to the start of the regular season.  He was signed in 2005, by the Giants, and released at the end of training camp.  He was never able to regain his ability to play professional football.  It is my opinion he is unable to return to professional football. It is my opinion the injury of July 2003, was the cause of his permanent disability. He is ambulating with a limping gait and, in all probability, the limping gait caused the pain in his right hip.  He also has pain in his right plantar arch.

## VOCATIONAL REHABILITATION:

The patient would be unable to return to his usual and customary occupation as a professional football player and is, therefore, a medically Qualified Injured Worker.

CLOUD-AR-354

*Orthopaedic Surgery*

RE:  CLOUD, MICHAEL
July 6, 2009
Page 11

**FUTURE MEDICAL CARE:**

The patient should have provision to be seen for doctors appointments to receive pain and/or anti-inflammatory medication, as well as short courses of physical therapy. There is the remote possibility of further surgery being necessary; however, this is unlikely.

**DISCLOSURE STATEMENT:**

In accordance with the WCAB Rule 10978 and 4628, please be informed that the initial history of injury obtained in this report was taken by Cynthia Resendez. Measurements were taken by Rebecca Vega.  X-rays were taken by Isaac Silva, C.R.T.  The review of history with the patient, physical examination, interpretation of x-rays, additional historical notes, and dictation were performed by the undersigned. The transcription was done by Jamie Hill.  This report was edited for grammar and completeness by S. Wood.

I, Michael J. Einbund, M.D., the physician for Michael Cloud, do hereby declare under penalty of perjury that I have not violated Labor Code Section 139.3 and that I have not offered, delivered, received or accepted any rebate, refund, commission, preference, patronage, dividend, discount or other consideration, whether in the form of money or otherwise, as compensation or inducement for any referred examination or evaluation.

If there are any further questions, please feel free to contact this office.

Sincerely,

**MICHAEL J. EINBUND, M.D.**
**Board Certified Orthopaedic Surgeon, License #C303840**

Pursuant to AB 3660, I declare under penalty of perjury that the information contained in this report and its attachments, if any, is true and correct to the best of my knowledge and belief, except as to the information that I have indicated I have received from others.  As to that information, I declare under penalty of perjury that

CLOUD-AR-355

*Orthopaedic Surgery*

RE:  CLOUD, MICHAEL
July 6, 2009
Page 12

the information accurately describes the information provided to me and, except as noted herein, I believe it to be true.

Signed this date of ____8-19____, 2009 in the County of Orange, California.


**MICHAEL J. EINBUND, M.D.**
**Board Certified Orthopaedic Surgeon, License #C303840**

MJE:jh
DOT:07/07/09

ORTHOPAEDIC SURGERY
1125 EAST SEVENTEENTH STREET
SUITE E-218
SANTA ANA, CA  92701-2231
(714) 835-3031  FAX (714) 835-6546

PROOF OF SERVICE BY MAIL
(1013A, 2015.5, C.C.P.)
STATE OF CALIFORNIA, COUNTY OF ORANGE

I am employed in the County of Orange, State of California.
I am over the age of 18 and not a party to the within action; my
business address is 1125 EAST 17TH ST, STE. E218, SANTA ANA, CA 92701.

On 08/19/2009, I served the foregoing document described as

    QME REPORT, DEU FORM 101, SUMMARY FINDINGS SHEET, AND BILL
    DATED 7-6-09

on the parties listed below in this action by placing a true copy
thereof enclosed in a sealed envelope with postage thereon fully
prepaid in the United States mail at: Santa Ana, California, 92701
addressed as follows:

Korzeniowski, Walter
448 Turnpike St

South Easton Ma 02375

*Great Divide Ins*
*7233 E Butherus Dr*
*Scottsdale, AZ 85260*

I declare under penalty of perjury under the laws of the State of
California that the above is true and correct.

Executed on  8/19/09  at Santa Ana, CA.

File:   510810                          x _Kristie Calzaretta_
    Michael Cloud                      by: Kristie Calzaretta

CLOUD-AR-357

E-Ballot 02/22/2016                                                                DICC Page 71

*Handwritten top right:* Great Divide Inc / 7233 E Butheric Dr / Scottsdale, AZ  85260

**(1500)**
**HEALTH INSURANCE CLAIM FORM**
APPROVED BY NATIONAL UNIFORM CLAIM COMMITTEE 08/05

□ PICA

| | | | |
|---|---|---|---|
| 1. MEDICARE   MEDICAID   TRICARE CHAMPUS   CHAMPVA   GROUP HEALTH PLAN   FECA BLK LUNG   OTHER | | 1a. INSURED'S I.D. NUMBER (For Program in Item 1) | |

2. PATIENT'S NAME (Last Name, First Name, Middle Initial)
CLOUD, MICHAEL

**FRCP 5.2**

3. PATIENT'S BIRTH DATE   SEX

4. INSURED'S NAME (Last Name, First Name, Middle Initial)

5. PATIENT'S ADDRESS (No., Street)
62 8TH ST

6. PATIENT RELATIONSHIP TO INSURED
Self ☐ Spouse ☐ Child ☐ Other ☐

7. INSURED'S ADDRESS (No., Street)
62 8TH ST

CITY
HERMOSA BEACH   STATE CA

8. PATIENT STATUS
Single ☐   Married ☐   Other ☐

CITY
HERMOSA BEACH   STATE CA

ZIP CODE
90254   TELEPHONE (Include Area Code)
(401 )662-5500

Employed ☐   Full-Time Student ☐   Part-Time Student ☐

ZIP CODE
90254   TELEPHONE (Include Area Code)
(401 )662-5500

9. OTHER INSURED'S NAME (Last Name, First Name, Middle Initial)
N.A.

10. IS PATIENT'S CONDITION RELATED TO:

11. INSURED'S POLICY GROUP OR FECA NUMBER

a. OTHER INSURED'S POLICY OR GROUP NUMBER

a. EMPLOYMENT? (Current or Previous)
☐ YES ☒ NO

a. INSURED'S DATE OF BIRTH   MM DD YY   SEX M ☐ F ☐

b. OTHER INSURED'S DATE OF BIRTH   MM DD YY   SEX M ☐ F ☐

b. AUTO ACCIDENT?   PLACE (State)
☐ YES ☒ NO

b. EMPLOYER'S NAME OR SCHOOL NAME

c. EMPLOYER'S NAME OR SCHOOL NAME

c. OTHER ACCIDENT?
☐ YES ☒ NO

c. INSURANCE PLAN NAME OR PROGRAM NAME

d. INSURANCE PLAN NAME OR PROGRAM NAME

10d. RESERVED FOR LOCAL USE

d. IS THERE ANOTHER HEALTH BENEFIT PLAN?
☐ YES ☐ NO   If yes, return to and complete Item 9 a-d.

READ BACK OF FORM BEFORE COMPLETING & SIGNING THIS FORM.
12. PATIENT'S OR AUTHORIZED PERSON'S SIGNATURE I authorize the release of any medical or other information necessary to process this claim. I also request payment of government benefits either to myself or to the party who accepts assignment below.
SIGNED   Signature On File   DATE

13. INSURED'S OR AUTHORIZED PERSON'S SIGNATURE I authorize payment of medical benefits to the undersigned physician or supplier for services described below.
SIGNED   Signature On File

14. DATE OF CURRENT:   ILLNESS (First symptom) OR INJURY (Accident) OR PREGNANCY (LMP)
MM DD YY

15. IF PATIENT HAS HAD SAME OR SIMILAR ILLNESS. GIVE FIRST DATE   MM DD YY

16. DATES PATIENT UNABLE TO WORK IN CURRENT OCCUPATION
FROM   TO

17. NAME OF REFERRING PROVIDER OR OTHER SOURCE
No Referred Services

17a.
17b. NPI

18. HOSPITALIZATION DATES RELATED TO CURRENT SERVICES
FROM   TO

19. RESERVED FOR LOCAL USE
ORDER PHYS: MICHAEL EINBUND, MDUPIN: A34236

20. OUTSIDE LAB?
☐ YES ☐ NO   $ CHARGES

21. DIAGNOSIS OR NATURE OF ILLNESS OR INJURY. (Relate Items 1,2,3 or 4 to Item 24E by Line)
1. ⌐   3. ⌐
2. ⌐   4. ⌐

22. MEDICAID RESUBMISSION CODE   ORIGINAL REF. NO.

23. PRIOR AUTHORIZATION NUMBER

| 24. A. DATE(S) OF SERVICE From MM DD YY | To MM DD YY | B. PLACE OF SERVICE | C. EMG | D. PROCEDURES, SERVICES, OR SUPPLIES (Explain Unusual Circumstances) CPT/HCPCS | MODIFIER | E. DIAGNOSIS POINTER | F. $ CHARGES | G. DAYS OR UNITS | H. EPSDT Family Plan | I. ID. QUAL. | J. RENDERING PROVIDER ID. # |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 | 07062009 | 07062009 | 11 | 1 | ML104 | | 1 | 1750 00 | 28 | | | C30384 |
| | | | | | | | | | | NPI | |
| 2 | 07062009 | 07062009 | 11 | 1 | 73564 | RT | 1 | 82 00 | 1 | | | C30384 |
| | | | | | | | | | | NPI | |
| 3 | 07062009 | 07062009 | 11 | 1 | 73610 | RT | 1 | 76 00 | 1 | | | C30384 |
| | | | | | | | | | | NPI | |
| 4 | 07062009 | 07062009 | 11 | 1 | 73630 | RT | 1 | 72 00 | 1 | | | C30384 |
| | | | | | | | | | | NPI | |
| 5 | 07062009 | 07062009 | 11 | 1 | 95851 | 22 | 1 | 49 00 | 1 | | | C30384 |
| | | | | | | | | | | NPI | |
| 6 | 07062009 | 07062009 | 11 | 1 | 95851 | 22 | 1 | 49 00 | 1 | | | C30384 |
| | | | | | | | | | | NPI | |

25. FEDERAL TAX I.D. NUMBER   SSN EIN
**FRCP 5.2**   ☒

26. PATIENT'S ACCOUNT NO.
510810-    1

27. ACCEPT ASSIGNMENT? (For govt. claims, see back)
☒ YES ☐ NO

28. TOTAL CHARGE
2078 00

29. AMOUNT PAID
0 00

30. BALANCE DUE
2078 00

31. SIGNATURE OF PHYSICIAN OR SUPPLIER INCLUDING DEGREES OR CREDENTIALS (I certify that the statements on the reverse apply to this bill and are made a part thereof.)
MICHAEL EINBUND, MD
SIGNED   08/18/09   DATE

32. SERVICE FACILITY LOCATION INFORMATION

33. BILLING PROVIDER INFO & PH #   ( )
ORTHOPEDIC SURGERY
1125 E. 17TH STREET SUITE E-218
SANTA ANA, CA 92701
a. A34236   b. C30384

NUCC Instruction Manual available at: www.nucc.org

APPROVED OMB 0938-0999 FORM CMS-1500 (08/05)

WCMS-1500-2

CLOUD-AR-358

E-Ballot 02/22/2016                                    DICC Page 72

**1500**

## HEALTH INSURANCE CLAIM FORM
APPROVED BY NATIONAL UNIFORM CLAIM COMMITTEE 08/05

| PICA | | | | | | PICA |

| 1. MEDICARE (Medicare #) | MEDICAID (Medicaid #) | TRICARE CHAMPUS (Sponsor's SSN) | CHAMPVA (Member ID#) | GROUP HEALTH PLAN (SSN or ID) | FECA BLK LUNG (SSN) | OTHER | 1a. INSURED'S I.D. NUMBER (For Program in Item 1) |

2. PATIENT'S NAME (Last Name, First Name, Middle Initial)
CLOUD, MICHAEL

3. PATIENT'S BIRTH DATE    SEX: M [X] F [ ]   **FRCP 5.2**

4. INSURED'S NAME (Last Name, First Name, Middle Initial)

5. PATIENT'S ADDRESS (No., Street)
62 8TH ST

6. PATIENT RELATIONSHIP TO INSURED
Self [ ] Spouse [ ] Child [ ] Other [ ]

7. INSURED'S ADDRESS (No., Street)
62 8TH ST

CITY: HERMOSA BEACH    STATE: CA

8. PATIENT STATUS
Single [ ] Married [ ] Other [ ]
Employed [X] Full-Time Student [ ] Part-Time Student [ ]

CITY: HERMOSA BEACH    STATE: CA

ZIP CODE: 90254    TELEPHONE (Include Area Code): (401) 662-5500

ZIP CODE: 90254    TELEPHONE (Include Area Code): (401) 662-5500

9. OTHER INSURED'S NAME (Last Name, First Name, Middle Initial)
N.A.

10. IS PATIENT'S CONDITION RELATED TO:

11. INSURED'S POLICY GROUP OR FECA NUMBER

a. OTHER INSURED'S POLICY OR GROUP NUMBER

a. EMPLOYMENT? (Current or Previous)
YES [ ] NO [X]

a. INSURED'S DATE OF BIRTH    SEX: M [ ] F [ ]

b. OTHER INSURED'S DATE OF BIRTH    SEX: M [ ] F [ ]

b. AUTO ACCIDENT?   PLACE (State)
YES [ ] NO [X]

b. EMPLOYER'S NAME OR SCHOOL NAME

c. EMPLOYER'S NAME OR SCHOOL NAME

c. OTHER ACCIDENT?
YES [ ] NO [X]

c. INSURANCE PLAN NAME OR PROGRAM NAME

d. INSURANCE PLAN NAME OR PROGRAM NAME

10d. RESERVED FOR LOCAL USE

d. IS THERE ANOTHER HEALTH BENEFIT PLAN?
YES [ ] NO [ ]   If yes, return to and complete item 9 a-d.

READ BACK OF FORM BEFORE COMPLETING & SIGNING THIS FORM.
12. PATIENT'S OR AUTHORIZED PERSON'S SIGNATURE I authorize the release of any medical or other information necessary to process this claim. I also request payment of government benefits either to myself or to the party who accepts assignment below.
SIGNED  Signature On File

13. INSURED'S OR AUTHORIZED PERSON'S SIGNATURE I authorize payment of medical benefits to the undersigned physician or supplier for services described below.
SIGNED  Signature On File

14. DATE OF CURRENT: ILLNESS (First symptom) OR INJURY (Accident) OR PREGNANCY (LMP)

15. IF PATIENT HAS HAD SAME OR SIMILAR ILLNESS. GIVE FIRST DATE

16. DATES PATIENT UNABLE TO WORK IN CURRENT OCCUPATION
FROM    TO

17. NAME OF REFERRING PROVIDER OR OTHER SOURCE
No Referred Services
17a.
17b. NPI

18. HOSPITALIZATION DATES RELATED TO CURRENT SERVICES
FROM    TO

19. RESERVED FOR LOCAL USE
ORDER PHYS: MICHAEL EINBUND, MDUPIN: A34236

20. OUTSIDE LAB?   $ CHARGES
YES [ ] NO [ ]

21. DIAGNOSIS OR NATURE OF ILLNESS OR INJURY. (Relate Items 1,2,3 or 4 to Item 24E by Line)
1.
2.
3.
4.

22. MEDICAID RESUBMISSION CODE    ORIGINAL REF. NO.

23. PRIOR AUTHORIZATION NUMBER

| 24. A. DATE(S) OF SERVICE From MM DD YY | To MM DD YY | B. PLACE OF SERVICE | C. EMG | D. PROCEDURES, SERVICES, OR SUPPLIES (Explain Unusual Circumstances) CPT/HCPCS | MODIFIER | E. DIAGNOSIS POINTER | F. $ CHARGES | G. DAYS OR UNITS | H. EPSDT Fam Plan | I. ID. QUAL. | J. RENDERING PROVIDER ID. # |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 | 07 06 2009 | 07 06 2009 | 11 | 1 | 95832 | 22 RT | 1 | 49 20 | 1 | | NPI | C30384 |
| 2 | 07 06 2009 | 07 06 2009 | 11 | 1 | 95832 | 22 LT | 1 | 49 20 | 1 | | NPI | C30384 |
| 3 | | | | | | | | | | | NPI | |
| 4 | | | | | | | | | | | NPI | |
| 5 | | | | | | | | | | | NPI | |
| 6 | | | | | | | | | | | NPI | |

25. FEDERAL TAX I.D. NUMBER   SSN [ ] EIN [ ]   **FRCP 5.2** [X]

26. PATIENT'S ACCOUNT NO.
510810... 1

27. ACCEPT ASSIGNMENT? (For govt. claims, see back)
YES [X] NO [ ]

28. TOTAL CHARGE   $ 98 40

29. AMOUNT PAID   $ 0 00

30. BALANCE DUE   $ 98 40

31. SIGNATURE OF PHYSICIAN OR SUPPLIER INCLUDING DEGREES OR CREDENTIALS (I certify that the statements on the reverse apply to this bill and are made a part thereof.)
MICHAEL EINBUND, MD
SIGNED  08/18/09   DATE

32. SERVICE FACILITY LOCATION INFORMATION

33. BILLING PROVIDER INFO & PH # (949) 360-3051
ORTHOPEDIC SURGERY
1125 E. 17TH STREET SUITE E-218
SANTA ANA, CA 92701
a. A34236    b. C30384

NUCC Instruction Manual available at: www.nucc.org

APPROVED OMB 0938-0999 FORM CMS-1500 (08/05)

WCMS-1500-2

CLOUD-AR-359

E-Ballot 02/22/2016                                                      DICC Page 73



**State of California**
**Division of Workers' Compensation**
**Disability Evaluation Unit**

| DEU Use Only |

**REQUEST FOR SUMMARY RATING DETERMINATION**
**of Qualified Medical Evaluator's Report**



---

**INSTRUCTIONS TO THE CLAIMS ADMINISTRATOR:**

1. Use this form if employee is unrepresented and has not filed an application for adjudication.
2. Complete this form and forward it along with a complete copy of all medical reports and medical records concerning this case to the physician scheduled to evaluate the existence and extent of permanent impairment or disability.
3. Send the EMPLOYEE'S DISABILITY QUESTIONNAIRE, DEU FORM 100 to the employee in time for the medical evaluation.
4. **This form must be served on the employee prior to the evaluation. Be sure to complete the proof of service.**

---

**INSTRUCTIONS TO THE PHYSICIAN:**

1. If the employee is unrepresented, review and comment upon the Employee's Disability Questionnaire, (DEU Form 100), in your report. (If the employee does not have a completed Form 100 at the time of the appointment, please provide the form to the employee.)
2. Submit your completed medical evaluation and, if the employee is unrepresented, the DEU Form 100, to the Disability Evaluation Unit district office listed below. **PLEASE USE THIS FORM AS A COVER SHEET FOR SUBMISSION TO THE DISABILITY EVALUATION UNIT.**
3. Serve a copy of your report and the Form 100 upon the claims administrator and the employee.

---

Date of first medical report indicating the existence of permanent impairment or disability: _____
                                                                                                MM/DD/YYYY

Last date for which temporary disability indemnity was paid: _____
                                                              MM/DD/YYYY

---

**Submit To: Disability Evaluation Unit**

_____
Address/PO Box (Please leave blank spaces between numbers, names or words)

_____          **CA**          _____
City                                              State      Zip Code

DR. MICHAEL EINBUND,  MD    _____
Physician

Exam Date  07/06/2009 _____
             MM/DD/YYYY

DWC-AD form101 (DEU) Page 1 (REV. 11/2008)                              DEU101

E-Ballot 02/22/2016                                                DICC Page 74

---

**Claims Administrator**

GREAT DIVIDE INSURANCE
Company  Name


7233 EAST BUTHERUS DR
Street Address1/PO Box (Please leave blank spaces between numbers, names or words)


Street Address2/PO Box (Please leave blank spaces between numbers, names or words)

| | | |
|---|---|---|
| SCOTTSDALE | AZ | 85260 |
| City | State | Zip Code |


Claim Number 1


Claim Number 2


Claim Number 3


Claim Number 4


Claim Number 5

Phone No.

Adjustor

Employer   KANSAS CITY CHIEFS; NEW ENGLAND PATRIOTS; NEW YORK GIANT

**Employee**

| | |
|---|---|
| MICHAEL | |
| First Name | MI |


CLOUD
Last Name

62 8TH ST
Street Address 1/PO Box (Please leave blank spaces between numbers, names or words)


Street Address 2/PO Box (Please leave blank spaces between numbers, names or words)


International Address (Please leave blank spaces between numbers, names or words)

DWC-AD form101 (DEU) Page 2 (REV. 11/2008)                        DEU101

CLOUD-AR-361

E-Ballot 02/22/2016                                                    DICC Page 75

HERMOSA BEACH _____    CA _____    90254 _____
City                                                              State         Zip Code

Date of Injury _____          Date of Birth    FRCP 5.2
                    MM/DD/YYYY                                        MM/DD/YYYY

SSN (Numbers Only)   FRCP 5.2   _____

Case No (if any)      _____

OCCUPATION   PROFESSIONAL FOOTBALL PLAYER _____
(Please attach job description or job analysis, if available)

**WEEKLY GROSS EARNINGS** _____

(Attach a wage statement/DLSR 5020 if earnings are less than maximum. Include the value of additional advantages
provided such as meals, lodging, etc. If earnings are irregular or for less than 30 hours per week, include a detailed
description of all earnings of the employee from all sources, including other employers, for one year prior to the date
of injury. Benefits will be calculated at MAXIMUM RATE unless a complete and detailed statement of earnings
is attached.)

DWC-AD form101 (DEU) Page 3 (REV. 11/2008)                              DEU101

CLOUD-AR-362

E-Ballot 02/22/2016                                                  DICC Page 76

## PROOF OF SERVICE BY MAIL

On _____, I served a copy of this Request for Summary Rating Determination on

Name of Employee_____

Address _____

City_____ State _____ Zip _____

by placing a true copy enclosed in a sealed envelope with postage fully prepaid, and deposited in the U.S. Mail. I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

_____
Signature

DWC-AD form101 (DEU) Page 4 (REV. 11/2008)                          DEU101

Department of Industrial Relations, Industrial Medical Council, PO Box 8888, San Francisco, CA 94128• (650) 737-2767

State of California

## Qualified or Agreed Medical Evaluator's Findings Summary Form

| Employee | Employee Name (First, Middle, Last) | Social Sec No.(Optional) | Date of Injury (Mo/ Dy /Yr) |
|---|---|---|---|
| | Michael Cloud | | |

Street Address **122 8th St**   City **Hermosa Beach**   Zip **90254**   Telephone

| Claims Administrator/ Employer | Name : **Great Divide Insurance** |
|---|---|

Street Address **7233 East Butherus dr.**   City **Scottsdale**   Zip **85260**   Telephone

| Exam Referral Schedule | Date of Appointment Call | Date of Initial Examination **7-6-09** | Date of Referral for MedicalTesting/Consultation |
|---|---|---|---|

Date AME/QME's Report Served on all Parties

**Disputed Medical Issues And Conclusion**

The following medical issues will be used to determine the patient's eligibility for workers' compensation. Check the appropriate box and reference the corresponding page(s) or section of the med-legal report for details.

| | Report page(s) or section | Yes | No | Pending or Info. Not Sent |
|---|---|---|---|---|
| a. Is there permanent disability? | 9 | ☒ | ☐ | ☐ |
| b. Is the medical condition stable and not likely to improve with active medical or surgical treatment (i.e., is the condition permanent and stationary)? | 9 | ☒ | ☐ | ☐ |
| c. Did work cause or contribute to the injury or illness? | 10 | ☒ | ☐ | ☐ |
| d. If permanent disability exists, is apportionment warranted? | 10 | ☐ | ☒ | ☐ |
| e. Is there a need for current or future medical care? | 11 | ☒ | ☐ | ☐ |

f. Can this employee now return to his/her usual job?   ☐ Yes  ☒ No
   If yes:
   i. Without restrictions   ☐ Yes   ☐ No,   If YES, Date: _____
   ii. With restrictions   ☐ Yes   ☐ No,   If YES, Date: _____

   If restricted work is recommended, reference page(s)/section in report for details: _____

**Basis for Conclusions**   Check box and refer to page(s) or section in report.

| | Report page(s) or section | Yes | No | Pending or Info. Not Sent |
|---|---|---|---|---|
| Are there subjective complaints? | 3-4 | ☒ | ☐ | ☐ |
| Are there any abnormal physical or psychological examination findings? | 5-6 | ☒ | ☐ | ☐ |
| Are there any relevant diagnostic test results (x-ray/laboratory)? | 7 | ☒ | ☐ | ☐ |
| What are the diagnoses? (List) | Pg. 9 | | | |
| Were treating physician's reports reviewed? | 7-9 | ☒ | ☐ | ☐ |
| Were other physicians consulted? | | ☐ Yes ☒ No | | |

QME   Signature _____   Date: _____

Name **DR. MICHAEL EINBUND, MD**   Specialty **ORTHOPEDIC SURGEON**

Street Address **1125 EAST 17TH ST #E218**   City **SANTA ANA**   Zip **92701**

Telephone **(714) 835-3031**   Cal. # **C30384**

IMC FORM 1002 (Rev. 12/95)                                        (OVER)

E-Ballot 02/22/2016                                    DICC Page 78

 **Bert Bell/Pete Rozelle NFL Player Retirement Plan**
200 Saint Paul Street • Suite 2420 • Baltimore, Maryland 21202-2008
410-685-5069 • 800-638-3186 • Fax 410-783-0041 

### Line Of Duty Disability Benefits

#### *PHYSICIAN'S REPORT FORM*

> Notice to Physician: To preserve your independence and the integrity of the decision-making process, you must avoid contacts with attorneys or other representatives of the player seeking disability benefits from the Bert Bell/Pete Rozelle NFL Player Retirement Plan. Please notify Rose Mary Eves or Paul Scott at the Plan Office (Tel. No. (800)638-3186) if you are contacted by any of these individuals.

**To Be Completed By Plan Office:**

1. Player's Name   *Mike A. Cloud*                    Date of Birth   **FRCP 5.2**

2. Address   *5726 Miller Ave, Dallas, TX 75206*

3. Credited Seasons   *1999-2005 (7 seasons)*         Telephone   *(401)662-5500 M*

4. When did you first examine the player? _____ *office*

5. Have you or have any of your partners ever treated the player?   Yes _____   No ⟶

6. What is the nature of the impairment? *shoulder, neck, Back, Hip, leg (Right)*
*feet*

7. Impairment Information (attach additional sheets if necessary)

| Impairment to: | Impairment results from: | Does illness or injury result from football? | Has the impairment persisted or is it expected to persist for at least 12 months from the date if its occurrence? |
|---|---|---|---|
| shoulders | ☐ Illness<br>☑ Injury<br>☐ Unknown | ☑ Yes<br>☐ No<br>☐ Cannot be determined | ☑ Yes<br>☐ No<br>☐ Cannot be determined |
| Rt Hip, leg<br>Rt foot | ☐ Illness<br>☑ Injury<br>☐ Unknown | ☑ Yes<br>☐ No<br>☐ Cannot be determined | ☑ Yes<br>☐ No<br>☐ Cannot be determined |
| | ☐ Illness<br>☐ Injury<br>☐ Unknown | ☐ Yes<br>☐ No<br>☐ Cannot be determined | ☐ Yes<br>☐ No<br>☐ Cannot be determined |
| | ☐ Illness<br>☐ Injury<br>☐ Unknown | ☐ Yes<br>☐ No<br>☐ Cannot be determined | ☐ Yes<br>☐ No<br>☐ Cannot be determined |

*Dr George Christous*
*(medical orthopedist)*

Physician's Report for *Mike A. Cloud*
Page 2

**8. For Orthopedic Impairments:**

Please rate the impairment percentage using the AMA's <u>Guides to the Evaluation of Permanent Impairment</u> (5th Edition)("AMA Guides") by completing the detailed orthopedic evaluation impairment form for the impaired body parts. Copy the final impairment percentage ratings from those forms here. Record percentages as the BODY PART IMPAIRMENT ("BPI") for upper and lower extremity impairments only, and WHOLE PERSON IMPAIRMENT ("WPI") for spine impairments only. You may award up to three (3) percentage points for excess pain, in accordance with the AMA Guides. Do not use the range of motion test to evaluate spinal impairments. Calculate the whole person impairment rating of the upper and lower extremity <u>without</u> regard to pain by multiplying the % BPI by 0.6 for the upper extremity and by 0.4 for the lower extremity.

|  | % BPI | + Pain | = Total | % WPI |
|---|---|---|---|---|
| Upper Extremity | _____ | _____ | _____ | _____ (BPI x .6) |
| Lower Extremity | 30 | — | 30 | 15 (BPI x .4) |

|  | % WPI | + Pain | = Total |
|---|---|---|---|
| Cervical Spine | 5 | — | 5 |
| Thoracic Spine | _____ | _____ | _____ |
| Lumbar Spine | 5 | — | 5 |

If player has impairments to multiple body parts, please combine the impairment ratings using the Combined Values Chart beginning on page 604 of the AMA Guides. If you are combining more than two WPI ratings, you will need to use the table more than once. DO NOT include additional percentage points for pain in the combination process.

Combined WPI% Impairment   23 %

You may award up to three (3) percentage points for excess pain.

Pain Rating   2   %

**9. For Non-Orthopedic Impairments:**

Please rate the loss of use of hearing, speech, and sight:

| Hearing: | _____0-29% | _____30-54% | _____55-79% | _____80% or greater |
|---|---|---|---|---|
| Speech: | _____0-29% | _____30-49% | _____50-69% | _____70% or greater |
| Sight: | _____0-29% | _____30-49% | _____50-69% | _____70% or greater |

Case 3:20-cv-01277-S   Document 16-3   Filed 01/05/21   Page 307 of 435   PageID 504

Physician's Report for *Mike A. Cloud*
Page 3

10. Is the patient's condition the primary or contributory cause of the surgical removal or major functional impairment of a vital bodily organ or part of the central nervous system?

_____ Yes        ✗ No

If your answer is "Yes," please identify the affected body part and describe the nature of the surgical removal or the major functional impairment.

_____

11. Has the player's impairment improved since the last examination?  DO NOT answer if "N/A" appears in the blanks below.  If you have not previously examined this player, the Plan Office will forward a copy of the Plan's last examination of this Player for your review.

Yes _____        No _____        N/A _____

12. Additional remarks by physician_____ *See Attached* _____

_____

_____

Please attach the required Medical Report and body part impairment rating forms with this form.

Physician's Name (typed or printed):   *George H. Canizares, M.D.* _____

Address   *All Florida Orthopaedics* _____

*Attn: Kathleen Spetz* _____

*4600 4th Street North* _____

*St. Petersburg, FL  33703* _____

Telephone   *(727)527-5272* _____

*I certify that I have personally examined this Player and have personally reviewed any and all records of this Player given to me, and have personally prepared and reviewed the attached narrative reports.  I also certify that my ratings and comments reflect my best professional judgment, and that I am not biased toward or against this Player.*

Signature _____        Examination Date 4/13/2010

Mail completed form with your narrative report to Rose Mary Eves at the Bert Bell/Pete Rozelle NFL Player Retirement Plan, 200 St. Paul Place, Suite 2420, Baltimore, MD  21202-2040.

CLOUD-AR-367

 **ALL FLORIDA ORTHOPAEDIC ASSOCIATES**
*An Orthopaedic Center of Excellence*

**Robert G. Hamilton, M.D.**
*Joint Replacement Surgery*
*General Orthopaedics*

**Lawrence M. Gnage, M.D.**
*Sports Medicine*
*Arthritis Treatment/Surgery*

**Brett R. Bolhofner, M.D.**
*Orthopaedic Trauma*
*Reconstructive Surgery*

**Dale G. Bramlet, M.D.**
*Arthritis Treatment/Surgery*
*Hand/Upper Extremity*

**Clinton B. Davis, M.D.**
*Spinal Surgery*
*General Orthopaedics*

**Jorge A. Rodriguez, Jr., M.D.**
*Hand/Upper Extremity*
*Sports Medicine*

**William E. Lowry, M.D.**
*Joint Replacement*
*General Orthopaedics*

**George H. Canizares, M.D.**
*Sports Medicine*
*General Orthopaedics*

**Robert L. Swiggett, Jr., M.D.**
*Orthopaedic Trauma/Joint Replacement*
*General Orthopaedics*

**Kanta C. Shah, M.D.**
*Physical Medicine & Rehab*
*Pain Management*

**Matthew J. Swick, M.D., MBA**
*Foot & Ankle/Sports Medicine*
*General Orthopaedics*

**Adrian L. Butler, M.D.**
*Hand/Upper Extremity*
*General Orthopaedics*

**Jeff D. Kopelman, D.P.M.**
*Podiatry*

**Matthew D. Cusumano, D.O.**
*Physical Medicine & Rehab*

**Arnold M. Ramirez, M.D.**
*Sports Medicine*

**Stephen C. Anderson, M.D.**
*Radiology*

April 13, 2010

NFL Disability Neutral Physical
Location of the Physical: All Florida Orthopaedics
Examiner: George H. Canizares, M.D.

