DBM - 11/16/2016

Further, Mr. Cloud's total and permanent disability arose "shortly after" his disability first arose. In fact, his total and permanent disability arose almost immediately after his October 2004 head trauma. Dr. Cronin in his report states that "as a result of the traumatic brain injuries [suffered while playing football] [Mr. Cloud] began to lose his memory, concentration and suffered from vertigo, as well as tunnel vision and ultimately, due to his inability to recall basic football plays, was released from the New York football Giants." Within one year of his disability arising, Mr. Cloud was cut by the Giants due to his cognitive problems and was unable to last for a significant period of time with any other NFL team due to his cumnulative mental disorders as outlined in Dr. Cronin's reports. Since Mr. Cloud became totally and permanently disabled "shortly after" his disability arose while playing in the NFL, Mr. Cloud is entitled to Active Football benefits.

While Mr. Cloud recognizes that his benefits can only be reclassified if there are "changed circumstances" under Plan section 5.7(b), Mr. Cloud submits that this requirement should be waived under the circumstances here.   Mr. Cloud, as well as other former players suffering from neurological impairments, are at a distinct disadvantage when it comes to applying for benefits under the NFL Player Retirement Plan. The Claims Committee and Disability Board did not offer assistance when it came to filing Mr. Cloud's initial application for benefits and resultantly, Mr. Cloud was left to navigate the benefits process on his own. As Mr. Cloud suffered and continues to suffer from severe neurological impairments, such that he may be deemed mentally incapacitated, he was unable to comprehend the true nature of what was required of him in order to apply for the level of benefits that he deserved. Without assistance or help from the Committee or Retirement plan, players like Mr. Cloud will often submit deficient applications for benefits and will not receive what they are entitled to under the Plan. Since Mr. Cloud's original application for benefits was deficient due to his lack of understanding of what was required, Mr. Cloud submits that the "changed circumstances" requirement be waived and this application be treated as an initial application for Active Football benefits. Further, the 42 month limitations period outlined in section 5.7(b) should also be waived because Mr. Cloud's medical records establish that he is and was "mentally incapacitated in a manner that substantially interferes with the filing of" his claim.

Mr. Cloud respectfully submits this appeal and asks that his application for reclassification of benefits be granted and he be awarded Active Football benefits.

Respectfully Submitted,

**Jennifer L. Cloud,** *Esq.*
**Michael A. Cloud**

CLOUD-AR-496

DBM - 11/16/2016

**Dated: September 1, 2016**

<u>**Attachments**</u>

1. Michael Cloud's Total and Permanent Disability ACTIVE FOOTBALL Benefits Application

2. Dr. John Patrick Cronin, Ph. D., M.P.H. Head Trauma Evaluation Reports

CLOUD-AR-497

DBM - 11/16/2016

<u>**Michael A. Cloud's Appeal of the Disability Initial Claims Committee's March
2, 2016 Denial of Request for Reclassification of T&P Benefits**</u>

From:  **Michael A. Cloud**
       **120 Mont Blanc Drive**
       **Heath, TX 75032**
       **SS#** FRCP 5.2
       **(p) 214-364-0098**
       **macsportsandrehab@gmail.com**

To:    **NFL Player Disability & Neurocognitive**
       **Benefit Plan**
       **Retirement Board**
       **200 Saint Paul St.**
       **Suite 2420**
       **Baltimore, MD 21202**

       **CC: Sarah E. Gaunt, Plan Director**
       **Paul Scott, Benefits Coordinator**



**To the NFL Retirement Board,**

    This letter shall serve as a request for review of the Disability Initial Claims Committee's ("Committee") March 2, 2016 adverse decision denying Michael A. Cloud's request for reclassification of benefits.  Mr. Cloud had requested a reclassification of his NFL T&P benefits from "Inactive A" to "Active Football," but this request was denied by the Committee on March 2, 2016. For the following reasons, the Retirement Board should overturn the Committee's decision and should reclassify Mr. Cloud's T&P benefits to "Active Football" benefits.

    Mr. Cloud satisfies all of the criteria for an award of Active Football benefits.   Plan section 5.3 provides for Active Football T&P benefits if the players "diability(ies) results from League football activities, arises while the Player is an Active Player, and causes the Player to be totally and permanently disabled 'shortly after' the disability(ies) first arises."

    Mr. Cloud has been awarded a Fully Favorable Decision of SSDI Benefits from Administrative Law Judge, Daniel Curran, as a result of severe impairments of mental disorder stemming from multiple NFL football concussions.   Mr. Cloud's total and permanent disability

CLOUD-AR-498

DBM - 11/16/2016

undoubtedly arose from injuries suffered while an active player in the NFL as evidenced by Dr. John Patrick Cronin's medical evaluation of Mr. Cloud. In Dr. Cronin's Head Trauma Evaluation of Mr. Cloud, he notes that after Mr. Cloud sustained a significant helmut to helmut concussion on October 31, 2004 while with the New York Giants:

> Significant physical and cognitive problems occurred immediately after this collision and Mr. Cloud experienced confusion, disorientation and dizziness as a result of the impact. He was able to walk from the field with assistance (but does not recall doing so and remained sidelined for the remainder of the game. Mr. Cloud does not recall how he returned to his home in New York, nor does he recall his level of performance for the remaining games for that season. Mr Cloud's attempted to regain his playing status the following spring, but was unable to complete basic plays and assignments and subsequently was cut by two teams....During the Spring '05 Mr. Cloud signed a two year contract with the NY Giants worth over $2.6-million, but was cut due to his inability to remember the most basic plays and football assignments. Months into the 2005 season Mr. Cloud was again acquired by the NE Patriots and then again by the NY Giants, but was consequently cut due to these cumulative mental disorders.

First, it is clear that Mr. Cloud satisfies the criteria for being "totally and permanently disabled" under Plan section 5.2(a). Mr. Cloud has been unable to engage in any occupation or employment for remuneration or profit[1] since his disability arose in October 2004 from injuries suffered while playing in the NFL. Despite the fact that Mr. Cloud attempted to continue his playing career in the NFL after his October 2004 concussion and despite the fact that Mr. Cloud has owned his own training business and has worked elsewhere as a trainer, Mr. Cloud must still be considered to be totally and permanently disabled under Plan section 5.2(a) because "[a] player will not be considered to be able to engage in any occupation or employment for remuneration or profit within the meaning of this section 5.2 merely because such person is employed by the league . . . or receives up to $30,000 per year in earned income." Since Mr. Cloud has only been employed by the league and engaged in employment where he is receiving less than $30,000 per year in earned income, his employment since October 2004 cannot disqualify him from total and permanent disability benefits. Mr. Cloud has attempted to work and earn more than $30,000 per year, but his neurocognitive disabilities have prevented him from engaging in employment that earns him greater than $30,000 per year.

