## IN THE UNITED STATES DISTRICT COURT
### FOR THE NORTHERN DISTRICT OF TEXAS, DALLAS DIVISION

| | | |
|---|---|---|
| **MICHAEL CLOUD** | § | |
| | § | |
| **Plaintiff** | § | |
| | § | |
| **v.** | § | **CIVIL ACTION NO. 3:20-CV-01277-E** |
| | § | |
| **THE BERT BELL/PETE ROZELLE** | § | |
| **NFL PLAYER RETIREMENT PLAN** | § | |
| | § | |
| **Defendant** | § | |

---

### PLAINTFF'S RESPONSE TO DEFENDANT'S MOTION FOR PROTECTIVE ORDER PRECLUDING DEPOSITIONS OF THE DISABILITY INITIAL CLAIMS COMMITTEE MEMBERS AND INCORPORATED BRIEF IN SUPPORT THEREOF

---

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ 3

I.      INTRODUCTION AND NATURE OF THE ACTION ................................. 5

II.     FACTUAL ALLEGATIONS ................................................................ 6

III.    CLAIMS ASSERTED BY PLAINTIFF ....................................................... 14

IV.     LEGAL STANDARD ............................................................................ 15

VI.     DISCUSSION AND ARGUMENT ............................................................. 16

   A.    Cloud is permitted discovery under Fifth Circuit precedent and, thus, the Defendant must not be permitted to continue to hide the ball. ........................... 16

   B.    This Honorable Court should award Cloud his reasonable expenses incurred in opposing the motion, including attorney's fees. ............................................. 22

   C.    Conclusion ................................................................................................ 24

V.      PRAYER ........................................................................................... 25

CERTIFICATE OF SERVICE ....................................................................... 26

APPENDIX ................................................................................................... 27

## <u>TABLE OF AUTHORITIES</u>

<u>Cases</u>

*Bruce v. Anthem Ins. Cos.*, 307 F.R.D. 465 (N.D. Tex. 2015) ..................................................... 18

*Crosby v. Blue Cross/Blue Shield of La.*, No. 08-693, 2012 U.S. Dist. LEXIS 161936 (E.D. La.

    2012) ............................................................................................................................................ 20

*Crosby v. Louisiana Health Service & Indemnity Co.*, 647 F.3d 258 (5th Cir. 2011)

    ...................................................................................................... 16, 17, 18, 22, 23, 24

*Fielding v. Hubert Burda Media, Inc.*, 415 F.3d 419 (5th Cir. 2005) ......................................... 16

*Gooden v. Provident Life & Acc. Ins. Co.*, 250 F.3d 329 (5th Cir. 2001) ............................. 16, 20

*Katherine P. v. Humana Health Plan of Texas, Inc.*, 114 F. Supp. 3d 432 (W.D. Tex. 2015) ..... 20

*Metropolitan Life Ins. Co. v. Glenn*, 554 U.S. 105 (2008) ........................................................... 21

*Murphy v. Deloitte & Touche Group Ins. Plan*, 619 F.3d 1151 (10th Cir. 2010) ....................... 15

*O'Malley v. U.S. Fid. & Guar. Co.*, 776 F.2d 494 (5th Cir. 1985) ............................................... 16

*Paz v. Brush Engineered Materials, Inc.*, 555 F.3d 383 (5th Cir. 2009) ..................................... 16

*Pfifer v. Sedgwick Claims Management Services Inc.*, 414 F. Supp. 3d 1024 (S.D. Tex. 2019) . 20

*Schully v. Continental Cas. Co.*, 634 F. Supp. 2d 663 (E.D. La. 2009) ........................................ 21

*Schultz v. Metropolitan Life Ins. Co.,* 872 F.2d 676 (5th Cir. 1989) ........................................... 16

*Vega v. National Life Ins. Servs.*,  188 F.3d 287 (5th Cir. 1999) .............. 15, 16, 17, 18, 22, 23, 24

*White v. Cyprus Amax Minerals Co.*, Civil Action No. 04-1188, 2005 U.S. Dist. LEXIS 4846

    (E.D. La. Mar. 18, 2005) ........................................................................................................... 21

*Wiwa v. Royal Dutch Petroleum Co.*, 392 F.3d 812 (5th Cir. 2004) ........................................... 15

*Wyatt v. Kaplan*, 686 F.2d 276 (5th Cir. 1982) ........................................................................... 15

<u>Statutes</u>

29 C.F.R. § 2560.503 ..................................................................................................................... 20

29 U.S.C. §§ 1001 *et seq.*..................................................................................................... 6

29 U.S.C. § 1002 ................................................................................................................ 6

29 U.S.C. § 1132 .................................................................................................. 15, 16, 20

29 U.S.C. § 1133 ............................................................................................................. 15

**Rules**

Fed. R. Civ. P. 26................................................................................................................ 15

Fed. R. Civ. P. 30................................................................................................................ 23

Fed. R. Civ. P. 37.................................................................................................. 22, 23, 24, 25

**Articles**

https://www.brightscope.com/form-5500/basic-info/1003663/Retirement-Board-Of-Bert-
Bellpete-Rozelle-Nfl-Player-Retirement-Plan/13928619/Bert-Bellpete-Rozelle-Nfl-Player-
Retirement-Plan/2019/...................................................................................................................22

NOW COMES Plaintiff, Michael Cloud (hereinafter "Plaintiff" or "Cloud"), and files his *Plaintiff's Response to Defendant's Motion for Protective Order Precluding Depositions of the Disability Initial Claims Committee Members and Incorporated Brief in Support Thereof* and respectfully shows this Honorable Court as follows:

## I.  INTRODUCTION AND NATURE OF THE ACTION

1.      The National Football League ("NFL") is a highly profitable league governing professional football in the United States that garners the attention of millions of fans and viewers each week during the NFL season.  For many years, the ill effects of playing professional football were not known by the athletes who gave their bodies, minds, and mental health to professional football.  In 2002, during the study of former Pittsburgh Steeler Mike Webster's brain, Dr. Bennet Omalu discovered a condition of the brain he termed chronic traumatic encephalopathy ("CTE"). CTE has been determined to occur as a result of repeated blows to the head and has been commonly linked to athletes competing in professional football.  Dr. Omalu's research on CTE was published for the first time in 2005.  A 2019 study led by Boston University researchers that was published in the *Annals of Neurology* studied the brains of 266 deceased football players and found that 223 had CTE.

