## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS, DALLAS DIVISION

| | | |
|---|---|---|
| **MICHAEL CLOUD** | § | |
| | § | |
| **Plaintiff** | § | |
| | § | |
| **v.** | § | **CIVIL ACTION NO. 3:20-CV-01277-E** |
| | § | |
| **THE BERT BELL/PETE ROZELLE** | § | |
| **NFL PLAYER RETIREMENT PLAN** | § | |
| | § | |
| **Defendant** | § | |

_____

### PLAINTIFF'S REPLY IN SUPPORT OF OPPOSED MOTION FOR LEAVE TO FILE FIRST AMENDED COMPLAINT AND BRIEF IN SUPPORT

_____

Plaintiff Michael Cloud ("**Plaintiff**" or "**Cloud**") files this *Reply in Support of Opposed Motion for Leave to File First Amended Complaint and Brief in Support* and in support thereof would respectfully show the court as follows:

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................ 3

I.      INTRODUCTION.................................................................................. 5

II.     THE STANDARDS OF RULE 16(B) DO NOT APPLY........................... 6

III.    PLAINITFF MET THE STANDARDS OF RULE 16(B) ........................ 8

A.    *Defendant's Authorities Undercut its Arguments.* ............................... 9

B.    *There is Good Cause for Plaintiff to Amend his Pleadings.* ................. 13

C.   *There is Absolutely No Prejudice in Granting Leave to Amend.*.......... 19

D.   *The Trial Setting has Already been Continued.* ................................. 23

IV.    PLAINTIFF PLED VALID CLAIMS FOR BREACH OF FUDICIARY DUTY ..... 24

V.     CONCLUSION ................................................................................. 25

PRAYER ................................................................................................... 26

CERTIFICATE OF SERVICE ..................................................................... 27

APPENDIX................................................................................................. 28

## TABLE OF AUTHORITIES

**Cases**

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ........................................................... 2

*Dussouy v. Gulf Coast Inv. Corp.*, 660 F.2d 594 (5th Cir. 1981) ................................... 8

*Fahim v. Marriot Hotel Servs., Inc.*, 551 F.3d 344 (5th Cir. 2008). ...................... 10, 11

*Filgueira v. U.S. Bank Nat'l Ass'n*, 734 F.3d 420 (5th Cir. 2013). ............................... 11

Foman v. Davis, 371 U.S. 178, 83 S. Ct. 227, 9 L. Ed. 2d 222 (1962) .................... 8, 23

*Huskin v. Union Cent. Nat'l Grp., Inc.*, No. 3:10-CV-1518-BH, 2011 WL 1765277 (N.D. Tex. May 9, 2011). ....................................................................................................... 9

*Jones v. Robinson Prop. Grp., L.P.*, 427 F.3d 987 (5th Cir. 2005) ............................... 8

*Lee v. Verizon Communications, Inc.*, 837 F.3d 523 (5th Cir. 2016). ......................... 13

*Leffall v. Dallas Indep. Sch. Dist.*, 28 F.3d 521 (5th Cir. 1994) .................................. 8

*Martin's Herend Imports, Inc. v. Diamond & Gem Trading U.S. Am. Co.*, 195 F.3d 765 (5th Cir. 1999)........................................................................................................ 8

*Marucci Sports, L.L.C. v. Nat'l Collegiate Athletic Ass'n*, 751 F.3d 368 (5th Cir. 2014) .............. 8

*Matter of 3 Star Properties, L.L.C.*, 6 F.4th 595 (5th Cir. 2021)................................... 9

*Mayeaux v. La. Health Serv. & Indem. Co.*, 376 F.3d 420 (5th Cir. 2004).................... 8

*Meaux Surface Protection, Inc. v. Fogleman*, 607 F.3d 161 (5th Cir. 2010) .............. 13

*Rangel v. Mascorro*, 274 F.R.D. 585 (S.D. Tex. 2011)............................................... 13

*S&W Enters. v. SouthTrust Bank*, 315 F.3d 533 (5th Cir. 2003)................................... 8

*Mail and Shipping Systems, Inc. v. Neopost USA, Inc*., 292 F.R.D. 369 (W.D. Tex. 2013) .. 21, 22

*Southern v. U.S.*, 503 F. Supp. 2d 829 (W.D. Tex. 2007) ......................................... 21

*Spokeo, Inc. v. Robins*, 136 S. Ct. 1540 (2016). ....................................................... 13

*Stripling v. Jordan Prod. Co*., 234 F.3d 863 (5th Cir. 2000)......................................... 8

*Thole v. U. S. Bank N.A*, 140 S. Ct. 1615 (2020)................................................... 11, 12

**Statutes**

29 U.S.C. §1102 .......................................................................................................... 24

29 U.S.C. § 1104 ......................................................................................................... 24

29 U.S.C. § 1106 ......................................................................................................... 24

29 U.S.C. § 1109 ......................................................................................................... 24

29 U.S.C. § 1132 ......................................................................................................... 24

**Rules**

Fed. R. Civ. P. 8 ......................................................................................................... 24

Fed. R. Civ. P. 15 ................................................................................................. 7, 8, 25

Fed. R. Civ. P. 16 ........................................................................................... 5, 6, 7, 8, 25

## I.    INTRODUCTION

1.      Cloud filed suit against The Bert Bell/Pete Rozelle NFL Player Retirement Plan (the "**Plan**" or "**Defendant**") related to the Plan's denial of Cloud's request for disability benefits he is entitled to receive.  Cloud has been determined to be disabled by the Social Security Administration based on both neurological and orthopedic conditions stemming from his play in the National Football League ("**NFL**") from 1999 to 2005.  On October 31, 2004, Cloud was involved in a helmet-to-helmet collision while playing for the New York Giants in a game against the Minnesota Vikings.  Cloud sustained a concussion, but returned to football activities approximately forty-eight (48) hours later.  Due to Cloud's return to football activities before his brain was healed, Cloud's brain was in a vulnerable state and sustained greater injury due to repeated blows to the head.  During the 2005 football season, Cloud was unable to remember basic football players he ran most of his life.  Shortly thereafter, Cloud was totally and permanently disabled and unable to work.

