**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | |
|---|---|
| MICHAEL CLOUD,<br><br>    Plaintiff,<br><br> v.<br><br>THE BERT BELL/PETE ROZELLE<br>NFL PLAYER RETIREMENT PLAN,<br><br>  Defendant. | Civil Action No. 3:20-cv-01277-S |

---

**REPLY IN FURTHER SUPPORT OF DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT ON THE ADMINISTRATIVE RECORD**

---

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ................................................................................................iii

INTRODUCTION ............................................................................................................. 1

ARGUMENT & AUTHORITIES........................................................................................ 2

I.    Cloud Cannot Avoid The Fact That His Appeal Was Untimely, And This Alone Justifies The Board's Decision. ................................................................... 2

    A.    Cloud concedes the Board could deny an untimely appeal. ...................... 2

    B.    The Administrative Record unequivocally shows that Cloud received the Committee's decision letter on March 4, 2016, and thus his appeal was untimely. ................................................................................ 3

II.    Cloud Did Not Satisfy The Reclassification Provision's Changed-Circumstances Requirement. ................................................................................... 4

    A.    Groom Law Group did not create the reclassification provision, and the Board's interpretation of it was no secret to Cloud. ............................ 4

    B.    The Board applied the same interpretation of the changed-circumstances requirement to Cloud that it applied to every Player before and after him. ................................................................................. 6

    C.    Cloud did not satisfy the changed-circumstances requirement. ............... 7

        1.    Dr. Wu's opinions are inadmissible, and on top of that Dr. Wu has no idea whether Cloud presented "changed circumstances." ............................................................................... 7

        2.    Cloud did not automatically present "changed circumstances" simply because he was originally awarded T&P benefits under the Plan's Social Security standard. ............................................... 10

        3.    Cloud acknowledged that he did not present "changed circumstances" when *his lawyers* asked the Board to waive that exact requirement. ...............................................................11

III.    Cloud Concedes He Could Not Qualify For Active Football Benefits. .................13

IV.    Cloud Concedes Count II Is Redundant, And He Does Not Point To Any Admissible Evidence To Support It........................................................................ 14

V.    The Board Does Not Have A Structural Conflict, So Nothing Should Diminish The Abuse-Of-Discretion Standard Of Review. ................................... 16

CONCLUSION .................................................................................................................... 16

CERTIFICATE OF SERVICE ............................................................................................. 18

# TABLE OF AUTHORITIES

## Cases

*Atkins v. Bert Bell/Pete Rozelle NFL Player Ret. Plan*,
No. A-10-CA-515-SS, 2011 WL 13269723 (W.D. Tex. Aug. 8, 2011) ........................... 11

*Boyd v. Bert Bell/Pete Rozelle NFL Player Ret. Plan*,
796 F. Supp. 2d 682 (D. Md. 2011) ............................................................................. 16

*Courson v. Bert Bell NFL Player Ret. Plan*,
75 F. Supp. 2d 424 (W.D. Pa. 1999), *aff'd,* 214 F.3d 136 (3d Cir. 2000) ....................... 16

*Firestone Tire & Rubber Co. v. Bruch*,
489 U.S. 101 (1989) ........................................................................................................ 5

*Fortier v. Hartford Life & Accident Ins. Co.*,
916 F.3d 74 (1st Cir. 2019) .............................................................................................. 3

*Gomez v. Ericsson, Inc.*,
828 F.3d 367 (5th Cir. 2016) ........................................................................................ 10

*Jacobson-Boettcher v. Dowdy*,
No. H-18-0853, 2018 WL 3520506 (S.D. Tex. July 20, 2018) ........................................ 14

*Johnson v. Bert Bell/Pete Rozelle NFL Player Ret. Plan*,
468 F.3d 1082 (8th Cir. 2006) ...................................................................................... 16

*Jurasin v. GHS Prop. & Cas. Ins. Co.*,
No. SA-09-CA-00562-FB, 2011 WL 13234954 (W.D. Tex. Jan. 20, 2011) ...................... 7

*Neathery v. Chevron Texaco Corp. Grp. Acc. Pol'y No. OK826458*,
No. 05CV1883-JM CAB, 2006 WL 4690828 (S.D. Cal. July 11, 2006) ........................ 11

*Neathery v. Chevron Texaco Corp. Grp.*,
303 F. App'x 485 (9th Cir. 2008) ................................................................................... 7

*Nichols v. Enterasys Networks, Inc.*,
495 F.3d 185 (5th Cir. 2007) ........................................................................................ 16

