# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

| | | |
|---|---|---|
| **MICHAEL CLOUD,** | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| vs. | § | **Civil Action No. 3:20-CV-01277-E** |
| | § | |
| THE  BERT  BELL/PETE  ROZELLE | § | |
| NFL PLAYER RETIREMENT PLAN, | § | |
| | § | |
| *Defendant.* | § | |

---

**PLAINTIFF'S REPLY TO DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR JUDGMENT ON THE ADMINISTRATIVE RECORD AND OTHER EVIDENCE OF PLAN INTERPRETATIONS AND VIOLATIONS OF ERISA (PURSUANT TO FRCP 52(a)) OR, ALTERNATIVELY, MOTION FOR SUMMARY JUDGMENT**

---

NOW COMES Plaintiff Michael Cloud and files his Reply to *Defendant's Opposition to Plaintiff's Motion for Judgment on the Administrative Record and Other Evidence of Plan Interpretations and Violations of ERISA (Pursuant to FRCP 52(a)) or, Alternatively, Motion for Summary Judgment* [Dkt. 182], and respectfully shows this Honorable Court as follows.

T<small>ABLE OF</small> C<small>ONTENTS</small>

P<small>AGE</small>

T<small>ABLE OF</small> A<small>UTHORITIES</small>..................................................................................... V

I<small>NTRODUCTION</small> ...................................................................................................1

A<small>RGUMENT</small> ........................................................................................................3

I.    Cloud Demonstrated Entitlement to Reclassification to Active Football
(T&P Benefits)...................................................................................3

      A.    Groom, Not the Board, Relies Upon and Makes Unreasonable
Inferences from the AR in a Self-Serving Argument that Cloud's
Administrative Appeal Was Untimely...........................................3

            1.    The AR does not show Cloud received the Committee's
decision letter on March 4, 2016, and the Court should
reject Defendant's unreasonable and self-serving *post
hoc* attempts to show otherwise ...........................................4

            2.    The decision letter misrepresents that the Board denied
Cloud's appeal because it was untimely. If *de novo*
review applies, the Court cannot adopt Defendant's
unreasonable and self-serving conclusion ............................8

      B.    Cloud's Request for Reclassification Satisfies the Changed
Circumstances Requirement ........................................................10

            1.    Defendant's self-serving adoption of and unreasonable
inferences from a "Side-By-Side Comparison" of 2014
and 2016 Applications combined with burying the
DiDio Recommendations confirms Defendant engaged
in no effort to evaluate Cloud's New Conditions or
Impairments ........................................................................11

            2.    Defendant's violation of the Plan and ERISA in
refusing to evaluate or refer Cloud for neurological
examinations is highlighted by its prejudicial argument
that New Impairments or Conditions would be
"Irrelevant" and would not have made Cloud eligible
for additional benefits .........................................................14

      C.    Cloud Met the "Shortly After" Requirement for Active Football
Benefits .......................................................................................16

1.    Defendant misstates the AR, and argues Cloud makes a
new claim that his "Disability" first arose at the end of
the 2005 NFL Season...........................................................................16

2.    Cloud is the only one who has established the timing of
his Disability (and T&P Disability). Defendant has
never tried ..........................................................................................17

D.    Cloud's Argument that the "Shortly After" Requirement Does
Not Apply is Based on Plan Terms, is Not Contradicted by
Federal Court Precedent, and Was Not "Doubly Waived".............................20

II.    Defendant Fails to Refute Cloud's Arguments for Applying *De Novo*
Review .............................................................................................................23

CONCLUSION..........................................................................................................................25

CERTIFICATE OF SERVICE .........................................................................................................26

<u>**TABLE OF AUTHORITIES**</u>

**CASES**                                                                                                    <u>**PAGE**</u>

*Abatie v. Alta Health & Life Ins. Co.*, 458 F.3d 955 (9th Cir. 2006)........................................... 14

*Atkins v. Bert Bell/Pete Rozelle NFL Player Ret. Plan,*
694 F.3d 557 (5th Cir. 2012) ...................................................................................................... 14

*Baker v. Metropolitan Life Ins. Co.*, 364 F.3d 624 (5th Cir. 2004) .............................................. 23

*Boyd v. Bert Bell/Pete Rozelle NFL Players Retirement Plan,*
410 F.3d 1173 (9th Cir. 2005) .................................................................................................... 21

*Bjornson v. Astrue*, 671 F.3d 640 (7th Cir.2012).......................................................................... 18

*Burell v. Prudential Ins. Co. of Am.*, 820 F.3d 132 (5th Cir. 2016)............................................... 14

*Conkright v. Frommert*, 559 U.S. 506 (2010)................................................................................. 14

*Custer v. Murphy Oil USA, Inc.*, 503 F.3d 415 (5th Cir. 2007)........................................................ 5

*Firestone Tire & Rubber Co. v. Bruch,*
489 U.S. 101, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989)................................................................. 15

*Gen. Elec. Co. v. Joiner*, 522 U.S. 136 (1997) .............................................................................. 18

*Gerritsen Beach Invs., Ltd. v. Jemal*, No. 3:08-CV-1192-N,
2010 WL 11618302 (N.D. Tex. Apr. 9, 2010) ........................................................................... 20

*Gomez v. Ericsson, Inc*., 828 F.3d 367 (5th Cir. 2016) ................................................................. 22

*Gosselink v. AT&T, Inc.*, 272 F.3d 722 (5th Cir. 2001)................................................................... 23

*Hudson v. Nat'l Football League Mgmt. Council,*
No. 18-cv-4483 (GHW) (RWL), 2019 WL 5722220 (S.D.N.Y. Sept. 5, 2019)........................ 13

*Jackson v. Royal Caribbean Cruises, Ltd.,*
389 F. Supp. 3d 431 (N.D. Tex. 2019) ...................................................................................... 19

*Klotz v. Xerox Corp.*, 332 F. App'x 668 (2d Cir. 2009) ................................................................... 7

*Lafleur v. Louisiana Health Service and Indemnity Co.*, 563 F.3d 148 (5th Cir.2009)............... 14

*Moore v. Ashland Chem., Inc.*, 151 F.3d 269 (5th Cir. 1998) ...................................................... 18

TABLE OF AUTHORITIES (CONT'D)

*Sims v. City of Madisonville*, 894 F.3d 632 (5th Cir. 2018) ........................................................ 22

*Super Future Equities, Inc. v. Wells Fargo Bank Minnesota, N.A.*,
Civ. A. 06–CV–0271, 2007 WL 4410370 (N.D. Tex. Dec. 14, 2007) ........................................ 8

*TracFone Wireless, Inc. v. CNT Wireless LLC*,
No. 1:19-CV-24325-DPG, 2019 WL 5863911 (S.D. Fla. Nov. 8, 2019) ..................................... 7

*TracFone Wireless, Inc. v. Nektova Grp., LLC*,
328 F.R.D. 664 (S.D. Fla. 2019) ................................................................................................. 7

*Vega v. Nat'l Life Ins. Servs.*, Inc., 188 F.3d 287 (5th Cir. 1999) ................................................. 2

*Youboty v. NFL Player Disability*,
No, 20- 40613, 2021 WL 1533662 (5th Cir. Apr. 16, 2021) ...................................................... 2

**Rules**

Fed. R. Civ. P. 30(b)(6)................................................................................................................. 8

Fed. R. Civ. P. 45 ......................................................................................................................... 7

## INTRODUCTION

Defendant begins its Response by mischaracterizing its violations of the Plan and ERISA as "Cloud's conspiracy theories and innuendo[.]"[1] Cloud's allegations are not free-flowing unsubstantiated complaints before Congress in 2007. They are each supported by evidence cited in the AR, including documents that Defendant failed to produce until over one year after initiation of this lawsuit and several months after this Honorable Court's deadline for Defendant to produce them.[2] Defendant told this Court that it complied and produced all the documents shortly before depositions of members of the Board, which were ordered by this Honorable Court.[3] However,

---

[1] Dkt. 182 at 1. For purposes of this Reply, Cloud cites to his own Brief and Defendant's Response by referring to the page number in the body, not the e-file heading on each page.

