IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| **MICHAEL CLOUD,** | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| vs. | § | Civil Action No. 3:20-CV-01277-E |
| | § | |
| **THE BERT BELL/PETE ROZELLE NFL PLAYER RETIREMENT PLAN,** | § § § | |
| | § | |
| *Defendant.* | § | |

---

**PLAINTIFF'S OPPOSED MOTION FOR ATTORNEYS' FEES AND COSTS
AND BRIEF IN SUPPORT**

---

This is a disability benefits case brought under the authority of the Employee Retirement Income Security Act of 1974 ("**ERISA**"). Plaintiff Michael Cloud ("**Cloud**") files this *Opposed Motion for Attorneys' Fees and Costs and Brief in Support* ("**Motion**") seeking recovery of attorneys' fees and costs from the Defendant Bert Bell/Pete Rozelle NFL Player Retirement Plan ("**Defendant**" or "**Plan**") pursuant to 29 U.S.C. § 1132(g)(1) and in accordance with Rule 54 of the Federal Rules of Civil Procedure. Cloud respectfully shows this Honorable Court as follows:

### I.   INTRODUCTION

1.      The Plan provides various benefits to former players, including disability benefits in various categories. The relevant categories in this case include the following (from lower to higher benefits): (1) Line of Duty Benefits for permanent substantial disablement arising out of an NFL career ("**LOD Benefits**"), and (2) for total and permanent disabilities ("**T&P Disability**") there is Inactive A for T&P Disability irrespective of whether the disability arises out of an NFL career ("**Inactive A**") and Active Football for a T&P Disability arising out of an NFL career ("**Active Football**").

2.      During Cloud's college and professional football career that spanned seven (7) NFL

1

seasons, he sustained seven (7) concussions. On October 31, 2004, Cloud was playing running back for the New York Giants in a game against the Minnesota Vikings in Minneapolis, Minnesota. As Cloud broke through the line and entered the secondary, Cloud sustained a helmet-to-helmet blow to the right side of his head that caused Cloud to fall to the ground abruptly resulting in a concussion. Despite sustaining a concussion and reporting headaches, dizziness, and vertigo from the helmet-to-helmet collision, Cloud was permitted to return to practice and competition forty-eight (48) hours later. Thereafter, Cloud sustained additional high velocity collisions that resulted in second-impact syndrome. Cloud attempted to play during the 2005 NFL season (concluding in January 2006), but could not remember basic running back plays and was cut by two (2) NFL teams, the New England Patriots and New York Giants. While playing for the New England Patriots, on November 7, 2005, Cloud sustained his final concussion in a game against the Indianapolis Colts. Thereafter, Cloud was unable to hold gainful employment despite being a graduate of Boston College, a premier academic institution.

3. Cloud was totally and permanently disabled as of March 30, 2006. From 2006-2007, Cloud sought assistance from Defendant to secure benefits under the Plan, the failure of which resulted in Cloud losing his home to foreclosure. Finally, at the outset of 2008, without reviewing any of Cloud's medical documentation, Defendant told Cloud he could not qualify for benefits related to any T&P Disability and, instead, directed him to apply for the lesser LOD Benefits.

4. For more than a year, Cloud attempted to gather supporting medical and related documentation from Defendant and related entities (the NFL Player Benefits Office ("**PBO**")), National Football League ("**NFL**"), National Football League Players Association ("**NFLPA**")). In 2009, after unsuccessfully exhausting his efforts to secure those records, Cloud applied for the lesser LOD Benefits as instructed by Defendant. Cloud was examined by a neutral orthopedist and the PBO scheduled an appointment for Cloud to see a neutral neurologist. Defendant advised Cloud it would

wait until after his neurological exam before processing his application. Instead of waiting for the neurological exam, Defendant unilaterally urged the orthopedist to modify his report and denied Cloud's application without prior notice or opportunity for Cloud to participate in the process. Cloud's request for LOD Benefits was denied.

5. In 2010, Cloud appealed and was examined by another neutral orthopedist and a neutral neurologist. The neurologist recommended that Defendant refer Cloud for diagnostic studies of his brain based upon his suspicions that Cloud suffered traumatic brain injuries during his NFL career. Defendant buried the recommendation, requested its Medical Director to recommend one of the two orthopedist reports, and then awarded the lesser LOD Benefits without explanation. From 2011-2013, Cloud continued to undergo medical evaluations and sought other available benefits (*i.e*., workers compensation and social security).

