## United States District Court
**NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| MICHAEL CLOUD | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 3:20-CV-1277-S |
| | § | |
| THE BERT BELL/PETE ROZELLE NFL | § | |
| PLAYER RETIREMENT PLAN | § | |

### MEMORANDUM OPINION AND ORDER

A permanently disabled former National Football League player hired a local lawyer in a small law firm and sued Defendant The Bert Bell/Pete Rozelle NFL Player Retirement Plan ("Defendant" or "Plan") for disability benefits under the Employee Retirement Income Security Act of 1974 ("ERISA"). After more than two years of high-risk contentious litigation ultimately tried before the Court, the player won handily, defying the odds while facing extraordinary difficulties along the way. David took on Goliath and prevailed.

As set forth in detail in the Court's lengthy Memorandum Opinion and Order, Plaintiff Michael Cloud obtained a favorable result on his claims against Defendant. *See* June 21, 2022, Mem. Op. & Order [ECF No. 255]. The Court held that Defendant's Retirement Board ("Board"), the plan administrator, failed to provide a full and fair review of Plaintiff's claim for disability benefits in violation of 29 U.S.C. § 1133(2), and abused its discretion in denying Plaintiff's application for reclassification to Active Football benefits in violation of 29 U.S.C. § 1132(a)(1)(B) and (a)(3). *See id.* at 51-52, 61. The Court entered judgment in favor of Plaintiff, awarding him $1,281,120.50 in retroactive benefits as well as prospective Active Football benefits beginning August 1, 2022. *See* Judgment [ECF No. 259].

The Court also ordered Defendant to pay Plaintiff his reasonable attorney's fees and costs pursuant to 29 U.S.C. § 1132(g)(1) but reserved its determination of the specific amount of the

1

award until Plaintiff's Opposed Motion for Attorneys' Fees and Costs and Brief in Support ("Motion") [ECF No. 253] became ripe.[1] *See* June 21, 2022, Mem. Op. & Order [ECF No. 255] at 84. The Motion is now ripe for adjudication.

The Court has considered the Motion, the accompanying exhibits, Defendant's Opposition to Plaintiff's Motion for Attorneys' Fees and Costs ("Response") [ECF No. 257], Plaintiff's Reply in Support of Plaintiff's Opposed Motion for Attorneys' Fees and Costs and Brief in Support ("Reply") [ECF No. 260], and the applicable law. For the following reasons, the Court **GRANTS** the Motion.

## I. DISCUSSION

### A. Attorney's Fees

In an ERISA action, "the court in its discretion may allow a reasonable attorney's fee and costs of action to either party." 29 U.S.C. § 1132(g)(1). The Supreme Court has held that attorney's fees under § 1132(g)(1) are not limited to the "prevailing party." *Hardt v. Reliance Standard Life Ins. Co.*, 560 U.S. 242, 254 (2010). Rather, the court may award fees if a party has achieved "some degree of success on the merits." *Id.* at 245. A party satisfies this "success on the merits" requirement "if the court can fairly call the outcome of the litigation some success on the merits without conducting a lengthy inquir[y] into the question whether a particular party's success was 'substantial' or occurred on a 'central issue.'" *Id.* at 255.[2]

---

[1] The Motion was filed after the Court's oral pronouncement following trial but prior to issuance of the judgment on the merits of this case.

[2] Prior to *Hardt*, courts were required to consider the five factors enumerated in *Iron Workers Local No. 272 v. Bowen*, 624 F.2d 1255 (5th Cir. 1980) when assessing attorney's fees in ERISA cases. *See Todd v. AIG Life Ins. Co.*, 47 F.3d 1448, 1458-59 (5th Cir. 1995). Since *Hardt*, however, the Fifth Circuit has clarified that "[a] district court may consider the five factors, but *Hardt* does not mandate consideration." *1 Lincoln Financial Co. Metro. Life Ins. Co.*, 428 F. App'x 394, 396 (5th Cir. 2011); *see LifeCare Mgmt. Servs. LLC v. Ins. Mgmt. Administrators Inc.*, 703 F.3d 835, 847 (5th Cir. 2013) ("As the Supreme Court made clear in *Hardt*, . . . the *Bowen* factors are discretionary."); *see also Hardt*, 560 U.S. at 254-55 ("Because these five factors bear no obvious relation to § 1132(g)(1)'s text or to our fee-shifting jurisprudence, they are not required for channeling a court's discretion when awarding fees under this section.").