RE:   CLOUD, MICHAEL
MR#:   422043

**HISTORY**
This is a 34-year-old retired NFL football player who comes in for a NFL disability physical today, April 13, 2010. He said that he started his career at Boston College and played there from 1994 to 1999. He played his whole career as a running back. He said that while he was at Boston College, he did have surgery to his left big toe for what he describes as a turf toe injury and had a bone graft in 1995. He also had a MCL sprain, but he does not remember the knee. It did not cause much problems. He was drafted into the league in 1999 and played with Kansas City from 1999 to 2002. He sprained his neck. He went on to play for New England in 2003 and 2004. He did have what he describes as a compartment syndrome of his right leg that ended up in a debridement of necrotic peroneal longus tendon. He ended up with residual numbness and tingling in his feet. He said that he never really recovered from that surgery. He went on to play with the New York Giants in 2004 and 2005. He had some concussions and a rib injury on the left side and finally retired with New England and played there from 2005 and 2006.

**CHIEF COMPLAINTS**
His chief complaints are as follows. In regards to his neck, he gets soreness and stiffness from time to time. He has some low back problems. He says he gets pain going down his right leg. He has to stretch out. It locks up about once per month he says. He also complains of numbness and tingling in his hands and down through his shoulder. Regarding the upper extremities, he complains of shoulders, but specifically it seems more that it is coming from the neck. Again, his main complaint is the numbness stemming from his neck going into his shoulders and to his hands. He says that his symptoms are worse on the right than his left. He does not recall whether he has had MRIs of either his neck or back. He complains of some right hip pain, but he describes it more in the posterior buttocks and almost describing more as back problems.

P.O. Box 76359 • St. Petersburg, Florida 33734
4600 4th Street North • St. Petersburg, Florida 33703 • (727) 527-5272 • Fax (727) 522-7412
www.afopa.com

April 13, 2010
RE: CLOUD, MICHAEL
Page 2

He says that it feels like it wants to lock up and he has numbness and tingling in his right leg at times. He complains of some mild subtle problems with his right knee. He said that it pops from time to time, but it is really not a major factor. His major issue is probably his right leg where he had the peroneal brevis debridement and the compartment syndrome. He has residual numbness going sideways and up with his foot. He has difficulty jogging and pushing off. He has numbness and tingling in his fourth or fifth toe. He also had a right midfoot sprain. He said that he has to wear orthotics from that. He did complain of his left chest. He said that he has difficulty laying on his belly because of it.

**PAST MEDICAL HISTORY**
Includes depression, migraine headaches, insomnia and back pain.

**PAST SURGICAL HISTORY**
Negative.

**ALLERGIES**
He is allergic to Penicillin.

**MEDICATIONS**
He takes no medications.

**SOCIAL HISTORY**
He denies tobacco use or alcohol use.

**WORK STATUS**
He is an owner of Mac Development and self-employed.

**PHYSICAL EXAMINATION**
On physical examination, he is 34, stands 5'11", and weighs 210 pounds.

On movement of the neck with range of motion he some perispinal tenderness and midline tenderness C6-C7. His flexion is 40 degrees, extension 40 degrees. Right and left rotation 40 degrees and right lateral flexion 30 degrees and left lateral flexion 40 degrees.

Regarding his lumbar spine, his flexion is 110, extension 30 degrees. He does have some pain along the SI joint more on the right than left. His right and left lateral bending 35 degrees and right and left rotation 60 degrees.

CLOUD-AR-369

April 13, 2010
RE: CLOUD, MICHAEL
Page 3

Examination of the upper extremities, specifically his shoulders, he has full range of motion of both shoulders with regards to flexion, extension, internal and external rotation, abduction and adduction with good strength, 5/5. Reflexes are symmetrical between the upper and lower extremities. Sensation is 2/2. The only exception in sensation is in the right foot along the fourth and fifth toes and along the lateral aspect of the foot going into the leg.

Regarding his lower extremities, his hip range of motion is full throughout including extension, flexion, internal and external rotation, abduction and adduction and painless. His straight leg test is negative.

Examination of the knees reveals again full range of motion with no obvious incisions. He has no varus or valgus instability, negative anterior and posterior drawer. He does have a large scar along the lateral aspect of his right leg. His calf circumference is decreased. On the right, it is approximately 43 cm and on the left approximately 44 cm when measured at the same location.

Regarding the ankles, his dorsiflexion is 15 degrees on the left, 10 degrees on the right, plantar flexion is 60 degrees on the left, 55 on the right. He does have slight increased stiffness on the right ankle. He does have weakness, at least a 3-/5 with lateral movement of his ankle and 4+/5 with dorsiflexion. His plantar flexion is 5/5. He has numbness along the fourth and fifth digits as described.

Finally regarding the feet, he has an incision along his left big toe over the MTP joint consistent with the surgery he described. His extension is 45 degrees, flexion 20 degrees and equal to the right MTP joint. He does have some mild tenderness at the midfoot of the right foot.

**X-RAY REPORT**
X-rays were evaluated, multiple starting with the cervical spine. AP and lateral were obtained which show just mild narrowing at C5-C6 with mild spurring. X-rays of the lumbar spine AP and lateral show some mild narrowing at L5-S1 with no spondylolisthesis. X-rays of the shoulders, scapular Y, Grashey and axillary bilaterally were negative. X-rays of the hip, AP pelvis and lateral of the right hip are negative, good joint space, no fractures noted. X-rays of the knees AP, lateral, 45 degree flexion weight bearing view and sunrise are negative, no fractures, narrowing of the joint space, etc. X-rays of the right foot were obtained which show some mild narrowing of the midfoot. The MTP joint appears to be well preserved. There are no obvious fractures noted. X-rays of the left chest wall AP and lateral were obtained which are negative. I do not see any definitive evidence of any fractures.

DICC Page 84

April 13, 2010
RE: CLOUD, MICHAEL
Page 4

## ASSESSMENT

1. Cervical strain with mild DJD C5-C6 with questionable radiculopathy.
2. Lumbar strain L5-S1 mild DJD question of radiculopathy.
3. Bilateral shoulder sprains.
4. Bilateral hip strains.
5. Bilateral knee sprain.
6. Right leg atrophy status post compartment syndrome with loss of lateral compartment and possibly some injury to the anterior compartment, weakness with dorsiflexion (Grade 4) and eversion (Grade 3) movement of the ankle.
7. Right foot history of midfoot sprain and left foot status post MTP turf toe injury.
8. Left chest contusion.

## PLAN

Regarding the cervical sprain with mild DJD, I gave him a 5% whole impairment rating with a DRE rating of two. For the lumbar strain L5-S1, I gave him a 5% impairment rating and DRE rating of two.

For bilateral shoulder sprains, nothing. For bilateral hip sprains, nothing, negative. For bilateral knee sprains, negative. Regarding the right leg atrophy status post compartment loss with debridement of the lateral compartment, he has a weakness with 3/5 strength with eversion, he did receive a 12% lower extremity impairment rating for this. Regarding the 4/5 strength in dorsiflexion of the foot, he received a 12% impairment rating. 12% plus 12% is 23% total lower extremity impairment rating for the right leg based on Table 17-8. Regarding the right foot history of mid-foot sprain, I did give him a 5% impairment rating based on Table 17-33 for mid-foot injury. Regarding the left foot status post MTP turf toe injury with loss of weightbearing on that toe, I did give him an impairment rating of 10% based on Table 17-33. Regarding the chest contusion, there is no impairable rating for this. In total for the lower extremities, on the right, he received 23% for the leg, 5% for the foot which is 27% lower extremity which converts to 11% whole. On the left he received 10% for the foot converts to 4% whole. 11% plus 4% is 15% whole.

In total, he received 5% for the neck, 5% for the lumbar spine, 15% for the lower extremity is 23% whole overall and I gave him 2 additional points for pain taking into consideration his different injuries and including his chest contusion.

Sincerely,

George H. Canizares, M.D.
GHC/jw                                    T:041310        JB#1391
All Florida Orthopaedic Associates

E-Bay 3610 Central Avenue Suite 200 St. Petersburg, FL 33713
(727)824-7132  Fax: (727)824-7133                                   DICG Page 85



**04/13/2010 - Office Visit: Consult**
**Provider: Adam S DiDio M.D.**
**Location of Care: Suncoast Medical Central Neurology**

<u>**NEUTRAL PHYSICIAN'S EVALUATION**</u>

**REASON FOR EVALUATION:** CONCUSSIONS, VERTIGO

**PROFESSIONAL CAREER:**
1. New York Giants, 2004-2005
2. New England Patriots, 2003, 2005
3. Kansas City Chiefs, 1999-2002

**COLLEGE CAREER:**
Boston College

**HISTORY OF PRESENT ILLNESS:**
Michael Cloud is a very pleasant 34-year-old right-handed male who played Running Back for the National Football League (NFL) from 1999 through 2004. He is being evaluated because of a history of concussions.

Mr Cloud's primary complaint is vertigo. He reports episodes of spontaneous onset, occuring approximately 4 times per year, with each episode lasting up to 3 days. It began 3 years ago. He refers to it as the "bed spins". He describes a sensation of vertigo with a counterclockwise spinning rotation if he lays down. It seems to go away when he stops moving, sits, or stands. It is most intense the first day and then slowly subsides. He never develops any significant nausea or vomiting. He does not experience diplopia, focal numbness, tingling, or weakness. He does not have headaches concurrent with these episodes. He has never sought treatment. In between spells he does not have any sensation of vertigo.

He also complains of headaches which started approximately 10 years ago. In the last 6 or 7 years they have become more frequent and more intense. These headaches occur once per month, and consist of a stabbing pain in the occipital region, reaching 8/10 on the pain scale. With this headache he gets photophobia and phonophobia but no nausea or vomiting. He reports feeling "loose", as if something is rattling around, if he moves around too much. He likes to go into a dark, quiet room and lay down. He takes Tylenol 500 mg up to 3 times per day. These headaches can last 1-1/2 days. He never had these headaches prior to 10 years ago. There is no family history of headaches. He does suffer from a great deal of neck pain which is being addressed by the orthopedic surgeon.

Michael did not volunteer any complaints of memory loss, but when asked specifically, he does report some cognitive difficulties. He says that he forgets peoples names frequently, even clients with whom he has worked for a long time. He finds it to be embarrassing. He does not have any problem with

CLOUD-AR-372

E-Balar 032002 2016e Suite 200 St. Petersburg, FL 33713                              DICT Page 86
(727)824-7132  Fax: (727)824-7133



phone numbers. He has not gotten lost. He pays his own bills without difficulties. He has a CPA do his taxes. There is no family history of memory problems. Family members report that he repeats himself and he finds himself occasionally stuttering. He was a B student in high school and a C student in college. He denies any history of learning disability or special classes. He does not suffer from anxiety. He does feel depressed from time to time. He has a lack of energy and motivation, but not all the time. He does not have any suicidal ideation. He simply wants to be by himself. Often going for a run or exercising will make him feel better. He enjoys lifting weights and running. There is no family history of depression. He does not, nor has he ever taking any medications for depression. He also describes some sleep disturbances. He reports severe nightmares which disturbed him. The content involves family members or loved ones getting hurt or even killed. These nightmares keep him up at night. He cannot think of any life experiences that could have triggered these nightmares.

HISTORY OF CONCUSSIONS:
The only medical record(s) available for my review is a medical summary, which appears to be a typed review of all of his injury reports, examinations, and radiology reports. It is not clear who generated this summary. This information is supplemented by the patient's history today.

There is clear documentation of a single concussion sustained on October 31, 2004 while playing with the New York Giants. Fortunately, it appears that he was formally evaluated as part of a traumatic brain injury study report. The summary of documentation available for me indicates that he had a grade 1 concussion on that day. He was complaining of headaches, dizziness, vertigo, and altered attention span. A followup traumatic brain injury examination on November 1, 2004 indicated normalcy. However, these notes indicate that his practice status was limited from October 31 through November 3, 2004. Again, I have only bullet summary statements of those reports. The patient recalls this event with some detail. He remembers being in a game against the Vikings. He was hit blind sided and struggled to get up. When he went into the huddle he was quite confused. He dropped down to one knee and pretended to tie his shoe. He did not have any idea as to what he was supposed to be doing for the play. His teammate, Jim Finn, told him to leave the game. He sat out for the remainder of the game. He thinks that this episode occurred during the second half. He believes that the symptoms lasted for greater than 15 minutes. He is not sure if he ever had any neuropsychological testing or MRIs.

In addition to the documented concussion, Mr. Cloud believes he's had several other concussions during his NFL career. He remembers one episode in his first or second year with the Kansas City Chiefs where he sustained a concussion during practice. This occurred during a full scrimmage where he was blocking a linebacker named Donnie Edwards. The coach had him blocking for many plays. The patient developed some nose bleeding as his helmet hit into his nose. He started feeling dazed and confused. He felt as if the practice lasted all day long. He reports being confused for the rest of the day. In addition to this specific event, he reports having many milder concussions during his years as a running back. He did not report these concussions for the fear that he would be taken out of the game. He describes the sensation of confusion and dizziness after head impact, lasting seconds to minutes. He believes it happened approximately 4 times per year during his career with the Kansas City Chiefs, 2

CLOUD-AR-373

E-Ba... (727)xxx-xxxx xxxnue Suite 200 St. Petersburg, FL 33713
(727)824-7132  Fax: (727)824-7133
DICO Page 87



times per year with a New York Giants, and 2 times per year with a New England Patriots.

On a NFL combined report from Dr. Paul Black and Dr. Greg Owens (? Scouting report) dated February 19, 1999, it was indicated that Mr. Cloud's past medical history was negative other than a concussion sustained in 1994 with no residuals. In other notes, there is vague mention of a "moderate concussion" suffered on April 23, 1995. Both of these concussions would have occurred in college, and there is no supporting detail for me to review. He recalls that the episode in 1994 was during practice, and one of his doctors said to him "welcome to big-time football!". The patient remembers that for the 1995 concussion he was in the game, and the next thing he knew he was at the sidelines, without knowing how he got from point A to point B. He is not sure if he actually lost consciousness. However, he recalls being asked questions and being asked to repeat things; he was unable. He was taken to the hospital. Details of any testing are unavailable. He remembers being kept in the infirmary overnight for at least one of these events. The next day he still felt foggy. He did not have his "wits" about him.

**PAST MEDICAL HISTORY:**
As above

**PAST SURGICAL HISTORY:**
1. Left foot first metatarsal cyst (bone grafting and cyst debridement), 12/12/1995
2. Right great toe cyst surgery, February 9, 1996
3. Right leg fasciotomy with debridement of a necrotic peroneus longus, July 30, 2003.

**PHYSICAL EXAMINATION:**
VITAL SIGNS: Blood pressure is 125/80, pulse is 75, respiratory rate is 18
GENERAL: Reveals a well-developed, well-nourished male in no acute distress.
HEAD: Normocephalic and atraumatic.
NECK: Supple with full range of motion in the cervical and thoracic spine, and there are no bruits present.
EXTREMITIES: Without clubbing, cyanosis, or edema. Peripheral pulses are intact and symmetric. There is a well-healed scar on the right lateral calf.
CARDIAC: S1 and S2 are appreciated, without any murmurs, rubs, or gallops.

**NEUROLOGICAL EXAMINATION:**
MENTAL STATUS EXAMINATION: Reveals the patient to be alert and attentive with orientation to person, place, time, and situation. Speech is clear and fluent. Naming, repetition, and comprehension are intact. The patient can follow three-step complex commands across the midline without difficulty. There are no elements of aphasia. Abstract thought is intact. The "7 Minute Memory Screen" was performed at bedside today. His attention, concentration short-term recall, praxis, and executive functioning are normal. Verbal fluency is at the low normal range. With analysis and calculation of the variables, his probability of having Alzheimer's dementia is 0.000.
CRANIAL NERVE EXAMINATION: Reveals pupils that are equal, round, and reactive to light.

CLOUD-AR-374



Michael Cloud                                                               Date of Birth: 04/07/1975

Funduscopic examination reveals normal optic discs and retina. Extraocular movements are intact with normal smooth pursuit and without nystagmus. Visual fields are full to confrontation testing. Trigeminal sensation is intact and symmetric to light touch and pinprick in all three distributions bilaterally. Face is symmetric with normal upper and lower facial strength. Hearing is intact to finger rub bilaterally. The tongue protrudes midline and demonstrates normal strength. The palate elevates symmetrically. Sternocleidomastoid strength is 5/5 bilaterally.

MOTOR EXAMINATION: Reveals normal tone, bulk, and power in all four extremities other than mild weakness of right ankle eversion 4+/5. There is no pronator drift, and fine motor movements are performed symmetrically. No abnormal movements are noted.

DEEP TENDON REFLEXES: Deep tendon reflexes are 2+ and symmetric throughout with downgoing plantar responses bilaterally.

COORDINATION TESTING: Reveals finger-to-nose, heel-to-shin, and rapid-alternating movements to be performed well bilaterally.

SENSORY EXAMINATION: Intact and symmetric to light touch, pinprick, temperature, vibration, and proprioception throughout.

GAIT: Evaluation of gait reveals a normal station without Romberg sign. The patient walks with a normal stance, stride length, and cantor. He can do so on his toes, heels, and in tandem without difficulty. There are normal associated movements.


IMPRESSION AND PLAN:

Mr. Cloud reports at least several concussions during his NFL football career, with only one being clearly documented in the record. At the time of the documented concussion, he was formally evaluated as part of a traumatic brain injury study report, and was declared to have suffered a Grade 1 concussion. However, it is not clear to me which concussion grading scale was used. His recollection of events slightly differs, reporting confusion lasting greater than 15 minutes, which have made this concussion a Grade 2 according to the Kelley and Rosenberg concussion grading (1997). In addition, he reports several very mild concussions per year, none of which are documented. If his recollection of events is accurate, these would have all been very mild, Grade 1 concussions (confusion, lasting less than 15 minutes).

Mr. Cloud reports having two concussions during his college football career, both of which would make the criteria for Grade 2 concussions (transient amnesia or confusion, lasting more than 15 minutes) if his recollection of events is accurate.

Mr. Cloud suffers from Benign Paroxysmal Positional Vertigo (BPPV), with spells occurring approximately four times per year. Additionally, he complains occasional (1x/month) migrainous headaches, mild memory loss and stuttering, and depressive symptoms. On neurologic examination he is nonfocal, and brief bedside cognitive examination reveals normal attention, concentration short-term recall, praxis, and executive functioning. His verbal fluency, however, is mildly impaired.



BPPV is a common, spontaneous occurrence in the elderly population, but in young patients it is most often experienced as a result of head trauma. I believe Mr. Cloud's episodic vertigo is a sequela of his prior traumatic head injuries. His subjective cognitive complaints and objective impairment in verbal fluency are very possibly a result of his past concussions. These signs and symptoms can be seen as a result of traumatic brain injuries. However, being the first time I have evaluated this patient I cannot be certain whether or not this mild cognitive impairment is acquired. Migrainous headaches and depression are common phenomena in the normal population, and even though they can also be features of the postconcussive syndrome, both conditions are mild in his case and I cannot determine if they are a consequence of his concussions.

Recommendations going further would include a search for any evidence of prior learning disabilities, especially given his low normal verbal fluency. Neuropsychological testing is essential for evaluation of any learning disabilities, establishment a cognitive baseline, and determination as to what cognitive impairments are related to traumatic brain injury. If he has had a prior neuropsychological evaluation as part of the traumatic brain injury study reports, a comparison can be made. I recommend an MRI of the brain with gradient echo imaging to evaluate for any evidence of traumatic brain injury (e.g. gliosis, hemosiderin products). The vertigo is benign in origin, and can be treated symptomatically with otolith repositioning maneuvers (i.e. Eply Maneuver) and/or meclizine hydrochloride as needed.

Thank you for allowing me to participate in the care of this very pleasant patient.

Sincerely,


Adam S. Di Dio, M.D.
Diplomate, American Board of Psychiatry & Neurology
Diplomate, American Board of Electrodiagnostic Medicine


Signed by Adam S DiDio  M.D. on 04/14/2010 at 1:01 PM



Michael Cloud                                                    Date of Birth: 07/01/1975



**NFL**

200 Saint Paul Street • Suite 2420 • Baltimore, Maryland 21202-2006
410-685-5089 • 800-638-3186 • Fax 410-783-0041

**NFL PLAYERS**
ASSOCIATION

## Line Of Duty Disability Benefits

### *PHYSICIAN'S REPORT FORM*

> Notice to Physician: To preserve your independence and the integrity of the decision-making process, you must avoid contacts with attorneys or other representatives of the player seeking disability benefits from the Bert Bell/Pete Rozelle NFL Player Retirement Plan. Please notify Rose Mary Dyes or Paul Scott at the Plan Office (Tel. No. (800) 638-3186) if you are contacted by any of these individuals.

---

**To Be Completed By Plan Office:**

1. Player's Name   *Mike A. Cloud*                    Date of Birth   **FRCP 5.2**

2. Address   *5126 Miller Ave, Dallas, TX 75206*

3. Credited Seasons   *1999-2005 (7 seasons)*          Telephone   *(401)662-5500 M*

---

4. When did you first examine the player? _____ 4/13/10 _____

5. Have you or have any of your partners ever treated the player?   Yes _____   No ✓

6. What is the nature of the impairment? Vertigo, Headaches, Memory loss
+ stutter, depression, Impaired verbal fluency

7. Impairment Information (attach additional sheets if necessary)

| Impairment to: | Impairment results from: | Does illness or injury result from football? | Has the impairment persisted or is it expected to persist for at least 12 months from the date if its occurrence? |
|---|---|---|---|
| Vertigo | ☐ Illness ☑ Injury ☐ Unknown | ☑ Yes ☐ No ☐ Cannot be determined | ☑ Yes ☐ No ☐ Cannot be determined |
| Headaches | ☐ Illness ☐ Injury ☑ Unknown | ☐ Yes ☐ No ☑ Cannot be determined | ☑ Yes ☐ No ☐ Cannot be determined |
| "Memory loss & stutter | ☐ Illness ☐ Injury ☑ Unknown | ☐ Yes ☐ No ☑ Cannot be determined | ☐ Yes ☐ No ☑ Cannot be determined |
| Depression | ☐ Illness ☐ Injury ☑ Unknown | ☐ Yes ☐ No ☑ Cannot be determined | ☐ Yes ☐ No ☐ Cannot be determined |
| Impaired verbal fluency | ☑ Unknown | ☐ Cannot be determined | ☑ Yes ☐ No ☐ Cannot be determined |

Dr. Adam DiDio
(natural neurologist)

8. For Orthopedic Impairments:

Please rate the impairment percentage using the AMA's <u>Guides to the Evaluation of Permanent Impairment</u> (5th Edition)("AMA Guides") by completing the detailed orthopedic evaluation impairment form for the impaired body parts. Copy the final impairment percentage ratings from those forms here. Record percentages as the BODY PART IMPAIRMENT ("BPI") for upper and lower extremity impairments only, and WHOLE PERSON IMPAIRMENT ("WPI") for spine impairments only. You may award up to three (3) percentage points for excess pain, in accordance with the AMA Guides. Do not use the range of motion test to evaluate spinal impairments. Calculate the whole person impairment rating of the upper and lower extremity <u>without</u> regard to pain by multiplying the % BPI by 0.6 for the upper extremity and by 0.4 for the lower extremity.

|  | % BPI | + | Pain | = | Total | % WPI |  |
|---|---|---|---|---|---|---|---|
| Upper Extremity | _____ | | _____ | | _____ | _____ | (BPI x .6) |
| Lower Extremity | _____ | | _____ | | _____ | _____ | (BPI x .4) |
|  | % WPI | + | Pain | = | Total | | |
| Cervical Spine | _____ | | _____ | | _____ | | |
| Thoracic Spine | _____ | | _____ | | _____ | | |
| Lumbar Spine | _____ | | _____ | | _____ | | |

If player has impairments to multiple body parts, please combine the impairment ratings using the Combined Values Chart beginning on page 604 of the AMA Guides. If you are combining more than two WPI ratings, you will need to use the table more than once. DO NOT include additional percentage points for pain in the combination process.

Combined WPI% Impairment _____

You may award up to three (3) percentage points for excess pain.

Pain Rating _____%

9. For Non-Orthopedic Impairments:

Please rate the loss of use of hearing, speech, and sight:

| Hearing: | _____0-29% | _____30-54% | _____55-79% | _____80% or greater |
|---|---|---|---|---|
| Speech: | _____0-29% | _____30-49% | _____50-69% | _____70% or greater |
| Sight: | _____0-29% | _____30-49% | _____50-69% | _____70% or greater |

CLOUD-AR-379

10. Is the patient's condition the primary or contributory cause of the surgical removal or major functional impairment of a vital bodily organ or part of the central nervous system?

_____Yes          _____No

If your answer is "Yes," please identify the affected body part and describe the nature of the surgical removal or the major functional impairment.

_____

11. Has the player's impairment improved since the last examination? DO NOT answer if "N/A" appears in the blanks below. If you have not previously examined this player, the Plan Office will forward a copy of the Plan's last examination of this Player for your review.

Yes _____          No _____          N/A _____

12. Additional remarks by physician_____

_____ See narrative please _____

_____

Please attach the required Medical Report and body part impairment rating forms with this form.

Physician's Name (typed or printed):    _Adam DiDio, M.D._____

Address    _Neuro-Science Center_____

_2201 Central Avenue, Suite 200_____

_Attn: Amy Savage_____

_St. Petersburg, FL  33713_____

Telephone    _(727)824-7132_____

*I certify that I have personally examined this Player and have personally reviewed any and all records of this Player given to me, and have personally prepared and reviewed the attached narrative reports. I also certify that my ratings and comments reflect my best professional judgment, and that I am not biased toward or against this Player.*

Signature _____    Examination Date  _4/13/10_____

Mail completed form with your narrative report to Rose Mary Eves at the Bert Bell/Pete Rozelle NFL Player Retirement Plan, 200 St. Paul Place, Suite 2420, Baltimore, MD  21202-2040.

CLOUD-AR-380

# MEDICAL SUMMARY

RE:        Michael Cloud        
           Date of Birth:

Boston College significant injury history – 9/7/94 neck burner; 4/1/95 R ankle sprain; 4/23/95 head mod. Concussion; 8/14/95 L hip flexor/Quad strain; 12/12/95 L foot 1 metatarsal Cyst (bone grafting and cyst debridement); 4/15/97 R knee MCL sprain; and 9/27/97 L ribs contusion

1999 – NY Giants College Personnel Medical Evaluation – 9/7/97 left neck burner, MRI normal; 2/9/96 right great toe cyst surgery; 4/11/97 right neck burner; 4/15/97 right knee MCL sprain 1st degree, MRI normal; 9/27/97 left rib contusion; 2/21/99 previous strain MCL normal exam, no problems, grade 2; Radiology Summary – knees within normal limits, bone graft on left great toe looks good

2/18/99 - National Invitation Camp medical Examination, sinus rhythms, Methodist Hospital labs

2/18/99 – Clarian Health – radiology reports – PA and lateral chest negative; left ankle - minor spur off the anterior talus on lateral ankle view, ankle mortise is preserved and no recent trauma is seen.  Left foot – post surgical changes and irregularity on medial aspect of head of first metatarsal.  C Spine – normal.  Knees – normal, incidental note is made of bilateral febella.  R foot - unremarkable.  R ankle – unremarkable.

2/18/99 – CYBEX Evaluation – knee extentsion/flexion

2/19/99 – Draft Physical

2/19/99 Boston College - J.E. Browns, M.D. – x-rays of shin, knees are ok.  Mild degenerative changes of left fist metatarsal phalangeal joint, previous cyst excision from metatarsal head.  Decreased ROM in R subtalar joint.  No x-rays of right ankle/foot.  Decreased ROM of left MPJ

2/19/99 – NFL Combine Report Dr. Paul Black and Dr. Greg Owens – past medical history negative except for concussion in 1994 with no residuals; physical exam entirely normal, labs studies, CXR and EKG normal – gives history from college 1994-97.

4/30/99 – 1/3/00 – Kansas City Chiefs – Medical history - 4/30/99 – R hamstring therapy some tightness following practice; 5/1/99 – R hamstring receives therapy; 5/2/99 R hamstring multiple therapies slight swelling in mid medial distal ecchymotic, wrapped, practice limited; 5/3-5/7/99 – hamstring getting treatment at Boston College doing pool routine and increasing activity daily; 8/3/99 – L great toe stepped on during practice very mild sub-ungual hematoma which did not need to be drained received ice; 8/4/99 – L great toe soreness not particularly swollen; 8/9/99 – Both hamstrings therapy for warm up, exam is normal; ; 8/10/99 – R heel blister wet/dry dressing wound is open; 8/11/99 – L great toe soreness of MP joint, r heel blister looks much

better continue wet/dry dressing; 8/12/99 – L hamstring soreness wanted to cool it down had therapy, blister on r heel much improved; 8/13/99 – L hamstring soreness exam normal; 8/17/99 L shoulder fell on outstretched shoulder another player struck anterior and felt shoulder slip and jam posterior continued practicing full ROM full elevation and flexion full external rotation and internal rotation both arms no swelling or pain wrapped for pm practice – iced; 8/18/99 L shoulder see by Barnthouse precautionary x-rays practice limited; 8/19/99 L shoulder L shoulder re-eval by Barnthouse feels better practice limited; 8/20/99 L shoulder therapy good ROM and strength wraps shoulder for practice, practice limited; 8/21/99 L shoulder wrapped for participate in game; 1/3/00 received final physical.

4/27/99 – Kansas City Chiefs – Midwest Radiology, Inc – Chest x-ray – no significant abnormality detected.

4/29/99 – Kansas City Chiefs – Medical History, Players Statement, Medical Examination and Authorizations, Physical Examination, Orthopedic Examination Sinus Rhythm, dental record, Eye examination

7/21/99 – Kansas City Chiefs – Extension/Flexion test knee

7/30/99 – Kansas City Chiefs – Pre-Season Player Exam –

8/9/99 – Kansas City Chiefs – Dr. Noblin – R heel – small 1 X 2 centimeter at base of Achilles from previous blister. Continue with Basatracine (SP?) and protective covering.

8/18-8/19/99 – Kansas City Chiefs – Dr. Barnthouse – Left shoulder injury 8/17/99 hit by another player. Recommended radiograph of shoulder. Clinically to have relatively mild to minimal findings and able to participate in practice. Continue protective strapping. Reviewed x-rays humeral head is reduced, no evidence of acute bony injury of chronic problems in shoulder.

1/3/00 – Kansas City Chiefs – Final Player Physical Exam

1/5/00 – University of Pennsylvania – MRI left shoulder – Tear of glenoid labrum probably extending form the anterosuperior to the anteroinferior segment of the labrum, mild irregularity of the anterior rime of the glenoid. No rotator cuff tear.

1/18/00 – John Browne, M.D. – L shoulder – at this point totally asymptomatic

5/3/00 – Kansas City Chiefs – Medical History, Players Statement, Medical Examination and Authorizations, Physical Examination, Orthopedic Examination Sinus Rhythm, dental record, Eye examination

5/6/00 – Kansas City Chiefs – mini camp – soreness in pre patella bursal region. Bothered him making cuts for 1 week. Exam normal – received therapy following each practice, participated fully.

7/20/00 – Kansas City Chiefs – Pre-Season Player Physical Exam -

CLOUD-AR-382

8/7/00 – Kansas City Chiefs – chipped right lower molar Saturday at Tennessee.  Will see Dr. Cummings Sunday night and follow up Monday morning.  Doesn't know if wore mouthpiece.

8/17/00 – Kansas City Chiefs – L great toe – reports stepped on dorsal aspect of toe in practice. No welling, mild soreness, able to stand and walk.  Received cold whirlpool.  Participated fully in practice.

12/26/00 – Kansas City Chiefs – Final Player Physical Exam

1/25/01 – Kansas City Chiefs – Medical History

4/25/01 - Kansas City Chiefs – Medical History, Players Statement, Medical Examination and Authorizations, Physical Examination, Orthopedic Examination Sinus Rhythm, dental record, Eye examination

4/27/01 – Kansas City Chiefs – Midwest Radiology – chest – no abnormality detected.

5/14/01 – 5/18/01 – Kansas City Chiefs – R ring finger – On Tuesday reported injury of DIP joint with slight amount of localized swelling.  Wednesday, reported increased soreness.  Had x-rays.  Placed in stack splenic and continued with practice.  Dr. Barnthouse called Friday and felt he had mid phalanx fracture and could continue to participate with splinting.

5/18/01 – Cris D. Barnthouse, M.D. – jammed R ring finger – protect finger for football and be re-s-rayed in 4 – 5 days.