---

[1] While Mr. Cloud has been employed, he has not earned more than $30,000 per year in earned income and thus is considered to not have engaged in employment for remuneration or profit under section 5.2(a).

DBM - 11/16/2016

Further, Mr. Cloud's total and permanent disability arose "shortly after" his disability first arose.  In fact, his total and permanent disability arose almost immediately after his October 2004 head trauma.  Dr. Cronin in his report states that "as a result of the traumatic brain injuries [suffered while playing football] [Mr. Cloud] began to lose his memory, concentration and suffered from vertigo, as well as tunnel vision and ultimately, due to his inability to recall basic football plays, was released from the New York football Giants."  Within one year of his disability arising, Mr. Cloud was cut by the Giants due to his cognitive problems and was unable to last for a significant period of time with any other NFL team due to his cumnulative mental disorders as outlined in Dr. Cronin's reports. Since Mr. Cloud became totally and permanently disabled "shortly after" his disability arose while playing in the NFL, Mr. Cloud is entitled to Active Football benefits.

While Mr. Cloud recognizes that his benefits can only be reclassified if there are "changed circumstances" under Plan section 5.7(b), Mr. Cloud submits that this requirement should be waived under the circumstances here.   Mr. Cloud, as well as other former players suffering from neurological impairments, are at a distinct disadvantage when it comes to applying for benefits under the NFL Player Retirement Plan. The Claims Committee and Disability Board did not offer assistance when it came to filing Mr. Cloud's initial application for benefits and resultantly, Mr. Cloud was left to navigate the benefits process on his own.  As Mr. Cloud suffered and continues to suffer from severe neurological impairments, such that he may be deemed mentally incapacitated, he was unable to comprehend the true nature of what was required of him in order to apply for the level of benefits that he deserved. Without assistance or help from the Committee or Retirement plan, players like Mr. Cloud will often submit deficient applications for benefits and will not receive what they are entitled to under the Plan.  Since Mr. Cloud's original application for benefits was deficient due to his lack of understanding of what was required, Mr. Cloud submits that the "changed circumstances" requirement be waived and this application be treated as an initial application for Active Football benefits.  Further, the 42 month limitations period outlined in section 5.7(b) should also be waived because Mr. Cloud's medical records establish that he is and was "mentally incapacitated in a manner that substantially interferes with the filing of" his claim.

Mr. Cloud respectfully submits this appeal and asks that his application for reclassification of benefits be granted and he be awarded Active Football benefits.

Respectfully Submitted,

**Jennifer L. Cloud,** *Esq.*
**Michael A. Cloud**

CLOUD-AR-500

DBM - 11/16/2016

**Dated: September 1, 2016**

**<u>Attachments</u>**

1.  Michael Cloud's Total and Permanent Disability ACTIVE FOOTBALL Benefits
    Application

2.  Dr. John Patrick Cronin, Ph. D., M.P.H. Head Trauma Evaluation Reports

CLOUD-AR-501

DBM - 11/16/2016

**Elise Richard**

| | |
|---|---|
| **From:** | Michael A. Cloud <macsportsandrehab@gmail.com> |
| **Sent:** | Wednesday, October 26, 2016 2:38 PM |
| **To:** | Elise Richard |
| **Cc:** | mcloud34@aol.com |
| **Subject:** | Re: Attachments with Appeal  EMAIL 1 of 2 |
| **Attachments:** | -M.Cloud-T&P ACTIVE FOOTBALL Benefits Re-Classifcation (1-8 of 12).pdf; ATT00001.htm |

| **Importance:** | High |
|---|---|

Hello Elise,

Attached are the documents related to the T&P Re-classification.  I will also FedEx hardcopies to the NFL Players Benefits Office today for early tomorrow (October 27) arrival.

Thank you, Elise for reaching out.

1

**CLOUD-AR-502**

DBM - 11/16/2016

09/16 DBM Corr Page 2

## Elise Richard

| | |
|---|---|
| **From:** | Michael A. Cloud <macsportsandrehab@gmail.com> |
| **Sent:** | Wednesday, October 26, 2016 2:39 PM |
| **To:** | Elise Richard |
| **Cc:** | mcloud34@aol.com |
| **Subject:** | Re: Attachments with Appeal |
| **Attachments:** | -M.Cloud-T&P ACTIVE FOOTBALL Benefits Re-Classifcation (9-12 of 12).pdf; ATT00001.htm |

| **Importance:** | High |
|---|---|

EMAIL 2 of 2

1

**CLOUD-AR-503**

DBM - 11/16/2016



RECEIVED

OCT 2 6 2016

NFL PLAYER BENEFITS

## Michael A. Cloud's Appeal of the Disability Initial Claims Committee's March 2, 2016 Denial of Request for Reclassification of T&P Benefits

From: Michael A. Cloud
      120 Mont Blanc Drive
      Heath, TX 75032
      SS# FRCP 5.2
      (p) 214-364-0098
      macsportsandrehab@gmail.com

To:   NFL Player Disability & Neurocognitive
      Benefit Plan
      Retirement Board
      200 Saint Paul St.
      Suite 2420
      Baltimore, MD 21202

      CC: Sarah E. Gaunt, Plan Director
      Paul Scott, Benefits Coordinator



To the NFL Retirement Board,

    This letter shall serve as a request for review of the Disability Initial Claims Committee's ("Committee") March 2, 2016 adverse decision denying Michael A. Cloud's request for reclassification of benefits. Mr. Cloud had requested a reclassification of his NFL T&P benefits from "Inactive A" to "Active Football," but this request was denied by the Committee on March 2, 2016. For the following reasons, the Retirement Board should overturn the Committee's decision and should reclassify Mr. Cloud's T&P benefits to "Active Football" benefits.

    Mr. Cloud satisfies all of the criteria for an award of Active Football benefits. Plan section 5.3 provides for Active Football T&P benefits if the players "diability(ies) results from League football activities, arises while the Player is an Active Player, and causes the Player to be totally and permanently disabled 'shortly after' the disability(ies) first arises."