2.      In 2012, more than eighty (80) former NFL players filed various lawsuits against the NFL seeking damages for injuries as a result of concussion-related symptoms.  The litigation ultimately merged into multi-district litigation involving claims of thousands of former NFL players.  In 2015, a settlement was approved that covered six "Qualifying Diagnos[es]". The conditions that constitute a "Qualifying Diagnosis" under the terms of the settlement agreement are: (1) Level 1.5 Neurocognitive Impairment (as defined by the settlement terms), (2) Level 3 Neurocognitive Impairment (as defined by the settlement terms), (3) Alzheimer's Disease, (4) Death with

documented CTE prior to April 22, 2015, (5) Parkinson's Disease, and (6) Amyotrophic Lateral Sclerosis ("ALS").

3.      Due to the limitations of the NFL concussion settlement, many former NFL players turned to Defendant to determine whether players qualified for benefits under the terms of the Bert Bell/Pete Rozelle NFL Player Retirement Plan ("Defendant" or "Retirement Plan" or "Plan"). The Retirement Plan is a retirement, disability, and related benefits plan accessible by eligible former professional football players and is an employee pension benefit plan within the mean of 29 U.S.C. § 1002(2) covered under the Employee Retirement Income Security Act of 1974 ("ERISA").

4.      Plaintiff is a former NFL football player who brings this action under ERISA, 29 U.S.C. §§ 1001 *et seq.*, against the Retirement Plan to recover benefits due to him under the terms of the Retirement Plan, to enforce his rights under the terms of the Retirement Plan, to clarify his rights under the terms of the Retirement Plan, and to enjoin and obtain appropriate equitable relief pertaining to acts that violate ERISA and/or the terms of the Retirement Plan.  The Retirement Plan violated the terms of the plan by failing to reclassify and award Plaintiff "Active Football" benefits under the terms of the Retirement Plan.

## II.      FACTUAL ALLEGATIONS

5.      Plaintiff grew up in Portsmouth, Rhode Island and quickly exceled as an athlete.  He attended Portsmouth High School in Portsmouth, Rhode Island where he earned All-American honors as a running back and was recruited by virtually every major college and university to participate as a member of its football team.  Plaintiff selected Boston College as his college of choice and went on to have a stellar career.  At Boston College, as a senior, Plaintiff was named first team All-American and finalist for the Doak Walker Award, an award given to the nation's top running back.  Plaintiff left Boston College with a bachelor's degree in Socioeconomics.

6.      In 1999, Plaintiff was selected by the Kansas City Chiefs in the second (2nd) round of the 1999 NFL Draft with the fifty-fourth (54th) overall selection.  Plaintiff had a seven (7) year career as a running back, kick returner, and special teams player in the NFL playing for three (3) teams, Kansas City Chiefs (1999-2002), New England Patriots (2003, 2005), and the New York Giants (2004-2005).  While playing for the New England Patriots, in 2004, Plaintiff helped the New England Patriots win Super Bowl XXXVIII.  On November 29, 2005, Plaintiff was released by the New England Patriots.

7.      Shortly after retirement, in 2006, Plaintiff requested necessary documents and information from the advisors of the Retirement Plan necessary to seek disability benefits, but did not receive copies of all requested policies and received only partial documentation showing a ten (10) page "Medical Summary" of most of Plaintiff's orthopedic injuries.  However, the documents provided did not include any documentation of concussions or corresponding medical documentation of orthopedic and neurological injuries.  During Plaintiff's NFL career, he sustained multiple injuries including several concussions, injuries to his back and neck, and had three surgeries including bone grafting and cyst debridement of his left foot first metatarsal, right great toe cyst removal, and right leg fasciotomy with debridement of a necrotic peroneus longus. The muscle necrosis of his peroneus longus required an emergency surgical procedure to save Plaintiff's life, which is evidenced by the following:



8.      Plaintiff has a long history attempting to navigate the complex web of the Retirement Plan in seeking disability benefits.  On October 31, 2004, while playing for the New York Giants, Plaintiff sustained a concussion that caused him great pain and concern.  Despite a concussion, Plaintiff was cleared to practice and compete only forty-eight (48) hours after the concussion. Shortly thereafter, Plaintiff could not remember basic plays, football schemes, or his duties in such plays and schemes. Many of the plays Plaintiff was asked to perform, he learned in high school, but had no ability to recall his responsibilities or the requirements of plays.  Ultimately, as a result of his failure to perform the basic duties of an NFL running back, Plaintiff was released by the New York Giants prior to the first game of the season.  In 2005, Plaintiff was signed by the New England Patriots for a short period of time.  Plaintiff was, again, unable to recall plays and perform the functions and duties of his job as an NFL running back. During Plaintiff's approximately three

(3) weeks with the New England Patriots, the New England Patriots administered a neurological exam on Plaintiff known ImPACT designed by Grant Iverson and the NFL MTBI committee. Shortly after taking the exam, Plaintiff was released by the New England Patriots. To this day, Plaintiff still does not have a copy of these neurological exam results despite multiple requests. Plaintiff has had extreme difficulty obtaining requested medical information.