2.      In this case, there is currently no scheduling order, no trial date, and discovery is ongoing.  Plaintiff set forth and established the requirements necessary for amendment under Rule 15 of the Federal Rules of Civil Procedure.  Rule 15 of the Federal Rules of Civil Procedure governs amendments to pleadings in circumstances like this where there is no scheduling order in place.  In the off chance that this Honorable Court believes Plaintiff is required to set forth the standards in Rule 16(b) of the Federal Rules of Civil Procedure in amending his operative pleadings despite no scheduling order being in place, Plaintiff has also clearly established the four factors used in the Fifth Circuit. Plaintiff seeks to amend his operative pleadings based on information discovered in depositions that could not been discovered through any other source and had to be ordered by this Honorable Court.  Plaintiff has discovered glaring irregularities committed by the Retirement Board of the Bert Bell/Pete Rozelle NFL Player Retirement Plan

("**Board**") and the Disability Initial Claims Committee ("**Committee**") and their counsel, the Groom Firm.  This amendment permits Plaintiff to test his claims on the merits based on information that was discovered in discovery.  Accordingly, Plaintiff requests that this Honorable Court grant authority for Plaintiff to amend his complaint in the form of the *First Amended Complaint* setting forth a new cause of action against Defendant based on information and evidence gathered in discovery.  Plaintiff had no other way to discover this information prior to the depositions of Defendant's Witnesses.  Defendant has done everything in its power to restrict discovery in this case.  Without this Honorable Court's orders, Defendant would have continued to deny Plaintiff's attempts to gather information in support of his claims.

## II.     THE STANDARDS OF RULE 16(B) DO NOT APPLY

3.     Defendant spends a great deal of time in its *Opposition to Plaintiff's Motion for Leave to File First Amended Complaint* [Dkt. 61] ("**Response**") arguing that the *Plaintiff's Motion Opposed Motion for Leave to File First Amended Complaint and Brief in Support* [Dkt. 55] ("**Motion**") should be denied in accordance with Rule 16(b)(4) of the Federal Rules of Civil Procedure.[1] However, this Honorable Court has already ruled that the deadlines in the *Scheduling Order* dated February 25, 2021 [Dkt. 23] are "VACATE[D]".[2]  Additionally, during the hearing held before this Honorable Court on August 25, 2021, this Honorable Court indicated a "brand-new scheduling order" will be issued and stated as follows:

> THE COURT: Back on the record.  It's the Court's anticipation that *we'll be issuing a brand-new scheduling order* with input from the lawyers once we get past this discovery issue, or set of issues. Everybody understand?
>
> MR. DENNIE: Yes, Your Honor.

---

[1] *Response* at pp. 12-19 [Dkt. 61].
[2] Dkt. 53.

MR. MEEHAN: Yes, Your Honor.[3]

This Honorable Court further confirmed that the "trial date is lifted" and this matter will "not be reached" during the during docket setting of December 6, 2021 as stated in the following passages:

> THE COURT: Let's go on the record. Counsel, with respect to the current scheduling order on this case, which sets trial on December 8th, is it, or 6th?
>
> MR. DENNIE: The three-week docket starts on the 6th.
>
> THE COURT: *You will not be reached at that time*.[4]
>
> \*\*\*
>
> THE COURT: Back on the record. Since the ***trial date is lifted***, there are deadlines that we discussed earlier. Obviously, deadlines for pretrial material, close of discovery, possibly supplementing the administrative record and so on, these will be revisited after the Court decides the matter before the Court. So we've got a little bit of work to do. You-all have about two and a half weeks to do it and then it will get in line with everything else the Court has on its plate. I hope to get to it soon, but we'll see. Okay?[5]

4.      Rule 16(b)(4) applies when a scheduling order is in place and applicable to the matters at issue.[6]  This Honorable Court expressly stated that a "brand-new scheduling order" will be provided with new applicable deadlines and vacated the deadlines set forth in the *Scheduling Order* [Dkt. 23].  Being that *Scheduling Order* [Dkt. 23] is no longer in place, Rule 16(b) of Federal Rules of Civil Procedure does not govern amendment here.  In fact, in comments made by this Honorable Court that apparently occurred off the record, this Honorable Court indicated that "the rules [permit]…parties to freely amend."[7]  Such comment nearly identically tracks Rule 15(a)(2) of the Federal Rules of Civil Procedure, which provides that courts should "freely give leave to

---

[3] Appx. 1 at 90-91:22-3 (emphasis added).
[4] Appx. 1 at 87:13-18 (emphasis added).
[5] Appx. 1 at 89:14-23 (emphasis added).
[6] Fed. R. Civ. P. 16(b)(4).
[7] The quotation referenced comes from counsel for Plaintiff's notes from the hearing held on August 25, 2021.  After reviewing the hearing transcript, it appears this statement was made off the record.

amend when justice so requires."[8]  Defendant did not attempt to address or discuss the extremely liberal policy[9] favoring amendment that "evinces a bias in favor of granting leave to amend"[10] short of a "a 'substantial reason' to deny a party's request for leave to amend."[11]   Plaintiff respectfully requests that this Honorable Court grant the *Motion*, permit Plaintiff to amend his complaint by and through the *First Amended Complaint*, and direct the clerk to file the *First Amended Complaint* among the papers of this Honorable Court.