*Sims v. City of Madisonville*,
894 F.3d 632 (5th Cir. 2018) ........................................................................................ 10

*Vega v. Nat'l Life Ins. Servs., Inc.*,
188 F.3d 287 (5th Cir. 1999), *overruled on other grounds as recognized by*

*Youboty v. NFL Player Disability*, No. 20-40613, 2021 WL 1533662 (5th Cir. Apr. 16, 2021) ................................................................................................................. 7

## **INTRODUCTION**

Cloud's Response to Defendant's Motion for Summary Judgment on the Administrative Record (Dkt. 178, "Cloud Resp.") is nearly identical to his motion for judgment (Dkt. 156), which Defendant has already answered. *See generally* Dkt. 182. As a result, Defendant's reply will be succinct.

In its opening brief, Defendant noted that Cloud's wide-ranging claims of conspiracy and malfeasance have no basis in reality, and no place in this ERISA claim for benefits. Dkt. 162 at 2. In response, Cloud emphatically embraces it all, even the never-pleaded theory that Defendant discriminated against him based on his race:

> Defendant also complains that Cloud has portrayed it as a component of an NFL monolith and accused it, the NFL Players Association ("**NFLPA**"), and others of misleading Cloud about his benefits, withholding records, not locating medical records for him from an NFL "EMR" repository, and discriminating against him based on his race – ***all of which is supported by the evidence and uncontroverted by Defendant***.

Cloud Resp. at 2 (emphasis in original).

Cloud has had more than ample opportunity to make his case.[1] But when the Court wades through the documents and testimony that Cloud purports to cite, it will see that none of Cloud's constantly-evolving claims are supported, none of his claims are uncontroverted, and most of his allegations have no bearing on whether the Board had a reasonable basis to deny his 2016 reclassification request.

The three questions for the Court are straightforward, and they are straightforwardly answered by the Administrative Record (Dkt. 16) lodged with the Court

---

[1] Cloud routinely exceeded the Court's briefing page limits, and then filed (with the Court's permission) a 60+ page motion for judgment and a 60+ page opposition brief containing hundreds of footnotes and numerous, opaque cites to evidence that is inadmissible.

a year ago.  Did Cloud timely appeal the Committee's initial decision?  No.  Did Cloud seek reclassification based on impairments that were different from the ones that led to his initial award of T&P benefits in 2014?  No.  Did Cloud show that he satisfied the "shortly after" requirement for Active Football benefits?  No.  The Board's decision was far from an abuse of discretion; it was objectively correct.  The Court should uphold that decision under the applicable abuse-of-discretion standard of review or, alternatively, the *de novo* standard of review that Cloud urges the Court to adopt contrary to settled ERISA precedent.

## ARGUMENT & AUTHORITIES

### I.     Cloud Cannot Avoid The Fact That His Appeal Was Untimely, And This Alone Justifies The Board's Decision.

#### A.     Cloud concedes the Board could deny an untimely appeal.

Defendant's opening brief cited a number of federal court decisions upholding plan administrators' decisions denying untimely appeals.  *See* Dkt. 162 at 29-31.  Cloud offers a two-sentence response that does not contest this authority in any way.

Cloud instead invokes what amounts to a good-for-the-goose/good-for-the-gander argument.  He claims Defendant "was 'two days late' in mailing the 2016 Appeal Decision Letter to Cloud," and this was "a violation of federal law."[2]  Cloud Resp. at 47.  Cloud, however, cites no case—and Defendant is aware of none—holding that a plan administrator violates federal law by sending a final decision letter within five business days (as opposed to five calendar days).

---

[2] Cloud refers to the fact that the Board denied his request for reclassification at its meeting on Friday November 16, 2016, and the NFLPBO issued the decision letter on Friday November 23, 2016.

Even if Defendant issued the Board's decision letter two days late as Cloud maintains, the error did not prejudice Cloud, and it does not excuse his failure to timely appeal the Committee's decision.  *See Fortier v. Hartford Life & Accident Ins. Co.*, 916 F.3d 74, 83-84 (1st Cir. 2019) (noting that a plan administrator must substantially comply with ERISA claim regulations, and rejecting the argument that the same substantial compliance doctrine or principles of fairness excuse a claimant's untimely appeal).

### B.   The Administrative Record unequivocally shows that Cloud received the Committee's decision letter on March 4, 2016, and thus his appeal was untimely.