[2] Defendant is aware of the importance of the AR. At a hearing on September 10, 2021, Defendant's counsel stated "Plaintiff is trying to inquire into the basis of the decision. What I am saying is the decision *rises or falls on the administrative record*." Dkt. 60 at 68:4-6 (emphasis added). This is why Defendant withheld 3,000+ documents from the AR and now attempts to persuade this Honorable Court that it cannot decide certain issues because of its October 8, 2021 Order [Dkt. 77] before the AR was supplemented and briefed. *See* Dkt. 182 at 1. Defendant misstates that the Order already rejected the evidence that Groom fabricated Board decisions and, in support, Defendant cites only a portion of the Order out of context (bold emphasis reflecting the selective portion quoted by Defendant):

> "But information on handling Plaintiff's T&P Benefits claim can be obtained through the depositions of the **members of the Board**, as they **are the ones who decided his appeal and made the determination**. Plaintiff also has access to 'similar procedures and definitions used in handling of contemporaneous claims by other players' since this Court ordered the disclosure of such information and Plaintiff may question the Board on ERISA procedures (including whether the Plan documents were defined consistently). *See* ECF No. 71."

*Id*. at 3. In the Order, it is notable that this Honorable Court took a "wait and see" approach by referencing its prior September 30, 2021 Order [Dkt. 71] which required Defendant to **(1)** disclose information so Plaintiff may question the Board on ERISA procedures (including whether the Plan documents were defined consistently), and **(2)** present Board members for deposition. *See* Dkt. 77 at 3; Dkt. 71 at 14 ("Defendant is ORDERED to produce documents … within fourteen days of the date of this Order."); Dkt. 71 at 8 ("At issue is whether the Board complied with procedural requirements … and the depositions of those who participated … may shed light on this issue."); Dkt. 71 at 9 ("Within fourteen days of this Court's forthcoming order on Plaintiff's Motion to Disqualify … Defendant shall present two members of the Board.").

[3] On October 26, 2021, Defendant represented to this Honorable Court that it had "completed its production of documents falling within the scope of this Honorable Court's discovery order" and "two Board members—Mr. Cass and Mr. Smith—will now appear for deposition in Dallas on October 28 and November 2, 2021[.]" *See* Dkt. 86 at 1.

1

several months after Cloud took those depositions, Defendant produced 3,000+ pages, which included evidence of Defendant's mishandling of Cloud's applications and appeals and extensive decades-long violations of the Plan and ERISA. There is a point at which a conspiracy theory is no longer a theory and becomes fact. Cloud has demonstrated gross violations of the Plan and ERISA.

Defendant argues the denial of Cloud's 2016 Appeal was reasonable and "objectively correct" based on three independent bases: the Untimeliness Argument (*i.e.*, 180 days to appeal) (Cloud also refers to this in his Brief at the Untimely Appeal Argument and Groom Untimeliness Argument. *See* Dkt.156 at 25, 35), the Changed Circumstances argument, and the Shortly After argument.[4] Defendant also argues for an abuse of discretion standard by claiming its decade-long systemic violations of the Plan and ERISA are excused as just minor "procedural irregularities."[5]

---

[4] Besides Defendant's purported grounds for denial of Cloud's 2016 Appeal, in multiple instances Defendant also lifts Fifth Circuit language out of context in an effort to urge this Court to condone Defendant's violations of the Plan and ERISA. For example, Defendant argues it is excused from doing anything to evaluate Cloud's 2016 Appeal and his Changed Circumstances because the Fifth Circuit in *Vega v. Nat'l Life Ins. Servs., Inc.* wrote: "the district court may not impose a duty to reasonably investigate on the administrator." Dkt. 182 at 3, citing *Vega v. Nat'l Life Ins. Servs., Inc.*, 188 F.3d 287, 299 (5th Cir. 1999) (en banc), overruled on other grounds as recognized by *Youboty v. NFL Player Disability*, No, 20-40613, 2021 WL 1533662 (5th Cir. Apr. 16, 2021). Defendant left out key language where the Fifth Circuit wrote, "[a]lthough the administrator has no duty to **contemplate arguments** that could be made by the claimant, we do expect the administrator's decision to be based on evidence, even if disputable, that clearly supports the basis for its denial." *Vega*, 188 F.3d at 299 (emphasis added).The point in *Vega* is that Defendant has an obligation to comply with the Plan and ERISA, reasonably evaluate the 2016 Appeal, and present the Court with an AR that supports the denial. Defendant has done none of that.

[5] Defendant claims the Fifth Circuit "has rejected arguments to alter the standard of review based on procedural irregularities in ERISA benefit determinations[.]" Dkt. 182 at 4 and n.4. ***In this regard, Defendant asks this Court to skip the first 56 pages of Cloud's Brief and gloss over Defendant's acts and omissions***. *See id.* at 3.Certainly, skipping those pages would greatly benefit Defendant because they contain an indisputable recitation to the AR showing Defendant's decade-long systemic violations of the Plan and ERISA, including as to Cloud's 2009 Application, 2010 Appeal, 2014 Application, 2016 Application, and 2016 Appeal. Just as with the evidence that Defendant did not actually decide the 2016 Appeal, Defendant again argues the Court must ignore all evidence in favor of *de novo* review because the Court has bound itself to review this case under an abuse of discretion, stating "[s]ince the Court ruled abuse of discretion review would apply" … "the Court need not reach any of these other largely irrelevant and false claims in Cloud's brief[.]" Dkt. 182 at 3.

Defendant's arguments do little more than ask this Court to turn a blind eye to Defendant's violations of the Plan and ERISA.

Defendant concludes its introduction with an objectively offensive comment by a fiduciary who did little, if anything, to evaluate Cloud's NFL Brain Injuries and Cognitive Impairments: "***it is possible that never has an ERISA plan given so much review to such an obviously unmeritorious claim***." This is only true to the extent Defendant continues to view litigation as part of the claims process. Federal courts have already "advised" Defendant otherwise, but this case shows the message remains unheard.

## ARGUMENT

### I.    Cloud Demonstrated Entitlement to Reclassification to Active Football (T&P Benefits).

None of Defendant's "three independent bases" support affirmation of Defendant's denial of the 2016 Appeal, under either a *de novo* or abuse of discretion review.[6] Defendant has failed to refute any of the evidence or argument cited in Cloud's Brief.

### A.    Groom, Not the Board, Relies Upon and Makes Unreasonable Inferences from the AR in a Self-Serving Argument that Cloud's Administrative Appeal Was Untimely.

Cloud fully briefed the Untimeliness Argument and its inclusion in the Groom Fabricated Board Positions.[7] Nonetheless, Defendant still argues Cloud missed the 180-day deadline even though (1) the AR shows the Board thought the argument was "crazy",[8] (2) the Court rejected

---

[6] Defendant argues Cloud put all his eggs in the *de novo* review basket, and "does not argue that any of the three bases can be reversed under the abuse of discretion standard of review the Court already ruled would apply." Dkt. 182 at 5. This is just another misguided argument by Defendant. Cloud sought alternative relief under abuse of discretion review, Dkt. 156 at 41 ("Alternative Abuse of Discretion Standard"), at 63 ("Alternatively, Cloud respectfully requests that this Honorable Court remand this matter to the Board for re-hearing"), and this Court is not bound by any statement of the standard of review before it heard any of the evidence.

[7] Dkt. 156 at 25-26, 32-35.

[8] Dkt. 156 at 33.

evidence of the alleged tracking number because, as admitted by Defendant, (3) "the evidence was not before the Board",[9] (4) the AR reveals Vincent, Marshall, and Groom fabricated it as another basis for denial before and after the Board Meeting,[10] (5) the AR includes only raw data from an unidentified source that references alleged delivery of something to Cloud,[11] (6) Defendant's own corporate representative did "not know the circumstances of how th[e decision] letter was sent" and had no evidence Cloud actually signed for it,[12] (7) the use of FedEx does not comply with ERISA,[13] (8) the Plan and decision letter said Cloud had 180 days from *his receipt* of the decision letter and the Plan likewise provides the Board's receipt is effective "only if and when actually received by the … Board",[14] and (9) the only affirmative evidence in the AR refutes the alleged date of receipt argued by Defendant.[15]

>    1.    **The AR does not show Cloud received the Committee's decision letter on March 4, 2016, and the Court should reject Defendant's unreasonable and self-serving *post hoc* attempts to show otherwise.**

The Plan imposes a 180-day deadline for appeals, which ran from the date Cloud received the 2016 Decision Letter.[16] If a fiduciary is going to deny benefits to a beneficiary based upon when he receives a notice letter, how hard is it to send an **email**[17] with read receipt and also regular mail with tracking information (and document the tracking information in the AR) to at least shows

---

[9] Dkt. 182 at 1.