6. In 2014, the social security administration determined Cloud was totally and permanently disabled and awarded him benefits. Cloud then applied for T&P Disability benefits from Defendant. Defendant summarily approved him for Inactive A benefits based upon automatic qualification due to the social security award as per Section 5.2(b) of the Plan. Defendant did not refer Cloud for diagnostic studies of his brain as previously recommended, did not refer him to any neutral physician, made no determination as to the nature or cause of his orthopedic and neurologic impairments, and made no effort to consider Cloud's entitlement to higher Active Football benefits.

7. In 2016, Cloud applied for reclassification from Inactive A to Active Football. Defendant pressured the Disability Initial Claims Committee ("**Committee**") members to hurry a decision and, within days, Defendant denied the requested reclassification without referring Cloud for any examination or diagnostic studies or making any assessment of his condition or determination as to the nature or cause of his orthopedic and neurologic impairments. Cloud appealed to the Retirement Board of the Plan ("**Board**"). Once again, instead of referring Cloud for examination by a neutral

physician or making any effort to evaluate Cloud's condition or nature or cause of his orthopedic and neurologic impairments, lawyers for the NFL and NFLPA coordinated the denial of Cloud's requested reclassification **before** the Board meeting, held "pre-meetings" with the constituents of the Board, and instructed them to deny Cloud's appeal. The Board meeting involved no more than a rubberstamping and wholesale denial of Cloud's application for Active Football benefits. A paralegal from Groom Law Group (on behalf of Defendant) prepared the November 23, 2016 decision letter denying Cloud's request for reclassification in a fashion that was not in line with Board's purported decision and replete with numerous errors.

8. After a bench trial conducted on May 18, 19, 23, 24, 25 and 26, 2022, this Honorable Court concluded that Defendant violated the terms of the Plan and ERISA in denying Cloud the benefits he is entitled to receive, ordered the Plan to pay Cloud Active Football, and concluded that Cloud is entitled to the recovery of attorneys' fees and costs of court.

## II. ATTORNEY'S FEES AND COSTS UNDER ERISA

9. Section 1132(g)(1) of ERISA states as follows:

> (g) Attorney's fees and costs; awards in actions involving delinquent contributions.
>
>> (1) In any action under this title (other than an action described in paragraph 2) by a participant, beneficiary, or fiduciary, the court in its discretion may allow a reasonable attorney's fee and costs of action to either party.

In *Hardt v. Reliance Standard Life Insurance Co.*, the United States Supreme Court held that an applicant for fees need not be a "prevailing party," so long as they have achieved "some success on the merits." *Hardt v. Reliance Standard Life Insurance Co.*, 560 U.S. 242, 256 (2010). A claimant satisfies this requirement "if the court can fairly call the outcome of the litigation some success on the merits without conducting a 'lengthy inquir[y] into the question whether a particular party's success was substantial or occurred on a central issue.'" *Id.* "The discretion to award fees is guided by the 'general

4

rule' that a successful ERISA plaintiff should, in the ordinary course, receive fees from the defendant." *Dimry v. Bert Bell/Pete Rozelle NFL Player Retirement Plan*, Case No. 3:16-CV-01413-JD, 2018 WL 6726963, 2018 U.S. Dist. LEXIS 215906 at *2 (N.D. Cal. Dec. 22, 2018)(awarding fees in favor of the plaintiff in the amount of $450.00 per hour for the associate and $900.00 per hour for the partner). In *Vega v. National Life Ins. Services, Inc.*, the Fifth Circuit stated, in pertinent part, as follows:

> If an administrator has made a decision denying benefits when the record does not support such a denial, the court may, upon finding an abuse of discretion on the part of the administrator, award the amount due on the claim and attorneys' fees. We find such an abuse of discretion here, and we will remand to the district court for a determination of damages and reasonable attorney's fees and for entry of judgment.

*Vega v. National Life Ins. Services, Inc.*, 188 F.3d 287, 302 (5th Cir. 1999)(internal citations omitted). When determining whether to award attorneys' fees under ERISA, the district court may consider the following:

> (1) the degree of the opposing parties' culpability or bad faith; (2) the ability of the opposing parties to satisfy an award of attorneys' fees; (3) whether an award of attorneys' fees against the opposing parties would deter other persons acting under similar circumstances; (4) whether the parties requesting attorneys' fees sought to benefit all participants and beneficiaries of an ERISA plan or to resolve a significant legal question regarding ERISA itself; and (5) the relative merits of the parties' positions.