2

Here, Plaintiff unquestionably succeeded on the merits on all counts. *See* June 21, 2022, Mem. Op. & Order [ECF No. 255] at 84. Plaintiff is therefore entitled to an award of attorney's fees. *See Hardt*, 560 U.S. at 255-56 (finding that the plaintiff was entitled to attorney's fees after a finding that "the plan administrator . . . failed to comply with ERISA guidelines" and remanded the plaintiff's case back to the plan administrator who reversed its decision and awarded the plaintiff "the benefits she sought"); *see also Ingerson v. Principal Life Ins. Co.*, No. 2:18-CV-227-Z-BR, 2020 WL 5938364 (N.D. Tex. Oct. 2, 2020) (awarding attorney's fees under ERISA without considering the discretionary five-factor test).

Accordingly, the Court shall determine the amount to be awarded. Courts in the Fifth Circuit use the lodestar method to calculate fee awards. *See Todd*, 47 F.3d at 1459. Under this method, the court determines the reasonable number of hours expended and the reasonable hourly rate, and then multiplies the two figures together to arrive at the "lodestar" amount. *Id.* A "reasonable hourly rate" is determined by prevailing market rates in the community. *McClain v. Lufkin Indus.*, 649 F.3d 374, 381 (5th Cir. 2011). The party seeking attorney's fees has the burden to show the reasonableness of the hours billed and that it exercised billing judgment. *See Saizan v. Delta Concrete Prods. Co., Inc.*, 448 F.3d 795, 799 (5th Cir. 2006).

### 1) *Lodestar Amount*

Plaintiff requests an initial lodestar amount of $1,004,501.25 based on 2,211 hours worked at hourly rates ranging between $300 and $520 for attorneys, and $125 for law clerks and paralegals. *See* Mot. 8-10. This amount represents the fees incurred through June 3, 2022—the date that the Motion was filed. *See id.* at 8. Accompanying the Motion is a sworn declaration executed by lead counsel as well as billing records ("Billing Records"). *See* Declaration of Christian Dennie ("Declaration") [ECF No. 253-3, Ex. 3]; Billing Records [ECF No. 253-3, Ex.

3A]. In the Declaration, lead counsel describes (1) the skill and experience of each of the lawyers, law clerks, and paralegals who worked on the case; (2) the number of hours billed and the hourly rate for each; and (3) reductions made to the hours billed for duplicative and clerical work. *See* Declaration 6-8. The Billing Records detail the tasks, time entries, and hourly rates. *See* Billing Records [ECF No. 253-3, Ex. 3A]. In addition to the fees incurred through June 3, 2022, Plaintiff seeks $9,900 for an estimated twenty hours required to review Defendant's Response to the Motion and prepare a reply. *See* Mot. 11. Thus, the final requested lodestar amount by Plaintiff is $1,014,401.25. Defendant does not contest the reasonableness of the hourly rates or the time spent on any particular task. *See* Resp. 1.

As a billing partner specializing in civil litigation in four established law firms prior to taking the federal bench,[3] this Court has vast personal knowledge of rates charged in the Dallas-Fort Worth legal community for services by individuals with the level of skill, competence, and ability of Plaintiff's lawyers and staff. Based on this knowledge, the Court finds that the hourly rates set forth in the Billing Records are reasonable. Indeed, very reasonable, as many law firms bill associates with no courtroom experience at rates higher than that of Plaintiff's lead counsel. *See SortiumUSA, LLC v. Hunger*, No. 3:11-CV-1656-M, 2015 WL 179025, at *5 (N.D. Tex. Jan. 14, 2015) ("[I]t is well-established that the Court may use its own expertise and judgment to make an appropriate independent assessment of the hourly rates charged for the attorneys' services.") (citing *Davis v. Bd. of Sch. Comm'rs of Mobile Cnty.*, 526 F.2d 865, 868 (5th Cir. 1976)).

Defendant argues, however, that the fee award should be reduced by $104,242.50 for time spent on the following:

- Claims that were dismissed by the Court, *see* Resp. 9-10; *see also* Dec. 27, 2021, Order [ECF No. 113];

---

[3] *See, e.g., District Judge Karen Gren Scholer: Biography*, United States District Court for the Northern District of Texas, https://www.txnd.uscourts.gov/judge/district-judge-karen-gren-scholer.

4

- Researching claims never asserted, *see* Resp. 10;

- Two unsuccessful motions, *see id.* at 11; *see also* Oct. 8, 2021, Order [ECF No. 77]; Dec. 27, 2021, Order [ECF No. 112];

- Expert reports purportedly "excluded" by the Court, *see* Resp. 11;

- Travel, *see id.* at 12-13; and

- Discussion between Plaintiff and counsel about an unrelated matter, *see id.* at 12.