5/21/01 – 5/25/01 – Kansas City Chiefs – R ring finger – participating with stack splint.  Follow-up x-rays taken Wednesday and review by physicians.

6/12/01 – 6/13/01 – Kansas City Chiefs – mini camp – R ring finger – participates with stack splint.  Follow-up x-rays Thursday.

7/26/01 – Kansas City Chiefs – Pre-Season Player Physical Exam –

7/28/01 – Kansas City Chiefs – R quad – struck in distal 1/3 anterior lateral 5.  continued practice.  After practice mild swelling with full motion.  Participated in afternoon practice with protective padding.  Multiple ice treatments.

7/29/01 – Kansas City Chiefs – R Quad – ice – excellent quad set, mild soreness, full ROM, practiced with protective padding.

8/7/01 – Kansas City Chiefs - Barnthouse – L foot – soft corn – wear spaces and x-ray when returns to Kansas City

12/23/01 – Kansas City Chiefs – Barnthouse – blow to hip during San Diego game – right posterior hip pointer – ice – given Vioxx

CLOUD-AR-383

12/24/01 – Kansas City Chiefs – R hip – ice – no swelling, sore over posterior pelvis region no discoloration changes.  No loss of motion of lumbar spin, hip.  Good strength.

12/25/01 – Kansas City Chiefs – R hip – multiple therapies – goo motion able to squat, good strength but mild palpation pain over posterior pelvis.

12/26/01 – Kansas City Chiefs – Branthouse – R hip – multiple therapies - recovering well from injury – practice with protective padding, practice limited.

12/27/01 – Kansas City Chiefs – R hip – multiple therapies – no change – full practice

12/28/01 – Kansas City Chiefs – R hip – therapy prior to practice only – no change except slight hint of aching over bruised area.  Good motion – full practice.

12/29/01 – Kansas City Chiefs – R hip – no treatment, no complaints.

1/7/02 – Kansan City Chiefs – Final Player Physical Exam

4/24/02 – Kansas City Chiefs – Medical History, Players Statement, Medical Examination and Authorizations, Physical Examination, Orthopedic Examination Sinus Rhythm, dental record, Eye examination.

5/2/02 – Kansas City Chiefs – mini-camp – struck in belly of his VMO by another player's knee. Unable to continue running received ice on field.

5/4/02 – Kansas City Chiefs – mini-camp – Right VMO - 95 degrees of active flexion with moderate soreness over VMO musculature.  Received mobilizing treatment with knee flexed with compression wrapping and evaluation by Dr. Barnthouse.  Missed both practices.

5/5/02 - Kansas City Chiefs – mini-camp – Right VMO – received multiple ice treatment.  Loss of approx. 15° flexion with swelling over VMO mild sympathetic effusion into joint.  Exercises performed.  Missed practice.

5/6/02 – 5/10/02 - Kansas City Chiefs – Right VMO continues with treatment.  Monday nearly full ROM, 2 centimeters of localized swelling, extensive treatment and cardio workout. Tuesday, mild soreness with decreased welling with full ROM.  By end of week had full ROM, excellent quadriceps setting and minimal if any swelling.  Did not receive treatment Friday.

7/26/02 – Kansas City Chiefs – Pre-Season Player Physical Exam

7/28/02 – Kansas City Chiefs – Throat examined-infected – isolation from other players – missed practice

7/29/08 – Kansas City Chiefs – Throat examined – feeling much better – temp down – very light exercise today.

CLOUD-AR-384

NO DATE – Kansas City Chiefs - Training Camp – swelling of dorsum of foot with core to it. Lanced and hair follicle removed.

1/1/02 – 12/31/02 – Kansas City Chiefs – Dispensing prescribing drug log.

9/2/02 – Kansas City Chiefs – Cleveland Game – mild hamstring cramping, oral hydration.

10/14/02 – Kansas City Chiefs – Another player stepped on foot day earlier in game. Lisfranc joint contusion with possible Lisfranc ligamentous sprain, doubt intraarticular fracture.

10/15/02 – Kansas City Chiefs – Alliance Radiology – MRI right mid foot – some soft tissue edema with increased T2 signal surrounding the proximal aspect of second metatarsal and along the adjacent dorsum of the mid foot. No evidence of focal mid foot fracture or stress fracture. Normal uniform width of intertarsal joint spaces and tarsal-metatarsal joints.

10/16/02 – Kansas City Chiefs – The Hospital for Surgery – MRI right mid and fore foot – minimal edema in dorsal superficial fascia in mid foot; no bone contusion, fracture of malaignment. Intact Lisfranc's ligament and joint.

10/16/02 – Kansas City Chiefs – R foot - multiple therapies – minimal improvement – unable to run.

10/17/02 - Kansas City Chiefs – R foot – multiple therapies – taping increased soreness – missed practice.

10/18/02 – Kansas City Chiefs – R foot – multiple therapies – able to stand and bear weight – unable to run as develops soreness in mid foot and inability to explode and push off. Missed practice.

10/19/02 - Kansas City Chiefs – R foot – multiple therapies – performed some running during practice.

10/20/02 – Kansas City Chiefs – R foot – Denver game – unable to push off while running and toninue to run on the outside of his foot - placed on inactive list.

10/20/02 – Kansas City Chiefs – follow up – right foot sprain – mild swelling – continue to monitor progress with athletic training staff and medical staff.

10/21/02 – Kansas City Chiefs – R foot – therapy – re-evaluate tomorrow

10/22/02 – Kansas City Chiefs – R Foot – therapy – less sore – ran better – status will be determined tomorrow.

10/23/02 – Kansas City Chiefs – follow up right foot sprain – no swelling. Still tenderness between firs and second metatarsal. Intensify workout program.

CLOUD-AR-385

10/25/02 – Kansas City Chiefs – R foot - therapy – feels good looked better – practiced limited

10/27/02 – Kansas City Chiefs – R Foot – Oakland Game – therapy – foot felt fine – participated in game.

10/28/02 – Kansas City Chiefs – R Foot – no treatment today, no complaints worked out with no problems.

11/11/02 – Kansas City Chiefs – R foot – ice bag requested on plane night before – toradol injection given, minimal residual soreness to foot.  Feels normal at exam.

11/13/02 – Kansas City Chiefs – resolving mid foot sprain.  Continue play as symptoms allow.

11/13/02 – Kansas City Chiefs – R foot – sore following practice.  Iced.  Re-evaluate tomorrow.

11/14/02 – Kansas City Chiefs – R foot – therapy – mild soreness – full practice participation.

11/15/02 – Kansas City Chiefs – R foot – therapy – palpation soreness over dorsum of Lis-franc joint – full practice.

11/16/02 – Kansas City Chiefs – R foot – therapy no training room soreness.

11/17/02 – Kansas City Chiefs – Buffalo Game – R foot – early exam and therapy – did participate in game.

11/18/02 – Kansas City Chiefs – R foot – therapy – no soreness.

11/19/02 – Kansas City Chiefs – R foot – therapy – continue tape and wear orthotics.

11/20/02 – Kansas City Chiefs – R foot – therapy no soreness – taping of toe and orthotic.  No limitation of practice.

11/20/02 – Kansas City Chiefs – right foot – doing much better – no swelling after practice.

11/21/02 – Kansas City Chiefs – R foot – therapy – full practice participation.

11/22/02 – Kansas City Chiefs – R foot – treatment following morning meeting – feels good – full practice.

11/23/02 – Kansas City Chiefs – R foot – received ultrasound – no new complaints.

11/28/02 – Kansas City Chiefs – stomach – diarrhea 3:00 a.m. – unable to practice – rehydration by IV and other medications.

11/29/02 – Kansas City Chiefs – stomach – no complaints feeling much better – full practice.

12/14/02 – Kansas City Chiefs – R foot – therapy – mild soreness.  No reservation about game status tomorrow.

12/28/02 – Kansan City Chiefs – Oakland game – nose – tacked and driven to ground – eval on bench – continued in game.

12/31/02 – Analytical Laboratories – positive anabolic steroid

12/7/02 – John Lombardo, M.D. – correspondence states urine specimen tested positive for the metabolities of nandrolone

12/29/02 – Kansas City Chiefs – Final Player Physical Exam (season end)

12/30/02 – National Football League – correspondence tested positive for metabolites of Nandrolon and suspended.

6/4/03 – NE Pats -  Medical history, previous injury history, health questionnaire, general physical exam, orthopedic exam, release of medical records,  Medical history summary, sinus rhythms

6/04/03 – Zarins – NE Pats Medical History Summary – 1995 concussion, 1999 – R shoulder sprain – 1995 Left foot, great toe sprain – 2002 – Right foot, mid foot sprain.

6/4/03 MGH – blood test

7/16/03 – Betro Pharmacy – Ery-Tab (erythromycin)

7/23/03 NE Pats – statement no illness since preseason physical

7/28/03 – Zarins/Gill – kicked in leg during scrimmage – Right leg contusion

7/29/03 – Zarins/Gill – Telephone call from Jim Whalen.  Mike able to practice but complained of increasing right leg pain.  Dr. spoke directly to Mike who elected to wait until morning.  Dr. stated if pain persisted go directly to emergency room.

7/30/03 – Zarins- ON 7/23/03 hit by helmet or kicked in mid leg.  2 days ago developed numbness on top of great toe.  Today has numbness in four toes with pain with ankle motion.  R leg compartment syndrome anterior and lateral compartments with muscle contusion and hematoma.  Recommended right leg fasciotomy anterior and lateral compartments.

7/30/03 – Zarins – Surgery – right leg fasciotomy anterior compartment – muscles were tight and bulged under pressure.

7/30/03 – MGH – Operative Report – Right leg fasciotomy, anterior compartment and lateral compartment, excision, necrotic, peroneus longus muscle and tenodesis, peroneus longus tendon

CLOUD-AR-387

to peroneus brevis muscle.

7/31/03 – MGH – Discharge Summary – Non-weight bearing, right lower extremity, keep in posterior splint, elevated when in bed, crutches for walking, complete on week of antibiotics, follow up with Zarins.

8/3/03 – Betro Pharmacy - Rixicet (oxycodone)

8/7/03 – Zarins – Doing well.  Leg in posterior splint, less pain.  Small area of numbness on little toe.  Walking boot applied.

8/11/03 – Zarins – R leg much improved.

8/12/03 – Shields MRI – ankle – Myositis with partial normalization of signal at the ankle.  NO evidence of necrosis or hematoma.

8/12/03 – Shields MRI – leg - There is extensive myositis involving the peroneus longus muscle.  There are no areas of myonecrosis or evidence of intramuscular hematoma.

8/14/03 – Zarins – R leg in shot leg walking boot and doing well.  Sutures removed.

8/23/03 – Zarins – R leg improving.  Using short leg brace, no pain.  Will go with ankle brace that allows plantar flexion/dorsiflexion but eliminates inversaion/eversion.

8/27/03 – Zarins – NE Pats Medical Summary update – R left contusion 7/25/03, surgery 7/31/03 release anterior and lateral compartments with debridement.

9/3/03 – 9/26/03 – Patriots Physical Therapy - Tim Brewster – Physical Therapy

9/26/03 – Zarins – R leg 8 ½ weeks postoperative.  No detectable residual impairment following closed compartment syndrome/fasciotomy.  Cleared for full activity.

10/5/03 – Zarins – R leg – essentially complexly normal.  Okay for full activity without restrictions.

12/30/03 – NE Pats – Medical Summary – R Leg - R Leg 7/25/03, surgery 7/31/03 release anterior and lateral compartments with debridement of necrotic peroneus longus muscle and tenodesis

1/20/04 - NE Pats Medical Summary – R Leg 7/25/03, surgery 7/31/03 release anterior and lateral compartments with debridement of necrotic peroneus longus muscle and tenodesis

2/1/04 – NE Pats Medical Summary – R Leg 7/25/03, surgery 7/31/03 release anterior and lateral compartments with debridement of necrotic peroneus longus muscle and tenodesis

3/1/04 – 3/1/05 – NY Giants – Cumulative medical journal, administered 3 liters of IV solution

11/7/04 – NY Giants – Injury Report – Left ribs fracture

11/7/04 - NY Giants – Left rib fracture (out from 11/7/04 – 11/17/04)

11/8/04 - NY Giants – Left ribs – swelling and tenderness over L lower posteriorly.  Radiographs demonstrate evidence e of old injury at tip of 12th rib.

11/8/04 – Montclair Radiology – Ribs left unilateral – Normal PA of the chest and left sided unilateral rib series.

11/9/04 - NY Giants – Left ribs – practice status – questionable

11/10/04 - NY Giants – L ribs – bruise on back, enter over ribs, flexion bothers him, able to flex forward.  X-ray shows small crack on 10th rib, non-displaced.

11/11/04 - NY Giants – L ribs – practice status out

11/12/04 - NY Giants – L ribs – slow improvement.  Impression – rib contusion continue to treat symptomatically – practice status – out

11/13/04 - NY Giants –L ribs – practice status – out

11/15/04 - NY Giants - L ribs - Continue with treatment – practice status – out

11/16/04 - NY Giants – L ribs – practice status – out

11/17/04 - NY Giants – L ribs – seems better, running – practice status – limited

11/18/04 - NY Giants – L ribs -- practice status – limited

11/19/04 - NY Giants – L ribs – practice status – limited

11/20/04 - NY Giants – practice status -- limited

11/25/04 - NY Giants – just ice today

11/26/04 - NY Giants -- just heat today

12/31/04 – NY Giants – Post-Season Exam summary

5/16/05 – Quest Diagnostics – blood tests

5/16/05 – NY Giants - Returning Veteran Health and History and Physical exam, warranty of full disclosure of physical and mental condition, orthopedic exam, medical exam, dental exam, Medical History Summary, sinus rhythms, blood tests, chest x-ray

CLOUD-AR-389

7/29/05 – NY Giants – Training Camp Medical Update

7/30/05 – NY Giants – 3 liters of IV solution following practice

11/2/05 – NE Pats – Med history, physical exam, heatlh questionnaire, orhtopaedic exam, release, authorization.

1-9-06 – NY Giants – Waiver of Post Season Physical Exam

CLOUD-AR-390

E-Ba lot 02/22 2016                                                    DICC Page 104

## 2004 NFL MTBI Study Physician's Follow-Up Evaluation

| Club | Injury Date | Follow-Up Exam Date: |
|---|---|---|
| 5 0 2 | 1 0 3 1 0 4 | 1 1 0 1 0 4 |

**Player ID #**  FRCP 5.2

| Time of Injury | Follow-Up Exam Time: |
|---|---|
| 1 5 : 5 0 | 1 0 : 0 0 |

The Injury Date and Time of Injury **must** be the same as in the athletic trainers record of the injury. Please use the last 6 digits of the player's SSN for the Player ID# and report the time in a 24 clock format.

### Signs & Symptoms

**General**
- ☑ NORMAL
- ○ Headaches
- ○ Nausea
- ○ Vomiting
- ○ Neck Pain
- ○ Back Pain
- ○ Syncopal Episodes
- ○ Seizure

**Somatic Complaints**
- ☑ NONE
- ○ Irritability
- ○ Anxiety
- ○ Depression
- ○ Personality Change
- ○ Fatigue
- ○ Sleep Disturbance
- ○ Decrease Libido
- ○ Decreased Appetite

### Cranial Nerves
- ☑ NORMAL
- ○ Dizziness
- ○ Vertigo
- ○ Tinnitus
- ○ Nystagmus
- ○ Hearing Loss
- ○ Diplopia
- ○ Photophobia
- ○ Blurred Vision
- ○ Altered Pupil Response
- ○ Altered Pupil Size
- ○ Sensitivity to Noise

### Cognitive Function
- ☑ NORMAL
- ○ NOT Oriented to Person
- ○ NOT Oriented to Place
- ○ NOT Oriented to Time
- ○ Loss of Immediate Recall

**Memory Processing**
- ☑ NO PROBLEMS
- ○ Altered Attention Span
- ○ Altered Info Processing
- ○ Antegrade Delayed
- ○ Retrograde Delayed

### Physical Exam Findings:
☑ Normal   ○ Abnormal

**Description of Abnormal Findings:**

### Neurologic Exam Findings:
☑ Normal   ○ Abnormal

**Description of Abnormal Findings:**
none now

### Management
- ○ Rest
- ○ Rx Drug Therapy
- ○ Hospitalization

| Time in Hospital | | Date Return to Full Participation | Lost Time From Participation | | |
|---|---|---|---|---|---|
| Days | Hours | 1 1 0 3 0 4 | 2 | | |
| | | | Days | Hours | Minutes |

### Diagnostic Procedures
- ○ Clinical Exam
- ○ X-Ray
- ○ MRI
- ○ CT Scan
- ☑ Neuropsych Exam    ~ 48 hrs. post-injury
- ○ SPECT
- ○ Other

**Date of Neuropsych Test**
1 1 0 2 0 4

### COMMENTS: Describe other findings.
No focal findings

**Physicians Name**   Scott Baked


31410

E-Ba lot 02/22 2016 **2004 NFL MTBI Physician's Initial Evaluation** DRCP Page 105

**Reportable Event:** A reportable mild brain injury is characterized by a traumatically induced alteration in brain function. This may be manifested by an alteration of awareness or consciousness (including but not limited to loss of consciousness), "ding", sensation of being dazed or stunned, sensation of "wooziness" or "fogginess" or amnestic period. The MTBI includes but is not limited to one or more of the following signs and symptoms: persistent headaches, vertigo, light-headedness, loss of balance, unsteadiness, syncope, near syncope, cognitive dysfunction, memory disturbance, hearing loss, tinnitus, blurred vision, diplopia, visual loss, personality change, drowsiness, lethargy, fatigue, and inability to perform usual daily activities.

| Club | Injury Date | Initial Exam Date |
|---|---|---|
| 5 0 2 | 0 0 / 3 1 / 0 4 | 1 0 / 3 1 / 0 4 |

| Player ID # | Time of Injury | Initial Exam Time |
|---|---|---|
| FRCP 5.2 | 1 5 : 5 0 | 1 5 : 5 0 |

The Injury Date and Time of Injury **must** be the same as in the athletic trainers record of the injury. Please use the last 6 digits of the player's SSN for the Player ID# and report the time in a 24 clock format.

## Signs & Symptoms

**General**
- ○ NORMAL
- ⊘ Headaches
- ○ Nausea
- ○ Vomiting
- ○ Neck Pain
- ○ Back Pain
- ○ Syncopal Episodes
- ○ Seizure

**Somatic Complaints**
- ⊘ NONE
- ○ Irritability
- ○ Anxiety
- ○ Depression
- ○ Personality Change
- ○ Fatigue
- ○ Sleep Disturbance
- ○ Decrease Libido
- ○ Decreased Appetite

**Cranial Nerves**
- ⊘ NORMAL
- ⊘ Dizziness
- ⊘ Vertigo
- ○ Tinnitus
- ○ Nystagmus
- ○ Hearing Loss
- ○ Diplopia
- ○ Photophobia
- ○ Blurred Vision
- ○ Altered Pupil Response
- ○ Altered Pupil Size
- ○ Sensitivity to Noise

**Cognitive Function**
- ⊘ NORMAL
- ○ NOT Oriented to Person
- ○ NOT Oriented to Place
- ○ NOT Oriented to Time
- ○ Loss of Immediate Recall

**Memory Processing**
- ○ NO PROBLEMS
- ⊘ Altered Attention Span
- ○ Altered Info Processing
- ○ Antegrade at Onset
- ○ Retrograde at Onset

**Was there a period of unconsciousness?**
Yes ○   No ⊘

**If Yes, record the time.**
[ ] [ ] : [ ] [ ]

**Initial Management Steps**
- ○ Airway Management
- ○ Cervical Spine Management

**Action Taken following Exam**
- ○ Returned Immediately
- ○ Rest & Return (Same Session)
- ⊘ Removed From Session
- ○ Hospitalized

**Physical Exam Findings:**
⊘ Normal   ○ Abnormal

**Description of Abnormal Findings:**

**Neurologic Exam Findings:**
⊘ Normal   ○ Abnormal

**Description of Abnormal Findings:**

57874

**Physician's Name** _Russa Warren, MD_



CLOUD-AR-392



### DOCUMENT REQUESTS

1.      All documents related to or concerning Michael Cloud ("Cloud") including, but not limited to, all agreements, drafts, notes, correspondence, communications, medical records, personnel records, recordings, Cloud's compensation, tests or analyses of Cloud's blood and/or urine, physical examinations of Cloud, endorsement contracts, and Cloud's suspension, including, but not limited to, any hearing or appeal.

2.      All documents related to or concerning the New York Football Giants and/or National Football League policies and procedures related to or concerning steroids including, but not limited to, testing of players for use of steroids.

3.      All documents related to or concerning tests or analyses of NitroTech or any other MuscleTech product including, but not limited to, all correspondence, agreements, invoices, reports, notes, assays, underlying data, retained samples, protocols and procedures used for testing and analysis, standard operating procedures for methodology used for testing and analysis (including, but not limited to, descriptions and characteristics for standard operating procedures), raw data associated with each test and analysis (including, but not limited to, chromatography, log books, and calculations), quality assurance and quality control procedures, and documents related to or concerning the chain of custody of the substance tested and/or analyzed.

4.      All documents related to or concerning the New York Giants and/or National Football League policies and procedures related to or concerning the use of nutritional supplements by National Football League players.

RONNIE —
PleAse cAll
Re: ATTAched.

JKM

#623259 v1

CLOUD-AR-393



E-Ba lot 02/22 2016

## New York Giants Player History

DICC Page 107

4-Sep-2004   6:15 PM



| Pos | Jers | Prospect (dot Plot) | Team |
|---|---|---|---|
| HB | | CLOUD, Mike | Free Agent |

| | | | | | | Experience | | | Current | College |
|---|---|---|---|---|---|---|---|---|---|---|
| **Status** Free Agent | | **Birthdate** FRCP 5.2 | **Short List** | **Positions** HB | **Flags** | Credits | 5 | Height | 5105 | 5105 |
| **College** Boston College | | **Draft Year / Round / Team** 1999 / 2 / KC | | | | Accrued | 5 | Weight | 204 | 204 |
| | | | | | G | NFL | 6 | Speed | 4.50 | 4.5 |
| **Agent** Neil S. Schwartz | | **Agent Business Phone** 914/369-7906 | | | | Pension | 5 | Test | | |
| | | | | | | | | Medical | B | |

### Transaction History

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 04/17/1999 | Reserve, Selection List | | KC | 09/29/2003 | Suspension Lifted by Commissioner | NE | NE |
| 07/31/1999 | Selection List Signing | KC | KC | 10/04/2003 | Counts on Active List | NE | NE |
| 09/10/1999 | De-Activated | KC | KC | 10/26/2003 | De-Activated | NE | NE |
| 09/15/1999 | Activated, from Inactive | KC | KC | 10/29/2003 | Activated, from Inactive | NE | NE |
| 09/17/1999 | De-Activated | KC | KC | 11/03/2003 | De-Activated | NE | NE |
| 09/22/1999 | Activated, from Inactive | KC | KC | 11/05/2003 | Activated, from Inactive | NE | NE |
| 09/26/1999 | De-Activated | KC | KC | 11/16/2003 | De-Activated | NE | NE |
| 09/29/1999 | Activated, from Inactive | KC | KC | 11/19/2003 | Activated, from Inactive | NE | NE |
| 10/10/1999 | De-Activated | KC | KC | 12/07/2003 | De-Activated | NE | NE |
| 10/13/1999 | Activated, from Inactive | KC | KC | 12/10/2003 | Activated, from Inactive | NE | NE |
| 10/20/1999 | De-Activated | KC | KC | 12/14/2003 | De-Activated | NE | NE |
| 10/27/1999 | Activated, from Inactive | KC | KC | 12/17/2003 | Activated, from Inactive | NE | NE |
| 04/11/2001 | Signed, Renegotiated Contract (pd-->pd) | KC | KC | 12/20/2003 | De-Activated | NE | NE |
| 09/30/2001 | De-Activated | KC | KC | 12/24/2003 | Activated, from Inactive | NE | NE |
| 10/03/2001 | Activated, from Inactive | KC | KC | 12/27/2003 | De-Activated | NE | NE |
| 10/20/2002 | De-Activated | KC | KC | 12/30/2003 | Activated, from Inactive | NE | NE |
| 10/23/2002 | Activated, from Inactive | KC | KC | 01/10/2004 | De-Activated | NE | NE |
| 10/27/2002 | De-Activated | KC | KC | 01/14/2004 | Activated, from Inactive | NE | NE |
| 10/30/2002 | Activated, from Inactive | KC | KC | 01/18/2004 | De-Activated | NE | NE |
| 02/27/2003 | Contract Expired | KC | KC | 01/21/2004 | Activated, from Inactive | NE | NE |
| 02/27/2003 | Reserve, Unrestricted Free Agent | KC | KC | 02/01/2004 | De-Activated | NE | NE |
| 06/02/2003 | Not Asked to Re-Sign | KC | | 02/04/2004 | Activated, from Inactive | NE | NE |
| 06/23/2003 | Free Agent Signing | | NE | 03/02/2004 | Contract Expired | NE | NE |
| 07/23/2003 | Declared Non-Football Injury | NE | NE | 03/02/2004 | Unrestricted Free Agent; ROFR | NE | NE |
| 07/25/2003 | Passed Physical | NE | NE | 04/05/2004 | Unrestricted Free Agent Signing | NE | NE |
| 08/31/2003 | Reserve/Suspended By Commissioner | NE | NE | 09/03/2004 | Terminated, Vested Veteran, all contracts | NE | |
| 09/29/2003 | Exempted, Commissioner Permission | NE | NE | | | | |

### Injury History

**9/07/1994: BLESTO**
LEFT NECK BURNER- MRI NORMAL.

**9/07/1994: BLESTO**
LEFT NECK BURNER- MRI NORMAL.

**2/09/1996: BLESTO**
RIGHT GREAT TOE CYST SURGURY.

**2/09/1996: BLESTO**
RIGHT GREAT TOE CYST SURGURY.

**11/1997: BLESTO**
RIGHT NECK BURNER.

**4/11/1997: BLESTO**
RIGHT NECK BURNER.

CLOUD-AR-394



E-Ba lot 02/22 2016



**New York Giants Player History**

DICC Page 108

4-Sep-2004  6:15 PM

| Pos | Jers | Prospect (Last First) | Team | Grade |
|-----|------|------------------------|------|-------|
| HB | | CLOUD, Mike | Free Agent | 64 |

**5/15/1997: BLESTO**
RIGHT KNEE MCL SPRAIN- 1ST. DEGREE-MRI NORMAL:

**4/15/1997: BLESTO**
RIGHT KNEE MCL SPRAIN- 1ST. DEGREE-MRI NORMAL:

**9/27/1997: BLESTO**
LEFT RIB CONTUSION.

**9/27/1997: BLESTO**
LEFT RIB CONTUSION.

**10/27/1998: BLESTO**
NO INJURY INFO GIVEN AT TIME OF VISIT.

**12/24/2001: SPORT SCAN**
RIGHT HIP BRUISE

**12/30/2001: NFL**
WEEK 16 - HIP - PROBABLE

**5/06/2002: SPORT-SCAN**
KNEE

**10/19/2002: SPORT-SCAN**
SORE FOOT

**10/20/2002: NFL**
WEEK 7 - FOOT - P

**10/27/2002: NFL**
WEEK 8 - FOOT - Q

**07/31/2003: SPORT-SCAN**
UNDERWENT SURGERY ON RT CALF- WILL MISS MOST OF THE SEASON

**06/14/2004: SPORT-SCAN**
SUFFERED A JAMMED RIGHT RING FINGER

E-Ba lot 02/22 2016 

DICC Page 109

Report Status: **Signed**

**Caritas Norwood Foxboro Site**
Caritas Christi Health Care System
70 Walnut St
Foxboro, MA 02035

| | |
|---|---|
| Name: CLOUD,MICHAEL | Medical Record #: NW00594524 |
| Address: 1 PATRIOTS PLACE | Account #: NW0009769563 |
| City/State/Zip: FOXBORO,MA 02035 | Requisition#: 04-0051226 |
| Home Phone #: (508)384-9113 | Location: DI.FXNWRoom/Bed: |
| Date of Birth: ▉FRCP 5.2 Age: 28 Sex: M | |
| Ordering Dr: DR ZARINS | Insurance: New England Patriots |

**Reason for Exam: PAINFUL SWELLING ? FX**

Date of Exam: 06/22/04
**Orders:** FINGER RING -        CPT4 Code: 73140
RIGHT RING FINGER:

Four views of the right ring finger are submitted.  There are no prior studies for comparison.  A non-displaced fracture of the distal phalanx is seen.  No additional fractures are identified.  There is no dislocation.  The joint spaces are preserved.

IMPRESSION:

NON-DISPLACED FRACTURE OF THE DISTAL PHALANX OF THE RIGHT RING FINGER.

_____ <<Signature on File>>_____
Dictated by: Robert Faberman MD
Signed by: Robert Faberman, MD

Report Number: 0622-0152
Tech: CNHJMS08
D: 06/22/04   T: 06/22/04 1447  P/S: 06/22/04 1503 MCR  LSU: Y

RADIOLOGY   Report



| | 3514 | B3 lot 0252 2016 | 05/13 | Diagnostics® | CAMBRIDGE, MASS. 02141 -3900, (800)842-1412 | DHCC Page 110 | 3244 |

**PATIENT**

CLOUD MIKE
FRCP 5.2

| SPECIMEN DATE | DATE OF BIRTH |
|---|---|
| 05/12/04 | FRCP 5.2 |

| SPECIMEN TIME | SEX | AGE |
|---|---|---|
| 06:20AM | M | 28 |

REFERRED BY          158 (11)

NEW ENGLAND PATRIOTS FOOTBALL
60 WASHINGTON STREET
FOXBORO, MA 02035
JAMES WHALEN

FINAL                Director: Salim E. Kabawat, M.D.

| WBC | RBC | HGB | HCT | MCV | MCH | MCHC | RDW | MPV | PLAT | BAND | NEUT | LYMP | MONO | EOS | BASO | ATYP L | MORPH |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 6.4 | 5.15 | 15.5 | 45 | 88 | 30 | 34 | 13.0 | 9.3 | 242 | 0 | 49 | 37 | 9 | 5 | 0 | 0 | |
| 3.8-10.8 1000/uL | 4.20-5.80 mil/uL | 13.2-17.1 g/dL | 39-50 % | 80-100 fL | 27-33 pg | 32-36 g/dL | 11.0-15.0 % | 7.5-11.5 fL | 140-400 thou/uL | 0-5 % | 48-75 % | 17-40 % | 0-14 % | 0-5 % | 0-3 % | 0-5 % | |

| Ca | PO4 | GLU. | BUN | CREAT | BUN/CR | URIC | CHOL | TRIG | HDL | TP | ALB | GLOB | A/G | ALKP | LDH | SGOT | SGPT |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 9.6 | 3.5 | 50 LO | 26 HI | 1.4 | 19 | 6.1 | | | | 7.9 | 4.5 | 3.4 | 1.3 | 88 | 150 | 24 | 20 |
| 8.5-10.4 mg/dL | 2.5-4.5 mg/dL | 65-99 mg/dL | 7-25 mg/dL | 0.5-1.4 mg/dL | 6-25 | 2.7-8.2 mg/dL | | 8.0-8.3 g/dL | 3.7-5.1 g/dL | 2.2-4.2 g/dL | 0.8-2.0 | 20-125 U/L | 100-250 U/L | 2-50 U/L | 2-60 U/L | | |

| BILI | BILI D | BILI I | Na | K | Cl | CO2 | ANION | Fe | TIBC | GGT | T3U | T4 | FTI | TSH | T4 F | B12 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 0.6 | 0.1 | 0.5 | 140 | 4.2 | 103 | 31 | 6 | 71 | | | | | | | | |
| 0.2-1.5 mg/dL | 0-0.3 mg/dL | 0.0-1.3 mg/dL | 135-146 mmol/L | 3.5-5.3 mmol/L | 98-110 mmol/L | 21-33 mmol/L | 5-20 | 40-190 ug/dL | | | | | | | | |

## Urinalysis

| COLOR | APP | SPGR | PH | ALB | GLU | KET | BILI | BLOOD | LEU | NIT |
|---|---|---|---|---|---|---|---|---|---|---|
| Yellow | Clear | 1.030 | 6.0 | NEG | NEG | NEG | NEG | NEG | NEG | NEG |
| Yellow | Clear | | 5.0-6.0 | NEG | NEG | NEG | NEG | NEG | NEG | NEG |

| Test Name | Result | Reference |
|---|---|---|
| **Differential (absolute count)** | | |
| Absolute Band Count | 0 | 0-500 /uL |
| Absolute Neutrophil Count | 3136 | 1500-7800 /uL |
| Absolute Lymphocyte Count | 2368 | 850-3900 /uL |
| Absolute Monocyte Count | 576 | 200-950 /uL |
| Absolute Eosinophil Count | 320 | 50-550 /uL |
| Absolute Basophil Count | 0 | 0-200 /uL |
| Absolute Atypical Lymphocytes | 0 | 0-200 /uL |
| **Lipid Panel** | | |
| Cholesterol | 188 | 100-199 mg/dL |
| Triglycerides | 135 | 30-149 mg/dL |
| HDL-Cholesterol | 54 | 40-77 mg/dL |
| LDL-Cholesterol | 107 | 62-130 mg/dL |
| Cholesterol/HDL Risk Factor | 3.48 | |
| Relative Risk | 0.5 times average | 1.0 is average risk for CHD |

## Comments

Risk Category:  LDL-Cholesterol Goal
CHD and CHD Risk equivalents:  <100
Multiple (2+) factors:  <130
Zero to one risk factor:  <160

E-Ba lot 02/22 2016                                             DICC Page 111

 **NEW YORK FOOTBALL GIANTS**
*Founded in 1925*

*phone off (*
*364*
*0 0 40*

Date: 5 / 16 / 2005 

### RETURNING VETERAN
### HEALTH HISTORY AND PHYSICAL EXAMINATION

Name: Michael Cloud     Date of Birth **FRCP 5.2**

Social Security Number: **FRCP 5.2**    Age: 29

Address 1: 875 Frenchtown Rd.    Home Phone: 401·662·5500

E. Greenwich, RI 02818    Cell Phone: _____

Address 2: _____    Other Phone: _____

_____    E-Mail: _____

Marital Status: Single    Wife's Name: _____

Whom Shall We Contact In Case of Emergency?: Charles + Ethel Cloud

Relation: Parents    Address: 508 Turnpike Ave.