    Mr. Cloud has been awarded a Fully Favorable Decision of SSDI Benefits from Administrative Law Judge, Daniel Curran, as a result of severe impairments of mental disorder stemming from multiple NFL football concussions. Mr. Cloud's total and permanent disability

CLOUD-AR-504

DBM - 11/16/2016

undoubtedly arose from injuries suffered while an active player in the NFL as evidenced by Dr. John Patrick Cronin's medical evaluation of Mr. Cloud. In Dr. Cronin's Head Trauma Evaluation of Mr. Cloud, he notes that after Mr. Cloud sustained a significant helmut to helmut concussion on October 31, 2004 while with the New York Giants:

> Significant physical and cognitive problems occurred immediately after this collision and Mr. Cloud experienced confusion, disorientation and dizziness as a result of the impact.  He was able to walk from the field with assistance (but does not recall doing so and remained sidelined for the remainder of the game.  Mr. Cloud does not recall how he returned to his home in New York, nor does he recall his level of performance for the remaining games for that season.  Mr Cloud's attempted to regain his playing status the following spring, but was unable to complete basic plays and assignments and subsequently was cut by two teams....During the Spring '05 Mr. Cloud signed a two year contract with the NY Giants worth over $2.6-million, but was cut due to his inability to remember the most basic plays and football assignments.  Months into the 2005 season Mr. Cloud was again acquired by the NE Patriots and then again by the NY Giants, but was consequently cut due to these cumulative mental disorders.

First, it is clear that Mr. Cloud satisfies the criteria for being "totally and permanently disabled" under Plan section 5.2(a). Mr. Cloud has been unable to engage in any occupation or employment for remuneration or profit[1] since his disability arose in October 2004 from injuries suffered while playing in the NFL.  Despite the fact that Mr. Cloud attempted to continue his playing career in the NFL after his October 2004 concussion and despite the fact that Mr. Cloud has owned his own training business and has worked elsewhere as a trainer, Mr. Cloud must still be considered to be totally and permanently disabled under Plan section 5.2(a) because "[a] player will not be considered to be able to engage in any occupation or employment for remuneration or profit within the meaning of this section 5.2 merely because such person is employed by the league . . . or receives up to $30,000 per year in earned income." Since Mr. Cloud has only been employed by the league and engaged in employment where he is receiving less than $30,000 per year in earned income, his employment since October 2004 cannot disqualify him from total and permanent disability benefits.  Mr. Cloud has attempted to work and earn more than $30,000 per year, but his neurocognitive disabilities have prevented him from engaging in employment that earns him greater than $30,000 per year.

---

[1] While Mr. Cloud has been employed, he has not earned more than $30,000 per year in earned income and thus is considered to not have engaged in employment for remuneration or profit under section 5.2(a).

DBM - 11/16/2016

Further, Mr. Cloud's total and permanent disability arose "shortly after" his disability first arose.  In fact, his total and permanent disability arose almost immediately after his October 2004 head trauma.  Dr. Cronin in his report states that "as a result of the traumatic brain injuries [suffered while playing football] [Mr. Cloud] began to lose his memory, concentration and suffered from vertigo, as well as tunnel vision and ultimately, due to his inability to recall basic football plays, was released from the New York football Giants."  Within one year of his disability arising, Mr. Cloud was cut by the Giants due to his cognitive problems and was unable to last for a significant period of time with any other NFL team due to his cumulative mental disorders as outlined in Dr. Cronin's reports. Since Mr. Cloud became totally and permanently disabled "shortly after" his disability arose while playing in the NFL, Mr. Cloud is entitled to Active Football benefits.

While Mr. Cloud recognizes that his benefits can only be reclassified if there are "changed circumstances" under Plan section 5.7(b), Mr. Cloud submits that this requirement should be waived under the circumstances here.   Mr. Cloud, as well as other former players suffering from neurological impairments, are at a distinct disadvantage when it comes to applying for benefits under the NFL Player Retirement Plan. The Claims Committee and Disability Board did not offer assistance when it came to filing Mr. Cloud's initial application for benefits and resultantly, Mr. Cloud was left to navigate the benefits process on his own.  As Mr. Cloud suffered and continues to suffer from severe neurological impairments, such that he may be deemed mentally incapacitated, he was unable to comprehend the true nature of what was required of him in order to apply for the level of benefits that he deserved. Without assistance or help from the Committee or Retirement plan, players like Mr. Cloud will often submit deficient applications for benefits and will not receive what they are entitled to under the Plan.  Since Mr. Cloud's original application for benefits was deficient due to his lack of understanding of what was required, Mr. Cloud submits that the "changed circumstances" requirement be waived and this application be treated as an initial application for Active Football benefits.  Further, the 42 month limitations period outlined in section 5.7(b) should also be waived because Mr. Cloud's medical records establish that he is and was "mentally incapacitated in a manner that substantially interferes with the filing of" his claim.

Mr. Cloud respectfully submits this appeal and asks that his application for reclassification of benefits be granted and he be awarded Active Football benefits.

Respectfully Submitted,

**Jennifer L. Cloud,** *Esq.*
**Michael A. Cloud**

CLOUD-AR-506

DBM - 11/16/2016

09/16 DBM Corr Page 6

**Dated: September 1, 2016**

<u>**Attachments**</u>

1.  Michael Cloud's Total and Permanent Disability ACTIVE FOOTBALL Benefits
    Application

2.  Dr. John Patrick Cronin, Ph. D., M.P.H. Head Trauma Evaluation Reports *(reports was
    forgotten in the original T&P Application)*

**CLOUD-AR-507**

DBM - 11/16/2016

09/16 DBM Corr Page 7

 

**NFL Player Supplemental Disability & Neurocognitive Benefit Plan**

## Neurocognitive Disability Benefit Application

### Signature and Authorization

I certify that all information and documents provided on or with this Application are, to the best of my knowledge, true, correct, and complete. I also authorize the Disability Plan to use or disclose all individually identifiable health information submitted to the Plan on my behalf, or created in connection with my Application for disability benefits, to all individuals as needed for Plan purposes. In submitting this application, I represent and warrant that 1) I am under 55 years of age; 2) I am a vested Participant in the Bert Bell/Pete Rozelle NFL Player Retirement Plan due to Credited Seasons; and 3) I have at least one Credited Season after 1994. I understand that I will be required to undergo a comprehensive evaluation, and I certify that I will be able to attend such evaluation within 30 days from the date this Application is received by the Plan Office. I understand that failure to attend and cooperate with such evaluation may result in my application being denied.

Signature of Player _Michael Cloud_ Date Completed _July 28, 2014_

### Player Information

Player's Name (please print) _Cloud_ _Michael_ _A._
                               Last    First    Middle Initial

Date of Birth ___FRCP 5.2___ Social Security Number ___FRCP 5.2___

Address (number and street) _120 Mont Blanc Drive_

City _Heath_ State _Texas_ Zip Code _75032_

Home Phone _N/A_ Work Phone _N/A_

Mobile Phone _214-708-2846_ E-mail _mcloud34@aol.com_

### Medical, Hospital, and Other Records

Have you included additional information in support of your Application for neurocognitive disability benefits?