9.      Shortly thereafter, in addition to memory loss and the inability to perform the functions and duties of his job, Plaintiff started experiencing headaches, vertigo, getting lost, forgetting names and places, and other cognitive issues. Accordingly, on June 11, 2009, Plaintiff filed his *Application for Disability Benefits* asserting disabling injuries including injuries to his left shoulder, right hip, right mid-foot, right leg compartment numbness and loss of sensation, left rib, and "concussions – vertigo regularly". On or about July 6, 2009, Plaintiff met with Dr. Michael J. Einbund, an NFL approved doctor, who evaluated Plaintiff only as to the orthopedic aspects of his application. On July 9, 2009, Retirement Plan tabled Plaintiff's request for line-of-duty benefits until Plaintiff submitted for evaluation by "neutral physicians" who are approved by the NFL. On September 25, 2009, Retirement Plan denied Plaintiff's request for line-of-duty benefits by stating he "does not have a 'substantial disablement' within the meaning of the Retirement Plan," but only analyzed Plaintiff's upper extremities (15% impairment) and lower extremities (35% impairment) for total body impairment of twenty-four percent (24%). There was no analysis of Plaintiff's "concussions – vertigo regularly" as addressed on his *Application for Disability Benefits*. On February 2, 2010, Plaintiff appealed the denial of his request for line-of-duty disability benefits. On May 18, 2010, Retirement Plan granted Plaintiff's appeal and granted his line-of-duty disability benefits in the amount of $3,290.00 per month effective May 1, 2010.

10.     On or about April 13, 2010, Plaintiff met with Dr. George H. Canizares of All Florida Orthopedic Associates, another NFL doctor, and reported that he experienced "depression, migraine headaches, insomnia, … [and] some concussions."  On the same day, April 13, 2010, Plaintiff also met with Dr. Adam S. DiDio where he described a "history of concussions" and vertigo that makes it feel like his "bed spins".  Plaintiff further explained that "[i]n the last 6 or 7 years[,] [headaches] have become more frequent and more intense." In addition to intense headaches, Plaintiff described "some cognitive difficulties", including forgetting names of people he has known for years, often getting lost, having difficulty paying bills, and depression.  Similarly, on October 19, 2010, Plaintiff filed *Employee's Claim Petition* in Minnesota against New York Giants as a result of a "Grade 1 concussion leading to vertigo, dizziness, headaches, and altered attention span."  The Grade 1 concussion mentioned in the Employee's *Claim Petition* is the concussion referenced above that occurred on October 31, 2004 in a game between the New York Giants and the Minnesota Vikings.

11.     On or about June 12, 2011, Plaintiff submitted to medical treatment performed by Primary Behavioral Health Clinics where Plaintiff reported that he experienced neck, lower back, foot, and lower leg pain.  Additionally, such records indicated Plaintiff has "extreme trouble remembering things, is worried and easily annoyed or irritated, has difficulty making decisions, goes blank often and has trouble concentrating."  Harry Cates, a licensed professional counselor working for Lifework's Group, PA, performed a mental residual capacity assessment on Plaintiff evaluating him from October 10, 2011 to December 21, 2011 and stated Plaintiff was struggling with depressive symptoms, poor concentration and bouts of unpredictable irritability that were "no doubt" related to his physical injuries and concussions sustained while competing in the NFL.

Further, Mr. Cates reported that Plaintiff had increased difficulty in coping due to social anxiety and self-consciousness from ongoing changes in his cognitive function.

12.     On January 22, 2013, Dr. Anne Smith of Smith Behavioral Health concluded Plaintiff experienced "major depressive disorder, recurrent, severe without psychotic features."  On April 8, 2013, Dr. Don Marler performed a mental residual functional capacity assessment and concluded that Plaintiff's understanding and memory limitations as markedly limited in the ability to understand and remember detailed instructions and the ability to carry out detailed instructions. On May 13, 2014, Mr. Cates again met with and analyzed Plaintiff's cognitive function.  Mr. Cates concluded that Plaintiff was limited in his ability to maintain attention and concentration for extended periods and was further concluded that Plaintiff was limited in his ability, amongst others, to remember location and work procedures, understand, remember, and carry out instructions and perform activities on schedule.  Accordingly, on June 18, 2014, Daniel Curran, Administrative Law Judge for the Social Security Administration, found Plaintiff to be totally and permanently disabled.

13.     The total and permanent disability benefits ("T&P Benefits") program administered under the Retirement Plan is complex and has multiple categories.  The categories under the Retirement Plan at issue are:

> Active Football: Subject to the special rules of Section 5.4, Players will qualify for benefits in this category if the disability(ies) results from League football activities, arises while the Player is an Active Player, and causes the Player to be totally and permanently disabled "shortly after" the disability(ies) first arises.

> Inactive A: Subject to the special rules of Section 5.4, a Player will qualify for benefits in this category if a written application for T&P benefits or similar letter than began the administrative process that resulted in the award of T&P benefits was received within fifteen (15) years after the end of the Player's last Credited Season.  This category does not require that the disability arise out of League football activities.

The Retirement Plan also defines "shortly after" and states, in pertinent part, as follows:

> "Shortly After" Defined.  A Player who becomes totally and permanently disable no later than six months after a disability(ies) first arises will be conclusively deemed to have become totally and permanently disability "shortly after" the disability(ies) first arises, as that phrase is used in subsections (a) and (b) above, and a Player who becomes totally and permanently disabled more than twelve months after a disability(ies) first arises will be conclusively deemed not to have become totally and permanently disabled "shortly after" the disability(ies) first arises, as that phrase is used in subsections (a) and (b) above.  In cases failing within this six- to twelve-month period, the Retirement Board or the Disability Initial Claims Committee will have the right and duty to determine whether "shortly after" standard is satisfied.