### III.    PLAINITFF MET THE STANDARDS OF RULE 16(B)

5.    Plaintiff, certainly, does not agree that Rule 16(b) of the Federal Rules of Civil Procedure applies to the *Motion* [Dkt. 55].  However, if this Honorable Court applies Rule 16(b) of the Federal Rules of Civil and applies the standards adopted by the Fifth Circuit, Plaintiff has shown "good cause" as required by Rule 16(b)(4) of the Federal Rules of Civil Procedure.  The Fifth Circuit uses four factors to address modifications to a scheduling order and such factors are as follows: "'(1) the explanation for the failure to [timely move for leave to amend]; (2) the importance of the [amendment]; (3) potential prejudice in allowing the [amendment]; and (4) the availability of a continuance to cure such prejudice.'"[12] Once good cause is demonstrated, "the more liberal standard of Rule 15(a) appl[ies]…."[13]  Again, as noted above, there is currently no scheduling order in place and no trial date being that the parties are waiting on a ruling on hotly disputed discovery issues and a "***brand-new scheduling order***".[14]

---

[8] Fed. R. Civ. P. 15(a)(2); *see also Jones v. Robinson Prop. Grp., L.P.*, 427 F.3d 987, 994 (5th Cir. 2005).
[9] *Stripling v. Jordan Prod. Co*., 234 F.3d 863, 872 (5th Cir. 2000) (*citing* Foman v. Davis, 371 U.S. 178, 182, 83 S. Ct. 227, 9 L. Ed. 2d 222 (1962); *Leffall v. Dallas Indep. Sch. Dist*., 28 F.3d 521, 524 (5th Cir. 1994); *Martin's Herend Imports, Inc. v. Diamond & Gem Trading U.S. Am. Co*., 195 F.3d 765, 770 (5th Cir. 1999); *Dussouy v. Gulf Coast Inv. Corp*., 660 F.2d 594, 597-98 (5th Cir. 1981)).
[10] *Mayeaux v. La. Health Serv. & Indem. Co.*, 376 F.3d 420, 425 (5th Cir. 2004).
[11] *Marucci Sports, L.L.C. v. Nat'l Collegiate Athletic Ass'n*, 751 F.3d 368, 378 (5th Cir. 2014).
[12] *S&W Enters. v. SouthTrust Bank*, 315 F.3d 533, 536 (5th Cir. 2003).
[13] *Id.*
[14] Appx. 1 at 87:13-18, 89:14-23, 90-91:22-3 (emphasis added).

**A.**      *Defendant's Authorities Undercut its Arguments.*

6.      Defendant's "good cause" authorities either undercut Defendant's argument or irrelevantly find a lack of "good cause" on grounds unrelated to the facts and circumstances of Cloud's case. The *Matter of 3 Star Properties*, *L.L.C.* undermines Defendant's position by denying the use of judicial estoppel on one issue and permitting the doctrines use as to another issue.[15] In previous litigation, plaintiff claimed not to be a party to a contract in order to skirt around a jury waiver clause in the contract that would limit plaintiff's chances of its recovery. The court found judicial estoppel was necessary here because plaintiff, "change[d] its tune" and no longer maintained the position that the contract did not apply to them as a nonparty, but instead claimed the contract did apply to plaintiff in order to allow for recovery on a claim of breach.[16] The type of claims Cloud now seeks to amend provides no such change in tune. Cloud merely seeks to amend his claims following the violations subsequently discovered through discovery.

7.      Similarly, in the *Response* [Dkt. 62]*,* Defendant erroneously cites *Huskin v. Union Cent. Nat'l Grp., Inc.*[17] contending "the proposed amendment would necessitate additional motions practice at the pleading stage and/or dispositive motions [. . . ] [t]his alone is prejudice sufficient to justify the denial of Cloud's Motion."[18]  Here, Defendant attempts to mischaracterize the holding of the case, inferring only the single factor of prejudice, as it relates to additional motion practice, is enough by itself to preclude Cloud's amendment. However, in ultimately denying the amendment to the motion, the court held, "[t]he four factors, on balance, do not favor an amendment of the pleadings at this stage of the proceedings."[19]  Indeed, the court's language

---

[15] *Matter of 3 Star Properties, L.L.C.*, 6 F.4th 595, 604–07 (5th Cir. 2021).
[16] *Id.*
[17] *Huskin v. Union Cent. Nat'l Grp., Inc.*, No. 3:10-CV-1518-BH, 2011 WL 1765277, at *2 (N.D. Tex. May 9, 2011).
[18] Dkt. 61 at p. 18.
[19] *Huskin*, 2011 WL 1765277 at *2.

stands in stark contrast to the "prejudice alone" Defendant's claim is enough for denial. Further, it is essential to note in *Huskin*, the subject of the amendment plaintiff sought involved the plan itself.[20] In denying plaintiff's motion, the court reasoned that because plaintiff knew the plan more than two years before the suit was filed, nine months into the case, and three weeks after the deadline to amend, denial was necessary because plaintiff did not provide a proper explanation as to why he was unable to perceive the relevance of the Plan before the expiration of that deadline.[21] These facts stand in stark contradiction to the facts in Cloud's case. Cloud became knowledgeable of the lack of training and extent of compromise regarding the Groom Firm and Board fiduciaries, only after the limited discovery order was granted and depositions reluctantly occurred.

8.     Defendant's reliance on *Fahim v. Marriot Hotel Servs., Inc.* is misplaced for the same reasons.[22] Defendant alludes to *Fahim* in an attempt to bolster support for denying Cloud's motion by cherry-picking the language of the opinion only as it relates to Defendant's argument. Specifically, Defendant cites *Fahim,* attempting to persuade this Honorable Court to deny the *Motion* due to the extreme prejudice it would cause the Defendant "' if it had been forced to defend against a new claim,' when filed 'nearly a year after [plaintiff] filed her original complaint [. . . ] [and] nearly two months after the deadline to amend pleadings had expired.'"[23] Defendant attempts to highlight an unintended and unexpressed significance relating to the prejudice factor in the court's analysis. However, contrary to Defendant's assertion, the court ultimately decided to deny the motion to amend primarily due to Plaintiff's complete lack of explanation stating, "Fahim offered no explanation for her untimely request;" "Fahim [. . . ] offered no explanation for her failure to timely move for leave [. . . ];" and, again, "Fahim offered no explanation for her untimely

---

[20] *Id.*
[21] *Id.*
[22] *Fahim v. Marriot Hotel Servs., Inc.*, 551 F.3d 344, 347-48 (5th Cir. 2008).
[23] Dkt. 61 at p. 19.

request."[24]  Thus, Fahim resulted in a denial of amendment by the court primarily due to the lack of explanation Fahim offered and not because of the prejudice Defendant claims. Cloud clearly only learned of Defendant's breaches of fiduciary that are sought to be added through the *First Amended Complaint* after this Honorable Court ordered for depositions to move forward.