Cloud argues "there is no evidence in the [Administrative Record] to show when the FedEx package [containing the Committee's 2016 initial decision] was left" at his residence.   Cloud Resp. at 49.   *See also id.* at 48 (arguing that "nothing in the [Administrative Record] evidences when [he] actually received the 2016 Decision Letter").   This assertion is baseless.[3]   Cloud is basically saying that FedEx participated in the grand conspiracy against him by delivering the Committee letter on a Sunday (improbable) and then falsifying its tracking information to indicate that the letter was

---

[3] The Administrative Record contains FedEx tracking information showing that the Committee's initial decision letter was delivered to Cloud's home address on March 4, 2016, and a "claim summary" conveying that information to the Board.  *See* FedEx Shipment Detail at 1 (AR-524); Def's Notice of Filing the Administrative Record (Dkt. 16) at 2 (certifying that the Administrative Record contains a true and correct copy of "FedEx shipment records maintained by the [NFLPBO] confirming Plaintiff's receipt of the Committee's initial decision letter regarding Plaintiff's February 2016 request for reclassification"); Claim Summary (AR-484).   Contemporaneous e-mails that Cloud sought and received in discovery back up this documentation, and demonstrate that before the November 2016 Board meeting the NFLPBO confirmed the March 4 receipt date.  *See* 11/8/16 E-mail fr. N. Maroz (XFILE-1507, 2195) (Dkt. 164-15, at APP. 3812) ("Sam, Could you please check when Player's denial letter dated 3/2/16 was received?"); 11/8/16 E-mail fr. S. Vincent (XFILE-2195) (Dkt. 183, at Supp. App. 4) ("Elise [Richard] confirmed that it was received by [Cloud] on 3/4/2016 via FedEx.").

delivered two days prior (even more improbable).  The Court should reject Cloud's charges out of hand.

## II.  Cloud Did Not Satisfy The Reclassification Provision's Changed-Circumstances Requirement.

Cloud challenges Defendant's argument that he did not meet the reclassification provision's changed-circumstances requirement on several grounds.  None have merit.

### A.  Groom Law Group did not create the reclassification provision, and the Board's interpretation of it was no secret to Cloud.

Cloud begins his assault on the reclassification provision where he usually does—with accusations of malfeasance by Groom Law Group ("Groom")—and gets things wrong. Groom is not "the Plan's architect."  Cloud Resp. at 49.  The Plan is the product of collective bargaining between the NFLMC and the NFLPA, and those bargaining parties created the reclassification provision in a 1998 collective bargaining agreement.[4]  The provision, as adopted, did not define "changed circumstances."  Once it was incorporated

---

[4] A true and correct copy of Article XLVII from 1993-2005 NFL Collective Bargaining Agreement (as amended February 25, 2008) ("1998 CBA") is included in the appendix to this brief.  In that Article, the bargaining parties agreed, *inter alia*, to amend the Plan to add the following:

> ***Section 7.  Classification Rules for Total and Permanent Disability***:  Effective as of July 1, 1993, the parties will amend the Bert Bell/Pete Rozelle Plan as follows:
>
> "5.6  Classification Rules.
>
> (a)  A Player who becomes totally and permanently disabled and who satisfies the conditions of eligibility for benefits under Section 5.1(a), 5.1(b), 5.1(c), or 5.1(d), or Section 5.5, shall be deemed to continue to be eligible only for the category of benefits for which he first qualifies, unless the Player shows by evidence found by the Retirement Board to be clear and convincing that, because of changed circumstances, the Player satisfies the conditions of eligibility for a benefit under a different category of total and permanent disability benefits." ....

1998 CBA at 193 (**Ex. A,** App. 020).

4

into the Plan, the Board had the obligation to interpret and apply it.  *See Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 111 (1989) ("A trustee may be given power to construe disputed or doubtful terms, and in such circumstances the trustee's interpretation will not be disturbed if reasonable.").  And that is what the Board did.

The Board did not commit a "decades-long," "open and direct violation of ERISA." Cloud Resp. at 49.  The Board interpreted, applied, and explained the reclassification provision on a case-by-case basis, as the numerous Board decision letters produced in this litigation attest.

Even if Cloud's claims about the creation and clandestine application of the reclassification provision were true (and they are not), such claims have no bearing here. The decision letters that Cloud received fully disclosed the Board's interpretation of the reclassification provision.  See 3/2/16 Ltr. fr. P. Scott at 4 (AR-481) ("The Committee interprets 'changed circumstances' to mean a change in a Player's condition (i.e., a new or different impairment)."); 11/23/16 Ltr. fr. M. Miller at 2 ("The Retirement Board interprets Section 5.7(b)'s 'changed circumstances' requirement to mean a new or different impairment from the one that originally qualified you for T&P benefits."). Cloud's grievance is not that he did not understand the reclassification provision; it is that he could not meet it.