[10] Dkt. 156 at 25-26, 32-35, 46-47, 49, 61-62.

[11] Dkt. 16 at CLOUD-AR-524-529.

[12] App.434-35 at 392:12 – 394:7.

[13] Dkt. 156 at 22 and n. 142.

[14] Dkt. 16 at CLOUD-AR-61, 64, 489.

[15] Dkt. 156 at 22 and n. 142.

[16] Dkt. 16 at CLOUD-AR-61 (§12.6), 64 (§12.8).

[17] Defendant's own application forms request applicant email addresses, Cloud included an email address each time, and both Defendant and Groom knew and repeatedly exchanged emails with Cloud on various matters related to his LOD Benefits and T&P Benefits, including the 2016 Application and 2016 Appeal. *See, e.g.,* App.2491, 2521-23, 2558-63, 3112, 3124, 3169, 3714, 3736, 3743, 4177-79, 4781, 4785, 4794-97, 4835. If Defendant is going to deny T&P Benefits based upon an Untimeliness Argument that relies upon convoluted "evidence", then it is unreasonable for Defendant to not send decision letters by regular mail ***and email***.

4

a date/time of delivery of the specific notice letter? Defendant did none of that and cannot even identify the tracking number of the single 2016 Decision Letter sent to Cloud. Instead, Defendant falsely states "Plan records indicate that Cloud received the Committee decision letter on March 4, 2016[.]"[18] Defendant argues Cloud seeks to "undermine" "**contemporaneous business records**" in the AR that show "FedEx tracking data" … "indicates that the package sent to 'Michael Cloud' on '3/2/2016' (the date of the Committee's letter) at '120 Mont Blanc Drive' in 'Rockwall' 'TX' (Cloud's home address) had a 'Shipment Delivery Date' of '3/4/2016' and a 'Shipment Delivery Time' of '14:07.'"[19] The documents to which Defendant cites are not its "business record", certainly are not "contemporaneous", and there is no evidence to support either assertion. There is not even evidence as to its source, who created it, or who put it in the AR, nor is there evidence in the AR as to what document the purported package relates or any related tracking number to establish date/time of delivery or any evidence of the date/time of Cloud's *actual receipt*.[20]

---

[18] Dkt. 182 at 5.

[19] Dkt. 182 at 6, citing Dkt. 16 at CLOUD-AR-524-529.

[20] Defendant appears to waffle back and forth as to the requirement of **actual receipt** by Cloud. First, Defendant's corporate representative Vincent testified "I would say the claimant has 180 days from the time ***they receive*** their decision to file an appeal." App.432 at 386:7-9 (emphasis added). However, Defendant's Response meanders all over the place on this issue. First, it applies the Plan requirement of actual receipt to both Cloud and Defendant [Dkt. 182 at 5; Dkt. 16 at CLOUD-AR-64 at §12.8], then it ignores its statement to Cloud in the 2016 Decision Letter that he could appeal by "filing a written request for review … within 180 days of **your receipt** of this letter" which mentions nothing about actual receipt by Defendant or mail on Cloud's doorstep equating to his "receipt of this letter" [Dkt. 16 at CLOUD-AR-489 (emphasis added)], then refers to case law citing the general rule under ERISA regulations [Dkt. 182 at 8, citing *Custer v. Murphy Oil USA, Inc*., 503 F.3d 415, 419 (5th Cir. 2007) ("the question [under the regulation] is not whether there was actual receipt by the plaintiffs, but rather whether the plan administrator 'use[d] measures reasonably calculated to ensure actual receipt.'"], then consistent with its introductory position above acknowledges that the different standard included in the Plan (*i.e.*, "actual receipt" of documents – referring to Dkt. 16 at CLOUD-AR-64 at §12.8) in fact "***does alter*** the governing regulation which requires plans sending mail to claimants to use 'measures reasonably calculated to ensure actual receipt.'" Dkt. 182 at 8, n. 10 (emphasis added)]. In sum, Defendant acknowledged the AR must show Cloud's **actual receipt** of the 2016 Decision Letter. After all of that, Defendant then sent the Court a letter claiming a clerical error in its Response and that the Plan language "does ***not*** alter the governing regulation …." [Dkt. 184.] Defendant did not explain to Cloud in the 2016 Decision Letter any of the "rules"

The only evidence in the AR as to the date/time of Cloud's actual receipt of the 2016 Decision Letter is his own deposition testimony.[21] Even Cass and Mr. Smith confirmed they saw no such supporting records of a FedEx delivery to Cloud.[22] Cloud does not *need* evidence of his actual date/time of his receipt. Whatever standard of review the Court adopts, Cloud need only point to the absence of sufficient evidence in the AR in support of Defendant's meritless conclusion as to a different date/time.[23] Defendant's AR does not support its Untimeliness Argument and neither does its attacks on Cloud's credibility. The failure of Defendant to meet a simple task in documenting the date/time of Cloud's ***actual receipt***, alternative failure to use reasonable measures by including email delivery, and its choice to criticize Cloud's failing memory (resulting from Cognitive Impairments, NFL Brain Injuries, etc.)[24] reeks of a fiduciary preying on the testimony of an injured beneficiary in lieu of complying with the Plan and ERISA.

Cloud attempted to further challenge Defendant's reliance on a fake tracking number,[25] but the Court denied the request to include it in the AR because it was not before the Board. However, Defendant's reliance on the Court's denial ***actually supports Cloud's position*** that nothing in the AR substantiates those results as to any date/time of delivery or Cloud's ***actual receipt*** of the 2016 Decision Letter. In an effort to dispose of this absence of tracking information in the record, Defendant incorrectly argues that FedEx "tracking information is [only publicly] available for 90

___

underlying its alleged Untimeliness Argument, and Defendant cannot succinctly do so in this litigation.

[21] App.1052-54 at 275:2 – 277:7.

[22] App.593 (313:2-14); App.721 (239:19 – 240:6); Dkt. 16 at CLOUD-AR-524.

[23] This includes Defendant's corporate representative being unaware of any evidence. *See* App.434-35 at 392:12 – 394:7.

[24] Defendant argues "[i]t defies logic that looking at a calendar five years later would help Cloud recall when he received a FedEx package that he had no recollection of ever receiving at all." This is an example of why Defendant (and its counsel) are unqualified to comment on Cognitive Impairments and NFL Brain Injuries and should have (1) complied with the DiDio Report and Brain Studies Recommendation in processing Cloud's applications, and (2) retained a consulting or testifying medical expert in this case.

[25] The alleged tracking number is 775782000000.00, which is not a FedEx tracking number. *See* Dkt. 16 at CLOUD-AR-525.

days after delivery" on FedEx's website,[26] which appears to be some sort of argument that only Defendant (as the sender) can corroborate actual delivery.[27] Cloud testified the tracking information provided in the AR did not produce results showing any service.[28] This argument further begs the question why Defendant included nothing in the AR to show tracking information or related evidence, and is another example of Defendant implying the Court should just trust it[29] –which is contrary to the requirements of ERISA and certainly undeserving in this case as evidenced by the content in the 56 pages of Cloud's Brief that Defendant asks the Court to ignore.

Having no evidence in the AR as to Cloud's actual receipt of the 2016 Decision Letter (other than Cloud's testimony),[30] Defendant attempts to bring new evidence to the table. It reveals

---

[26] Defendant cites an internet link in its January 10, 2022 *Opposition to Plaintiff's Motion to Supplement the Administrative Record*. *See* Dkt. 182 at 7, n.8, citing Dkt. 120 at 13. This link appears to link to an old cached FedEx page, is not in the AR or otherwise in the record, and requires this Honorable Court to conduct internet research to substantiate Defendant's claim. Cloud objects to this reference by Defendant. It would have been much easier if Defendant has properly documented the alleged tracking information in the AR over 5 years ago.