*Iron Workers Local No. 272 v. Bowen*, 624 F.2d 1255, 1266 (5th Cir. 1980). In *Dimry v. Bert Bell/Pete Rozelle NFL Player Retirement Plan*, the district court analyzed similar factors and concluded, in pertinent part, as follows:

> An award here amply satisfies the five *Hummell* factors.[1] First, defendants manifested a degree of culpability and bad faith in denying Dimry's claim in the

---

[1] The *Hummell* factors are virtually identical the *Bowen* factors and, actually, the Ninth Circuit adopted the *Bowen* factors in creating the *Hummel* factors. The *Hummell* factors are as follows:

> We agree with the Fifth and Tenth Circuits that district courts should have guidelines to apply in the exercise of their discretion under § 1132(g). They should consider these factors among others: (1) the degree of the opposing parties' culpability or bad faith; (2) the ability of the opposing parties to satisfy an award of fees; (3) whether an award of fees against the opposing parties would deter others from acting

> manner discussed in the merits order, Dkt. No. 80. Second, there is no dispute that defendants have the ability to pay the claimed fees and costs. Third, the award should have a deterrent effect on defendants from engaging in a similar abuse of discretion in handling other claims. Fourth, other claimants will be able to rely on the Court's merits decision to prosecute other benefits claims with defendants. And fifth, the relative merits tilted substantially in Dimry's favor, as the remand order concluded.

*Dimry*, 2018 U.S. Dist. LEXIS 215906 at *6.

10. The evidence, here, has shown that Defendant committed multiple and numerous violations of the Plan and ERISA and acted with culpability and bad faith in its actions. As the evidence has confirmed, the decision relevant to Plaintiff's claim for benefits was denied without a full and fair review and, frankly, was not conducted by the Board. There is no question that Defendant has billions of dollars in assets and, certainly, has the ability to satisfy an award of attorneys' fees and costs of court. *See Exhibit 1* at 24:15-25:13 (Robert Smith – May 25, 2022) (confirming Defendant's "assets in excess of $9 billion"); *Exhibit 2* at 24:19-25 (Sam Vincent – May 19, 2022) (confirming payout of $28.7 million in a single month). This Honorable Court's decision setting forth and detailing Defendant's actions will assist other wronged beneficiaries. Plaintiff hopes that such an award will deter further similar actions by Defendant and will cause Defendant to look within and make substantial changes to a flawed process. Plaintiff has had to scratch and claw to obtain necessary discovery and evidence to confirm his position that Defendant (and its associated Committee and Board) acted in violation of ERISA. Defendant has fought every effort of Plaintiff to obtain necessary information. After this Honorable Court ordered production of witnesses for depositions and ordered production of documents, Plaintiff was able to confirm multiple wrongful acts of Defendant. Accordingly, Plaintiff

---

under similar circumstances; (4) whether the parties requesting fees sought to benefit all participants and beneficiaries of an ERISA plan or to resolve a significant legal question regarding ERISA; and (5) the relative merits of the parties' positions.

*Hummell v. S.E. Rykoff & Co.*, 634 F.2d 446, 453 (9th Cir. 1980)(citing *Iron Workers Local No. 272 v. Bowen*, 624 F.2d 1255, 1266 (5th Cir. 1980)).

has established the *Bowen* factors heavily favor him and he is entitled to recovery of attorneys' fees and costs under Section 1132(g)(1) of ERISA.

## III. LODESTAR METHOD

11. District courts in the United States Fifth Circuit Court of Appeals ("**Fifth Circuit**") apply a two-step process to determine the appropriate sum of attorneys' fees to award. *La. Power & Light Co. v. Kellstrom,* 50 F.3d 319, 323-24 (5th Cir. 1995). First, district courts determine the lodestar, which is the reasonable number of hours expended on the litigation multiplied by the reasonable hourly rates for the participating lawyers. *Id.* at 324. Then, district courts in the Fifth Circuit decide whether to accept the lodestar or adjust it (*upward or downward*), considering the factors enumerated in *Johnson v. Ga. Highway Express, Inc.* The *Johnson* factors are as follows:

> (1) the time and labor required for the litigation; (2) the novelty and complication of the issues; (3) the skill required to properly litigate the issues; (4) whether the attorney had to refuse other work to litigate the case; (5) the attorney's customary fee; (6) whether the fee is fixed or contingent; (7) whether the client or case circumstances imposed any time constraints; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) whether the case was "undesirable;" (11) the type of attorney-client relationship and whether that relationship was long-standing; and (12) awards made in similar cases.

*Johnson*, 448 F.2d at 717-19.