In support of its argument relating to claims that were unsuccessful or never asserted, Defendant relies on distinguishable cases permitting fees only to a "prevailing party." But despite Defendant's contention otherwise, a party in an ERISA action may recover fees for work on dismissed claims if that party "achieved 'some degree of success on the merits' in the overall litigation." *LifeCare*, 703 F.3d at 847 (affirming an award of attorney's fees for work on dismissed state law claims). Moreover, as to claims that were never asserted, "[t]here is nothing patently unreasonable about conducting preliminary research on a case once it is initiated," *Coleman v. Houston Indep. Sch. Dist.*, 202 F.3d 264, 1999 WL 1131554, at *7 (5th Cir. 1999), and there is nothing to show that these potential claims are "distinct in all respects from [Plaintiff's] successful claims," *Hensley v. Eckerhart*, 461 U.S. 424, 440 (1983).

With respect to Plaintiff's "unsuccessful" motion to disqualify defense counsel and motion to strike defense witness's errata sheet, these two motions were neither frivolous nor brought in bad faith. In this case, they were appropriately pursued by counsel who is obliged to zealously represent his client. Indeed, the motion to disqualify brought to the Court's attention the fact that defense counsel advises decision makers at both levels of the Plan's review process despite the inherent conflict of interest presented in acting in such a dual capacity. *See* June 21, 2022, Mem. Op. & Order [ECF No. 255] at 82. And the motion to strike was understandably pursued to alert

the Court that defense counsel filed an errata sheet after the conclusion of the deposition of a Board member significantly altering the substance of his sworn testimony. *See* ECF No. 102-2.

Defendant also mischaracterizes the Court's ruling on Plaintiff's expert reports. The Court did not "exclude" these reports. Rather, the Court ruled that the reports were admissible to the extent they assisted the Court "in understanding medical terms and procedures at issue." Feb. 22, 2022, Order [ECF No. 151] at 2-3 (citing *Vega v. Nat'l Life Ins. Serv.*, 188 F.3d 287, 299-300 (5th Cir. 1999) (en banc), *overruled on other grounds by Metro. Life Ins. Co. v. Glenn*, 554 U.S. 105 (2008)); *see* Trial Tr. vol. 4 [ECF No. 244] at 81:23-82:13.

In addition, the Court disagrees that reimbursement for Plaintiff's travel time should be discounted to a 50% rate. The Billing Records and Declaration clearly indicate that counsel was conducting substantive legal work during his travel time. *See, e.g.*, Billing Records [ECF No. 253-3, Ex. 3A] at 22 ("Travel to Washington DC for the depositions of Patrick Reynolds and Chris Smith; Final preparations for depositions."); Declaration 8; *see also* Reply 7 n.4 (reaffirming that Plaintiff's counsel conducted substantive legal work during his travels, such as discussing case law and arguments with his team).

Plaintiff may not, however, recover fees for time spent on unrelated matters. *See Associated Builders & Contractors of La., Inc. v. Orleans Parish Sch. Bd.*, 919 F.2d 374, 379 (5th Cir. 1990); *Coleman*, 202 F.3d 264, 1999 WL 1131554, at *7. Accordingly, the Court reduces Plaintiff's requested lodestar amount by $742.50 for the 1.5-hour discussion between Plaintiff and his counsel, resulting in a total lodestar amount of $1,013,658.75.

### 2) *Adjustment of Lodestar Amount Under* Johnson *Factors*

Having established the lodestar amount, the Court next determines whether an adjustment is appropriate by assessing the factors set forth in *Johnson v. Georgia Highway Express*, 488 F.2d

714 (5th Cir. 1974). *See Wegner v. Standard Ins. Co.*, 129 F.3d 814, 822 (5th Cir. 1997). The *Johnson* factors include the following: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill required to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation and ability of the attorney; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *Johnson*, 488 F.2d at 717-19. When evaluating these factors, the court must not "double count" a factor "already considered in calculating the lodestar." *Walker v. U.S. Dep't of Hous. and Urb. Dev.*, 99 F.3d 761, 771 (5th Cir. 1996). In other words, a district court may adjust the lodestar amount in accordance with those relevant *Johnson* factors that have not been considered in the lodestar calculation. *Shipes v. Trinity Indus.*, 987 F.2d 311, 320 (5th Cir. 1993).