Phone 1: 401·683·5443    Portsmouth, RI 02871

Phone 2: _____

---

**\*\* THIS SECTION TO BE COMPLETED BY NEW YORK GIANTS MEDICAL STAFF \*\***

| | | |
|---|---|---|
| Medical and Orthopedic History | | Urine |
| E.K.G. | | Blood (CBC/SMA) |
| Medical Exam | | Neuro Test |
| Orthopedic Exam | | Dental Exam |
| Eye Exam | | Chest X-ray |
| ENT/Hearing | | Nutrition |

---

CLOUD-AR-398

E-Ba lot 02/22 2016                                        DICC Page 112

## _NEW YORK FOOTBALL GIANTS MEDICAL HISTORY - RETURNING VETERANS ONLY_

_Please complete the following form in regard to your physical health since your last medical evaluation for the New York Football Giants, Inc._

NOTE:  Since your last physical evaluation:                          YES            NO

1.    Have you had any illness?  If yes, please list them:            _____          ✓

2.    Have you been taking any medications?                           _____          ✓

3.    Have you been hospitalized since your last physical?            _____          ✓

4.    Have you had any dental work done?                              _____          ✓

5.    Have you had an injury to any of the following areas?           _____          ✓

                              YES            NO

        Head                  _____          ✓
        Shoulder              _____
        Neck                  _____
        Ribs                  _____
        Back                  _____
        Hip                   _____
        Thigh                 _____
        Knee                  _____
        Leg                   _____
        Ankle                 _____
        Foot                  _____          ✓

6.    Have you had any physical problems since your last physical examination which have not   been mentioned?
If yes, please list them.

To the best of my knowledge, the above statements are true.

PLAYER SIGNATURE: _____          DATE: 05 · 16 · 05

                                                                          2

CLOUD-AR-399

## WARRANTY OF FULL DISCLOSURE OF THE PHYSICAL AND MENTAL CONDITION OF PLAYER

TO:      New York Football Giants, Inc.
         Giants Stadium
         East Rutherford, New Jersey 07073

Player warrants and represents that he has made a full and complete disclosure to the Club's physician of all present or prior physical or mental defects, illnesses, injuries, or conditions known to him or of which he has knowledge, which might prevent, hinder, or impair the performance of his services under his standard player contract.    Player further warrants that at the time of his physical examination by the Club's physician on the _May_ day of _16_ 20 _05_ he has not withheld or failed to disclose any present or previous physical or mental defect, illness, injury, or condition known to him.    Player understands and agrees that if any answers given during said physical examination are false or if any information has been withheld, such physical examination will become void and will necessitate the taking of another physical examination to determine the true physical status of the player.    Player further agrees to indemnify and hold the Club harmless from the consequence of any injury, illness or deteriorated condition occurring to player during the life of his standard player contract which is attributable to or the result of any defect, illness, injury or condition which player failed to disclose to the Club at the time of his physical examination.

PLAYER NAME: _Michael Cloud_          DATE: _05·16·05_

PLAYER SIGNATURE:

WITNESS:

3

E-Ba lot 02/22 2016                                    DICC Page 114

### NEW YORK FOOTBALL GIANTS - ORTHOPEDIC EXAMINATION I

| Body Part | Normal | Abnormal | Comments |
|-----------|--------|----------|----------|
| Neck | ✓ | | |
| Spine | ✓ | | |
| Shoulder | ✓ | | |
| Elbow | ✓ | | |
| Wrist | ✓ | | |
| Hand | ✓ | | |
| Hip | ✓ | | |
| Ankle | ✓ | | |

Feet     (a) Pes Cavus (high arches)     (b) Normal     (c) Splay

        (d) Pes Planus (flat)        (e) Pronated

FUNCTIONAL TESTS     (a) Up & Down Stairs    (b) Hop On One Leg    (c) Running in Place

                    (d) Half Squat        (c) Full Squat

| | Yes | No | Comments |
|--|-----|-----|----------|
| Patella a. Pain | | ✓ | |
| b. Apprehension | | ✓ | |
| c. Crepitation | | ✓ | |

Thigh

a. Tone _____ nl _____

b. Atrophy _____ ∅ _____

PLAYER SIGNATURE _____     DATE: _05· 16·05_

PLAYER INITIALS _____

4

E-Ba lot 02/22 2016 ● ● DICC Page 115

*CLAUD, M*

## NEW YORK FOOTBALL GIANTS ORTHOPEDIC EXAMINATION II

1. **KNEE EXAMINATION**                    **RIGHT**                    **LEFT**

   A. **LCL**
      1. Extension          (Neg)  1+  2+  3+        (Neg)  1+  2+  3+
      2. 30 Degree Flexion  (Neg)  1+  2+  3+        (Neg)  1+  2+  3+

   B. **MCL**
      1. Extension          (Neg)  1+  2+  3+        (Neg)  1+  2+  3+
      2. 30 Degree Flexion  (Neg)  1+  2+  3+        (Neg)  1+  2+  3+

   C. **ACL/PCL**
      1. Lachmann           (Neg)  1+  2+  3+        (Neg)  1+  2+  3+
             Endpoint       (A)    B                (A)    B
      2. Anterior Drawer    Neg  1+  2+  3+          Neg  1+  2+  3+
      3. Posterior Drawer   Neg  1+  2+  3+          Neg  1+  2+  3+
      4. Pivot Shift        Neg  1+  2+  3+          Neg  1+  2+  3+
      5. Reverse Pivot Shift Neg  1+  2+  3+         Neg  1+  2+  3+
      6. Palpation
             Scar           (Yes)  No        (R) leg scar — conf release
             Pain           Yes   (No)       _____
             Effusion       Yes   (No)       _____
             Soft Tissue Swelling Yes (No)   _____

2. **EXAMINER'S IMPRESSION (DIAGNOSIS):**

   _____
   _____
   _____
   _____

3. **RECOMMENDATIONS:**

   _____
   _____
   _____

PHYSICIAN SIGNATURE: _Dr Warren_          DATE: _5/6/16_

PLAYER INITIALS: _UC_

5

CLOUD-AR-402

### NEW YORK FOOTBALL GIANTS MEDICAL EXAMINATION

| N = NORMAL | AB = ABNORMAL | N | AB | COMMENTS |
|---|---|---|---|---|
| Head | Hair, Scalp, Masses | ✓ | | |
| Eyes | Lids, Conjunctivitis, Sclera, EOM Proptosis, Pupils, Peripheral Vision, Fundi, Gross Tension to palpation | ✓ | | |
| Ears | Gross Hearing to Speech Discharge Drums | ✓ | | |
| Nose | Septum, Mucosa, Polyps, Sinuses | ✓ | | |
| Mouth Throat | Lesions, Teeth, Tongue Tonsils, Lesions, Injection | ✓ | | |
| Neck | Adenopathy Thyroid, Vessels, Masses, Voice abnormalities | ✓ | | |
| Thorax Lungs | Shape, Expansion Deformities Bronchi, Wheezes | ✓ | | |
| Heart | Sounds, Murmurs, PMI | ✓ | | |
| Abdomen | Organ Enlargement, Masses, Tenderness, Hernia, Scars | ✓ | | |
| Genitalia Hernias | Lesions, Discharge, Scrotum, Testicles, | ✓ | | |
| Rectal | Hemorrhoids, Fissures, Prostate Masses | N/A | | |
| Extremities | Pulses, Veins, Edema, Clubbing, Atrophy | ✓ | | |
| Neurological | Cranial Nerves, Reflexes, Motor, Balance, Sensory | ✓ | | |
| Skin | Rash, Ecchymosis, Texture | ✓ | | |
| Mental Status | Affect, Hostility , Agitation | ✓ | | |

HEIGHT: _____   WEIGHT: _____

BLOOD PRESSURE: _126/84_   RETAKE: _____

PHYSICIAN'S SUMMARY: _Norl woud l PE_

PHYSICIAN'S SIGNATURE: _____   DATE: _5/16/5_

PLAYER INITIALS: _WL_

6

E-Ba lot 02/22 2016                                                    DICC Page 117

### NEW YORK FOOTBALL GIANTS DENTAL EXAMINATION

RIGHT                                                                      LEFT



UPPER

| 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | 14 | 15 | 16 |
| 8 | 7 | 6 | 5 | 4 | 3 | 2 | 1 | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 |

LINGUAL

| 8 | 7 | 6 | 5 | 4 | 3 | 2 | 1 | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 |
| 32 | 31 | 30 | 29 | 28 | 27 | 26 | 25 | 24 | 23 | 22 | 21 | 20 | 19 | 18 | 17 |

LOWER

**DENTAL SUMMARY:**

DENTIST SIGNATURE: _____   DATE: 5/16/05

---

### NEW YORK FOOTBALL GIANTS EYE EXAMINATION

VISION       O.D 20/25⁻²  O.S. 20/20   s/p Lasik

MOTILITY     (NORMAL)
             ABNORMAL

EXTERNAL     (NORMAL)
             ABNORMAL

INTERNAL     (NORMAL)
             ABNORMAL

PHYSICIAN'S SIGNATURE: _____   DATE: 5/16/05

                                              PLAYER INITIALS: _____

7

CLOUD-AR-404



E-Ballot 02/22 2016

DICC Page 118

Heartcare Cener, P.A.
Dept:
Room:
Oper: DD

RP:

Requested by:
Dr Salerno

PRELIMINARY-MD MUST REVIEW

05/16/2005  09:36:20 AM  Michael Cloud
29 years     Male

. Normal sinus rhythm, rate 61............Normal P axis, PR, rate & rhythm
. QT interval short for rate..........................QTc < 360 mS

- BORDERLINE ECG -

| Rate | 61 |
| PR | 148 |
| QRSD | 88 |
| QT | 354 |
| QTc | 356 |

--AXIS--
P     42
QRS   -2
T     25

CLOUD-AR-405

E-Ba lot 02/22 2016                                            DICC Page 119



## *New York Football Giants Cumulative Medical Journal for Mike Cloud*

### *From 3/1/2004 To 3/1/2005*

**Body Part/Injury: Modality/Medication/Quantity/Sets-Reps**

| | |
|---|---|
| **Wednesday, October 06, 2004** | |
| N/A Tooth | |
| Practice Status:   Limited | |

| | |
|---|---|
| **Thursday, October 07, 2004** | |
| N/A Tooth | |
| Practice Status:   Limited | |

| | |
|---|---|
| **Friday, October 08, 2004** | |
| N/A Tooth | |
| Practice Status:   Limited | |

| | |
|---|---|
| **Sunday, October 31, 2004** | |
| N/A Head Cerebral Concussion | |
| Return Date:   11/3/2004 | |
| ATC: Barnes | |

| | |
|---|---|
| **Monday, November 01, 2004** | |
| N/A Head | |
| Practice Status:   Limited | |

| | |
|---|---|
| **Tuesday, November 02, 2004** | |
| N/A Head | |
| Practice Status:   Limited | |

| | |
|---|---|
| **Wednesday, November 03, 2004** | |
| N/A Head | |
| Practice Status:   Limited | |

| | |
|---|---|
| **Sunday, November 07, 2004** | |
| Left Ribs  Fracture | |
| Return Date:   11/17/2004 | |
| ATC: Barnes | |

**Monday, November 08, 2004**

Left Ribs
Scott Rodeo, MD

Mike is evaluated for a contusion of the left lower ribs. There is swelling and tenderness over the left lower ribs posteriorly. Radiographs demonstrate evidence of old injury at the tip of the 12th rib. I do not appreciate any new acute fractures. We will obtain a urine test to evaluate for microscopic hematuria.

| | |
|---|---|
| Practice Status:   Questionable | |
| # of Treatments: 2  Times: 08:00; 15:00; | |
| ATC: Hansen | |
| Electric Stimulation | 1 |
| Ice | 2 |
| X-Ray | 1 |

**Tuesday, November 09, 2004**

Left Ribs
Practice Status:   Questionable
# of Treatments: 1  Times: 10:00;
ATC: Hansen

**Body Part/Injury: Modality-Medication/Quantity/Sets-Reps**

| | |
|---|---|
| AROM | 1 |
| Electric Stimulation | 1 |
| Ice | 1 |
| UBE | 1 |

**Wednesday, November 10, 2004**

Left Ribs
Russell Warren, MD

Regarding his back. He has a bruise. He is quite tender over his rib left side. Flexion to the right bothers him. He is able to forward flex okay. On his x-rays there appears to be a one line on about the 10th rib. It does not head off to the side. I think that he has a small crack at that site, nondisplaced. We will treat him as such.

| | |
|---|---|
| Practice Status:   Out | |
| # of Treatments: 2  Times: 06:30; 14:45; | |
| ATC: Hansen | |
| AROM | 1 |
| Electric Stimulation | 1 |
| Hot Pack | 1 |
| Ice | 1 |
| PROM | 1 |
| UBE | 1 |

**Thursday, November 11, 2004**

Left Ribs
Practice Status:   Out
# of Treatments: 2  Times: 06:30; 14:45;
ATC: Hansen

| | |
|---|---|
| AROM | 1 |
| Electric Stimulation | 1 |
| Hot Pack | 1 |
| Ice | 1 |
| PROM | 1 |
| UBE | 1 |

**Friday, November 12, 2004**

Left Ribs
Bryan Kelly, MD

Regarding his left rib contusion/fracture, showing slow improvement. He still has pain. Palpation is predominantly posteriorly around the level of T7-8. His lungs are clear with deep inspiration. He does have pain on palpation over the posterior aspect of the ribs there. X-rays were reviewed and there is suggestion of maybe a little crack in the rib posteriorly but no frank displacement.
Impression: rib contusion. At this point we will continue to treat him symptomatically.

| | |
|---|---|
| Practice Status:   Out | |
| # of Treatments: 2  Times: 06:30; 14:45; | |
| ATC: Hansen | |
| AROM | 1 |
| Electric Stimulation | 1 |
| Hot Pack | 1 |
| Ice | 1 |
| PROM | 1 |
| UBE | 1 |

| | |
|---|---|
| **Saturday, November 13, 2004** | |

E-Ba lot 02/22 2016  DICC Page 120

## *New York Football Giants Cumulative Medical Journal for Mike Cloud*

### *From 3/1/2004 To 3/1/2005*

**Body Part/Injury: Modality/Medication/Quantity/Sets-Reps**

**Left Ribs**
Practice Status: Out
# of Treatments: 1  Times: 07:00;
ATC: Hansen

| | |
|---|---|
| AROM | 1 |
| Electric Stimulation | 1 |
| Hot Pack | 1 |
| Ice | 1 |
| PROM | 1 |
| UBE | 1 |

**Monday, November 15, 2004**

**Left Ribs**
Scott Rodeo, MD

Mike is evaluated for the left lower ribs. He is still tender over the left lower ribs posteriorly but this is clearly improving. Rotation to the right and left now causes only minimal pain. He does note that when he takes a deep breath he does feel a sense of something grinding, which is likely the rib fracture. Review of the x-rays from last week do demonstrate apparent crack in the posterior aspect of the left 10th rib. He will continue with treatments for this area with protection.

Practice Status: Out
# of Treatments: 2  Times: 10:30; 15:00;
ATC: Hansen

| | |
|---|---|
| AROM | 1 |
| Electric Stimulation | 1 |
| Hot Pack | 1 |
| Ice | 1 |
| PROM | 1 |
| UBE | 1 |

**Tuesday, November 16, 2004**

**Left Ribs**
Practice Status: Out
# of Treatments: 1  Times: 10:00;
ATC: Hansen

| | |
|---|---|
| Electric Stimulation | 1 |
| Ice | 1 |
| PROM | 1 |

**Wednesday, November 17, 2004**

**Left Ribs**
Russell Warren, MD

Regarding his left posterior ribs. He seems better. He is running. He is going to wear a pad. I think he can play this week. Progress.

Practice Status: Limited
# of Treatments: 2  Times: 07:00; 14:45;
ATC: Hansen

| | |
|---|---|
| Electric Stimulation | 2 |
| Ice | 2 |
| Massage | 1 |
| PROM | 1 |

**Thursday, November 18, 2004**

**Left Ribs**
Practice Status: Limited

**Body Part/Injury: Modality/Medication/Quantity/Sets-Reps**

ATC: Kennelly

| | |
|---|---|
| Electric Stimulation | 2 |
| Ice | 2 |
| Massage | 1 |
| PROM | 1 |

**Friday, November 19, 2004**

**Left Ribs**
Practice Status: Limited
# of Treatments: 1  Times: 14:00;
ATC: Kennelly

| | |
|---|---|
| Electric Stimulation | 1 |
| Ice | 1 |
| Massage | 1 |
| PROM | 1 |

**Saturday, November 20, 2004**

**Left Ribs**
Practice Status: Limited

**Thursday, November 25, 2004**

**Left Ribs**
# of Treatments: 1  Times: 13:15;
ATC: Kennelly

| | |
|---|---|
| Ice | 1 |

**Friday, November 26, 2004**

**Left Ribs**
# of Treatments: 2  Times: 06:30; 13:15;
ATC: Kennelly

| | |
|---|---|
| Hot Pack | 1 |
| Ice | 1 |

E-Ba lot 02/22 2016                                          DICC Page 121

### New York Football Giants Cumulative Injury Report for Mike Cloud
From 3/1/2004 To 3/1/2005

| Injury: | Left Ribs  Fracture Left Ribs | Onset Date: | 11/7/2004 | Days Lost: | 10 |
|---|---|---|---|---|---|
| | | Return Date: | 11/17/2004 | Practices Lost: | 4 |
| | | | | Games Lost: | 1 |
| Injury: | N/A Head Cerebral Concussion N/A Head | Onset Date: | 10/31/2004 | Days Lost: | 3 |
| | | Return Date: | 11/3/2004 | Practices Lost: | 0 |
| | | | | Games Lost: | 0 |

|  |  |
|---|---|
| Days Lost for Mike Cloud Injuries: | 13 |
| Practices Lost for Mike Cloud Injuries: | 4 |
| Games Lost for Mike Cloud Injuries: | 1 |

CLOUD-AR-408

Ex-Ba lot 02/22 2016                                                DICC Page 122
                                                                    Cloud

### NEW YORK FOOTBALL GIANTS
### POST-SEASON PHYSICAL EXAMINATION SUMMARY ~

#### TO BE COMPLETED BY PLAYERS:

**Please check Item 1 or 2, whichever is appropriate:**

1. ___✓___ I am, on this date, suffering from NO past or present physical injuries or medical problems.

2. _____ I am currently suffering from the following listed physical injuries (past or present) or medical conditions.

_____
_____
_____
_____

**Please answer the following questions:**
Are you at present free of Injury, Illness, or Discomfort?  Yes __✓__    No _____
If "No", please give full details.

_____
_____
_____

Are you currently physically able to perform all of the duties required in professional football?
Yes __✓__   No _____   If "No", please give full details.

_____
_____
_____

Have you missed any playing time during the season as a result of Injury, Illness, Discomfort or any other reason?  Yes __✓__   No _____   If "Yes", please give full details.

_Rib Fracture_ _____
_____
_____

During this season, have you suffered any Injury, Illness, or Discomfort for which you HAVE NOT sought:   If "Yes", please give full details.

1. Medical Advice?   Yes _____   No _✗_ _____
2. Diagnosis?        Yes _____   No _✗_ _____
3. Treatment?        Yes _____   No _✗_ _____

I have been offered information regarding workers' compensation.

PLAYERS NAME: (Please print) _Michael Cloud_

PLAYERS SIGNATURE: _Michael Cloud_       DATE: _12·31·04_

CLOUD-AR-409

E-Ba lot 02/22 2016                                      DICC Page 123

## NEW YORK FOOTBALL GIANTS POST-SEASON ORTHOPEDIC EXAM

**PLAYERS NAME:** (Please Print) _Michael Cloud_

**TO BE COMPLETED BY TEAM PHYSICIAN:** Please check item 1 or 2, whichever is appropriate:

1. _✓_ I have examined the above-listed player and found him to have NO physical injuries or orthopedic problems or conditions that would restrict him from unlimited participation in professional football.

2. _____ I have examined the above-listed athlete and found him to have the following orthopedic conditions or problems, which need treatment, rehabilitation, or off-season surgery.

Estimated time of recovery from date of examination: _____

**PASSES EXAMINATION:** _____✓_____   **FAILS EXAMINATION:** _____

**EXAMINATION PENDING:** _____∅_____

**TEAM PHYSICIANS SIGNATURE:** _____   DATE _1/3/05_

| HEAD INJURY | EXAM |
|---|---|
| Suffered during the season? [✓] Yes  [ ] No  Details:  Concussion | ∅ post concussive Sx  NORMAL EXAM (Y)/ N |
| **CERVICAL, THORACIC, LUMBAR SPINE INJURY**  Suffered during the season? [ ] Yes  [✓] No  Details:  (L) 12th rib fx —  Healed | EXAM  NORMAL EXAM (Y)/ N |
| **SHOULDER INJURY**  Suffered during the season? [ ] Yes  [✓] No  Details: | EXAM  NORMAL EXAM (Y)/ N |

CLOUD-AR-410

E-Ba lot 02/22 2016

DICC Page 124

*Cross*

**PLAYER'S NAME:** (Please Print) *Michael Cloud*

| UPPER / LOWER ARM, ELBOW, WRIST, HAND AND FINGER INJURY<br>Suffered during the season? [ ] Yes  [ ✗ ] No<br>Details: | EXAM<br><br><br><br><br><br>NORMAL EXAM (Y) / N |
|---|---|
| PELVIS, HIP, ABDOMEN, AND THIGH INJURY<br>Suffered during the season? [ ] Yes  [ ] No<br>Details: | EXAM<br><br><br><br><br><br>NORMAL EXAM (Y) / N |
| KNEE INJURY<br>Suffered during the season? [ ] Yes  [ ] No<br>Details: | EXAM<br><br><br><br><br><br>NORMAL EXAM (Y) / N |
| LOWER LEG, ANKLE, FOOT AND TOE INJURY<br>Suffered during the season? [ ] Yes  [ ] No<br>Details: | EXAM<br><br><br><br><br><br>NORMAL EXAM (Y) / N |

CLOUD-AR-411



## *New York Football Giants Injury Report for Mike Cloud*

| | | | | | |
|---|---|---|---|---|---|
| **Player ID:** | FRCP 5.2 | | **Onset Date:** | 11/7/2004 | **Return Date:** 11/17/2004 |
| **Evaluator:** | Barnes | | **Onset Time:** | 18:00 | **Return Time:** 13:00 |
| **Status:** | Closed | | **Injured Reserve Date:** | | |
| **Body Part:** | Left Ribs | | | | |

**Primary Injury:**     Fracture
**Secondary Injury:**
**Tertiary Injury:**

| | | | |
|---|---|---|---|
| **Diagnostic Procedures:** | Regional Orthopedic Exam | **Principal Management:** | Therapeutic Modality |
| | Palpation Exam | | Rest |
| | X-Ray | | Rx Drug Therapy |
| **Primary Mechanism:** | Direct Impact | **Nature of Injury:** | Acute Injury |
| **Team Session:** | Game - Home | **Action Taken:** | Removed from Session |
| **Player Activity:** | Tackled As Carrier | **Surgery Date:** | |
| **Period:** | 3rd Quarter/Period | **Player Position:** | Halfback |
| **Protection Injured Area:** | None | **Team Activity:** | Run/Outside Tackle |
| **Brace:** | | **Surface:** | FieldTurf |
| | | **Surface Condition:** | Normal |
| **Equipment Type:** | | **Temperature:** | Medium |
| **Equipment Brand:** | | **Humidity:** | Medium |
| **Equipment Vintage:** | New | **Follow Up Care:** | Refer to M.D. |

| | | | |
|---|---|---|---|
| **Game Injury:** | Behind | **Stadium:** | Giants Stadium |
| **Final:** | Lost | **Foul:** | Not Applicable |

**Comments:**

**Surgical Procedure:**                              **Surgery Notes:**
**Date of Surgery:**
**Surgeon:**

**Subjective:**

**Objective:**

**Assessment:**

**Plan:**

CLOUD-AR-412

E-Ba lot 02/22 2016                                           DICC Page 126

## *New York Football Giants Injury Report for Mike Cloud*

| | | | | |
|---|---|---|---|---|
| **Player ID:** | FRCP 5.2 | | **Onset Date:** | 10/31/2004 **Return Date:** 11/3/2004 |
| **Evaluator:** | Barnes | | **Onset Time:** | 15:50 **Return Time:** 13:00 |
| **Status:** | Closed | | **Injured Reserve Date:** | |
| **Body Part:** | N/A Head | | | |

**Primary Injury:** Cerebral Concussion Grade I
**Secondary Injury:**
**Tertiary Injury:**

---

| | | | |
|---|---|---|---|
| **Diagnostic Procedures:** | Neuromuscular Exam | **Principal Management:** | Rest |
| | Medical Evaluation | | |
| | Observation | | |
| **Primary Mechanism:** | Direct Impact | **Nature of Injury:** | Acute Injury |
| **Team Session:** | Game - Away | **Action Taken:** | Removed from Session |
| **Player Activity:** | Tackled As Carrier | **Surgery Date:** | |
| **Period:** | 4th Quarter/Period | **Player Position:** | Halfback |
| **Protection Injured Area:** | Customary Unifor | **Team Activity:** | Run/Outside Tackle |
| **Brace:** | | **Surface:** | FieldTurf |
| | | **Surface Condition:** | Normal |
| **Equipment Type:** | Helmet | **Temperature:** | Medium |
| **Equipment Brand:** | Riddell, Inc. | **Humidity:** | Medium |
| **Equipment Vintage:** | New | **Follow Up Care:** | Refer to M.D. |

---

| | | | |
|---|---|---|---|
| **Game Injury:** | Ahead | **Stadium:** | Metrodome |
| **Final:** | Won | **Foul:** | Not Applicable |

**Comments:**

---

**Surgical Procedure:**                    **Surgery Notes:**
**Date of Surgery:**
**Surgeon:**

---

**Subjective:**

**Objective:**

**Assessment:**

**Plan:**

E-Ba lot 02/22 2016  DICC Page 127

## *1999 New York Giants - College Personnel Medical Evaluation*

| Name: **CLOUD, MIKE** | School: **BOSTON COLLEGE** | Jersey #: **RB06** | Position: **HB** |

**Past History:**

9/7/1994 LEFT NECK BURNER- MRI NORMAL.

2/9/1996 RIGHT GREAT TOE CYST SURGURY.

4/11/1997 RIGHT NECK BURNER.

4/15/1997 RIGHT KNEE MCL SPRAIN- 1ST. DEGREE-MRI NORMAL.

9/27/1997 LEFT RIB CONTUSION.

10/27/1998 NO INJURY INFO GIVEN AT TIME OF VISIT.

**Combine Comments:**

OK

**Orthopedic Summary:**

2/21/99: Previous strain MCL. Normal examination. No problems.

Grade 2.

**General Medical Summary:**

Normal.

**Radiology Summary:**

Knees within normal limits. Bone graft of left great toe looks pretty good.

**Giants Medical Staff Contacts:**

## OVERALL MEDICAL EVALUATION AND RISK FACTOR:

Grade: **2**    Re-Evalution Grade:

Physician: **O'Brien**

*1*

CLOUD-AR-414

E-Ba lot 02/22 2016                                          DICC Page 128

## *New York Football Giants Cumulative Medical Journal for Mike Cloud*

### *From 3/1/2005 To 3/27/2006*

| Body Part/Injury: Modality/Medication/Quantity/Sets-Reps | Body Part/Injury: Modality-Medication/Quantity/Sets-Reps |
|---|---|

**Saturday, July 30, 2005**

N/A Systemic
Administered three liters of I.V. solution following the p.m. practice.
# of Treatments: 1   Times: 17:30;
ATC: Kennelly

| I.V. Solution | 1 |
|---|---|

CLOUD-AR-415

E-Ballot 02/22/2016                                              DICC Page 129

## *New York Football Giants Cumulative Medical Journal for Mike Cloud*

*From 3/1/2005 To 9/8/2005*

| Body Part/Injury: Modality/Medication/Quantity/Sets-Reps | Body Part/Injury: Modality-Medication/Quantity/Sets-Reps |
|---|---|

**Saturday, July 30, 2005**

Body Part: N/A Systemic
Administered three liters of I.V. solution following the p.m. practice.
# of Treatments: 1   Times: 17:30;
ATC: Kennelly

| I.V. Solution | 1 |
|---|---|

CLOUD-AR-416

E-Ballot 02/22/2016

DICC Page 130



# NEW YORK
# FOOTBALL GIANTS
*Founded in 1925*

Date: 9 16 12004

## ROOKIE / FREE AGENT
## HEALTH HISTORY AND PHYSICAL EXAMINATION

Name: Michael Cloud

Date of Birth: FRCP 5.2

Social Security Number: FRCP 5.2

Age: 29

Address 1: 875 Frenchtown Rd.

Home Phone: 401·662·5500

East Greenwich, RI 02818

Cell Phone: _____

Address 2: _____

Other Phone: _____

_____

E-Mail: _____

Marital Status: Single

Wife's Name: _____

Whom Shall We Contact In Case of Emergency?: Ethel + Charles Cloud

Relation: Parents

Address: 508 Turnpike Ave.