○ Yes  ○ No   If yes, what is enclosed? _Already received by the benefits committee with the exception of DR John Patrick Croins Head Trauma Evaluation Report #2 - February, 2012_

Are there other documents that you intend to include that you have not submitted with this Application?

○ Yes  ○ No   If yes, what will you be sending? _Yes, Pending evaluation report from Board Certified Neurologist Dr. Ziad Blaik_

Note: Applications cannot be processed until all information is received. Please send all supporting information to the Plan Office as soon as possible, or notify the Plan Office if you decide not to send additional information.

— CONTINUED ON NEXT PAGE —

CLOUD-AR-508

DBM - 11/16/2016

09/16 DBM Corr Page 8

Player's Name *(please print)* Michael Cloud

Initials  MAC

### Impairments

Please describe the problems you are experiencing as a result of neurocognitive impairment.

*(Attach an additional sheet if necessary)*

Please See Attachments The following Neurological Medical Reviews were already sent to the T&P Benefits Committee

*SSA Beefits Verification Letter

*Daniel Curran, Administrative Law Judge – SSDA, Notice of FULL FAVORABLE SSDI and SSI Decision

*Dr. Harry Cates, LPC., - The Life Works Group; Medical Review & Mental Residual Functional Capacity Assessment

*Dr. Anne Smith, Ph.D. - Behavioral Health; Medical Review

*Dr. John Patrick Cronin, Ph. D., M.P.H. – Primary Behavioral Health Clinics, Inc.

*Dr. Adam S. DiDIo, M.D. – Suncoast Medical Center Neurology

*..the missing medical review from Dr. John Patrick Cronin in Mr. Cloud's original T&P application was mistakingly forgotten and should be used by the Benefits Committee for reclassification to T&P ACTIVE FOOTBALL.*

Are you receiving any ongoing treatment for the symptoms described above?  If so, please describe below, including

physicians and dates of treatment in the last three years. *(Attach an additional sheet if necessary)*

Yes. Dr. Michael Jackson, M.D. (Sparks Clinic) Treatment dates started 12/31/14 every 3 months to current date.

Dr. Ziad Blaik, Board Certified Neurologist (Neurologist Specialist of Dallas), Medical Evaluations Pending.

Have you received a diagnosis of any condition relating to your impairment?

○ Yes   ○ No   If yes, what was the diagnosis(ses)?   Yes.  Included in the original T&P Application

— CONTINUED ON NEXT PAGE —

CLOUD-AR-509

DBM - 11/16/2016

09/16 DBM Corr Page 9

## Release and Covenant Not to Sue

**You must sign the following release for your Application to be processed.**

In consideration for the benefit provided under Article 65 of the Collective Bargaining Agreement between the NFL Management Council and the NFLPA, Player, on his own behalf and on behalf of his personal representatives, heirs, next of kin, executors, administrators, estate, assigns, and/or any person or entity on his behalf, hereby waives and releases and forever discharges the NFL and its Clubs, and their respective past, current, and future affiliates, directors, officers, owners, stockholders, trustees, partners, servants, and employees (excluding persons employed as players by a Club) and all of their respective predecessors, successors, and assigns (collectively, the "NFL Releasees") of and from any and all claims, actions, causes of actions, liabilities, suits, demands, damages, losses, payments, judgments, debts, dues, sums of money, costs and expenses, accounts, in law or equity, contingent or non-contingent, known or unknown, suspected or unsuspected ("Claims") that the Player has, had, may now have, or may have in the future arising out of, relating to, or in connection with any head and/or brain injury sustained during his employment by the Club, including without limitation head and/or brain injury of whatever cause and its damages (whether short-term, long-term, or death) whenever arising, including without limitation neurocognitive deficits of any degree, and Player covenants not to sue the NFL Releasees with respect to any such Claim or pursue any such Claim against the NFL Releasees in any forum. This release, waiver, and covenant not to sue includes without limitation all Claims arising under the tort laws of any state and extends to all damages (including without limitation short-term and/or long-term effects of such injury and death) whenever arising, including without limitation after execution of this release, waiver, and covenant not to sue. Player further acknowledges that he has read and understands section 1542 of the California Civil Code, which reads as follows:

A general release does not extend to claims which the creditor does not know or suspect to exist in his favor at the time of executing the release, which if known by him must have materially affected his settlement with the debtor.

Player expressly waives and relinquishes all rights and benefits under that section and any law of any jurisdiction of similar effect with respect to the release of any unknown or unsuspected claims released hereunder that Player may have against the NFL Releasees. This release, waiver, and covenant not to sue shall have no effect upon any right that Player may have to insurance or other benefits available under any Collective Bargaining Agreement between the NFL Management Council and the NFLPA, or under the workers' compensation laws, and Player acknowledges and agrees that such rights, if any, are his sole and exclusive remedies for any Claims.

Player acknowledges and agrees that the provision of the benefit under Article 65 shall not be construed as an admission or concession by the NFL Releasees or any of them that NFL football caused or causes, in whole or in part, the medical conditions covered by the benefit, or as an admission of liability or wrongdoing by the NFL Releasees or any of them, and the NFL Releasees expressly deny any such admission, concession, liability, or wrongdoing.

Dated this 10/24/16 day of _____, 20_____.

Signature of Player *Michael Cloud*

Printed Name of Player Michael Cloud

### Mail the completed Application and required documentation to:

NFL PLAYER SUPPLEMENTAL DISABILITY & NEUROCOGNITIVE BENEFIT PLAN
200 SAINT PAUL ST STE 2420
BALTIMORE MD 21202

**If you have any questions, please call the Plan Office at 800-638-3186.**

DBM - 11/16/2016

09/16 DBM Corr Page 10

BERT BELL/PETE ROZELLE NFL PLAYER RETIREMENT PLAN

DISABILITY BENEFIT PLAYER CONSENT FORM

You are applying for disability benefits under the Bert Bell/Pete Rozelle NFL Player Retirement Plan ("Plan"). This form contains important information. Please read the form, sign it, and return it with your application for disability benefits. This form is a required part of the application, and must be completed before your application will be processed.

               *                    *                *

I, _Michael Cloud_____ (print name), have read and understood the information in this Disability Benefit Player Consent Form.

Signature: _Michael Cloud_____

Date: _10-24-16_____

In submitting my application for disability benefits, I understand that:

1. I may be required to attend a physical examination with one or more physicians or other health professionals, and that failure to attend may cause my application to be denied.