14.    On July 23, 2014, the Retirement Plan granted Plaintiff T&P Benefits under the Inactive A designation with an effective benefits date of May 1, 2014.  The Retirement Board chose to grant Inactive A T&P Benefits instead of the proper benefits under Active Football T&P Benefits.  As a result, on February 17, 2016, Plaintiff filed his request for reclassification of his Inactive A T&P Benefits to Active Football T&P Benefits to which his request was summarily denied on March 2, 2016.  Subsequently, Plaintiff filed his appeal of denial of his request for reclassification of Inactive A T&P Benefits to Active Football T&P Benefits.  Again, on November 23, 2016, Retirement Plan denied Plaintiff's request.

15.    The appeal of the reclassification decision is the final step in the administrative process and, thus, Plaintiff's ERISA claim is ripe for consideration.  Specifically, Retirement Plan's correspondence dated November 23, 2016 states "[y]ou have the right to bring an action under Section 501(a) of the Employment Retirement Income Security Act of 1974, as amended, within 42 months from the date of this letter, which is May 16, 2020."

16.    Plaintiff satisfies each element necessary to obtain Active Football T&P Benefits. Specifically, Plaintiff was disabled as a result of playing in the NFL, arose while he was an active player competing in the NFL, and Plaintiff was totally and permanently disabled "shortly after"

the disability occurred.  In addition to the numerous other medical professionals referenced above, Dr. John Cronin conducted a head trauma evaluation resulting from a helmet to helmet concussion that occurred on October 31, 2004.  Dr. Cronin reported that Plaintiff "sustained at least one, if not several, closed head injuries" that caused him to be "unable to complete basic plays and assignments" while participating as an NFL player in late 2004 and 2005.  Dr. Cronin concluded that Plaintiff has experienced the following cognitive problems "since his injury in 2004": 1) "[m]emory impairment as identified by  a reduced ability to learn or recall information"; 2) "[d]isturbance in executive functioning (i.e., planning, organizing, sequencing, abstracting)"; 3) "[d]isturbance in attention or speed of information processing"; 4) "[i]mpairment in perceptual-motor abilities"; and 5) "[i]mpairment in language (e.g., comprehension, word finding)".

17.    Plaintiff has had to scratch and claw to obtain his medical records from the Retirement Plan, NFL, doctors approved by the NFL, and NFL member teams.  When he first sought to file for disability benefits in 2006, Plaintiff did not have a copy of the plan and was not provided copies of his medical records.  Plaintiff made requests for his full medical file in 2006, 2007, 2008, 2009, 2010, 2012, 2013, 2014, 2015, 2016, 2017, 2018, and 2019.  On or about January 18, 2019, some thirteen (13) years after the initial request, Plaintiff was provided with an 860 page medical file by the Retirement Plan, but the documentation provided still lacked the neurological reports including reports from the NFL MTBI committee and the results of the ImPACT neurological exam administered by the New England Patriots.  As is clear, all of the evidence indicates that Plaintiff has cognitive impairments as a result of a concussion (and a series of previous concussions) that materially affected Plaintiff's life and have caused, amongst other things, memory loss, headaches, vertigo, irritability, depression, and loss of focus.  Additionally, Plaintiff suffers from a series of orthopedic injuries as described above.    Plaintiff suffers from debilitating orthopedic and

neurological injuries stemming from repetitive high velocity impacts to the body and brain sustained while serving as an active player in the NFL.  Other than a few private training sessions on an infrequent basis, Plaintiff has not been employed since he retired from participating in the NFL.

18.     Retirement Plan's denial of Plaintiff's relief was arbitrary and capricious.  Retirement Plan does not have unfettered discretion to deny requests for benefits that are supported by evidence. Retirement Plan's decisions must be supported by substantial evidence that is relevant and reasonable to support its conclusion.  Clearly, the Retirement Plan has ignored relevant evidence supporting the award of the Active Football T&P Benefits.

19.     The decisions of the Retirement Plan are erroneous under any standard, and was an abuse of discretion to the extent the plan documents granted such discretion as confirmed by the mountain of evidence described above.   In addition to the information set forth above, the Retirement Plan's decisions are erroneous for the following reasons, among others, 1) Plaintiff meets the requirements for Active Football T&P Benefits; 2) Retirement Plan's decision relating to Plaintiff's request for Active Football T&P Benefits are not consistent with the plan documents; 3) Retirement Plan's decision is contrary to the purposes and goals of the Retirement Plan , which were designed to provide appropriate disability benefits to retired players who were disabled as a result of competing for NFL member teams in NFL competition; and 4) Retirement Plan refused to consider unanimous medical evidence showing Plaintiff was totally and permanently disabled "shortly after" a concussion that occurred on October 31, 2004.