9.     Defendant deceivingly illustrates a recitation of the rules in *Filgueira v. U.S. Bank Nat'l Ass'n*[25] stating the importance of an amendment "'weighs heavily in favor of the Defendant's where 'amendment by [plaintiff] would be futile.'"[26]  It is important to note, in ultimately denying Plaintiff's motion to amend, the court reasoned it would not accept plaintiff's explanation that his attorney's withdrawal was sufficient to allow the amendment.[27]  In contrast to Cloud, the court found the plaintiff in *Filgueira* was responsible for his attorney's withdrawal by failing to respond to the attorney's numerous attempts to communicate with him regarding the case.[28]  In addition, the plaintiff himself was an attorney, and the court further reasoned that he was not a typical unsophisticated *pro se* litigant and should have known of the requirements necessary to amend before the deadline.[29]  None of these issues are present in this case.

10.    Next, Defendant points to *Thole v. U. S. Bank N.A.* for the proposition the United States Supreme Court held a participant in a defined-benefit pension plan did not have the standing to pursue breach-of-fiduciary-duty claims related to the alleged mismanagement of plan assets because the "retirees receive[d] a fixed payment each month" under the terms of the Plan, regardless of the fiduciaries' decisions.[30]  The United States Supreme Court explained as follows:

> [Plaintiffs] have received all of their monthly benefit payments so far, and the outcome of this suit would not affect their future benefit payments. If [plaintiffs]

---

[24] *Fahim*, 551 F.3d at 551.
[25] *Filgueira v. U.S. Bank Nat'l Ass'n*, 734 F.3d 420, 423 (5th Cir. 2013).
[26] Dkt. 61 at p. 20.
[27] *Filgueira*, 734 F.3d at 422-23.
[28] *Id*.
[29] *Id*.
[30] *Thole v. U. S. Bank N.A*, 140 S. Ct. 1615, 1618 (2020).

were to *lose* this lawsuit, they would still receive the exact same monthly benefits that they are already slated to receive, not a penny less. If [plaintiff] were to *win* this lawsuit, they would still receive the exact same monthly benefits that they are already slated to receive, not a penny more. The plaintiffs therefore have no concrete stake in this lawsuit.[31]

Defendant argues "[t]he same logic holds here. Winning or losing a prohibited transaction claim would make no difference to Cloud. The alleged prohibited transactions have nothing to do with Cloud's eligibility for Active Football benefits under the terms of the Plan. In other words, regardless of how much compensation the Groom Firm receives for its services, Cloud has received and will continue to receive a fixed monthly benefit under the terms of the Plan. He, therefore, lacks Article III standing to pursue the claim."[32]  This claim by Defendant misstates the holding of *Thole* and attempts to conclude law as it pertains to Cloud that cannot be validly drawn. Winning or losing a prohibited transaction claim would make a difference to Cloud. Although the prohibited transaction is distinct from Cloud's claim for denial of rightful benefits under ERISA, here, the prohibited transaction at issue involves the Plan, the Board, the Committee, and Plan funds paid to the Groom Firm belonging to the beneficiaries of the Plan. A prohibited transaction per the Plan to the Groom Firm not only restricts the ability of Cloud to receive his benefits (without the required funding, no benefit plan could exist, and no benefits could be received), causes a concrete injury in fact by incentivizing denial of benefits and reclassifications evidenced by a history of biased claim determinations since the Plan was created and the Groom Firm was appointed as Plan counsel. Further, the Groom Firm receives plan funds to defend and litigate denials by the Board. The more denials and subsequent litigation that follows, the more money the Groom Firm receives in turn from the Plan. The Groom Firm has a clear and direct financial

---

[31] *Id.* at 1619.
[32] Dkt. 61 at p. 23.

incentive to deny claims (*i.e.,* more business and more money).[33] The Board (at the direction of the Groom Firm) has displayed a history of biased claims administration in denying claims that should have been awarded.  Only the Groom Firm has represented the Plan throughout the Plan's history of denials regarding benefit decisions.

11.     Lastly, Defendant further relies on *Lee v. Verizon Communications, Inc.* to argue that Cloud's fiduciary allegations do not provide proper Article III standing.[34] However, in contrast to *Lee*, where the court found denial warranted due to Plaintiff's bare allegation of improperly defined benefits under the Plan, Cloud here has suffered a concrete injury. Cloud does not assert as Plaintiff does in *Lee* or *Spokeo* a bare allegation regarding a statutory right with no other concomitant allegations.[35] Cloud seeks damages for Defendant's bad acts and benefits he qualifies for and has a right to receive under the language of the Plan. Indeed, denial of benefits to the rightful beneficiary rises to the level of Article III standing necessary to substantiate Plaintiff's claims.