**B.      The Board applied the same interpretation of the changed-circumstances requirement to Cloud that it applied to every Player before and after him.**

Cloud claims to find vastly different interpretations of the changed-circumstances requirement in the numerous decision letters produced by Defendant in this litigation.[5] *See, e.g.*, Cloud Resp. at 53 (arguing that the letters reveal "wild fluctuations in definitions of Changed Circumstances..."). The Board's decision letters may use slightly different language depending on the context of each claim, but the distinctions are not a difference. To illustrate, Cloud decries the following:

> In one decision letter, Defendant (*i.e.*, Groom) defined it to mean "a new or different impairment ***from the one that originally qualified you for T&P benefits***." In another decision letter, Defendant (*i.e.*, Groom) defined it to mean "a new impairment that did not exist during the original application, ***or an impairment that did exist but is different from the one that formed the basis of the original award of T&P benefits***."

*Id.* (emphasis in original; footnotes omitted). In the language quoted above, Cloud sees "inconsistent definitions" that "amount[] to a gross violation of ERISA." *Id.* at 53-54.

There is no arguable distinction between the language or the concept conveyed by the language in this or any other example Cloud cites. None. The point is: A Player cannot qualify for reclassification based on the same impairments or conditions that led to his original award of T&P benefits. *See* 11/23/16 Ltr. fr. M. Miller at 2 ("The Retirement Board interprets Section 5.7(b)'s 'changed circumstances' requirement to mean a new or different impairment from the one that originally qualified you for T&P benefits."). Even Cloud recognizes that this theme resonates throughout the Board's reclassification

---

[5] Cloud writes: "One month ago, Groom produced thousands of pages of decision letters from 1997 to the present." Cloud Resp. at 49, n.287. The representation is false. Defendant produced the decision letters in October 2021.

decisions.  *See* Cloud Resp. at 51 ("One may only glean from the letters that the definition requires something other than evidence of the existing condition that formed the basis of the original award ('Original Circumstances').").

### C.   Cloud did not satisfy the changed-circumstances requirement.

1.   <u>Dr. Wu's opinions are inadmissible, and on top of that Dr. Wu has no idea whether Cloud presented "changed circumstances."</u>

Defendant's opening brief explained that a simple comparison of Cloud's 2014 T&P application and his 2016 reclassification request showed that the reclassification request was not based on "changed circumstances," as the Board interprets the requirement.  Dkt. 162 at 33-39.  Cloud does not confront this demonstrable reality.  Cloud insists that Dr. Wu's medical expertise is necessary to determine whether Cloud presented "changed circumstances," Cloud Resp. at 55, and, according to Cloud, Dr. Wu "confirmed" Cloud's 2016 reclassification request "presented new conditions, including significant memory and attention problems, decision problems, and affective disorders."  *Id.* at 56.

Dr. Wu's opinions are inadmissible.  *See* 2/22/22 Order (Dkt. 151) at 3 ("Dr. Wu's testimony and the aforementioned exhibits will not be considered for the purpose of resolving 'disputed materials facts' or the 'merits of the claim itself.'"); *see also Vega v. Nat'l Life Ins. Servs., Inc.*, 188 F.3d 287, 299-300 (5th Cir. 1999) (holding that district courts may not consider "doctors' affidavits" introduced "to resolve the merits of the claim itself" where the affidavits were submitted after litigation had been initiated), *overruled on other grounds as recognized by Youboty v. NFL Player Disability*, No. 20-40613, 2021 WL 1533662 (5th Cir. Apr. 16, 2021); *Jurasin v. GHS Prop. & Cas. Ins. Co.*, No. SA-09-CA-00562-FB, 2011 WL 13234954, at *4–5 (W.D. Tex. Jan. 20, 2011) (striking new testimony from a doctor regarding a "CT scan study" "that the prior doctors did not have

the benefit of" because it was an impermissible attempt "to introduce ... extrinsic evidence ... to resolve factual controversies related to the merits of the claim") (applying *Vega*); *Neathery v. Chevron Texaco Corp. Grp.*, 303 F. App'x 485, 487 (9th Cir. 2008) (holding that it was reversible error for the district court to "admit[] the [Expert] Report as part of the administrative record" because it was "submitted ... after the administrative record closed").