[27] Perhaps this is why ERISA regulations do not allow for notification via FedEx. Defendant attempts to refute this regulatory requirement by citing a case in which the plan "sent notice via certified mail" and "faxed a copy of the notice to Klotz's attorney[.]" Dkt. 182 at 8, n. 9 (citing *Klotz v. Xerox Corp.*, 332 F. App'x 668, 669-70 (2d Cir. 2009)). The issue in that case was not whether FedEx was permissible, but whether service upon counsel was sufficient where certified mail had also been attempted. *See id.* Defendant also cites a ***Florida district court discovery order*** in a non-ERISA case for the proposition that "[s]ervice made by FedEx or UPS . . . are reasonably calculated to ensure receipt . . . ." Dkt. 182 at 8-9 (citing *TracFone Wireless, Inc. v. CNT Wireless LLC*, No. 1:19-CV-24325-DPG, 2019 WL 5863911, at *2 (S.D. Fla. Nov. 8, 2019)). The *TracFone* discovery order only granted a ***party's request for permission*** to issue FRCP 45 subpoenas on third-parties via mail, which has nothing to do with the ERISA regulation at issue in this case. Moreover, it has no authority in this Circuit and, even then, "the Eleventh Circuit has not weighed in on this issue [regarding whether Rule 45 requires personal service] …." *TracFone Wireless, Inc. v. Nektova Grp., LLC*, 328 F.R.D. 664, 667 (S.D. Fla. 2019).

[28] App.1052-54 at 275:2 – 277:7.

[29] Defendant previously argued, "Cloud has also expressed a reluctance to take Defendant's written discovery responses and sworn representations at face value. Cloud has no valid reason to doubt the veracity of Defendant's or counsel's representations, however, and he cannot mount a fishing expedition based on speculation or mere dislike of the information Defendant has already provided." Dkt. 30 at 15. Defendant (and Groom) made those statements seven (7) months before it dumped 3,000+ pages on Cloud, which the Court previously ordered Defendant to produce months earlier.

[30] In Cloud's Brief, he wrote: "However, four days later, on November 8, 2016, Groom (Maroz) asked Vincent to check when Cloud received his denial letter. Nothing in the AR reflects his response." Dkt. 156 at 26 (cites omitted). This is true. Nothing in the AR reflects his response.

a new email wherein Vincent allegedly told Groom that "Elise [Richard] confirmed it was received by player on 3/4/2016 via FedEx."[31] Not only is this rank conclusory triple hearsay (as to each of Richard, Vincent, and Maroz) which Groom, as lawyers, should have recognized and not relied upon, but **Defendant even adds language to the email in its Response** to make it state Richard confirmed Cloud "[signed for]" the package.[32] In other words, Defendant, making the Untimeliness Argument its primary ground for denial of the 2016 Appeal, attaches to its Response a document that Defendant never included in the AR and, thus, was either not reviewed by the Board or Defendant actively withheld it from Cloud and this Court (or both).[33] There was, however, no evidence offered showing Cloud signed for the 2016 Decision Letter, which was confirmed by Vincent (as Defendant's corporate representative).[34]

> **2.    The decision letter misrepresents that the Board denied Cloud's appeal because it was untimely. If *de novo* review applies, the Court cannot adopt Defendant's unreasonable and self-serving conclusion.**

In his Brief, Cloud's indisputable account of evidence in the AR shows, *inter alia*, (1) nothing in the Board Minutes reflects the Board's adoption of the Untimeliness Argument and that it was one of the Groom Fabricated Board Positions, (2) Marshall stated Board members thought she was "crazy" in raising the Untimeliness Argument, and (3) Vincent essentially chuckled and included it as the grounds for denial anyway. Defendant's response to these indisputable facts is

---

[31] Dkt. 182 at 6-7 (citing Dkt. 183 at Supp. App. 4). This document is not in the AR.

[32] *See id*. While making these arguments, Defendant states there is "no probative value" in the undisputed fact that in at least one instance someone else received and signed for a different letter sent from Defendant to Cloud. Defendant argues, without evidence, the reason is because Cloud "left the State of Texas without informing the Plan[.]" Dkt. 182 at 7, n. 6.

[33] While Defendant argues the Fifth Circuit says it need not investigate anything, *see supra* at n. 4, and Defendant has never included this new email in AR more than five years after the 2016 Appeal Decision Letter (and counting), it argues at the same time that it "defies logic that Cloud would wait more than five years to investigate [the date he received the 2016 Decision Letter] ...." Dkt. 182 at 8.

[34] *See Super Future Equities, Inc. v. Wells Fargo Bank Minnesota, N.A*., Civ. A. 06–CV–0271, 2007 WL 4410370 (N.D. Tex. Dec. 14, 2007) ("Rule 30(b)(6) 'aims to prevent a corporate defendant from thwarting inquiries during discovery, then staging an ambush during a later phase of the case.'").

to double down with new spin on what those facts mean.

The Board Minutes reflect only that it "denied [Cloud's] appeal for reclassification to the Active Football category for failure to meet the requirements of Plan section 5.7(b),"[35] which is the Reclassification provision.[36] There is no mention of the Untimeliness Argument or Section 12.6 of the Plan.[37] Defendant argues the Board Minutes did not need to reflect the Untimeliness Argument, even though it is Defendant's primary argument in this case. In support, Defendant cites argumentative testimony from Cass,[38] which is on the page following his testimony about how a claimant can discover if a decision letter reflects the Board's actual decision: "they would know if they – if they sued us. So, if someone went to court, they would find out, as you have done, … what's in the board decision and what's in the letter."[39] These facts speak for themselves.

Defendant also argues the Marshall's statement that Board members thought she was "crazy" in raising the Untimeliness Argument means Board members "reacted strongly upon learning that a Player, particularly one represented by counsel, had failed to follow the Plan's rules for filing timely appeals."[40] Defendant knows Cloud was <u>not</u> represented by counsel in his 2016 Application or 2016 Appeal and cites nothing in the AR to support it, and the idea that the Board members "reacted strongly" and looked at Marshall like **_she_** was crazy because they were shocked Cloud missed a purported deadline is, on its face, such an absurd narrative that it should be more detrimental to Defendant's position than if they had simply ignored this issue and not offered a response. Moreover, if the Board members truly "reacted strongly" as described above, then one wonders why it is completely absent from the Board Minutes as a reason for denial of

---

[35] App.5056-57; App.673 at 49:2-6.
[36] Dkt. 16 at CLOUD-AR-37.
[37] Dkt. 16 at CLOUD-AR-61.
[38] Dkt. 182 at 9-10; App. 558 at 172:5-173:21.
[39] App.557 at 166:25 – 167:14.
[40] Dkt. 182 at 9.

Reclassification. None of Defendant's arguments reflect an ERISA plan complying with its fiduciary and statutory obligations.

### B. Cloud's Request for Reclassification Satisfies the Changed Circumstances Requirement.

Cloud fully briefed Defendant's Changed Circumstances argument, including the hundreds of vague and inconsistent decision letters to various players and myriad interpretations from Original Circumstances, Change in Condition, New/Different Disability, to the Groom Reinterpretation of Changed Circumstances[41] in Cloud's 2016 Appeal Decision Letter, which defines it as a "new or different impairment" that arose while Cloud was still playing.[42]

Defendant still argues Cloud failed to provide clear and convincing evidence of "changed circumstances" showing that he was eligible for "Active Football" benefits, even though Defendant admits it relied only on a pedestrian "side-by-side comparison" of the 2014 Application and 2016 Application, criticizes medical expert Dr. Wu's refusal to abandon science in favor of Defendant's layperson approach, and argues "any change in Cloud's condition between 2014 and 2016 is not relevant to whether he presented changed circumstances[.]"[43] None of these positions reflect an ERISA plan complying with its fiduciary and statutory obligations.