### A. *Time and Labor*

12. Plaintiff hired Barlow Garsek & Simon, LLP (the "**Firm**") to serve as his counsel in this litigation. Christian Dennie, a partner in the Firm, has been designated as lead counsel ("**lead counsel**"). Lead counsel is familiar with reasonable attorneys' fees charged by attorneys in Dallas/Fort Worth Metroplex and, specifically, in the United States District Court for the Northern District of Texas, Dallas Division ("**Northern District**") who are litigating matters the same or similar work that has been performed in connection with this litigation. *See Exhibit 3*. Based on Plaintiff's lead counsel's knowledge and experience in litigation, including litigation in federal courts in the Northern District,

lead counsel is familiar with what are reasonable and customary billing rates for attorneys in this area as well as the reasonable and customary billing rates for partners, associates, law clerks, and paralegals. *See Exhibit 3.* Through June 3, 2022, the Firm has expended a total of **2,211.00** hours totaling **$1,004,501.25**. The hours expended and fees charged are reasonable and customary for partners, associates, law clerks, and paralegals in the Northern District. *See Exhibit 3.* The fees presented eliminate fees for any duplicative work, time for work that was reviewed and revised by lead counsel, and time spent by paralegals that was clerical in nature. A true and correct copy of the Firm's billing records is attached hereto as **Exhibit "3-A".**

13. In this litigation, there have been eight (8) depositions including the depositions of Patrick Reynolds, Chris Smith, Sam Vincent, Dick Cass, Robert Smith, Jennifer Cloud, Michael Cloud, and Dr. Joseph Wu. This litigation has resulted in the production of approximately 20,000 pages of records including documents produced by 1) Defendant labeled CLOUD-AR-001-0529, CLOUD-XFILE-0000001 – CLOUD-XFILE-0004231, CLOUD-DATA-001-CLOUD-DATA-0012, CLOUD-RPTS-0001-0001908, CLOUD-DB-00000001-0000180 CLOUD-LTRS-000001-008707, CLOUD-MIN-001-006, CLOUD-SUM-0000001-000037, and CLOUD-SUBP-0000001-0000443; 2) Plaintiff labeled CLOUD_000001-04346; and 3) NFLPA labeled NFLPA 000001-000313. *See Exhibit 3.* Plaintiff has sent First Set of Interrogatories, First Request for Production, Second Request for Production, and Third Request for Production to Defendant and Plaintiff has responded to Defendant's First Request for Production and Defendant's First Set of Interrogatories in addition to Rule 26 Initial Disclosures. *See Exhibit 3.*There have been numerous discovery disputes in this matter that have resulted in the filing of multiple motions to this Honorable Court seeking depositions and document discovery. The parties extensively briefed multiple issues including dispositive motions. A true and correct copy of the docket sheet for this case is attached hereto as **Exhibit "3-B".** The docket sheet details the numerous pleadings filed and orders issued in this litigation.

14. The Firm has conducted written discovery, taken and defended eight (8) depositions, drafted numerous pleadings, and reviewed approximately 20,000 pages of documents and records. The hourly rate for lead counsel is $495.00 per hour. Lead counsel worked **1,093.50 hours** on this litigation totaling **$541,282.50**. The hours expended and fees charged by lead counsel are reasonable and customary for partner in litigation of this kind in the Northern District. *See Exhibit 3.*

15. Due to the complexity of this dispute and the volume of records and information, lead counsel sought assistance from the following individuals:

   a. **Chris Collins**: In the billing records attached hereto as **Exhibit "3-A"**, Mr. Collins is referenced as "CDC". Mr. Collins is a lawyer licensed in the State of Texas and the United States District Court for the Northern District of Texas since 2000. Mr. Collins obtained a Bachelor of Arts from Texas Tech University in 1996 and a Juris Doctor from St. Mary's School of Law in 1999. Mr. Collins has been recognized as a "Top Attorney" by *Fort Worth, Texas* magazine, "Texas Rising Star" by *Super Lawyers*, "Top Rated Lawyers" by ALM, and has an A-V Rating by Martindale-Hubbell. Mr. Collins is a Partner in the Firm. His areas of practice include alternative dispute resolution, appellate, bankruptcy, business and tort litigation, construction, employment, intellectual property, and real estate litigation. Mr. Collins has primarily assisted me with legal research in preparation of the dispositive motion, strategy for presentation of evidence and trial, and attorneys' fees under ERISA. Mr. Collins's hourly rate is $520.00 per hour. He expended **10.00 hours** working on this lawsuit totaling **$5,200.00**.