Although there is a strong presumption that the lodestar represents the reasonable fee, *see City of Burlington v. Dague*, 505 U.S. 557, 562 (1992), the court may upwardly enhance the lodestar amount in "certain 'exceptional' cases—those in which there is a substantial risk of not prevailing, or in which the issues are so novel or complex that the lodestar amount awarded would not provide a reasonable fee that would adequately reflect the quality of the representation." *Von Clark v. Butler*, 916 F.2d 255, 260 (5th Cir. 1990) (citing *Pennsylvania v. Delaware Valley Citizens' Council*, 478 U.S. 546, 566-67 (1985)); *see also Burlington*, 505 U.S. 557, 562 (1993) (holding that an upward adjustment is proper if it "is *necessary* to the determination of a reasonable fee" (emphasis in original)). The need for enhancing the award must be "readily apparent and supported by evidence in the record." *Von Clark*, 916 F.2d at 260 (quoting *Leroy v. City of*

*Houston*, 831 F.2d 576, 584 (5th Cir. 1987)). The court must "provide a concise but clear explanation of its reasons for the fee award." *Hensley*, 461 U.S. at 437. The court's findings need not be "excruciatingly explicit in this area," but the record must clearly indicate that the court utilized the *Johnson* framework as the basis for its analysis. *Forbush v. J.C. Penney Co.*, 98 F.3d 817, 823 (5th Cir. 1996).

The time and labor required,[4] preclusion of other employment,[5] time limitations imposed,[6] and experience, reputation, and ability of the attorneys[7] are included in the lodestar analysis and thus are not considered again in the adjustment analysis. Additionally, the Supreme Court has barred any consideration of whether the fee is fixed or contingent, and therefore the Court does not consider that factor in its enhancement analysis. *See Burlington*, 505 U.S. at 567; *see also Shipes*, 987 F.2d at 323 ("[F]ollowing the clearly lighted path of *Burlington*, we now hold that the contingent nature of the case cannot serve as a basis for enhancement of attorneys' fees awarded to prevailing plaintiffs under traditional fee-shifting provisions."). The remaining factors are analyzed below.

### a) Novelty and Difficulty of the Issues

ERISA actions are complex by their very nature. *See Conkright v. Frommert*, 559 U.S. 506, 509 (2010) (noting that ERISA "is an enormously complex and detailed statute," and that "the plans that administrators must construe can be lengthy and complicated"). This case in particular proved exceptionally challenging. By way of example, after a hotly contested dispute involving the scope of permissible discovery in ERISA actions, the Court ordered Defendant to

---

[4] *See Walker*, 99 F.3d at 771 ("The first factor already is included in the lodestar.").
[5] *See Heidtman v. Cnty. of El Paso*, 171 F.3d 1038, 1043 (5th Cir. 1999) ("[P]reclusion of other employment is generally subsumed in the lodestar amount.").
[6] *See Walker*, 99 F.3d at 772 ("The seventh factor is subsumed in the number of hours reasonably expended.").
[7] *See Shipes*, 987 F.2d at 320 ("[T]he special skill and experience of counsel . . . are presumably fully reflected in the lodestar amount.").

8

produce members of the Disability Initial Claims Committee and Board for deposition. *See* July 22, 2021, Order [ECF No. 37]; Sept. 30, 2021, Mem. Op. & Order [ECF No. 71]. Several of these witnesses were then called to testify at trial by Defendant. Defendant was also compelled to produce certain relevant documents, including its prior decision letters. *Id.* Despite numerous similar lawsuits, never before had Defendant produced witnesses—either for deposition or trial— or its prior decision letters.[8] As stated in the Court's extensive findings and conclusions, this evidence revealed for the first time the inner workings of Defendant's claims review process— how it interprets and implements its Plan provisions. *See, e.g.*, June 21, 2022, Mem. Op. & Order [ECF No. 255] at 11 n.7, 12 n.8, 14 n.9, 15-23. This discovery was key to showing that Defendant's interpretation of certain Plan provisions was legally incorrect and an abuse of discretion.

### b) Skill Required to Perform the Legal Service Properly

Plaintiff's counsel displayed a high level of skill in many aspects of this case. He aggressively pursued necessary discovery, including third-party subpoenas. He conducted a tedious review of thousands of pages of documents, identifying many critical items buried in them. *See, e.g.*, Pl.'s Trial Ex. 3-5 at NFLPA0000032 (email showing that the Plan's advisors added reasons for denial in the Board's decision letter that were not actually contemplated by the Board); Pl.'s Trial Ex. 3-7 at CLOUD-AR-0002381 (email showing that a paralegal drafted the Board's decision letter denying Plaintiff's appeal); Trial Tr. vol. 4 at 105-150 (discussing the multiple past Board decision letters and outlining the differing and inconsistent definitions Defendant had given to Plan terms).

---

[8] *See* Trial Tr. vol. 6 [ECF No. 249] at 75:4-6 ("We have never put on witnesses. We have never had witnesses deposed. We have never had to produce all these documents—thousands and thousands and thousands of prior decision letters[.] Never has that happened.").

Plaintiff's lead counsel's stand-up trial skills were evident in his presentation of the case at trial, including in his opening statement, examination of witnesses, and closing argument. To be clear, his trial presentation was well done.