Phone 1: _____

Portsmouth RI 02871

Phone 2: _____

---

## ** THIS SECTION TO BE COMPLETED BY NEW YORK GIANTS MEDICAL STAFF **

| | |
|---|---|
| _____ Medical and Orthopedic History | _____ Urine |
| _____ E.K.G. | _____ Blood (CBC/SMA) |
| _____ Medical Exam | _____ Neuro Test |
| __JR__ Orthopedic Exam | _____ Dental Exam |
| _____ Eye Exam | _____ Chest X-ray |
| _____ Orthotics | |

---

GIANTS STADIUM • EAST RUTHERFORD, NJ 07073 • EXECUTIVE OFFICES: 201-935-8111 • TICKET OFFICE: 201-935-8222 • FAX: 201-939-4134

WORLD CHAMPIONS 1927 1934 1938 1956 1986 1990   NFC CHAMPIONS 1986 1990 2000   NFC EAST CHAMPIONS 1986 1989 1990 1997 2000
EASTERN CHAMPIONS 1933 1934 1935 1938 1939 1941 1944 1946 1956 1958 1959 1961 1962 1963

CLOUD-AR-417

E-Ballot 02/22/2016 DICC Page 131

## NEW YORK FOOTBALL GIANTS – MEDICAL HISTORY

**PLEASE CHECK ALL THAT APPLY. IF YES, PLEASE LIST EITHER LEFT OR RIGHT EXTREMITY AND THE MONTH/YEAR WHERE APPLICABLE.**

| INJURY / CONDITION | NO | YES | L/R | M/Y | INJURY | NO | YES | L/R | M/Y |
|---|---|---|---|---|---|---|---|---|---|
| **HEAD / FACE** | | | | | **HAND / WRIST / FINGERS** | | | | |
| Concussions | | | | | Sprains | | | | |
| If Yes, Loss Consciousness? | | | | | Hand Fracture | | | | |
| Other Head Injury | | | | | Navicular/Scaphoid Fracture | | | | |
| Nose Fracture | | | | | Finger Fracture | | | | |
| Facial Fracture (Mandible, etc.) | | | | | Other Fractures | | | | |
| Surgeries | | | | | Wrist Dislocation | | | | |
| Dental Injury | | | | | Finger Dislocation | | | | |
| Other Facial Injury | | | | | TFCC Tear | | | | |
| | | | | | Surgeries | | | | |
| **NECK** | | | | | Other | | | | |
| Burners | | | | | | | | | |
| Fractures | | | | | **PELVIS / HIPS** | | | | |
| Sprains | | | | | Sprains | | | | |
| Strains | | | | | Groin Strain | | | | |
| Dislocations | | | | | Hip Strain | | | | |
| Herniated Discs | | | | | Other Strains | | | | |
| Surgeries | | | | | Dislocation | | | | |
| Other | | | | | Contusions / Hip Pointer | | | | |
| | | | | | Fractures | | | | |
| **SPINE / BACK** | | | | | Surgeries | | | | |
| Fractures | | | | | Other | | | | |
| Sprains | | | | | | | | | |
| Muscle Strain / Spasm | | | | | **THIGH** | | | | |
| Herniated Disc | | | | | Quadriceps Strain | | | | |
| Spondylolysis | | | | | Hamstring Strain | | | | |
| Spondylolysthesis | | | | | Myositis Ossificans | | | | |
| Surgeries | | | | | Femoral Fracture | | | | |
| Other | | | | | Surgeries | | | | |
| | | | | | Other | | | | |
| **SHOULDER / CLAVICLE** | | | | | | | | | |
| Clavicle Fracture | | | | | **KNEE** | | | | |
| Scapula Fracture | | | | | ACL Sprain | | | | |
| Other Fractures | | | | | PCL Sprain | | | | |
| Separations: AC / SC (Circle ) | | | | | MCL Sprain | | | | |
| Dislocations | | | | | LCL Sprain | | | | |
| Rotator Cuff Strain | | | | | Meniscus Tear (Circle --M/L) | | | | |
| Rotator Cuff Tendinitis | | | | | Osteochondral Defect | | | | |
| GH Instability | | | | | Patella Fracture | | | | |
| Labrum Tear | | | | | Other Fractures | | | | |
| Stabilization Surgery | | | | | Patella Dislocation | | | | |
| Arthroscopic Surgery | | | | | Other Dislocations | | | | |
| Other Surgeries | | | | | Reconstructive Surgery | | | | |
| | | | | | (Circle - ACL / PCL) | | | | |
| Other | | | | | Arthroscopic Surgery | | | | |
| | | | | | Other Surgeries | | | | |
| **ELBOW / ARM** | | | | | Other | | | | |
| Humerus Fracture | | | | | | | | | |
| Radius Fracture | | | | | **LOWER LEG** | | | | |
| Ulna Fracture | | | | | Shin Splints | | | | |
| Other Fractures | | | | | Compartment Syndrome | | | | |
| Elbow Dislocation | | | | | Stress Fracture | | | | |
| Elbow Sprain | | | | | Other Fracture | | | | |
| Tendinitis | | | | | Strains | | | | |
| Arthroscopic Surgery | | | | | Tendinitis | | | | |
| Other Surgery | | | | | Surgeries | | | | |
| Other | | | | | Other | | | | |

PLAYER INITIALS: _____

2

CLOUD-AR-418

E-Ballot 02/22/2016                                                                DICC Page 132

## NEW YORK FOOTBALL GIANTS – MEDICAL HISTORY

| INJURY / CONDITION | NO | YES | L / R | M /Y | INJURY / CONDITION | NO | YES | L / R | M /Y |
|---|---|---|---|---|---|---|---|---|---|
| **ANKLE** | | | | | **FOOT / TOES** | | | | |
| Lateral Sprains | | | | | Midfoot Sprain (Lis Francs) | | | | |
| Medial Sprains | | | | | Other Foot Sprain | | | | |
| High Sprains | | | | | Great Toe Sprain (Turf Toe) | | | | |
| Fractures | | | | | Foot Fracture | | | | |
| Dislocations | | | | | Toe Fracture | | | | |
| Achilles Strain | | | | | Midfoot Dislocation | | | | |
| Achilles Tendinitis | | | | | Toe Dislocation | | | | |
| Arthroscopic Surgery | | | | | Plantar Fasciitis | | | | |
| Other Surgery | | | | | Arch Strain | | | | |
| Other | | | | | Other | | | | |

| DISEASE / ILLNESS | NO | YES | L / R | M /Y | DISEASE / ILLNESS | NO | YES | L / R | M /Y |
|---|---|---|---|---|---|---|---|---|---|
| Heat Illness | | | | | Dental / Gum Disease | | | | |
| Asthma | | | | | Bladder Infection / Stones | | | | |
| Allergies | | | | | Gout | | | | |
| High/Low Blood Press. (Circle) | | | | | Diabetes | | | | |
| Cardiac Murmur | | | | | Epilepsy | | | | |
| Other Cardiac Condition | | | | | Pneumonia | | | | |
| Migraine Headaches | | | | | Hepatitis | | | | |
| Hearing Loss / Disease | | | | | Infectious Mononucleosis | | | | |
| Ulcer | | | | | Cancer | | | | |
| Hernia | | | | | Congenital Abnormalities | | | | |
| Kidney Infection / Stones | | | | | Mental Illness | | | | |
| Eye Disease | | | | | Substance Abuse | | | | |
| Eye Glasses / Contact Lenses | | | | | Other Conditions | | | | |

| | R/L | INJURY DATE | LIST CURRENT MEDICAL ISSUES / SURGERIES |
|---|---|---|---|
| Medications | | | |
| Med. Conditions | | | |
| Head / Face | | | |
| Neck | | | |
| Spine / Back | | | |
| Shoulder | | | |
| Elbow / Arm | | | |
| Hand / Wrist | | | |
| Pelvis / Thigh | | | |
| Knee | | | |
| Lower Leg | | | |
| Ankle | | | |
| Foot / Toes | | | |

I do hereby state that, to the best of my knowledge and belief, my answers to the foregoing questions are correct.

I hereby authorize any physician, practitioner, hospital or clinic by whom or where I have been observed or treated on or prior to the date hereof for any reason to give full particulars thereof, including prior medical history, to the New York Football Giants, Inc. I further authorize the New York Football Giants, Inc. to send my complete medical file to the club physician of any NFL club to which my contract may be assigned. A Photostatted copy of this authorization shall be as valid as the original.

PLAYER SIGNATURE: _____     DATE: _____

3

## NEW YORK FOOTBALL GIANTS
*Founded in 1925*

### *WARRANTY OF FULL DISCLOSURE OF THE PHYSICAL AND MENTAL CONDITION OF PLAYER*

TO:    New York Football Giants, Inc.
       Giants Stadium
       East Rutherford, New Jersey  07073

Player warrants and represents that he has made a full and complete disclosure to the Club's physician of all present or prior physical or mental defects, illnesses, injuries, or conditions known to him or of which he has knowledge, which might prevent, hinder, or impair the performance of his services under his standard player contract.  Player further warrants that at the time of his physical examination by the Club's physician on the _6TH_ day of _August_ 20 _04_, he has not withheld or failed to disclose any present or previous physical or mental defect, illness, injury, or condition known to him.  Player understands and agrees that if any answers given during said physical examination are false or if any information has been withheld, such physical examination will become void and will necessitate the taking of another physical examination to determine the true physical status of the player.  Player further agrees to indemnify and hold the Club harmless from the consequence of any injury, illness or deteriorated condition occurring to player during the life of his standard player contract which is attributable to or the result of any defect, illness, injury or condition which player failed to disclose to the Club at the time of his physical examination.

PLAYER NAME: _Michael Cloud_         DATE: _09·06·04_

PLAYER SIGNATURE: _[signature]_

WITNESS: _[signature]_

GIANTS STADIUM • EAST RUTHERFORD, NJ 07073 • EXECUTIVE OFFICES: 201-935-8111 • TICKET OFFICE: 201-935-8222 • FAX: 201-939-4134

WORLD CHAMPIONS 1927 1934 1938 1956 1986 1990   NFC CHAMPIONS 1986 1990 2000   NFC EAST CHAMPIONS 1986 1989 1990 1997 2000
EASTERN CHAMPIONS 1933 1934 1935 1938 1939 1941 1944 1946 1956 1958 1959 1961 1962 1963

CLOUD-AR-420

E-Ballot 02/22/2016                                                    DICC Page 134



**NEW YORK**
**FOOTBALL GIANTS**
*Founded in 1925*

*MEDICAL RECORD RELEASE FORM*

*Michael Cloud*
NAME (Please Print)

*Boston College - N.E. Patriots*
SCHOOL or LAST PROFESSIONAL TEAM

**FRCP 5.2**
SOCIAL SECURITY NUMBER

**TO: ALL UNIVERSITIES, COLLEGES, STUDENT HEALTH SERVICES, PROFESSIONAL FOOTBALL TEAMS, ATHLETIC TRAINERS, PHYSICIANS, HOSPITALS, CLINICS, DISPENSARIES, SANATORIUMS AND ALL OTHER AGENCIES:**

You are hereby authorized and requested to send to the National Football League Club as listed below a complete copy of all your records pertaining to my medical condition, including all physicals, physicians' records, trainers' records, diagnosis, treatment, history and prognosis, of any and all injuries and to receive from you any and all other information pertaining to my past or present medical condition, diagnosis, treatment, history and prognosis from your personal knowledge and/or records. A copy of this authorization shall be considered as effective and valid as the original.

PLAYER SIGNATURE: _____

DATE: *09.06.04*      WITNESS: _____

Please send the above requested records and information, plus your charges for photo-copying these materials to:

Mr. Ronnie Barnes, ATC
Vice President for Medical Services
New York Football Giants, Inc.
Giants Stadium
East Rutherford, NJ 07073

GIANTS STADIUM • EAST RUTHERFORD, NJ 07073 • EXECUTIVE OFFICES: 201-935-8111 • TICKET OFFICE: 201-935-8222 • FAX: 201-939-4134

WORLD CHAMPIONS 1927 1934 1938 1956 1986 1990   NFC CHAMPIONS 1986 1990 2000   NFC EAST CHAMPIONS 1986 1989 1990 1997 2000
EASTERN CHAMPIONS 1933 1934 1935 1938 1939 1941 1944 1946 1956 1958 1959 1961 1962 1963

CLOUD-AR-421

E-Ballot 02/22/2016 ● ● DICC Page 135

## NEW YORK FOOTBALL GIANTS - ORTHOPEDIC EXAMINATION I

| Body Part | Normal | Abnormal | Comments |
|-----------|--------|----------|----------|
| Neck | ✓ | | |
| Spine | ✓ | | |
| Shoulder | ✓ | | |
| Elbow | ✓ | | |
| Wrist | ✓ | | |
| Hand | ✓ | | |
| Hip | ✓ | | |
| Ankle | | | |

Feet    (a) Pes Cavus (high arches)    (b) Normal    (c) Splay

       (d) Pes Planus (flat)      (e) Pronated

FUNCTIONAL TESTS    (a) Up & Down Stairs    (b) Hop On One Leg    (c) Running in Place

       (d) Half Squat      (e) Full Squat

| | Yes | No | Comments |
|--|-----|-----|----------|
| Patella   a. Pain | | ✓ | |
| b. Apprehension | | ✓ | |
| c. Crepitation | | ✓ | |

Thigh

a. Tone _____ normal _____

b. Atrophy _____ ∅ _____

PLAYER SIGNATURE: _____ DATE: _____

PLAYER INITIALS: _____

CLOUD-AR-422

E-Ballot 02/22/2016 

DICC Page 186

## *NEW YORK FOOTBALL GIANTS ORTHOPEDIC EXAMINATION II*

1. **KNEE EXAMINATION**              RIGHT                    LEFT

   A.  LCL
      1.  Extension        Neg   1+   2+   3+      Neg   1+   2+   3+
      2.  30 Degree Flexion  Neg   1+   2+   3+      Neg   1+   2+   3+

   B.  MCL
      1.  Extension        Neg   1+   2+   3+      Neg   1+   2+   3+
      2.  30 Degree Flexion  Neg   1+   2+   3+      Neg   1+   2+   3+

   C.  ACL/PCL
      1.  Lachmann        Neg   1+   2+   3+      Neg   1+   2+   3+
          Endpoint        A     B                A     B
      2.  Anterior Drawer   Neg   1+   2+   3+      Neg   1+   2+   3+
      3.  Posterior Drawer  Neg   1+   2+   3+      Neg   1+   2+   3+
      4.  Pivot Shift      Neg   1+   2+   3+      Neg   1+   2+   3+
      5.  Reverse Pivot Shift  Neg   1+   2+   3+      Neg   1+   2+   3+
      6.  Palpation
          Scar        Yes   No   _____
          Pain        Yes   No   _____
          Effusion     Yes   No   _____
          Soft Tissue Swelling Yes  No   _____

2. **EXAMINER'S IMPRESSION (DIAGNOSIS):**

   (R) personal strength normal

   (B)

   s/p release (R) anterior & lateral impairment

3. **RECOMMENDATIONS:**

   _____

   _____

   _____

PHYSICIAN SIGNATURE: _____    DATE: ____7/8/04____

PLAYER INITIALS: _____

7

CLOUD-AR-423

E-Ballot 02/22/2016                               DICC Page 137

## *NEW YORK FOOTBALL GIANTS MEDICAL EXAMINATION*

| N = NORMAL | AB = ABNORMAL | N | AB | COMMENTS |
|---|---|---|---|---|
| Head | Hair, Scalp, Masses | ✓ | | |
| Eyes | Lids, Conjunctivitis, Sclera, EOM Proptosis, Pupils, Peripheral Vision, Fundi, Gross Tension to palpation | | | |
| Ears | Gross Hearing to Speech Discharge Drums | | | |
| Nose | Septum, Mucosa, Polyps, Sinuses | | | |
| Mouth Throat | Lesions, Teeth, Tongue Tonsils, Lesions, Injection | | | |
| Neck | Adenopathy Thyroid, Vessels, Masses, Voice abnormalities | | | |
| Thorax Lungs | Shape, Expansion Deformities Bronchi, Wheezes | | | |
| Heart | Sounds, Murmurs, PMI | | | |
| Abdomen | Organ Enlargement, Masses, Tenderness, Hernia, Scars | | | |
| Genitalia Hernias | Lesions, Discharge, Scrotum, Testicles, | | | |
| Rectal | Hemorrhoids, Fissures, Prostate Masses | | | |
| Extremities | Pulses, Veins, Edema, Clubbing, Atrophy | | | |
| Neurological | Cranial Nerves, Reflexes, Motor, Balance, Sensory | | | |
| Skin | Rash, Ecchymosis, Texture | | | |
| Mental Status | Affect, Hostility , Agitation | ✓ | | |

HEIGHT:_____      WEIGHT:_____

BLOOD PRESSURE: *116/73* RETAKE:_____

PHYSICIAN'S SUMMARY:

*Good Health*

PHYSICIAN'S SIGNATURE: *Allen M Levy MD*     DATE: *9/7/04*

PLAYER INITIALS: _____

8

CLOUD-AR-424

## *NEW YORK GIANTS POST SEASON PHYSICAL EXAM WAIVER*

DATE: _Jan 9 06_

X̶    I have been offered a post-season physical examination. I waive my right to such examination and hereby declare that to the best of my knowledge, I am not injured and I am capable of playing football today.

_____    I waive my right to a post-season physical examination. I experienced the injuries listed below during the 2005 season and have fully recovered from such injuries. I am not injured today and I am capable of playing football today.

_____

_____

_____

_____

_____

_____

_____        _____
PLAYER SIGNATURE                          ATHLETIC TRAINER

_____        _____
PRINT NAME CLEARLY                        PHYSICIAN

Michael Cloud

CLOUD-AR-425

E-Ballot 02/22/2016



DICC Page 139



**MONTCLAIR RADIOLOGY**
OPEN-AIR MRI • MULTI-DETECTOR & SUBSECOND SPIRAL CT • CORONARY ARTERY CALCIUM SCORING • LUNG CANCER CT SCREENING
COLOR DOPPLER ULTRASOUND • BONE DENSITOMETRY • LOW DOSE MAMMOGRAPHY • DIAGNOSTIC RADIOLOGY

116 Park Street ⊠ Montclair, NJ 07042
(973) 746-2525    Fax: (973) 746-5802

445 Bloomfield  Ave. ⊠  Caldwell, NJ
07006
(973) 228-5330    Fax: (973) 228-1625

20 High Street ⊠ Nutley, NJ 07110
(973) 284-1881    Fax: (973) 284-0269

| PATIENT NAME | ACCOUNT NO | MEDICAL RECORD NUMBER |
|---|---|---|
| CLOUD,MICHAEL | 455113 | 455113 |

AT THE REQUEST OF
RUSSELL WARREN MD
535 EAST 70TH ST
NEW YORK, NY 10021

| DATE OF BIRTH | SEX | PROCEDURE DATE |
|---|---|---|
|  | M | 11/08/2004 |

Dear Dr. Warren:

XR-RIBS LEFT UNILATERAL W-PA CH

HISTORY:   Injury and left posterior rib pain.

A single PA view of the chest, as well as five dedicated views of the left ribs are submitted for
interpretation.

There is no acute fracture.  There is no evidence for hemothorax or pneumothorax.  There is no
consolidation or effusion.  The heart size is normal without evidence for CHF.

IMPRESSION:    Normal PA of the chest and left-sided unilateral rib series.

Thank you for referring your patient,

Sincerely yours,

Michael a Pollock

Michael Pollack, M.D.
Radiologist

MP/tg/MONTCLAIR RADIOLOGY NUTLEY

Kenneth L. Javel, M.D. / Richard F. Mullen, M.D. / Ronald G. Reese, M.D. / Steven G. Spigman, M.D. / Richard J. Enrico, M.D. / Charles A. Whelan , M.D.
Denise G. DeFeddea, M.D. / Eric G. Fittsberg, M.D. / P. Hart Reese, M.D. / Sandra E. Ranoo Castaldva, M.D. / Linda A. Singleton, M.D.
Diplomates, American Board of Radiology / *Diplomates, American Board of Nuclear Medicine / †Diplomate, American Board of Radiation Oncology

CLOUD-AR-426

E-Ballot 02/22/2016                                    DICC Page 140



**Ann M. Moore, MD**
Director, Radiologist, DABR

*Mailing Address*
P.O. Box 380
Basking Ridge
New Jersey  07920

*Location*
1201 Mt. Kemble Ave.
Route 202
Harding Township
New Jersey
Voice 908.221.0603
Fax 908.221.0631
www.radcenter.net

Services Include:

*MRI*
*Spiral CT*
*Total Body Scanning*
*Cardiac Scoring*
*Virtual Colonoscopy*
*CT Bone Density*
*Ultrasound–all types*
*Mammography*
*Dental Scanning*
*Xrays*
*Fluoroscopy,*
*including GI tract*

PATIENT: Cloud, Mike
REFERRING PHYSICIAN: RUSSELL WARREN, MD
DATE OF EXAM: 5/16/05

X-RAY OF THE CHEST

A single frontal view of the chest shows a normal cardiac silhouette.  The lung fields are clear as visualized.

OPINION:      Normal frontal view of the chest.

Ann M. Moore, MD

AMM:lab

Received: 5/20/05

CLOUD-AR-427

E-Ballot 02/22/2016                                                DICC Page 141



## VETERAN PRESEASON PHYSICAL EXAMINATION FORM
## NEW ENGLAND PATRIOTS FOOTBALL CLUB

Name: _Michael Cloud_     Date: _____

Social Security #: [FRCP 5.2]     Date of Birth: [FRCP 5.2]

Present Local Address: _875 Frenchtown Rd._
_East Greenwich_
_Rhode Island 02818_

Local Telephone #: _401·662·5500_ Second #: _____

Cell Phone #: _____     Pager #: _____

Email Address: _____

Wife's Name (if married): _____

Permanent Address: _SAME_
_____
_____

Home Telephone #: _____     Second #: _____

Nearest Relative's Name: _Charles & Ethel Cloud_ Relation: _Parents_
Nearest Relative's Address: _508 Turnpike Ave_
_Portsmouth, Rhode Island_
Nearest Relative's Phone: _401·683·5443_

Emergency Contact: _____     Telephone #: _____

Page 1


NEW ENGLAND PATRIOTS L.P. • GILLETTE STADIUM • ONE PATRIOT PLACE • FOXBOROUGH, MASSACHUSETTS 02035-1388
ADMINISTRATION: 508-543-8200 • TICKETS: 508-543-1776 • WWW.PATRIOTS.COM


CLOUD-AR-428

## NEW ENGLAND PATRIOTS
## GENERAL PHYSICAL EXAMINATION

| Name: | | | Age |
|---|---|---|---|
| Height | | Weight | Position |

Pulse _64_         BP _110/76_

| N = Normal | AB= Abnormal | N | AB | Comments |
|---|---|---|---|---|
| Head: | Hair, Scalp, Masses | ✓ | | |
| Ears: | Gross Hearing to speech, Discharge, Drums | ✓ | | |
| Eyes: | Lids, Conjunctivae, Sclera EOM, Proptosis, Pupils, Peripheral Vision, Fundi Gross tension to palpation | | | |
| Nose: | Septa, Mucosa, Polyps, Sinuses | | | |
| Mouth: | Lesions, Teeth, Tongue, | ✓ | | |
| Throat: | Tonsils, Lesions, Injection | ✓ | | |
| Neck: | Adenopathy, Thyroid, Masses, Voice abnormality | ✓ | | |
| Thorax: | Shape, Expansion, Deformaties, | ✓ | | |
| Lungs: | Bronchi, Wheezes, Rales | ✓ | | |
| Heart: | PMI, Thrills, Sounds, Gallops | ✓ | | |
| Abdomen | Organ enlargement, Masses, Tenderness, Hernias, Scars | ✓ | | |
| Genitalia | Lesions, Discharge, Scrotum, Testicles, Hernias | ✓ | | |
| Rectal | Hemmorhoids, Fissures, Masses, Prostate | | | |
| Extremities | Pulses, Veins, Edema | | | |
| Neurology | Cranial nerves, Reflexes, gait | | | |
| Skin | Rash, Ecchymosis, Texture | | | |
| Mental status | Affect, Hostility, Agitation | | | |

Physician's Signature _Scott B / PASSERT_          Date _5/12/04_

Page 3

CLOUD-AR-429

# NEW ENGLAND PATRIOTS
## ORTHOPAEDIC EXAMINATION

Name: Mike Cloud                    Date: 5/12/04

N= Normal          AB=Abnormal

| Defects or Significant History | N | AB | COMMENTS |
|---|---|---|---|
| Neck | ✓ | | |
| Spine:    Cervical | ✓ | | |
|              Thoracic | ✓ | | |
|              Lumbar | ✓ | | |
| Shoulder: apprehension impingement, instability | ✓ | | |
| Elbow: | ✓ | | |
| Wrist, Hand, Fingers: | ✓ | | |
| Pelvis: | ✓ | | |
| Lower Extremity: Neuro: Gait, DTR | | | (R) leg – well healed no tenderness. |
| Quadriceps, Hamstrings | ✓ | | |
| Ankle, Foot, & Toes | ✓ | | |

| Knee | | Right | Left | Comments |
|---|---|---|---|---|
| | Effusion | ∅ | ∅ | |
| | Atrophy | | | |
| | Extension | | | |
| | Flexion | | | |
| | Patella Femoral Crepitus | | | |
| | Lachman | | | |
| | Pivot Shift | | | |
| | Valgus/30 | | | |
| | Varus/30 | | | |
| | Posterior Drawer | | | |
| | Popliteal Cyst | | | |
| | Tenderness | ↓ | ↓ | |

Physicians Signature _____    Date 5/12/04

Page 4

CLOUD-AR-430

E-Ballot 02/22/2016                                              DICC Page 144



### Certification of Corrections of Information

I certify that I have answered this questionnaire and all questions of the team physician completely and correctly to the best of my knowledge. I certify that I have not had any prior illnesses or injuries other than those I have listed on this questionnaire.

I further certify that the team physician has explained to me that playing professional football may result in serious physical injury and in the aggravation, deterioration, or reinjury of any preexisting medical condition(s) during and after my employment by the New England Patriots Football Team. I fully understand and assume the possible consequences of playing professional football with the medical condition(s) set forth in this questionnaire or discussed with the team physician.

### Permission for Release of Medical Information

I, hereby authorize and empower the New England Patriots Football Club and its representatives to examine, copy and/or obtain copies of any and all medical records relating to my health history, injury, complaints, tests, findings and treatments, and I also hereby authorize all physicians, hospitals, clinics, schools, colleges/universities, NFL Clubs and all other amateur and professional teams or organizations and/or facilities that may possess such records, to make them freely available to the New England Patriots Football Club representatives. I do hereby release and discharge all such institutions and persons from any and all claims by reason thereof.

I understand that the team physician is a representative of the New England Patriots Football Team and that he or she may therefore disclose any or all of the medical information contained in this questionnaire or my medical files to the team. I further authorize the release to the team and its coaching staff, all medical and surgical information gained by the team physician during the course of my employment.

I hereby authorize the team to release this questionnaire and any and all other information in my medical file to any other team to which I am released, or traded, or to which my contract is assigned. I have received a copy of regulations regarding disclosure of protected health information.

(If applicable) I have reviewed my medical summary that was updated on _____
(date, month, year) and:

_____ I certify that it is complete, accurate, and up-to-date. I have had no additional injury, illness, or surgery performed

_____ Please make the following additions or corrections to update my medical summary:

Date: _05·12·04_          Player's Name (Printed): _Michael C Mc l_

Player's Signature _____

Physician's Signature _____

Page 5

NEW ENGLAND PATRIOTS L.P. • GILLETTE STADIUM • ONE PATRIOT PLACE • FOXBOROUGH, MASSACHUSETTS 02035-1388
ADMINISTRATION: 508-543-8200 • TICKETS: 508-543-1776 • WWW.PATRIOTS.COM



CLOUD-AR-431

E-Ballot 02/22/2016                                      DICC Page 145




## NEW ENGLAND PATRIOTS

### AUTHORIZATION FOR THE USE OR DISCLOSURE OF INFORMATION

**SECTION A:** I authorize the use or disclosure of my protected health information (PHI) as described below.  I hereby give my permission to Bertram Zarins, M.D, P.C., Thomas Gill, M.D., or other New England Patriots team physicians to use or disclose my PHI in the manner described herein.

Player Name: *Michael Cloud*

Address: _____

**SECTION B:**

Description of Health Information to Be Used and/or Disclosed: (The PHI to be used and/or the information you are authorizing to be used and/or disclosed):

All medical records, reports, test results, notes, and other information pertaining to football-related health conditions

Persons/Entities Authorized to Receive and Use: (Name or specifically describe the person, class of persons and/or entities to whom you are authorizing the individual named above to disclose the PHI described above):

The New England Patriots, their employees, agents          The National Football League

and subcontractors

_____

Purpose of the Disclosure: The disclosure is being made for the following reason:

For purposes relating to my employment as a professional football player in the National Football League

**Expiration Event:** Thirty (30) days after termination or expiration of employment with the New England Patriots

**SIGNATURE:**

My signature below acknowledges that I have read this Authorization, understand my rights as described herein, and authorize release of my PHI.

Signature: _____          Date: _____

Witness Signature: _____          Date: _____

You are entitled to a copy of this authorization after you sign it.  You have the right to revoke this authorization in writing, except to the extent that Bertram Zarins, M.D., P.C., Thomas Gill, M.D., or other New England Patriots team physicians have relied thereon.  We may not condition treatment, payment, enrollment or eligibility for benefits on your execution of this authorization.  Information disclosed pursuant to this authorization may be re-disclosed by the recipient(s) and no longer protected by the federal privacy law.


NEW ENGLAND PATRIOTS, L.P. ● GILLETTE STADIUM ● ONE PATRIOT PLACE ● FOXBOROUGH, MASSACHUSETTS 02035-1388
ADMINISTRATION: 508-543-8200 ● TICKETS: 508-543-1776 ● WWW.PATRIOTS.COM


CLOUD-AR-432



CLOUD-AR-433

E-Ballot 02/22/2016                                                DICC Page 147

NEW ENGLAND PATRIOTS                        CLOUD, MIKE
MEDICAL SUMMARY – CONFIDENTIAL              #21 RB
UPDATED  ~~7/20/04~~  4/10 y                BOSTON COLLEGE

INACTIVE PROBLEMS

ALLERGIES - none
MEDICATION - none
MEDICAL CONDITIONS - none
ACTIVE PROBLEMS
R LEG – Contusion lateral leg 7/25/03. Surgery 7/31/03 – release anterior and lateral
compartments with debridement of necrotic peroneus longus muscle and tenodesis.

I have reviewed my medical summary with the doctor and certify that it is complete, accurate and up to date.  The doctor has
explained to me the nature of these injuries and their possible results.  I understand all questions have been satisfactorily answered.

2/10/09
DATE                    PLAYER'S SIGNATURE

                                            PHYSICIAN'S SIGNATURE
                                            BERTRAM ZARINS MD
                                            TOMAS GILL MD

CLOUD-AR-434

E-Ballot 02/22/2016                                                    DICC Page 148



NEW ENGLAND PATRIOTS                    CLOUD, MIKE
MEDICAL SUMMARY – CONFIDENTIAL         #21 RB
UPDATED  1/20/04                       BOSTON COLLEGE


INACTIVE PROBLEMS



ALLERGIES - none
MEDICATION - none
MEDICAL CONDITIONS - none
ACTIVE PROBLEMS
R LEG – Contusion lateral leg 7/25/03. Surgery 7/31/03 – release anterior and lateral compartments with debridement of necrotic peroneus longus muscle and tenodesis.


I have reviewed my medical summary with the doctor and certify that this complete, accurate and up to date.  The doctor has explained to me the nature of these injuries and their possible results. I understand all questions have been satisfactorily answered.

2/1/04
DATE                PLAYER'S SIGNATURE              PHYSICIAN'S SIGNATURE
                                                   BERTRAM ZARINS MD
                                                   TOMAS GILL MD

CLOUD-AR-435



**NEW ENGLAND PATRIOT**
**MEDICAL REPORT 10/05/2003**
**GAME VS TENNESSE**

**SEEN BEFORE GAME**


**CLOUD, MIKE**

October 5, 2003: Right leg asymptomatic and back to normal function.

Examination is essentially completely normal.

Plan:  Okay for full activity without restriction.

                                        BZ

**Whalen, Jim**

| | |
|---|---|
| From: | McGillvray, Joyce D. [JMCGILLVRAY@PARTNERS.ORG] |
| Sent: | Tuesday, September 30, 2003 12:28 PM |
| To: | 'billb@patriots.com'; 'scottp@patriots.com'; 'jimwh@patriots.com' |
| Subject: | Zarins- report |

Michael Cloud
Page

September 26, 2003: Right leg – 8 ½ weeks postoperative right leg fasciotomy anterior and lateral compartments with debridement necrotic peroneus longus and tenodesis peroneus longus tendon and peroneus brevis tendon. He has continued to do well and regain his full function.

Current status – no pain or weakness. There is no functional impairment. He is running and changing direction without any problem. No sensory loss. No discernible weakness.

Right leg examination - knee, ankle and foot full range of motion. No detectable muscle weakness including eversion of the foot. The peroneus tendon can be seen to contract strongly when the foot everts. No sensory loss. Incision is well healed.

Assessment: Right leg – healed with no detectable residual impairment following closed compartment syndrome/fasciotomy.

Recommendation: Cleared for full activity.

                                        BZ

CC: Patriots

9/30/2003

CLOUD-AR-437



## NEW ENGLAND PATRIOTS
## MEDICAL REPORT 8/23/03

**CLOUD, MICHAEL**
August 23, 2003:  Right leg improving. He has been using a short leg brace.  He has had no pain.

Examination – the anterior and lateral compartments are soft and non-tender. The incision is healed primarily in most of the extent but there are several areas of slight superficial skin edge necrosis, which is basically granulating well with slight encrustation over it.

Plan:  He will discontinue the boot but go with an ankle brace that allows plantar flexion/dorsiflexion but eliminates inversion/eversion.  Overall doing very well.

BZ



**CLOUD, MICHAEL**
August 11, 2003:  Right leg – anterior and lateral leg compartment fasciotomy and
debride peroneus longus muscle 7/30/03 – much improved.  Good motion of foot and
ankle (eversion not stressed).   Incision healing well but not yet healed in mid portion.
Sutures still in.