2. There will be no doctor-patient relationship between me and the physicians or other health professionals who examine me.

3. The physicians or other health professionals who examine me will provide reports on my condition to the Plan, which I may obtain by written request to the Plan Office.

4. The physicians or other health professionals who examine me will not provide a copy of the medical reports to me directly.

5. Neither I nor my representatives (attorneys, treating physicians, etc.) are allowed to contact the physicians or other health professionals arranged by the Plan, such as to discuss their examination of me or to request copies of reports.

6. The physicians or other health professionals who examine me are required to comply with ethical or legal obligations, for example if they determine that I am a danger to myself or to others.

7. By signing this form, I consent to the above points and will comply with the Plan's procedures in connection with my claim for disability benefits.

CLOUD-AR-511

DBM - 11/16/2016

09/16 DBM Corr Page 11

BERT BELL/PETE ROZELLE NFL PLAYER RETIREMENT PLAN

DISABILITY BENEFIT PLAYER CONSENT FORM

You are applying for disability benefits under the Bert Bell/Pete Rozelle NFL Player Retirement Plan ("Plan"). This form contains important information. Please read the form, sign it, and return it with your application for disability benefits. This form is a required part of the application, and must be completed before your application will be processed.

*    *    *

I,  Michael Cloud _____ (print name), have read and understood the information in this Disability Benefit Player Consent Form.

Signature: _Michael Cloud_____

Date: _10-24-16_____

In submitting my application for disability benefits, I understand that:

1. I may be required to attend a physical examination with one or more physicians or other health professionals, and that failure to attend may cause my application to be denied.

2. There will be no doctor-patient relationship between me and the physicians or other health professionals who examine me.

3. The physicians or other health professionals who examine me will provide reports on my condition to the Plan, which I may obtain by written request to the Plan Office.

4. The physicians or other health professionals who examine me will not provide a copy of the medical reports to me directly.

5. Neither I nor my representatives (attorneys, treating physicians, etc.) are allowed to contact the physicians or other health professionals arranged by the Plan, such as to discuss their examination of me or to request copies of reports.

6. The physicians or other health professionals who examine me are required to comply with ethical or legal obligations, for example if they determine that I am a danger to myself or to others.

7. By signing this form, I consent to the above points and will comply with the Plan's procedures in connection with my claim for disability benefits.

CLOUD-AR-512

DBM - 11/16/2016

09/16 DBM Corr Page 12



Telephone Answered 24 Hours
(612) 378-2363
FAX (612) 378-2215

Mailing Address:
Broadway East Bldg.
Suite 160
3433 Broadway St. NE
Minneapolis, MN 55413

**Primary Behavioral Health Clinics, Inc.**

February 2, 2012

VIA FAX AND U.S. MAIL

James R. Waldhauser, Esq.
Cousineau McGuire Chartered
1550 Utica Ave. S, Suite 600
Minneapolis, MN 55416-5318

FEB - 6 20.

RE:   Michael Cloud

Dear Mr. Waldhauser:

In response to your request that I give my opinions regarding the neuropsychological evaluation conducted October 28, 2011 by Dr. Nathan W. Nelson, please be advised that I am in receipt of Dr. Nelson's 19 page evaluation, as well as the raw data that he graciously provided to me. My critique of Dr. Nelson's neuropsychological evaluation is based primarily on the findings that he made from the neuropsychometric assessment which ultimately resulted in his interpretation and opinions regarding Mr. Cloud's status. I am responding to the observations and interpretations of Dr. Nelson in the order presented in his 19 page report and will attempt to reference them in order.

REPORT WAS NOT INCLUDED IN MR. CLOUD'S ORIGINAL T&P APPLICATION

Dr. Nelson referred to Mr. Cloud's recitation of his history and injury as a "relatively accurate summary of a concussion that he sustained in 2004" and then he described his mood as "frustrated, dysphoric, and somewhat anxious" (page 2). He also noted that Mr. Cloud "expressed occasional frustration" and had difficulties on "concept formation that entails the ability to benefit from external feedback". He also indicated that his approach to various tasks appeared to be "impulsive, haphazard", and over the testing period Mr. Cloud complained of a headache, as well as fatigue. He did believe that Mr. Cloud "put forth sufficient effort on presented tasks" and was "very cooperative".

Dr. Nelson further reported that Mr. Cloud's account of the 2004 injury appears to be a helmet-to-helmet collision in which he was struck in the right posterior region. Significant physical and cognitive problems occurred immediately after this collision and Mr. Cloud experienced "confusion, disorientation and dizziness as a result of the impact". He was able to walk from the field with assistance (but does not recall doing so) and remained sidelined for the remainder of the game. Mr. Cloud does not recall how he returned to his home in New York, nor does he recall his level of performance for the remaining games for that season. Dr. Nelson notes that when Mr. Cloud attempted to regain his playing status the following spring, he was unable to complete basic plays and assignments and subsequently was released by two teams and

**EXHIBIT**

**A**

CLOUD-AR-513

DBM - 11/16/2016

Michael Cloud
February 2, 2012
Page

ultimately "retired" from the NFL. Mr. Cloud reports to Dr. Nelson that he currently experiences "primary limitations in attention and memory function" and often experiences difficulty in "focusing in conversation and needs others to clarify their comments". He also indicated difficulty initiating daily activities and task completion. He told Dr. Nelson that he is easily distracted and has significant difficulty multi-tasking. He also notes frequent arguments with his wife and becomes upset about her frequent reminders about things that he is suppose to be doing. He also reported frequent difficulty in word-finding and in connecting sentences. He also notes he frequently misplaces common daily items. An analysis of Dr. Nelson's test findings (page 11) indicates that his effort in motivation were "well within normal limits". On the test for attention and concentration his scores placed him in the "low average range", as was his auditory working memory.

REPORT WAS NOT INCLUDED IN MR. CLOUD'S ORIGINAL T&P APPLICATION
Of particular significance would be his performance in executive functioning, an area of the frontal lobes. This region of the brain is extremely important for concept formation, the ability to process external feedback and emotions. Dr. Nelson's measurement of Mr. Cloud's performance on executive functioning "were consistently impaired relative to persons of similar age and education". It should also be noted that several other measures including simple repetitive words and colors were in the "low average range" as were phonemic fluency (the generation of words beginning with a given letter across time trials). In the area of visual/spatial functioning, his scores placed him in the "low average range", as were his scores on motor functioning.