### III.     CLAIMS ASSERTED BY PLAINTIFF

20.     Plaintiff asserts violations of ERISA under 29 U.S.C. § 1132(a)(1)(B), (a)(3) based on the Retirement Plan wrongfully denying Plaintiff the benefits due to him in accordance with the plan

documents including the Active Football T&P Benefit. Plaintiff was totally and permanently disabled "shortly after" a concussion that occurred on October 31, 2004. *See Dkt. 1 at ¶¶ 26-29.*

21.     Plaintiff asserts violations of ERISA under 29 U.S.C. § 1133(2) based on the Retirement Plan's failure to provide Plaintiff's medical documentation to Plaintiff despite requests that began in 2006. In January 2019, for the first time, Plaintiff was presented with 860 pages of medical records, but is still missing numerous reports and information. Plaintiff was never granted the opportunity to present a full and complete case for Active Football T&P Benefits due to the Retirement Plan withholding relevant documentation and evidence. *See Dkt. 1 at ¶¶ 30-33.*

## IV.   <u>LEGAL STANDARD</u>

22.     The scope of discovery is broad and permits the discovery of "any nonprivileged matter that is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1); *see Wyatt v. Kaplan*, 686 F.2d 276, 283 (5th Cir. 1982). A discovery request is relevant when the request seeks admissible evidence or "is reasonably calculated to lead to the discovery of admissible evidence." *Wiwa v. Royal Dutch Petroleum Co*., 392 F.3d 812, 820 (5th Cir. 2004) (citation and internal marks omitted); *Murphy v. Deloitte & Touche Group Ins. Plan*, 619 F.3d 1151, 1157, 1162 (10th Cir. 2010) (applying Rule 26(b)(1) discovery rules in an ERISA action). In *Vega v. National Life Insurance Services*, the U.S. Court of Appeals for the Fifth Circuit ("<u>5th Circuit</u>") permitted review of evidence in the administrative record, review of how the administrator has interpreted the plan in the past, and review of information that would assist the court in understanding medical terms and procedures. *Vega v. National Life Ins. Servs.*, 188 F.3d 287, 299-300 (5th Cir. 1999). In *Crosby v. Louisiana Health Service & Indemnity Co*., the 5th Circuit further explained that discovery is permitted in ERISA cases. *Crosby v. Louisiana Health Service & Indemnity Co*., 647 F.3d 258, 263 (5th Cir. 2011). *Crosby* states, in pertinent, as follows:

*Vega* does not, however, prohibit the admission of evidence to resolve other questions that may be raised in an ERISA action. For example, in an ERISA action under 29 U.S.C. § 1132(a)(1)(B), a claimant may question the completeness of the administrative record; whether the plan administrator complied with ERISA's procedural regulations; and the existence and extent of a conflict of interest created by a plan administrator's dual role in making benefits determinations and funding the plan. These issues are distinct from the question of whether coverage should have been afforded under the plan. We see no reason to limit the admissibility of evidence on these matters to that contained in the administrative record, in part, because we can envision situations where evidence resolving these disputes may not be contained in the administrative record. **A discovery request for such information may be relevant and thus permissible under federal discovery rules**.

*Id.* (internal citations omitted) (emphasis added)*; see also Gooden v. Provident Life & Accident Ins. Co.,* 250 F.3d 329, 333 (5th Cir. 2001); *Schultz v. Metropolitan Life Ins. Co.,* 872 F.2d 676, 680 (5th Cir. 1989) (approving the district court's use of affidavit evidence offered to show inconsistent treatment of other similar claims by the plan administrator).  A court's decision to limit discovery is reviewed for abuse of discretion. *Fielding v. Hubert Burda Media, Inc*., 415 F.3d 419, 428 (5th Cir. 2005). Although a court is afforded broad discretion when deciding discovery matters, the court abuses its discretion when its decision is based on an erroneous view of the law. *See Paz v. Brush Engineered Materials, Inc*., 555 F.3d 383, 387 (5th Cir. 2009); *O'Malley v. U.S. Fid. & Guar. Co*., 776 F.2d 494, 499 (5th Cir. 1985).

## VI.   DISCUSSION AND ARGUMENT

### A.  Cloud is permitted discovery under Fifth Circuit precedent and, thus, the Defendant must not be permitted to continue to hide the ball.

23.    Defendant fundamentally misconstrues Cloud's position, the standards as set forth in the 5th Circuit, and the matters in dispute.  The issues presented in this case are hotly disputed. Defendant has consistently argued that Cloud should "trust" Defendant and there is "no valid reason to doubt the veracity of Defendant's or counsel's representations."  *See Dkt. 30* at p. 15. These assertions and representations do not hold water.  Cloud's case is based in large part on

Defendant's refusal to turnover his medical records, failure to consider important medical records, and Defendant's refusal to provide the proper benefits.  In fact, it took thirteen (13) years for Defendant, through the Groom Law Firm, to finally provide Cloud with some of his records, which consisted of 860 pages of records despite the administrative record presented here having only 529 pages.[1]  Defendant has made a sport of manipulating and denying discovery in ERISA cases. Defendant is using its standard bag of tricks.  The 5th Circuit permits discovery in the following circumstances, among others: evidence in the administrative record, interpretation of the plan in the past, assistance of the court in understanding medical terms and procedures, the completeness of the administrative record, whether the plan administrator complied with ERISA's procedural regulations, and the existence and extent of a conflict of interest created by a plan administrator's dual role in making benefits determinations and funding the plan. *Crosby v. Louisiana Health Service & Indemnity Co*., 647 F.3d 258, 263 (5th Cir. 2011); *Vega v. National Life Ins. Servs.*, 188 F.3d 287, 299-300 (5th Cir. 1999).  At a minimum, Cloud must be permitted to explore these topics with Chris Smith and Patrick Reynolds, members of the Plan's Claims Committee.  Accordingly, Cloud requests that this Honorable Court deny *Defendant's Motion for Protective Order Precluding Depositions of the Disability Initial Claims Committee Members and Incorporated Brief in Support Thereof* [Dkt. 30].

24.     On June 11, 2021, Cloud sent an email to Defendant's counsel, Michael Junk, requesting to depose Mr. Reynolds and Ms. Smith.  *Pl. Appx. Ex. 1.*  Mr. Junk responded "[w]e will not present Mr. Reynolds or Ms. Smith for deposition…."[2]  *Pl. Appx. Ex. 2.*  Understanding that Mr.