## B.     There is Good Cause for Plaintiff to Amend his Pleadings.

12.     As noted above, there is currently no scheduling order in place and no trial date. Information discovered for the first time in discovery constitutes "good cause" for amendment.[36] The information used to supplement Plaintiff's operative pleadings was discovered in depositions and could not have been discovered anywhere else being that Defendant (and its counsel) have a long history of withholding information from disabled former NFL players.  This case, for the first

---

[33] For further explanation of the Groom Firm's conflicts, please see the *Motion to Disqualify the Groom Law Group and Brief in Support* as such motion is incorporated herein by reference as set forth herein verbatim.  Dkt. 56.
[34] *Lee v. Verizon Communications, Inc.*, 837 F.3d 523, 529–30 (5th Cir. 2016).
[35] *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1549 (2016).
[36] *See, e.g., Meaux Surface Protection, Inc. v. Fogleman*, 607 F.3d 161, 167-69 (5th Cir. 2010)(granting a motion for leave in a breach of fiduciary duty action to assert lost profits for the first time based on information discovered in discovery); *Rangel v. Mascorro*, 274 F.R.D. 585, 596-97 (S.D. Tex. 2011)(granting modification of the scheduling-order deadline due to counsel's conduct for failure to properly permit depositions).

time, has given a disabled retired NFL player the  opportunity to present the truth about the operation of the Plan by Defendant.  During the hearing before this Honorable Court, on August 25, 2021, counsel for Defendant agreed and stated as follows:

> MR. MEEHAN: ... We agree it's, as you put it, **_uncharted waters_** or -- or completely **_new landscape_**, as Plaintiff's counsel put it....[37]

In fact, this is the first case where Defendant has had to produce witnesses for depositions and their testimony has been telling.

13.     Cloud filed his *Original Complaint* [Dkt. 1] on May 15, 2020, but Defendant did not file its *Answer to Plaintiff's Complaint* [Dkt. 21] until February 24, 2021.  Throughout this dispute, the parties have been embroiled in discovery disputes one after another, which delayed Cloud in obtaining necessary information to determine whether amendments were necessary.[38]  In addition to written discovery exchanged with Defendant (partial responses provided on December 21, 2020 and June 1, 2021), Plaintiff diligently sought and obtained, through medical authorizations, records from Plaintiff's former NFL teams, physicians, and medical professionals.[39]  In total, Plaintiff has produced 3,574 pages of records to Defendant that were diligently obtained by seeking records from third-parties in addition to the partial set of records produced by Defendant.  Currently, the parties remain in a dispute over documents, witnesses, and information that Defendant has withheld and are awaiting a ruling on *Plaintiff's Emergency Motion to Compel Compliance with Court's Order [Dkt. 38] and Production of Documents and Records and Incorporated Brief in Support Thereof* [Dkt. 41].   Plaintiff seeks to amend based on

---

[37] Appx. 1 at 64:12-14 (emphasis added).
[38] *See, e.g.,* Dkt. 24, Dkt. 37, Dkt. 38, Dkt. 41, Dkt. 50; Dkt. 57.  Each of the foregoing is incorporated herein by reference as if set forth herein verbatim.
[39] Despite the common practice of using medical authorizations to obtain medical records, counsel for Defendant has accused counsel for Plaintiff of "malpractice" for not subpoenaing records that have been obtained through medical authorizations and produced to Defendant.  Dkt. 59 at p. 24; *see also* Appx. 1 at 67:17-20.  These continued accusations are ludicrous.

information gathered in court-ordered depositions. Such information was not available through any other source.

14.     If it were not for this Honorable Court's orders [Dkt. 37 and Dkt. 38], like other disabled retired NFL players fighting Defendant for their rightful benefits, Plaintiff would have had an uphill battle. This Honorable Court permitted Plaintiff the opportunity to take the depositions of two (2) members of the Committee, Patrick Reynolds and Chris Smith, and the Rule 30(b)(6) witness, Hessman "Sam" Vincent, (collectively "**Defendant's Witnesses**"). In these depositions, Plaintiff learned of alarming irregularities that rise to the level of breaches of fiduciary duties. Prior to the depositions in this case, Defendant's Witnesses have not been deposed in any of the many other ERISA disputes involving disabled retired NFL players' claims for disability benefits. In *Plaintiff's Supplemental Briefing in Support of Emergency Motion to Compel Compliance with Court's Order [Dkt. 38] and Production of Documents and Records* [Dkt. 58]*,* Plaintiff set forth testimony of Defendant's Witnesses that provides the initial basis for asserting breach of fiduciary duty claims against Defendant and such testimony and attachments are incorporated herein by reference.[40]   Examples of information learned in the depositions of Defendant's Witnesses are as follows:

> Q: [E]arlier you testified that as it pertains to Mr. Cloud's 2016 reclassification decision letter, you didn't read it before it went out, correct?
>
> A: That is correct.
>
> Q: So you certainly didn't tell anyone, "This is what the definition of changed circumstance that I want to include in this decision letter," correct?
>
> A: Correct.[41]
>
> ***

---

[40] Appx. 2 (Depo. of Chris Smith); Appx. 3 (Depo. of Patrick Reynolds); Appx. 4 (Depo. of Sam Vincent).
[41] Appx. 2 at 271:9-12, 16-20.

Q: So whoever wrote this [the 2016 reclassification decision letter] came up with their own definition of changed circumstance was not approved by you, correct?

A: I don't recall talking to anyone about the wording of the letter.

Q: And just to be clear, I asked you a little bit different question. You didn't approve their definition of changed circumstance [as used in the 2016 reclassification letter]. Is that right?

A: Not that I recall.[42]

***

Q: As it pertains to Mr. Cloud's 2016 reclassification benefits, did you write the decision letter in that case?

A: I did not.

Q: As it pertains to Mr. Cloud's 2016 reclassification for benefits application, did you review a decision letter before it was sent out?

A: Not that I recall.

Q: As it pertains to Mr. Cloud's 2016 reclassification for disability benefits application, did you review the decision letter and make any changes to it before it was sent out?

A: Not that I recall.[43]

***

Q: You're not aware of that circumstance because the [decision] letters are never submitted to the committee prior to being sent to the player, correct?

A: Correct, sir.[44]

***

Q: Have you ever asked anyone to define for you what changed circumstances means?

A: Not that I recall.[45]

---

[42] Appx. 2 at 339:5-14.
[43] Appx. 2 at 200:5-17.
[44] Appx. 4 at 369:14-18.
[45] Appx. 2 at 273:14-16.