Even if Dr. Wu's opinions were part of the Administrative Record, his opinions are baseless. Dr. Wu had no clue about the substance of Cloud's 2014 T&P application versus his 2016 reclassification request because ███████████████████████████████ ███████████.[6]  *See* Wu Depo. II (APP. 6308 at 249:18-24) ████████████████████ ████████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████.  Graphics 1, 2, and 3 below show that the "new conditions" allegedly discovered by Dr. Wu were not new to Cloud's 2016 reclassification request; they appeared throughout Cloud's prior 2014 T&P application and the Social Security decision underlying it.

---

[6] This brief is redacted to remove content currently designated as confidential under the Protective Order (Dkt. 83). Defendant will submit an un-redacted copy of this brief to the Court in chambers, and serve an un-redacted copy on Cloud's attorney.

**Graphic 1: Cloud's 2014 T&P Application (AR-96- 97)**

**Disabilities and Cause**

**(PART 1)** Describe all of the conditions that you believe make you unable to work. Please state if any of these conditions resulted from service in the military of any country. You may attach additional sheets if necessary to identify the conditions which you would like the Plan to consider.

Condition 1: 1. Post-Concussion Syndrome  2. Clinical Depression    3. Dementia Pugilistica

Condition 2: 4. Migraine    5. Benign Paroxysmal Positional Vertigo    6. Impaired Verbal Fluency

Condition 3: 7. Acute Compartment Syndrome    8. Plantar Fasciitis    9. Cluneal Nerve Injury

Condition 4: 10. Bilateral Shoulders  11. Bilateral Elbows  12. Bilateral Wrists  13. Hands  14. Fingers, 15. Bilateral Feet/Toes  16. Bilateral Ankles  17. Bilateral Knees  18. Bilateral Hips  19. Lumbar

Condition 5: 20. Cervical  21. Thoracic.

**— CONTINUED ON NEXT PAGE —**

**Disabilities and Cause (Continued)**

**(PART 2)** Higher benefits are payable if the disability(ies) that renders you totally and permanently disabled arose while you were an Active Player, and caused you to be totally and permanently disabled "shortly after" the disability(ies) first arose. In such cases the amount of your benefit will depend on whether your disability(ies) results from NFL football. If you believe you may qualify for such higher benefits, please indicate below (a) when the disability(ies) arose, (b) when they caused you to be totally and permanently disabled, and (c) whether the disability(ies) resulted from NFL football or another cause (for example, auto accident). On (c), please list all injuries, accidents or illnesses that may have caused or contributed in any way to any of the conditions listed in section 4, Part 1. You may attach additional sheets or supporting documentation.

(a) 1999-2002 - Kansas City Chiefs, 2003-2004 - New England Patriots - 2004-2005 New York Giants

(b) 2006 - Released by New York Giants - Difficulties Understanding Offensive & Special Teams Basics Playbooks

(c) All injuries listed in (Part 1) are a direct result from NFL Football Activities.

**(PART 3)** Describe the problems you are currently experiencing.  Migraine Headaches, Depression, Memory Loss, Vertigo, Insomnia, Unpredictable Irritability.

Sever Pain in: Right Foot, Left Great Toe, Left Hip, Base of Neck and Lower Back.

Numbness in: Right Leg, Arms and Fingers.

Difficulties with: Verbal Fluency Decision Making and Concentration.

**Graphic 2: 6/28/14 Ltr. fr. M. Cloud (AR-99)**

Mr. Cloud has been awarded a **Fully Favorable Decision** of **SSDI Benefits** and **SSDI** with an onset date of **Decemebr 31, 2008**, as a result of severe impairments of migraine headaches and affective mental disorder stemming from multiple NFL football concussions. His SSDI award letter and a copy of his entire Social Security and medical file are also enclosed. This information will be used to further assist in his medical care.

**Graphic 3: 6/18/14 SSA Decision at 3 (AR-106)**

3.  The claimant has the following severe impairments: migraine headaches, affective disorder.  (20 CFR 404.1520(c)).

2.    Cloud did not automatically present "changed circumstances" simply because he was originally awarded T&P benefits under the Plan's Social Security standard.