Defendant intentionally refuses to define Changed Circumstances in any location accessible to beneficiaries who apply for Reclassification. Only when they receive a decision letter is there a possibility a definition will be provided. Defendant's response to criticism of its wandering interpretations is that "Cloud complains that minor differences in phrasing over the decades should impact the standard of review[.]"[44] In other words, not good enough to criticize

---

[41] Dkt. 156 at 35, 47, 51-55.
[42] Dkt. 16 at CLOUD-AR-519.
[43] Dkt. 182 at 1-2, 10-16.
[44] Dkt. 182 at 10-11. Defendant admits these wandering interpretations of Changed Circumstances do not change Cloud's position that the evidence supports he met Changed Circumstances [Dkt. 182 at 11], but

Defendant's interpretations, but good enough for Defendant to criticize Cloud's description of his Cognitive Impairments.[45] These wandering interpretations are not minor differences and they do not just exist over decades. As demonstrated in Cloud's Brief, they are substantial differences and sometimes exist on the same day – even as to decisions purportedly made at the same Board Meeting at issue in this case.

Defendant argues Cloud failed to show Changed Circumstances based solely on two grounds.[46] First, Defendant's layperson "side-by-side comparison" of the 2014 Application and 2016 Application allegedly "shows that no new conditions were presented in 2016[.]" It is unclear which of the myriad interpretations of Changed Circumstances is being applied here: Original Circumstances, Change in Condition, New/Different Disability, or the Groom Reinterpretation of Changed Circumstances. Second, Defendant, a group of nonmedical laypersons, argues that an assessment of Cloud's Cognitive Impairments and NFL Brain Injuries did not require referral to "another"[47] Neutral Physician and it would be irrelevant to whether Cloud showed Changed Circumstances.

> **1.    Defendant's self-serving adoption of and unreasonable inferences from a "Side-By-Side Comparison" of 2014 and 2016 Applications combined with burying the DiDio Recommendations confirms Defendant engaged in no effort to evaluate Cloud's New Conditions or Impairments.**

Defendant argues that Cloud engages in "misdirection" rather than "confronting" Defendant's layperson "side-by-side comparison" of his 2014 Application and 2016 Application,

---

that does not relieve Defendant from the consequences as to the standard of review.

[45] Cass testified, "in the context of a reclassification, you have to show clear and convincing evidence of changed circumstances. And I think the mere assertion that -- *with several little word changes, now calling them severe, for example*, is -- and the only support of that would be the assertion of the player." App.546 at 124:5-11 (emphasis added).

[46] Defendant also incorporated the Shortly After argument, *see* Dkt. 182 at 14-15, but that is addressed later.

[47] Defendant necessarily must be referring to the DiDio Report and Brain Studies Recommendation, which it wholly ignored.

which Defendant, even in misconstruing the AR, admits listed "***substantially*** identical conditions in each."[48] Even if the Court accepts Defendant's argument that Cloud's Cognitive Impairments between 2014 and 2016 were ***substantially*** identical (meaning not entirely identical), which of the myriad interpretations of Changed Circumstances requires a certain threshold of change: Original Circumstances, Change in Condition, New/Different Disability, or the Groom Reinterpretation of Changed Circumstances? Of course, it is entirely unclear. Nonetheless, Defendant's layperson "side-by-side comparison" of Cloud's 2014 Application and 2016 Application involves Defendant (its legal counsel) assessing neurological traumatic brain injuries and related Cognitive Impairments in a manner that is entirely self-serving and result-oriented junk science. Most important, Defendant engages in this conduct after it either buried and actively ignored the DiDio Report and Brain Studies Recommendation.

**First**, Defendant criticizes Dr. Wu for not solely engaging in Defendant's layperson "side-by-side comparison" of Cloud's 2014 Application and 2016 Application in lieu of what Dr. Wu actually did. In truth, Defendant did not even conduct a layperson "side-by-side comparison" – only Groom did. On the other hand, Dr. Wu met with Cloud four (4) times,[49] conducted multiple diagnostic studies, reviewed thousands upon thousands of pages of medical records, and relied on significant medical research. Defendant's analysis is akin to a belief that the consequences of traumatic brain injuries are frozen in time and the same condition cannot change or worsen. This is why ERISA requires medical issues to be decided by medical professionals, not Plan's litigation counsel. Dr. Wu's analysis and opinion reveal the striking contrast between how a medical doctor evaluates traumatic brain injuries and related Cognitive Impairments and how a Groom staff

---

[48] Dkt. 182 at 11 (emphasis added).
[49] Dr. Wu met with and evaluated Cloud four (4) more times than anyone in the PBO, on the Committee, on the Board, or with Groom – none of who met or examined Cloud a single time.

attorney selectively reviews complaints of traumatic brain injuries and related Cognitive Impairments, which is sufficient to show that Defendant's layperson "side-by-side comparison" is junk science unbecoming of any disability plan seeking to comply with ERISA.

**Second**, Defendant tries to avoid its definition of Changed Circumstances as "a new impairment that did not exist during the original application, ***or an impairment that did exist but is different from the one that formed the basis of the original award of T&P benefits***."[50] Defendant argues the SSA Award "was itself based on the ***same types*** of impairments presented in his 2014 application," which is a contention full of holes. Neither Committee member even considered the substance of the SSA Award when it granted T&P Benefits (Inactive A) (briefed as Committee Reliance on SSA Award).[51] The argument that Cloud cited the ***same types*** of impairments in 2014 and 2016 is such a gross generalization of the traumatic brain injuries and related Cognitive Impairments suffered by Cloud that it again raises the issues addressed in the prior paragraph above – Defendant's incompetence in assessing medical issues of the brain without medical opinion.

**Finally**, Defendant reinforces the above arguments by arguing Cloud misstates the testimony of Mr. Smith because he actually says Cloud's own description of his medical issues is evidence "but like all things, there has to be weight assigned, and the greater weight is assigned to actual medical professional evidence …."[52] Defendant's counsel argues in favor of its layperson "side-by-side comparison" and that a Neutral Physician's opinion would be irrelevant, but Defendant's own Board member testified that "greater weight is assigned to actual medical professional evidence" – none of which Defendant pursued in good faith during the 2009 Application, 2010 Appeal, 2014 Application, 2016 Application, or 2016 Appeal.

---

[50] App.5202 (Nov. 22, '16) (emphasis added); *Hudson v. Nat'l Football League Mgmt. Council*, No. 18-cv-4483 (GHW) (RWL), 2019 WL 5722220 at *4-5, 21 (S.D.N.Y. Sept. 5, 2019).
[51] Dkt. 156 at 20.
[52] Dkt. 182 at 14; App.717 at 223:3-12.

2.  **Defendant's violation of the Plan and ERISA in refusing to evaluate or refer Cloud for neurological examinations is highlighted by its prejudicial argument that New Impairments or Conditions would be "Irrelevant" and would not have made Cloud eligible for additional benefits.**

Defendant argues that it is irrelevant whether Cloud experienced "new impairments or conditions" between 2014 and 2016 because he "would have to show that his new disabilities arose while he was an Active Player." This absurd argument is more evidence that Defendant (or those instructing it) do not understand the Plan terms. This Groom Reinterpretation of Changed Circumstances is objectively impossible, which may explain why Defendant has almost universally denied requests for Reclassification since the inception of the Plan.

Obviously, a player will not seek Reclassification of a prior award of T&P Benefits while he is still playing in the NFL. The Plan requires an initial disability take place while an Active Player, but not the resulting T&P Disability. The Groom Reinterpretation of Changed Circumstances is not a rational interpretation of Changed Circumstances, and has not been used in any decision letter until the 2016 Appeal Decision Letter denying Cloud's request for Reclassification. Defendant is still making this paradoxical argument over 5 years after it issued the 2016 Appeal Decision Letter, which alone is sufficient for this Court to issue "a finding that [this] plan administrator is too incompetent to exercise [its] discretion fairly[.]"[53]

Defendant next argues that Cloud does not and cannot claim he is entitled to an award of

---

[53] *Conkright v. Frommert*, 559 U.S. 506, 521 (2010); (citations omitted); *Atkins v. Bert Bell/Pete Rozelle NFL Player Ret. Plan*, 694 F.3d 557, 567 (5th Cir. 2012) (discussing same and citing *Conkright*); *see also Burell v. Prudential Ins. Co. of Am.*, 820 F.3d 132, 138 (5th Cir. 2016) (acknowledging issue); *Lafleur v. Louisiana Health Service and Indemnity Co.*, 563 F.3d 148, 159 (5th Cir.2009) (same); *Abatie v. Alta Health & Life Ins. Co.*, 458 F.3d 955, 971 (9th Cir.2006) (stating "[w]hen an administrator engages in wholesale and flagrant violations of the procedural requirements of ERISA, and thus acts in utter disregard of the underlying purpose of the plan as well, we review de novo the administrator's decision to deny benefits. We do so because, under *Firestone*, a plan administrator's decision is entitled to deference only when the administrator exercises discretion that the plan grants as a matter of contract.") (citation omitted).