   b. **Paul Vitanza**: In the billing records attached hereto as **Exhibit "3-A"**, Mr. Vitanza is referenced as "PJV". Mr. Vitanza is a lawyer licensed in the State of Texas and the United States District Court for the Northern District of Texas since 2000. Mr. Vitanza obtained a Bachelor of Arts from Southwestern University in 1997 and a Juris Doctor from Baylor University School of Law in 2000. Mr. Vitanza has been recognized as a "Top Attorney" by *Fort Worth, Texas* magazine. Mr. Vitanza is a Senior Associate in the Firm. His primary area of practice is various types of complex litigation. Mr. Vitanza has assisted me with legal research, drafting multiple filings and pleadings, reviewed documents produced by Defendant, and preparation and attendance at trial. Mr. Vitanza's hourly rate is $450.00 per hour. He has expended **949.00 hours** working on this lawsuit totaling **$427,050.00**.

   c. **Kevin McIlwain**: In the billing records attached hereto as **Exhibit "3-A"**, Mr. McIlwain is referenced as "MKM". Mr. McIlwain is a lawyer licensed in the State of Oklahoma and the United States District Court for the Eastern, Northern, and Western District of Oklahoma since 2020. Mr. McIlwain obtained a Bachelor of Arts from Baylor University in 2014 and a Juris Doctor from University of Tulsa College of Law in 2020. Mr. McIlwain recently joined the

        Firm as an Associate and will soon take the Texas Bar. His primary of areas of practice are sports and entertainment law and complex commercial disputes. Mr. McIlwain has assisted me with legal research, drafting filings and pleadings, and trial preparation. Mr. McIlwain's hourly rate is $300.00 per hour. In this matter, he has expended **63.75** hours working on this lawsuit totaling **$19,125.00**.

   d.  **Holden Cammack**: In the billing records attached hereto as **Exhibit "3-A"**, Mr. Cammack is referenced as "HGC". Mr. Cammack was a law clerk for the Firm and was, at the time, a third-year law student at Southern Methodist University, Dedman School of Law. Mr. Cammack obtained a Bachelor of Business Administration from Oral Roberts University in 2016. Before attending law school, Mr. Cammack was a professional baseball player and pitcher in the Chicago Cubs organization. Mr. Cammack has assisted me with legal research, drafting memoranda, reviewed Plaintiff's documents, and reviewed documents produced by Defendant. Mr. Cammack's hourly rate is $125.00 per hour. He has expended **48.25 hours** working on this lawsuit totaling **$6,031.25**.

   e.  **Lee Ann Burks**: In the billing records attached hereto as **Exhibit "3-A"**, Ms. Burks is referenced as "LAB". Ms. Burks is a litigation paralegal for the Firm. Ms. Burks obtained a Paralegal Diploma from Arlington Career Institute in 1999. Ms. Burks has been a paralegal in the Dallas/Fort Worth Metroplex for over twenty (20) years. Ms. Burks has assisted me with preparing Rule 26 Initial Disclosures and pretrial matters. Ms. Burks' hourly rate is $125.00 per hour. In this matter, she has expended **20.50 hours** working on this lawsuit totaling **$2,562.50**. Ms. Burks has actually worked many more hours on this lawsuit, but Plaintiff is not seeking recovery of any additional hours.

   f.  **Tracie Vestall**: In the billing records attached hereto as **Exhibit "3-A"**, Ms. Vestall is referenced as "TKV". Ms. Vestall is a litigation paralegal for the Firm. Ms. Vestall obtained an Associate of Science from Tarrant County Junior College in 1990 and Paralegal Certificate from Arlington Career Institute in 1993. Ms. Vestall has been a paralegal in the Dallas/Fort Worth Metroplex for over twenty-nine (29) years. Ms. Vestall has assisted me with preparing appendices for pleadings filed in this Case, preparing timeline of decision letters produced by Defendant, preparing deposition excerpts, pretrial matters, and review of documents produced by Defendant. Ms. Vestall's hourly rate is $125.00 per hour. In this matter, she has expended **26.00 hours** working on this lawsuit totaling **$3,250.00**. Ms. Vestall has actually worked many more hours on this lawsuit, but Plaintiff is not seeking recovery of any additional hours.

Each of the above-referenced individuals have the qualifications necessary for the work they performed in this litigation as more fully set forth in **Exhibit "3-A".** The work performed by the above-referenced individuals consists of substantive legal work performed under direction and supervision of lead counsel. The hours expended and fees charged by Chris Collins, Paul Vitanza, Kevin McIlwain,

Holden Cammack, Lee Ann Burks, and Tracie Vestall are reasonable and customary for partners, associates, law clerks, and paralegals, as applicable, in the Northern District. *See Exhibit 3*.