The abilities of defense counsel are also relevant under this factor.[9] Defense counsel Groom Law Group has long represented Defendant. *See, e.g.*, Trial Tr. vol. 3 [ECF No. 242] at 86:20-87:11 (Board member testifying that Defendant receives a "volume discount" due to the "extensive amount of work" provided by defense counsel over the years). The Groom lawyers advise the Plan at all stages of the review process. *See* Trial Tr. vol. 2 [ECF No. 240] at 21:24-22:1. They also draft benefits decision letters issued by the Board. *See id.* at 38:24-40:18, 71:13-15. They have represented Defendant in numerous ERISA cases across the country, at both the trial and appellate levels.[10] In sum, Groom lawyers possessed considerable institutional knowledge about the Plan and experience defending the Plan in ERISA litigation. In the face of such highly experienced opposition representing a well-financed defendant,[11] Plaintiff nevertheless prevailed through the efforts of his counsel.

Based on its personal observations and knowledge, the Court finds that the skills, commitment, and tenacity of Plaintiff's counsel in this case support an enhancement. *See Johnson*, 488 F.2d at 718 ("The trial judge's expertise gained from past experience as a lawyer and his observation from the bench of lawyers at work become highly important in this consideration.").

---

[9] *See, e.g., Schwartz v. TXU Corp.*, No. 3:02-CV-2243-K, 2005 WL 3148350, at *30 (N.D. Tex. Nov. 8, 2005) ("The ability of plaintiffs' counsel to obtain such a favorable settlement for the Class in the face of such formidable legal opposition confirms the superior quality of their representation.").

[10] *See, e.g., Royal v. Ret. Bd. of Bert Bell/Pete Rozelle NFL Player Ret. Plan*, No. 19-CV-5164 (AJN), 2020 WL 12787976 (S.D.N.Y. Nov. 20, 2020), *aff'd*, No. 20-4184, 2021 WL 4484925 (2nd Cir. Oct. 1, 2021); *Harrison v. Bert Bell/Pete Rozelle NFL Player Ret. Plan*, No. 1:13-CV-74, 2014 WL 12513890 (E.D. Tex. Mar. 21, 2014), *aff'd*, 583 F. App'x 413 (5th Cir. 2014), *cert denied*, 575 U.S. 914 (2015); *Dimry v. Bert Bell/Pete Rozelle NFL Player Ret. Plan*, 487 F. Supp. 3d 807 (N.D. Cal. 2020), *aff'd*, 855 F. App'x 332 (9th Cir. 2021).

[11] *See* Trial Tr. vol. 5 [ECF No. 246] at 57:3-9 (Board member testifying that the Plan has "assets in excess of $9 billion").

### c) Customary Fee

Lead counsel is a partner at a firm and has been practicing law in the State of Texas for nearly 20 years. Declaration ¶¶ 3-4. He focuses his practice on commercial disputes in the sports industry. *Id.* ¶ 8. Over the years, he has been recognized by several journals and organizations. *Id.* ¶ 9. Additionally, he is an adjunct professor of law at Texas A&M University School of Law and Southern Methodist University, where he teaches courses relating to sports law. *Id.* ¶ 4. Based on the Court's own knowledge and experience, the Court finds that an hourly rate of $495 for Plaintiff's lead counsel is below that of a customary fee charged by counsel with the same level of skill and experience. *See, e.g., Advanced Physicians, S.C. v. Connecticut General Life Ins. Co.*, No. 3:16-cv-02355-G-BT, 2021 WL 6248370, at *6 (N.D. Tex. Dec. 17, 2021) (finding reasonable rates ranging from $537 to $862 per hour in an ERISA action).

### d) Amount Involved and the Results Obtained

The Fifth Circuit has called this factor the "most critical" factor. *See Migis v. Pearle Vision, Inc.*, 135 F.3d 1041, 1047 (5th Cir. 1998). The Court awarded over $1 million in retroactive payments to Plaintiff for the highest form of disability benefits that the Plan offers. Plaintiff will also receive these benefits, which pay $265,008 per year, in the future. This was a highly successful outcome for Plaintiff in terms of tangible, monetary benefits. But it can also be a significant outcome with respect to other similarly situated former NFL players, as Defendant's review process and Plan interpretation were revealed in detail for the first time.

### e) Whether the Case is Undesirable

Plaintiff's counsel prosecuted a very tough case that historically had little chance of any recovery. Over the years, very few plaintiffs have succeeded in litigating ERISA claims against

11

Defendant.[12] Even when courts have remanded a case back to the Board, the Board frequently denied the claim again, forcing further litigation. *See, e.g., Dimry*, 855 F. App'x at 333-34 ("[T]he Plan's actions on remand . . . violated the requirement of 'meaningful dialogue between ERISA plan administrators and their beneficiaries.' Dimry and his counsel were in the dark during the entirety of the remand process." (internal citation omitted)); *Giles*, 2013 WL 6909200, at *1 (holding that the Board abused its discretion in denying plaintiff's benefits on remand).