BZ

## NEW ENGLAND PATRIOTS
## MEDICAL REOPRT 8/7/03 AT FOXBORO
## PRESEASON GAME VS NY GIANTS

### SEEN BEFORE GAME

### CLOUD, MIKE

August 7, 2003:  Right leg anterior and lateral compartment syndrome release eight days ago/debride necrotic peroneus longus muscle. Doing well.  The leg is in a posterior splint. He is having much less pain.  There is a small area of numbness on the little toe.  Motor intact. The lateral and anterior compartments appear to be soft and non-tender. There is no clinical sign of infection.

Plan:  Walking boot applied.  Continue elevation/observation.

BZ

CLOUD-AR-440

E-Ballot 02/22/2016                                                                    DICC Page 154

## Massachusetts General Hospital
55 Fruit Street Boston, MA 02114
(617)726-2000

Patient MGH ID #:  4092750
Patient Name:      CLOUD, MICHAEL
Admit Date:        07/30/2003
Discharge Date:    08/02/2003
Gender:            M
Patient DOB:       FRCP 5.2
Location:          WH0616A

### *Patient Care Referral Form*

Patient Name:      CLOUD, MICHAEL
Patient Address:   GILLETTE STADIUM  FOXBORO, MA  02035
Patient Phone:     0000000000
Relative/Guardian:
Relative/Guardian Address:
Relative/Guardian Phone:    ( )
Relative/Guardian Relation:

Referral From:     Massachusetts General Hospital
Unit or Clinic:    WH0616A
No Post Acute Provider Information Entered

### *Patient Information*

Gender:  M                    Marital Status: UNKNOWN          Religion:              Birthday:  FRCP 5.2
Primary Insurance Plan:  PATIENT PAY                           SSN:     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

Primary Diagnosis:
right leg compartment syndrome

Operations & Procedures:
right leg fasciotomies

### Discharge Orders

*Allergies*
o Penicillins - Unknown

*Medications*
o OXYCODONE 5 MG/ACETAMINOPHEN 325 MG 1-2 TAB PO Q3-4H  PRN:  pain

o CLINDAMYCIN HCL 300 MG PO QID x7 DAYS

*Diet*
o Diet as tolerated

*Activities*
o NWB RLE, crutches

Massachusetts General Hospital      Printed 8/2/2003 12:41:41 PM                                    Page 1

CLOUD-AR-441

E-Ballot 02/22/2016

DICC Page 155

## Train Boston Progress Report

Patient Name:  Mike Cloud          Therapist:  Tim Brewster, MSPT          Date:   9.16.03

Dates of Service: 9.03, 9.04, 9.08, 9.09, 9.10, 9.11, 9.12, 9.15, 9.16

INJURIES:

s/p R peroneal tendon repair and debridement

CURRENT ACTIVITIES/EXERCISE ROUTINE:

Out of practice due to recovery from anterior compartment surgery

PATIENT'S SHORT/LONG-TERM GOALS:

1.    Full wound healing

2.    Return to full lower extremity function

3.    Return to the team

OBJECTIVE ISSUES:

ROM:

Ankle DF is now consistent with L

Function:

Pt. is full function without restriction

Pain:

0-minimal pain

Inspection:

All scars are currently closed and scabbing over nicely

Strengths/Weaknesses:

Good functional strength in all planes

Agility/Balance:

Good 1-leg balance on even and un-even surfaces

ASSESSMENT PLAN:

Pt. presents with an open wound following anterior compartment surgery. Scars are closed and healing well. Will progress pt. with progressive conditioning program for lower leg focusing on strengthening. Joint Mob to mid and rear foot, and proprioceptive work. We are returning to high end conditioning on 9.18 to prepay patient for full return to the team on 9.29.03.

Mike Cloud  09.15.03

Manual Work

Manual Resistance 4-way ankle (eversion, inversion, PF, DF at table)
DF glides
Mid Foot and rear foot glides to increase DF
Traction to mid and rear foot

Ther-ex (2 loops)

5' spin bike (sit 30 / stand 30)
Heel Walks
Toe Walks
Heel/Toe Rocks
Xiser 90 seconds (tall 15 / squat 15 x 3)
Airex multiplane R leg balance work
Dyna Disc Plantar Flexion Dorsi Flexion
Wall Heel Cord Stretch
Bent Knee Heel Glides

Conditioning/Mechanics

Resistive Tubing Cord Runs: starts→ acceleration→ hold & drive x 4
Resistive Tubing Cords: side lung back to balance point and hold, x15
        (stabilizing on effected leg, both tube resisting into lunge and out of lunge)
Slideboard, 1:00 on long board; :30 on short board with explosive stride/drives
-REPEAT-
end with 3rd pass on Resistive Tubing Cord Runs: starts→ acceleration→ hold & drive x4
   - before any strength work, gastroc/soleus toe raises on leg press
   - emphasizing full ROM

CLOUD-AR-443

Mike Cloud  09.04.03

Manual Work

Manual Resistance 4-way ankle (eversion, inversion, PF, DF at table)
DF glides
Mid Foot and rear foot glides to increase DF
Traction to mid and rear foot

Ther-ex (3 loops)

5' spin bike (sit 30 / stand 30)
Heel Walks
Toe Walks
Heel/Toe Rocks
Xiser 90 seconds (tall 15 / squat 15 x 3)
Airex multiplane R leg balance work
Dyna Disc Plantar Flexion Dorsi Flexion
Wall Heel Cord Stretch
Bent Knee Heel Glides

Wound Care

Anode (white to the incision) x 60"

CLOUD-AR-444

E-Ballot 02/22/2016                                           DICC Page 158



MASSACHUSETTS GENERAL HOSPITAL

OPERATIVE REPORT

NAME: CLOUD, MICHAEL                    UNIT NUMBER: 409-27-50

DATE: 07/30/2003                        FLOOR: W06 W0616A


SURGEON: BERTRAM ZARINS, M.D.

ASSISTANT: MAXIMILLIAN SOONG, M.D.; JOSEPH CHASE, M.D.


PREOPERATIVE DIAGNOSIS:     RIGHT LEG CONTUSION WITH CLOSED
                            COMPARTMENT SYNDROME, ANTERIOR AND
                            LATERAL COMPARTMENTS.

POSTOPERATIVE DIAGNOSIS:    SAME, WITH PROXIMAL AVULSION AND
                            NECROSIS, PERONEUS LONGUS MUSCLE.

NAME OF OPERATION:          RIGHT LEG FASCIOTOMY, ANTERIOR
                            COMPARTMENT AND LATERAL COMPARTMENT.
                            EXCISION, NECROTIC PERONEUS LONGUS
                            MUSCLE, AND TENODESIS, PERONEUS LONGUS
                            TENDON TO PERONEUS BREVIS MUSCLE.


ANESTHESIA: General.


INDICATIONS: The patient is a 28-year-old football player (New England
Patriots) who sustained a direct blow to the lateral aspect of the
right leg on July 25, 2003. He continued to practice but had
increasing swelling and eventually developed numbness in his toes and
more swelling. Compartment pressure measurements done the morning of
surgery revealed anterior compartment pressure of 114 mmHg., lateral
compartment pressure of 120 mmHg., compared to posterior compartment
measurements of a normal 24 mmHg.

RIGHT LEG OPERATIVE FINDINGS: Lateral compartment bulging muscles
within the compartment but no sign of necrosis.

Lateral compartment showed bulging of the muscles and areas of black,
old hematoma, which was evacuated. The peroneus longus muscle was
entirely avulsed from its proximal origin and had no vascular or nerve
supply at all. It appeared to be completely avascular and appeared to
be undergoing early necrosis. It was attached to the tendon distally.
The surrounding muscles of the peroneus brevis appeared to have signs
of injury and had questionable viability.

DESCRIPTION OF PROCEDURE: With the patient under satisfactory general
anesthesia, the right leg was sterilely prepared and draped free in the
usual manner. A incision 15 cm. long was made in the lateral aspect of
the right leg approximately 2 to 3 cm. anterior to the level of the
fibula. This was carried down to the deep fascial layer. The interval
between the superficial fascia and the deep fascia was exposed in the
lateral aspect of the right leg.

                                          Page 1 of 3

        Send Copy To: BERTRAM ZARINS, M.D.

CLOUD-AR-445



OPERATIVE REPORT

NAME:  CLOUD, MICHAEL                                    UNIT NUMBER:  409-27-50
ADMISSION DATE:  07/31/2003                                          DISCHARGE DATE:

Transverse incision was made in the deep fascia and the intramuscular
septum was identified and carefully avoided.

Working in the anterior aspect of the anterior compartment, long
Metzenbaum scissors were used to divide the deep fascia overlying the
anterior compartment from just below the knee down to the ankle.

Working now in the lateral compartment of the knee, working posteriorly
to avoid injury to the nerve, the deep fascia was incised lengthwise
for the entire compartment, aiming toward the fibular head proximally
and the lateral malleolus distally.  Old hematoma was evacuated.  The
muscle had questionable viability except for the peroneus longus, which
had definite necrosis and was completely avascular and easily flipped
out into the wound, being completely detached proximally.

The necrotic muscle was sharply dissected away from the tendon.  The
foot was held in eversion and neutral dorsiflexion.  The tendon of the
peroneus longus was sutured to the edges of the muscle of the peroneus
brevis.  The wound was irrigated.  The deep fascia was left open.
Subcutaneous and skin sutures were placed.  The skin could be closed
fairly easily without undue tension.  Steri-Strips and sterile
dressings were applied.  A posterior splint with the foot well padded
held in a neutral position of dorsiflexion and slight eversion was
applied.  The patient tolerated the procedure well.  He was returned to
the recovery room in satisfactory condition.  There was no
complication.  I certify I was present for the entire operative
procedure and performed the critical portions of the operation.


                              BERTRAM ZARINS, M.D.
                              DICTATING FOR:

                              Electronically Signed
                              BERTRAM ZARINS, M.D.
                              08/04/2003 11:09
                              _____
                              BERTRAM ZARINS, M.D.


TR: ws  DD: 07/30/2003  TD: 07/31/2003  4:48 P  614939
cc:  BERTRAM ZARINS, M.D.

     BILL BELICHICK
     New England Patriots
     Foxboro, MA 02035

     JIM WHALEN
     New England Patriots
     Foxboro, MA 02035


                                                        Page 2 of 3

          Send Copy To:  BERTRAM ZARINS, M.D.

CLOUD-AR-446

E-Ballot 02/22/2016

DICC Page 160

Toll Free: 1-800-258-4674

 SHIELDS MRI & CT
OF RHODE ISLAND



Fax: 1-800-253-7569

www.shields.com

SHIELDS MRI CT OF RHODE ISLAND

VISIT NUMBER            : 30-2305790-002

PATIENT NAME           : CLOUD; MIKE

MEDICAL RECORD NUMBER : 30-007589

DATE OF BIRTH          : **FRCP 5.2**

DATE OF EXAM           : 08/12/03

REFERRING PHYSICIAN    : ZARINS; BERTRAM
                         MGH - ACC # 514
                         15 PARKMAN STREET
                         BOSTON, MA 02114

FILM PREFERENCE        : C-ALL

MRI EXAM               : NEW ENGLAND PATRIOT

CLINICAL HISTORY       : STATUS POST TRAUMA, ASSESS MUSCLE INTEGRITY.

MRI TECHNIQUE          : THE  FOLLOWING  SEQUENCES  WERE  PERFORMED
CORONAL T1-WEIGHTED, CORONAL FMPIR OR STIR FAT SUPPRESSION, AXIAL
T1-WEIGHTED, AXIAL T2-WEIGHTED FAT SUPPRESSION, CORONAL +C T1-WEIGHTED
FAT SUPPRESSION POST CONTRAST, AXIAL +C T1-WEIGHTED FAT SUPPRESSION
POST CONTRAST.

FINDINGS               : The  distal  aspect  of  the  peroneus  longus
muscle demonstrates normalization of signal at the ankle. The longus
and brevis tendons are identified at the lateral malleolus. There is
no evidence for necrosis or hematoma.

CONCLUSION             : MYOSITIS  WITH PARTIAL NORMALIZATION OF SIGNAL
AT THE ANKLE. THERE IS NO EVIDENCE FOR NECROSIS OR HEMATOMA.

PHYSICIAN              : JEFFREY M. ROGG, M.D.
                         (Signature on file)

08/12/03

E-Ballot 02/22/2016                                                      DICC Page 161



## NEW ENGLAND PATRIOTS FOOTBALL CLUB

Name: *Michael Cloud*                    Date: *06·04·03*

Social Security #: **FRCP 5.2**          Date of Birth: **FRCP 5.2**

Present Local Address: *895 Frenchtown Rd.*
*East Greenwich, RI 02818*

Local Telephone #: *401·662·5500*        Second #:

Cell Phone #:                            Pager #:

Email Address: *mcloud34@aol.com*

Wife's Name (if married):

Permanent Address:

Home Telephone #:                        Second #:

Nearest Relative's Name:                 Relation:
Nearest Relative's Address:

Nearest Relative's Phone:

Emergency Contact: *Charles & Ethel Cloud*  Telephone #: *401· 683·5443*

Page 1

NEW ENGLAND PATRIOTS L.P. • GILLETTE STADIUM • ONE PATRIOT PLACE • FOXBOROUGH, MASSACHUSETTS 02035-1388
ADMINISTRATION: 508-543-8200 • TICKETS: 508-543-1776 • WWW.PATRIOTS.COM



CLOUD-AR-448

## NEW ENGLAND PATRIOTS
## PREVIOUS MEDICAL HISTORY

Name: _Michael Cloud_                    Date: _06·04·03_

Major Medical Problems (1) _____
(Include Hospitalizations)
                    (2) _____

                    (3) _____

Surgeries (1) _left Big Toe - Bone Graph   1995_

                    (2) _____

                    (3) _____

                    (4) _____

                    (5) _____

Allergies: _None_

Medications (Taken Regularly): _____

### FAMILY HISTORY

Father: (AGE): _60_    (HEALTH STATUS): _Good_
      (If deceased, Cause of Death): _____

Mother: (AGE): _60_    (HEALTH STATUS): _good_
      (If deceased, Cause of Death): _____

**Have Blood relatives had the following conditions:**
(Please Circle)

| | | | | |
|---|---|---|---|---|
| Cancer | Yes No | Convulsions | Yes No | |
| Tuberculosis | Yes No | Seizures | Yes N | |
| Diabetes | (Yes) No | Mental Illness | Yes No | |
| Heart Trouble | Yes No | Excessive Bleeding | Yes No | |
| High Blood Pressure | Yes No | Hereditary Defects | Yes No | |
| Stroke | Yes No | | | |

CLOUD-AR-449

E-Ballot 02/22/2016                                    DICC Page 163

## NEW ENGLAND PATRIOT
## PREVIOUS INJURY HISTORY

For all prior injuries please list to the best of your recollection what was injured, and how much time you missed.

HEAD (Concussions,) Memory loss, Lacerations, etc): _1995 - 2 days_

EYES / EARS/ NOSE (Fractures, Altered Vision, Loss of Hearing, etc):

NECK (Fracture, Stinger, Sprain, Strain, Pinched Nerve, Ruptured Disc, etc):

BACK (Strain, Sprain, Fracture, Ruptured Disc, Pinched Nerve, Abnormal Curve, etc.):

SHOULDER (A-C Joint Sprain, Rotator Cuff Strain, Dislocation, Subluxation, etc.): _1999 - 0 days_

ARM/ ELBOW (Fracture, Sprain, Strain, Tendonitis, Dislocation, etc):

HAND/ FINGERS (Sprain, Dislocation, Fracture, Bruise, etc):

Page 3

CLOUD-AR-450

## PREVIOUS MEDICAL HISTORY (Cont'r.)

**PELVIS/ GROIN** (Strain, Hernias, Contusions, Hip Pointer, Dislocations, etc):

_____

_____

**THIGH** (Quadriceps/ Hamstring Strains, Contusions, Fractures, etc):

_____

**KNEE** (Sprain, Cartilage Injuries, Ligament Injuries, Tendonitis, Patella injuries, etc.):

_____

_____

**LOWER LEG** (Shin Splints, Fractures, Achilles Injuries, Tendonitis, etc.):

_____

_____

**ANKLE** (Fractures, Sprains, Dislocations, etc.): _____

_____

**FOOT/ TOES** (Fractures, Turf Toes, Sprain, Arch Problems, Foot Conditions, etc.):

1995 - Bone Graph - 6 weeks
2002 - Foot Sprain - 2 weeks

CLOUD-AR-451

E-Ballot 02/22/2016                                      DICC Page 165

## NEW ENGLAND PATRIOTS
## HEALTH HISTORY QUESTIONNAIRE

Name: _michael cloud_                    Date: _06·04·03_

### CHILDHOOD DISEASES - HAVE YOU EVER HAD

| | | | | | |
|---|---|---|---|---|---|
| Measles | yes | (no) | Rheumatic Fever | yes | (no) |
| German Measles | yes | (no) | Whooping Cough | yes | (no) |
| Mumps | yes | (no) | Scarlet Fever | yes | (no) |
| Chicken Pox | (yes) | no | Other | yes | (no) |

### PRIOR IMMUNIZATIONS - ARE YOU VACCINATED AGAINST:

| | | | | | |
|---|---|---|---|---|---|
| Tetanus | (yes) | no | Polio | (yes) | no |
| Small Pox | (yes) | no | Other | (yes) | no |

### ALLERGIES- ARE YOU ALLERGIC TO:

| | | | | | |
|---|---|---|---|---|---|
| Aspirin | yes | (no) | Foods | yes | (no) |
| Codeine | yes | (no) | Medication | yes | (no) |
| Sulfa | yes | no | Tetanus | yes | (no) |
| Penicillin | (yes) | no | Cosmetics | yes | (no) |
| Hay Fever | yes | (no) | Morphine | yes | (no) |
| Asthma | yes | (no) | Dust | yes | (no) |
| Grass | yes | (no) | Other | yes | (no) |

### DO YOU CURRENTLY HAVE, OR HAVE YOU EVER HAD:

| | | | | | |
|---|---|---|---|---|---|
| Skin disease | yes | (no) | Ear disease | yes | (no) |
| Jaundice | yes | (no) | Impaired hearing | yes | (no) |
| Hives | yes | (no) | Dizziness | yes | (no) |
| Eczyma | yes | (no) | Sore throats | (yes) | no |
| Frequent boils | yes | (no) | Chronic cough | yes | (no) |
| Abnormal pigment | yes | (no) | Spitting up blood | yes | (no) |
| Frequent rashes | yes | (no) | Asthma | yes | (no) |
| Frequent skin infections | yes | (no) | Wheezing | yes | (no) |
| Eye disease | yes | (no) | Pneumonia | yes | (no) |
| Glasses/Contacts | (yes) | no | Mononucleosis | yes | (no) |
| Persistent double vision | yes | (no) | Malaria | yes | (no) |
| Frequent headaches | yes | (no) | Hepatitis | yes | (no) |
| Migraine headacehs | yes | (no) | Cancer | yes | (no) |
| Glaucoma | yes | (no) | Chest pain | yes | (no) |

Page 5

CLOUD-AR-452

E-Ballot 02/22/2016                                     DICC Page 166

## Health History (con)

| | | | | | | |
|---|---|---|---|---|---|---|
| Frequent nosebleeds | yes | (no) | Heart trouble | yes | (no) |
| Chronic sinus infections | yes | (no) | Heart murmur | (yes) | no |
| Epileptic attacks | yes | (no) | Cold hands/feet | yes | (no) |
| Diabetes | yes | (no) | Thyroid disease | yes | (no) |
| Gout | yes | (no) | Slow healing | yes | (no) |
| Kidney stones | yes | (no) | Anemia | yes | (no) |
| Bladder infections | yes | (no) | Blood disease | yes | (no) |
| Frequent urination | yes | (no) | Phlebitis | yes | (no) |
| Painful urination | yes | (no) | Bleeding disorder | yes | (no) |
| Blood in urine | yes | (no) | Psychiatric care | yes | (no) |
| Appendicitis | yes | (no) | Fainting spells | yes | (no) |
| Frequent diarrhea | yes | (no) | Convulsions | yes | (no) |
| Peptic ulcer | yes | (no) | Paralysis | yes | (no) |
| Vomiting blood | yes | (no) | Heat illness | yes | (no) |
| Liver trouble | yes | (no) | Heat cramps | yes | (no) |
| Gall bladder trouble | yes | (no) | Artificial eye | yes | (no) |
| Black stools | yes | (no) | Hearing aid | yes | (no) |
| Hemmorhoids | yes | (no) | Shortness of breath | yes | (no) |
| Frequent heartburn | yes | (no) | Dental bridges | yes | (no) |
| Frequent indigestion | yes | (no) | False teeth | yes | (no) |
| Frequent cramping | yes | (no) | Black outs | yes | (no) |
| Dry skin | yes | (no) | | | |

## Do you use any of the following more than occasionally

| | | |
|---|---|---|
| Sedatives | yes | (no) |
| Tranquilizers | yes | (no) |
| Appetite suppressants | yes | (no) |
| Hormones | yes | (no) |
| Insulin | yes | (no) |
| Laxatives | yes | (no) |
| Diet pills | yes | (no) |
| Muscle relaxants | yes | (no) |
| Other | yes | (no) |

I do hereby certify that I have completed this questionnaire completely and correctly to the best of my ability and knowledge.  I certify that there are no previous illnesses or injuries that I have incurred, other than those that I have listed on the preceeding pages.

Signature _____          Date: 06.04.03

Page 6

CLOUD-AR-453

E-Ballot 02/22/2016                                          DICC Page 167

## NEW ENGLAND PATRIOT
## GENERAL PHYSICAL EXAMINATION

| Name: _Michael Cloud_ | | Age _27_ |
| Height _5'11"_ | Weight _210_ | Position _TB_ |
| Pulse _60_ | BP _120/80_ | |

| N = Normal | AB= Abnormal | N | AB | Comments |
|---|---|---|---|---|
| Head: | Hair, Scalp, Masses | ✓ | | |
| Ears: | Gross Hearing to speech, Discharge, Drums | ✓ | | |
| Eyes: | Lids, Conjunctivae, Sclera EOM, Proptosis, Pupils, Peripheral Vision, Fundi Gross tension to palpation | ✓ | | |
| Nose: | Septa, Mucosa, Polyps, Sinuses | ✓ | | |
| Mouth: | Lesions, Teeth, Tongue, | ✓ | | |
| Throat: | Tonsils, Lesions, Injection | ✓ | | |
| Neck: | Adenopathy, Thyroid, Masses, Voice abnormality | ✓ | | |
| Thorax: | Shape, Expansion, Deformities, | ✓ | | |
| Lungs: | Bronchi, Wheezes, Rales | ✓ | | |
| Heart: | PMI, Thrills, Sounds, Gallops | ✓ | | |
| Abdomen | Organ enlargement, Masses, Tenderness, Hernias, Scars | ✓ | | |
| Genitalia | Lesions, Discharge, Scrotum, Testicles, Hernias | ✓ | | |
| Rectal | Hemmorhoids, Fissures, Masses, Prostate | ✓ | | |
| Extremities | Pulses, Veins, Edema | ✓ | | |
| Neurology | Cranial nerves, Reflexes, gait | ✓ | | |
| Skin | Rash, Ecchymosis, Texture | ✓ | | |
| Mental status | Affect, Hostility, Agitation | ✓ | | |

Physician's Signature _____      Date _____

Page 7

CLOUD-AR-454

E-Ballot 02/22/2016                                          DICC Page 168

## NEW ENGLAND PATRIOT
## ORTHOPAEDIC EXAMINATION

Name _____     Date _____

N= Normal            AB=Abnormal

| Defects or Significant History | N | AB | COMMENTS |
|---|---|---|---|
| Neck | ✓ | | |
| Spine:    Cervical | ✓ | | |
|       Thoracic | | | |
|       Lumbar | | | |
| Shoulder: apprehension impingement, instability | ✓ | | |
| Elbow: | ✓ | | |
| Wrist, Hand, Fingers: | ✓ | | |
| Pelvis: | ✓ | | |
| Lower Extremity: Neuro: Gait, DTR | ✓ | | |
| Quadriceps, Hamstrings | ✓ | | |
| Ankle, Foot, & Toes | | | |

| | | Right | Left | Comments |
|---|---|---|---|---|
| Knee | Extension | ✓ | | |
| | 30 deg. Flexion | | | |
| LCL | Extension | ✓ | | |
| | 30 deg. Flexion | | | |
| ACL/ PCL | Lachman | ✓ | | |
| | Anterior Drawer | | | |
| | Posterior Drawer | | | |
| | Pivot Shift | | | |
| | Joint Line Tenderness | | | |
| | Effusion | | | |
| | ROM | | | |
| Patella | Crepitus | ✓ | | |
| | Apprehension | | | |

Physician's Signature _____     Date _____

Page 8

CLOUD-AR-455



## RELEASE OF MEDICAL RECORDS

I, hereby authorize and empower the New England Patriots Football Club and its representatives to examine, copy and/or obtain copies of any and all medical records relating to my health history, injury, complaints, tests, findings and treatments, and I also hereby authorize all physicians, hospitals, clinics, schools, colleges/universities, NFL Clubs and all other amateur and professional teams or organizations and/or facilities that may possess such records, to make them freely available to the New England Patriots Football Club representatives.  I do hereby release and discharge all such institutions and persons from any and all claims by reason thereof.

_____
Player

_____
Witness

__06·04·03_____
Date

_____
Date

Page 9

CLOUD-AR-456

E-Ballot 02/22/2016                                          DICC Page 170



## NEW ENGLAND PATRIOTS

## AUTHORIZATION FOR RELEASE OF RECORDS OR INFORMATION

**SECTION A:** I authorize the use or disclosure of my protected health information (PHI) as described below.  I hereby give my permission to Bertram Zarins, M. D. P.C., Thomas Gill, M.D., James Dineen, M.D., and Dolph Hutter, M.D. to use or disclose my PHI in the manner described herein.

Player Name: _Michael Cloud_

Address: _875 Frenchtown Rd., East Greenwich, RI 02818_

**SECTION B:**
**Personal Health Information to Be Disclosed:**  Describe the personal health information you are authorizing to be used and/or disclosed:

_All medical records, reports, test results, notes, and other information pertaining to football-related health conditions_

**Persons/Entities Authorized to Receive and Use:**  Name or specifically describe the persons, class of persons and/or entities to whom you are authorizing the individual named above to disclose the PHI described above:

The New England Patriots, their employees, agents                The National Football League

and subcontractors

**Purpose of the Disclosure:** The disclosure is being made for the following reason:

For purposes relating to my employment as a professional football player in the National Football League

**Expiration Event:** Thirty (30) days after termination or expiration of employment with the New England Patriots

**SIGNATURE:**

My signature below acknowledges that I have read this Authorization, understand my rights as described herein, and authorize release of my PHI.

Signature: _____    Date: _06.04.03_

Witness Signature: _____    Date: _6/4/03_

You are entitled to a copy of this authorization after you sign it.   You have the right to revoke this authorization in writing, except to the extent that Bertram Zarins, M.D. P.C., Thomas Gill, M.D., James Dineen, M.D., and Dolph Hutter, M.D., has relied thereon.  We may not condition treatment, payment, enrollment or eligibility for benefits on your execution of this authorization.  Information disclosed pursuant to this authorization may be re-disclosed by the recipient(s) and no longer protected by the federal privacy law.

NEW ENGLAND PATRIOTS L.P. • GILLETTE STADIUM • ONE PATRIOT PLACE • FOXBOROUGH, MASSACHUSETTS 02035-1388
ADMINISTRATION: 508-543-8200 • TICKETS: 508-543-1776 • WWW.PATRIOTS.COM



E-Ballot 02/22/2016                                                    DICC Page 171

NEW ENGLAND PATRIOTS
MEDICAL HISTORY SUMMARY

PLAYER'S NAME  *Michael Cloud*                    TEAM: *Boston College '99*

DATE: *6/4/03*                                    YEARS IN NFL *Kansas City*

POSITION *RB*

INACTIVE PROBLEMS:

Head — concussion 1995
R shoulder (?) — AC sprain 1999 (no time)
L foot — great toe (big toe) sprain 1995 (6 wks)
R foot — midfoot sprain 10/02 ( 2 wks)

ALLERGIES: *PCN*

MEDICAL CONDITIONS: *none*

ACTIVE PROBLEMS:
Ø

SUMMARY/RECOMMENDATION:

*Healthy*

I have reviewed my medical summary

I certify it is complete, accurate, and up-to-date.  I have had no additional injury, illness, or surgery performed.

I have received a full explanation from the team physician (or his designate) that to continue to play professional football may result in the aggravation or deterioration of any of the above medical condition(s) during and after my employment by the club.

I fully understand the possible consequences of playing professional football with the medical condition(s) set forth above.  Nevertheless, I desire to continue to play professional football and hereby assume the risk of the matters set forth in the paragraphs above.

Date: *6/4/03*                          Player Signature

                                        Physician Signature
                        Bertram Zarins, M.D., Massachusetts General Hospital

CLOUD-AR-458





E-Ballot 02/22/2016        DICC Page 174

  

**965 MAIN STREET**
**WALPOLE, MA 02081**
*Family owned and operated since 195.*

**508-668-0018**

PATIENT INFORMATION

FOR: CLOUD,MICHAEL        RX# 700854  DISPENSE# 1
DATE: 07/16/2003        PHARMACIST: ELAINE BRUNELLE
DOCTOR: DINEEN,JAMES J.      DR. PHONE# 617-724-6640
MEDICATION: ERY-TAB 333MG TAB (ABBOTT)    NDC# 00074-6320-13

<u>GENERIC NAME:</u>  ERYTHROMYCIN (eh-rith-roe-MYE-sin)

<u>COMMON USES:</u>  This medicine is a macrolide antibiotic used to treat bacterial infections. It may also be used to prevent bacterial infections in patients with rheumatic heart disease.

<u>HOW TO USE THIS MEDICINE:</u>  Follow the directions for using this medicine provided by your doctor. SWALLOW WHOLE. Do not break, crush, or chew before swallowing. IF THIS MEDICINE UPSETS YOUR STOMACH, take it with food. STORE THIS MEDICINE at room temperature, away from heat and light. TO CLEAR UP YOUR INFECTION COMPLETELY, continue taking this medicine for the full course of treatment even if you feel better in a few days. Do not miss any doses. IF YOU MISS A DOSE OF THIS MEDICINE, take it as soon as possible. If it is almost time for your next dose, skip the missed dose and go back to your regular dosing schedule. Do not take 2 doses at once.

<u>CAUTIONS:</u>  If your symptoms do not improve within a few days or if they become worse, check with your doctor. DO NOT TAKE SELDANE (terfenadine) OR HISMANAL (astemizole) while taking this medicine. BEFORE YOU BEGIN TAKING ANY NEW MEDICINE, either prescription or over-the-counter, check with your doctor or pharmacist. Caution should be used in infants since they may be more sensitive to the effects of this drug. Though very unlikely to happen, a stomach problem called IHPS (infantile hypertrophic pyloric stenosis) has been noted. Contact your child's doctor immediately if the child has persistent vomiting or increased irritability. THIS MEDICINE IS EXCRETED IN BREAST MILK. IF YOU ARE OR WILL BE BREAST-FEEDING while you are using this medicine, check with your doctor or pharmacist to discuss the risks to your baby.

<u>POSSIBLE SIDE EFFECTS:</u>  SIDE EFFECTS, that may go away during treatment, include abdominal cramping or discomfort, nausea, or diarrhea. If they continue or are bothersome, check with your doctor. CHECK WITH YOUR DOCTOR if you experience vomiting, severe stomach cramping, fever, yellowing of skin or eyes, or darkening of urine. If you notice other effects not listed above, contact your doctor, nurse, or pharmacist.

<u>BEFORE USING THIS MEDICINE:</u>  Some medicines or medical conditions may interact with this medicine. INFORM YOUR DOCTOR OR PHARMACIST of all prescription and over-the-counter medicine that you are taking. DO NOT TAKE THIS MEDICINE if you are also taking cisapride. ADDITIONAL MONITORING OF YOUR DOSE OR CONDITION may be needed if you are taking anticoagulants, buspirone, cyclosporine, carbamazepine, methylprednisolone, digoxin, disopyramide, ergotamine-containing medicines, sildenafil, tacrolimus, midazolam, rifampin, theophyllines, vincristine, or vinblastine. Inform your doctor about any other drugs you take besides erythromycin which may affect the heart rhythm (QTc prolongation in the EKG) including dofetilide, pimozide, quinidine, sotalol, procainamide, and sparfloxacin among others. QTc prolongation can infrequently result in serious, rarely fatal, irregular heartbeats. Consult your doctor or pharmacist for details. Ask for instructions about whether you need to stop any other QTc-prolonging drugs you may be using in order to minimize the risk of this effect. Inform your doctor of any other medical conditions, allergies, pregnancy, or breast-feeding. Contact your doctor or pharmacist if you have any questions or concerns about taking this medicine.

<u>OVERDOSE:</u>  If overdose is suspected, contact your local poison control center or emergency room immediately. Symptoms of overdose may include stomach cramping, nausea, vomiting, and diarrhea.