Dr. Nelson's interpretation of Mr. Cloud's personality and emotional functioning certainly take an unusual position relative to his scores (and while he does not identify, I assume he is talking about the MMPI-2) indicating that Mr. Cloud exhibits "limited insight into overall psychological and emotional functioning". He also indicates that Mr. Cloud endorses excessive "somatic symptoms". I think a clinical investigation by Dr. Nelson of Mr. Cloud's history would certainly show that he has had numerous injuries over his career and obviously this would be the source of significant concerns about "somatic symptoms". I think it is also as obvious that given the high level of performance that Mr. Cloud enjoyed in both college, as well as professional football, that the mood at these levels is not one of someone who "complains" about any type of injury, be it physical or emotional.

In summary, it would be my opinion that I find it most unusual that a trained neuropsychologist like Dr. Nathan Nelson, spends some 17 hours (his estimate) in evaluating Mr. Cloud, utilizes standardized tests which show a whole host of neurocognitive problems (traumatic brain injury) and then gives an opinion on page 14 "…it is my opinion that Mr. Cloud's current claimed cognitive symptoms are not causally related to the head injury sustained on October 31, 2004". Dr. Nelson then goes on to assign any problems that Mr. Cloud has currently to "difficulty adjusting to life after football; depression; pain; sleep disturbance". For Dr. Nelson to give an opinion on page 15 that "no diagnosis from cognitive perspective is currently warranted". I would refer Dr. Nelson to the *DSM-IV-TR, page 764 in appendix B*, which states as follows:

CLOUD-AR-514

DBM - 11/16/2016

09/16 DBM Corr Page 14

Michael Cloud
February 2, 2012
Page 3

**Research criteria for mild neurocognitive disorder**

A. The presence of two (or more) of the following impairments in cognitive functioning, lasting most of the time for a period of at least 2 weeks (as reported by the individual or a reliable informant):

1) Memory impairment as identified by a reduced ability to learn or recall information
2) Disturbance in executive functioning (i.e., planning, organizing, sequencing, abstracting)
3) Disturbance in attention or speed of information processing
4) Impairment in perceptual-motor abilities
5) Impairment in language (e.g., comprehension, word finding)

While our "gold standard" in diagnostics indicates that Mr. Cloud need only qualify with two of the five symptoms, and he has all five of the symptoms, he has obviously been experiencing these problems since his injury in 2004 which obviously is in excess of two weeks duration. REPORT WAS NOT INCLUDED IN MR. CLOUD'S ORIGINAL T&P APPLICATION Likewise, I think it is ludicrous to suggest that all of these issues "resolve rapidly" and that essentially Mr. Cloud sustained an "uncomplicated concussion" (page 15). I also think it is interesting that Dr. Nelson does not seek out any type of corollary input from such people as his wife who sees him on a daily basis and is in an excellent position to report many of the dysfunctions that Mr. Cloud suffers. I would agree with Dr. Nelson that Mr. Cloud would benefit from some individual counseling as well as marital counseling and may also benefit from consulting with a vocational psychologist or rehabilitation specialist, but to suggest that he has no "problems" seems to contradict many of Dr. Nelson's findings and what he was able to gather in 17 hours of assessment. While Mr. Cloud is not in a nursing home with 24 hour care, he certainly is hardly "cured" or unimpaired. He graduated from Boston College, he didn't just attend, and he didn't "retire" from the NFL, they cut him.

With respect to Mr. Cloud's current condition and future needs, I think it is relatively apparent that given the nature of his injury there are certain things he needs to avoid. These would include, but not be limited to, making complex decisions involving a variety of everyday activities including, financial, childcare, recreational, vocational and anything that may involve complex reasoning. Fortunately he has a supportive wife who can assist him in many of these decision making processes. He also needs to avoid stressful situations, as much as possible, since these seem to trigger negative emotional responses on his part.

He also needs an extensive consultation with a neurologist with expertise in this type of post concussive syndrome to adequately diagnosis his condition and recommend any possible physical treatments. Such treatments may involve medication management or some of his symptoms. Certainly, having some type of ongoing counseling would help Mr. Cloud in making

CLOUD-AR-515

DBM - 11/16/2016

09/16 DBM Corr Page 15

Michael Cloud
February 2, 2012
Page 4

adjustments to his disability.  For that reason, I certainly would not be of the opinion that he has
reached maximum medical improvement per our statutory guide lines.

REPORT WAS NOT INCLUDED IN MR. CLOUD'S ORIGINAL T&P APPLICATION
I will provide the requested permanent partial disability rating per Minnesota Statute 5223.0360
Subpart 7, Paragraph D, utilizing the Weber decision.  I would rate Michael Cloud between
Categories 2 and 3 with a permanent partial disability rating of 27%.  I arrive at this rating by
considering those two categories which most represent his degree of psychological/psychiatric
disturbance and utilizing the Weber decision which allows the examiner to rate between categories
when an individual does not fit specifically into one category, I chose these two categories because
his condition exceeds category 2, "mild emotional disturbance", but he does not meet the full
criteria under category 3, "requires some supervision on a daily basis."  These two categories have a
range from 20-40% and, thus, utilizing the Weber decision, I am placing him between the categories
at 27% permanent partial disability.

It should also be noted that I have an extensive library of articles regarding traumatic brain injury
and would certainly be willing to make these available to you and I have reviewed many of these
articles as part of the preparation of this report.

If you have any questions or need clarification of any of these responses feel free to contact me
directly.

Sincerely,

John Patrick Cronin, Ph.D., M.P.H.
Licensed Psychologist
Clinical Director
Diplomate, American College of Forensic Examiners

JPC:sp

No single measure should be considered absolute. Conclusions reached in
this report are subject to the limitations of scientific procedures, validity and
reliability standards established by test authors, and the impossibility of
making absolute predictions.

CLOUD-AR-516

## DBM - 11/16/2016

Board Actions for Michael A. Cloud

| Meeting Date Type | Case Type | Issue | Decision | Effective Date/Action |
|---|---|---|---|---|
| 02-22-16.E | TPA | RCL | Denied | no clear and convincing evidence of changed circumstances |
| 07-17-14.E | TPC | APL | Approved | 05-01-14 SSA Disability Award |
| 05-13-10.E | LOD | APA | Approved | 05-01-10 Dr. George Canizares - Neutral Orthopaedist |
| 09-24-09.E | LOD | APL | Denied | percentage Dr. Bert Mandelbaum - Neutral Orthopaedist |
| 07-09-09.E | LOD | APL | Tabled | 30 day extension granted - pending medical reports |