---

[1] Cloud incorporates paragraphs 24-57 as set forth in *Plaintiff's Reply in Support of Motion to Supplement the Administrative Record* [Dkt. 32] as such paragraphs further explain the attempts by Defendant to manipulate the record and limit Cloud's access to and use of information in this case.

[2] Counsel for Cloud interpreted Mr. Junk's comments to mean that he did not represent Ms. Smith or Mr. Reynolds and, thus, would not be presenting them for deposition.

Junk did not represent Mr. Reynolds or Ms. Smith, on June 22, 2021, Cloud moved forward and filed a *Notice of Subpoenaed Deposition of Chris Smith* [Dkt. 25] and *Notice of Subpoenaed Deposition of Patrick Reynolds* [Dkt. 26].[3]  On June 24, 2021, Mr. Junk demanded to know the basis for Cloud's argument that Cloud should be entitled to depose Ms. Smith and Mr. Reynolds to which Cloud's counsel quickly responded.  Cloud's counsel directed Mr. Junk to *Crosby* and *Vega* as authority to seek discovery to obtain evidence of the following: 1) "[e]vidence in the administrative record;" 2) "[e]vidence that relates to how the administrator has interpreted the plan in the past;" 3) "[e]vidence that would assist the court in understanding medical terms and procedures; 4) "[e]vidence regarding the completeness of the administrative record; 5) "[e]vidence of whether the administrator complied with ERISA's procedural regulations;" and 6) "[e]vidence and the existence and extent of a conflict of interest created by an administrator's dual role in making benefits determinations and funding the plan."  *Pl. Appx. Ex. 3.*  Despite Defendant's assertions that counsel for Cloud was playing coy on the need for depositions, Cloud provided the legal basis and areas to be explored with the potential witnesses.  *Dkt. 30* at p. 12; *Pl. Appx. Ex. 3.*

25.     *Defendant's Motion for Protective Order Precluding Depositions of the Disability Initial Claims Committee Members and Incorporated Brief in Support Thereof* [Dkt. 30] is filled with hyperbole hoping to paint a nefarious position taken by Cloud relating to discovery.  In fact, Defendant stated that Cloud attempted a "bait-and-switch" and moved forward with an "indefensible position…used…as a bargaining chip."  *Dkt. 30 at p. 16.*  Nothing could be further from the truth.  In an effort to compromise and avoid this dispute, counsel for Cloud asked whether Defendant "would be willing to produce a Rule 30(b)(6) witness for deposition" and, further, stated "[w]e are happy to work this out, but just telling me 'no' and threatening me with sanctions isn't

---

[3] After Mr. Junk threatened to seek a protective order and to sanction Cloud, Cloud did not move forward with serving subpoenas on Ms. Smith and Mr. Reynolds.

going to help things." *Pl. Appx. Ex. 3.* The last thing Cloud wanted was to have this issue decided by this Honorable Court wasting everyone's time and money. As clearly stated in *Defendant's Motion for Protective Order Precluding Depositions of the Disability Initial Claims Committee Members and Incorporated Brief in Support Thereof* [Dkt. 30], Cloud's attempt to compromise with a Rule 30(b)(6) deponent was met with staunch opposition. *Dkt. 30 at pp. 13-16.* Cloud is willing to conduct all of the depositions referenced herein via Zoom rather than requiring party witnesses to travel to the forum.

26.     To make matters worse and more difficult, Defendant intends to rely on the *Declaration of Hessam ("Sam") Vincent* in support of *Defendant's Motion for Protective Order Precluding Depositions of the Disability Initial Claims Committee Members and Incorporated Brief in Support Thereof* [Dkt. 30] and *Response in Opposition to Plaintiff's Motion to Supplement the Administrative Record* [Dkt. 28]. *Dkt. 28 at Def. Appx. 2*; *Dkt. 30 at p. 14.* Cloud approached counsel for Defendant about deposing Mr. Vincent in light of Mr. Vincent's declaration testimony that has been offered on hotly disputed matters in this case. *Pl. Appx. Ex. 4.* Mr. Junk responded "I will not consider a deposition of Mr. Vincent until the Court rules on your motion and/or my motion for protective order. I don't think you have any good faith basis for seeking additional discovery, of any kind, in this case." *Id.* Defendant has hijacked this case and is refusing to permit Cloud to conduct further discovery, but at the same time sent additional written discovery requests to Cloud on July 1, 2021 (the very same day Defendant refused Cloud's discovery attempts). *Id.* Defendant is attempting to ambush Cloud with Mr. Vincent's declaration testimony despite failing to list any individual with knowledge of relevant facts in *Defendant's Rule 26(a)(1) Initial Disclosure* (there has been no supplementation of the same). *See Pl. Appx. Ex. 5.* Cloud must be

permitted to conduct discovery on disputed topics and depose witnesses, including Ms. Smith, Mr.

Reynolds, and Mr. Vincent, to address issues that are expressly permitted by 5th Circuit precedent.

27.     Cloud has the right to supplement the administrative record and conduct discovery to

determine whether, among other things, the administrative record was complete, whether the

insurer complied with ERISA procedural requirements, and whether that Plan had previously

afforded coverage for claims. *Bruce v. Anthem Ins. Cos.*, 307 F.R.D. 465, 467 (N.D. Tex. 2015);

citing *Crosby v. Blue Cross/Blue Shield of La.*, No. 08-693, 2012 U.S. Dist. LEXIS 161936 at *13

(E.D. La. 2012). ERISA does not limit the "administrative record" to documents. ERISA requires

the Plan to provide Cloud with all "information" relevant to his claim. 29 C.F.R. § 2560.503-

1(h)(2)(iii). Cloud must be permitted to discover information necessary to supplement the

administrative record that is relevant to these proceedings. *See* 29 U.S.C.A. § 1132(a)(1)(B); *see*