\*\*\*

Q: You would agree that these changed symptoms are a changed circumstance as set forth in 5.7(b) of Exhibit 1, wouldn't you?

A: Yes, they are changed circumstances.[46]

\*\*\*

Q: And you feel certain that you reviewed Mr. Cloud's entire file prior to comes to a decision?

A: I feel certain that I reviewed his file to the best of my ability. So I don't know if I ended up being distracted and put it down and didn't go back to it or skipped a page or two, but I feel certain that I did read most of it to the best of my ability.

Q: Do you ever recall a time where you just relied on the case summary and did not read the entire file?

A: I don't recall that.

Q: Could that have happened?

A: Anything can happen.

Q: You would agree it's important for you to read the entire case file to come to a decision, right?

A: I do agree, it is important.

Q: We talked about this earlier a little bit, it's extremely important for the player seeking benefits, right?

A: That is correct.

Q: And you hold the duty to the retired NFL players who are seeking benefits and you know that it's vastly important that you review the medical file in total before rendering a decision, right?

A: I do.

Q: But you would admit sometimes you may not read the entire file?

A: I'm human.

---

[46] Appx. 2 at 337:2-5.

Q: Is that yes?

A: Like I said, anything can happen, so...[47]

***

Q: Have you ever written a decision letter?

A: No.

Q: Do you review the decision letter before it goes out?

A: No.

Q: Have you ever made any changes to a decision letter before it goes out?

A: Not that I recall.[48]

***

Q: Do you review the decision letter before it's sent out?

A: Typically, no.[49]

***

Q: I believe you testified earlier, but I want to confirm, you did not write Exhibit 4 [2014 decision letter], correct?

A: That's correct.[50]

***

Q: Did you make a single change to this document [2014 decision letter]?

A: Not that I recall.

Q: Do you know whether you even looked at this document?

A: I don't recall.[51]

---

[47] Appx. 2 at 361-363:19-9.
[48] Appx. 2 at 199:3-11.
[49] Appx. 3 at 174:3-5.
[50] Appx. 3 at 330:3-6.
[51] Appx. 3 at 335-336:19-2.

These glaring issues would not have been discovered without this Honorable Court's orders [Dkt. 37 and Dkt. 38]. Plaintiff had no way of obtaining this information other than through discovery. The depositions of Defendant's Witnesses did not occur until August 4, 2021 (Patrick Reynolds), August 5, 2021 (Chris Smith), and August 9, 2021 (Sam Vincent). These depositions only occurred because this Honorable Court required Defendant's to produce Defendant's Witnesses. After gathering information that evidences claims for breach of fiduciary duty, Plaintiff promptly moved to amend his pleadings and filed the *Motion* [Dkt. 55]. Plaintiff worked diligently to gather information regarding his claim, but was delayed (and is still delayed) by Defendant's desire to withhold records, information, documents, and witnesses. This amendment is extremely important to Plaintiff's claim, because he has discovered information regarding the operation of the Plan that violates Plaintiff's rights and further shows that the Plan is run and manipulated by its counsel in violation of ERISA. But for the actions of Defendant, Plaintiff would have sought leave to amend much earlier in the case.

## C.   *There is Absolutely No Prejudice in Granting Leave to Amend.*

15.   On August 25, 2021, during a hearing before this Honorable Court, Defendant incorrectly argued that Plaintiff fails to meet certain aspects of Article V of the Plan attempting to support its dispositive motion during a discovery hearing. After Defendant's counsel attended to argue Defendant's dispositive motion during a discovery hearing, the following exchange occurred on the record:

> MR. DENNIE: Well, it was actually after that, about how there's no meeting of the definition of shortly after because the injury occurred –
>
> THE COURT: Okay.
>
> MR. DENNIE: -- October 31st, 2004. And I just want to be clear on something 'cause counsel asked -- we had this same conversation last week, and I pointed him to the same thing that I would point you-all to, Appendix 6, which is the decision

letter of the Board that we're talking about here today, November 23rd, 2016. This is what the Groom law firm wrote. As Mr. Meehan said, they wrote this.

"She stated that you 'became disabled' in 2005 while playing for the New York Giants due to cumulative mental disorder."

So the point I'm trying to make here -- and I know they were trying to argue the merits on that one, but this is their own letter where we're saying the application references 2005. And it is a circumstance where he had the injury -- the basis, the underlying injury occurred in 2004, October 31st. But he returned to play within 48 hours and continued taking those hits which ultimately resulted in an impact exam conducted by the New England Patriots. Whether it's three weeks or four or five or six, it wasn't very long. It was a very short period of time.  So my request on that issue, Your Honor, is if that is not clear to the Court that we're making the comment and statement that the injury, the main injury occurred on the -- in 2004 but continue for multiple cumulative hits, that we be permitted to amend on that issue.

THE COURT: Amend what?

MR. DENNIE: The complaint, to make it clear what we're saying. I mean, it's all spelled out in the facts, but we want to be able to make it clear –

THE COURT: Okay. Well...

MR. DENNIE: And we've been –

THE COURT: So you're essentially doing a motion for leave to amend, and we'll take that up later….[52]

Using information obtained in discovery from Defendant and third-parties, Plaintiff seeks to add additional facts and information by and through his *First Amended Petition.*

16.    During the hearing on August 25, 2021, Defendant argued that Plaintiff does not meet the definition of "shortly after" as defined in the Retirement Plan at Section 5.3(e), because Cloud's helmet-to-helmet collision causing a concussion occurred on October 31, 2004 and Cloud played a partial season during the 2005 NFL season for the New England Patriots and New York Giants.   As is clear throughout the *Original Complaint* [Dkt. 1], Cloud openly acknowledges that he returned to play during the 2005 season, but was unable to remember basic

---

[52] Appx. 1 at 81-82:24-10.

football plays.  In Cloud's application for reclassification filed on or about February 14, 2016, Cloud's representative stated:

> During the [s]pring '05, Mr. Cloud signed a two[-]year contract with the NY Giants worth over $2.6 million, but was cut due to his inability to remember the most basic plays and football assignments.  **Months into the 2005 season[,] Mr. Cloud was again acquired by the NE Patriots and then again by the NY Giants, but was consequently cut due to these cumulative mental disorders**.[53]

On November 23, 2016, the Groom Firm purportedly writing on behalf of the wrote Plaintiff "**became disabled in 2005, while playing for the New York Giants due to cumulative mental disorder**", but concluded that Cloud did not meet the requirements of Section 5.7(b) of the Plan.[54] During the hearing on August 25, 2021, counsel for Defendant admitted that the Groom Firm did write the aforementioned letter and said "[y]our Honor, the -- the Groom firm did write the decision in 2016 concerning Mr. Cloud."[55]  Interestingly, Defendant does not argue lack of knowledge or surprise.  Frankly, they cannot, because Defendant's counsel's own words confirm that Plaintiff's injuries occurred as a result of "cumulative mental disorder" and he "became disabled in 2005."[56] There can be no substantial prejudice when Defendant had knowledge of and specifically addressed the date of Plaintiff's injury in writing when denying Plaintiff's claim.[57]

       17.     Plaintiff seeks to amend by and through the *First Amended Complaint*, so there is no confusion as to the claims being asserted.  Plaintiff had a debilitating concussion from a helmet-to-helmet collision on October 31, 2004 and returned to football activities forty-eight (48) hours

---

[53] Appx. 5 at p. 1 (emphasis added).
[54] Appx. 6 at p. 1 (emphasis added).
[55] Appx. 1 at 56:9-10.
[56] Appx. 6 at p. 1.
[57] *Southern v. U.S.,* 503 F. Supp. 2d 829, 833 (W.D. Tex. 2007)(holding there was no "substantial prejudice" when the court extended deadlines in the case and there was no evidence of harm to the defendant); *Mailing and Shipping Systems, Inc. v. Neopost USA, Inc*., 292 F.R.D. 369, 375-76 (W.D. Tex. 2013)(concluding plaintiff's motion to amend posed some potential for prejudice to defendant, but the prejudice was minimal and could be cured by postponing the trial and providing additional opportunities for limited discovery, dispositive motions, and alternative dispute resolution).

after the collision, which caused Plaintiff to suffer further injury before his brain was properly healed.  During the 2005 NFL season, Plaintiff was unable to remember basic football plays and was cut by two (2) NFL teams.  The cumulative injuries sustained by Plaintiff as a result of the helmet-to-helmet collision on October 31, 2004 (and orthopedic injuries) and subsequent injuries resulted in a total and permanent disability.  Plaintiff was totally and permanently disabled "shortly after" the conclusion of the 2005 NFL football season.  Subsequent to concluding his play in the NFL following the 2005 NFL season, Plaintiff has been unable to maintain gainful employment.

18.    In *Mailing and Shipping Systems, Inc. v. Neopost USA, Inc*., addressing an issue similar to the one presented here, the court stated:

> [A]dditional discovery, dispositive motions, and ADR will not "unduly" increase litigation costs, because most of these costs would inevitably have resulted had Plaintiff originally included its two new claims for breach of contract in its First Amended Complaint. The Court sees no reason why the timing of these claims should significantly increase Defendant's expenses in responding to them. Moreover, because the scope of parties' future discovery, dispositive motions, and ADR will be confined strictly to the two new claims, the parties' new research and briefing will not be duplicative of their previous efforts.[58]

This case has no scheduling order, no trial date, discovery is ongoing, and the mediation deadline does not conclude until November 30, 2021.  Defendant attempts to argue it has already filed a dispositive motion and should not have to address amended pleadings (there is currently no dispositive motion deadline).  This Honorable Court addressed that issue during the hearing on August 25, 2021 and, *sua sponte*, granted leave for Defendant to amend its dispositive motion stating as follows:

> THE COURT: On the record. The Court is aware that a motion for summary judgment has been filed on behalf of the Defendant. The response time will be the three weeks from the date it was filed is set aside. And, again, a new deadline will be set forth on that by the Court. It'll be a minimum of three weeks after the Court rules on this, but it may be longer. All right? So as far as responsive documents to

---

[58] *Mailing and Shipping Systems, Inc.*, 292 F.R.D. at 376.

the summary judgment, that is a waste of time at this time. So that's on the record.[59]

\*\*\*

THE COURT: On the record. If counsel for Defendant finds, in light of what is before the Court right now and discovery that was had and for any reason that counsel would like to have a new summary judgment, amended summary judgment, leave is granted right now for that. And so everything's lifted right now. So we have a pending motion for summary judgment. There's no deadline yet because there's homework assignments for you-all, and then I'll have a homework assignment. The Court will either go ahead and put it back on the schedule -- and you can stand by your original motion for summary judgment, or you have leave to file a new summary judgment. You can get back to us how much time you need on that.[60]

There is absolutely no prejudice, and certainly not substantial prejudice, to Defendant and its filing of a dispositive motion. As noted above, discovery remains ongoing and relevant issues that are vitally important to Plaintiff's case remain outstanding due to the conduct of Defendant. Permitting Plaintiff to amend his operative pleadings so this case can be "test[ed]...on the merits"[61] does not prejudice Defendant in any way.

### D.    *The Trial Setting has Already been Continued.*

19.    Presently, there is no trial setting for this matter. During the hearing on August 25, 2021, this Honorable Court confirmed that the December 6, 2021 trial setting would not be reached and stated as follows:

THE COURT: Let's go on the record. Counsel, with respect to the current scheduling order on this case, which sets trial on December 8th, is it, or 6th?

MR. DENNIE: The three-week docket starts on the 6th.

THE COURT: You will not be reached at that time.[62]

---

[59] Appx. 1 at 87-88:21-5.
[60] Appx. 1 at 90:1-14.
[61] *Foman v.* Davis, 371 U.S. 178, 182 (1962).
[62] Appx. 1 at 87:13-18.