Cloud argues that his initial award of T&P benefits was not based on any impairments at all, but rather his Social Security award, and so any impairment mentioned in his reclassification request was a new impairment that automatically met the Board's definition of "changed circumstances."  Cloud Resp. at 50.  The Court should reject this argument because Cloud did not raise it with the Board or join it in this case. *See Gomez v. Ericsson, Inc.*, 828 F.3d 367, 374 (5th Cir. 2016) ("[Plaintiff] tries a new argument not raised before the administrator—that the value of any unreturned property should offset his severance pay.  But we cannot consider an argument that a plan did not first have the opportunity to assess."); *Sims v. City of Madisonville*, 894 F.3d 632, 643 (5th Cir. 2018) (affirming district court decision holding that where plaintiff "failed to raise . . . theories in his first amended complaint," he "could not do so for the first time on summary judgment").

In any event, Cloud's argument falls apart when one realizes that the Social Security Administration (and the Plan) tie ***disability*** benefits to an underlying ***disability***.  Thus the notion that the SSA award was a blank slate on which Cloud could later write any disability, and transform that disability into a "changed circumstance," is a false, starting premise.  So while Cloud may now wish the Board did not "dive into the reasoning behind [his] SSA award" and "parse through the various impairments underlying" that award, Cloud Resp. at 50, the Board has discretionary authority to interpret the Plan and decide claims for benefits.  PD §§ 8.2(a) (AR-048), 8.2(c) (AR-049), 8.9 (AR-052).  In exercising this authority, the Board was entitled to conduct the review and reach the conclusion that it did.

3. <u>Cloud acknowledged that he did not present "changed circumstances" when **_his lawyers_** asked the Board to waive that exact requirement.</u>

Defendant's opening brief noted that Cloud admitted he did not meet the changed-circumstances requirement when he asked the Board to waive it. Dkt. 162 at 33. Cloud rejects this characterization, as well as Defendant's added observation that Cloud has tried throughout this litigation to rescind his concession and manufacture "changed circumstances" by rewriting the facts and the record before the Board. In a few short sentences, Cloud says Defendant's arguments are "not the arguments of fiduciaries;" he represents that "Jennifer [Cloud] assisted" Cloud with his reclassification request (because Defendant failed to do so and Cloud did not know how the Board applied the changed-circumstances requirement); and he claims that his waiver request had nothing to do with the changed-circumstances requirement, but rather it "track[ed] the last sentence of Section 5.7(b)…, which waives certain requirements of the Plan." Cloud Resp. at 56-57. None of these statements are fair or accurate.

<u>First</u>, Defendant can defend itself in litigation against Cloud's claims notwithstanding the Board's fiduciary role. *See Neathery v. Chevron Texaco Corp. Grp. Acc. Pol'y No. OK826458*, No. 05CV1883-JM CAB, 2006 WL 4690828, at *2 (S.D. Cal. July 11, 2006) ("When an administrator is required to justify or to defend against a beneficiary's claims made because of an act of plan administration, the administrator does not act directly in the interests of the disappointed beneficiary but in his own interests or in the interests of the rest of the beneficiaries.") (citation omitted); *Atkins v. Bert Bell/Pete Rozelle NFL Player Ret. Plan*, No. A-10-CA-515-SS, 2011 WL 13269723, at *2 n.4 (W.D. Tex. Aug. 8, 2011) (recognizing the Board "has a duty to protect the interests of the plan as a whole, and thus may be adversarial to a particular claimant").

11

Second, Cloud is again misrepresenting basic facts that are perfectly within his knowledge. Jennifer Cloud did not help him with his 2016 reclassification request. At deposition, Ms. Cloud said ███████████████████████████████████ ████████ Depo. of J. Cloud (APP. 1161- 62 at 61:14-62:16). And Cloud himself testified that the Sol Weiss law firm prepared his 2016 reclassification request. Depo. of M. Cloud (APP. 968-69 at 191:25-192:10).

Third, Cloud's attempts to reinterpret the arguments that Sol Weiss made in connection with his 2016 reclassification appeal fall flat, because the arguments speak for themselves. The Sol Weiss firm wrote:

> While Mr. Cloud recognizes that his benefits can only be reclassified if there are 'changed circumstances' under Plan section 5.7(b), Mr. Cloud submits that **this requirement should be waived** under the circumstances here.