Active Football (T&P Benefits) "to which he is not entitled under the terms of the Plan" solely because Defendant buried and failed to comply with the DiDio Report and Brain Studies Recommendation and did not "refer him for examination by a neutral physician[.]"[54] Defendant misrepresents that Cloud only argues that this affects the standard of review.[55] Cloud does not argue that he is not entitled to Active Football (T&P Benefits) and should get them only because Defendant engaged in the above misconduct. Indeed, Cloud explained why Defendant's misconduct affects the standard of review, explained in great detail how the AR establishes his right to Active Football (T&P Benefits), and why Defendant's noncompliance with the Plan and ERISA does not support its denial of those benefits.

Defendant alternatively argues that DiDio "reported that Cloud's symptomology in 2010 did not qualify him for even LOD Benefits" – which actually supports Cloud's position of continuing degradation of his Cognitive Impairments (*i.e.*, Changed Circumstances). Defendant also contends that its admission that Cloud's T&P Disability "arose out of playing in the NFL" somehow means the DiDio Report and Brain Studies Recommendation was irrelevant because it only would have assessed "DiDio's opinion that he either 'believ[ed]' or thought it was 'very possibl[e]' that many of Cloud's symptoms were 'a result of his past concussions,' and 'prior traumatic head injuries.'"[56] This argument makes no sense and, as with many of Defendant's arguments, only supports the necessity of Defendant's compliance with the DiDio Report and Brain Studies Recommendation rather than its act of burying and ignoring it for more than six (6) years. None of Defendant's arguments reflect an ERISA plan complying with its fiduciary and statutory obligations.

---

[54] Dkt. 182 at 15.
[55] *See id.*
[56] Dkt. 182 at 15-16 (citing Dkt. 16 at CLOUD-AR-376).

**C.      Cloud Met the "Shortly After" Requirement for Active Football Benefits.**

Cloud fully briefed Defendant's Shortly After argument, but Defendant still argues he failed to show his T&P Disability arose "shortly after" his initial disability first arose, a position which is based on Defendant's new objectively false argument borne out of a *stiff mechanical reading* of one sentence in isolation from the entirety of Cloud's 2016 Application. The argument is that Cloud "told the Board" his T&P Disability arose more than a year before his NFL career ended, which is a manifestly disingenuous argument that Cloud readily disposed of in his Brief. Defendant's wholesale reliance on this preposterous argument is yet another example that speaks to its failure to meet its fiduciary obligations under the Plan and ERISA. Defendant also makes a layperson challenge to Dr. Wu's explanation of how science can determine the timing of Cloud's T&P Disability, and manufactures an excuse for why Defendant misapplied the Plan terms by claiming the Plan and federal court precedent means the "Special Rule" still requires satisfaction of the "shortly after" requirement (which Defendant also falsely argues Cloud "doubly waived").

**1.      Defendant misstates the AR, and argues Cloud makes a new claim that his "Disability" first arose at the end of the 2005 NFL Season.**

Defendant's efforts to ignore injuries that occurred after the 2004 Concussion is designed to forcibly start the clock on the Shortly After requirement so that it expired before Cloud's T&P Onset Date of March 30, 2006. Defendant argues Cloud only told the Board of the 2004 Concussion, even though the AR reflects that the Cloud Disabilities extended beyond the 2004 Concussion and into 2005 from May through December of that year amounting to cumulative mental disorders that resulted in the Cloud T&P Disabilities within the Shortly After time period.[57]

---

[57] Dkt. 16 at CLOUD-AR-97 (Part 2(a)); Dkt. 16 at CLOUD-AR-288-89 ("cumulative mental disorders"); Dkt. 16 at CLOUD-AR-389-90 (showing 2005 activities only from May through the end of the year, which Defendant claims the Board reviewed, *see* Dkt. 16 at CLOUD-AR-519); App.992-94 (215:21-217:22); App.992-94 (215:21-217:22).

The Board also reviewed the Committee's 2016 Decision Letter which relied on a SSA Onset Date of December 31, 2008[58] and its own 2016 Appeal Decision Letter acknowledges Cloud's allegation that he "became disabled in 2005[.]"[59] but Defendant latched onto the "biggest hit" that caused the 2004 Concussion and addressed none of the nuances of multiple concussions and injuries thereafter which were included in the Cloud Disabilities. Defendant's failure to observe and consider what was before it does not mean Cloud waived anything as alleged by Defendant.

### 2. Cloud is the only one who has established the timing of his Disability (and T&P Disability). Defendant has never tried.

Continuing to ignore the evidence, Defendant argues "[s]ince Cloud has failed to cite any admissible evidence that shows he meets the 'shortly after' requirement, summary judgment in favor of Defendant is warranted."[60] Besides Defendant's request for summary judgment being inapplicable to _Cloud's_ Motion, Defendant ignores the evidence in the AR, contends Dr. Wu presents the only evidence of Shortly After, and argues the Court may not consider it.[61]

As already briefed, Dr. Wu testified "[t]he terms counsel was using such as … "shortly after" appear in a legal document. The **application of those terms** and the **definitions of those terms require medical opinion and testimony**."[62] Defendant argues that Dr. Wu relied on Cloud's self-reporting. Cloud has identified the numerous documents in the AR that form the basis of Dr. Wu's opinions as discussed in great detail in the Wu Initial Report and Wu Supplemental Report, which included multiple studies, review of thousands of pages of medical records, and reliance on

---

[58] Dkt. 16 at CLOUD-AR-488.

[59] Dkt. 16 at CLOUD-AR-518; Discussed during a hearing before this Court on September 10, 2021. _See generally_ Dkt. 60 at 87:21 – 88:22.

[60] Dkt. 182 at 18-19.

[61] _See id._

[62] _See_ Dkt. 174 at 17 (citing Dkt. 147-1, _Exhibit 27_ at Vol. II at 258:2-3, 258:8, 258:15-24 (errata)) (emphasis added).

significant medical research.[63] Defendant next criticizes Dr. Wu's evaluation of Cloud's March 30, 2006 T&P Onset Date, which was already addressed by Cloud.[64] Defendant also argues "Cloud is estopped from now taking a position in federal court, which is inconsistent with what he told the Social Security Administration."[65] This disingenuous position also ignores the evidence in the AR as set forth in Cloud's Brief and Brief in Response,[66] and relies entirely on Defendant's fabricated position that Cloud told the SAA that December 31, 2008 was the onset date of his T&P Disability. There is absolutely no supporting evidence of this in the AR (or outside the AR), which is evidenced by Defendant's contention that March 30, 2006 "was the date Cloud initially self-reported on his application to the Social Security Administration, even though, *after a hearing, the Social Security Administration rejected that onset date*."[67] If "Cloud told the SAA that December 31, 2008 was the onset date" then why does Defendant claim the SSA rejected Cloud's March 30, 2006 T&P Onset Date?[68] Cloud and Jennifer clearly confirmed no modification of the March 30, 2006 T&P Onset Date was ever made.[69]

In what is another example of Board/Committee members knowing very little about the Plan, Defendant highlights that Mr. Smith's incorrectly testified that "Mr. Cloud was required to

---

[63] Dkt. 174 at 15-16 (also citing *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997) (stating "[t]rained experts commonly extrapolate from existing data.") and *Moore v. Ashland Chem., Inc.*, 151 F.3d 269, 278-79 (5th Cir. 1998)).

[64] Dkt. 182 at 19-20; *see* Dkt. 174 at 15-16.

[65] Dkt. 182 at 20.

[66] Dkt. 156 at 16-17; Dkt. 178 at 19-20.

[67] Dkt. 182 at 19 (emphasis added).