16. As noted above, the attorneys' fees presented run through June 3, 2022. Plaintiff will incur additional attorneys' fees reviewing Defendant's response to this *Motion,* filing a reply in support of this *Motion*, and additional work and information needed to represent Plaintiff before this Honorable Court. It is estimated that the Firm will expend an additional **20.00 hours** totaling **$9,900.00**. *See Exhibit 3*. The estimated hours and fees charged are reasonable and customary for attorneys in the Northern District.

### B.   *Novelty and Complication of Issues*

17. This litigation involves the improper denial of disability benefits to Plaintiff under the Plan. For the first time, this Honorable Court required the members of the Committee and the Board of the Plan to submit to depositions. Also, for the first time, this Honorable Court required Defendant to produce documents evidencing the basis for the Plan's decisions. Plaintiff discovered alarming irregularities and multiple violations of the Plan and ERISA. No other disabled former NFL player has been given the opportunity to discover these irregularities. The issues in this case have been complicated and intricate, which has required extensive research and review of documentation ordered to be produced in this litigation. The issues presented here are novel and complicated. This Honorable Court's decision and opinion will have far-reaching effects on future claims brought by other disabled former NFL players who have been wronged by Defendant. *See Exhibit 3*.

### C.   *Skill Required*

18. This litigation has required extensive skill to obtain the results sought and achieved. The Firm's knowledge of the sports industry and working with governing boards has provided the necessary insight to obtain information through written discovery and depositions and at trial. The

Firm's litigation and trial skills have advanced Plaintiff's claims and, ultimately, resulted in a favorable decision for Plaintiff wherein he was granted Active Football disability benefits. *See Exhibit 3.*

### D. *Customary Fee*

19.  As noted in great detail above, the customary hourly rate for the partners, associates, law clerks, and paralegals are as follows: Christian Dennie ($495.00 per hour), Chris Collins ($520.00 per hour), Paul Vitanza ($450.00 per hour), Kevin McIlwain ($300.00 per hour), Holden Cammack ($125.00), Lee Ann Burks ($125.00), and Tracie Vestall ($125.00). The customary fees charged are reasonable and customary for partners, associates, law clerks, and paralegals, as applicable, in the Northern District. *See Exhibit 3.*

### E. *Fixed or Contingent Fee*

20.  Plaintiff hired the Firm to represent him on a contingent fee basis acknowledging, however, that attorneys' fees and costs are recoverable under 29 U.S.C. § 1132(g)(1). *See Exhibit 3.*

### F. *Time Restraints*

21.  This litigation has required extensive travel including depositions in Washington DC and Providence, Rhode Island. This Honorable Court has also often ordered expedited briefing. This case has imposed significant time constraints that have required immediate attention to detail. The time and effort expended on this matter has caused the Firm to decline other work and employment due the extreme detail and focus needed to zealously represent Plaintiff. *See Exhibit 3.*

### G. *Amount Involved and Results Obtained*

22.  This litigation involves the denial of disability benefits. Plaintiff was awarded Inactive A benefits under the terms of the Plan at a rate of $135,000.00 per year from 2014 to present. Dkt. 208, Stip. No. 37-53. The Active Football benefits pay Plaintiff at a rate of $265,008.00 per year. *Id.* The same is a difference of $130,008.00 per year from 2014 to present. *Id.* Additionally, Plaintiff will receive $265,008.00 (or amount subsequently adjusted) on a go forward basis. *See Exhibit 3.*

## H. Undesirability of Case

23. Disputes with the Plan have historically been arduous. This is the most difficult and arduous dispute lead counsel for Plaintiff has ever litigated. Virtually every single issue was hotly disputed. Lead counsel for Plaintiff was treated inappropriately, called names, threatened, and it was represented to this Honorable Court that lead counsel committed malpractice. Dkt. 59 at p. 24. These types of issues lend to a conclusion that representing disabled former NFL players against the Plan is undesirable. *See Exhibit 3.*

## I. Type of Attorney-Client Relationship

24. The Firm does not have a longstanding relationship with Plaintiff. This is the only case where the Firm has served as counsel for Plaintiff. *See Exhibit 3.*