As the Court noted in its Memorandum Opinion and Order, the evidence shows that Defendant denies Active Football benefits to former NFL players suffering from the debilitating effects of head trauma, irrespective of the plain language of the Plan that may dictate that it do otherwise in certain cases. *See* June 21, 2022, Mem. Op. & Order [ECF No. 255] at 81. Defendant forces such players to engage in time-consuming, expensive, and contentious litigation to recover benefits. *See id.* at 81-82.

---

[12] *See, e.g., Garcia-Tatupu v. Bert Bell/Pete Rozelle NFL Player Ret. Plan*, 296 F. Supp. 3d 407, 408 (D. Mass. 2017), *aff'd*, 747 F. App'x 873 (1st Cir. 2019); *Royal v. Ret. Bd. of Bert Bell/Pete Rozelle NFL Player Ret. Plan*, No. 19-CV-5164 (AJN), 2020 WL 12787976 (S.D.N.Y. Nov. 20, 2020), *aff'd*, No. 20-4184, 2021 WL 4484925 (2nd Cir. Oct. 1, 2021); *Hudson v. Nat'l Football League Mgmt. Council*, No. 1:18-CV-4483-GHW, 2019 WL 5722220 (S.D.N.Y. Sept. 5, 2019), *report and recommendation adopted as modified*, 2019 WL 4784680 (S.D.N.Y. Sept. 30, 2019); *Courson v. Bert Bell NFL Player Ret. Plan*, 75 F. Supp. 2d 424 (W.D. Pa. 1999), *aff'd*, 214 F.3d 136 (3rd Cir. 2000); *Hill v. Bert Bell/Pete Rozelle NFL Player Ret. Plan*, No. 4:13cv74, 2014 WL 4229694 (E.D. Tex. Aug. 26, 2014), *report and recommendation adopted*, 2014 WL 12576615 (E.D. Tex. Sept. 29, 2014), *aff'd*, 613 F. App'x 418 (5th Cir. 2015); *Harrison v. Bert Bell/Pete Rozelle NFL Player Ret. Plan*, No. 1:13-CV-74, 2014 WL 12513890 (E.D. Tex. Mar. 21, 2014), *aff'd*, 583 F. App'x 413 (5th Cir. 2014), *cert denied*, 575 U.S. 914 (2015); *Atkins v. Bert Bell/Pete Rozelle NFL Player Ret. Plan*, No. A-10-CA-515-SS, 2011 WL 9374867 (W.D. Tex. Nov. 10, 2011), *aff'd*, 694 F.3d 557 (5th Cir. 2012), *cert denied*, 568 U.S. 1160 (2013); *Webster v. Bert Bell/Pete Rozelle NFL Player Ret. Plan*, 129 F.3d 607 (5th Cir. 1997), *cert denied*, 523 U.S. 1022 (1998); *Johnson v. Bert Bell/Pete Rozelle NFL Player Ret. Plan*, 468 F.3d 1082, 1084 (8th Cir. 2006); *Boyd v. Bert Bell/Pete Rozelle NFL Players Ret. Plan*, 410 F.3d 1173 (9th Cir. 2005); *Williams v. Ret. Bd. of Bert Bell-Pete Rozelle NFL Player Ret. Plan & NFL Player Supplemental Disability Plan*, 61 F. App'x 362 (9th Cir. 2003); *Sweeney v. Bert Bell NFL Player Ret. Plan*, 156 F.3d 1238 (9th Cir. 1998); *Smith v. Bert Bell/Pete Rozelle NFL Player Ret. Plan*, 125 F.3d 859 (9th Cir. 1997); *Williams v. NFL Player Supplemental Disability Plan*, No. 19-CV-04236-LHK, 2020 WL 43113 (N.D. Cal. Jan. 3, 2020), *appeal dismissed*, No. 20-15141, 2020 WL 2128792 (9th Cir. Feb. 20, 2020); *Coles v. Bert Bell/Pete Rozelle NFL Player Ret. Plan*, No. 3:14-CV-142-J-39JRK, 2014 WL 12617586 (M.D. Fla. July 15, 2014*); Giles v. Bert Bell/Pete Rozelle NFL Player Ret. Plan*, No. CIV.A. ELH-12-634, 2013 WL 6909200 (D. Md. Dec. 31, 2013); *Boyd v. Bert Bell/Pete Rozelle NFL Player Ret. Plan*, 796 F. Supp. 2d 682 (D. Md. 2011).

In addition, defense counsel has represented to the Court that Defendant never settles these cases. *And see also* Trial Tr. vol. 6 at 58:9-16 (Board member testifying that the Board felt that it was "important that we take this case all the way through" in order to "refute a number of allegations that have been made against us over a number of years").