<u>ADDITIONAL INFORMATION:</u>  DO NOT SHARE THIS MEDICINE with others for whom it was not prescribed. DO NOT USE THIS MEDICINE for other health conditions. KEEP THIS MEDICINE out of the reach of children.

Copyright 2003 Facts and Comparisons All rights reserved. Version Date Jul 2003. The information in this monograph is not intended to cover all possible uses, directions, precautions, drug interactions, or adverse effects. This information is generalized and is not intended as specific medical advice. If you have questions about the medicine you are taking or would like more information, check with your doctor, pharmacist, or nurse.

**965 MAIN STREET**      **WALPOLE, MA 02081**      **508-668-0018**
Rx# 700854    07/16/2003    DINEEN,JAMES J.
CLOUD, MICHAEL        Qty. 30    Days: 10    NDC# 00074-6320-13
ORO STADIUM        Mfg: 1
FOXBORO,MA      ERY-TAB 333MG TAB (ABBOTT)
Amount Due: $16.39    02035 Ph# 543-7911 (X107 CASH    RPh: EB
THIS IS YOUR RECEIPT. PLEASE RETAIN FOR TAX OR INSURANCE USE.

CLOUD-AR-461

E-Ballot 02/22/2016

 **BETRO PHARMACY**

**965 MAIN STREET**
**WALPOLE, MA 02081**
*Family owned and operated since 195.*

DICC Page 175
**508-668-0018**

**PATIENT INFORMATION**

FOR: CLOUD,MICHAEL
DATE: 08/03/2003
DOCTOR: ZARINS,BERTRAM
MEDICATION: ROXICET-5 TAB (ROXANE)

RX# 702692   DISPENSE# 1
PHARMACIST: EB
DR. PHONE# 726-3421
NDC# 00054-4650-25

(CONTINUED FROM PREVIOUS PAGE)

itching, swelling, severe dizziness, or trouble breathing. If you notice other effects not listed above, contact your doctor, nurse, or pharmacist.

BEFORE USING THIS MEDICINE: Some medicines or medical conditions may interact with this medicine. INFORM YOUR DOCTOR OR PHARMACIST of all prescription and over-the-counter medicine that you are taking. DO NOT TAKE THIS MEDICINE if you are also taking naltrexone. ADDITIONAL MONITORING OF YOUR DOSE OR CONDITION may be needed if you are taking other medicines for pain, cimetidine, isoniazid, MAO inhibitors (e.g., furazolidone, linezolid, moclobemide, phenelzine, procarbazine, selegiline, isocarboxazid, tranylcypromine), anti-seizure medicines (carbamazepine, phenobarbital, phenytoin), anticholinergic medicines or antihistamines (e.g., hydroxyzine, oxybutynin, scopolamine). ADDITIONAL MONITORING OF YOUR DOSE OR CONDITION may be needed if you are taking other medicines which cause drowsiness including medicine for sleep (e.g., sedatives), tranquilizers, anti-anxiety medicines (e.g., diazepam), psychiatric medicines (e.g., phenothiazines such as chlorpromazine, or tricyclics such as amitriptyline), muscle relaxants, or antihistamines that cause drowsiness (e.g., diphenhydramine). DO NOT START OR STOP any medicine without doctor or pharmacist approval. Inform your doctor of any other medical conditions including liver or kidney disease, difficulty urinating, alcohol use, drug dependency, heart problems (e.g., slow/irregular heartbeat, very low blood pressure), abdominal/stomach problems (e.g., gallbladder problems), lung disease (e.g., asthma, chronic obstructive pulmonary disease), seizure disorders, serious head injury or brain disease, spinal problems, low thyroid disease, adrenal gland problems, psychiatric problems, any allergies (especially to sulfites), pregnancy, or breast-feeding. USE OF THIS MEDICINE IS NOT RECOMMENDED if you have a history of severe breathing problems, or severe diarrhea. Contact your doctor or pharmacist if you have any questions or concerns about taking this medicine.

OVERDOSE: If overdose is suspected, contact your local poison control center or emergency room immediately. Symptoms of overdose may include persistent nausea/vomiting, stomach pain, slow breathing, slow heartbeat, cold/clammy skin, unusual sweating, yellowing eyes or skin, dark urine, extreme fatigue, or loss of consciousness.

ADDITIONAL INFORMATION: DO NOT SHARE THIS MEDICINE with others for whom it was not prescribed. DO NOT USE THIS MEDICINE for other health conditions. KEEP THIS MEDICINE out of the reach of children and pets.

Copyright 2003 Wolters Kluwer Health, Inc. All rights reserved. Version Date Aug 2003. The information in this monograph is not intended to cover all possible uses, directions, precautions, drug interactions, or adverse effects. This information is generalized and is not intended as specific medical advice. If you have questions about the medicines you are taking or would like more information, check with your doctor, pharmacist, or nurse.

**BETRO PHARMACY**

**965 MAIN STREET**
Rx# 702692   08/03/2003

**WALPOLE, MA 02081**
ZARINS, BERTRAM

**508-668-0018**

CLOUD, MICHAEL
BORO STADIUM
BORO,MA

ROXICET-5 TAB (ROXANE)
02035 Ph# 543-7911 (X107 CASH

Qty. 50   Days: 5
Mfg: 1

NDC# 00054-4650-25

RPh: EB

Amount Due: $22.99
THIS IS YOUR RECEIPT. PLEASE RETAIN FOR TAX OR INSURANCE USE.

CLOUD-AR-462

E-Ballot 02/22/2016                                    DICC Page 176

 

**905 MAIN STREET**
**WALPOLE, MA 02081**
*Family owned and operated since 195.*
**508-668-0018**
**PATIENT INFORMATION**

FOR: CLOUD, MICHAEL                    RX# 702692  DISPENSE# 1
DATE: 08/03/2003                       PHARMACIST: ELAINE BRUNELLE
DOCTOR: ZARINS, BERTRAM                DR. PHONE# 726-3421
MEDICATION: ROXICET-5 TAB (ROXANE)     NDC# 00054-4650-25

GENERIC NAME: OXYCODONE (ox-i-KOE-done) and ACETAMINOPHEN (a-seat-a-MIN-oh-fen)

COMMON USES: This medicine is a combination of a narcotic and acetaminophen used to relieve moderate to severe pain. Narcotic pain-relievers work by binding to opioid receptors in the brain and spinal cord, and acetaminophen decreases the formation of prostaglandins, therefore reducing pain. This medicine may also be used to treat other conditions as determined by your doctor.

HOW TO USE THIS MEDICINE: Follow the directions for using this medicine provided by your doctor. Take this medicine by mouth. THIS MEDICINE MAY BE TAKEN WITH FOOD if it upsets your stomach, although doing so may decrease its effectiveness. Consult your doctor or pharmacist about alternatives for decreasing nausea (e.g., antihistamines, lying down for 1-2 hours with minimal head movement). Pain medicines work best in preventing pain before it occurs. Once the pain becomes intense, the medicine is not as effective in relieving it. STORE THIS MEDICINE at room temperature between 59 and 86 degrees F (15-30 degrees C) in a tightly-closed container, away from heat, moisture, and light. IF YOU MISS A DOSE OF THIS MEDICINE and you are taking it regularly, take it as soon as possible. If it is almost time for your next dose, skip the missed dose and go back to your regular dosing schedule. Do not take 2 doses at once.

CAUTIONS: DO NOT TAKE THIS MEDICINE IF YOU HAVE HAD A SEVERE ALLERGIC REACTION to codeine, hydrocodone, dihydrocodeine, or oxycodone (such as Tylox, Tylenol with Codeine, Vicodin). A severe allergic reaction includes a severe rash, hives, breathing difficulties, or dizziness. If you have a question about whether you are allergic to this medicine or if a certain medicine contains codeine, hydrocodone, dihydrocodeine, or oxycodone, contact your doctor or pharmacist. DO NOT EXCEED THE RECOMMENDED DOSE or take this medicine for longer than prescribed without checking with your doctor. Exceeding the recommended dose or taking this medicine for longer than prescribed may be habit-forming. If using this medicine for an extended period of time, DO NOT SUDDENLY STOP taking this medicine without your doctor's approval. When using for an extended period, this medicine may not work as well and may require different dosing. Talk with your doctor if this medicine stops working well. THIS MEDICINE MAY CAUSE drowsiness or dizziness. Using this medicine also, with other medicine, or with alcohol may lessen your ability to drive or to perform other potentially dangerous tasks. AVOID ALCOHOLIC BEVERAGES while taking this medicine. To minimize dizziness or lightheadedness, get up slowly when rising from a seated or lying position. To prevent constipation, maintain a diet adequate in fiber, drink plenty of water, and exercise. If you become constipated while using this medicine talk with your doctor or pharmacist. This medicine contains acetaminophen. Adults should not take more than a total of 4 grams of acetaminophen per day (3 grams per day if you have liver disease). Consult your doctor or pharmacist for more information. Acetaminophen may cause liver damage. If you drink alcohol on a daily basis, do not take this medicine without first discussing it with your doctor. Alcohol use combined with acetaminophen may increase your risk for liver damage (symptoms include yellowing eyes or skin, stomach pain, dark urine). BEFORE YOU BEGIN TAKING ANY NEW MEDICINE, either prescription or over-the-counter, check with your doctor or pharmacist This includes other pain relievers, cough-and-cold medicines, or allergy medicines. These medicines may contain additional acetaminophen. Taking too much acetaminophen can be harmful. Ask your pharmacist about the safe use of these products. CAUTION IS ADVISED WHEN USING THIS MEDICINE IN THE ELDERLY because they may be more sensitive to the effects of the medicine, especially the possible decreased breathing and drowsiness effects. FOR WOMEN: IF YOU PLAN ON BECOMING PREGNANT, discuss with your doctor the benefits and risks of using this medicine during pregnancy. THIS MEDICINE IS EXCRETED IN BREAST MILK. IF YOU ARE OR WILL BE BREAST-FEEDING while you are using this medicine, check with your doctor to discuss the risks to your baby.

POSSIBLE SIDE EFFECTS: SIDE EFFECTS, that may go away during treatment, include nausea, vomiting, constipation, lightheadedness, dizziness, drowsiness, flushing, vision changes, or mental/mood changes. If they continue or are bothersome, check with your doctor. CONTACT YOUR DOCTOR IMMEDIATELY if you experience slow/irregular breathing, slow/irregular heartbeat, or a change in the amount of urine. AN ALLERGIC REACTION to this medicine is unlikely, but seek immediate medical attention if it occurs. Symptoms of an allergic reaction include rash,

(CONTINUED ON NEXT PAGE)

Copyright 2003 Wolters Kluwer Health, Inc. All rights reserved. Version Date Aug 2003. The information in this monograph is not intended to cover all possible uses, directions, precautions, drug interactions, or adverse effects. This information is generalized and is not intended as specific medical advice. If you have questions about the medicines you are taking or would like more information, check with your doctor, pharmacist, or nurse.

CLOUD-AR-463

| Dates | Patriots: Physical Therapy Appointments | |
|---|---|---|
| 9/3/2003 | Mike Cloud | Tim |
| 9/4/2003 | Mike Cloud | Tim |
| 9/8/2003 | Mike Cloud | BJ |
| 9/9/2003 | Mike Cloud | BJ |
| 9/10/2003 | Mike Cloud | BJ |
| 9/10/2003 | Mike Cloud | Tim |
| 9/11/2003 | Mike Cloud | BJ |
| 9/11/2003 | Mike Cloud | Tim |
| 9/12/2003 | Mike Cloud | Tim |
| 9/15/2003 | Mike Cloud | BJ |
| 9/16/2003 | Mike Cloud | Tim |
| 9/18/2003 | Mike Cloud | BJ |
| 9/18/2003 | Mike Cloud | Tim |
| 9/22/2003 | Mike Cloud | Tim |
| 9/24/2003 | Mike Cloud | BJ |
| 9/25/2003 | Mike Cloud | BJ |
| 9/26/2003 | Mike Cloud | BJ |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

TRAINBOSTON

CLOUD-AR-464

DICC Page 178

# TRAIN Boston

34 Washington St
Wellesley Hills, MA  02481  ID# 04-3252820
781-263-9993 fax 781-263-9996

Tax ID 04-3252820

*TRAIN BOSTON*

## INVOICE

| Customer | | |
|---|---|---|
| Name | Mike Cloud | |
| Address | c/o N.E. Patriots | |
| City | Foxboro | State MA   ZIP 02035 |
| Diagnosis | | |

| Date | 9/10/2003 |
|---|---|
| | Tim Brewster |
| | MS PT CSCS |
| | Lic. # MA10218 |

| Qty | Description | Unit Price | TOTAL |
|---|---|---|---|
| | 9/2/03 | | |
| 2 | 97110 THER-EX x2 | $35.00 | $70.00 |
| 1 | 97530 PROM | $35.00 | $35.00 |
| 1 | 97140 JT. MOB | $35.00 | $35.00 |
| | 9/4/03 | | |
| 2 | 97110 THER-EX x2 | $35.00 | $70.00 |
| 1 | 97530 PROM | $35.00 | $35.00 |
| 1 | 97140 JT. MOB | $35.00 | $35.00 |
| | 9/8/03 | | |
| 2 | 97110 THER-EX x2 | $35.00 | $70.00 |
| 1 | 97530 PROM | $35.00 | $35.00 |
| 1 | 97140 JT. MOB | $35.00 | $35.00 |
| | 9/9/03 | | |
| 2 | 97110 THER-EX x2 | $35.00 | $70.00 |
| 1 | 97530 PROM | $35.00 | $35.00 |
| 1 | 97140 JT. MOB | $35.00 | $35.00 |
| | | SubTotal | $560.00 |
| | Taxes   State | | $0.00 |
| | | TOTAL | $560.00 |

**Payment Details**

Cash
Check
Credit Card

Name
CC #
Expires

Office Use Only

*Thank You for Your Prompt Payment!*

*Experience the TRAIN Boston Advantage!*

CLOUD-AR-465

# TRAIN Boston

34 Washington St
Wellesley Hills, MA  02481  ID# 04-3252820
781-263-9993 fax 781-263-9996

Tax ID 04-3252820

**INVOICE**  [TRAIN BOSTON]

| Customer | | | Date | 9/15/2003 |
|---|---|---|---|---|
| Name | Mike Cloud | | | Tim Brewster |
| Address | c/o N.E. Patriots | | | MS PT CSCS |
| City | Foxboro | State MA    ZIP 02035 | | Lic. # MA10218 |
| Diagnosis | | | | |

| Qty | Description | Unit Price | TOTAL |
|---|---|---|---|
| | 9/10/03 | | |
| 2 | 97110 THER-EX  x2 | $35.00 | $70.00 |
| 1 | 97530 PROM | $35.00 | $35.00 |
| 1 | 97140 JT. MOB | $35.00 | $35.00 |
| | 9/11/03 | | |
| 2 | 97110 THER-EX  x2 | $35.00 | $70.00 |
| 1 | 97530 PROM | $35.00 | $35.00 |
| 1 | 97140 JT. MOB | $35.00 | $35.00 |
| | 9/12/03 | | |
| 2 | 97110 THER-EX  x2 | $35.00 | $70.00 |
| 1 | 97530 PROM | $35.00 | $35.00 |
| 1 | 97140 JT. MOB | $35.00 | $35.00 |
| | 9/15/03 | | |
| 2 | 97110 THER-EX  x2 | $35.00 | $70.00 |
| 1 | 97530 PROM | $35.00 | $35.00 |
| 1 | 97140 JT. MOB | $35.00 | $35.00 |
| | | SubTotal | $560.00 |
| | | Taxes    State | $0.00 |
| | | TOTAL | $560.00 |

**Payment Details**

Cash
Check
Credit Card

Name
CC #
Expires

Office Use Only

*Thank You for Your Prompt Payment!*

*Experience the TRAIN Boston Advantage!*

E-Ballot 02/22/2016                                                DICC Page 180

# TRAIN Boston

34 Washington St
Wellesley Hills, MA  02481  ID# 04-3252820
781-263-9993 fax 781-263-9996

Tax ID 04-3252820

**TRAIN BOSTON**

*INVOICE*

**Customer**

| | | | | | |
|---|---|---|---|---|---|
| Name | Mike Cloud | | | Date | 9/15/2003 |
| Address | c/o N.E. Patriots | | | | Tim Brewster |
| City | Foxboro | State MA | ZIP 02035 | | MS PT CSCS |
| Diagnosis | | | | | Lic. # MA10218 |

| Qty | Description | Unit Price | TOTAL |
|---|---|---|---|
| | 9/16/03 | | |
| 2 | 97110 THER-EX  x2 | $35.00 | $70.00 |
| 1 | 97530 PROM | $35.00 | $35.00 |
| 1 | 97140 JT. MOB | $35.00 | $35.00 |
| | 9/18/03 | | |
| 2 | 97110 THER-EX  x2 | $35.00 | $70.00 |
| 1 | 97530 PROM | $35.00 | $35.00 |
| 1 | 97140 JT. MOB | $35.00 | $35.00 |
| | 9/22/03 | | |
| 2 | 97110 THER-EX  x2 | $35.00 | $70.00 |
| 1 | 97530 PROM | $35.00 | $35.00 |
| 1 | 97140 JT. MOB | $35.00 | $35.00 |
| | 9/24/03 | | |
| 2 | 97110 THER-EX  x2 | $35.00 | $70.00 |
| 1 | 97530 PROM | $35.00 | $35.00 |
| 1 | 97140 JT. MOB | $35.00 | $35.00 |

|  |  |
|---|---|
| SubTotal | $560.00 |
| Taxes   State | $0.00 |
| TOTAL | $560.00 |

**Payment Details**

Cash
Check
Credit Card

Name
CC #
Expires

Office Use Only

*Thank You for Your Prompt Payment!*

*Experience the TRAIN Boston Advantage!*

CLOUD-AR-467

# TRAIN Boston

34 Washington St
Wellesley Hills, MA  02481  ID# 04-3252820
781-263-9993 fax 781-263-9998

Tax ID 04-3252820

## INVOICE

| Customer | | | | | Date | 10/5/2003 |
|---|---|---|---|---|---|---|
| Name | Mike Cloud | | | | | Tim Brewster |
| Address | c/o N.E. Patriots | | | | | MS PT CSCS |
| City | Foxboro | State MA | ZIP 02035 | | | Lic. # MA10218 |
| Diagnosis | | | | | | |

| Qty | Description | Unit Price | TOTAL |
|---|---|---|---|
| | 9/25/03 | | |
| 2 | 97110 THER-EX  x2 | $35.00 | $70.00 |
| 1 | 97530 PROM | $35.00 | $35.00 |
| 1 | 97140 JT. MOB | $35.00 | $35.00 |
| | 9/26/03 | | |
| 2 | 97110 THER-EX  x2 | $35.00 | $70.00 |
| 1 | 97530 PROM | $35.00 | $35.00 |
| 1 | 97140 JT. MOB | $35.00 | $35.00 |

|  |  |
|---|---|
| SubTotal | $280.00 |

**Payment Details**
- Cash
- Check
- Credit Card

Name
CC #
Expires

| Taxes | State | $0.00 |
|---|---|---|
| | TOTAL | $280.00 |

Office Use Only

*Thank You for Your Prompt Payment!*

*Experience the TRAIN Boston Advantage!*

CLOUD-AR-468

# TRAIN Boston

34 Washington St
Wellesley Hills, MA  02481  ID# 04-3252820
781-263-9993 fax 781-263-9996

Tax ID 04-3252820

## INVOICE

| Customer | | Date | 10/6/2003 |
|---|---|---|---|
| Name | Mike Cloud | | Tim Brewster |
| Address | c/o N.E. Patriots | | MS PT CSCS |
| City | Foxboro | State MA   ZIP 02035 | Lic. # MA10218 |
| Diagnosis | | | |

| Qty | Description | Unit Price | TOTAL |
|---|---|---|---|
| | 9/25/03 | | |
| 2 | 97110 THER-EX x2 | $35.00 | $70.00 |
| 1 | 97530 PROM | $35.00 | $35.00 |
| 1 | 97140 JT. MOB | $35.00 | $35.00 |
| | 9/26/03 | | |
| 2 | 97110 THER-EX x2 | $35.00 | $70.00 |
| 1 | 97530 PROM | $35.00 | $35.00 |
| 1 | 97140 JT. MOB | $35.00 | $35.00 |

| | | | SubTotal | $280.00 |
|---|---|---|---|---|
| | | Taxes | State | $0.00 |
| | | | TOTAL | $280.00 |

**Payment Details**

Cash
Check
Credit Card

Name
CC #
                Expires

Office Use Only

*Thank You for Your Prompt Payment!*

*Experience the TRAIN Boston Advantage!*

CLOUD-AR-469

# TRAIN Boston

34 Washington St
Wellesley Hills, MA  02481  ID# 04-3252820
781-263-9993 fax 781-263-9996

Tax ID 04-3252820

**TRAIN BOSTON**

## INVOICE

**Customer**

| | | | | |
|---|---|---|---|---|
| Name | Mike Cloud | | | |
| Address | c/o N.E. Patriots | | | |
| City | Foxboro | State MA | ZIP 02035 | |
| Diagnosis | | | | |

| | |
|---|---|
| Date | 9/15/2003 |
| | Tim Brewster |
| | MS PT CSCS |
| | Lic. # MA10218 |

| Qty | Description | Unit Price | TOTAL |
|---|---|---|---|
| | 9/16/03 | | |
| 2 | 97110 THER-EX  x2 | $35.00 | $70.00 |
| 1 | 97530 PROM | $35.00 | $35.00 |
| 1 | 97140 JT. MOB | $35.00 | $35.00 |
| | 9/18/03 | | |
| 2 | 97110 THER-EX  x2 | $35.00 | $70.00 |
| 1 | 97530 PROM | $35.00 | $35.00 |
| 1 | 97140 JT. MOB | $35.00 | $35.00 |
| | 9/22/03 | | |
| 2 | 97110 THER-EX  x2 | $35.00 | $70.00 |
| 1 | 97530 PROM | $35.00 | $35.00 |
| 1 | 97140 JT. MOB | $35.00 | $35.00 |
| | 9/24/03 | | |
| 2 | 97110 THER-EX  x2 | $35.00 | $70.00 |
| 1 | 97530 PROM | $35.00 | $35.00 |
| 1 | 97140 JT. MOB | $35.00 | $35.00 |

| | | |
|---|---|---|
| | SubTotal | $560.00 |
| Taxes | State | $0.00 |
| | TOTAL | $560.00 |

**Payment Details**

Cash
Check
Credit Card

Name
CC #
Expires

Office Use Only

*Thank You for Your Prompt Payment!*

*Experience the TRAIN Boston Advantage!*

CLOUD-AR-470

E-Ballot 02/22/2016                                      DICC Page 184

# TRAIN Boston

34 Washington St
Wellesley Hills, MA  02481  ID# 04-3252820
781-263-9993 fax 781-263-9996

Tax ID 04-3252820

*TRAIN BOSTON*

## INVOICE

**Customer**

| | | | |
|---|---|---|---|
| Name | Mike Cloud | | |
| Address | c/o N.E. Patriots | | |
| City | Foxboro | State MA | ZIP 02035 |
| Diagnosis | | | |

Date   9/10/2003
Tim Brewster
MS PT CSCS
Lic. # MA10216

| Qty | Description | Unit Price | TOTAL |
|---|---|---|---|
| | 9/2/03 | | |
| 2 | 97110 THER-EX  x2 | $35.00 | $70.00 |
| 1 | 97530 PROM | $35.00 | $35.00 |
| 1 | 97140 JT. MOB | $35.00 | $35.00 |
| | 9/4/03 | | |
| 2 | 97110 THER-EX  x2 | $35.00 | $70.00 |
| 1 | 97530 PROM | $35.00 | $35.00 |
| 1 | 97140 JT. MOB | $35.00 | $35.00 |
| | 9/8/03 | | |
| 2 | 97110 THER-EX  x2 | $35.00 | $70.00 |
| 1 | 97530 PROM | $35.00 | $35.00 |
| 1 | 97140 JT. MOB | $35.00 | $35.00 |
| | 9/9/03 | | |
| 2 | 97110 THER-EX  x2 | $35.00 | $70.00 |
| 1 | 97530 PROM | $35.00 | $35.00 |
| 1 | 97140 JT. MOB | $35.00 | $35.00 |

| | | |
|---|---|---|
| | SubTotal | $560.00 |
| Taxes | State | $0.00 |
| | TOTAL | $560.00 |

**Payment Details**

Cash
Check
Credit Card

Name
CC #
Expires

Office Use Only

*Thank You for Your Prompt Payment!*

*Experience the TRAIN Boston Advantage!*

CLOUD-AR-471

NEW ENGLAND PATRIOTS                          CLOUD, MIKE
MEDICAL SUMMARY -- CONFIDENTIAL               #21 RB
UPDATED 7/19/04                               BOSTON COLLEGE


INACTIVE PROBLEMS
R LEG -- Contusion lateral leg 7/25/03. Surgery 7/31/03 -- release anterior and lateral
compartments with debridement of necrotic peroneus longus muscle and tenodesis.


ALLERGIES - none
MEDICATION - none
MEDICAL CONDITIONS - none
ACTIVE PROBLEMS

R hand -- index finger tip 3/20/04

| | |
|---|---|
| **From:** | Smith, Chris |
| **To:** | Paul Scott; Williams, Adora; Anillo, Alvaro (AIA@groom.com); Ell, Doug (dwe@groom.com); Dr. Allen Jackson; Junk, Michael L. (mjunk@groom.com); Maroz, Natallia (nmaroz@groom.com); Patrick Reynolds; Sam Vincent |
| **Subject:** | RE: 2/22 e-ballot |
| **Date:** | Tuesday, March 1, 2016 11:22:31 AM |
| **Attachments:** | 022216DICCDecisionSheet.xlsx |

My decisions are attached.  Apologies for the delay.

**Chris Smith**
Assistant Director
Benefits



**NFL Players Association**
1133 20th Street NW
Washington, DC 20036
Phone: (202) 756-9152
Mobile: (240) 486-9390
Fax: (202) 756-9312
**NFLPA.COM**

**From:** Paul Scott [mailto:pscott@nflpb.org]
**Sent:** Monday, February 22, 2016 4:19 PM
**To:** Williams, Adora <Adora.Williams@nflpa.com>; Alvaro Anillo <AIA@groom.com>; Smith, Chris <chris.smith@nflpa.com>; Doug Ell <DWE@groom.com>; Dr. Allen Jackson <ajackson.ortho@gmail.com>; Mike Junk <MJunk@groom.com>; Natallia Maroz <nmaroz@groom.com>; Patrick Reynolds <Patrick.Reynolds@NFL.com>; Sam Vincent <svincent@nflpb.org>
**Subject:** 2/22 e-ballot

Good afternoon all—

We have posted 5 applications and 1 reclassification request to the website for your review as 2/22/2016 DICC e-ballots.  Attached is a spreadsheet caselist for your reference.

Please note that all applications are under 45 days with the oldest being at 32 days.

If you have any problems or questions, please let me know.

Paul

**Paul Scott**
**Director of Disability Benefits**

**800-638-3186 [Plan Office]**

CLOUD-AR-473

**443-769-1411 [Direct]**
**410-783-0041 [Fax]**

**200 St. Paul Street**
**Suite 2420**
**Baltimore, MD  21202**

**www.mygoalline.com**



This message (and any associated files) is intended only for the use of the individual or entity to which it is addressed and may contain information that is confidential, subject to copyright or constitutes a trade secret. If you are not the intended recipient you are hereby notified that any dissemination, copying or distribution of this message, or files associated with this message, is strictly prohibited. If you have received this message in error, please notify administrator@nflpa.com immediately and delete it from your computer. Messages sent electronically to and from this organization may be monitored. Internet communications cannot be guaranteed to be secure or error-free as information could be intercepted, corrupted, lost, destroyed, arrive late or incomplete, or contain viruses. Therefore, we do not accept responsibility for any errors or omissions that are present in this message, or any attachment, that have arisen as a result of e-mail transmission. If verification is required, please request a hard-copy version. Any views or opinions presented are solely those of the author and do not necessarily represent those of the company.

CLOUD-AR-474

| | 2/22/2016 E-Ballot | | | | | |
|---|---|---|---|---|---|---|
| | | | | | | |
| | **Disability Applications** | **Case Type** | **# of Days Pending (as of February 22, 2016)** | **# Pages of Medical Records** | **Notes** | **Decision** |
| 1 | REDACTED | | | | | |
| 2 | | | | | | |
| 3 | | | | | | |
| 4 | | | | | | |
| 5 | | | | | | |
| | | | | | | |
| | **Miscellaneous Benefit** | **Case Type** | **# of Days Pending (as of February 22, 2016)** | **# Pages of Medical Records** | **Notes** | **Decision** |
| 1 | Cloud, Michael | Reclass | 5 days | 167 pages | 15 years = 3/31/2021 | No Changed Circumstances |

| | |
|---|---|
| **From:** | Reynolds, Patrick |
| **To:** | Smith, Chris; Paul Scott; Williams, Adora; Anillo, Alvaro (AIA@groom.com); Ell, Doug (dwe@groom.com); Dr. Allen Jackson; Junk, Michael L. (mjunk@groom.com); Maroz, Natallia (nmaroz@groom.com); Sam Vincent |
| **Subject:** | RE: 2/22 e-ballot |
| **Date:** | Tuesday, March 1, 2016 11:26:08 AM |

I agree.  Thank you.

**From:** Smith, Chris [mailto:chris.smith@nflpa.com]
**Sent:** Tuesday, March 01, 2016 11:22 AM
**To:** Paul Scott <pscott@nflpb.org>; Williams, Adora <Adora.Williams@nflpa.com>; Alvaro Anillo <AIA@groom.com>; Doug Ell <DWE@groom.com>; Dr. Allen Jackson <ajackson.ortho@gmail.com>; Mike Junk <MJunk@groom.com>; Natallia Maroz <nmaroz@groom.com>; Reynolds, Patrick <Patrick.Reynolds@NFL.com>; Sam Vincent <svincent@nflpb.org>
**Subject:** RE: 2/22 e-ballot

My decisions are attached.  Apologies for the delay.

**Chris Smith**
Assistant Director
Benefits



**NFL Players Association**
1133 20th Street NW
Washington, DC 20036
Phone: (202) 756-9152
Mobile: (240) 486-9390
Fax: (202) 756-9312
**NFLPA.COM**

**From:** Paul Scott [mailto:pscott@nflpb.org]
**Sent:** Monday, February 22, 2016 4:19 PM
**To:** Williams, Adora <Adora.Williams@nflpa.com>; Alvaro Anillo <AIA@groom.com>; Smith, Chris <chris.smith@nflpa.com>; Doug Ell <DWE@groom.com>; Dr. Allen Jackson <ajackson.ortho@gmail.com>; Mike Junk <MJunk@groom.com>; Natallia Maroz <nmaroz@groom.com>; Patrick Reynolds <Patrick.Reynolds@NFL.com>; Sam Vincent <svincent@nflpb.org>
**Subject:** 2/22 e-ballot

Good afternoon all—

We have posted 5 applications and 1 reclassification request to the website for your review as 2/22/2016 DICC e-ballots.  Attached is a spreadsheet caselist for your reference.

CLOUD-AR-476

Please note that all applications are under 45 days with the oldest being at 32 days.

If you have any problems or questions, please let me know.

Paul

**Paul Scott**
**Director of Disability Benefits**

**800-638-3186 [Plan Office]**
**443-769-1411 [Direct]**
**410-783-0041 [Fax]**

**200 St. Paul Street**
**Suite 2420**
**Baltimore, MD  21202**

**www.mygoalline.com**



This message (and any associated files) is intended only for the use of the individual or entity to which it is addressed and may contain information that is confidential, subject to copyright or constitutes a trade secret. If you are not the intended recipient you are hereby notified that any dissemination, copying or distribution of this message, or files associated with this message, is strictly prohibited. If you have received this message in error, please notify administrator@nflpa.com immediately and delete it from your computer. Messages sent electronically to and from this organization may be monitored. Internet communications cannot be guaranteed to be secure or error-free as information could be intercepted, corrupted, lost, destroyed, arrive late or incomplete, or contain viruses. Therefore, we do not accept responsibility for any errors or omissions that are present in this message, or any attachment, that have arisen as a result of e-mail transmission. If verification is required, please request a hard-copy version. Any views or opinions presented are solely those of the author and do not necessarily represent those of the company.