### SUMMARY

Total Cases: 5

Case Types- LOD: 2  TPA: 1  TPC: 1  DIS/TPX: 1

Issues-    APA: 1  APL: 3  RCL: 1

Decisions- Approved: 2  Denied: 2  Tabled: 1

Issues:  APL- Application  CON- Continuation  EDT- Eff. Date   RCL- Reclassification  EED- Earlier Eff. Date  MSC- Miscellaneous
         APA- APL Appeal   COA- CON Appeal    EDA- EDT Appeal  RCA- RCL Appeal        EEA- EED Appeal         MSA- MSC Appeal
                                                                                      10/13/16

CLOUD-AR-517



200 St. Paul Street, Suite 2420
Baltimore, Maryland 21202
Phone 800.638.3186
Fax 410.783.0041

November 23, 2016

Mr. Michael Cloud
120 Mont Blanc Drive
Heath, Texas 75032

Re:   **Bert Bell/Pete Rozelle NFL Player Retirement Plan—Final Decision on Review**

Dear Mr. Cloud:

At its November 16, 2016 meeting the Retirement Board of the Bert Bell/Pete Rozelle NFL Player Retirement Plan ("Plan") considered your appeal from the Disability Initial Claims Committee's ("Committee") decision denying your request for reclassification of your total and permanent disability ("T&P") benefits to the Active Football category.  We regret to inform you that the Retirement Board denied your appeal for the reasons described below.

**Discussion**

The Plan received your original application for T&P benefits on July 1, 2014.  As you know, the Committee found you to be totally and permanently disabled by virtue of your Social Security Administration ("SSA") disability award, and it awarded you Inactive A T&P benefits, effective May 1, 2014.  The basis for the Committee's decision was explained to you in a letter dated July 23, 2014.  You did not appeal that decision.

By letter received February 17, 2016, your representative, Jennifer Cloud, requested that your Inactive A benefits be reclassified to the Active Football category.  She stated that you "became disabled in 2005, while playing for the New York Giants due to cumulative mental disorder," and she submitted a copy of your SSA file and other records.

The Committee denied your request for reclassification by letter dated March 2, 2016.

By letter received September 2, 2016, Ms. Cloud appealed the Committee's decision to the Retirement Board.  With the appeal, she stated that your SSA award resulted from a severe mental disorder stemming from multiple concussions, and she argued that your disability arose shortly after your October 2004 head trauma.  Ms. Cloud submitted additional medical records with her appeal, such as a report from psychologist Dr. John Cronin dated February 2, 2012.

MYGOALLINE.COM

Mr. Michael Cloud
November 23, 2016
Page 2

At its November 16, 2016 meeting, the Retirement Board reviewed your request for reclassification and determined that it must be denied. Section 5.7(b) governs requests for reclassification such as yours. It permits reclassification only where a Player "shows by evidence found by the Retirement Board... to be clear and convincing that, because of changed circumstances, the Player satisfies the conditions of eligibility for a benefit under a different category of T&P benefits." The Retirement Board interprets Section 5.7(b)'s "changed circumstances" requirement to mean a new or different impairment from the one that originally qualified you for T&P benefits. Because you seek reclassification to Active Football, you would have to clearly and convincingly show that (1) you have a new or different impairment (Section 5.7(b)), (2) that new or different impairment arose while you were an Active Player (Section 5.3(a)), and (3) it caused you to be totally and permanently disabled "shortly after" it first (Section 5.3(a)). Under Section 5.3(e) of the Plan, you satisfy the "shortly after" requirement if you became totally and permanently disabled within six months of when your disabling condition or impairment first arose. Conversely, you do not meet the "shortly after" requirement if you became totally and permanently disabled more than twelve months after the condition or impairment arose. The Retirement Board has "the right and duty to determine whether the 'shortly after' standard is satisfied" for any claim of total and permanent disability falling within this six to twelve month period.

The Retirement Board reviewed your 2014 application for T&P benefits and noted that it was based on a combination of orthopedic, neurological, and cognitive impairments, such as post-concussion syndrome, clinical depression, dementia pugilistica, migraine, vertigo, impaired verbal fluency, acute compartment syndrome, plantar fasciitis, cluneal nerve injury, and multiple orthopedic impairments. The Retirement Board also noted that your request for reclassification is based on what you call "severe" mental impairments, but those are the same impairments listed in your 2014 application, and they formed the basis of your award of Inactive A T&P benefits (and your SSA award). Thus, the Retirement Board determined that you have not met Section 5.7(b)'s reclassification requirements because you have not clearly and convincingly shown that you are totally and permanently disabled by a new or different impairment. The Retirement Board also determined that, even if your request for reclassification were based on a new or different impairment, the medical evidence you submitted does not show that you meet the requirements for the Active Football category. The evidence you submitted does not show that you are totally and permanently disabled, and it all falls well outside any conceivable "shortly after" period required for Active Football benefits. The Retirement Board noted that, for the Active Football category, it is not enough that your disability first arise during your NFL career; it must also become totally and permanently disabling "shortly after" it first arises.

CLOUD-AR-519

Mr. Michael Cloud
November 23, 2016
Page 3

In any event, the Retirement Board also determined that your appeal was untimely under Section 12.6(a). The Retirement Board noted that (1) according to Plan records, you received the decision letter on March 4, 2016; (2) that decision letter advised you of the 180-day appeal deadline (which expired on August 31, 2016); and (3) the Plan did not receive your appeal until September 2, 2016, two days after the 180-day deadline expired.

For these reasons, the Retirement Board concluded that it cannot honor your request to reclassify your existing Inactive benefits to the Active Football category. For this reason, the Retirement Board denied your appeal.

**Appeal Rights**

You should regard this letter as a final decision on review within the meaning of Section 503 of the Employee Retirement Income Security Act of 1974, as amended, and the regulations issued thereunder by the Department of Labor. You are entitled to receive, upon request and free of charge, reasonable access to, and copies of, all documents, records, and other information relevant to your claim for benefits. You have the right to bring an action under Section 502(a) of the Employee Retirement Income Security Act of 1974, as amended, within 42 months from the date of this letter, which is May 16, 2020.

Please call the NFL Player Benefits Office if you have any questions.

Sincerely,

*Michael B Miller*

Michael B. Miller
Plan Director

Enclosure

cc: Jennifer Cloud

CLOUD-AR-520

**Relevant Plan Provisions**

Section 5.1 provides that a Player is eligible for T&P benefits if he "is determined by the Retirement Board or the Disability Initial Claims Committee to be totally and permanently disabled in accordance with Section 5.2."