*also Gooden v. Provident Life & Acc. Ins. Co.*, 250 F.3d 329, 333-34 (5th Cir. 2001)(recognizing

a court may consider evidence outside the administrative record relating to how an administrator

has interpreted terms of the plan in other instances, as well as evidence that will assist the court in

understanding the medical terminology or practice related to a claim); *Pfifer v. Sedgwick Claims*

*Management Services Inc*., 414 F. Supp. 3d 1024, 1032-33 (S.D. Tex. 2019)(stating the court's

review is not confined to the administrative record when determining whether an ERISA

administrator abused his discretion in interpreting the plan's terms and making a benefit

determination.); *Katherine P. v. Humana Health Plan of Texas, Inc.*, 114 F. Supp. 3d 432, 433

(W.D. Tex. 2015)(concluding evidence outside record may be admissible, and thus discoverable,

in an ERISA case involving denial of benefits if it is relevant to questions regarding the

completeness of the administrative record, whether the plan administrator complied with ERISA's

procedural regulations, and the existence and extent of a conflict of interest created by the plan

administrator's dual role in making benefits determinations and funding the plan.); *Schully v. Continental Cas. Co*., 634 F. Supp. 2d 663, 680 (E.D. La. 2009)(stating the administrative law judge found that claimant was disabled and eligible to recover social security disability benefits, but the administrator failed to consider such decision despite a fair opportunity to do so); *White v. Cyprus Amax Minerals Co.*, Civil Action No. 04-1188, 2005 U.S. Dist. LEXIS 4846 (E.D. La. Mar. 18, 2005)(recognizing the court may consider other evidence related to how an administrator has interpreted terms of the plan in other instances and evidence, including expert opinion, that assists the Court in understanding the medical terminology or practice related to a claim).

28.     Clearly, cases in the 5th Circuit have permitted review of evidence outside of the administrative record and permitted the plaintiff to conduct discovery on multiple issues. Additionally, it is important to note, a single entity is ultimately responsible for funding the plan benefits and processing claims (*i.e.,* the Plan). The United States Supreme Court recognized in *Metropolitan Life Ins. Co. v. Glenn* that a reviewing court should consider inherent conflicts of interest as a factor in determining whether the plan administrator has abused its discretion in denying benefits. *Metropolitan Life Ins. Co. v. Glenn*, 554 U.S. 105, 115-18 (2008). At a minimum, the United States Supreme Court's ruling in *Glenn* makes evidence related to a conflict of interest highly relevant to the review of a denial of benefits. *Id.* To account for *Glenn*, the Plan must implement internal controls and procedures reasonably designed to ensure accuracy and mitigate inherent conflicts of interest. Cloud must be permitted to discovery this information through deposition testimony of the above-referenced individuals.  Defendant is fighting and clawing to protect itself from the truth being addressed in this case.  Defendant should not be permitted to hide any longer.

**B.    This Honorable Court should award Cloud his reasonable expenses incurred in opposing the motion, including attorney's fees.**

29.    Defendant would have this Honorable Court believe that Cloud is on a "fishing expedition" to take "one deposition, or he could take 100 depositions." *Dkt. 30 at pp. 15-16.*  Cloud is a man with limited resources, is considered fully disabled by the Social Security Administration, and has head and other injuries stemming from his time competing in the NFL.  On the other hand, according to the Plan's 2019 Form 5500 data, the Plan had assets of $2,397,636,581.00 and paid the Groom Law Firm $4,668,195.00.[4]  It is utterly ridiculous that Defendant attempts to make an argument that Cloud is attempting to bully the multi-billion-dollar Defendant with unyielding discovery requests.  Cloud provided Defendant with the legal basis – citing to *Crosby* and *Vega* – and the express issues to be addressed with Ms. Smith and Mr. Reynolds, which are: 1) "[e]vidence in the administrative record;" 2) "[e]vidence that relates to how the administrator has interpreted the plan in the past;" 3) "[e]vidence that would assist the court in understanding medical terms and procedures; 4) "[e]vidence regarding the completeness of the administrative record; 5) "[e]vidence of whether the administrator complied with ERISA's procedural regulations;" and 6) "[e]vidence and the existence and extent of a conflict of interest created by an administrator's dual role in making benefits determinations and funding the plan." *Pl. Appx. Ex. 3.*  Defendant is not entitled to costs and attorneys' fees.  Plaintiff, on the other hand, is entitled to "reasonable expenses" incurred in opposing *Defendant's Motion for Protective Order Precluding Depositions of the Disability Initial Claims Committee Members and Incorporated Brief in Support Thereof* [Dkt. 30] including Cloud's attorney's fees in accordance with Rule 37(a)(5)(B) of the Federal Rules of Civil Procedure.

---

[4] *See* https://www.brightscope.com/form-5500/basic-info/1003663/Retirement-Board-Of-Bert-Bellpete-Rozelle-Nfl-Player-Retirement-Plan/13928619/Bert-Bellpete-Rozelle-Nfl-Player-Retirement-Plan/2019/.

30.     As noted and addressed in greater detail above, Cloud bent over backwards attempting to resolve this issue with Defendant and even offered to conduct Ms. Smith's deposition and Mr. Reynolds' deposition via Zoom to eliminate unnecessary travel costs. *Dkt. 25*; *Dkt. 26.*  Defendant objected to depositions in-person or via Zoom, thus Cloud offered to depose a Rule 30(b)(6) witness also via Zoom. *Pl. Appx. Ex. 3.*  Again, Defendant declined. *Pl. Appx. Ex. 3.*  Then, Defendant offered the declaration testimony of Mr. Vincent about disputed issues in this case. Cloud requested the opportunity to depose Mr. Vincent. *Pl. Appx. Ex. 4.*  Again, Defendant declined. *Pl. Appx. Ex. 4.*  Defendant is attempting to dictate every aspect of this matter and is selecting what Cloud is permitted to receive from Defendant.  Cloud's requests are supported by the law whereas Defendant's approach to this case (and, frankly, many others) is to hide the ball.