In the off-chance Defendant has shown any kind of substantial prejudice, this Honorable Court has already cured such prejudice by continuing the trial setting to a date that is currently unknown. If the event Defendant needs more time to conduct discovery and address Plaintiff's amended claims, it has the opportunity to do so.

### IV. PLAINTIFF PLED VALID CLAIMS FOR BREACH OF FUDICIARY DUTY

20.     Plaintiff pled and established valid breach of fiduciary duty claims for violations of ERISA including violations of 29 U.S.C. §§ 1102, 1104, 1106(a), (b), 1109, 1132(a)(3).[63] As noted above, Defendant treats every filing like a dispositive motion. In accordance with Rule 8(a) of the Federal Rules of Civil Procedure, Plaintiff is required to set forth a claim for relief that provides "a short and plain statement of the claim showing that the pleader is entitled to relief."[64] Rule 8 does not require detailed factual allegations, but "it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."[65] If Defendant believes Plaintiff has failed to satisfy the requirements of Rule 8(a), then Defendant may file a motion to dismiss or other dispositive motion. Plaintiff need only plead "enough facts to state a claim to relief that is plausible on its face."[66]

21.     As noted above and detailed in multiple other pleadings presented to this Honorable Court,[67] there were significant errors and violations made by Defendant that led to the denial of Plaintiff's request for benefits. Admittedly, the Board is not supposed to "rubber stamp[]" the decision of the Committee and must undertake a *de novo* review, but the Committee and Board frankly failed to meet their obligations and duties to Plaintiff, a beneficiary of the Plan.[68] Ms.

---

[63] 29 U.S.C. §§ 1102, 1104, 1106(a), (b), 1109, 1132(a)(3).
[64] Fed. R. Civ. P. 8(a)(2).
[65] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).
[66] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007).
[67] Dkt. 41, Dtk. 50, Dkt. 56, Dkt. 57, Dkt. 58. Each of the foregoing is incorporated herein by reference as if set forth herein verbatim.
[68] Appx. 1 at 13:1-15, 15:18-21.

Smith, a member of the Committee, admitted she "may not" have actually reviewed all of Plaintiff's medical records and confirmed Plaintiff met the definition of a "changed circumstance" as used in Section 5.7(b) of the Plan.[69] Additionally, members of the Committee and Board do not see, comment on, or draft the decision letters before being sent to disabled retired NFL players like Plaintiff.[70] As noted in greater detail in the *Motion to Disqualify the Groom Law Group and Brief in Support* [Dkt. 56], the Plan is run and manipulated by the Groom Firm. These absurd actions must stop. If this Honorable Court denies Plaintiff's rightful opportunity to amend and to gather further evidence that has been withheld, Defendant will continue to wrongly deny benefits to disabled retired NFL players including Plaintiff.

## V.    CONCLUSION

22.    In this case, there is currently no scheduling order, no trial date, and discovery is ongoing. In the *Motion* [Dkt. 55], Plaintiff set forth and established the requirements necessary for amendment under Rule 15 of the Federal Rules of Civil Procedure. Rule 15 of the Federal Rules of Civil Procedure governs amendments to pleadings in circumstances like this where there is no scheduling order in place. In the off chance that this Honorable Court believes Plaintiff is required to meet the standards in Rule 16(b) of the Federal Rules of Civil Procedure in amending his operative pleadings despite no scheduling order being in place, Plaintiff has also clearly established the four factors used in the Fifth Circuit. Accordingly, Plaintiff requests that this Honorable Court grant authority for Plaintiff to amend his complaint in the form of the *First Amended Complaint* setting forth a new cause of action against Defendant based on information and evidence gathered in discovery. Plaintiff had no other way to discover this information prior to the depositions of Defendant's Witnesses. Defendant has done everything in its power to restrict

---

[69] Appx. 2 at 337:2-5, 361-363:19-9.
[70] *See* notes 42-52.

discovery in this case.  Without this Honorable Court's orders, Defendant would have continued to deny Plaintiff's attempts to gather information in support of his claims.

## PRAYER

WHEREFORE, premises considered, Plaintiff respectfully requests that this Honorable Court grant the *Motion* [Dkt. 55], permit Plaintiff to amend his complaint by and through the *First Amended Complaint*, and direct the clerk to file the *First Amended Complaint* among the papers of this Honorable Court.  Plaintiff further prays for all and such other relief to which he may be entitled in law or equity.

Respectfully submitted on this the 24th day of September 2021.

BARLOW GARSEK & SIMON, LLP
920 Foch Street
Fort Worth, Texas 76107
817.731.4500 (telephone)
817.731.6200 (facsimile)

By: */s/   Christian Dennie*
CHRISTIAN DENNIE
State Bar No. 24045775
cdennie@bgsfirm.com
***ATTORNEY FOR PLAINTIFF***

## CERTIFICATE OF SERVICE

I certify that on September 24, 2021, I served the foregoing *Plaintiff's Reply in Support of Opposed Motion for Leave to File Amended Complaint* on Defendant's attorney of record by the court's ECF electronic filing system.

*/s/ Christian Dennie*
Christian Dennie, *Counsel for Plaintiff*

## <u>APPENDIX</u>

Appendix 1:   Transcript of Motion to Compel Heard before the Honorable Karen Gren Scholer United States District Judge dated August 25, 2021

Appendix 2:   Excerpts of the Deposition of Christophine Smith

Appendix 3:   Excerpts of the Deposition of Patrick Reynolds

Appendix 4:   Excerpts of the Deposition of Hessman Vincent

Appendix 5:   Application for Reclassification dated July 15, 2016 (CLOUD-AR-288 – CLOUD-AR-289)

Appendix 6:   Letter Denying Reclassification dated November 23, 2016 (CLOUD-AR-518 – CLOUD-AR-523)