9/2/16 Appeal Ltr. at 3 (AR-492) (emphasis added). From this there can be no doubt the Sol Weiss lawyers meant what they said, and they said what they meant: Cloud did not present any new or different impairments. Sol Weiss sought a do-over on Mr. Cloud's 2014 T&P application, something the bargaining parties prohibited with their adoption of the reclassification provision nearly two decades earlier in 1998. *See also id.* ("... Mr. Cloud submits that **the 'changed circumstances' requirement be waived** and this application **be treated as an initial application for Active Football benefits**.") (emphasis added). The Sol Weiss waiver request did not simply "track[] the last sentence of Section 5.7(b)" concerning the 42-month lookback rule as Cloud suggests. Cloud Resp. at 57. Sol Weiss addressed the lookback rule separately in the same appeal letter. *See* 9/2/16 Appeal Ltr. at 3 (AR-492) ("Further, the 42 month limitations period outlined in section 5.7(b) should also be waived because Mr. Cloud's medical records establish that

he is and was 'mentally incapacitated in a matter that substantially interferes with the filing of' his claim.").

### III.   Cloud Concedes He Could Not Qualify For Active Football Benefits.

Cloud pejoratively wonders how the Board could expect him "to show evidence of a 'new or different impairment' that ***arose while he was still playing in the NFL***," given that he was already receiving T&P benefits and no longer playing in the NFL.  Cloud Resp. at 54 (emphasis in original).   Cloud then admits he cannot satisfy this requirement—before reflexively blaming Groom.  *Id.* ("This latest Groom Interpretation of Changed Circumstances is an absurdity, and admittedly is the only one that Cloud cannot satisfy.").

The Plan is the source of Cloud's conundrum, not Groom.  To obtain Active Football benefits, a Player's disabling condition must arise while he is an Active Player, and it must then cause him to become totally and permanently disabled "shortly after" it first arises.  PD §§ 5.3(a), 5.3(e) (AR-32).  As Defendant pointed out in its opening brief, Dkt. 162 at 39, n.30, even if Cloud developed a new and disabling impairment of some kind between 2014 and 2016 as Cloud now says, Cloud Resp. at 55 (explaining that "Cloud complained of new issues in his 2016 Application"), that would mean either the impairment did not arise while Cloud was an Active Player, or if it did then he became totally and permanently disabled by that impairment eight or more years after it first arose.  Accordingly, Cloud could never meet the Active Football standard or qualify for reclassification to that level of benefits.  The Sol Weiss firm clearly understood these limitations.  To surmount them, Sol Weiss argued—very specifically—that Cloud became totally and permanently disabled "shortly after" an October 31, 2004 concussion.

Cloud perceives only unfairness in this outcome, believing he has been unjustly deprived of the Plan's highest-paying benefit.  But the Board's obligation is to apply the terms of the Plan, and the simple truth is Active Football benefits were not designed to cover degenerative conditions like the one presented by Cloud,[7] and the reclassification provision was not intended to give Players the ability to perpetually challenge otherwise final benefits decisions.

## IV.   Cloud Concedes Count II Is Redundant, And He Does Not Point To Any Admissible Evidence To Support It.

Cloud says that Count II is part and parcel of his claim for benefits under Count I. *See* Cloud Resp. at 62 ("The requirements of this provision are not limited to Count II as a 'full and fair review' is a fundamental component of the provisions underlying Cloud's claims in Count I)...").  If Count II does not stand on separate footing or provide any independent grounds for relief, the Court should dismiss it.  *See Jacobson-Boettcher v. Dowdy*, No. H-18-0853, 2018 WL 3520506, at *8 (S.D. Tex. July 20, 2018) ("[T]he court concludes that plaintiff's claim... is subject to dismissal because it duplicates [other] claims[.]").

According to the Amended Complaint, Count II is predicated on allegations that Defendant failed year after year to respond to Cloud's request for "relevant" documents. *See* Am. Compl. ¶ 50 (alleging that Cloud's request for reclassification did not receive a "full and fair review" because "he was not provided with his full history of medical

---

[7] The Inactive A benefits that Cloud currently receives were once called "Football Degenerative" benefits, and they "were so named because they were intended for Players who gradually became disabled, in 'degenerative' fashion, after leaving professional football."  *See* Dkt. 162 at 10, n.12 (noting that Inactive A benefits were previously called Football Degenerative benefits).

documentation," and "[Defendant] (and its advisors and counsel) [were] withholding relevant records").  Cloud claims the Administrative Record shows that "he has been requesting records related to and in support of his 2009 Application, 2010 Appeal, 2014 Application, 2016 Application, and 2016 Appeal," Cloud Resp. at 63, but cites nothing in the Administrative Record or any one of the thousands of pages of documents produced from the NFLPBO's files evidencing a single request from Cloud, his wife, or his attorneys that went unanswered.