[68] Defendant argues that the testimony of Cloud and Jennifer that they "did not . . . speak" at the hearing is "belied" by the SSA Award, which states that he "appeared and testified" and "amended the alleged onset date of disability to December 31, 2008." Dkt. 182 at 20, n. 44 (citing Dkt. 16 at CLOUD-AR-104). As the Court likely is aware, the SSA provides ALJs with boilerplate language for use in decisions, much like Defendant's decision letters authored by Groom. A review of any number of case law reflects that the statement at issue appears to be boilerplate language routinely utilized in ALJ decisions. *See, e.g., Bjornson v. Astrue*, 671 F.3d 640, 644–45 (7th Cir.2012) (describing various language as a "template," *i.e.*, "a passage drafted by the Social Security Administration for insertion into any administrative law judge's opinion to which it pertains").

[69] Dkt. 178 at 19-20.

show that he was totally and permanently disabled by January 2007" which Mr. Smith changed by errata sheet to "correct deponent's misrecollection and conform answer to the terms of the Plan".[70] Likewise, Committee member Reynolds demonstrated a complete lack of familiarity with Article 5 of the Plan,[71] which is the foundation of every decision made by Board/Committee members including this case.[72] Even Defendant's counsel is not particularly familiar with the Plan terms.[73] At the time of the 2016 Application and 2016 Appeal, Mr. Smith had been on the Board for six (6) years,[74] Reynolds had been on the Board for three (3) years,[75] and Defendant's counsel was in its third decade as counsel of defending the Plan that it drafted in 1993. It is one thing for a player suffering Cognitive Impairments due to NFL Brain Injuries to forget things. It is another for long-term fiduciaries on the Board/Committee and their counsel to not know basic Plan terms, even after preparing to be deposed and litigating the issues in a federal court case.

All of Defendant's foregoing arguments willfully ignore the Brief, its extensive citations to the AR, and the explanatory opinions of Dr. Wu. In addition to Defendant ignoring the AR (as it did during the administrative stage), Defendant cites an opinion from this Honorable Court to suggest Cloud's Brief has not identified evidence in the AR,[76] and even cites a different case that has nothing to do with Cloud and inserts his name into that court's adverse finding.[77] None of

---

[70] Dkt. 182 at 20-21.

[71] App.197 at 139:7 – 141:8.

[72] Dkt. 60 at 15:6-14.

[73] *See* Dkt. 60 at 20:25 – 22:21; 58:20 – 61:23.

[74] App.665 at 14:19-22.

[75] App.191 at 114:22 – 115:7.

[76] Dkt. 182 at 18-19 ("Jackson v. Royal Caribbean Cruises, Ltd., 389 F. Supp. 3d 431, 445 n.8 (N.D. Tex. 2019) (Scholer, J.) ('Rule 56 imposes no obligation to sift through the record in search of evidence to support a party's opposition to summary judgment. Parties must identify specific evidence in the record supporting challenged claims and articulate the precise manner in which that evidence supports those claims.') (cleaned up)".

[77] Dkt. 182 at 18-19 ("See **Gerritsen Beach Invs., Ltd. v. Jemal**, No. 3:08-CV-1192-N, 2010 WL 11618302, at *4 (N.D. Tex. Apr. 9, 2010) ('Because the only evidence that **[Cloud]** offer[s] is inadmissible for summary judgment purposes, the Court finds that they fail to demonstrate a genuine issue of material fact on this point.')" (emphases added).

Defendant's arguments reflect compliance with ERISA fiduciary and statutory obligations.

**D.   Cloud's Argument that the "Shortly After" Requirement Does Not Apply is Based on Plan Terms, is Not Contradicted by Federal Court Precedent, and Was Not "Doubly Waived".**

Cloud fully briefed the Special Rules in the Plan, the nature of his Psych Disorders related to head injuries sustained while playing in the NFL, and the inapplicability of the Shortly After requirement.[78] Defendant's response is that Cloud cites no support for this theory, even though the Plan terms betray Defendant's argument.[79] Defendant also argues the Board rejected the Shortly After exception in another matter affirmed in a published federal court opinion.[80]

First, the Plan terms speak for themselves, although Defendant and its counsel offer myriad interpretations of the unwritten ones. As to the Psych Disorders provisions, Cloud briefed how each provision in the Plan relates (if at all) to someone like Cloud who suffers Cognitive Impairments as a result of NFL Brain Injuries.[81] In those cases, the Shortly After requirement does not apply and any other reading is unreasonable and results in numerous irreconcilable relationships among these various provisions.

Second, the inapplicability of the Shortly After requirement in cases of Psych Disorders resulting from NFL Brain Injuries provisions has <u>not</u> been rejected by the Board in another matter and affirmed in a published federal court order. In *Boyd*, the case cited by Defendant, Boyd filed his application in March 1997 under the Plan version existing at that time.[82] Defendant has not

---

[78] *See, e.g.,* Dkt. 156 at 9-10, 14-21, 45, 58-59.

[79] Dkt. 156 at 9-10; *see, e.g.,* Dkt. 16 at CLOUD-AR-033 at § 5.4, AR-036 at § 5.7(a), AR-037 at § 5.7(b).

[80] Dkt. 182 at 20-21 (citing Supp. App. 28, *Boyd v. Bert Bell/Pete Rozelle NFL Player Ret. Plan*, Case No. 3:01-cv-2072-J, Dkt. 61 at 3 (S.D. Cal. July 24, 2003) ("The Board examined the intent of the collective bargaining parties and determined that the psychological/psychiatric provisions limit, and do not expand, the situations in which Football Degenerative T&P may be awarded. . . . [T]he Court finds that the Board did not abuse its discretion in interpreting the psychological/psychiatric provision."), aff'd 410 F.3d 1173, 1178 (9th Cir. 2005).

[81] *See, e.g.,* Dkt. 156 at 9-10, 14-21, 45, 58-59.

[82] *See Boyd v. Bert Bell/Pete Rozelle NFL Players Retirement Plan*, 410 F.3d 1173, 1174 (9th Cir.2005).

shown how the terms of that Plan relate to the terms of the Plan that govern this case, as it is undisputed that the Plan has been amended at least 4 times since Boyd's application.[83] In addition, Defendant lifts a generic quote from early in the district court's order, but fails to quote the more specific language:

> "The collective bargaining parties confirmed that the intent of the 1998 amendment was to limit the award of T &P benefits based on psychological/psychiatric disorders, unless the 'head injury' exception is satisfied. The 'head injury' exception is satisfied if the disability arises out of League football activities. The collective bargaining parties intended for there to be a clear connection between the psychological/psychiatric problems and the football injury.
>
> In its initial review, the Board determined Boyd's disability did not arise out of football league activities. Because the intent of the amendment is to limit the award of T&P benefits, on remand the Board concluded that Boyd did not satisfy the requirements for section 5.1 because the amendment did not expand the circumstances in which a subscriber may be awarded T&P benefits. The Court finds that the Board rationally concluded that the limited exception for 'head injuries' does not reduce the causation element required to award Football Degenerative T&P benefits."[84]

In other words, Boyd was trying to avoid the need to show his Psych Disorders resulted from NFL Brain Injuries, but the district court disagreed. Here, Cloud has demonstrated that connection and meets all of the elements addressed in the above passage in the *Boyd* order, which notably does not include any Shortly After requirement. Unlike this case, the Board actually addressed an older version of the Psych Disorders provision, which Defendant has not provided the Court or Cloud.