## J. Awards in Similar Cases

25. The most applicable case to this litigation is *Dimry v. Bert Bell/Pete Rozelle NFL Player Retirement Plan.* In *Dimry,* Defendant ignored the plain language of the Plan document and denied the disabled former NFL player his rightful benefits. The district court remanded the case to the Board for further review. Despite not having near the amount of discovery and documents as this litigation, the district court awarded plaintiff's counsel "(1) $279,370 in fees up to this motion; (2) $13,230 in fees for this motion (Dkt. No. 91-2); 3) $2,635.62 in costs; and (4) post-judgment interest at a rate and in an amount to be stipulated to by the parties as guided by statute." *Dimry,* 2018 U.S. Dist. LEXIS 215906 at *6. The district court awarded Plaintiff's counsel at a rate of $450.00 per hour for the associate and $900.00 per hour for the partner, which is far greater than the hourly fees sought here. *Id.* (awarding fees in favor of the Plaintiff in the amount of $450.00 per hour for the associate and $900.00 per hour for the partner). As Defendant's counsel has noted, the Plan has never (prior to this litigation) been required to submit anyone for deposition and has not been ordered to present documents evidencing other decisions rendered (among others). The work required in this litigation has been

much more extensive than any other case involving Defendant. A true and correct copy of attorneys' fees and costs award in *Dimry v. Bert Bell/Pete Rozelle NFL Player Retirement Plan* is attached hereto as **Exhibit "3-C".**

## IV. CONDITIONAL/CONTINGENT APPELLATE ATTORNEY'S FEES

26. In addition to attorneys' fees rendered in this matter, Plaintiff seeks conditional/contingent appellate attorneys' fees for proceedings before the Fifth Circuit and the United States Supreme Court, if any. The record in this case is extensive and will take substantial time and effort to review the record, prepare and review appellate pleadings and briefing, and argue the disputed issues. This Honorable Court is permitted to grant Plaintiff conditional/contingent appellate attorneys' fees. *See, e.g., Q2 Software, Inc. v. Radius Bank*, A-18-CV-00878-RP, 2020 WL 1482591, 2020 U.S. Dist. LEXIS 53490 at *1 (W.D. Tex. Mar. 27, 2020); *J&J Sports Productions, Inc. v. McLaughlin*, CV H-16-2450, 2017 WL 3235670, 2017 U.S. Dist. LEXIS 119487 at *4 (S.D. Tex. July 31, 2017); *Thatcher v. OakBend Med. Ctr.*, CV H-14-3551, 2016 WL 5848889, 2016 U.S. Dist. LEXIS 138956 at *9 (S.D. Tex. Oct. 6, 2016); *Balfour Beatty Rail, Inc. v. Kansas City S. Ry. Co.*, 2016 U.S. Dist. LEXIS 159402, 2016 WL 6788057, at *5 (N.D. Tex. Oct. 28, 2016), *report and recommendation adopted*, 2016 U.S. Dist. LEXIS 158446, 2016 WL 6778390 (N.D. Tex. Nov. 16, 2016), *aff'd*, 725 F. App'x 256 (5th Cir. 2018); *Joe Hand Promotions, Inc. v. Tin Cup Sports Bar, Inc.*, CIV.A. 11-01929, 2012 WL 2572504, 2012 U.S. Dist. LEXIS 91378 at *3-4 (S.D. Tex. June 28, 2012); *Webb v. Abbruzzese*, 4:02-CV-5, 2003 WL 21771017, 2003 U.S. Dist. LEXIS 13339 at *3 (E.D. Tex. Aug. 1, 2003); *In re Arnette*, 09-38643-BJH-7, 2011 WL 3651294, 2011 Bankr. LEXIS 3168 at *5 (Bankr. N.D. Tex. Aug. 18, 2011).

27. The rates charged and individuals working on appellate matters, if any, will be the same as set forth above. Plaintiff seeks **$250,000.00** in conditional appellate attorneys' fees if and when this case is presented for review to the Fifth Circuit and an additional **$350,000.00** if and when this case is

presented to the United States Supreme Court. The conditional appellate attorneys' fees sought are reasonable and customary for partners, associates, law clerks, and paralegals, as applicable, in the Fifth Circuit and the United States Supreme Court. *See Exhibit 3*.

## V. COSTS AND EXPENSES

28. Plaintiff seeks and requests recovery of recoverable costs and expenses. Plaintiff's costs and expenses include filing fees, legal research, service of process, postage, requests for medical records, subpoenas fees, deposition costs and transcript fees, trial fees and expenses, parking expenses of hearings and trial before this Honorable Court, travel costs, and costs of mediation. Plaintiff has excluded all costs and expenses that are not recoverable under Fifth Circuit precedent. A true and correct copy of the Firm's costs and expenses is attached hereto as **Exhibit "3-A".**