All of the above is relevant to the undesirability of the case. *See Braud v. Transport Serv. Co.*, Nos. 05-1898, 05-1977, 05-5557, 06-0897, 2010 WL 3283398, at *13 (E.D. La. Aug. 17, 2010) (noting that the "risk of non-recovery" and "undertaking expensive litigation against . . . well-financed corporate defendants on a contingent fee" makes a case undesirable, warranting a higher fee).

### f) Nature and Duration of the Professional Relationship with the Client

Plaintiff's counsel does not have a longstanding relationship with Plaintiff outside of this action. Declaration ¶ 25. This is the only case that he has represented Plaintiff. *Id.*

### g) Awards in Similar Cases

*Dimry v. Bert Bell/Pete Rozelle NFL Player Retirement Plan*, No. 3:16-cv-01413-JD, 2018 WL 6726963 (N.D. Cal. Dec. 22, 2018) is the closest parallel to this case. There, the court found that the Board abused its discretion in denying the plaintiff's benefits claim by ignoring the evidence presented by the plaintiff and remanded the matter back to the Board for further consideration. *Id.* at *1. The court approved hourly rates of $450 for associates and $900 for partners. *Id.* at *1-2.

*      *      *

Based on its analysis of the *Johnson* factors, the Court finds that an upward enhancement is warranted. The record in this case supports a finding that an enhancement is necessary to provide reasonable compensation to Plaintiff's counsel and to adequately reflect the quality of the

representation. The Court finds that the lodestar amount "does not adequately measure the attorney's true market value." *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 554-55 (2010) (observing that in such a case, "the trial judge should adjust the attorney's hourly rate in accordance with specific proof linking the attorney's ability to a prevailing market rate").

As stated above, this case dealt with uniquely challenging issues and carried a substantial risk of not prevailing. Plaintiff obtained exceptional success, both in terms of monetary and intangible benefits, against highly experienced opposing counsel. And Plaintiff's counsel charged a rate well below the customary fee. Accordingly, the Court awards an upward enhancement of $200 to Plaintiff's lead counsel's hourly rate, which results in an enhanced lodestar amount of $1,232,058.75,[13] representing an approximately 20% enhancement to the previously determined lodestar amount.[14] *See Shipes v. Trinity Indus.*, 46 F.3d 67 (5th Cir. 1995) (affirming enhancement by one-third based on the "exceptional results" that were obtained).

### 3) *Conditional Appellate Attorney's Fees*

In addition to fees incurred, Plaintiff seeks conditional appellate attorney's fees in the amount of $250,000 for an appeal in the Fifth Circuit and $350,000 for an appeal in the Supreme Court. *See* Mot. 16. In response, Defendant contends that an award of conditional appellate attorney's fees may only be awarded pursuant to a Texas state law procedure that is "inapplicable in federal court." Resp. 5-6. In support, Defendant relies on *ATOM Instrument Corp. v. Petroleum Analyzer Co., L.P.*, 969 F.3d 210 (5th Cir. 2020). However, the Fifth Circuit there merely observed

---

[13] Though necessarily based on prevailing market rates in the community, it is some evidence that this enhanced lodestar amount is reasonable when compared to the $3.5 million in attorney's fees incurred by Defendant ***before trial*** and billed with a "volume discount." *See* Trial Tr. vol. 5 at 57:3-9; Trial Tr. vol. 3 at 86:20-87:11. Defendant's fees are multiples of the enhanced lodestar amount awarded to Plaintiff, which accounts for fees incurred ***through trial***. It is astounding that when all the dust settles, Defendant may very well incur more than $7 million in legal fees in its fight to prevent Plaintiff from receiving Active Football benefits for brain injuries that no one disputes he suffered while playing in the NFL.

[14] Lead counsel's billed hours account for 1,092 of the total 2,209.5 hours that were reasonably billed.

that although "[i]n Texas state courts, requesting appellate fees at the original trial is a placeholder requirement to ensure the state trial courts maintain jurisdiction over the issue[,] . . . [t]hose are procedural rules that do not apply in federal court." *Id.* at 219. The court did not hold that conditional appellate fees are inapplicable or unavailable in federal court. Rather, it clarified that the Fifth Circuit's local rules "do[] not require a party seeking appellate attorneys' fees to first request appellate attorneys' fees in the district court as a placeholder." *Id.* As the court noted, appellate attorney's fees can be awarded even if first requested on appeal. *Id.* (citing *Marston v. Red River Levee & Drainage Dist. et al.*, 632 F.2d 466, 467-68 (5th Cir. 1980)).