DBM - 11/16/2016

 Bert Bell/Pete Rozelle **NFL Player Retirement Plan** 

200 Saint Paul Street • Suite 2420 • Baltimore, Maryland 21202-2008
410-685-5069 • 800-638-3186 • Fax 410-783-0041

VIA FEDERAL EXPRESS

March 2, 2016

Mr. Michael Cloud
120 Mont Blanc Drive
Heath, TX 75032

**Re: Request for Reclassification**

Dear Mr. Cloud:

On March 1, 2016, the Disability Initial Claims Committee ("Committee") of the Bert Bell/Pete Rozelle NFL Player Retirement Plan ("Plan") considered your request for the reclassification of your total and permanent disability ("T&P") benefits. We regret to inform you that the Committee denied your request. This letter describes the Committee's decision.

**Relevant Plan Provisions**

Plan Section 5.1 provides that a Player is eligible for T&P benefits if he "is determined by the Retirement Board or the Disability Initial Claims Committee to be totally and permanently disabled in accordance with Section 5.2."

Plan Section 5.2(a) states:

"An eligible Player who is not receiving monthly retirement benefits under Article 4 or Article 4A will be deemed to be totally and permanently disabled if the Retirement Board or the Disability Initial Claims Committee finds (1) that he has become totally disabled to the extent that he is substantially prevented from or substantially unable to engage in any occupation or employment for remuneration or profit, but expressly excluding any disability suffered while in the military service of any country, and (2) that such condition is permanent. The educational level and prior training of a Player will not be considered in determining whether such Player is "unable to engage in any occupation or employment for remuneration or profit." A Player will not be considered to be able to engage in any occupation or employment for remuneration or profit within the meaning of this Section 5.2 merely because such person is employed by the League or an Employer, manages personal or family investments, is employed by or associated with a charitable organization, is employed out of benevolence, or receives up to $30,000 per year in earned income.

DBM - 11/16/2016

> A disability will be deemed to be "permanent" if it has persisted or is
> expected to persist for at least twelve months from the date of its
> occurrence, excluding any reasonably possible recovery period."

Plan Section 5.8 provides, in relevant part:

> "This paragraph applies where a Player originally applies for T&P benefits
> under the General Standard of Section 5.2(a), and ultimately does not
> qualify for T&P benefits under that standard, but during the processing of
> that application becomes eligible for T&P benefits under Section 5.2(b)
> because he is determined by the Social Security Administration to be
> eligible for disability benefits under either the Social Security disability
> insurance program or Supplemental Security Income Program. In such
> cases, if the original application is still pending, the Player need not file a
> new application for T&P benefits; he need only provide satisfactory
> evidence of such Social Security determination to the Plan Office.
> Further, in such cases, T&P benefits will be paid retroactive to the first day
> of the month that is two months prior to the date of such Social Security
> determination, unless the Plan Office receives evidence of such Social
> Security determination more than six months after the date of the Social
> Security determination, in which case T&P benefits will be paid retroactive
> to the first day of the month that is two months prior to the date such
> evidence is received by the Plan Office. For purposes of this paragraph,
> the date as of which the Social Security Administration deems a Player to
> have been disabled does not matter."

Plan Section 5.3 provides that T&P benefits will be awarded in one of four categories:

(a)   Active Football. Subject to the special rules of Section 5.4, Players will qualify for
      benefits in this category if the disability(ies) results from League football
      activities, arises while the Player is an Active Player, and causes the Player to be
      totally and permanently disabled "shortly after" the disability(ies) first arises.

(b)   Active Nonfootball. Subject to the special rules of Section 5.4, a Player will
      qualify for benefits in this category if the disability(ies) does not result from
      League football activities, but does arise while the Player is an Active Player and
      does cause the Player to be totally and permanently disabled "shortly after" the
      disability(ies) first arises.

(c)   Inactive A. Subject to the special rules of Section 5.4, a Player will qualify for
      benefits in this category if a written application for T&P benefits or similar letter
      that began the administrative process that resulted in the award of T&P benefits
      was received within fifteen (15) years after the end of the Player's last Credited

CLOUD-AR-479

DBM - 11/16/2016

Season. This category does not require that the disability arise out of League football activities.

(d)  Inactive B. All Players who are determined to be totally and permanently disabled in accordance with Section 5.2 but who do not qualify for categories (a), (b), or (c) above will be awarded benefits in this category. This category does not require that the disability arise out of League football activities.

(e)  "Shortly After" Defined. A Player who becomes totally and permanently disabled no later than six months after a disability(ies) first arises will be conclusively deemed to have become totally and permanently disabled "shortly after" the disability(ies) first arises, as that phrase is used in subsections (a) and (b) above, and a Player who becomes totally and permanently disabled more than twelve months after a disability(ies) first arises will be conclusively deemed not to have become totally and permanently disabled "shortly after" the disability(ies) first arises, as that phrase is used in subsections (a) and (b) above. In cases falling within this six- to twelve-month period, the Retirement Board or the Disability Initial Claims Committee will have the right and duty to determine whether the "shortly after" standard is satisfied.

Prior Plan section 5.7(b) contains special rules applicable to claims for reclassification of T&P benefits:

"A Player who is awarded T&P benefits will be deemed to continue to be eligible only for the category of benefits for which he first qualifies, unless the Player shows by evidence found by the Retirement Board or the Disability Initial Claims Committee to be clear and convincing that, because of changed circumstances, the Player satisfies the conditions of eligibility for a benefit under a different category of T&P disability benefits. A Player's T&P disability benefit will not be reclassified or otherwise increased with respect to any month or other period of time that precedes by more than forty-two months the date the Retirement Board receives a written application or similar letter requesting such reclassification or increase that begins the administrative process that results in the award of the benefit. This forty-two month limitation period will be tolled for any period of time during which such Player is found by the Retirement Board or the Disability Initial Claims Committee to be physically or mentally incapacitated in a manner that substantially interferes with the filing of such claim."

### Discussion

As you know, on July 23, 2014 the Committee granted your application and awarded you Inactive A T&P benefits effective May 1, 2014.   You did not appeal the Committee's decision.

CLOUD-AR-480

DBM - 11/16/2016

On March 1, 2016, the Committee reviewed your letter received February 17, 2016 requesting reclassification of your T&P benefits to the Active Football category. The Committee noted that several Plan provisions govern your request. To obtain reclassification under section 5.7(b), you must present clear and convincing evidence that you meet the qualifications for a different category of benefits due to changed circumstances. The Committee interprets "changed circumstances" to mean a change in a Player's condition (i.e., a new or different impairment). Section 5.7(b) also states "a Player's T&P disability benefit will not be reclassified or otherwise increased with respect to any month or other period of time that precedes by more than forty-two months the date the Retirement Board receives a written application or similar letter requesting such reclassification or increase that begins the administrative process that results in the award of the benefit.   Section 5.3(a) states that a Player is entitled to Active Football benefits only if his "disability(ies) results from League football activities, arises while the Player is an Active Player, and causes the Player to be totally and permanently disabled "shortly after" the disability(ies) first arises." Further, section 5.3(e) defines "shortly after" requirement. "A Player who becomes totally and permanently disabled no later than six months after a disability(ies) first arises will be conclusively deemed to have become totally and permanently disabled "shortly after" the disability(ies) first arises, as that phrase is used in subsections (a) and (b) above, and a Player who becomes totally and permanently disabled more than twelve months after a disability(ies) first arises will be conclusively deemed not to have become totally and permanently disabled "shortly after" the disability(ies) first arises, as that phrase is used in subsections (a) and (b) above. In cases falling within this six- to twelve-month period, the Retirement Board or the Disability Initial Claims Committee will have the right and duty to determine whether the "shortly after" standard is satisfied."

In your case, the Committee denied your request for reclassification for several reasons. First, the Committee determined that your request did not include any additional evidence of changed circumstances since the award of T&P benefits in 2014, as required under section 5.7(b). Second, Section 5.7(b) states that "a Player's T&P disability benefit will not be reclassified or otherwise increased with respect to any month or other period of time that precedes by more than forty-two months the date the Retirement Board receives a written application or similar letter requesting such reclassification or increase that begins the administrative process that results in the award of the benefit." The Plan received your application on July 1, 2014; therefore, the Committee cannot reclassify benefits for any time period prior to January 1, 2011, which is well after the "shortly after" time period defined in section 5.3(e). The Committee also noted that the onset date for your Social Security Disability benefits was determined to be December 31, 2008, which is also well after the "shortly after" period defined in section 5.3(e).

Therefore, the Committee found that you do not meet the Plan's requirements for reclassification and denied your request.

CLOUD-AR-481

DBM - 11/16/2016

### Appeal Rights

Attached to this letter is section 12.6 of the Plan, which governs your right to appeal the Committee's decision. You may appeal the Committee's decision to the Plan's Retirement Board by filing a written request for review with the Retirement Board at this office within 180 days of your receipt of this letter. You should also submit written comments, documents and any other information that you believe shows you qualify for these benefits. The Retirement Board will take into account all available information, regardless of whether that information was available or presented to the Committee. Please note that if the Retirement Board reaches an adverse decision on review, you may then bring a civil action under section 502(a) of the Employee Retirement Income Security Act of 1974, as amended, 27 U.S.C. §132(a).

If you have any questions, please contact the Plan Office.

Very truly yours,

Paul Scott
Director of Disability Benefits
on behalf of the Disability Initial Claims Committee

prs

Enclosure

CLOUD-AR-482

DBM - 11/16/2016

| | | | |
|---|---|---|---|
| PLAYER: | **Michael A. Cloud** | SSN4: | FRCP 5.2 |
| | | DOB: | FRCP 5.2 |

ISSUE:      Appeal for Reclassification of T&P Inactive A Disability Benefits to T&P Active Football Disability Benefits (Spring 2017 Meeting)

FACTS:      **Seven (7)** Credited Seasons: **1999-2005**

Approved at the **07/17/2014 Meeting - SSA Disability Award**

Effective Date: **05/01/2014**

Presently Receiving:
A) **$4,000.00** per month **T&P benefits**
B) **$7,250.00** per month **Supplemental Disability**

**02/22/2016** E-Ballot: **Request for Reclassification of T&P Inactive A Disability Benefits to T&P Active Football Disability Benefits denied: no clear and convincing evidence of changed circumstances**

ATTACHMENTS:  1) Case Summary

2) Plan Office Letter dated 03/02/2016

3) Player's Appeal Letter received 09/02/2016

4) Player's E-Mail received 10/26/2016 with attachments

5) Cover Sheet from the 02/22/2016 Disability Initial Claims Committee E-Ballot with attachments

6) Board Actions List

**Note: Player's complete file with Plan Director**

DECISION:_____

EFFECTIVE DATE:_____

MISCELLANEOUS BENEFIT CASE **# 2**

CLOUD-AR-483

**Michael Cloud** (DOB: ▮▮▮▮; Vested 1999-2005).   **Request for reclassification from Inactive A to Active Football.   1   Board Meeting.**

Player was granted Inactive A on 7/17/14 by DICC, effective 5/1/14, based on an SSA award. Impairments alleged in the 2014 application: post-concussion syndrome, clinical depression, dementia pugilistica, migraine, vertigo, impaired verbal fluency, acute compartment syndrome, plantar fasciitis, cluneal nerve injury, multiple orthopedics.

By letter received 2/17/16, Player's representative, Jennifer Cloud, requests reclassification to Active Football, states that Player became disabled in 2005, while playing for the NY Giants due to cumulative mental disorders, and submits a copy of his SS file and medical records (185 pages; records are listed in chronological order:).

- 7/6/09 Michael Einbund's ortho report [58-70]
  Findings: employable with restrictions [67]
- 4/13/10 Dr. Canizares's report [77-80]
- 4/13/10 Dr. Adam Didio's report [91-103]
- 8/2/11 Jeffrey Berman's ortho report [34-57]
- 8/1/11 Psychologist John Cronin's report [31-33]
- 2/2/12 Psychologist John Cronin's report – criticizes Dr. Nelson's conclusion that "Mr. Cloud's current claimed cognitive symptoms are not causally related to the head injury sustained on October 32, 2004," discusses impairments, no conclusion re T&P [27-30]
- 1/8/13 Psychological Report – depression diagnosis [22-26]
- 5/13/14 Harry Cates, LPC notes therapy notes [19]
- 6/18/14 SSA award letter [9-18]
- NY Giants Football Club notes [106-140]
- New England Patriots Club notes [141-185]

By letter dated 3/2/16, DICC denied Player's request for reclassification – no clear and convincing evidence of changed circumstances.  The denial letter was received by Player on 3/4/16.

By letter received on 9/2/16, [**182 days later**] Player's representative, Jennifer Cloud, appeals the denial of his request for reclassification and states that Player's SSA award was "a result of severe impairments of mental disorder stemming from multiple NFL football concussions" and argues that Player's disability arose shortly after his October 2004 head trauma.  Two attachments are mentioned in the appeal letter but nothing is attached.

On 10/19/16, PO sent an email to Player inquiring about the attachments referenced in the appeal letter.  By email dated 10/26/16, Player resubmits his appeal and submits a report dated 2/2/12 from Psychologist John Cronin (this report was submitted with the original request).

**THIS IS A SUMMARY ONLY.  The Player's complete file, along with the entire administrative record compiled in conjunction with this claim/appeal, have been made available and should be reviewed prior to making a final determination on the Player's claim for benefits.**

DBM - 11/16/2016

 Bert Bell/Pete Rozelle **NFL Player Retirement Plan** 

200 Saint Paul Street  •  Suite 2420  •  Baltimore, Maryland 21202-2008
410-685-5069  •  800-638-3186  •  Fax 410-783-0041

VIA FEDERAL EXPRESS

March 2, 2016

Mr. Michael Cloud
120 Mont Blanc Drive
Heath, TX 75032

**Re: Request for Reclassification**

Dear Mr. Cloud:

On March 1, 2016, the Disability Initial Claims Committee ("Committee") of the Bert Bell/Pete Rozelle NFL Player Retirement Plan ("Plan") considered your request for the reclassification of your total and permanent disability ("T&P") benefits. We regret to inform you that the Committee denied your request. This letter describes the Committee's decision.

**<u>Relevant Plan Provisions</u>**

Plan Section 5.1 provides that a Player is eligible for T&P benefits if he "is determined by the Retirement Board or the Disability Initial Claims Committee to be totally and permanently disabled in accordance with Section 5.2."

Plan Section 5.2(a) states:

"An eligible Player who is not receiving monthly retirement benefits under Article 4 or Article 4A will be deemed to be totally and permanently disabled if the Retirement Board or the Disability Initial Claims Committee finds (1) that he has become totally disabled to the extent that he is substantially prevented from or substantially unable to engage in any occupation or employment for remuneration or profit, but expressly excluding any disability suffered while in the military service of any country, and (2) that such condition is permanent. The educational level and prior training of a Player will not be considered in determining whether such Player is "unable to engage in any occupation or employment for remuneration or profit." A Player will not be considered to be able to engage in any occupation or employment for remuneration or profit within the meaning of this Section 5.2 merely because such person is employed by the League or an Employer, manages personal or family investments, is employed by or associated with a charitable organization, is employed out of benevolence, or receives up to $30,000 per year in earned income.

DBM - 11/16/2016

A disability will be deemed to be "permanent" if it has persisted or is expected to persist for at least twelve months from the date of its occurrence, excluding any reasonably possible recovery period."

Plan Section 5.8 provides, in relevant part:

"This paragraph applies where a Player originally applies for T&P benefits under the General Standard of Section 5.2(a), and ultimately does not qualify for T&P benefits under that standard, but during the processing of that application becomes eligible for T&P benefits under Section 5.2(b) because he is determined by the Social Security Administration to be eligible for disability benefits under either the Social Security disability insurance program or Supplemental Security Income Program. In such cases, if the original application is still pending, the Player need not file a new application for T&P benefits; he need only provide satisfactory evidence of such Social Security determination to the Plan Office. Further, in such cases, T&P benefits will be paid retroactive to the first day of the month that is two months prior to the date of such Social Security determination, unless the Plan Office receives evidence of such Social Security determination more than six months after the date of the Social Security determination, in which case T&P benefits will be paid retroactive to the first day of the month that is two months prior to the date such evidence is received by the Plan Office. For purposes of this paragraph, the date as of which the Social Security Administration deems a Player to have been disabled does not matter."

Plan Section 5.3 provides that T&P benefits will be awarded in one of four categories:

(a)   <u>Active Football.</u>  Subject to the special rules of Section 5.4, Players will qualify for benefits in this category if the disability(ies) results from League football activities, arises while the Player is an Active Player, and causes the Player to be totally and permanently disabled "shortly after" the disability(ies) first arises.

(b)   <u>Active Nonfootball.</u>  Subject to the special rules of Section 5.4, a Player will qualify for benefits in this category if the disability(ies) does not result from League football activities, but does arise while the Player is an Active Player and does cause the Player to be totally and permanently disabled "shortly after" the disability(ies) first arises.

(c)   <u>Inactive A.</u>  Subject to the special rules of Section 5.4, a Player will qualify for benefits in this category if a written application for T&P benefits or similar letter that began the administrative process that resulted in the award of T&P benefits was received within fifteen (15) years after the end of the Player's last Credited

CLOUD-AR-486

DBM - 11/16/2016

      Season. This category does not require that the disability arise out of League football activities.

(d)     Inactive B. All Players who are determined to be totally and permanently disabled in accordance with Section 5.2 but who do not qualify for categories (a), (b), or (c) above will be awarded benefits in this category. This category does not require that the disability arise out of League football activities.

(e)     "Shortly After" Defined. A Player who becomes totally and permanently disabled no later than six months after a disability(ies) first arises will be conclusively deemed to have become totally and permanently disabled "shortly after" the disability(ies) first arises, as that phrase is used in subsections (a) and (b) above, and a Player who becomes totally and permanently disabled more than twelve months after a disability(ies) first arises will be conclusively deemed not to have become totally and permanently disabled "shortly after" the disability(ies) first arises, as that phrase is used in subsections (a) and (b) above. In cases falling within this six- to twelve-month period, the Retirement Board or the Disability Initial Claims Committee will have the right and duty to determine whether the "shortly after" standard is satisfied.

Prior Plan section 5.7(b) contains special rules applicable to claims for reclassification of T&P benefits:

     "A Player who is awarded T&P benefits will be deemed to continue to be eligible only for the category of benefits for which he first qualifies, unless the Player shows by evidence found by the Retirement Board or the Disability Initial Claims Committee to be clear and convincing that, because of changed circumstances, the Player satisfies the conditions of eligibility for a benefit under a different category of T&P disability benefits. A Player's T&P disability benefit will not be reclassified or otherwise increased with respect to any month or other period of time that precedes by more than forty-two months the date the Retirement Board receives a written application or similar letter requesting such reclassification or increase that begins the administrative process that results in the award of the benefit. This forty-two month limitation period will be tolled for any period of time during which such Player is found by the Retirement Board or the Disability Initial Claims Committee to be physically or mentally incapacitated in a manner that substantially interferes with the filing of such claim."

## Discussion

As you know, on July 23, 2014 the Committee granted your application and awarded you Inactive A T&P benefits effective May 1, 2014. You did not appeal the Committee's decision.

DBM - 11/16/2016

On March 1, 2016, the Committee reviewed your letter received February 17, 2016 requesting reclassification of your T&P benefits to the Active Football category. The Committee noted that several Plan provisions govern your request. To obtain reclassification under section 5.7(b), you must present clear and convincing evidence that you meet the qualifications for a different category of benefits due to changed circumstances. The Committee interprets "changed circumstances" to mean a change in a Player's condition (i.e., a new or different impairment). Section 5.7(b) also states "a Player's T&P disability benefit will not be reclassified or otherwise increased with respect to any month or other period of time that precedes by more than forty-two months the date the Retirement Board receives a written application or similar letter requesting such reclassification or increase that begins the administrative process that results in the award of the benefit.    Section 5.3(a) states that a Player is entitled to Active Football benefits only if his "disability(ies) results from League football activities, arises while the Player is an Active Player, and causes the Player to be totally and permanently disabled "shortly after" the disability(ies) first arises."  Further, section 5.3(e) defines "shortly after" requirement.  "A Player who becomes totally and permanently disabled no later than six months after a disability(ies) first arises will be conclusively deemed to have become totally and permanently disabled "shortly after" the disability(ies) first arises, as that phrase is used in subsections (a) and (b) above, and a Player who becomes totally and permanently disabled more than twelve months after a disability(ies) first arises will be conclusively deemed not to have become totally and permanently disabled "shortly after" the disability(ies) first arises, as that phrase is used in subsections (a) and (b) above.  In cases falling within this six- to twelve-month period, the Retirement Board or the Disability Initial Claims Committee will have the right and duty to determine whether the "shortly after" standard is satisfied."

In your case, the Committee denied your request for reclassification for several reasons. First, the Committee determined that your request did not include any additional evidence of changed circumstances since the award of T&P benefits in 2014, as required under section 5.7(b).  Second, Section 5.7(b) states that "a Player's T&P disability benefit will not be reclassified or otherwise increased with respect to any month or other period of time that precedes by more than forty-two months the date the Retirement Board receives a written application or similar letter requesting such reclassification or increase that begins the administrative process that results in the award of the benefit."  The Plan received your application on July 1, 2014; therefore, the Committee cannot reclassify benefits for any time period prior to January 1, 2011, which is well after the "shortly after" time period defined in section 5.3(e).  The Committee also noted that the onset date for your Social Security Disability benefits was determined to be December 31, 2008, which is also well after the "shortly after" period defined in section 5.3(e).

Therefore, the Committee found that you do not meet the Plan's requirements for reclassification and denied your request.

CLOUD-AR-488

DBM - 11/16/2016

### Appeal Rights

Attached to this letter is section 12.6 of the Plan, which governs your right to appeal the Committee's decision.  You may appeal the Committee's decision to the Plan's Retirement Board by filing a written request for review with the Retirement Board at this office within 180 days of your receipt of this letter.  You should also submit written comments, documents and any other information that you believe shows you qualify for these benefits.   The Retirement Board will take into account all available information, regardless of whether that information was available or presented to the Committee. Please note that if the Retirement Board reaches an adverse decision on review, you may then bring a civil action under section 502(a) of the Employee Retirement Income Security Act of 1974, as amended, 27 U.S.C. §132(a).

If you have any questions, please contact the Plan Office.

Very truly yours,

Paul Scott
Director of Disability Benefits
on behalf of the Disability Initial Claims Committee

prs

Enclosure

CLOUD-AR-489

DBM - 11/16/2016

## Michael A. Cloud's Appeal of the Disability Initial Claims Committee's March 2, 2016 Denial of Request for Reclassification of T&P Benefits

From: Michael A. Cloud
120 Mont Blanc Drive
Heath, TX 75032
SS# FRCP 5.2
(p) 214-364-0098
macsportsandrehab@gmail.com

To:    NFL Player Disability & Neurocognitive
Benefit Plan
Retirement Board
200 Saint Paul St.
Suite 2420
Baltimore, MD 21202

CC: Sarah E. Gaunt, Plan Director
Paul Scott, Benefits Coordinator



**To the NFL Retirement Board,**

This letter shall serve as a request for review of the Disability Initial Claims Committee's ("Committee") March 2, 2016 adverse decision denying Michael A. Cloud's request for reclassification of benefits. Mr. Cloud had requested a reclassification of his NFL T&P benefits from "Inactive A" to "Active Football," but this request was denied by the Committee on March 2, 2016. For the following reasons, the Retirement Board should overturn the Committee's decision and should reclassify Mr. Cloud's T&P benefits to "Active Football" benefits.

Mr. Cloud satisfies all of the criteria for an award of Active Football benefits.   Plan section 5.3 provides for Active Football T&P benefits if the players "diability(ies) results from League football activities, arises while the Player is an Active Player, and causes the Player to be totally and permanently disabled 'shortly after' the disability(ies) first arises."

Mr. Cloud has been awarded a Fully Favorable Decision of SSDI Benefits from Administrative Law Judge, Daniel Curran, as a result of severe impairments of mental disorder stemming from multiple NFL football concussions.   Mr. Cloud's total and permanent disability

CLOUD-AR-490

DBM - 11/16/2016

undoubtedly arose from injuries suffered while an active player in the NFL as evidenced by Dr. John Patrick Cronin's medical evaluation of Mr. Cloud. In Dr. Cronin's Head Trauma Evaluation of Mr. Cloud, he notes that after Mr. Cloud sustained a significant helmut to helmut concussion on October 31, 2004 while with the New York Giants:

> Significant physical and cognitive problems occurred immediately after this collision and Mr. Cloud experienced confusion, disorientation and dizziness as a result of the impact. He was able to walk from the field with assistance (but does not recall doing so and remained sidelined for the remainder of the game. Mr. Cloud does not recall how he returned to his home in New York, nor does he recall his level of performance for the remaining games for that season. Mr Cloud's attempted to regain his playing status the following spring, but was unable to complete basic plays and assignments and subsequently was cut by two teams....During the Spring '05 Mr. Cloud signed a two year contract with the NY Giants worth over $2.6-million, but was cut due to his inability to remember the most basic plays and football assignments. Months into the 2005 season Mr. Cloud was again acquired by the NE Patriots and then again by the NY Giants, but was consequently cut due to these cumulative mental disorders.

First, it is clear that Mr. Cloud satisfies the criteria for being "totally and permanently disabled" under Plan section 5.2(a). Mr. Cloud has been unable to engage in any occupation or employment for remuneration or profit[1] since his disability arose in October 2004 from injuries suffered while playing in the NFL. Despite the fact that Mr. Cloud attempted to continue his playing career in the NFL after his October 2004 concussion and despite the fact that Mr. Cloud has owned his own training business and has worked elsewhere as a trainer, Mr. Cloud must still be considered to be totally and permanently disabled under Plan section 5.2(a) because "[a] player will not be considered to be able to engage in any occupation or employment for remuneration or profit within the meaning of this section 5.2 merely because such person is employed by the league . . . or receives up to $30,000 per year in earned income." Since Mr. Cloud has only been employed by the league and engaged in employment where he is receiving less than $30,000 per year in earned income, his employment since October 2004 cannot disqualify him from total and permanent disability benefits. Mr. Cloud has attempted to work and earn more than $30,000 per year, but his neurocognitive disabilities have prevented him from engaging in employment that earns him greater than $30,000 per year.

---

[1] While Mr. Cloud has been employed, he has not earned more than $30,000 per year in earned income and thus is considered to not have engaged in employment for remuneration or profit under section 5.2(a).

CLOUD-AR-491

DBM - 11/16/2016

Further, Mr. Cloud's total and permanent disability arose "shortly after" his disability first arose. In fact, his total and permanent disability arose almost immediately after his October 2004 head trauma. Dr. Cronin in his report states that "as a result of the traumatic brain injuries [suffered while playing football] [Mr. Cloud] began to lose his memory, concentration and suffered from vertigo, as well as tunnel vision and ultimately, due to his inability to recall basic football plays, was released from the New York football Giants." Within one year of his disability arising, Mr. Cloud was cut by the Giants due to his cognitive problems and was unable to last for a significant period of time with any other NFL team due to his cumnulative mental disorders as outlined in Dr. Cronin's reports. Since Mr. Cloud became totally and permanently disabled "shortly after" his disability arose while playing in the NFL, Mr. Cloud is entitled to Active Football benefits.

While Mr. Cloud recognizes that his benefits can only be reclassified if there are "changed circumstances" under Plan section 5.7(b), Mr. Cloud submits that this requirement should be waived under the circumstances here. Mr. Cloud, as well as other former players suffering from neurological impairments, are at a distinct disadvantage when it comes to applying for benefits under the NFL Player Retirement Plan. The Claims Committee and Disability Board did not offer assistance when it came to filing Mr. Cloud's initial application for benefits and resultantly, Mr. Cloud was left to navigate the benefits process on his own. As Mr. Cloud suffered and continues to suffer from severe neurological impairments, such that he may be deemed mentally incapacitated, he was unable to comprehend the true nature of what was required of him in order to apply for the level of benefits that he deserved. Without assistance or help from the Committee or Retirement plan, players like Mr. Cloud will often submit deficient applications for benefits and will not receive what they are entitled to under the Plan. Since Mr. Cloud's original application for benefits was deficient due to his lack of understanding of what was required, Mr. Cloud submits that the "changed circumstances" requirement be waived and this application be treated as an initial application for Active Football benefits. Further, the 42 month limitations period outlined in section 5.7(b) should also be waived because Mr. Cloud's medical records establish that he is and was "mentally incapacitated in a manner that substantially interferes with the filing of" his claim.

Mr. Cloud respectfully submits this appeal and asks that his application for reclassification of benefits be granted and he be awarded Active Football benefits.

Respectfully Submitted,

**Jennifer L. Cloud,** *Esq.*
**Michael A. Cloud**

CLOUD-AR-492

DBM - 11/16/2016

**Dated: September 1, 2016**

**<u>Attachments</u>**

1. Michael Cloud's Total and Permanent Disability ACTIVE FOOTBALL Benefits Application

2. Dr. John Patrick Cronin, Ph. D., M.P.H. Head Trauma Evaluation Reports

DBM - 11/16/2016

## Michael A. Cloud's Appeal of the Disability Initial Claims Committee's March 2, 2016 Denial of Request for Reclassification of T&P Benefits

From: Michael A. Cloud
      120 Mont Blanc Drive
      Heath, TX 75032
      SS# FRCP 5.2
      (p) 214-364-0098
      macsportsandrehab@gmail.com



To:   NFL Player Disability & Neurocognitive
      Benefit Plan
      Retirement Board
      200 Saint Paul St.
      Suite 2420
      Baltimore, MD 21202

      CC: Sarah E. Gaunt, Plan Director
      Paul Scott, Benefits Coordinator

**To the NFL Retirement Board,**

    This letter shall serve as a request for review of the Disability Initial Claims Committee's ("Committee") March 2, 2016 adverse decision denying Michael A. Cloud's request for reclassification of benefits. Mr. Cloud had requested a reclassification of his NFL T&P benefits from "Inactive A" to "Active Football," but this request was denied by the Committee on March 2, 2016. For the following reasons, the Retirement Board should overturn the Committee's decision and should reclassify Mr. Cloud's T&P benefits to "Active Football" benefits.

    Mr. Cloud satisfies all of the criteria for an award of Active Football benefits. Plan section 5.3 provides for Active Football T&P benefits if the players "diability(ies) results from League football activities, arises while the Player is an Active Player, and causes the Player to be totally and permanently disabled 'shortly after' the disability(ies) first arises."

    Mr. Cloud has been awarded a Fully Favorable Decision of SSDI Benefits from Administrative Law Judge, Daniel Curran, as a result of severe impairments of mental disorder stemming from multiple NFL football concussions. Mr. Cloud's total and permanent disability

DBM - 11/16/2016

undoubtedly arose from injuries suffered while an active player in the NFL as evidenced by Dr. John Patrick Cronin's medical evaluation of Mr. Cloud. In Dr. Cronin's Head Trauma Evaluation of Mr. Cloud, he notes that after Mr. Cloud sustained a significant helmut to helmut concussion on October 31, 2004 while with the New York Giants:

> Significant physical and cognitive problems occurred immediately after this collision and Mr. Cloud experienced confusion, disorientation and dizziness as a result of the impact. He was able to walk from the field with assistance (but does not recall doing so and remained sidelined for the remainder of the game. Mr. Cloud does not recall how he returned to his home in New York, nor does he recall his level of performance for the remaining games for that season. Mr Cloud's attempted to regain his playing status the following spring, but was unable to complete basic plays and assignments and subsequently was cut by two teams….During the Spring '05 Mr. Cloud signed a two year contract with the NY Giants worth over $2.6-million, but was cut due to his inability to remember the most basic plays and football assignments. Months into the 2005 season Mr. Cloud was again acquired by the NE Patriots and then again by the NY Giants, but was consequently cut due to these cumulative mental disorders.

First, it is clear that Mr. Cloud satisfies the criteria for being "totally and permanently disabled" under Plan section 5.2(a). Mr. Cloud has been unable to engage in any occupation or employment for remuneration or profit[1] since his disability arose in October 2004 from injuries suffered while playing in the NFL. Despite the fact that Mr. Cloud attempted to continue his playing career in the NFL after his October 2004 concussion and despite the fact that Mr. Cloud has owned his own training business and has worked elsewhere as a trainer, Mr. Cloud must still be considered to be totally and permanently disabled under Plan section 5.2(a) because "[a] player will not be considered to be able to engage in any occupation or employment for remuneration or profit within the meaning of this section 5.2 merely because such person is employed by the league . . . or receives up to $30,000 per year in earned income." Since Mr. Cloud has only been employed by the league and engaged in employment where he is receiving less than $30,000 per year in earned income, his employment since October 2004 cannot disqualify him from total and permanent disability benefits. Mr. Cloud has attempted to work and earn more than $30,000 per year, but his neurocognitive disabilities have prevented him from engaging in employment that earns him greater than $30,000 per year.

---

[1] While Mr. Cloud has been employed, he has not earned more than $30,000 per year in earned income and thus is considered to not have engaged in employment for remuneration or profit under section 5.2(a).