Section 5.2(a) provides the "General Standard" for determining whether a Player is totally and permanently disabled.  It states:

> An eligible Player who is not receiving monthly retirement benefits under Article 4 or Article 4A will be deemed to be totally and permanently disabled if the Retirement Board or the Disability Initial Claims Committee finds (1) that he has become totally disabled to the extent that he is substantially prevented from or substantially unable to engage in any occupation or employment for remuneration or profit, but expressly excluding any disability suffered while in the military service of any country, and (2) that such condition is permanent.  The educational level and prior training of a Player will not be considered in determining whether such Player is "unable to engage in any occupation or employment for remuneration or profit."  A Player will not be considered to be able to engage in any occupation or employment for remuneration or profit within the meaning of this Section 5.2 merely because such person is employed by the League or an Employer, manages personal or family investments, is employed by or associated with a charitable organization, is employed out of benevolence, or receives up to $30,000 per year in earned income.  A disability will be deemed to be "permanent" if it has persisted or is expected to persist for at least twelve months from the date of its occurrence, excluding any reasonably possible recovery period.

Section 5.3 provides that T&P benefits will be awarded in one of four categories:

(a)  <u>Active Football.</u>  Subject to the special rules of Section 5.4, Players will qualify for benefits in this category if the disability(ies) results from League football activities, arises while the Player is an Active Player, and causes the Player to be totally and permanently disabled "shortly after" the disability(ies) first arises.

(b)  <u>Active Nonfootball.</u>  Subject to the special rules of Section 5.4, a Player will qualify for benefits in this category if the disability(ies) does not result from League football activities, but does arise while the Player is an Active Player and does cause the Player to be totally and permanently disabled "shortly after" the disability(ies) first arises.

(c)  <u>Inactive A.</u>  Subject to the special rules of Section 5.4, a Player will qualify for benefits in this category if a written application for T&P benefits or similar letter that began the administrative process that resulted in the award of T&P

CLOUD-AR-521

benefits was received within fifteen (15) years after the end of the Player's last Credited Season. This category does not require that the disability arise out of League football activities.

(d)  Inactive B.  All Players who are determined to be totally and permanently disabled in accordance with Section 5.2 but who do not qualify for categories (a), (b), or (c) above will be awarded benefits in this category. This category does not require that the disability arise out of League football activities.

(e)  "Shortly After" Defined.  A Player who becomes totally and permanently disabled no  later than six months after a disability(ies) first arises will be conclusively deemed to have become totally and permanently disabled "shortly after" the disability(ies) first arises, as that phrase is used in subsections (a) and (b) above, and a Player who becomes totally and permanently disabled more than twelve months after a disability(ies) first arises will be conclusively deemed not to have become totally and permanently disabled "shortly after" the disability(ies) first arises, as that phrase is used in subsections (a) and (b) above. In cases falling within this six- to twelve-month period, the Retirement Board or the Disability Initial Claims Committee will have the right and duty to determine whether the "shortly after" standard is satisfied.

Section 5.7(b) discusses Reclassification. "A Player who is awarded T&P benefits will be deemed to continue to be eligible only for the category of benefits for which he first qualifies, unless the Player shows by evidence found by the Retirement Board or the Disability Initial Claims Committee to be clear and convincing that, because of changed circumstances, the Player satisfies the conditions of eligibility for a benefit under a different category of T&P benefits. A Player's T&P benefit will not be reclassified or otherwise increased with respect to any month or other period of time that precedes by more than forty-two months the date the Retirement Board receives a written application or similar letter requesting such reclassification or increase that begins the administrative process that results in the award of the benefit. This forty-two month limitation period will be tolled for any period of time during which such Player is found by the Retirement Board or the Disability Initial Claims Committee to be physically or mentally incapacitated in a manner that substantially interferes with the filing of such claim.

Section 12.6(a) of the Plan sets forth the Plan's claims procedures. It provides, in pertinent part, that a Player "will have 180 days from the receipt of an adverse determination to file a written request for review of the initial decision to the Retirement Board."

CLOUD-AR-522

Section 13.3 of the Plan states as follows:

> Receipt of Documents.  Correspondence, applications, forms, elections, designations, and other documents of any type are deemed received by the Disability Board only if and when actually received by the Disability Board, and not when mailed or otherwise sent or transmitted to the Disability Board.  The common law "mailbox rule" is expressly rejected."

FedEx_Shipment_Detail_Payer_Detail 02.2016-03.2016

| Payer Account | Invoice Month (yyyymm) | OPCO | Service Type | Pay Type | Shipment Date | Shipment Delivery Date |
|---|---|---|---|---|---|---|
| FRCP 5.2 | 201603 | Express | SO | Bill_Sender_Prepaid | 3/2/2016 | 3/4/2016 |

CLOUD-AR-524

FedEx_Shipment_Detail_Payer_Detail 02.2016-03.2016

| Shipment Tracking Number | Shipper Name | Shipper Company Name | Shipper Address | Shipper City | Shipper State |
|---|---|---|---|---|---|
| 775782000000.00 | Disability Department | BELL ROZELLE PLYR PLAN | 200 SAINT PAUL ST | BALTIMORE | MD |

CLOUD-AR-525

FedEx_Shipment_Detail_Payer_Detail 02.2016-03.2016

| Shipper Postal Code | Shipper Country | Shipment Freight Charge Amount | Shipment Miscellaneous Charge | Shipment Duty and Tax Charge | Shipment Discount Amount | Net Charge Amount | Pieces in Shipment |
|---|---|---|---|---|---|---|---|
| 21202 | US | 33.09 | 8.08 | 0 | -12.24 | 28.93 | 1 |

CLOUD-AR-526

FedEx_Shipment_Detail_Payer_Detail 02.2016-03.2016

| Shipment Rated Weight | Original weight | Proof of delivery recipient | Recipient Name | Recipient Company Name | Recipient Address | Recipient City | Recipient State | Recipient Postal Code |
|---|---|---|---|---|---|---|---|---|
| 0 | 0 | M.CLOUC | Michael Cloud | | 120 Mont Blanc Drive | ROCKWALL | TX | 75032 |

CLOUD-AR-527

FedEx_Shipment_Detail_Payer_Detail 02.2016-03.2016

| Recipient Country | Reference Notes Line 1 | Reference Notes Line 2 | Reference Notes Line 3 | Department Number | PO Number | Pricing Zone | Invoice date (mm/dd/yyy) | Invoice number | Master Tracking Number |
|---|---|---|---|---|---|---|---|---|---|
| US | BB/PR | | | | | 6 | 3/8/2016 | 534478980 | null |

CLOUD-AR-528

FedEx_Shipment_Detail_Payer_Detail 02.2016-03.2016

| Dom_Intl | Package Type | Shipment Delivery Time |
|----------|--------------|------------------------|
| Domestic | Fedex Letter | 14:07 |

CLOUD-AR-529