31.     Defendant failed to meet the requirements of Rule 37(a)(5)(A) of the Federal Rules of Civil Procedure.  First, Defendant made no attempts to resolve this dispute and simply told Cloud to pull down the subpoenas and threatened sanctions.  Such behavior does not comply with Rule 37(a)(5)(A)(i) of the Federal Rules of Civil Procedure.  Second, as stated in greater detail above, Cloud seeks discovery that is expressly approved by the 5th Circuit in *Vega* and *Crosby*, thus Cloud's requests to depose Ms. Smith and Mr. Reynolds are "substantially justified" as set forth in Rule 37(a)(5)(A)(ii) of the Federal Rules of Civil Procedure.  Third, it would be "unjust" for the multi-billion-dollar Defendant to be awarded "reasonable expenses" when Cloud requested deposition dates in advance, provided the basis for the depositions under case law and the topics to be discussed, and even attempted to resolve the dispute with a Rule 30(b)(6) witness.  Defendant is not entitled to recover "reasonable expenses" from Cloud.

32.     On the other hand, Cloud is entitled to recover "reasonable expenses" and, thus, this Honorable Court "must…require" Michael Junk, the Groom Law Firm, and Defendant to pay

Cloud's "reasonable expenses…including attorney's fees" as set forth in Rule 37(a)(5)(B) of the Federal Rules of Civil Procedure.  As set forth above, Defendant is not "substantially justified" in its actions and it would not be "unjust" to award "reasonable expenses" to Cloud.  Despite providing Defendant with case law supporting the grounds to depose witnesses, Defendant flatly refused any discovery and said there is no "good faith basis for seeking additional discovery, of any kind, in this case" despite seeking additional discovery from Cloud the very same day.  *Pl. Appx. Ex. 4.*  Defendant is purposely and maliciously seeking to hide relevant information from Cloud despite 5th Circuit case law supporting Cloud's position. This case is the poster child for awarding "reasonable expenses" to Cloud in accordance with Rule 37(a)(5)(B) of the Federal Rules of Civil Procedure.   This Honorable Court "must" award Cloud's "reasonable expenses…including attorney's fees" and must further send a message to Michael Junk, the Groom Law Firm, and Defendant that further attempts to stifle Cloud's right to relevant information will not be tolerated.

### C.    Conclusion

33.    Cloud requests that this Honorable Court deny *Motion for Protective Order Precluding Depositions of the Disability Initial Claims Committee Members and Incorporated Brief in Support Thereof* [Dkt. 30] and permit Cloud to depose Ms. Smith and Mr. Reynolds via Zoom before July 26, 2021.  Alternatively, Cloud requests that this Honorable Court permit Cloud to depose a Rule 30(b)(6) witness as an alternativee to deposing Ms. Smith and Mr. Reynolds.  In accordance with *Crosby* and *Vega*, Cloud is permitted to obtain deposition discovery, at a minimum, of the following areas: 1) "[e]vidence in the administrative record;" 2) "[e]vidence that relates to how the administrator has interpreted the plan in the past;" 3) "[e]vidence that would assist the court in understanding medical terms and procedures; 4) "[e]vidence regarding the

completeness of the administrative record; 5) "[e]vidence of whether the administrator complied with ERISA's procedural regulations;" and 6) "[e]vidence and the existence and extent of a conflict of interest created by an administrator's dual role in making benefits determinations and funding the plan."  Michael Junk, the Groom Law Firm, and Defendant have treated discovery in this matter as a sport designed to preclude Cloud from obtaining relevant evidence; therefore, Cloud requests that this Honorable Court award "reasonable expenses…including attorney's fees" in accordance with Rule 37(a)(5)(B) of the Federal Rules of Civil Procedure.

## V.    PRAYER

WHEREFORE, Plaintiff prays that the *Motion for Protective Order Precluding Depositions of the Disability Initial Claims Committee Members and Incorporated Brief in Support Thereof* [Dkt. 30] be denied, Defendant be ordered to produce Chris Smith and Patrick Reynolds for deposition prior to July 26, 2021 (or, alternatively, a Rule 30(b)(6) witness prior to July 26, 2021), Defendant be ordered to produce Sam Vincent for deposition prior to July 26, 2021, and Michael Junk, the Groom Law Firm, and Defendant be ordered to pay Cloud's "reasonable expenses…including attorney's fees" in accordance with Rule 37(a)(5)(B) of the Federal Rules of Civil Procedure.  Plaintiff further prays and requests such other relief, general or special, to which Plaintiff may show himself justly entitled.

Respectfully submitted on this the 7th day of July, 2021.

> BARLOW GARSEK & SIMON, LLP
> 920 Foch Street
> Fort Worth, Texas 76107
> 817.731.4500 (telephone)
> 817.731.6200 (facsimile)

> By:    /s/   *Christian Dennie*
> CHRISTIAN DENNIE
> State Bar No. 24045775
> cdennie@bgsfirm.com
> ***ATTORNEY FOR PLAINTIFF***

## CERTIFICATE OF SERVICE

On July 7, 2021, the *Plaintiff's Response to Defendant's Motion for Protective Order Precluding Depositions of the Disability Initial Claims Committee Members and Incorporated Brief in Support Thereof* was filed with the Clerk of the Court via CM/ECF, which automatically delivers notice of the filing of the same to all counsel of record.

>  */s/ Christian Dennie*
> Christian Dennie, *Counsel for Plaintiff*