Cloud states that "Defendant is the only party who possesses a complete copy of the [Administrative Record]," and suggests that it may be incomplete because Defendant produced additional documents in discovery and asked the Court to consider documents that Cloud selectively excluded from the thousands of pages of material he put before the Court.  Cloud Resp. at 63-64.  To be clear, the Administrative Record is complete.  When Defendant filed the Administrative Record with the Court in January 2021, it represented that the Administrative Record contained "a true and correct copy of all material prepared for and/or presented to the Retirement Board of the Bert Bell/Pete Rozelle NFL Player Retirement Plan in connection with its decision on Plaintiff's February 2016 request for reclassification of his T&P benefits."  Def's Notice of Filing Admin. Record (Dkt. 16) at 2.  That statement was true then, and it is true today.

Defendant has nothing on Cloud that it has not already produced.  Throughout the course of this litigation, Defendant turned over every phone note, e-mail, and portion of the disability file maintained by the NFLPBO relating to Cloud.  Many of those documents were extraneous to the Administrative Record (many were duplicative of it), and so when producing them Defendant gave them the "XFILE" bates prefix.  The Court has admitted the XFILE documents to the extent they are probative of the completeness of the

Administrative Record or material to another *Crosby* exception.  Under the rule of completeness, the Court should consider **all** of these documents, not just the ones that Cloud wants the Court to see.  Among it all, Cloud cannot point to anything showing that Defendant ever failed to respond to a single document request of any kind.

## V.     The Board Does Not Have A Structural Conflict, So Nothing Should Diminish The Abuse-Of-Discretion Standard Of Review.

Cloud informs the Court that it may account for a plan administrator's "structural conflict" when it considers whether the administrator abused its discretion.  Cloud Resp. at 46.  Cloud does not specifically argue that the Board suffers from such a conflict, however, and so the argument is waived.  *Nichols v. Enterasys Networks, Inc.*, 495 F.3d 185, 190 (5th Cir. 2007) (concluding argument "waived for inadequate briefing" where party "failed to provide any evidence—or any legal argument beyond bare assertions").  Furthermore, every court to address the question has held that the Board does not have a structural conflict.  *See, e.g.*, *Boyd v. Bert Bell/Pete Rozelle NFL Player Ret. Plan*, 796 F. Supp. 2d 682, 690-91 (D. Md. 2011); *Johnson v. Bert Bell/Pete Rozelle NFL Player Ret. Plan*, 468 F.3d 1082, 1086 (8th Cir. 2006); *Courson v. Bert Bell NFL Player Ret. Plan*, 75 F. Supp. 2d 424, 431 (W.D. Pa. 1999), *aff'd,* 214 F.3d 136 (3d Cir. 2000).  Nothing should diminish the deference afforded the Board's decision under the abuse-of-discretion standard of review.

## CONCLUSION

The Court should grant Defendant's motion and enter judgment in favor of Defendant on Counts I and II of Cloud's Amended Complaint.

Dated:  April 1, 2022                    Respectfully submitted,

                                         GROOM LAW GROUP, CHARTERED

                                         By: _____
                                             Michael L. Junk, *pro hac vice*
                                             Edward J. Meehan, *pro hac vice*
                                             1701 Pennsylvania Avenue NW
                                             Washington, DC 20006
                                             P: (202) 857-0620
                                             F: (202) 659-4503
                                             mjunk@groom.com
                                             emeehan@groom.com

                                         MUNSCH HARDT KOPF & HARR, P.C.

                                             Toni Anderson
                                             Texas Bar No. 24105432
                                             500 N. Akard Street, Suite 3800
                                             Dallas, TX 75201
                                             P: (214) 855-7500
                                             F: (214) 855-7584
                                             tanderson@munsch.com

                                             D. Mitchell McFarland
                                             Texas Bar No. 13597700
                                             700 Milam Street, Suite 2700
                                             Houston, TX 77002
                                             P: (713) 222-1470
                                             F: (713) 222-1475
                                             mmcfarland@munsch.com

                                         COUNSEL FOR DEFENDANT

## <u>CERTIFICATE OF SERVICE</u>

I certify that on April 1, 2022, the foregoing REPLY IN FURTHER SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ON THE ADMINISTRATIVE RECORD was filed with the Clerk of Court via CM/ECF, which will automatically deliver notice of the filing to all counsel of record.  I further certify that an un-redacted copy of this brief was emailed to all counsel of record.

Michael L. Junk, *pro hac vice*