Finally, Defendant argues that Cloud should have presented its analysis of the Plan terms to the Board during his 2016 Application and 2016 Appeal even though he had no access to the Plan document[85] and Defendant cites no authority for the proposition that a beneficiary with a T&P Disability must do the job of Defendant, a fiduciary empowered with authority and

---

[83] Dkt. 16 at CLOUD-AR-006 (1998, 2002, 2006, 2014).
[84] Defendant Supp. App. 29 (citations omitted).
[85] App.967-68 at 190:8 – 191:18; App.1072-73 at 295:12 – 296:15.

obligations under the Plan and ERISA to administer all aspects of the Plan. Defendant also argues that Cloud pleaded his compliance with the Shortly After requirement and never pleaded how the Plan terms address his Psych Disorders, but Cloud's position that he meets the Shortly After requirement does not negate the fact that Cloud does not *need* to satisfy the Shortly After requirement according to the Plan terms, Defendant's own interpretation and application in decision letters, and federal court precedent. Thus, Defendant's argument that Cloud "doubly waived" Defendant's obligation to comply with the Plan and ERISA is completely without merit and Defendant cites no support.[86] This is especially the case given that Defendant withheld portions of the AR from 2016 through January 2022, including 3,000+ pages of documents that shed light on how Defendant interprets the Plan and processes claims, all in direct violation of the Plan, ERISA, and this Honorable Court's Order. In his submission to the Board, Cloud expressly cited "cumulative mental disorders" and "mental incapacity" in his 2016 Application.[87] Similarly, in his First Amended Complaint, Cloud referenced multiple assertions of Psych Disorders, including, but not limited to, "social anxiety", "major depressive disorder", "cumulative mental disorders", and "affective disorder."[88] It was the Board's duty to apply the plain language of the

---

[86] In support of this argument, Defendant cites a case wherein an employee did not raise an offset argument unrelated to plan terms, *see Gomez v. Ericsson, Inc.*, 828 F.3d 367, 374 (5th Cir. 2016) ("[Plaintiff] tries a new argument not raised before the administrator— that the value of any unreturned property should offset his severance pay"), and a case wherein actual theories of action were not pleaded. *See Sims v. City of Madisonville*, 894 F.3d 632, 643 (5th Cir. 2018) ("to the extent Sims's summary judgment response asserts a ***malicious-prosecution claim and a liberty-deprivation claim*** against Covington, based on his involvement in Sims's prosecution for 'computer security breach,'' he failed to raise those theories in his first amended complaint and could not do so for the first time on summary judgment."). Neither applies here. The nature of Cloud's claims remains the same – Reclassification to Active Football (T&P Benefits). Cloud was not required to acquire through premonition any knowledge of the technical mechanisms within the shadowy Plan and Defendant's secretive interpretations and (1) argue them in his 2016 Application or 2016 Appeal, or (2) plead in great detail how each provision in the Plan is interpreted and applied to require the pleaded request for Reclassification.

[87] Dkt. 16 at CLOUD-AR-491-92.

[88] Dkt. 156 at §§ 26, 28, 33.

Plan,[89] and it was required to interpret the Plan consistent with the language within the four corners of the Plan.[90]

## II.    Defendant Fails to Refute Cloud's Arguments for Applying *De Novo* Review.

Cloud extensively briefed three grounds for applying a *de novo* standard of review and, in the interest of avoiding repetition and lack of space, refers this Honorable Court to his Brief. However, Cloud briefly replies as follows.

**First**, Defendant exceeded the boundaries of their stated discretion under the Plan. Defendant complains that it is unclear on what Cloud means by "stated discretion." If Defendant is unclear what stated discretion is relied upon, then it must acknowledge the default *de novo* standard applies. If Defendant acknowledges any stated discretion in the Plan document, then it cannot pretend Cloud failed to illuminate Defendant's widespread violations of the Plan and ERISA addressed throughout the Brief. That Cloud did not use the words "boundaries", "exceed" or "stated discretion" elsewhere in the Brief is immaterial.

**Second**, Cloud identified Defendant's "multiple erroneous interpretations of Plan provisions and obligations under ERISA," and its "willingness to increase rounds of costly litigation as if they were part of the Plan's claims process[.]"[91] The evidence in the AR is irrefutable despite Defendant's efforts to spin otherwise and need not be fully addressed once again in this Reply. However, Defendant argues that its "burial" of the DiDio Report and Brain Studies Recommendation is "unfounded" because Cloud received it and used it with the SSA,[92] even though the PBO withheld it from its Medical Director and relied upon his recommendation in

---

[89] *See Gosselink v. AT&T, Inc.*, 272 F.3d 722, 726 (5th Cir. 2001) (applying the plain language of the plan);
[90] *See Baker v. Metropolitan Life Ins. Co.*, 364 F.3d 624, 630 (5th Cir. 2004) (abusing discretion when not applying the plain language within the four corners of the document).
[91] Dkt. 156 at 40, 51-56.
[92] Neither of which amounts to Defendant's review, consideration, and compliance with the DiDio Report and Brain Studies Recommendation, and certainly the SSA is not going to do Defendant's job.

violation of the law.[93] Groom then substantively withheld it from the Board when "it was noted in the one-page 'claim summary' provided to the Board in November 2016" which is belied by the fact Groom miscited the page numbers so that any reference thereto would miss the actual report containing the Brain Studies Recommendation. ***The alternative is that it was not "buried" and both the Committee and Board actively ignored the DiDio Report and Brain Studies Recommendation***, which Defendant appears to admit because it again states diagnostic brain studies would be "irrelevant." Which one is worse is a philosophical issue (arguably the latter), but both are active and knowing violations of the Plan and ERISA designed to avoid assessing Cloud's NFL Brain Injuries and Cognitive Impairments.

Defendant also excuses its failure to comply with the DiDio Report and Brain Studies Recommendation by referring to cases where the administrator "did not dispute the medical judgment of [the] treating physician" and "review by a medical professional is not necessary" – none of those apply here. Though Defendant argues it "did not question Cloud's claim that his symptoms related to his football injuries and did not deny his claim on that basis[,] the very essence of the Board's purported decision was that Cloud did not satisfy the Reclassification section at 5.7(b), which includes Changed Circumstances of his medical condition. Defendant is speaking out of both sides of its mouth. Defendant reviewed nothing and sought no medical opinion as to the Changed Circumstances of Cloud's Cognitive Impairments. Instead, Defendant just summarily denied Cloud's Reclassification at the direction of lawyers Lerner, Marshall, and Groom.[94]

Defendant also argues that the hundreds of decision letters reflecting its violations of the Plan and ERISA do not reveal a single case similarly situated to Cloud in which the player met the Changed Circumstances requirement. This argument seeks to ignore the myriad interpretations and

---

[93] Dkt. 156 at 14-15.
[94] Dkt. 156 at 27-29, 32-34.

require Cloud to point to a case factually like his even though the overwhelming majority of Defendant's decision letters are form-based and devoid of any factual discussion – one of the violations of ERISA that Cloud repeatedly discusses in his Brief. Defendant's arguments are empty regarding the content of those decision letters and myriad interpretations of Changed Circumstances to include everything from Original Circumstances, Change in Condition, New/Different Disability, to the Groom Reinterpretation of Changed Circumstances.[95] Cloud's Brief is extensive on these issues and Defendant has done nothing to address them head-on. Defendant's argument that federal district courts on occasion have upheld its myriad interpretations is a house of cards. In none of those cases was the district court presented with hundreds of decision letters demonstrating the myriad interpretations. Cloud's counsel: "This is a completely new landscape. All their past case law is off the rails."[96] Defendant's counsel: "this is, quote, a completely new landscape, end quote. We absolutely 100 percent agree. What is happening in this case has never happened before . . . ."[97] The inner workings of Defendant have been exposed, including what Defendant describes as an "objectively incorrect premise that the PBO, Groom, Marshall and/or Lerner decided Cloud's reclassification request" and Groom's treatment of litigation as part of the claims process. Defendant can dispute these in its Response, but it is all in the AR and opinions issued in other cases – all cited in Cloud's Brief.

## CONCLUSION

The Court should grant Plaintiff's Motion for Judgment on the Administrative Record for the reasons set forth in his Motion and Brief and herein.

Respectfully submitted on April 4, 2022.

---

[95] Dkt. 156 at 35, 47, 51-55.
[96] Dkt. 60 at 37:20-21.
[97] Dkt. 60 at 47:19-20.

Respectfully submitted,

BARLOW GARSEK & SIMON, LLP
920 Foch Street
Fort Worth, Texas 76107
817.731.4500
817.731.6200 – facsimile


By:/s/ Christian Dennie
    Christian Dennie
    Texas Bar No. 24045775
    cdennie@bgsfirm.com

*Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

I certify, on this 4th day of April, 2022, a true and correct copy of this *Reply to Defendant's Opposition to Plaintiff's Motion for Judgment on the Administrative Record and Other Evidence of Plan Interpretations and Violations of ERISA (Pursuant to FRCP 52(a)) or, Alternatively, Motion for Summary Judgment* was filed with the Clerk of the Court via CM/ECF, which automatically delivers notice of the filing of the same to all counsel of record.

/s/ *Christian Dennie*
Christian Dennie