29. Section 1132(g)(1) of ERISA provides for recovery of the "costs of action." 29 U.S.C. § 1132(g). The Fifth Circuit has stated that "all reasonable out-of-pocket expenses, including charges for photocopying, paralegal assistance, travel, and telephone, are plainly recoverable in fee awards because they are part of the costs normally charged to a fee-paying client." *Associated Builders & Contractors of Louisiana, Inc. v. Orleans Parish School Bd.*, 919 F.2d 374, 380 (5th Cir. 1990)(citing *International Woodworkers of Am. v. Champion Int'l Corp.*, 790 F.2d 1174, 1185 (5th Cir. 1986)). Under this reasoning, courts have found that the cost of reasonable computerized legal research is recoverable as well. *See United States v. Merritt Meridian Constr. Corp.*, 95 F.3d 153, 173 (2nd Cir. 1996) (stating "[c]omputer research is merely a substitute for an attorney's time that is compensable under an application for attorneys' fees…."); *Haroco, Inc. v. American Nat'l Bank and Trust Co. of Chicago*, 38 F.3d 1429, 1440 (7th Cir. 1994); *Johnson v. University College of the Univ. of Ala. in Birmingham*, 706 F.2d 1205, 1209 (11th Cir. 1983).

30. Plaintiff's costs and expenses total **$50,665.72**. The costs and expenses charged in this litigation are costs and expenses normally charged to fee-paying clients for disputes pending in the

15

Northern District. As such, Plaintiff seeks recovery of the same and as set forth in detail in **Exhibit "3-A"**.

## VI.   CONCLUSION

31. In an email exchange with counsel for Defendant, Mr. Meehan stated, in pertinent part, as follows:

> Subject to reviewing whatever it is that Plaintiff actually files, we do not presently anticipate challenging your hourly rates or the amount of time you claim was spent, or the amount of expenses incurred, on any particular task (without meaning to suggest that we agree that any particular task was necessary or should have been undertaken).

*See Exhibit 4.*

32. Plaintiff seeks recovery of attorneys' fees through June 3, 2022 totaling **$1,004,501.25**, additional attorneys' fees following June 3, 2022 totaling **$9,900.00**, conditional/contingent appellate attorneys' fees in the amount of **$250,000.00** if there is an appeal to the Fifth Circuit and **$350,000.00** if there is an appeal to the United States Supreme Court, and costs and expenses totaling **$50,665.72** as of June 3, 2022. The fees and costs sought by Plaintiff are only a fraction of the fees and costs represented by Defendant to be $3,500,000.00. *See Exhibit 1* at 57:7-9, 107:14-18 (Robert Smith – May 25, 2022) (confirming $3.5 million in legal fees incurred by the Defendant). The attorneys' fees and costs sought by Plaintiff are reasonable and necessary and in compliance with the Northern District and Fifth Circuit case law and authority. Plaintiff respectfully requests recovery of attorneys' fees and costs as set forth herein in accordance with 29 U.S.C. § 1132(g)(1).

## VII.   PRAYER

For the reasons set forth above, Cloud prays that this Honorable Court grant the *Motion* and order Defendant to pay reasonable and necessary attorneys' fees and costs of court as requested and set forth herein. Cloud further prays and requests such other relief, general or special, to which Plaintiff may show himself justly entitled.

Respectfully submitted on the 3rd day of June, 2022.

        Respectfully submitted,

        BARLOW GARSEK & SIMON, LLP
        920 Foch Street
        Fort Worth, Texas 76107
        817.731.4500
        817.731.6200 – facsimile

        By: */s/ Christian Dennie*
          Christian Dennie
          Texas Bar No. 24045775
          cdennie@bgsfirm.com
        *Attorney for Plaintiff*

## CERTIFICATE OF SERVICE

I certify, on this 3rd day of June, 2022, a true and correct copy of this *Motion* was filed with the Clerk of the Court via CM/ECF, which automatically delivers notice of the filing of the same to all counsel of record.

        /s/ *Christian Dennie*
        Christian Dennie

## CERTIFICATE OF CONFERENCE

On May 27, 2022 and June 1, 2022, Plaintiff's counsel, Christian Dennie, communicated with Defendant's counsel, Edward J. Meehan, regarding the merits of this *Motion.* Mr. Meehan indicated Defendant is opposed to the relief sought by Plaintiff by and through this *Motion*. On June 1, 2022, however, via email, Mr. Meehan stated "[s]ubject to reviewing whatever it is that Plaintiff actually files, we do not presently anticipate challenging your hourly rates or the amount of time you claim was spent, or the amount of expenses incurred, on any particular task (without meaning to suggest that we agree that any particular task was necessary or should have been undertaken)." Accordingly, judicial intervention and review is necessary.

        /s/ *Christian Dennie*
        Christian Dennie