Contrary to Defendant's assertion, conditional appellate fees are permissible in federal district courts in this Circuit so long as the award is supported by evidence of the fees' reasonableness. *See, e.g.*, *LifeCare*, 703 F.3d at 847 (affirming district court's award of conditional appellate attorney's fees where plaintiff produced "evidence in the form of a detailed affidavit by . . . counsel explaining why the fees were necessary"); *Passmore v. Baylor Health Care Sys.*, No. 3:13-CV-5016-P, 2016 WL 8578058, at *2 (N.D. Tex. Jan. 5, 2016) ("[A] trial court's award of conditional appellate attorneys' fees must be supported by evidence of their reasonableness."); *see also Eagle Suspensions, Inc. v. Hellmann Worldwide Logistics, Inc.*, No. 3:12-CV-0611-G, 2014 WL 1407635, at *3 (N.D. Tex. Apr. 11, 2014) (awarding plaintiff contingent appellate attorney's fees).

The Court finds that the Declaration establishes the reasonableness of the conditional appellate attorney's fees. In the Declaration, lead counsel sets forth the anticipated difficulty in litigating this case on appeal, including the substantial amount of time that will be required to review the voluminous record, prepare appellate pleadings and briefing, and argue any disputed

issues. Declaration ¶ 27. The Court finds that the requested fees are reasonable and awards conditional appellate attorney's fees as requested.

## B. Costs

Plaintiff seeks to recover costs in the amount of $50,665.72. *See* Mot. 15. In response, Defendant contends that $20,591 of that amount should not be allowed because certain expenses claimed by Plaintiff are not recoverable under the applicable statute. *See* Resp. 2. These include costs for mediation, travel, postage and document delivery, video depositions, computerized legal research, and private process servers. *See id.* at 2-4.

The Fifth Circuit has limited the award of costs to those listed in 28 U.S.C. § 1920. *See Cook Children's Med. Ctr. v. New England PPO Plan of Gen. Consol. Mgmt., Inc.*, 491 F.3d 266, 275-76 (5th Cir. 2007), *cert denied*, 552 U.S. 1180 (2008). The following costs are taxable under § 1920: (1) fees of the clerk and marshal; (2) fees for printed or electronically recorded transcripts necessarily obtained for use in the case; (3) fees and disbursements for printing and witnesses; (4) fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case; (5) docket fees under 28 U.S.C. § 1923; and (6) compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under 28 U.S.C. § 1828.

The Court finds that the following costs are not enumerated in § 1920 and thus are not recoverable by Plaintiff: mediation,[15] travel,[16] postage and document delivery, video depositions,[17]

---

[15] *See Cook Children's Med. Ctr.*, 491 F.3d at 277 ("[B]ecause mediation fees are not explicitly authorized by § 1920, . . . we hold that the district court abused its discretion in awarding mediation expenses as taxable costs to Defendants under § 1920 in this ERISA action.").

[16] *See Coats v. Penrod Drilling Corp.*, 5 F.3d 877, 891 (5th Cir. 1993) (holding that travel expenses "are not included in § 1920 and therefore are not recoverable").

[17] *See id.* (holding that "video technician fees incurred for video depositions . . . are not included in § 1920 and therefore are not recoverable"); *Migis*, 135 F.3d at 1049 ("There is no provision for videotapes of depositions.").

16

computerized legal research, and private process servers.[18] The remaining $30,074.72 in costs are included in § 1920 and taxed against Defendant.

## II.   CONCLUSION

For the reasons stated above, Plaintiff's Opposed Motion for Attorneys' Fees and Costs and Brief in Support [ECF No. 253] is **GRANTED**.

Defendant is **ORDERED** to pay Plaintiff's attorney's fees in the amount of $1,232,058.75. Defendant is also **ORDERED** to pay Plaintiff's conditional appellate attorney's fees in the amount of $250,000 for an appeal to United States Court of Appeals for the Fifth Circuit and $350,000 for an appeal to the United States Supreme Court. Plaintiff will recover appellate attorney's fees only if an appeal is taken, Plaintiff submits briefing in the Fifth Circuit or Supreme Court, and Plaintiff achieves success with regard to that appeal, either on the merits, by dismissal of Defendant's appeal, or by denial of certiorari. It is further **ORDERED** that $30,074.72 in costs shall be taxed against Defendant.

**SO ORDERED.**

SIGNED July 18, 2022.

*/s/ Karen Scholer*

**KAREN GREN SCHOLER**
**UNITED STATES DISTRICT JUDGE**

---

[18] *See Zastrow v. Houston Auto M. Imps. Greenway, Ltd.*, 695 F. App'x 774, 780 (5th Cir. 2017) ("[T]his circuit has held that costs for private process servers are not recoverable, absent exceptional circumstances.").